**EXHIBIT K**

1 | Sanford Jay Rosen, State Bar No. 62566
2 | Maria V. Morris, State Bar No. 223903
  | Lori E. Rifkin, State Bar No. 244081
  | ROSEN, BIEN & GALVAN, LLP
3 | 315 Montgomery Street, Tenth Floor
  | San Francisco, CA 94104
4 | Telephone: (415) 433-6830
  | Facsimile: (415) 433-7104
5 | srosen@rbg-law.com

6 | [Additional Counsel Listed on Following Page]

7 |

8 | Attorneys for Plaintiffs

**ENDORSED**
~~FILED~~
**ALAMEDA COUNTY**

JAN 2 5 2008

**CLERK OF THE SUPERIOR COURT**
**By** _____ S. Halcrombe _____
                              Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

CLAUDE BRYANT, JOSEPH BIERNACKI, GORDON FARMER, RHEALYN HOLLAND, JAMES STICKLE, ELEANOR RIGGIO, FRANK ACUNA, RICHARD LAMASTERS, KENNETH ALLEN, CRAIG FULCHER, SANFORD LEVINE and THOMAS THOMPSON, on behalf of themselves and all other employees and former employees similarly situated,

Plaintiffs,

v.

SERVICE CORPORATION INTERNATIONAL, SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC., SCI EASTERN MARKET SUPPORT CENTER, L.P., SCI WESTERN MARKET SUPPORT CENTER, L.P. a/k/a SCI WESTERN MARKET SUPPORT CENTER, INC., SCI HOUSTON MARKET SUPPORT CENTER, L.P., JANE D. JONES, GWEN PETTEWAY, THOMAS RYAN, and CURTIS BRIGGS,

Defendants.

Case No. RG 07359593

## CLASS ACTION

## AMENDED COMPLAINT

(1) **VIOLATION OF CALIFORNIA LABOR LAWS**
(2) **STATE WAGE AND HOUR LAWS**
(3) **UNJUST ENRICHMENT/ RESTITUTION**
(4) **CONVERSION**
(5) **FRAUD AND DECEIT**
(6) **MISREPRESENTATION**
(7) **BREACH OF CONTRACT**
(8) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
(9) **QUANTUM MERUIT**
(10) **UNLAWFUL BUSINESS PRACTICES**

## DEMAND FOR JURY TRIAL

AMENDED COMPLAINT-CLASS ACTION
*Bryant et al v. Service Corp. Int'l. et al - Case No. RG 07359593*

1

2     Additional Attorneys for Plaintiffs, who will
    submit applications for admission *pro hac vice*:

3
    J. Nelson Thomas, NY Attorney No. 2579159
4     Patrick J. Solomon, NY Attorney No. 2716660
    Michael J. Lingle, NY Attorney No. 3925765
5     Justin Cordello, NY Attorney No. 4131447
    Annette Gifford, NY Attorney No. 4105870
6     DOLIN, THOMAS & SOLOMON LLP
    693 East Avenue
7     Rochester, NY 14607
    Telephone: (585) 272-0540
8     Facsimile: (585) 272-0574
    nthomas@theemploymentattorneys.com
9
    Charles H. Saul, PA State Bar No.19938
10     Liberty J. Weyandt, PA State Bar No. 87654
    Kyle T. McGee, PA State Bar No. 205661
11     MARGOLIS EDELSTEIN
    525 William Penn Place
12     Suite 3300
    Pittsburgh, PA 15219
13     Telephone: (412) 281-4256
    Facsimile: (412) 642-2380
14     csaul@margolisedelstein.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED COMPLAINT-CLASS ACTION

*Bryant et al v. Service Corp. Int'l. et al - Case No. RG 07359593*

## CLASS ACTION COMPLAINT

AND NOW come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, and file the following Class Action Complaint:

### I.    INTRODUCTION AND PROCEDURAL HISTORY

1.    This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to plaintiffs individually, as well as all other employees similarly situated, under the laws of California and other laws of the various States in which defendants do business.

2.    On December 12, 2006, Service Corporation International ("SCI"), a named defendant in this action, was named in a complaint filed in the Western District of Pennsylvania. That complaint also named Alderwoods Group, Inc. ("Alderwoods") as a defendant in that action.

3.    Prior to the filing of the Pennsylvania complaint, SCI had acquired Alderwoods and Alderwoods had become SCI's wholly-owned subsidiary. After the merger, SCI continued to operate the vast majority of both its own funeral homes and those of Alderwoods.

4.    The Pennsylvania complaint was filed as a class and collective action alleging, *inter alia*, that employees who worked at defendants' funeral home locations were not properly paid for all the time they worked for defendants. It asserted violations of both the Fair Labor Standards Act ("FLSA") and state wage and hour laws.

5.    The employees (whether they worked only at an Alderwoods location that became an SCI location, or at any other SCI location) shared a number of factual similarities: they suffered similar pay violations; SCI and/or its agents were their joint employers; SCI was liable for the violations of the entities it had acquired.

6.    Because of the overlapping legal liability of defendants, as well as the overlapping factual issues in the matter, plaintiffs believed it was legally appropriate and in the interests of judicial efficiency for defendants to be named in a common action.

7.    The Court in the Western District of Pennsylvania conditionally certified an

FLSA class of employees and directed that notice be sent to those individuals who worked at an Alderwoods location.

8.  In response to that notice, hundreds of current and former employees opted-in to the Pennsylvania action.

9.  On or about June 8, 2007, the Court in the Western District of Pennsylvania declined to exercise supplemental jurisdiction over any of the state law claims alleged in that action. Therefore, on or about July 9, 2007, the employees of SCI and Alderwoods reasserted their state law claims in a Class Action Complaint filed in the Superior Court of the State of California for the County of Alameda, Case No. RG 07334643 (the "Combined State Law Action").

10.  Subsequently, the Court in the Western District of Pennsylvania determined it would only hear claims on behalf of employees who worked only for Alderwoods, and that claims of employees who had worked only at other SCI locations should be heard in a separate action.

11.  Therefore, based on defendants' position that resulted in that ruling, the Combined State Law Action was voluntarily dismissed so that the state law claims of the employees who worked at locations managed by Alderwoods could be heard separately from those who worked at other SCI locations.

12.  In the instant action, employees who worked at funeral locations owned and managed by SCI and its subsidiaries and affiliates assert violations of various state laws based upon defendants' failure to pay employees their regular or statutorily required rate of pay for all hours worked.

13.  The plaintiffs in this lawsuit include employees who worked at all SCI funeral locations, including those employed at Alderwoods locations after the time SCI and its subsidiaries and affiliates assumed management of those locations.

## II.    JURISDICTION AND VENUE

14.  This Court has jurisdiction over defendants because defendants conduct business in this State.

15.     Venue is proper in this judicial district, pursuant to Code of Civil Procedure § 395.5 and Corporations Code § 2105.

16.     Upon information and belief, defendant Service Corporation International ("SCI") is a foreign corporation which has not obtained a certificate of qualification to do business in California.

17.     Upon information and belief, defendant SCI Funeral and Cemetery Purchasing Cooperative, Inc. is a foreign corporation which has not obtained a certificate of qualification to do business in California.

18.     Venue is also proper in this judicial district because defendants maintain and operate one or more business locations, transact business, and/or have agents in Alameda County, as well as in other counties in the State of California, and are otherwise within this Court's jurisdiction for purposes of service of process. Obligations and/or liabilities of the defendants arose in this County because defendants have contracted to employ or have employed plaintiffs in Alameda County, as well as in other counties in the State of California. Some of the claims in this matter arose from contracts for employment which were to be performed, at least in part, in Alameda County, as well as in other counties in the State of California. Some of the unlawful acts alleged herein occurred in Alameda County, as well as in other counties in the State of California, and have a direct effect on plaintiffs within Alameda County and within the State of California.

