STEVEN H. GURNEE, ESQ. SB# 66056
DAVID M. DANIELS, ESQ. SB# 170315
GURNEE & DANIELS LLP
2240 Douglas Boulevard, Suite 150
Roseville, CA 95661-3805
Telephone    (916) 797-3100
Facsimile    (916) 797-3131

Attorneys for Defendants

ALDERWOODS GROUP, INC., PAUL A. HOUSTON
SERVICE CORPORATION INTERNATIONAL,
SCI FUNERAL AND CEMETERY PURCHASING
COOPERATIVE, INC., SCI EASTERN MARKET
SUPPORT CENTER, L.P., SCI WESTERN MARKET
SUPPORT CENTER, L.P., and SCI HOUSTON
MARKET SUPPORT CENTER, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et al., on behalf of themselves and all other employees and former employees similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ALDERWOODS GROUP, INC., PAUL A. HOUSTON, SERVICE CORPORATION INTERNATIONAL, SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC., SCI EASTERN MARKET SUPPORT CENTER, L.P., SCI WESTERN MARKET SUPPORT CENTER, L.P., a/k/a SCI WESTERN MARKET SUPPORT CENTER, INC., and SCI HOUSTON MARKET SUPPORT CENTER, L.P.<br><br>Defendants. | No. CV 08-01184 SI<br><br>**Judge Susan Illston**<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>DATE: MAY 9, 2008<br>TIME: 9:00 A.M.<br>DEPT: 10 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**
Case No.: CV 08-01184 SI                                                                          0

Alderwoods Group, Inc., Paul A. Houston, Service Corporation International, SCI Funeral And Cemetery Purchasing Cooperative, Inc., SCI Eastern Market Support Center, L.P., SCI Western Market Support Center, L.P., and SCI Houston Market Support Center, L.P. (hereafter "Defendants") submit the following Points & Authorities in Opposition to Plaintiffs' Motion to Remand.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs seek an order remanding this case to state court based on their claim that Defendants have failed to meet their burden of proving by a preponderance of the evidence that the "amount in controversy" does not exceed $5 million as required for this Court to exercise jurisdiction under CAFA. This contention is somewhat mystifying given that Plaintiffs' previously argued and admitted that there was CAFA jurisdiction over their state law claims that they previously filed in the federal court for the Western District of Pennsylvania ("Penn Action").[1] It is evident that they are merely engaging in blatant forum shopping, hoping that their inconsistent position asserted in the Penn Action that there was CAFA jurisdiction over their state law claims would go unnoticed by this court.

Be that as it may, and despite a clear effort by plaintiffs to artfully plead around the CAFA jurisdiction that they previously admitted existed, it is facially apparent from the Amended Complaint's allegations and the evidence discussed below that the "amount in controversy" substantially exceeds the $5 million CAFA jurisdiction threshold. This is not, as plaintiffs argue, a questionable or even doubtful case of removal, and they know it. Their reliance upon cases involving general pre-CAFA removal jurisdiction in arguing that questionable removal cases are to be remanded is misplaced, since the Congressional intent and cases interpreting CAFA clearly instructs that its jurisdictional provisions should be read broadly, with a strong preference that interstate class action, like the present one, should be heard in federal court. Should the court have any doubt as to whether the CAFA jurisdiction has been met, then it should permit defendants to conduct jurisdictional discovery. Such discovery is especially appropriate in this case where the

---

[1] Request for Judicial Notice ("RJN") Exhibit A, Plaintiffs' Response And Memorandum Of Law In Opposition to Defendants' Motion To Dismiss Certain Claims and To Strike Class Action Allegations and Certification Request In Plaintiffs Class Action Complaint, page 10; RJN Exhibit B, June 8, 2007 Hearing Transcript at 23:1-24:8.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND                1
Case No.: CV 08-01184 SI

plaintiffs previously admitted that there was CAFA jurisdiction over their state law claims, but have now artfully plead their Amended Complaint in purposefully vague allegations in attempting to avoid disclosing to the court the true nature and extent of their claims that would readily establish CAFA jurisdiction. For these, and all of the other reasons set forth below, the court should deny plaintiffs' motion for remand.