III.   **PARTIES**

       **A. Plaintiffs**

19.     The class members ("Class Members") are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked. As more fully set forth in the foregoing paragraphs, which Class Members incorporate by reference as if fully set forth herein, Class Members' claims are connected to Alameda County as some of those claims arose from contracts to be performed in Alameda County, some of the unlawful acts alleged

1  herein occurred in Alameda County, and some of those acts have a direct effect on Class
2  Members within Alameda County.

3    **B. Defendants**

4    20.    Defendants SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the
5  "SCI Cooperative"), SCI Western Market Support Center, L.P. a/k/a SCI Western Market
6  Support Center, Inc. ("SCI Western"), SCI Eastern Market Support Center, L.P. ("SCI
7  Eastern"), and SCI Houston Market Support Center, L.P. ("SCI Houston") (collectively, SCI
8  Western, SCI Eastern and SCI Houston are referred to as the "SCI Support Centers"), are
9  enterprises engaged in interstate commerce with an annual gross volume of sales not less than
10  $500,000.

11  *The SCI Support Centers Are Liable to Class Members*

12    21.    SCI Western is a limited partnership or corporation which is owned, directly or
13  indirectly, by SCI.

14    22.    SCI Eastern is a limited partnership which is owned, directly or indirectly, by
15  SCI.

16    23.    SCI Houston is a limited partnership which is owned, directly or indirectly, by
17  SCI.

18    24.    The primary functions of the SCI Support Centers are to help facilitate the
19  execution of corporate strategies, coordinate communications between the field and corporate
20  offices, and serve as liaisons for the implementation of policies and procedures.

21    25.    The SCI Support Centers provide day-to-day human resources services and
22  support for individual locations, including all executive, management, administrative,
23  accounting, data processing, and human resources services for defendants' locations.

24    26.    On-site training at funeral homes and cemeteries is provided by field personnel
25  and training departments affiliated with the SCI Support Centers.

26    27.    Each SCI Support Center has an ownership interest in the SCI Cooperative and
27  together the SCI Support Centers collectively own a majority of the SCI Cooperative.

28

28.     The SCI Support Centers, through their controlling interest in the SCI Cooperative, provide "Dignity University training programs" by which defendants ensure uniform services at their nationwide locations, publish and maintain the weekly newsletter "Frontline," and the "Global Village" intranet site, through which defendants communicate with their nationwide employees, and administer benefit plans for employees and contract with third-party benefit providers to respond to questions related to day-to-day benefits services.

29.     Additionally, the SCI Support Centers, through their controlling interest in the SCI Cooperative, maintain a payroll department and database which centralize information regarding Class Members, including employment records and payroll information.

30.     SCI and the entities it owns, directly or indirectly, including the SCI Support Centers, employ a single line management model in an effort to streamline the organization and ensure that operational efficiencies are achieved throughout the SCI network.

31.     The funeral home locations that SCI owns, directly or indirectly, are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles.

32.     Upon information and belief, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, are actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

33.     Upon information and belief, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy

regarding the calculation of Class Members' overtime.

34.     Upon information and belief, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively ensure defendants' compliance or non-compliance with the state and common laws asserted in this action.

35.     Upon information and belief, the SCI Support Centers, in concert with others, play a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Class Members.

36.     Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set employees' schedules, hours and standard benefit levels.

37.     Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set standard pay scales.

38.     Upon information and belief, the SCI Support Centers, in concert with others, determine and draft policies, answer questions regarding human resources issues and policies, resolve issues regarding policies and their application, counsel locations on human resources issues, and communicate with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

39.     Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, provide employees with information regarding benefit plans and providers, oversee the implementation and execution of benefit plans, retain ultimate authority for providing information and responding to questions regarding the benefit plans, maintain records regarding the benefit plans, make determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and are responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

40. Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

41. Upon information and belief, the SCI Support Centers' primary function of facilitating the execution of corporate strategies includes maintaining and directing a single, integrated set of operations across the SCI network.

42. Upon information and belief, the SCI Support Centers are responsible for, and subject to, centralized management directions and decisions.

43. The SCI Support Centers are owned, directly or indirectly, by defendant SCI. Additionally, SCI maintains an ownership interest, directly or indirectly, in the SCI Cooperative that is owned by the SCI Support Centers.

44. Upon information and belief, the SCI Support Centers are part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner. This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

45. Because the SCI Support Centers have authority to hire or fire employees, provide day-to-day support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, the SCI Support Centers have the power to hire and fire employees.

46. Because the SCI Support Centers have authority to establish employees' work schedules and/or conditions of employment, provide day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administer employees' benefit programs, the SCI Support Centers supervise and control employees' work schedules and/or conditions of employment.

47. Because the SCI Support Centers have authority to establish employees' rate and method of payment and centrally control payroll functions, the SCI Support Centers determine

1   the rate and method of employees' payment.

2        48.   Because the SCI Support Centers play a central role in the keeping of centralized

3   records, including a database, regarding employees' employment records, the SCI Support

4   Centers maintain employees' employment records.

5        49.   For all of the foregoing reasons, among others, including the SCI Support

6   Centers' services and support with respect to all executive, management, administrative,

7   accounting, data processing, and human resources services, training, and nationwide

8   communications with employees, the SCI Support Centers provide centralized control over

9   defendants' labor relations.

10       50.   Because the SCI Support Centers provide day-to-day support regarding human

11   resources issues, including employees' work schedules and/or conditions of employment,

12   control the drafting and enforcement of the policies which govern employees' schedules and/or

13   conditions of employment, and administer employee's benefit programs, they are

14   affirmatively, directly, and actively involved in operations of the defendants' business

15   functions, particularly in relation to the employment of Class Members.

16       51.   Because the SCI Support Centers are actively involved in the creation of the

17   illegal policies complained of in this case, actively advise defendants' agents on the

18   enforcement of the illegal policies complained of in this case and actively ensure defendants'

19   compliance or non-compliance with the state and common laws asserted in this action, the SCI

20   Support Centers actively participate in the violations complained of in this action.

21       52.   Because the SCI Support Centers, together with the SCI Cooperative, are owned

22   by SCI, directly or indirectly, the SCI Support Centers and other defendants share common

23   ownership.

24       53.   Because the SCI Support Centers are subject to centralized management

25   directions and decisions that govern the entities owned by SCI, including a single line

26   management model applicable to the entire SCI network, the SCI Support Centers and other

27   defendants share common management.

28

54.    Because the SCI Support Centers are subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, the SCI Support Centers and other defendants share functional integration of operations.

55.    Because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to employees, centrally control the payroll functions related to employees' employment, provide services and support with respect to all executive, management, administrative, accounting, data processing, and human resources services, training, and nationwide communications with employees, and are subject to a network-wide single line management model, the SCI Support Centers are not completely disassociated with respect to employees' employment.

56.    The SCI Support Centers may be deemed to share control of employees, directly or indirectly, by reason of the fact that they are under common control with the SCI Cooperative and the funeral home locations because they are all owned by SCI, directly or indirectly, and because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to Class Members, centrally control the payroll functions related to employees' employment, provide services and support with respect to all executive, management, administrative, accounting, data processing, and human resources services, training, and nationwide communications with employees, and are subject to a network-wide single line management model.

57.    Because the SCI Support Centers are part of an extensive and complex network through which SCI promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, the SCI Support Centers are an alter ego of SCI and the other entities SCI owns.

58.    Based upon the foregoing, the SCI Support Centers are liable to Class Members because of their active role in operating the business, their role in the violations complained of in this action, their status as employer, joint employer, single employer, alter ego, or otherwise

according to state statutory and common law.

### *The SCI Cooperative Is Liable to Class Members*

59.     The SCI Cooperative is a Delaware corporation which is owned, directly or indirectly, by SCI and the SCI Support Centers.

60.     The SCI Cooperative, through agreements with the SCI Support Centers, provides additional human resources services and support for the funeral home locations.

61.     On-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with the SCI Cooperative.

62.     The SCI Cooperative publishes and maintains the weekly newsletter "Frontline," and the "Global Village" intranet site, publications through which defendants communicate with their nationwide employees.