## II. THE ALLEGATIONS OF THE AMENDED COMPLAINT AND EVIDENCE SUBMITTED BY DEFENDANTS PROVE THAT IT IS MORE LIKELY THAN NOT THAT THE "AMOUNT-IN-CONTROVERSY" IS SUBSTANTIALLY MORE THAN $5 MILLION

"CAFA's legislative history instructs that its jurisdictional provisions should be read broadly, with a strong preference that interstate class actions should be heard in Federal court if removed by any defendant.'" (*Genton v. Vestin Realty Mortgage II, Inc.*, 2007 WL 951838 at * 1 (S.D.Cal. 2007), citing 151 Cong. Rec. H723-01, H-727 (2005) (statement of Congressman Sensenbrenner).) Plaintiffs challenge the propriety of defendants' removal based solely on the ground of the requisite "amount in controversy". Where, as here, the complaint does not allege a specific amount in controversy, the removing defendant bears the burden of proving by a preponderance of the evidence that the "amount in controversy" exceeds the CAFA statutory minimum at the time of removal. (*Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 374, 376-377 (9th Cir. 1996.); *Loudermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1004 (9th Cir. 2007).) In order to meet this standard, the "defendant must prove that it is *more likely than not* that the amount in controversy exceeds that amount" *assuming the truth of the allegations plead in the complaint*. (*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 298, 404 (9th Cir. 1996) (emphasis added) (citation omitted).)

Numerous courts have recognized that this burden is not "daunting," as the removing defendant is not obligated to "research, state, and prove the plaintiff's claims for damages." (*Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504 at *2 (E.D. Cal.), citing *McCraw v. Lyons*, 863 F.Supp. 430, 434. (W.D.Ky. 1994.).) There is also "no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and damages with respect to plaintiff or the putative class members at this premature (pre-certification) state of the

litigation." (*Ibid.* at *5, citing *McCraw v. Lyons, supra,* 863 F. Supp. at 434.) This is quite *unlike* the "legal certainty" standard of proof required by the removing party where the complaint alleges a dollar amount in controversy which does not exceed the jurisdictional limit. (*Loudermilk v. U.S. Bank Nat'l Ass'n,* 479 F.3d 994, 998 (9th Cir. 2007).)

In evaluating a motion to remand, the court must first consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. (*Singer v. State Farm Mut. Auto. Ins. Co., supra,* 116 F.3d at 377.) In measuring the amount in controversy, the court must assume that the allegations of the complaint are true, and that a jury will return a verdict for the plaintiff on *all* claims made in the complaint. (*Kenneth Rothschild Trust v. Morgan Stanley Dean Whitter,* 199 F.Supp.2d 993, 1001 (C.D.Cal. 2002.).) The calculation of the amount in controversy takes into account claims for "general" damages, "special" damages, punitive damages if recoverable as a matter of law, and attorneys' fees recoverable by statute or contract. (*Richmond v. Allstate Ins. Co.,* 897 F.Supp. 447, 449-450 (S.D.Cal.,1995).)

The critical issue is not the ultimate or provable amount of damages but, rather, the amount put in controversy by the plaintiff's complaint. (*Scherer v. Equitable Life Assurance Society of the United States,* 347 F.3d 394, 399 (2nd Cir. 2003.).) The court may also consider facts in the removal petition as well as evidence submitted by the parties, including "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." (*Id.*) Finally, the court may also consider supplemental evidence later proferred by the removing defendant which was not originally included in the removal notice. (*Muniz v. Pilot Travel Center, supra,* 2007 WL 1302504 at *4.)

Defendants vigorously dispute plaintiffs' allegations that they committed any of the violations alleged in the Amended Complaint. Nonetheless, as demonstrated below, there is simply no doubt that the potential amount put in controversy by the plaintiffs, assuming the validity of all of their specious claims as alleged in the Amended Complaint, substantially exceeds the $5 million CAFA jurisdictional threshold. The "amount in controversy" for all of the plaintiffs' spurious claims alleged in the Amended Complaint, assuming that they could prove the maximum damages for all such claims, exceeds $29,187,860.4. This amount includes: $4,260,000

for the alleged inaccurate wage statement violations; $2,121,926.40 for the alleged waiting time penalties; $17,707,542 for the alleged missed meal and rest periods; and $5,098,392 for the alleged unpaid overtime.

### III. THE CALCULATION OF THE AMOUNT IN CONTROVERSY IS BASED UPON ALL OF THE CLAIMS ASSERTED BY ALL OF THE HOURLY NON-EXEMPT EMPLOYEES WHO WERE ALLEGEDLY EMPLOYED BY SCI'S SUBSIDIARY ENTITIES AND ALDERWOODS FOR THE PERIOD OF DECEMBER 5, 2003 TO FEBRUARY 28, 2008

The number of class members used to calculate the "amount in controversy" includes all of the hourly non-exempt former and present employees that worked for SCI's subsidiaries and Alderwoods. The Amended Complaint alleges that the class members in this action consists of all of the Alderwoods "non-exempt" "employees and former employees" that were "not paid their regular or statutorily required rate of pay for all hours worked" that were employed prior to its merger with an SCI subsidiary.[2] (Amended Complaint ¶¶ 12, 13, 14, 21, 59, 61, and 67.) Further, each of the ten causes of action alleges that they are all asserted "by all plaintiffs against all defendants". (Amended Complaint, ¶¶ 76-147.)