63.     The SCI Cooperative administers benefits by contracting with third-party benefit providers to respond to questions related to day-to-day benefits services, such as local provider questions, access to online services, and benefits provider contact information. To the extent that those third-party providers cannot respond to questions, the SCI Cooperative will respond.

64.     The SCI Cooperative maintains a payroll department and a database that contains information on current and former employees of SCI subsidiaries.

65.     SCI and the entities it owns directly or indirectly, including the SCI Cooperative, employ a single line management model in an effort to streamline the organization and ensure that operational efficiencies are achieved throughout the SCI network.

66.     The funeral home locations that SCI owns, directly or indirectly, are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles.

67.     Upon information and belief, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy,

Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

68.     Upon information and belief, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

69.     Upon information and belief, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action.

70.     Upon information and belief, the SCI Cooperative, in concert with others, plays a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Class Members.

71.     Upon information and belief, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents, make decisions that set employees' schedules, hours, and standard benefit levels.

72.     Upon information and belief, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents, make decisions that set standard pay scales.

73.     Upon information and belief, the SCI Cooperative determines and drafts policies, answers questions regarding human resources issues and policies, resolves issues regarding policies and their application, counsels locations on human resources issues, and communicates with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

74.     Upon information and belief, the SCI Cooperative provides employees with information regarding benefit plans and providers, oversees the implementation and execution of benefit plans, retains ultimate authority for providing information and responding to questions regarding the benefit plans, maintains records regarding the benefit plans, makes determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and is responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

75.     Upon information and belief, the SCI Cooperative maintains payroll records regarding employees and, in concert with others, the SCI Cooperative has the authority to, and does, through its agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

76.     Upon information and belief, the SCI Cooperative's functions in providing services and support regarding human resources, training, benefits administration, and payroll include a function maintaining and directing a single, integrated set of operations across the SCI network.

77.     Upon information and belief, the SCI Cooperative is responsible for, and subject to, centralized management directions and decisions.

78.     The SCI Cooperative is owned, directly or indirectly, by defendants SCI and the SCI Support Centers.  Additionally, SCI owns the SCI Support Centers, directly or indirectly.

79.     Upon information and belief, the SCI Cooperative is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner.  This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

80.     Because the SCI Cooperative has authority to hire or fire Class Members, provides day-to-day support regarding human resources issues, including the hiring and firing

of Class Members, and controls the drafting and enforcement of the policies which govern the hiring and firing of employees, the SCI Cooperative has the power to hire and fire employees.

81.     Because the SCI Cooperative has authority to establish employees' work schedules and/or conditions of employment, provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, the SCI Cooperative supervises and controls employees' work schedules and/or conditions of employment.

82.     Because the SCI Cooperative has authority to establish employees' rate and method of payment and centrally control payroll functions, the SCI Cooperative determines the rate and method of employees' payment.

83.     Because the SCI Cooperative keeps centralized records, including a database, regarding employees' employment records, the SCI Cooperative maintains employees' employment records.

84.     For all of the foregoing reasons, among others, including the SCI Cooperative's human resources services and support, training function, publication of communications across the SCI network, administration of benefit programs, and maintenance of the payroll department, the SCI Cooperative provides centralized control over defendants' labor relations.

85.     Because the SCI Cooperative provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, it is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly as it relates to the employment of Class Members.

86.     Because the SCI Cooperative is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or

-13-

1  non-compliance with the state and common laws asserted in this action, the SCI Cooperative

2  actively participates in the violations complained of in this action.

3      87.   Because the SCI Cooperative, together with the SCI Support Centers, is owned

4  by SCI, directly or indirectly, the SCI Cooperative and other defendants share common

5  ownership.

6      88.   Because the SCI Cooperative is subject to centralized management directions and

7  decisions that govern the entities owned by SCI, including a single line management model

8  applicable to the entire SCI network, the SCI Cooperative and other defendants share common

9  management.

10      89.   Because the SCI Cooperative is subject to a single line management model

11  applicable to the entire SCI network for the purpose of streamlining the organization and

12  achieving operational efficiencies, the SCI Cooperative and other defendants share functional

13  integration of operations.

14      90.   Because the SCI Cooperative controls the drafting and enforcement of the

15  employment and human resources policies related to employees, centrally controls the payroll

16  functions related to employees' employment, provides services and support with respect to

17  human resources, training, and nationwide communications with employees, and is subject to a

18  network-wide single line management model, the SCI Cooperative is not completely

19  disassociated with respect to employees' employment.

20      91.   The SCI Cooperative may be deemed to share control of employees, directly or

21  indirectly, by reason of the fact that it is under common control with the SCI Support Centers

22  and the funeral home locations because they are all owned by SCI, directly or indirectly, and

23  because the SCI Cooperative controls the drafting and enforcement of the employment and

24  human resources policies related to employees, centrally controls the payroll functions related

25  to employees' employment, provides services and support with respect to human resources,

26  training, and nationwide communications with employees, and is subject to a network-wide

27  single line management model.

28

92.   Because the SCI Cooperative is part of an extensive and complex network through which SCI promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, the SCI Cooperative is an alter ego of SCI and the other entities SCI owns.

93.   Based upon the foregoing, the SCI Cooperative is liable to Class Members because of its active role in operating the business, its role in the violations complained of in this action, its status as employer, joint employer, single employer, alter ego, or otherwise according to state statutory and common law.

***SCI Is Liable to Class Members***

94.   Defendant SCI is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019.

95.   SCI owns, directly or indirectly, various funeral home locations and various other companies or entities, including the SCI Cooperative and the SCI Support Centers, in a nationwide enterprise.

96.   SCI and the entities it owns directly or indirectly, including the SCI Cooperative and the SCI Support Centers, employ a single line management model in an effort to streamline the organization and ensure that operational efficiencies are achieved throughout the SCI network.

97.   The funeral home locations that SCI owns, directly or indirectly, are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles.

98.   Upon information and belief, at all relevant times all functions at all entities in the SCI network, including the SCI Cooperative and the SCI Support Centers, reported to SCI, directly or indirectly.

99.   Upon information and belief, at all relevant times SCI maintained control and authority, directly or indirectly, over all functions at the entities in the SCI network, including the SCI Cooperative and the SCI Support Centers.

100.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

101.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning advising defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

102.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning defendants' compliance or non-compliance with the state and common laws asserted in this action.

103.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning reviewing and counseling defendants regarding employment decisions, including hiring and firing of Class Members.

104.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning employees' schedules, hours and standard benefit levels.

105.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning standard pay scales.

106.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the determination and drafting of policies, answering questions regarding human resources issues and policies, resolving issues regarding policies and their application, counseling locations on human resources issues, and

1   communicating with employees about company issues and human resources issues and
2   policies, including issues related to hours worked and payment for such hours worked.

3       107.   Upon information and belief, SCI, in concert with others, has the authority to,
4   and does, through its agents, make decisions concerning providing employees with information
5   regarding benefit plans and providers, overseeing the implementation and execution of benefit
6   plans, providing information and responding to questions regarding the benefit plans,
7   maintaining records regarding the benefit plans, making determinations, either directly or
8   indirectly, regarding the scope and amount of benefits available to employees, and providing
9   employees, directly or indirectly, with information regarding their benefits, including benefits
10  statements and information regarding their 401(k) plans.

11      108.   Upon information and belief, SCI, in concert with others, has the authority to,
12  and does, through its agents, make decisions concerning the issuance of payroll checks,
13  directly or indirectly.

14      109.   SCI, in concert with others, has the authority to, and does, through its agents,
15  make decisions concerning maintaining and directing a single, integrated set of operations
16  across the SCI network.

17      110.   Upon information and belief, SCI, in concert with others, has the authority to,
18  and does, through its agents, make decisions concerning centralized management directions
19  and decisions.