The period of time used to calculate the amount in controversy is December 5, 2003 to November 28, 2006. The Tenth Cause of Action for Unlawful Business Practices pleads a violation of California Business and Professions Code §17200 *et seq.* based upon various violations of California's wage and hour law. (Amended Complaint, ¶¶ 311 – 317.) Arguably, a violation of that section is subject to a four-year statute of limitations. (*Cortez v. Purolator Air Filtration Products Co,.* 23 Cal.4th 163, 179-180.) The earliest date of any alleged violations, therefore, would be December 5, 2003, four years prior to this action been filed in underlying state court action on December 5, 2007 (RJN Exhibit E). The allegations also expressly also limit the class period to prior to November 28, 2006. (Amended Complaint, ¶¶ 13, 14.)

---

[2] RJN, Exhibit C, paragraphs 2 and 8 in Plaintiffs' Motion for Leave to File Second Amended Complaint in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33, United States District Court for the Western District of Pennsylvania wherein plaintiffs admit that the merger occurred on November 28, 2006.

Based upon the above, the total number of nationwide class members for determining the "amount in controversy" is at least 2,450.[3] (Joe Schmuck Declaration ("JS Dec."). par. 10.) The total number of nationwide class members is consistent with Plaintiffs' admission in this action that "[t]he class size is believed to be several thousands of employees, a significant percentage of whom are within California". (Amended Complaint ¶ 59.) The total number of class members that worked in California for determining the "amount in controversy" is 1,065. (JS Dec. pars. 11.) That amount of class members employed in California is consistent with plaintiffs' admission that a "significant percentage" of the over 10,000 class members are within California. Further, the total number of class members that worked in California whose employment was terminated is 561 (JS Dec. par. 12.)

### IV. PLAINTIFFS' CLAIMS OF ALLEGEDLY BEING PROVIDED INACCURATE AND UNTIMELY WAGE STATEMENTS CLEARLY ESTABLISH CAFA JURISDICTION

Where a statutory maximum is specified, the courts may consider the maximum statutory penalty available in determining whether the CAFA jurisdictional "amount in controversy" requirement is met. (*Korn v. Polo Ralph Lauren Corporation*, 536 F.Supp.2d 1199, 1205-1206 (E.D.Cal.,2008.).) The fact that the class plaintiffs *could* be awarded less than the maximum statutory penalty per violation overlooks the critical distinction between the likely recovery per plaintiff and the actual issue before the court, the *amount in controversy* in this litigation. (Id.)(emphasis added.) Moreover, the district courts in the Southern District of California and the Central District of California have looked to the statutory maximum penalties for alleged statutory violations in determining whether the jurisdictional requirements of the CAFA have been met. (*Id.* citing *Saulic v. Symantec Corp.*, No. 07-CV-610 (C.D.Cal. Dec. 26, 2007) - holding that where plaintiff had pled that damages could be up to the $1,000 statutory maximum under § 1747.08, defendants must

---

[3] Defendants do not concede that any or all non-exempt employees are class members, or that any class could be certified in this amount. Defendants further do not concede that they committed any of the statutory violations alleged in the Amended Complaint. This number of potential class members is based solely upon its allegations and is solely for the purposes of determining the "amount in controversy" required for CAFA jurisdiction.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND            5
Case No.: CV 08-01184 SI

simply show that there are at least 5,001 putative class claims in order to meet the jurisdiction requirements of the CAFA) and citing *Romeo v. The Home Depot*, No. 06-CV-1505, 2006 U.S. Dist. LEXIS 79881 (S.D.Cal. Oct. 30, 2006) (same).) Where a complaint includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, then a putative class and violation rate of 100% can be used to determine the amount in controversy. (*Muniz v. Pilot Travel Center, supra*, 2007 WL 1302504 at *4.) It is also not uncommon for an attorneys' fee award to be in the realm of 25-30% of the settlement amount of California wage and hour class actions that are settled before trial. (See, *Muniz, supra* at * 5., fn 8.)