20      111.   Upon information and belief, SCI is part of an extensive and complex network of
21  corporations which SCI has created and owns in an effort to operate its nationwide locations in
22  a unified, consistent manner. This network promotes a fraud or injustice, in that it attempts to
23  avoid liability for paying its common employees and prevents employees from accurately
24  identifying their employers.

25      112.   Because SCI, in concert with others, has the authority to, and does, through its
26  agents, make decisions concerning hiring or firing employees, providing support regarding
27  human resources issues, including the hiring and firing of Class Members, and controlling the
28

1 drafting and enforcement of the policies which govern the hiring and firing of employees, SCI

2 has the power to hire and fire employees.

3    113.    Because SCI, in concert with others, has the authority to, and does, through its

4 agents, make decisions concerning employees' work schedules and/or conditions of

5 employment, providing support regarding human resources issues, including Class Members'

6 work schedules and/or conditions of employment, controlling the drafting and enforcement of

7 the policies which govern employees' schedules and/or conditions of employment, and

8 administering employees' benefit programs, SCI supervises and controls employees' work

9 schedules and/or conditions of employment.

10    114.    Because SCI, in concert with others, has the authority to, and does, through its

11 agents, make decisions concerning employees' rate and method of payment and centrally

12 controlling payroll functions, SCI determines the rate and method of employees' payment.

13    115.    Because SCI, in concert with others, has the authority to, and does, through its

14 agents, make decisions concerning centralized records, including a database, regarding

15 employees' employment records, SCI maintains employees' employment records.

16    116.    For all of the foregoing reasons, among others, including SCI's authority and

17 exercise of authority with respect to human resources services and support, training function,

18 publication of communications across its network, administration of benefit programs, and

19 maintenance of the payroll department, SCI provides centralized control over defendants' labor

20 relations.

21    117.    Because SCI, in concert with others, has the authority to, and does, through its

22 agents, make decisions concerning human resources issues, including employees' work

23 schedules and/or conditions of employment, controlling the drafting and enforcement of the

24 policies which govern employees' schedules and/or conditions of employment, and

25 administering employees' benefit programs, it plays a central role in operations of defendants'

26 business functions, particularly in regards to the employment of Class Members.

27    118.    Because SCI, in concert with others, has the authority to, and does, through its

28 agents, make decisions concerning the illegal policies complained of in this case, advising of

-18-
AMENDED COMPLAINT-CLASS ACTION
*Bryant et al v. Service Corp. Int'l. et al* - Case No. RG 07359593

defendants' agents on the enforcement of the illegal policies complained of in this case and ensuring defendants' compliance or non-compliance with the state and common laws asserted in this action, SCI plays a central role in the violations complained of in this action.

119.   Because SCI owns, directly or indirectly, the SCI Cooperative and the SCI Support Centers, SCI and the other defendants share common ownership.

120.   Because SCI maintains and is subject to centralized management directions and decisions that govern the entities it owns, directly or indirectly, including a single line management model applicable to the entire SCI network, SCI and the other defendants share common management.

121.   Because SCI maintains and is subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, SCI and the other defendants share functional integration of operations.

122.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning drafting and enforcing employment and human resources policies related to employees, centrally controlling the payroll functions related to employees' employment, providing services and support with respect to human resources, training, and nationwide communications with employees, and is subject to a network-wide single line management model, SCI is not completely disassociated with respect to employees' employment.

123.   SCI may be deemed to share control of employees, directly or indirectly, by reason of the fact that it is under common control with the SCI Cooperative, the SCI Support Centers and the funeral home locations, all of which are owned by SCI, directly or indirectly, and because SCI plays a central role in the drafting and enforcement of the employment and human resources policies related to employees, centrally controlling the payroll functions related to employees' employment, providing services and support with respect to human resources, training, and nationwide communications with employees, and maintains and is subject to a network-wide single line management model.

124.    Because SCI maintains and is part of an extensive and complex network through which it promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, SCI is an alter ego of the other defendants and the other entities it owns.

125.    Based upon the foregoing, SCI is liable to employees because of its central role in operating the business, its role in the violations complained of in this action, its status as employer, joint employer, single employer, alter ego, or otherwise according to state statutory and common law.

***Jane D. Jones Is Liable to Class Members***

126.    Defendant Jane D. Jones has acted as Vice President of Human Resources for SCI since 2005.

127.    Ms. Jones oversees human resources, training and education, and payroll and commission services for approximately 20,000 employees in North America.

128.    Upon information and belief, Ms. Jones is responsible for, provides direction and control over, and is authorized to direct all aspects of human resources functions across SCI's network.

129.    Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

130.    Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community

-20-

1   Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break

2   Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and

3   the policy regarding the calculation of Class Members' overtime.

4        131.   Upon information and belief, due in part to her role of overseeing human

5   resources, training and education, and payroll and commission services, in concert with others,

6   Ms. Jones actively ensures defendants' compliance or non-compliance with the state and

7   common laws asserted in this action.

8        132.   Upon information and belief, Ms. Jones, in concert with others, is actively

9   involved in reviewing and counseling defendants regarding employment decisions, including

10  hiring and firing of Class Members.

11       133.   Upon information and belief, Ms. Jones, in concert with others, is actively

12  involved in decisions that set employees' schedules, hours and standard benefit levels.

13       134.   Upon information and belief, Ms. Jones, in concert with others, is actively

14  involved decisions that set standard pay scales.

15       135.   Upon information and belief, Ms. Jones, in concert with others, is actively

16  involved in the determination and drafting of human resources policies, the resolution of issues

17  and disputes regarding policies and their application, the counseling locations receive

18  regarding human resources issues, and communications with employees about human

19  resources issues and policies.

20       136.   Upon information and belief, Ms. Jones, in concert with others, is actively

21  involved in defendants' employment and human resources records, including the systems for

22  keeping and maintaining those records.

23       137.   Upon information and belief, Ms. Jones, in concert with others, is actively

24  involved in training and education functions across SCI's network.

25       138.   Upon information and belief, Ms. Jones, in concert with others, is actively

26  involved in determining the type and scope of training employees must attend as well as any

27  compensation they receive for attending training.

28

139.    Upon information and belief, Ms. Jones, in concert with others, is actively involved in payroll and commission functions across SCI's network.

140.    Upon information and belief, Ms. Jones, in concert with others, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

141.    Upon information and belief, Ms. Jones, in concert with others, is actively involved in benefit plans across SCI's network.

142.    Upon information and belief, Ms. Jones, in concert with others, is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

143.    Because Ms. Jones has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Ms. Jones has the power to hire and fire employees.

144.    Because Ms. Jones has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Jones supervises and controls employees' work schedules and/or conditions of employment.

145.    Because Ms. Jones has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Ms. Jones determines the rate and method of employees' payment.

146.   Because Ms. Jones has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Jones maintains employees' employment records.

147.   Because Ms. Jones provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Class Members.

148.   Because Ms. Jones is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action, Ms. Jones actively participates in the violations complained of in this action.

149.   Based upon the foregoing, Ms. Jones is liable to Class Members because of her active role in operating the business, her role in the violations complained of in this action, her status as an employer, or otherwise according to state statutory and common law.

*Gwen Petteway Is Liable to Class Members*

150.   Defendant Gwen Petteway has acted as Human Resources Director of defendant SCI Houston since 2005.

151.   Ms. Petteway's job responsibilities include familiarity with the human resources services of the subsidiary and affiliate companies of SCI, as well as training and benefits provided to those companies.

152.   As Human resources Director, Ms. Petteway's job responsibilities include providing and/or supervising day-to-day human resources services and support for defendants' funeral home locations.

153.   Upon information and belief, due in part to her role as Human Resources

-23-
AMENDED COMPLAINT-CLASS ACTION
*Bryant et al v. Service Corp. Int'l. et al - Case No. RG 07359593*

1  Director, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in

2  the creation of the illegal policies complained of in this case, including, but not limited to, the

3  On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs

4  Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy,

5  Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members'

6  overtime.