Here, the allegations of the Amended Complaint taken as true and the defendants' submitted evidence establish that the amount put in controversy by the plaintiffs for violating California law in allegedly failing to provide their former and present employees "with timely and accurate wage statements" far exceeds the $5 million CAFA threshold. The Amended Complaint alleges that defendants "failed to make, keep and preserve adequate and accurate records" of their employees "concerning their wages, hours and other conditions of employment" including among other things, "hours worked each day, the total hours worked for each workweek and/or the total overtime compensation for each work week. (Amended Complaint, ¶¶ 73-74.) It further alleges that "Defendants willfully violated ... California Labor Code §§226 (a) and 226.3, et seq. by willfully failing to provide Class Members [former and present employees] with timely and accurate wage statements...." (Amended Complaint ¶ 88.)

California Labor Code section 226(a) in relevant part provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, ... (5) net wages earned, ... and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee..

Labor Code section 226(e), provides the statutory penalty for violation of 226(a) and states in relevant part:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision [226](a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000) and is entitled to an award of costs and reasonable attorney's fees.

Labor Code section 226.3 also states in relevant part:

> …any employer who violates subdivision (a) of 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of 226. The civil penalties provided for in this section are in addition to any other penalty provided by law….

As in *Muniz, and Korn, supra*, Defendants are entitled to use a violation rate of 100% since the allegations of the Amended Complaint contains no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%. The plaintiffs have not alleged any limitations on the number or rate of the alleged violations for failing to provide timely accurate wage statements, or failing to preserve adequate and accurate payroll records. No fact-specific allegations exist that would result in a putative class or violation rate that is discernibly smaller than 100%, They have not stipulated that they are demanding less than the maximum statutory penalties. To the contrary, they have incorporated by reference the California Labor Code sections that specifies allows for a $4,000 maximum statutory penalty for such violations that are being sought by the plaintiffs. Consequently, the reasonable interpretation of plaintiffs' allegations is that they are seeking the $4,000 statutory maximum amount for each class member.

Given the above, a class of only 1,250 persons is all that is needed to meet the $5 million jurisdictional threshold using the $4,000 maximum statutory penalty sought by plaintiffs for defendants' alleged failure to provide timely and accurate wage statements. (Nicholas P. Forestiere Declaration ("NPF Dec."), par. 3.) That minimum number of class members would be further

substantially reduced by adding the additional amount of the statutory penalties imposed by section 226.3 and the amount of the recovery of attorney fees recoverable by section 226(e).

Here, the number of class members of California employees for alleged inaccurate wage statements in violation of California law is at least 1,065. (JS Dec. par. 11.) The total for all class members nationwide is more than 2,450. (JS Dec. par. 10.) This nations wide total is substantially more than the minimum number of 1,250 persons need to meet the jurisdictional CAFA requirement. (NPF Dec., par. 4.)

Moreover, the potential amount placed in controversy by the plaintiffs for defendants' alleged failure to provide timely and accurate wage statements is well over the $5 million jurisdictional threshold. By using only the $4,000 maximum statutory penalty of section 226(e) for each of the 1,065 employees employed in California, the total amount in controversy would be of $4,260,000. (NPF Dec., par. 5.) This amount would be substantially increased by the additional amount of the statutory penalties imposed by section 226.3, and the amount of the recovery of attorney fees recoverable by plaintiffs pursuant to section 226(e) estimated to be $1,278,000. (NPF dec. par. 6.) Consequently, both the minimum number of class members and the "amount in controversy" clearly establish CAFA jurisdiction over plaintiffs' claims.

V.   **PLAINTIFFS' CLAIMS FOR WAITING TIME PENALTIES CLEARLY ESTABLISH CAFA JURISDICTION**

California Labor Code sections 201-202 govern payment of wages upon termination of employment. Where the employer willfully violates the provisions of sections 201 and 202 regarding timing of such payments, § 203\ provides "waiting time penalties" of up to 30 days' of wages. If an employer willfully fails to pay wages due to an employee who quits or is discharged, the employee's wages *continue as a penalty* on a daily basis for up to 30 calendar days after the date they should have been paid or until an action is commenced therefor. (Labor Code § 203; *Marnika v. Barca* 68 Cal.App.4th 487, 493 (1998).)

Here, the allegations of the Amended Complaint taken as true and the defendants' submitted evidence establish that the amount put in controversy by the plaintiffs for violating

California law in allegedly failing to fully and timely pay the class members upon the termination of their employment far exceeds the $5 million CAFA jurisdictional requirement. The Amended Complaint alleges that defendants "failed to pay full compensation to Class Members who are not longer employed by defendants after those Class Members were discharged, laid off or resigned" and that such a failure to fully compensate those Class Members is continuing. (Amended Complaint, ¶¶ 75, 81.) It also alleges that defendants' violated California Labor Code sections 201 and 202 et seq. (Amended Complaint, ¶¶ 79-83.) It further seeks statutory waiting time penalties pursuant to Labor Code section 203. (Amended Complaint, ¶ 83.)