7      154.  Upon information and belief, due in part to her role as Human Resources

8  Director, Ms. Petteway, in concert with others, actively, and in a central role, advises

9  defendants' agents on the enforcement of the illegal policies complained of in this case,

10  including, but not limited to, the On Call Pay Policy, Community Work Policy, Training

11  Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-

12  Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding

13  the calculation of Class Members' overtime.

14      155.  Upon information and belief, due in part to her role as Human Resources

15  Director, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in

16  ensuring defendants' compliance or non-compliance with the state and common laws asserted

17  in this action.

18      156.  Upon information and belief, Ms. Petteway, in concert with others, is actively

19  involved, and plays a central role, in human resources functions across SCI's network.

20      157.  Upon information and belief, Ms. Petteway, in concert with others, is actively

21  involved, and plays a central role, in day-to-day human resources services and support.

22      158.  Upon information and belief, Ms. Petteway, in concert with others, is actively

23  involved, and plays a central role, in reviewing and counseling defendants regarding

24  employment decisions, including hiring and firing of Class Members.

25      159.  Upon information and belief, Ms. Petteway, in concert with others, is actively

26  involved, and plays a central role, in decisions that set employee's schedules, hours and

27  standard benefit levels.

28      160.  Upon information and belief, Ms. Petteway, in concert with others, is actively

1  involved, and plays a central role, in decisions that set standard pay scales.

2      161.   Upon information and belief, Ms. Petteway, in concert with others, is actively
3  involved, and plays a central role, in defendants' human resources policies, resolving issues
4  and disputes regarding policies and their applications, counseling locations receive regarding
5  human resources issues, providing day-to-day services and support regarding human resources
6  issues, and communications with employees about human resources issues and policies.

7      162.   Upon information and belief, Ms. Petteway, in concert with others, is actively
8  involved in defendants' employment and human resources records, including the systems for
9  keeping and maintaining those records.

10     163.   Upon information and belief, Ms. Petteway, in concert with others, is actively
11 involved, and plays a central role, in training and education functions across SCI's network.

12     164.   Upon information and belief, Ms. Petteway, in concert with others, is actively
13 involved, and plays a central role, in decisions that determine the type and scope of training
14 employees must attend as well as any compensation they receive for attending training.

15     165.   Upon information and belief, Ms. Petteway, in concert with others, is actively
16 involved, and plays a central role, in payroll and commission functions across SCI's network.

17     166.   Upon information and belief, Ms. Petteway, in concert with others, is actively
18 involved in the system for keeping and maintaining employees' payroll records, the timing and
19 method with which payment is conveyed to employees, and the manner and method in which
20 employees receive payroll information including their payroll checks.

21     167.   Upon information and belief, Ms. Petteway, in concert with others, is actively
22 involved, and plays a central role, in defendants' benefit plans.

23     168.   Upon information and belief, Ms. Petteway, in concert with others, is actively
24 involved, and plays a central role, in the type and scope of benefits available to employees, the
25 method and manner in which information regarding those plans is conveyed to employees, and
26 the system for keeping and maintaining records related to employees' benefits.

27     169.   Because Ms. Petteway has authority to hire or fire employees, provide and direct
28 support regarding human resources issues, including the hiring and firing of Class Members,

1 and control the drafting and enforcement of the policies which govern the hiring and firing of
2 employees, Ms. Petteway has the power to hire and fire employees.

3     170. Because Ms. Petteway has authority to establish work schedules and/or
4 conditions of employment, provide and direct support regarding human resources issues,
5 including work schedules and/or conditions of employment, control the drafting and
6 enforcement of the policies which govern employees' schedules and/or conditions of
7 employment, establish the type and scope of training employees receive, and administer
8 employees' benefit programs, including standard benefit levels and the type and scope of
9 benefits available to employees, Ms. Petteway supervises and controls employees' work
10 schedules and/or conditions of employment.

11     171. Because Ms. Petteway has authority to establish employees' rate and method of
12 payment and centrally control payroll functions, including standard pay scales, the provision of
13 payroll information, and the timing of payment, Ms. Petteway determines the rate and method
14 of employees' payment.

15     172. Because Ms. Petteway has authority with respect to defendants' centralized
16 records, including a database regarding employees' employment records, and systems for
17 keeping and maintaining payroll, benefits, and other employment-related records, Ms.
18 Petteway maintains employees' employment records.

19     173. Because Ms. Petteway is actively involved, or plays a central role, in day-to-day
20 support regarding human resources issues, including employees' work schedules and/or
21 conditions of employment, controls the drafting and enforcement of the policies which govern
22 employees' schedules and/or conditions of employment, and administers employees' benefit
23 programs, she is affirmatively, directly, and actively involved in operations of defendants'
24 business functions, particularly in regards to the employment of Class Members.

25     174. Because Ms. Petteway is actively involved, or plays a central role, in the creation
26 of the illegal policies complained of in this case, actively advises defendants' agents on the
27 enforcement of the illegal policies complained of in this case and actively ensures defendants'
28 compliance or non-compliance with the state and common laws asserted in this action, she

1   actively participates, or plays a central role, in the violations complained of in this action.

2       175.   Based upon the foregoing, Ms. Petteway is liable to Class Members because of

3   her status as an employer according to state statutory and common law.

4   ***Thomas Ryan Is Liable to Class Members***

5       176.   Defendant Thomas Ryan has acted as President and Chief Executive Officer of

6   SCI since in or around 2003.

7       177.   Upon information and belief, Mr. Ryan's responsibilities include actively

8   managing SCI and its network.

9       178.   Upon information and belief, in concert with others, Mr. Ryan has the authority

10   to, and does, make decisions that concern the policies defendants adopt and the implementation

11   of those policies.

12       179.   Upon information and belief, in concert with others, Mr. Ryan has the authority

13   to, and does, make decisions that concern defendants' operations, including functions related to

14   employment, human resources, training, payroll, and benefits.

15       180.   Upon information and belief, due in part to his role as President and Chief

16   Executive Officer, Mr. Ryan is actively involved in the creation of the illegal policies

17   complained of in this case, including, but not limited to, the On Call Pay Policy, Community

18   Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break

19   Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and

20   the policy regarding the calculation of Class Members' overtime.

21       181.   Upon information and belief, due in part to his role as President and Chief

22   Executive Officer, Mr. Ryan actively advises defendants' agents on the enforcement of the

23   illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy,

24   Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy,

25   Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time

26   Policy, and the policy regarding the calculation of Class Members' overtime.

27       182.   Upon information and belief, due in part to his role as President and Chief

28   Executive Officer, Mr. Ryan actively ensures defendants' compliance or non-compliance with

the state and common laws asserted in this action.

183.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Class Members.

184.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

185.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern standard pay scales.

186.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern defendants' human resources policies, the resolution issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

187.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern defendants' employment and human resources records, including the systems for keeping and maintaining those records.

188.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern training and education functions across SCI's network.

189.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any compensation they receive for attending training.

190.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern payroll and commission functions across SCI's network.

191.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the system for keeping and maintaining employees'

payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

192. Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern benefit plans across SCI's network.

193. Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

194. Because Mr. Ryan has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Class Members, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Ryan has the power to hire and fire employees.

195. Because Mr. Ryan has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Ryan supervises and controls employees' work schedules and/or conditions of employment.

196. Because Mr. Ryan has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Ryan determines the rate and method of employees' payment.

197. Because Mr. Ryan has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Ryan maintains

1 | employees' employment records.

2 | 198. Because Mr. Ryan provides day-to-day support regarding human resources
3 | issues, including employees' work schedules and/or conditions of employment, controls the
4 | drafting and enforcement of the policies which govern employees' schedules and/or conditions
5 | of employment, and administers employees' benefit programs, he is affirmatively, directly, and
6 | actively involved in operations of the defendants' business functions, particularly in regards to
7 | the employment of Class Members.

8 | 199. Because Mr. Ryan is actively involved in the creation of the illegal policies
9 | complained of in this case, actively advises defendants' agents on the enforcement of the
10 | illegal policies complained of in this case and actively ensures defendants' compliance or non-
11 | compliance with the state and common laws asserted in this action, he actively participates in
12 | the violations complained of in this action.