As in *Muniz, and Korn, supra*, Defendants are entitled to use the maximum penalty of 30 days of additional wages for each class member in determining the amount in controversy. The allegations of the Amended Complaint contain no fact-specific allegations that would result in a putative class or a violation rate that is discernibly less than all of the California class members or the 30 days of additional wages. The plaintiffs have not alleged any limitations on the number of days to be assessed as a penalty for allegedly failing to provide timely accurate wage statements, or failing to timely and fully pay their wages upon the termination of their employment. No fact-specific allegations exist that would result in a putative class or violation rate that is discernibly other than the maximum penalty allowed. They have not stipulated that they are demanding less than the maximum statutory penalty. To the contrary, they have incorporated by reference California Labor Code section 203 in seeking the maximum penalty of 30 days of additional wages. More than 30 days have elapsed since these alleged violations occurred based upon the based upon the initial filing of this action on December 5, 2007, and the allegations are defendants' failure to make such payments is ongoing. Consequently, the reasonable interpretation of plaintiffs' allegations is that they are seeking 30 days of additional wages for each class member.

The Amended Complaint's allegations are that "the named plaintiffs' claims are typical of, and concurrent to, the claims of the class Members, because they are similarly situated". (Amended Complaint, ¶ 63.) Using the average of the initially named plaintiffs' hourly wages would, therefore, be appropriate in calculating the amount in controversy for the alleged waiting time penalties.

Given the above, the potential amount placed in controversy by the plaintiffs for defendants' alleged failure to timely and fully paid all of plaintiffs' wages upon the termination of their employment is $2,121,926.40, well over the $5 million jurisdictional threshold. (NPF dec. par. 7.) The average hourly rate paid to several of the named plaintiffs in this action is $15.76. (JS par. 14; NPF dec. 7.) One additional day of average wages at that rate is $126.08. (NPF dec. 7.) The total amount for 30 days of average wages is $3,782.40. (NPF dec. 7.) The total number of class members that worked in California who allegedly did not fully or timely receive all their wages in violation of California Labor code sections 201 and 202 as alleged in the Amended Complaint is 561. (JS Dec. par. 12.) Using such variables establishes the $2,121,926.40 amount in controversy.

## VI.  PLAINTIFFS' CLAIMS FOR MISSED MEAL AND REST PERIODS CLEARLY ESTABLISH CAFA JURISDICTION

California Labor Code sections 226.7 and 512 govern payment of wages as additional compensation for missed meal and rest periods. No employer may require an employee to work during any meal or rest period. (Labor Code § 226.7(a).) Employees who work more than five hours in a day are entitled to a meal period of at least 30 minutes. (Labor Code § 512(a).) If an employer fails to provide an employee a meal period or rest period, then employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided. (Labor Code § 226.7(b).) Consequently, an employee that missed their meal and rest in one day periods would be entitled to two additional hours of wages per day.

Here, the allegations of the Amended Complaint and the defendants' submitted evidence establish that the amount put in controversy by the plaintiffs for missed meal and rest periods far exceeds the $5 million CAFA jurisdictional requirement. The Amended Complaint alleges that defendants allegedly failed to "pay for meal breaks", requiring their employees to "perform working during those meal breaks", failed to provide "legally required meal and rest periods", "repeatedly and regularly interrupt[ing] Class Members' meal and rest periods and/or required Class Members to forgo their meal and rest periods", failing to compensate them for their "missed

meal and rest periods". (Amended Complaint, ¶¶ 72, 84-87.) It seeks the additional two hours of additional wages per day for such violations pursuant to California Labor Code sections 226.7 and 512 et seq. (Amended Complaint, ¶ 84.)

As in *Muniz, and Korn, supra*, Defendants are entitled to use the maximum penalty hours of additional wages per day in determining the amount in controversy. The allegations of the Amended Complaint contain no fact-specific allegations that would result in a putative class or a violation rate that is discernibly less than all of the California employees or less than the maximum statutory penalty. The plaintiffs have not alleged any limitations on the number missed meal or rest periods. No fact-specific allegations exist that would result in a putative class or violation rate that is discernibly than the maximum penalty allowed or the total number of California employees. They have not stipulated that they are demanding less than the maximum statutory penalty. To the contrary, they have incorporated by reference California Labor Code sections 227.6 and 512 in seeking the maximum penalty allowed of two additional hours of wages per day. They further allege that defendants "repeatedly and regularly interrupted" their meal periods. Consequently, the reasonable interpretation of plaintiffs' allegations is that they are seeking two additional hours of wages per day for each class member.