13 | 200. Based upon the foregoing, Mr. Ryan is liable to Class Members because of his
14 | active role in operating the business, his status as an employer, or according to state statutory
15 | and common law.

16 | ***Curtis Briggs Is Liable to Class Members***

17 | 201. Defendant Curtis Briggs is President and/or Vice President of various entities
18 | owned by SCI, some of which are also related to the SCI Cooperative and/or the SCI Support
19 | Centers.

20 | 202. Mr. Briggs is Vice President for the General Partner of SCI Eastern; Vice
21 | President for the General Partner of SCI Houston; President and/or Vice President of the SCI
22 | Cooperative; President and/or Vice President of SCI Western.

23 | 203. Additionally, Mr. Briggs has executed employment contracts with various
24 | executives in his role as Vice President of SCI Executive Services, Inc.

25 | 204. Upon information and belief, Mr. Briggs's responsibilities include actively
26 | managing the entities for which he is an officer and the defendants' network.

27 | 205. Upon information and belief, in concert with others, Mr. Briggs has the authority
28 | to, and does, make decisions that concern the policies defendants adopt and for the

1  implementation of those policies.

2  206.   Upon information and belief, in concert with others, Mr. Briggs has the authority
3  to, and does, make decisions that concern defendants' operations, including functions related to
4  employment, human resources, training, payroll, and benefits.

5  207.   Upon information and belief, due in part to his numerous roles, Mr. Briggs is
6  actively involved in the creation of the illegal policies complained of in this case, including,
7  but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation
8  Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for
9  Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation
10  of Class Members' overtime.

11  208.   Upon information and belief, due in part to his numerous roles, Mr. Briggs
12  actively advises defendants' agents on the enforcement of the illegal policies complained of in
13  this case, including, but not limited to, the On Call Pay Policy, Community Work Policy,
14  Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy,
15  Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy
16  regarding the calculation of Class Members' overtime.

17  209.   Upon information and belief, due in part to his numerous roles, Mr. Briggs
18  actively ensures defendants' compliance or non-compliance with the state and common laws
19  asserted in this action.

20  210.   Upon information and belief, in concert with others, Mr. Briggs has the authority
21  to, and does, make decisions that concern the reviewing and counseling of defendants
22  regarding employment decisions, including hiring and firing of Class Members.

23  211.   Upon information and belief, in concert with others, Mr. Briggs has the authority
24  to, and does, make decisions that concern the setting of employees' schedules, hours and
25  standard benefit levels.

26  212.   Upon information and belief, in concert with others, Mr. Briggs has the authority
27  to, and does, make decisions that concern the setting of standard pay scales.

28  213.   Upon information and belief, in concert with others, Mr. Briggs has the authority

1  to, and does, make decisions that concern defendants' human resources policies, issues and
2  disputes regarding policies and their applications, the counsel locations receive regarding
3  human resources issues, and communications with employees about human resources issues
4  and policies.

5     214.   Upon information and belief, in concert with others, Mr. Briggs has the authority
6  to, and does, make decisions that concern defendants' employment and human resources
7  records, including the systems for keeping and maintaining those records.

8     215.   Upon information and belief, in concert with others, Mr. Briggs has the authority
9  to, and does, make decisions that concern training and education functions across defendants'
10 network.

11    216.   Upon information and belief, in concert with others, Mr. Briggs has the authority
12 to, and does, make decisions that concern the type and scope of training employees must attend
13 as well as any compensation they receive for attending training.

14    217.   Upon information and belief, in concert with others, Mr. Briggs has the authority
15 to, and does, make decisions that concern payroll and commission functions across defendants'
16 network.

17    218.   Upon information and belief, in concert with others, Mr. Briggs has the authority
18 to, and does, make decisions that concern the system for keeping and maintaining employees'
19 payroll records, the timing and method with which payment is conveyed to employees, and the
20 manner and method in which employees receive payroll information including their payroll
21 checks.

22    219.   Upon information and belief, in concert with others, Mr. Briggs has the authority
23 to, and does, make decisions that concern benefit plans across defendants' network.

24    220.   Upon information and belief, in concert with others, Mr. Briggs has the authority
25 to, and does, make decisions that concern the type and scope of benefits available to
26 employees, the method and manner in which information regarding those plans is conveyed to
27 employees, and the system for keeping and maintaining records related to employees' benefits.

28    221.   Because Mr. Briggs has authority to hire or fire employees, provide and direct

support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Briggs has the power to hire and fire employees.

222.   Because Mr. Briggs has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Briggs supervises and controls employees' work schedules and/or conditions of employment.

223.   Because Mr. Briggs has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Briggs determines the rate and method of employees' payment.

224.   Because Mr. Briggs has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Briggs maintains employees' employment records.

225.   Because Mr. Briggs provides support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Class Members.

226.   Because Mr. Briggs is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, and actively ensures defendants' compliance or non-

1  compliance with the state and common laws asserted in this action, Mr. Briggs actively

2  participates in the violations complained of in this action.

3      227.   Based upon the foregoing, Mr. Briggs is liable to Class Members because of his

4  active role in operating the business, his status as an employer, or according to state statutory

5  and common law.

6  **IV.   CLASS ACTION ALLEGATIONS**

7      228.   The claims arising under the state wage laws set forth below are properly

8  maintainable as a class action under Cal. Civ. Proc. § 382.

9      229.   Class Members are those employees and former employees of defendants who

10  were suffered or permitted to work by defendants and not paid their regular or statutorily

11  required rate of pay for all hours worked.

12      230.   The class size is believed to be over 10,000 employees, a significant percentage

13  of whom are within California.

14      231.   Common questions of law and fact predominate in this action because the claims

15  of all Class Members are based on whether defendants' practice of not paying nonexempt

16  employees their regular or statutorily required rate of pay for all hours worked violates

17  California state law and the state laws of the various other states in which defendants do

18  business.

19      232.   Common questions of law and fact include, but are not limited to, the following:

20      a.   Whether Class Members are entitled to payment for all of the time they
           worked for defendants.

21

22      b.   Whether Class Members are entitled to payment at overtime rates for all of
           the time they worked for defendants in excess of 40 hours per week and/or in
23         excess of 8 hours per day.

24      c.   Whether defendants' employment policies violated defendants' legal
           obligation to pay Class Members for all of the time they worked for
25         defendants.

26      d.   Whether defendants' employment policies violated defendants' legal
27         obligation to pay Class Members at overtime rates for all of the time they
           worked for defendants in excess of 40 hours per week and/or in excess of 8
28

1  hours per day.

2  233.  The named plaintiffs' claims are typical of, and concurrent to, the claims of Class

3  Members, because they are similarly situated.  The named plaintiffs and all Class Members

4  were subjected to defendants' policies and practices of failing to compensate employees for

5  overtime work.

6  234.  The named plaintiffs will fairly and adequately represent and protect the interests

7  of Class Members.  The class counsel, Rosen, Bien & Galvan, LLP, Dolin, Thomas &

8  Solomon LLP and Margolis Edelstein, are qualified and able to litigate Class Members'

9  claims.  The class counsel are experienced in employment litigation, and their attorneys are

10 experienced in class action litigation, including class actions arising under federal and state

11 wage and hour laws.

12 235.  There are no known conflicts of interest between and among Class Members.

13 236.  A class action is superior to other available means for the fair and efficient

14 adjudication of this controversy.  Individual joinder of all Class Members is not practicable,

15 and questions of law and fact common to the Class predominate over any questions affecting

16 only individual members of the Class.  Each Class Member has been damaged and is entitled

17 to recovery by reason of defendants' illegal policy and/or practice of permitting, suffering,

18 and/or failing to pay employees their regular or statutorily required rate of pay for all hours

19 worked.  Class action treatment will allow those similarly situated persons to litigate their

20 claims in the manner that is most efficient and economical for the parties and the judicial

21 system.