The Amended Complaint's allegations are that "the named plaintiffs' claims are typical of, and concurrent to, the claims of the class Members, because they are similarly situated". (Amended Complaint, ¶ 233.) Using the average of the initially named plaintiffs' hourly wages would, therefore, be appropriate in calculating the amount in controversy for the alleged waiting time penalties.

Given the above, the potential amount placed in controversy by the plaintiffs for defendants' alleged failure to timely and fully paid all of plaintiffs' wages upon the termination of their employment is $17,707,542. This is based upon the maximum amount of the statutory penalty of two additional hours of $31.52 day for 250 work days a year for each employee for the class period of 2.11 years. (NPF dec. par. 8.)

VII.    PLAINTIFFS' ERRONEOUSLY CALCULATED THE AMOUNT IN

**CONTROVERSY FOR THEIR CLAIMED OVERTIME JURISDICTION**

Plaintiffs erroneously argue that the amount of overtime calculated by defendants in their petition for removal is only $4,992,000. Plaintiffs incorrectly used only 16,000 plaintiffs. However, the amount of plaintiffs specified in paragraph 6 of Ms. Key's declaration is 16,341 plaintiffs. Using the 16,341 figure, which is then multiplied by the 13 hours of overtime and by the overtime hourly rate of $24.00, produces an amount in controversy of at least $5,098,392.

### VIII. PLAINTIFFS' ARGUMENT THAT THE CLASS SIZE DOES NOT INCLUDE ALL HOURLY NON-EXEMPT FORMER AND PRESENT EMPLOYEES IS ENTIRELY MERITLESS

Plaintiffs, in seeking to evade the very CAFA jurisdiction they previously admitted existed over their state law claims in the Pennsylvania action, now speciously argue that number of class members does not include all hourly non-exempt employees. In parsing the language of its vaguely worded and artfully crafted Amended Complaint, they claim that the class members only consist of those employees whose rights were violated by the *eight* disputed employment policies that deprived them of their proper wages. (Plaintiffs' Motion for Remand, Docket 34, 6:22-23; Amended Complaint, ¶ 242.) Plaintiffs' erroneous argument that defendants are obligated to set forth the precise number of employees in each putative class or subclass alleged and the precise calculation of damages alleged concerning them are the same arguments that were expressly rejected by the court in *Muniz*. (*Muniz, supra,* 2007 WL 1302504 at *5.)

Had plaintiffs sought to truly limit the class size and members to only a limited number of employees, they could have expressly alleged such a limitation in their Amended Complaint. They did not do so, because they obviously wanted to create the largest class size possible, not limit it. Plaintiffs should not now be allowed to re-characterize its carefully crafted vague allegations in their disingenuous attempt to deny CAFA jurisdiction over their state law claims that they previously admitted existed.

Moreover, Plaintiffs' argument is completely refuted by the express allegations of their Amended Complaint. As discussed *inter alia*, the allegations of the Amended Complaint, both separately and taken as a whole, clearly state that the plaintiffs in this action consist of all of the non-exempt employees and former employees who worked at all of SCI and Alderwoods funeral

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**       12
Case No.: CV 08-01184 SI

locations who were not paid their regular or statutorily required rate of pay for all hours worked. (Amended Complaint, ¶¶ 12-14, 21, 59, 61, 62, 67-69.) Nowhere are there any limitations whatsoever placed on these descriptions of the plaintiffs as now urged by the plaintiffs.

Plaintiffs further rely solely upon allegations of paragraph 242 that are taken completely out-of-context and have nothing to do in describing the plaintiffs or class members. Paragraph 242 by its very terms merely alleges "[e]xamples of defendants' policies and practices to deprive Class Members of their earned wages and wage premiums". No allegation is alleged that the number of class members is limited to only those who had their rights violated by the eight disputed employment policies. Instead, it is alleged that those policies violated *all* of the class members' rights in depriving them of their wages.