22

23

24

25 **V.  FACTUAL BACKGROUND**

26 237.  Class Members are those employees and former employees of defendants who

27 were suffered or permitted to work by defendants and not paid their regular or statutorily

28 required rate of pay for all hours worked.

-35-
AMENDED COMPLAINT-CLASS ACTION
*Bryant et al v. Service Corp. Int'l. et al - Case No. RG 07359593*

238. Defendants' policy and/or practice was to not compensate Class Members their regular or statutorily required rate of pay for work defendants suffered or permitted Class Members to perform.

239. Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

240. Defendants' practice is to be deliberately indifferent to violations of the statutory overtime requirements.

241. The failure to pay overtime is willful.

242. Examples of defendants' policies and practices to deprive Class Members of their earned wages and wage premiums are set forth below:

    a. Defendants implemented an "On Call Pay Policy." Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for all work performed.

    b. Defendants implemented a "Community Work Policy." Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

    c. Defendants' implemented a "Training Compensation Policy." Under the policy, defendants suffered or permitted their employees to take various types of training. Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

    d. Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

    e. Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for meal breaks. Defendants did, however, suffer and permit employees to perform work during such meal breaks, but

pursuant to defendants' "Meal Break Deduction Policy," time spent on meal "breaks" was still deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

f.   Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted employees to work overtime and therefore, employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

g.   Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted employees to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew such time had been worked, it had not been "recorded."

h.   Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Class Members' overtime.

243.   Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Class Members concerning their wages, hours and other conditions of employment.

244.   More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

245.   Defendants failed to pay full compensation to Class Members who are no longer employed by defendants promptly after those Class Members were discharged, laid off or resigned. In fact, defendants' failure to fully compensate those Class Members is continuing.

## FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA LABOR LAWS (by all plaintiffs against all defendants)

246.   The preceding paragraphs are incorporated as if fully set forth herein.

**Failure to Pay Overtime Compensation**

247.   Defendants willfully violated their obligations under California law, including those under California Labor Code §1194, *et seq.*, by failing to pay Class Members the legal overtime compensation applicable to Class Members.

248.   As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Immediately Pay Wages Upon Discharge/Layoff/Resignation**

249.   Defendants willfully violated their obligations under California law, including those under California Labor Code § 201, *et seq.*, by willfully failing to pay Class Members who have been discharged or laid off all wages earned and unpaid at the time of discharge or layoff.

250.   Defendants willfully violated their obligations under California law, including those under California Labor Code § 202, *et seq.*, by willfully failing to pay Class Members who have resigned all wages earned and unpaid at the time of resignation, or within 72 hours thereafter.

251.   Defendants did not pay Class Members who were discharged, were laid off or resigned their regular or statutorily required rate of pay for all hours worked, as required by California law. Defendants' failure to pay those amounts is ongoing.

252.   As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

253.   Defendants are liable to Class Members for statutory penalties, pursuant to California Labor Code § 203, in the amounts set forth therein.

**Failure to Provide Required Meal and Rest Periods**

254.   Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226.7 and 512, *et seq.*, by willfully failing to provide Class Members with legally required meal and rest periods.

255.   Defendants repeatedly and regularly interrupted Class Members' meal and rest periods and/or required Class Members to forego their meal and rest periods.

256.   Defendants failed to compensate Class Members for missed meal and rest breaks.

257.   As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Furnish Timely and Accurate Wage Statements**

258.   Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226(a) and 226.3, *et seq.*, by willfully failing to provide Class Members with timely and accurate wage statements as required by California law.

259.   As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

260.   Wherefore, Class Members request relief as described below.

## SECOND CAUSE OF ACTION

### STATE WAGE AND HOUR LAWS (by all plaintiffs against all defendants)

261.   The preceding paragraphs are incorporated as if fully set forth herein.

262.   Defendants willfully violated their obligations to properly compensate Class Members under the wage laws of the states in which defendants do business including:

    a.   Alaska Stat. § 23.10.050, *et seq.*;

    b.   Arizona Rev. Stat. § 23-201, *et seq.*;

    c.   Arkansas Code § 11-4-201, *et seq.*;

    d.   Colorado Rev. Stat. § 8-6-101, *et seq.*;  Colorado Code Regs. § 1103-1, *et seq.*;

    e.   Connecticut Gen. Stat. § 31-58, *et seq.*;

    f.   D.C. Code § 32-1001, *et seq.*;

    g.   820 Illinois Comp. Stat. 105/1, *et seq.*;  820 Illinois Comp. Stat. 105/12(a); 820 Illinois Comp. Stat. 115/1, *et seq.*;

    h.   Indiana Code § 22-2-2-1, *et seq.*;  Indiana Code § 22-2-2-4, *et seq.*;  Indiana Code § 22-2-5-1, *et seq.*;  Indiana Code § 22-2-9-2, *et seq.*;

    i.   Kansas Stat. § 44-1201, *et seq.*;

    j.   Kentucky Rev. Stat. § 337.010, *et seq.*;

    k.   Louisiana Rev. Stat. § 23:631, *et seq.*;

-39-

l.   Maine Rev. Stat. Tit. 26 § 665 *et seq.*;

m.  Maryland Code, Lab. & Empl. § 3-401, *et seq.*;

n.   Massachusetts Gen. Laws Ch. 151, § 1, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 148, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 100, *et seq.*;

o.   Michigan Comp. Laws § 408.381, *et seq.*;

p.   Minnesota Stat. § 177.21, *et seq.*;  Minnesota Stat. § 181.13, *et seq.*;

q.   Missouri Stat. § 290.500 *et seq.*;

r.   Montana Code § 39-3-401, *et seq.*;

s.   Nevada Rev. Stat. § 608.005, *et seq.*;

t.   New Hampshire Rev. Stat. § 279:1, *et seq.*;

u.   New Jersey Stat. § 34.11-56a, *et seq.*;

v.   New Mexico Stat. § 50-4-1, *et seq.*;

w.  New York Lab. Law § 160, *et seq.*;

x.   North Carolina Gen. Stat. § 95-25.1, *et seq.*;

y.   Ohio Rev. Code § 4111.01, *et seq.*;

z.   Oregon Rev. Stat. § 653.005, *et seq.*;

aa. 43 Pennsylvania Stat. § 333.101, *et seq.*;  43 Pennsylvania Stat. § 206.3, *et seq.*;

bb. 29 Laws of Puerto Rico §250, *et seq.*;

cc. Rhode Island Gen. Laws § 28-12-1, *et seq.*;

dd. South Carolina Code § 41-10-10, *et seq.*;

ee. Washington Rev. Code § 49.46.005, *et seq.*;

ff.  West Virginia Code § 21-5C-1, *et seq.*;

gg. Wisconsin Stat. § 104.001, *et seq.*

263.   As a direct and proximate cause of defendants' violations of these statutes, Class Members have suffered damages.

264.    Wherefore, Class Members request relief as described below.

## THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT/RESTITUTION (by all plaintiffs against all defendants)

265.    The preceding paragraphs are incorporated as if fully set forth herein.

266.    Defendants have received financial gain at the expense of Class Members.

267.    Defendants have received that financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit at the expense of Class Members.

268.    Defendants' willful failure to pay overtime wages for work performed for defendants has unjustly enriched defendants to the detriment of Class Members.  As a result of this conduct,  the common laws and state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin, imply a contract obligating defendants to make restitution to Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

269.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

270.    Wherefore, Class Members request relief as described below.

## FOURTH CAUSE OF ACTION

### CONVERSION (by all plaintiffs against all defendants)

271.    The preceding paragraphs are incorporated as if fully set forth herein.

272.    At all relevant times, defendants had and continued to have a legal obligation to pay Class Members all earnings and overtime due.  The wages belong to Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for

-41-

1    services performed are the property of the Class Members.