Plaintiffs' "slight of hand" argument further selectively cites only *one* of the eight disputed policies (i.e., the "On Call Pay Policy"), which they freely admit results in a number of employees that is "far less than all of the defendants hourly employees". They, of course, ignore several of the other policies and other alleged violations that indisputably apply to *all* of the defendants' hourly non-exempt employees. The other alleged disputed policies applicable to *all* of the non-exempt hourly employees, regardless of their job titles, positions or duties, include:

(a) Defendants' allegedly failing to "pay for meal breaks", requiring their employees to "perform working during those meal breaks", failing to provide "legally required meal and rest periods", "repeatedly and regularly interrupt[ing] Class Members' meal and rest periods and/or required Class Members to forgo their meal and rest periods", failing to compensate them for their "missed meal and rest periods' (Amended Complaint, ¶¶ 72(e), 79-83.);

(b) Defendants allegedly required their employees to work overtime without paying them overtime pay because it was not pre-approved (Amended Complaint, ¶¶ 72(f), 76-78.);

(c) Defendants allegedly required their employees to perform work directing that it not be recorded (Amended Complaint, ¶ 72(g).);

(d) Defendants allegedly failed to include all remuneration (such as bonuses and commissions) in the calculation of the employees' overtime (Amended Complaint, ¶ 72(h).);

(e)     Defendants allegedly failed to make, keep and preserve adequate and accurate records of its employees concerning their wages, hours and other conditions of employment, including the hours worked each day, the total hours worked each week, and the total overtime compensation for each workweek (Amended Complaint, ¶¶ 73, 74.);

(f)     Defendants allegedly failed to promptly pay full compensation to its employees upon termination of their employment (Amended Complaint, ¶¶ 75, 79-83.); and

(g)     Defendants allegedly failed to furnish timely and accurate wage statements to its employees (Amended Complaint, ¶¶ 88-89.).

Consequently, the class members clearly include all of the defendants' hourly non-exempt former and present employees.

## IX. THIS COURT SHOULD ALLOW DEFENDANTS TO CONDUCT JURISDICTIONAL DISCOVERY SHOULD IT HAVE ANY QUESTIONS WHETHER IT HAS JURISDICTION BASED UPON CAFA

Jurisdictional discovery is permissible when the Court is unable to determine, on the existing record, whether it has jurisdiction. (*See generally Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F.2d 406, 430 n. 24 (9th Cir.1977); *GTE New Media Servs., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1351-52 (D.C.Cir.2000).) Such discovery should be "precisely focused" and "aimed at addressing matters relating to [ ] jurisdiction." (*See GTE,* 199 F.3d at 1352; *see also Crane v. Carr,* 814 F.2d 758, 764 (D.C.Cir.1987) - finding that "reasonable discovery addressed to the jurisdictional issue" should be permitted.) Jurisdictional discovery in CAFA cases, as in pre-CAFA cases, should be "sufficiently tailored" to lead to information concerning the jurisdictional issue. (*Rippee v. Boston Market Corp.,* 408 F.Supp.2d 982, 985 (S.D.Cal.2005) *citing Schwartz v. Comcast Corp.,* 2005 WL 1799414, at *7 (E.D.Pa. July 28, 2005).).)

This court should allow defendants to conduct jurisdictional discovery should it have any concerns as to whether it has CAFA jurisdiction. The plaintiffs only are coyly arguing that defendants have failed to meet their burden of proving CAFA jurisdiction, not that CAFA jurisdiction does not exist. They know that it does. They admitted that there was CAFA over their claims to the court in the Pennsylvania action.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**    14
Case No.: CV 08-01184 SI

Plaintiffs also could have easily alleged what they believe are rates for the violations alleged in their Amended Complaint that would have established that the amount in controversy is more than $5 million. Such information is solely in their possession as defendants deny they have committed any violations. Plaintiffs further could have taken the "poison pill" by alleging in their Amended Complaint that the total amount of damages they are seeking will not exceed $5 dollars. The obvious reason that they did not do either is because they are clearly seeking damages in excess of $5 million. They seek to obscure that fact from the court in artfully pleading their Amended Complaint. This court should not condone such clearly deceptive pleading. Therefore, this court should permit defendants to conduct jurisdiction discovery to confirm that the amount of plaintiffs' claims far exceeds the $5 million threshold required by CAFA.

## IX. CONCLUSION

For all the reasons set forth above, this court should deny plaintiffs' motion to remand. Alternatively, the court should permit defendants to conduct discovery of those facts exclusively in the plaintiffs' possession that would clearly establish CAFA jurisdiction over their state law claims as they previously admitted to the court in the Penn Action.

Dated: 4-18, 2008.

GURNEE & DANIELS LLP

By _____
STEVEN H. GURNEE, ESQ.
DAVID M. DANIELS, ESQ.
Attorneys for Defendants
ALDERWOODS GROUP, INC., PAUL A. HOUSTON SERVICE CORPORATION INTERNATIONAL, SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC., SCI EASTERN MARKET SUPPORT CENTER, L.P., SCI WESTERN MARKET SUPPORT CENTER, L.P., and SCI HOUSTON MARKET SUPPORT CENTER, L.P.