2         273.   In refusing to pay wages and overtime to Class Members, defendants knowingly,

3    unlawfully and intentionally took, appropriated and converted the wages and overtime earned

4    by Class Members for defendants' own use, purpose and benefit. At the time the conversion

5    took place, Class Members were entitled to immediate possession of the amount of wages and

6    overtime earned. As a result, Class Members have been denied the use and enjoyment of their

7    property and have been otherwise damaged in an amount to be proven at trial. This conversion

8    was willful, oppressive, malicious, and fraudulent and/or done with conscious disregard of the

9    rights of the Class Members. This conversion was concealed from Class Members.

10        274.   Defendants willfully violated their obligations under the common laws and the

11   state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District

12   of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky,

13   Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,

14   Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North

15   Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,

16   Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin and are liable to

17   Class Members.

18        275.   As a result of defendants' actions, Class Members were damaged and are entitled

19   to all funds converted by defendants with interest thereon, all profits resulting from such

20   conversion, and punitive or exemplary damages.

21        276.   Wherefore, Class Members request relief as described below.

22                              **FIFTH CAUSE OF ACTION**

23               **FRAUD AND DECEIT (by all plaintiffs against all defendants)**

24        277.   The preceding paragraphs are incorporated as if fully set forth herein.

25        278.   Defendants, through their corporate publications and through statements of their

26   agents, represented that wages would be paid legally and in accordance with defendants'

27   obligations pursuant to applicable federal and state laws. For example, defendants falsely

28   stated in their policy manuals that "[o]vertime is defined as any hours worked in excess of 40

1  hours per week as mandated by federal law. ... Nonexempt employees shall be paid at a rate of

2  one and one-half (1) times their hourly rate for all overtime hours worked."

3    279.   Defendants, however, at all times intended to violate applicable federal and state

4  laws by failing to pay Class Members their regular or statutorily required rate of pay for all

5  hours worked.

6    280.   These misrepresentations were material to the terms of Class Members'

7  employment contracts, and Class Members relied on the misrepresentations in agreeing to

8  accept and continue employment with defendants.  This reliance was reasonable, as Class

9  Members had every right to believe that defendants would abide by their obligations pursuant

10  to applicable federal and state law.

11    281.   Defendants willfully violated their obligations by committing fraud against Class

12  Members under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas,

13  California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho,

14  Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts,

15  Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire,

16  New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon,

17  Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia,

18  Washington, West Virginia, and Wisconsin and are liable to Class Members.

19    282.   As a direct and proximate cause of the fraud committed by defendants, Class

20  Members did not receive the statutorily mandated wages for overtime and suffered damages.

21    283.   Defendants acted maliciously when they committed the wrongful acts which

22  constitute this cause of action such that it warrants the imposition of punitive and exemplary

23  damages.

24    284.   Wherefore, Class Members request relief as described below.

25                           **SIXTH CAUSE OF ACTION**

26            **MISREPRESENTATION (by all plaintiffs against all defendants)**

27    285.   The preceding paragraphs are incorporated as if fully set forth herein.

28

286.   In particular, Class Members incorporate and refer to paragraphs 278 through 280 above, regarding the material misrepresentations made by defendants.

287.   When defendants hired Class Members, they represented to Class Members that they would be fully compensated for all services performed, as more fully set forth above.

288.   There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice and policy of failing to pay their employees their regular or statutorily required rate of pay for all hours worked.

289.   Class Members relied upon defendants' representations by performing work and services for defendants. This reliance was reasonable, as Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable federal and state law.

290.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin by misrepresenting to Class Members that they would be fully compensated for all services performed and are liable to Class Members.

291.   As a result of their reliance upon defendants' misrepresentations, Class Members suffered damages because they were not appropriately compensated with the regular or statutorily required rate of pay for all hours worked.

292.   As a direct and proximate result of defendants' negligent misrepresentation, Class Members suffered damages.

293.   Wherefore, Class Members request relief as described below.

## SEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT (by all plaintiffs against all defendants)

294.   The preceding paragraphs are incorporated as if fully set forth herein.

295.   By entering into an employment relationship, defendants and each Class Member entered into a contract for employment.

296.   Each such contract included an implied or express term that defendants agreed to fulfill all of their obligations pursuant to applicable state and federal law.

297.   Defendants willfully breached the implied contract term by failing to pay Class Members for all of the time Class Members worked and by failing to pay Class Members their regular or statutorily required rate of pay for all hours worked.

298.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin and are liable to Class Members.

299.   As a direct and proximate cause of defendants' breach of their contracts with Class Members, Class Members have suffered damages.

300.   Wherefore, Class Members request relief as described below.

## EIGHTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (by all plaintiffs against all defendants)

301.   The preceding paragraphs are incorporated as if fully set forth herein.

302.   The unwritten contract for at-will employment between Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good

1 faith and to refrain from doing any act that would violate any state or federal law governing the

2 employment relationship or any act that would deprive Class Members of the benefits of the

3 contract.

4     303.   Defendants breached the implied covenant of good faith and fair dealing by

5 failing to pay Class Members the wages and overtime that was due to Class Members.

6     304.   Defendants willfully violated their obligations under the common laws and the

7 state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District

8 of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky,

9 Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,

10 Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North

11 Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,

12 Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin and are liable to

13 Class Members.

14     305.   As a direct and proximate cause of defendants' breach of the implied covenant of

15 good faith and fair dealing, Class Members have suffered damages.

16     306.   Wherefore, Class Members request relief as described below.

17                   **NINTH CAUSE OF ACTION**

18     **QUANTUM MERUIT (by all plaintiffs against all defendants)**

19     307.   The preceding paragraphs are incorporated as if fully set forth herein.

20     308.   Defendants willfully violated their obligations by failing to pay Class Members

21 for the reasonable value of the services performed by Class Members for defendants under the

22 common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado,

23 Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa,

24 Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota,

25 Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New

26 Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico,

27 Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia,

28 and Wisconsin and are liable to Class Members under quantum meruit.

309. As a direct and proximate cause of defendants' failure to pay Class Members for the reasonable value of services performed by Class Members for defendants, Class Members suffered damages.

310. Wherefore, Class Members request relief as described below.

## TENTH CAUSE OF ACTION

### UNLAWFUL BUSINESS PRACTICES (by all plaintiffs against all defendants)

311. The preceding paragraphs are incorporated as if fully set forth herein.

312. Defendants' failure to pay Class Members for all time worked constitutes unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professional Code § 17200, et seq.

313. The conduct of defendants in failing to pay Class Members for all time worked constitutes and was intended to constitute unfair competition and unlawful unfair and fraudulent business acts and practices within the meaning of California Business and Professional Code § 17200, et seq.

314. As a result of defendants' violations of California Business and Professional Code § 17200, et seq., defendants have unjustly enriched themselves at the expense of Class Members.

315. To prevent their unjust enrichment, defendants should be required, pursuant to California Business and Professional Code §§ 17203 and 17204, to disgorge their illegal gains for purpose of making full restitution to all injured Class Members. Defendants should also be permanently enjoined from continuing their violations of California Business and Professional Code § 17200, et seq.

316. Defendants willfully violated their obligations under the California Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.) and are liable to Class Members.

317. Wherefore, Class Members request relief as described below.

## PRAYER FOR RELIEF

**WHEREFORE**, Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a)   an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)   an award of the value of Class Members' unpaid wages;

(c)   liquidated, compensatory, consequential and punitive damages;

(d)   an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Class Members' rights;

(e)   an award of pre- and post-judgment interest; and

(f)   such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Class Members demand a jury to hear and decide all issues of fact.

Respectfully Submitted,

ROSEN, BIEN & GALVAN, LLP

Date: January 25, 2008          By: _____

Sanford Jay Rosen, State Bar No. 62566
Maria V. Morris, State Bar No. 223903
Lori E. Rifkin, State Bar No. 244081
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 433-6830

DOLIN, THOMAS & SOLOMON LLP
J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Justin Cordello, NY Attorney No. 4131447
Annette Gifford, NY Attorney No. 4105870
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

MARGOLIS EDELSTEIN
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661
525 William Penn Place, Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256
Attorneys for Plaintiffs