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II. THE ALLEGATIONS OF THE AMENDED COMPLAINT AND EVIDENCE SUBMITTED BY DEFENDANTS PROVE THAT IT IS MORE LIKELY THAN NOT THAT THE "AMOUNT-IN-CONTROVERSY" IS SUBSTANTIALLY MORE THAN $5 MILLION ...........................................................................................................2

III. THE CALCULATION OF THE AMOUNT IN CONTROVERSY IS BASED UPON ALL OF THE CLAIMS ASSERTED BY ALL OF THE HOURLY NON-EXEMPT EMPLOYEES WHO WERE ALLEGEDLY EMPLOYED BY SCI'S SUBSIDIARY ENTITIES AND ALDERWOODS FOR THE PERIOD OF DECEMBER 5, 2003 TO FEBRUARY 28, 2008 ............................................................................................................4

IV. PLAINTIFFS' CLAIMS OF ALLEGEDLY BEING PROVIDED INACCURATE AND UNTIMELY WAGE STATEMENTS CLEARLY ESTABLISH CAFA JURISDICTION ..................................................................................................................5

V.  PLAINTIFFS' CLAIMS FOR WAITING TIME PENALTIES CLEARLY ESTABLISH CAFA JURISDICTION ......................................................................................8

VI. PLAINTIFFS' CLAIMS FOR MISSED MEAL AND REST PERIODS CLEARLY ESTABLISH CAFA JURISDICTION ....................................................................................10

VII. PLAINTIFFS' ERRONEOUSLY CALCULATED THE AMOUNT IN CONTROVERSY FOR THEIR CLAIMED OVERTIME JURISDICTION .....................11

VIII. PLAINTIFFS' ARGUMENT THAT THE CLASS SIZE DOES NOT INCLUDE ALL HOURLY NON-EXEMPT FORMER AND PRESENT EMPLOYEES IS ENTIRELY MERITLESS..............................................................................................12

IX. CONCLUSION .........................................................................................................15

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

i

Case No.: CV 08-01184 SI

# TABLE OF AUTHORITIES

CASES

151 Cong. Rec. H723-01, H-727 (2005) (statement of Congressman Sensenbrenner) .................................. 2

*Cortez v. Purolator Air Filtration Products Co,.* 23 Cal.4th 163 ............................................................... 4

*Crane v. Carr*, 814 F.2d 758, 764 (D.C.Cir.1987) ...................................................................................... 14

*Genton v. Vestin Realty Mortgage II, Inc.*, 2007 WL 951838 ..................................................................... 2

*GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C.Cir.2000) ...................... 14

*Kenneth Rothschild Trust v. Morgan Stanley Dean Whitter*, 199 F.Supp.2d 993, 1001 (C.D.Cal. 2002.) ..... 3

*Korn v. Polo Ralph Lauren Corporation*, 536 F.Supp.2d 1199, 1205-1206 (E.D.Cal.,2008.) .......... 5, 7, 9, 11

*Loudermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1004 (9th Cir. 2007) .............................................. 2, 3

*Marnika v. Barca* 68 Cal.App.4th 487, 493 (1998) ...................................................................................... 8

*McCraw v. Lyons*, 863 F.Supp. 430, 434. (W.D.Ky. 1994.) ........................................................................ 2

*Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504 at *2 (E.D. Cal.) .................... 2, 3, 6, 7, 9, 11, 12

*Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 449-450 (S.D.Cal.,1995) ................................................. 3

*Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 985 (S.D.Cal.2005) ................................................. 14

*Romeo v. The Home Depot*, No. 06-CV-1505, 2006 U.S. Dist. LEXIS 79881 (S.D.Cal. Oct. 30, 2006) ....... 6

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 298, 404 (9th Cir. 1996) .................................................. 2

*Saulic v. Symantec Corp.*, No. 07-CV-610 (C.D.Cal. Dec. 26, 2007) .......................................................... 5

*Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 399 (2nd Cir. 2003.) ....... 3

*Schwartz v. Comcast Corp.*, 2005 WL 1799414, at *7 (E.D.Pa. July 28, 2005) ....................................... 14

*Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 374, 376-377 (9th Cir. 1996.) ........................ 2, 3

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977) ............................. 14

STATUTES

California Labor Code sections 201-202 ...................................................................................................... 8

California Labor Code section 203 ............................................................................................................... 8

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Case No.: CV 08-01184 SI

California Labor Code section 226 .................................................................................................6

California Labor Code section 226.3 ..............................................................................................7

California Labor Code section 226.7 ............................................................................................10

California Labor Code section 512 ...............................................................................................10

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Case No.: CV 08-01184 SI

iii