1  those together is at least at the initial stage it is easier
2  for the case to be managed with all of those together.
3  However, as we noted in our papers, if the Defendants' concern
4  is and the Court's concern is that those should be in separate
5  lawsuits, the problem then becomes -- the solution for that is
6  a motion to sever and to say, there should be an SCI suit --
7      THE COURT:  There is not and SCI suit now, so you
8  just need to file a new one.
9      MR. THOMAS:  Correct.  Well, yes, I guess with
10  SCI's dismissal, correct, if the motion to amend is not
11  granted, that's correct.
12      But then I would say to Your Honor, I would be
13  glad -- we are glad to file them as separate lawsuits and
14  really --
15      THE COURT:  See, I think it would just be so
16  confusing for the Court and for the jury because people will
17  be talking out of both things.  What we need to focus on here,
18  because that's the thrust of this, what was Alderwoods doing.
19  There may be some continuation issues with SCI; and if you
20  could pin the continuation for Alderwoods to SCI, to some
21  other entity other than the new Alderwoods, that's something
22  that the Court could consider later.
23      But right now I think you have to focus on
24  Alderwoods because that's what it is and you can't have
25  Alderwoods being tainted by what SCI was doing at the same

1  time with separate employees and totally unconnected entities.

2          MR. THOMAS:   That is fine, Your Honor, we will file

3  a separate lawsuit against SCI.   Would Your Honor prefer that

4  that -- for the -- we have the Alderwoods --

5          THE COURT:   See, we have to get this case moving.

6          MR. THOMAS:   Correct.   Let's assume there is a

7  person who has opted into the Alderwoods action, an Alderwoods

8  Plaintiff.   They have worked at Alderwoods.   They then worked

9  with the SCI employing entities.   Would Your Honor think that

10  from a confusion and case management perspective it is better

11  to take the post-merger claims and those would be in the

12  lawsuit against SCI or a totally separate lawsuit?   Or -- what

13  would be the -- we are glad to do it any way --

14          THE COURT:   I think anybody that has continued in

15  the new Alderwoods, they should all stay together.

16          MR. THOMAS:   Okay.

17          THE COURT:   People who have never worked for

18  Alderwoods should not be included in this.

19          What's the thought of the Defendant?

20          MR. LAMPE:   We agree completely with that.

21  Alderwoods continues.   It's still Alderwoods.   It was before

22  the merger and after.

23          THE COURT:   You can find some of this is

24  continuing, you can have some good factual grounds to bring in

25  an individual who is currently employed and through one of the

1   SCI entities where you can have a plausible claim against
2   their employer, I will consider that if you can file a motion
3   to amend that has the sufficient factual background that takes
4   it beyond the realm of the conclusions.

5        MR. THOMAS:  What I would -- Your Honor, at that
6   point, just so I'm sure I am not going to do something that
7   confuses things more, at that point you will have in the
8   Alderwoods lawsuit, because it does continue and these
9   individuals that we have named would be -- we would seek to
10  add them, those individuals will now be named in two lawsuits.
11  One is the Alderwoods and continuation --

12       THE COURT:  I am not going to permit them at this
13  stage to be named in this lawsuit because I don't see enough
14  facts in here to bring them in.  So I am not going to permit
15  the amendment to bring up the additional Defendants, whether
16  they're the corporate entities or the individuals.  But it's
17  going to be without prejudice if through your discovery you
18  can discern that there are some facts or something that would
19  give rise to a proper amendment that could be made.

20       MR. THOMAS:  The amendment, Your Honor, we know
21  enough already to know the practices are continuing when they
22  have gone over to SCI, so we will be adding those SCI
23  individuals.  So those SCI individuals and those entities will
24  be in two lawsuits.

25       THE COURT:  I am going to remind you when you talk

1    about somebody being an employer, you have to talk about
2    somebody hands-on.  Somebody at a higher level, just because
3    they are the CEO, they have control over everything, that
4    would mean every CEO through every chain or subsidiary of
5    every corporation in America is going to be a Defendant in one
6    of these cases.  That's not what is contemplated.  You are
7    talking about somebody who is hands-on, that has -- that is
8    involved.  Am I mistaken on what the law is?
9            MR. THOMAS:  Your Honor, generally CEOs of
10   companies are almost always found to be employers.  That is, I
11   think -- I have yet to see a case where a CEO was not found to
12   meet --
13           THE COURT:  The CEO of Alderwoods, if they have
14   some --
15           MR. THOMAS:  If they have an active management of
16   the company, they are not a figurehead CEO, but actively
17   managing the company --
18           THE COURT:  We are talking about the CEOs of all of
19   these other entities you are trying to bring in.
20           MR. THOMAS:  But also too, I mean, I believe -- we
21   can cite the cases and we will go through that.  I understand
22   your concerns about a CEO.  Certainly in terms of the Western
23   Market Support Center, Eastern Market Support Center, they
24   have said that all the HR functions flow to them, they are
25   separate corporations, I believe that those certainly meet the

1  active hands-on.  We have the director of HR, active hands-on
2  management.  I guess the CEO and other --
3              THE COURT:  The active hands-on management, that is
4  a conclusion.  So you have to have, what did they do.
5              MR. THOMAS:  We have their affidavits saying that
6  Eastern Market Support Center administered all HR
7  administrative functions for employees in that area.  I think
8  that's more than a conclusion, that's an affidavit from them
9  saying that's what they did.  So that would be our basis for
10 it.  That would be our basis.
11             That's fine, we will file the new complaint against
12 SCI --
13             THE COURT:  I think you need to meet and confer.
14 You will probably have the same counsel on the other side too.
15 So you can try to achieve some efficiencies and economies in
16 terms of doing discovery.  But I have to try to keep the cases
17 separate because this one has Alderwoods, the old and the new.
18 The other one would just have whatever SCI entity would be
19 appropriate.
20             MR. THOMAS:  And particularly, Your Honor, that's
21 why, because of discovery, among other things, that's why we
22 thought it would be better, not at trial or post-discovery --
23             THE COURT:  You can consolidate things for purposes
24 of discovery, but they have to be discrete cases.  You can
25 certainly meet and confer about that.  But we have to move

1    this case forward.  This is an '06 case.  We are now coming to

2    the end of '07.  It doesn't get any better and you haven't

3    really started -- when are you going to have the amended

4    complaint filed?

5              MR. THOMAS:  I would think by the 29th as well we

6    would try to have an amended complaint in and probably try to

7    file a new complaint by then as well, maybe two new

8    complaints.

9              THE COURT:  Okay.  So then the answer should be due

10   20 days after the filing.

11             MR. THOMAS:  Your Honor, we would move immediately

12   for notice --

13             THE COURT:  Mr. Lampe, is that right?

14             MR. LAMPE:  Yes, Your Honor, 20 days would be fine.

15             THE COURT:  Do you wish to be heard about the other

16   issues the Court said would be okay to amend?

17             MR. LAMPE:  No, Your Honor.

18             THE COURT:  Okay.

19             MR. THOMAS:  Your Honor, we will refile the SCI

20   notice motion immediately upon --

21             THE COURT:  So the amended complaint will be filed

22   on the 29th.  Your discovery plan, the 26(f) plan will be

23   filed on the 29th.  We will have a conference to schedule the

24   discovery, let's pick a date for that so we can schedule that

25   all right now.  Can we do that at 5 o'clock on December 5th?

1           MR. LAMPE:   That day, Your Honor, I am going to be
2    on the west coast.
3           THE COURT:   Okay.   How about the 10th at 5 o'clock?
4           MR. LAMPE:   That works fine for me, Your Honor.
5           THE COURT:   I am sorry, let me check.
6           MR. THOMAS:   Your Honor --
7           THE COURT:   You can't do it at that time?
8           MR. THOMAS:   I have an appearance in federal court
9    that day.
10           THE COURT:   At 5 o'clock?
11           MR. THOMAS:   That morning.   But to get down here
12    might be tough.   I could certainly try.
13           THE COURT:   You are in town here?
14           MR. THOMAS:   No, the one I have the oral argument
15    for is in Rochester.
16           THE COURT:   Let's do another date then.   Just a
17    second.   We can do this by phone call too.   We have seen each
18    other enough now, I don't need to worry about whether the
19    lawyers are talking and we can set up discussions for
20    settlement.
21           MR. THOMAS:   That will be fine then.
22           THE COURT:   We will do telephone for everyone.
23    Also, this is the type of situation where the Court at this
24    stage would say, have the parties talked seriously about
25    mediation or an alternative dispute mechanism?   That's going

1   to be part of our discussions in getting ready for the

2   Rule 26(f).  So really think about how that should come about.

3          New cases that are filed in January will all be

4   subject to mandatory ADR, the Court has approved that.  So we

5   are really intent upon having parties speaking as early as

6   possible to see if there can be an amicable resolution.  So

7   talk seriously about what vehicle would be appropriate in this

8   case.

9          We will do it 5 o'clock on the 10th.  We will do it

10  by conference call, that way we won't be delaying things.

11         And you should start implementing your discovery

12  plan as soon as you have agreed on it.  Don't wait for the

13  Court to order it, you can start your discovery.  You could

14  have had discovery prior to this, but I understand there

15  hasn't been a lot done.

16         So the motion for collective action, the Court is

17  not going to approve, that's moot because the Court did not

18  permit the amendment.

19         MR. THOMAS:  Your Honor, could we get a schedule in

20  place because we will be moving against SCI on the same,

21  largely the same affidavits and same basis for the new

22  lawsuit.  Could -- we can file that motion probably

23  simultaneously with the complaint on the 29th, and their

24  answer and their response to that 20 days later?

25         MR. LAMPE:  I think it is completely inappropriate

1   to talk about the schedule for a motion in a case that hasn't
2   even been filed yet.
3           THE COURT:  Well, what I am going to ask you to do
4   is meet and confer.  You are going to be filing that.  As soon
5   as you file it, you should be talking with the other side
6   about this and you will be filing your motion for expedited
7   hearing on the notice.  And the Court will set a schedule, if
8   that is filed, for them to respond to that and we will have a
9   hearing.  It will probably be sometime in early January will
10  probably be about the best that will happen, just from a sense
11  of timing.
12          MR. THOMAS:  Thank you, Your Honor.
13          THE COURT:  Okay.
14          MR. THOMAS:  Very good.
15          THE COURT:  Anything else to come before the Court?
16          MR. LAMPE:  Not from us, Your Honor.
17          THE COURT:  Thank you.
18          MR. THOMAS:  Thank you.
19       (Record closed).
20
21                  C E R T I F I C A T E
22          I, Richard T. Ford, certify that the foregoing
23  is a correct transcript from the record of proceedings in the
24  above-titled matter.
25  S/Richard T. Ford  _____

**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY
on behalf of themselves and all employees
similarly situated,

        Plaintiffs,

      v.

ALDERWOODS GROUP, INC. and
SERVICE CORPORATION
INTERNATIONAL,

        Defendants.

Civil Action No. 06-1641

Judge Joy Flowers Conti

## DECLARATION OF JUDITH M. MARSHALL

I, Judith M. Marshall, do hereby declare and state as follows:

1.    I am over 21 years of age, have personal knowledge of the facts set forth in this declaration, and could testify to them competently if called to do so.

2.    I am currently employed by SCI Funeral & Cemetery Purchasing Cooperative, Inc. in the position of Senior Legal Assistant. I have held this position since January, 2003.

3.    As Senior Legal Assistant, I have served as Corporate Secretary for SCI Funeral & Cemetery Purchasing Cooperative, Inc. As part of my job duties, I am familiar with the corporate structure of Service Corporation International ("Service Corp"), which is the ultimate parent company of my employer. Based upon my own personal knowledge. Service Corp is a holding company that has no employees.

4.    As a holding company without any employees, Service Corp does not provide direction or issue policies and procedures to its subsidiary companies. It does not have a human resources function. Rather, day-to-day human resources services and support for individual

1

locations are provided by three separate companies – SCI Eastern Market Support Center, L.P., SCI Western Market Support Center, Inc., and SCI Houston Market Support Center, L.P. Each of these entities has a Management Services Agreement with the locations in their region of the country that states that they will provide all executive, management, administrative, accounting, data processing, and human resources services for the locations. Consistent with the Management Services Agreement, these entities are responsible for fielding questions related to human resources issues for the companies for which they provide services. In turn, each of these companies has entered into a separate contract with SCI Funeral & Cemetery Purchasing Cooperative, Inc. to provide additional human resources services and support for Service Corp's subsidiaries.

5.      Service Corp also does not distribute any employee handbooks or manuals, nor has it sponsored any employee benefit plans within the time frame of this lawsuit, or provide any services to its subsidiaries. Service Corp has no payroll system. Service Corp does not have any management, or control over the labor relations of its subsidiaries. Service Corp is not responsible for, and plays no role in, hiring and terminating any employees.

6.      Service Corp does not provide training to employees of its subsidiaries and affiliated companies. Rather, on-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with the various human resources providers – SCI Eastern Market Support Center, L.P., SCI Western Market Support Center, Inc., SCI Houston Market Support Center, L.P., and SCI Funeral & Cemetery Purchasing Cooperative, Inc. Service Corp also does not provide Dignity University training programs – Dignity University training is provided by SCI Funeral & Cemetery Purchasing Cooperative, Inc.

2

7.    Service Corp does not issue communications to employees of its subsidiaries and affiliated companies. The weekly newsletter "Frontline," is a publication of SCI Funeral & Cemetery Purchasing Cooperative, Inc. (A copy of "Frontline" is attached hereto as Ex. A.) Likewise, the "Global Village" intranet site also is operated and maintained by SCI Funeral & Cemetery Purchasing Cooperative, Inc. Moreover, while I understand that Plaintiffs claim that Service Corp communicated to employees through e-mails from "President Tom Ryan," Tom Ryan is not an employee of Service Corp, but rather an employee of SCI Executive Services, Inc. Mr. Ryan holds the title of President and Chief Executive Officer of Service Corp

8.    I am aware that four individuals have submitted affirmations in this case asserting that they were non-exempt employees of Service Corp. Consistent with my statements above, none of these individuals were Service Corp employees. Rather, Johnny Coleman was employed by SCI Kansas Funeral Services, Inc.; James Stickle was employed by SCI Arizona Funeral Services, Inc.; James Stark was an employee of SCI Washington Funeral Service, Inc.; and Scott Gullett was an employee of SCI Funeral Services of Florida, Inc. These entities are just four of approximately 180 Service Corp subsidiaries and affiliated companies nationwide that directly own and operate funeral service locations.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

July 5, 2007

Judith M. Marshall

3

**EXHIBIT E**

1        IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,          Civil Action No.
on behalf of themselves and all other
employees similarly situated,

                    *Plaintiffs*,                 Judge:

                                          COMPLAINT-CLASS ACTION
v.                                        JURY TRIAL DEMANDED

ALDERWOODS GROUP, INC. and
SERVICE CORPORATION
INTERNATIONAL,

                    *Defendants*.

## CLASS ACTION COMPLAINT

**AND NOW** come Plaintiffs Deborah Prise and Heather Rady, on behalf of themselves

and all others similarly situated, by and through their attorneys, Margolis Edelstein, Charles H.

Saul, Esquire, and Liberty J. Weyandt, Esquire, and file the following Class Action Complaint:

## I.    INTRODUCTION

1.    This is a proceeding for declaratory relief and monetary damages to redress the

deprivation of rights secured to Named Plaintiffs Deborah Prise and Heather Rady

individually, as well as all other employees similarly situated, under the Fair

Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA"); and

other laws of the various States in which defendant does business.

## II.    JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C.

1343 (3) and (4) conferring original jurisdiction upon this Court of any civil

action to recover damages or to secure equitable relief under any Act of Congress

providing for the protection of civil rights; under 28 U.S. C. § 1337 conferring

jurisdiction of any civil action arising under any Act of Congress regulating

interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201,

and under 29 U.S.C. § 216 (b).

3.  This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant
to 28 U.S.C. §1367.

4.  Venue is appropriate in the Western District of Pennsylvania since some of the
unlawful acts alleged were committed in this district and plaintiffs reside in this
district. Venue is proper before this Court under 28 U.S.C. § 1391(b).

### III.  CLASS ACTION ALLEGATIONS

5.  The claims arising under the state wage laws set forth above are properly
maintainable as a class action under Federal Rule of Civil Procedure 23.

6.  The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

7.  The class consists of current and former employees of defendants who were
suffered or permitted to work time for which they were not compensated,
including time for which premium pay was owed but not paid.

8.  The class size is believed to be over 50 employees.

9.  The Named Plaintiffs will adequately represent the interests of the class members
because they are similarly situated to the class members and their claims are
typical of, and concurrent to, the claims of the other class members.

10.  There are no known conflicts of interest between the Named Plaintiffs and the
other class members.

11.   The class counsel, Margolis Edelstein, is qualified and able to litigate the class
members' claims.

12.   The class counsel is experienced in employment litigation, and its attorneys are
experienced in class action litigation, including class actions arising under federal
and state wage and hour laws.

13.   Common questions of law and fact predominate in this action because the claims
of all class members are based on whether defendants' practice of not paying
nonexempt employees for all hours worked and/or statutory overtime for hours
worked over 40 per week violates Pennsylvania State law and the state laws of the
various other states in which defendants do business.

14.   The class action is maintainable under subsections (2) and (3) of Rule 23(b)
because plaintiffs seek injunctive relief, common questions of law and fact
predominate among the class members and the class action is superior to other
available methods for the fair and efficient adjudication of the controversy.

## IV.   PARTIES

### A.   Defendants

15.   At all relevant times, Defendants Alderwoods Group, Inc. ("Alderwoods") and
Service Corporation International ("SCI") has suffered or permitted the plaintiffs
to perform work for them.

16.   At all relevant times, Defendants Alderwoods and SCI have been plaintiffs'
employers.

17.   Upon information and belief, Alderwoods, through its shareholders, has adopted
the merger agreement by and between Alderwoods and Defendant Service

Corporation International ("SCI") (collectively, "Merged Entities" or "Defendants").

18. Upon information and belief, the Merged Entities, under the merger agreement, continue business operations in substantially the same form as before the merger.

19. Upon information and belief, the Merged Entities, under the merger agreement, continue to use substantially the same workforce as before the merger, with substantially the same supervisors and same working conditions.

20. Upon information and belief, the Merged Entities, under the merger agreement, provide essentially the same services as before the merger and use the same facilities, equipment and method of proving services.

21. Upon information and belief, thus, SCI is a successor-in-interest to Defendant Alderwoods's liability.

22. Upon information and belief, the Merged Entities, under the merger agreement, operate interrelated business operations.

23. Upon information and belief, the Merged Entities, exercise central control of labor relations.

24. Upon information and belief, the Merged Entities operate under common management.

25. Upon information and belief, the Merged Entities have common ownership and financial control.

26. In light of the economic realities of the Merged Entities' enterprise, defendants constitute joint, single, and/or successor employers of plaintiffs for purposes of

the federal and state laws.

27.     Collectively, all of defendants named herein and all of their funeral service
        locations comprise a single, integrated enterprise, as they perform related
        activities through common control for a common business purpose.

28.     Upon information and belief, SCI, under the merger agreement, exercises
        complete dominion and control over Alderwoods and their funeral service
        locations.

29.     SCI, Alderwoods and their funeral service locations constitute alter egos of the
        other.

30.     At all relevant times, defendants have suffered or permitted plaintiffs to perform
        work for them. At all relevant times, Alderwoods' and SCI's funeral service
        locations have been plaintiffs' employer.

31.     The Class Members are jointly employed by Alderwoods and SCI and their
        funeral service locations; and/or Alderwoods and SSI are successor employers of
        each other's employees.

32.     Business operations of the funeral service locations are centrally controlled by
        Alderwoods and SCI.

33.     At all relevant times, Alderwoods and SCI maintained centralized control of
        employment relations.

34.     At all relevant times, the human resource functions of the funeral service locations
        report directly or indirectly to Alderwoods and/or SCI.

35.     In addition to centralized control of employment relations, Alderwoods and SCI
        exercises common management of their various funeral service locations.

36.     Further, Alderwoods and SCI own all of their funeral service locations and exercise financial control over the business operations of those locations.

37.     Alderwoods is a corporation with its headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202 and does business in the Western District of Pennsylvania.

38.     Service Corporation International is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019 and does business in the Western District of Pennsylvania.

39.     Defendants are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

**B.     Plaintiffs**

***Named Plaintiffs***

40.     Named Plaintiff Deborah Prise is a resident of the Commonwealth of Pennsylvania and resides within this judicial district.

41.     Named Plaintiff Heather Rady is a resident of the Commonwealth of Pennsylvania and resides within this judicial district.

***Class and Collective Action Members***

42.     The class and collective action members ("Class Members") are those employees of defendants similarly situated to Named Plaintiffs who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

**V.     FACTUAL BACKGROUND**

43. Named Plaintiffs and the other Class Members worked for defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and one-half for hours they worked over 40 in a week.

44. Defendants' policy and/or practice was to not compensate Named Plaintiffs and Class Members for work it suffered or permitted the Named Plaintiffs and Class Members to perform.

45. Defendants knew plaintiffs were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Named Plaintiffs and Class Members worked.

46. Defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements.

47. The failure to pay overtime is willful.

48. Examples of defendants' policies and practices to deprive the Named Plaintiffs and Class Members of their earned wages and wage premiums are set forth below:

   a. **Subclass A:** Defendants implemented a "Community Work Policy." Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

   b. **Subclass B:** Defendants implemented an "On Call Pay Policy." Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for work performed outside the regular workday, off-site from the funeral home.

   c. **Subclass C:** Defendants policy required that certain hourly employees train for and become licensed insurance agents. Defendants did not pay for the training, test taking and continuing education requirements for those positions despite suffering or permitting employees to perform such work.

   d. **Subclass D:** Defendants implemented a "Pre-Needs Appointment Policy."

Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were beyond the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not to be paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

e.   **Subclass E:** Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants no longer paid for lunch breaks. Defendants did, however, suffer and permit its employees to perform work during such meal breaks, but pursuant to defendant's "Meal Break Deduction Policy" time spent on meal "breaks" was still to be deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

f.   **Subclass F:** Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

g.   **Subclass G:** Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted plaintiffs to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

h.   **Subclass H:** Defendants policy was to not include all remuneration (such as bonuses and commissions) in the calculation of the plaintiffs' overtime.

49.   Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Named Plaintiffs concerning their wages, hours and other conditions of employment.

50.   More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total

hours worked each work week and/or the total overtime compensation for each
work week.

## COUNT I
**FLSA**

51.   The preceding paragraphs are incorporated herein as if fully set forth herein.

52.   Defendants willfully violated their obligations under the FLSA and are liable to
plaintiffs.

<div align="center">

### COUNT II
**FAILURE TO MAINTAIN PROPER RECORDS**

</div>

53.   The preceding paragraphs are incorporated herein as if fully set forth herein.

54.   Defendants violated provisions of the FLSA by failing to make, keep, and
preserve adequate and accurate records of the employment of Named Plaintiffs
concerning their wages, hours and other conditions of employment; more
specifically, the records kept by defendants failed to adequately and accurately
disclose among other things, hours worked each work day, the total hours worked
each work week, and/or the total overtime compensation for each work week and
are liable to plaintiffs.

<div align="center">

### COUNT III

**BREACH OF CONTRACT**

</div>

55.   Plaintiffs reallege the above paragraphs as if fully restated herein.

56.   Defendants willfully violated their obligations under the state laws of Alabama,
Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia,
Idaho, Illinois, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan,

Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia and are liable to plaintiffs.

## COUNT IV
## STATE WAGE AND HOUR LAWS

57. Plaintiffs reallege the above paragraphs as if fully restated herein.

58. Defendants willfully violated their obligations under the wage laws of the states in which defendants do business including; Pennsylvania Wage Law including, but not limited to, PMWA and PWPCL; Alaska Law including, but not limited to, the Alaska Wage and Hour Act; Arizona Wage Law; Arkansas Wage Law including, but not limited to, the Arkansas Minimum Wage Act; California Law, including, but not limited to, the California Labor Code; Colorado Wage Law; Connecticut Wage Law; Illinois Wage Law; Indiana Wage Law; Kansas Law including, but not limited to, the Kansas Minimum Wage and Maximum Hours Act; Maryland Wage Law; Massachusetts Wage Law; Michigan Wage Law; Minnesota Fair Labor Standards Act; Montana Wage Law; Nebraska Wage Law; Nevada Wage Law; New Hampshire Wage Law including, but not limited to, New Hampshire Minimum Wage Law; New Mexico Wage Law including, but not limited to, New Mexico Minimum Wage Law; New York Labor Law; North Carolina Law including, but not limited to, the North Carolina Wage and Hour Act; Ohio Wage Law; Oregon Wage Law; Puerto Rico Law including, but not limited to, the

Puerto Rico Working Hours and Days Act; Rhode Island Wage Law; Washington

Wage Law; and West Virginia Wage Law and are therefore liable to plaintiffs.

## COUNT V
## UNJUST ENRICHMENT

59. Plaintiffs reallege the above paragraphs as if fully restated herein.

60. Defendants willfully violated their obligations and have been unjustly enriched to

the determinant of plaintiffs and others similarly situated for worked performed

for defendants under the common laws and state laws of Alabama, Alaska,

Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho,

Illinois, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan,

Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New

Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania,

Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia,

Washington, and West Virginia and are liable to plaintiffs.

## COUNT VI
## FRAUD AND DECEIT

61. Plaintiffs reallege the above paragraphs as if fully restated herein.

62. Defendants willfully violated its obligations by committing fraud against plaintiffs

and others similarly situated under the common laws and the state laws of

Alabama, Alaska, Arizona, Arkansas, California (including the California Unfair

Competition Law, California Business and Professions § 17200), Colorado,

Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana,

Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,

Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio,

Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,

Tennessee, Texas, Virginia, Washington, and West Virginia and are liable to

plaintiffs.

## COUNT VII
## QUANTUM MERUIT

63.     Plaintiffs reallege the above paragraphs as if fully restated herein.

64.     Defendants willfully violated their obligations by failing to pay plaintiffs for the

reasonable value of the services performed by plaintiffs for defendants under the

common laws and the state laws of Alabama, Alaska, Arizona, Arkansas,

California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana,

Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi,

Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North

Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island,

South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia and

are liable to plaintiffs under quantum meruit.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION

65.     Plaintiffs reallege the above paragraphs as if fully restated herein.

66.     Defendants willfully violated their obligations under the common laws and the

state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado,

Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana,

Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,
Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio,
Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,
Tennessee, Texas, Virginia, Washington, and West Virginia by misrepresenting to
plaintiffs that they would be fully compensated for all services performed and are
liable to plaintiffs.

## COUNT IX
## NEGLIGENCE

67.     Plaintiffs reallege the above paragraphs as if fully restated herein.

68.     Defendants willfully violated their obligations under the common laws and the
        state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado,
        Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana,
        Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,
        Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio,
        Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,
        Tennessee, Texas, Virginia, Washington, and West Virginia by negligently failing
        to properly compensate plaintiffs and are liable to plaintiffs.

**WHEREFORE**, plaintiffs demand judgment against defendants in their favor and that
they be given the following relief:

(a)     an order preliminarily and permanently restraining defendants from engaging in
        the aforementioned pay violations;

(b)     an award of the value of plaintiffs' unpaid wages;

(c)     liquidated, compensatory, consequential and punitive damages;

(d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating plaintiffs' rights;

(e)    an award of pre- and post-judgment interest; and

(f)    such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact.

Respectfully Submitted,

MARGOLIS EDELSTEIN

Date: 12/8/06

___/s/ Charles H. Saul_____
Charles H. Saul, Esquire
PA ID No. 19938

__/s/ Liberty J. Weyandt_____
PA ID No. 87654
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256
Attorney for Plaintiffs

**EXHIBIT F**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,
*on behalf of themselves and all other employees
similarly situated,*

                                       *Plaintiffs*,

        v.

ALDERWOODS GROUP, INC. and SERVICE
CORPORATION INTERNATIONAL,
                         *Defendants.*

**AFFIRMATION**

Civil Action No. 06-1641
Judge Joy Flowers Conti

I, **Annette Gifford,** under penalty of perjury depose and say:

1.       I am associated with the law firm Dolin, Thomas & Solomon LLP, and I make this affirmation in support of plaintiffs' motion to amend the complaint.

### Plaintiffs' Proposed First Amended Complaint – Collective Action

2.       Plaintiffs' proposed First Amended Complaint – Collective Action is attached hereto as **Exhibit A**.

### Current Opt-In Plaintiffs

3.       As of the current date, more than 600 individuals having opted-in to this collective action by filing a consent form with the Court.

4.       Of those plaintiffs, more than 50 individuals who have been interviewed by my office have informed us that they worked directly for defendant Service Corporation International or one of its affiliates.  This number includes individuals who worked for Alderwoods Group, Inc. after the date that it became an SCI subsidiary, but it does *not* include individuals who worked for Alderwoods only prior to the merger.

**Status of This Action: Discovery and State Law Claims**

5.      This lawsuit is still in its early stages.  Although the parties have exchanged some limited discovery, including initial disclosures, the parties have not yet engaged in full fact discovery, nor has any discovery scheduling order been entered.  Instead, the parties agreed to delay proceeding on such issues until after the opt-in period closed.

6.      This Court previously declined to exercise jurisdiction over plaintiffs' state law claims and, therefore, dismissed those claims.  Plaintiffs continue to believe that those claims may properly be heard, together with plaintiffs' Fair Labor Standards Act claims, before this Court.  However, in light of the Court's ruling, plaintiffs have revised the proposed First Amended Complaint – Collective Action to redact those claims and allegations.  Plaintiffs do not, however, waive their right to argue that those claims could be heard as part of the instant action.

**Attached Documents**

7.      Attached hereto as **Exhibit B** is the Affirmation of Scott Gullett dated June 7, 2007.

8.      Attached hereto as **Exhibit C** is the Affirmation of Johnny Coleman dated June 2007.

9.      Attached hereto as **Exhibit D** is the Affirmation of Brett Moreland dated June 2007.

10.      Attached hereto as **Exhibit E** are excerpts from the Transcript of Proceedings before Honorable Joy Flowers Conti dated September 6, 2007.

2

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on October 3, 2007

/s/ Annette Gifford

**Annette Gifford**

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE, HEATHER RADY,
ROBERT A. ACEVEZ, BENSON ACKERMAN,
ROBERT ACOSTA, LYLE J. ADAMS, KIMBERLEY
ADAMS, GARY ADDISON, BYRON ADKINS,
THOMAS M. ADKINS, MARCO AGUILERA,
DARRELL L. ALDER, FREDERICK R. ALDRICH,
MERLIN ALEXANDER, JESSIE W. ALEXIS,
KENNETH R. ALLEN, FRANK A. ACUNA, ELIAS
ALVIDREZ, WILLIAM AMATO, MICHAEL J.
AMESQUITA SR., MITCHELL P. AMOS,
MICHAEL E. ANDERSON, NELSON ANDERSON,
ROBIN ANDREWS, ROBERT J. APODACA,
BRENDA A. ARNOLD, STEVEN A. ARNOLD,
LESLIE S. ASCHE-THACKERY, JAMES W.
ATKINS, CHARLES AUSTIN, JENNY I. AVILES
GOMEZ, JEFFREY T. AYDELOTTE, JAMES A.
BAASCH, BILLY B. BAKER, JOHN C. BAKER,
JULIUS BARANY, DOUGLAS BARNES, THOMAS
H. BARNETTE, DALE R. BART, NEELA BASU,
DORTHY BATH, JAMES V. BELL, REGINA BELL,
THOMAS S. BELL, MARLA BELYEW,
CHARLOTTE BILLIOT, JOEL BLADY, PHILIP
BOCKETTI, RONALD BOHLMAN, GEORGE H.
BOISSE III, CHRISTINE BOJARCZYK, DANIEL
BORDELON, GEORGE R. BORTH, ROBERT
BOWEN, TAMMY J. BOWERMAN, OSWALD R.
BOYKINS, GREGORY BRADLEY, ROBERT S.
BRANUM JR., BILLY J. BREEDLOVE, ROBERT
BREEN, MICHELE BREINDEL, EUGENE
BREINIG, ALBERT J. BRIGNAC JR., HARRY W.
BRITT III, MARC BROOKS, JULIE K. BROUGH,
WILLIAM B. BROUGH, JENNIFER BROWN,
JOHN BROWN, LINDA BROWN, THOMAS A.
BROWN, JENNIFER BRUYETTE, MARSHALL
BRYANT JR., BENNIE BUFFAMANTE, JASON
BURGESS, CLARK BURKLE, RUTH BURKS, LEN
R. BURTON-HARDIN, JERRY W. BUSH,
MICHAEL S. BUTLER, MATTHEW BYRNE,
LINCOLN CABRERA, ANTHONY CALABRESE,
CLAYTON L. CALLAWAY, RAMON CAMARA,
PETER D. A. CAMERON, LAWRENCE F. CAMP,
JILL D. CAMPBELL, BRADLEY A. CARDINI,
TODD CARMICHAEL, BRIAN CARR, MICHAEL

Civil Action No. 06-1641
Judge Joy Flowers Conti

FIRST AMENDED
COMPLAINT – COLLECTIVE
ACTION
JURY TRIAL DEMANDED

CARRY, RAYMOND CARSON, SHANE M.
CARSWELL, SCOTT CARVER, GABRIEL T.
CASAUS, GINA CASERIA, WILLIAM
CASTELLARIN, SEAN J. CAVALIERE,
MICHELLE CAVANAUGH, RALPH V.
CERASUOLO, DUANE CHAMBERS, WESLEY
CHARLES, ERIC CHARLSON, DEBBIE K.
CHATMAN (BRANDT), JAMES R. CHEATHAM,
ROBERT CHERNETSKY, VALDEN
CHRISTENSEN, COREY W. CLARY, DARRELL
CODY, JOHNNY W. COLEMAN, DARRELL R.
COLLINS, MICHAEL R. COMBS, JOSETTE A.
CONSIGLIO-HOUGH, DANIEL COOK, ROBERT
CORBALLY, MAX D. CORMACK, KATHRYN
COSPER, JASON COSTIN, SHANE B. COUTINHO,
GARY A. COWGER, DIANE CRAIG, JOAN
CRANE, DONALD CRANSTON, GARY D.
CRAVEN, COLIN CRAWFORD, LESLIE A.
CREECH, THOMAS A. CREECH, JAMES
CROUCH, MILLARD J. DAIGLE, PERCY R.
DAIGLE, BRIAN DANIEL, ASHLEY
DAUGHDRILL, LAURIE DAVIS, TERRELL W.
DAVIS, WANDA DAVIS, SUSAN DAVIS-PETERS,
TERESA DEARAUJO, KELLY DEITZEL, RACHEL
DELANEY, ROY DENTLINGER, KATHY DEPERI,
STEVEN DETSCHNER, MICHAEL DEVITO,
LAWRENCE DEVLIN, JESUS M. DIAZ DIAZ,
JAMES J. DICKSON, JEFFREY A. DIGGS,
KATHRYN DILDY, NANETTE DIMOND, EFREN L.
DOMINGUEZ, LOUIE DOMINGUEZ, REBECCA J.
DONAHUE, BENJAMIN DRABING, CLAYTON
DRAGGOO, SHARON DRENNING, JOHN
DROULLARD, ROSALIN DUGDALE-NORTON,
MARC A. DUMONT, JAMES DURBIN, JAMES C.
DURDEN, APRIL DWYER, SCOTT J ECKERT,
ALAN EDWARDS, JERRY EISENHOUR,
CHRISTOPHER S. ELLIS, DEBRA ELMORE-
NESHEIM, CRAIG EMMICK, PAUL ENGLISH,
STEPHEN ESCOBAR, FRANKLIN ESSARY,
LARRY FAIR, JOSEPH W. FAIRLESS, ANTHONY
FALLETTA, BRIAN FARMER, HEIDI FERGUSON,
JOHN R. FERGUSON, BRIAN M. FIELD,
JONATHAN FIELD, HECTOR J. FIGUEROA-
RAMOS, MARY FISHER, AMY FLANAGAN,

-2-

RICHARD FLEMING, HEIDI FONTAINE, DARIN
D. FORAN, AARON T. FOREMAN, ELISABETH
FORGES, ELIZABETH FOURNIER, DAVID FOX,
STEVEN   L.   FRAZIER,   STEPHEN   FREI,
STROTHER T. FULCHER JR., LISA FULTON,
WILLIAM FUSCO, DWIGHT GAHM, RONNIE
GALINDO, ANGEL L. GARCIA, BENJAMIN
GARDNER, ELAINE M. GARLEY, JOE R. GARZA,
RUBEN R. GARZA JR., RONALD E. GAUCHER,
MICHAEL R. GEORGE, KENNETH GIACONE,
BRANDY   GIRDNER,   MATTHEW   GLADYSZ,
ROBERT   GLASSHEIM,   EDGAR   C.   GLEIM,
RAYMOND A. GLOSSER, ERIC GOAD, JUAN
GODINEZ,   DONNA   F.   GONZALES,   NOLA
GONZALES, BOLIVIA GONZALEZ, JON D.
GOOD, ROGER GOOLSBY, MARVIN E GORBETT,
ELIZABETH M. GRANT, JUDONA M. GREEN,
TERESA GREENE, CARL GREENOCKLE, PAGE
E. GREER, LISA M. GREGOR, KENNETH
GRIFFIN, VANESSA GROOMS, ROBERT GRUNN,
DAVID   A.   GUDZINAS,   SCOTT   GULLETT,
WILLIAM O. GWYN, ANNE HAAS, LINDA T.
HAGERTY, JOHN B. HALLORAN, MURRAY M.
HAM, RICK HAMILTON, DANIELLE HAMMACK,
LARRY HAMMOCK, DANIEL HANLON JR.,
STEVE   HAPPEL,   ROMAN   HARASYMIAK,
DOUGLAS S. HARPOLD, RONNIE HARRELL,
DAVID HARRIS, LLOYD W. HARRIS, THOMAS H.
HARRIS   JR.,   TED   B.   HASKELL,WALTER
HATFIELD,   DON   HATZ,   LOUIS   HAUSLER,
MICHAEL L. HAWKINS, DOUGLAS HAZEN,
CHRISTOPHER   M.   HEATER,   HEIDI   HEIL,
WILLIAM HELM, LINDA J. HEMPERLEY,
CARRIE HENDERSON, JAMES HENDERSON,
RONALD HENDERSON, HENRY HESS, DOCK
HINES, BERNARD M. HIRREL, LOAN HOANG,
MARY H. HOLDEN, JAMES HOLDER, RHEALYN
HOLLAND, MARION HOLLEY, MATTHEW
HOLLIS, PHILLIP J. HOLLIS, DARRYL HOLMAN,
STANLEY M. HORN, JUDSON HORNER, LEEROY
HORNING, BIANCA HORTON, GARY L. HUDSON
II, RENITA J. HUDSON, WILLIAM HUDSON III,
TOM R. HUGHES,   ROGER H. HUGO, AARON
HURT, DANIEL HURT, DOUGLAS E. HUTTER,

-3-

DANIEL R. HYATT, ROBERT IDEMOTO, FRANK JACKSON, JAN S. JACOB, BOBBY J. JARRETT, DAVE R. JARRETT, JASON JIMMIE, JEFF JOHNSON, JOHNNY W. JOHNSON, JULIUS E. JOHNSON, LINDA JOHNSON, LOUISE JOHNSON, NEAL JOHNSON, SHANE B. JOHNSON, WILLIAM JOHNSON, WILLIAM C. JOHNSTON, MICHAEL D. JOINES, JAMES JONES JR., JASON C. JONES, KEISHA E. JONES, ROBERT G. JONES, BARBARA JOY, MICELLE M. KAMIENSKI, KENNIE KARBINER, ANGELA KEATH, JOHN KEATH, ANNA L. KELLER, EILEEN N. KENNEDY, LORI C. KENNEY, CHARLES A. KERN, TIMOTHY KIDA, RANDALL L. KIMBRO, BRIAN A. KING, WILTON KING, ELISABETH KINGERY, JOHNNIE KIRKLING, EDDIE KIRKPATRICK, HENRY A KLEIN, BETTY KNIGHT, ROBERT KOLESKI, W. SCOTT KOLWYCK, CHRISTINE KOORNDYK, MICHAEL D. KOPERA, RICHARD T. KUHTA, PAUL T. LA MOY, NICKOL LADD, BRIGETTE LAFAUCI, JAMES LAMARCA, RICHARD A. LAMASTERS, CHARMIAN LAMB, SANDRA LANG, RONALD LANGLEY, STEVE G. LANNOM, MICHAEL LANZA, KENNETH J. LASSMAN, KHANG LE, ADRIAN F. LEAL, JOHN W. LEASMAN, TIM LEE, NOEL LEON FIGUEROA, FRANK LEWIS, DON LIMA, KAREN LIMON, DAVID A. LITHGOW, FRANCIS L. LOC, KASI LONG, MARVIN LONG, MICHAEL A. LONGO JR., HECTOR LOPEZ BRITO, MIGUEL A. LOPEZ TORRES, CHARLES LOWTHER, MIGUEL A. LUJAN, TONY LUJAN, DANIEL LUTON, ROBERT LUTTRELL, UBALDO MACHUCA CASTILLO, EMILY MADDEN, SCOTT MADDOX, CYNTHIA MADRIGAL, BECKI MAIN, JESUS MALDONADO, PAUL MALLAR, SARAH MALMI, DAVID E. MANES, NORMAND MARCHAND, LUPE MARTINEZ, MARIA E. MARTINEZ, PATRICIA MARTINEZ, PHIL E. MARTINEZ, STEVEN L. MARTZ, BRENDA K. MASSAQUOI, BENJAMIN MATTHEWS, EUGENIA C. MATTHEWS, RODNEY E. MAY, MARIA T. MAYER, WILLIAM MCCAUGHAN, RALPH MCCLURE, HARRY C. MCCOY, SHANNA MCCRARY, BEVERLY

-4-

MCDONALD, DONALD MCFADDEN, NICK
MCFERRAN, LARRY A. MCGEE, LOKEY
MCKINNEY, THOMAS MCLAUGHLIN, ROBBIE
MCMAHAN, WILLIAM M. MCPHERSON, DANIEL
G. MEAD, TAMELA J. MEASE, CASEY MEDART,
ANGEL MEDINA, JOSE B. MEDINA FONSECA,
RENNIA MEEK, PAUL D. MEIZLER, WILLIAM
MELTON, PERRY H. MERZ, MELVIN G.
MESNEKOFF, JUSTIN MESTAZ, HAROLD E.
METCALF, GERALD MICKELSON, BARRY
MILES, DAVID MILLANG, CHARLES W. MILLER,
EMILE MIRANDETTE, SUSAN MOEN, ROBERT F.
MOHR, CLARIBEL MONTOYA, DUANE MOORE,
MALCOLM MOORE, JOEL J. MORELAND,
CRAIG R. MORGAN, ERNEST MORIN,
ELIZABETH MORRIS-BROWN, JOLENE
MOSLER, DOUGLAS M. MOSTYN, MARLENE A.
MURDOCK, JERRY MURRAY, CHERYL NALITT,
MICHAEL NAPERALSKY, MARVIN L. NEVEU,
JOHN NIEDERBERGER, JAMES W. NOLAND,
SHERRY NORMAN, MICHAEL S. NORMAN SR.,
EDWARD OAKES, SEAN J. OBERSKI, ARI B.
OBERSTEIN, ANN O'CANTO, DAVID J. ORD,
WILLIAM ORE, SMITH P. OURSO, MICHAEL G.
OVANDO, DONNA E. OWEN, JOE P. OWEN,
ROBERT PARRYMORE, BARTON A. PARSHALL,
JACKIE D. PARTON, MATTHEW A. PASCUA,
RUPERT PATRICK, SERENA PATTON, DONALD
PAYNE, JULIE PAYNE, MONICA D. PAYNE,
GRANT PEDERSON, DAVID PERLMAN, JOHN
PETERS, RICHARD E. PETERSEN, MARK
PETRATIS, TOMMY W. PETTY, SUZANNE
PFUHL, KENNETH N. PHIFER, LORI A.
PHOENIX, STEVEN PIERCE, ERIC PIERSE,
EDWARD T. PIGG, RAYMOND C. PIKE,
VERONICA I. PINA, EDMUND PINNELL, BRENT
L. PITTMAN, JERRY PLYMEL, STEVEN
POLLARD, J.D. POOL, STEPHEN POPE, BOBBY
POTTER, GREGORY POTTER, ROBERT J.
PRAMIK, CYNTHIA PREDMORE, MICHAEL R.
PUCKETT, ROBERT QUANDT, MICHAEL RAINS,
RYAN RASMUSSEN, ROGER RATHBUN, ANDY
RAY, MELISSA RAY, JACK L. REDDICK,
PHILOMENA REDELLA, MELODIE B. REEVES,

-5-

LARRY REID, JIMMIE REMSEY, MICHAEL
RENO, ORLANDO RENTERIA, JAMES M.
REYNOLDS, MICHAEL J. REYNOLDS, MARYANN
RHOADES, JEANINE L. RICO, DAVID B.
RIETBERG, MANFORD C. RIFE, ELAENOR
RIGGIO, JAMES RIGGS, MICHAEL RIGGS,
STEPHANIE RIGGS, CHARLENE RILEY,
RICHARD L. RILEY, LOYAL RITTER, MARK
RITTER, ISMAEL RIVERA BURGOS, ANGEL
RIVERA MERCED, ANDY RIVERA NIEVES,
LANDON ROBERSON, CHRIS ROBERTO, DENNIS
ROBERTSON, SHARON ROCAMONTES, JIMMY
C. ROGERS, WARREN ROITMAN, CARLOS
ROJAS, CHRISTINA ROJAS, ELIDETH ROJAS,
MELANIE ROSARIO, BRUCE E. ROSENBAUM,
JACK A. ROSENBERG, EDWARD ROSS, JAMES
RUBINO, MARIAN RUE, SCOTT R. RUFF,
ANTHONY RUIZ, ED RUSNAK, ROBERT
RUSSELL, KENNETH J. RYMISZEWSKI,
JEFFERY N. SACHS, SALLY SADARO,
CATHERINE SAGARINO, GERALD SALAZAR,
SANTIAGO SALAZAR III, RICHARD E. SALHUS,
ERNIE SALMON, CATHERINE E. SAMUELSON,
WALTER L. SANDERS, JOHN SCHABLOSKI,
STEPHEN SCHANDT, LOREN SCHLEINING,
DAVID SCHNELL, REBECCA SCHUMACHER,
MARGARET M. SCOTT, STANLEY B. SCOTT,
KEVIN L. SCROGGS, MARGIE SCROGGS,
SHIRLEY SEARCY, KENNETH SEARLE,
WARREN L. SEIZ, BEN F. SERNA, ROBERT M.
SHAFFER, TINA SHAMBAUGH, BERNARD L.
SHARUM, ROBERT SHAW, ANNE M. SHELTON,
ROBERT B. SHOOTS, WILLIAM H. SHUFF,
REGINALD SHUTE, RICHARD SIECKMANN,
DANIEL SIFERD, MARK SILEO, ALFRED SILVA,
ROBERT W. SIMMONS, CHRISTINE SIMPSON,
PHILLIP W. SISK, DANNY J. SKALICKY, HOLLY
SLAMOWITZ, BILL S. SLAUGHTER, MYRA S.
SLOAN, JAMES R. SMILEY, FELIX SMITH,
LARKUS SMITH, MONECIA SMITH, PAUL S.
SMITH, HAROLD E. SMITHSON, JOHN SNIDER,
CARLOS M. SOLIS DIAZ, JONATHAN SORBEL,
REX SORROW, MICHAEL SPAULDING, GENEVA
R. SPENCE, JODY P. SPIESE, JERRY SPINKS,

-6-

KEVIN SQUIRES, MIKAL STAMPKE, JAMES D. STARK, VERNON C. STARNES, JAMES E. STEARNS, FRANCIS STEINHOFF, JOE STENNETT, ROBERT L. STEPHENS, JAMES W. STICKLE, KEN STINSON, MALCOLM STOCKTON, WILLIAM STONE JR., DARRYL M. STRANGE, STEVEN J. STRUCK, WALTER STUETZ, GREGORY STUMP, TORREY SUMMERS, WILLIAM T. SUTTER III, ALBERT E. SUTTON, JEFFERY N. SUTTON, JON TABOR, JOSEPH G. TAFOYA JR., STEPHEN TAKESIAN, VICKI TATUM, JERRY TAWNEY, TORI TAYLOR, VICKI L. TAYLOR, EDWARD E. TAYLOR JR., MARK THEMIS, JEREMIE R. THIBAULT, JOHN THOMAS, MARILYN THOMAS, SANDY C. THOMAS, VANCE E. THOMAS, TIMOTHY L. THUESON, STEVEN TIBBITTS, STEVE TILLER, PHILIP R. TILLMAN, TALLEY O. TIMMENS, CHARLES TOMLINSON, ROBERT TOPA, CHAMELY TORO, TODD R. TRACY, FLORINDA D. TREJO, TRACIE TREVATHAN, WILLIAM D. TROUTMAN, JAMES W. TWIDDY JR., MATTHEW TWISS, PAUL S. ULOTH, EVELYN M. UNDERWOOD, JAMES R. UNDERWOOD, LUIS E. VALDIVIA, VAUGHN VANZANT, EDWIN VARGAS GONZALEZ, CODY VAUGHN, JACK G. VAUGHN, EVARISTO VIEIRA, JULIE VILLALOVOS, ANDREW A. VITELLO, H. ALLISON VOGT, KEITH P. VONQUALEN, ERNEST E. WALKER, FRED E. WALKER, GAYLE WALKER, DAVID W. WALLACE, ERIC WALLAND, RICKY WALTER, SCOTT J. WALTERS, SHANNON E. WALTERS, JEREMY WARD, CHARLES WATSON, JEFFREY WEARY, BRADLEY B. WEBB, STACEY WEINSTEIN, SHANNON WELLS, DENISE WESTBROOKS, JAMES WHALEY, GEORGE T. WHITE, KEVIN WHITE, RAYMOND E. WHITE JR., CHAD A. WICKHAM, EUTEVA WIDENER, BARRY WEIN, TIMOTHY E. WILBUR, JACK WILKINSON, EDWIN R. WILLEMS, DAVID C. WILLIAMS JR., LESLIE R. WILLSEY, JEFFREY WILSON, JOSEPH W. WILSON JR, LOUIS B. WILSON, TINA WINEINGER, SUSAN WINKELSTEIN, DONOVAN

-7-

S.   WINKLEY,   ROBERT   WOLF,   JAMES
WOLVERTON, BRYAN WOOD, GEORGE L.
WOOD, GREGORY M. WOOD, HAROLD E.
WOOD, JASON WORMAN, DAVID F. WYATT,
JUSTIN YODER, CLAUDINE T. YOUNG, EDWARD
S. ZABORSKI, JOHN S. ZALESKI, BENJAMIN
ZAPATA,   JOY   ZEMBELLAS,   DANIEL   P.
ZERTUCHE, DAVID ZULICK
*on behalf of themselves*
*and all employees similarly situated,*

                                                    **Plaintiffs,**

                            - vs -

ALDERWOODS   GROUP,   INC.,   SERVICE
CORPORATION   INTERNATIONAL,   SCI
FUNERAL   AND   CEMETERY   PURCHASING
COOPERATIVE, INC., SCI EASTERN MARKET
SUPPORT CENTER, L.P., SCI WESTERN MARKET
SUPPORT CENTER, L.P. a/k/a SCI WESTERN
MARKET   SUPPORT   CENTER,   INC.,   SCI
HOUSTON MARKET SUPPORT CENTER, L.P.,
JANE D. JONES, GWEN PETTEWAY, THOMAS
RYAN, PAUL A. HOUSTON and CURTIS BRIGGS

                                                    **Defendants.**

## CLASS ACTION COMPLAINT

**AND NOW** come Plaintiffs Deborah Prise, Heather Rady, et al., on behalf of themselves

and all others similarly situated, by and through their attorneys, Margolis Edelstein and Dolin,

Thomas & Solomon LLP, and file the following amended Class Action Complaint:

## I.    INTRODUCTION

1.       This is a proceeding for declaratory relief and monetary damages to redress the

deprivation of rights secured to Plaintiffs Deborah Prise, Heather Rady, et al., as well as all other

employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA"); and other laws of the various States in which defendant does business.

## II.    JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S. C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. §2201, and under 29 U.S.C. §216 (b).

3.    Venue is appropriate in the Western District of Pennsylvania since some of the unlawful acts alleged were committed in this district and some plaintiffs reside in this district. Venue is proper before this Court under 28 U.S.C. § 1391(b).

## III.    PARTIES

### A.    Plaintiffs

4.    The plaintiffs ("Plaintiffs") are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  Plaintiffs expressly include each individual identified in the caption, together with any similarly situated current or former employees who may file consent forms to opt-in to this collective action.  Any individual who opts-in to this action after the date of this amended complaint has full party status pursuant to 29 U.S.C. § 216 (b).

5.    All of the defendants except for Alderwoods Group, Inc. are liable to all plaintiffs

-9-

either directly as an employer or as successor-in-interest to plaintiffs' direct employer.

6.    Defendant Alderwoods Group, Inc. ("Alderwoods") is liable to those plaintiffs who worked at funeral locations owned by Alderwoods and/or its affiliates prior to the time Alderwoods was acquired by defendant Service Corporation International (the "Alderwoods Employees").

**B.    Defendants**

7.    Defendant Alderwoods Group, Inc. ("Alderwoods") is a corporation with its headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202.

8.    Defendant Service Corporation International ("SCI") is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019.

9.    Defendant SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI Cooperative") is a Delaware corporation which is owned by SCI.

10.    Defendant SCI Eastern Market Support Center, L.P. ("SCI Eastern") is a limited partnership which is owned by SCI.

11.    Defendant SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc. ("SCI Western") is a limited partnership or corporation which is owned by SCI.

12.    Defendant SCI Houston Market Support Center, L.P. ("SCI Houston") is a limited partnership which is owned by SCI.

13.    Defendants SCI Eastern, SCI Western and SCI Houston are referred to herein collectively as the "SCI Support Centers."

14.    The SCI Support Centers and the SCI Cooperative are referred to herein

-10-

collectively as the "SCI Managing Entities."

15.     Defendants Alderwoods, SCI, and the SCI Managing Entities are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

16.     Upon information and belief, the SCI Managing Entities conduct human resources and other employment-related functions for defendants and their funeral locations.

17.     Upon information and belief, the SCI Support Centers provide all executive, management, administrative, accounting, data processing, and human resources services for defendants and their funeral locations.

18.     Upon information and belief, the field personnel and training departments of the SCI Managing Entities provide on-site training for defendants and their funeral locations.

19.     Upon information and belief, the SCI Cooperative, through agreements with the SCI Support Centers, provides additional human resources services and support for defendants and their funeral locations.

20.     Upon information and belief, the SCI Cooperative creates and distributes employee handbooks for defendants and their funeral locations.

21.     Upon information and belief, the SCI Cooperative provides Dignity University training for defendants and their funeral locations.

22.     Upon information and belief, the SCI Cooperative produces communications to employees of defendants and their funeral locations, including the weekly newsletter "Frontline," and the intranet site "Global Village."

23.     Upon information and belief, the SCI Cooperative administers benefit plans for the employees and has contracted with third-party benefit providers to respond to questions

-11-

related to day-to-day benefits services, such as local provider questions, access to online services, and benefits provider contact information.

24.     Upon information and belief, the SCI Managing Entities facilitate implementation of corporate strategies, policies and procedures.

25.     Upon information and belief, the SCI Managing Entities are directly involved in the operations of defendants' business with respect to plaintiffs' employment.

26.     Upon information and belief, the SCI Managing Entities exercise or have exercised managerial responsibilities and substantial control over the terms of plaintiffs' employment.

27.     Upon information and belief, the SCI Managing Entities provided management services to SCI and its affiliates in relation to plaintiffs' employment.

28.     Upon information and belief, the SCI Managing Entities are not completely disassociated from SCI and its affiliates with respect to plaintiffs' employment.

29.     Upon information and belief, the SCI Managing Entities are controlled by or are under common control with SCI and its affiliates.

30.     Defendant Jane D. Jones has acted as Vice President of Human Resources for defendant SCI since 2005.

31.     Upon information and belief, Ms. Jones oversees human resources, training and education, and payroll and commission services – activities that assist approximately 20,000 employees in North America.

32.     Defendant Gwen Petteway has acted as Human Resources Director of defendant SCI Houston since February 2005.

-12-

33.     Upon information and belief, Ms. Petteway's job responsibilities include providing and/or supervising human resources services to the subsidiary and affiliate companies of SCI, as well as training and benefits provided to those companies.

34.     Upon information and belief, Ms. Petteway's job responsibilities include providing and/or supervising day-to-day human resources service and support for defendants' funeral home locations.

35.     Defendant Thomas Ryan has acted as President and Chief Executive Officer of SCI since in or around 2003.

36.     Upon information and belief, Mr. Ryan's responsibilities include actively managing SCI.

37.     Defendant Paul A. Houston is President, Chief Executive Officer and a Director of Alderwoods.

38.     Upon information and belief, Mr. Houston has been Chief Executive Officer of Alderwoods since in or around 2002.

39.     Upon information and belief, Mr. Houston's responsibilities include actively managing Alderwoods.

40.     Defendant Curtis Briggs is President and/or Vice President of various entities owned by SCI.

41.     Upon information and belief, Mr. Briggs is:

    a.   Vice President for the General Partner of SCI Eastern

    b.   Vice President for the General Partner of SCI Houston

    c.   President and/or Vice President of the SCI Cooperative

-13-

d.  President and/or Vice President of SCI Western

42.   Upon information and belief, Mr. Briggs's responsibilities include actively managing the SCI Managing Entities.

43.   Defendants Jones, Petteway, Ryan, Houston and Briggs are referred to herein collectively as the "Individual Defendants."

*SCI and the SCI Managing Entities Are Liable to Plaintiffs*

44.   Plaintiffs are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  Plaintiffs expressly include each individual identified in the caption, together with any similarly situated current or former employees who may file consent forms to opt-in to this collective action.  Any individual who opts-in to this action after the date of this amended complaint has full party status pursuant to 29 U.S.C. § 216 (b).

45.   At all relevant times, SCI and the SCI Managing Entities are or have been Plaintiffs' employers.

46.   At all relevant times, SCI and/or the SCI Managing Entities have suffered or permitted Plaintiffs to perform work for them.

47.   At all relevant times, SCI and/or the SCI Managing Entities are or have been liable for the employment of Plaintiffs.

48.   At all relevant times, Plaintiffs have acted directly or indirectly in the interest of SCI and/or the SCI Managing Entities.

49.   At all relevant times, SCI and/or the SCI Managing Entities have operated locations, either directly or through the SCI Affiliates, and therefore are the employers of

-14-

Plaintiffs who are or were employed at all locations.

50.    Collectively, SCI, the SCI Affiliates, the SCI Managing Entities and their funeral service locations comprise a single, integrated enterprise, as they perform related activities through unified operation or common control for a common business purpose.

51.    Upon information and belief, SCI and the SCI Affiliates exercise complete dominion and control over the various funeral service locations.

52.    At all relevant times, Plaintiffs are or have been jointly employed by SCI, the SCI Affiliates and/or the SCI Managing Entities at their funeral service locations.

53.    At all relevant times, the funeral service locations of SCI, the SCI Affiliates and/or the SCI Managing Entities are or have been the Plaintiffs' employer.

54.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities operate interrelated business operations.

55.    At all relevant times, business operations of the funeral locations are or have been centrally controlled by SCI and/or the SCI Managing Entities.

56.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities exercise common control of labor relations.

57.    Upon information and belief, SCI and/or the SCI Managing Entities own all of the funeral service locations and exercise financial control over the business operations of those locations.

58.    At all relevant times, SCI and/or the SCI Managing Entities maintain or have maintained centralized control of employment relations.

59.    At all relevant times, the human resource functions of the funeral service

-15-

locations report or have reported directly or indirectly to SCI and/or the SCI Managing Entities.

60.     Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities operate under common management.

61.     Upon information and belief, SCI and/or the SCI Managing Entities exercise common management of the various funeral locations.

62.     Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities have common ownership and financial control.

63.     In light of the economic realities of the enterprise operated by SCI, the SCI Affiliates and the SCI Managing Entities, SCI and the SCI Managing Entities are joint employers of all Plaintiffs.

64.     At all relevant times, Plaintiffs' work simultaneously benefited all of SCI, the SCI Affiliates and the SCI Managing Entities.

65.     At all relevant times, the SCI Managing Entities acted directly or indirectly in the interest of SCI in relation to Plaintiffs.

66.     At all relevant times, SCI acted directly or indirectly in the interest of the SCI Managing Entities in relation to Plaintiffs.

67.     SCI and the SCI Managing Entities are not completely disassociated with respect to the employment of Plaintiffs and the SCI Managing Entities are controlled by and/or are under common control with SCI.

68.     In light of the economic realities of SCI, the SCI Affiliates and the SCI Managing Entities' enterprise, at all relevant times SCI and the SCI Managing Entities were integrated enterprises, employers, joint employers and/or single employers of Plaintiffs for purposes of

-16-

federal laws.

***All Defendants Are Liable to the Alderwoods Employees***

69.    All defendants are liable to those plaintiffs who worked at funeral locations owned by Alderwoods and/or its affiliates prior to the time Alderwoods was acquired by defendant Service Corporation International (the "Alderwoods Employees"), either directly or as successors-in-interest.

70.    At all relevant times, Alderwoods has been the employer of the Alderwoods Employees.

71.    At all relevant times, Alderwoods has suffered or permitted the Alderwoods Employees to perform work for Alderwoods.

72.    At all relevant times, Alderwoods has been liable for the employment of the Alderwoods Employees.

73.    At all relevant times, the Alderwoods Employees have acted directly or indirectly in the interest of Alderwoods.

74.    At all relevant times, Alderwoods has operated locations, either directly or through the Alderwoods Affiliates, and therefore is the employer of Plaintiffs who were employed at all Alderwoods locations.

75.    Collectively, Alderwoods, the Alderwoods Affiliates and their funeral service locations comprise a single, integrated enterprise, as they perform related activities through unified operation or common control for a common business purpose.

76.    Upon information and belief, Alderwoods has exercised complete dominion and control over the Alderwoods funeral service locations.

-17-

77.    At all relevant times, the Alderwoods Employees have been jointly employed by Alderwoods and the Alderwoods Affiliates at their funeral service locations.

78.    At all relevant times, the funeral service locations of Alderwoods and the Alderwoods Affiliates have been the Alderwoods Employees' employer.

79.    Upon information and belief, Alderwoods and the Alderwoods Affiliates operate interrelated business operations.

80.    At all relevant times, business operations of the funeral locations have been centrally controlled by Alderwoods.

81.    Upon information and belief, Alderwoods has exercised common control of labor relations.

82.    Upon information and belief, Alderwoods has owned all of the Alderwoods funeral service locations and has exercised financial control over the business operations of those locations.

83.    At all relevant times, Alderwoods has maintained centralized control of employment relations.

84.    At all relevant times, the human resource functions of the Alderwoods funeral service locations have reported directly or indirectly to Alderwoods.

85.    Upon information and belief, Alderwoods and the Alderwoods Affiliates operate under common management.

86.    Upon information and belief, Alderwoods has exercised common management of the various Alderwoods funeral home locations.

87.    Upon information and belief, Alderwoods and the Alderwoods Affiliates have

-18-

common ownership and financial control.

88.     In light of the economic realities of the enterprise operated by Alderwoods and the Alderwoods Affiliates, Alderwoods is a joint employer of the Alderwoods Employees.

89.     At all relevant times, the Alderwoods Employees' work simultaneously benefited Alderwoods and the Alderwoods Affiliates.

90.     At all relevant times, the Alderwoods Affiliates acted directly or indirectly in the interest of Alderwoods in relation to the Alderwoods Employees.

91.     Alderwoods and the Alderwoods Affiliates have not been completely disassociated with respect to the employment of the Alderwoods Employees and the Alderwoods Affiliates have been controlled by and/or under common control with Alderwoods.

92.     Although SCI and the SCI Managing Entities were not the Alderwoods Employees' employers at the time of the FLSA violations alleged herein, Plaintiffs assert that SCI and the SCI Managing Entities, as further described below, are liable under a successor liability theory.

93.     Upon information and belief, Coronado Acquisition Group ("Coronado"), at relevant times hereto, was a wholly owned subsidiary of SCI, which was formed by SCI for the sole purpose of merging with Alderwoods. At relevant times hereto, SCI and Coronado had the same offices, telephone numbers, and corporate officers.

94.     Upon information and belief, Alderwoods, through its shareholders, has adopted a merger agreement by and between Alderwoods, Coronado and/or SCI.

95.     Upon information and belief, SCI, through its shareholders, has adopted a merger agreement between Alderwoods, Coronado and/or SCI.

-19-

96.    Upon information and belief, as of approximately November 2006, Alderwoods and/or Coronado ("Merged Entities") became a wholly owned subsidiary of SCI.

97.    Upon information and belief, the Merged Entities, under the merger agreement, continue business operations in substantially the same form as before the merger.

98.    Upon information and belief, the Merged Entities, under the merger agreement, continue to use substantially the same workforce as before the merger, with substantially the same supervisors and same working conditions as Alderwoods.

99.    Upon information and belief, the Merged Entities, under the merger agreement, provide essentially the same services as before the merger and use the same facilities, equipment and method of providing services as Alderwoods.

100.    Upon information and belief, SCI and the SCI Managing Entities are successors-in-interest to Alderwoods' liability.    As a successors-in-interest, SCI and the SCI Managing Entities are jointly and severally liable for all of the unlawful conduct of Alderwoods alleged herein.

101.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities are or have been the employer of the Alderwoods Employees.

102.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities have suffered or permitted the Alderwoods Employees to perform work for them.

103.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities are or have been liable for the employment of the Alderwoods Employees.

104.    At all relevant times, the Alderwoods Employees have acted directly or indirectly in the interest of SCI, the SCI Managing Entities and the Merged Entities.

-20-

105.   At all relevant times, SCI, the SCI Managing Entities and the Merged Entities have operated locations, either directly or through the SCI Affiliates, and therefore are the employers of the Alderwoods Employees.

106.   Collectively, SCI, the SCI Managing Entities and the Merged Entities and their funeral service locations comprise a single, integrated enterprise, as they perform related activities through unified operation or common control for a common business purpose.

107.   Upon information and belief, SCI and/or the SCI Managing Entities, under the merger agreement, exercise complete dominion and control over Alderwoods and its funeral service locations.

108.   At all relevant times, the Alderwoods Employees are or have been jointly employed by SCI, the SCI Managing Entities and the Merged Entities at their funeral service locations.

109.   At all relevant times, the funeral service locations of Alderwoods are or have been the Alderwoods Employees' employer.

110.   Upon information and belief, SCI, the SCI Managing Entities and the Merged Entities operate interrelated business operations.

111.   At all relevant times, business operations of the funeral locations are or have been centrally controlled by SCI, the SCI Managing Entities and the Merged Entities.

112.   Upon information and belief, SCI, the SCI Managing Entities and the Merged Entities exercise common control of labor relations.

113.   Upon information and belief, SCI, the SCI Managing Entities and/or the Merged Entities own all of the funeral service locations and exercise financial control over the business

operations of those locations.

114.   At all relevant times, SCI, the SCI Managing Entities and/or the Merged Entities maintain or have maintained centralized control of employment relations.

115.   At all relevant times, the human resource functions of the funeral service locations report or have reported directly or indirectly to SCI, the SCI Managing Entities and/or the Merged Entities.

116.   Upon information and belief, SCI, the SCI Managing Entities and the Merged Entities operate under common management.

117.   Upon information and belief, SCI, the SCI Managing Entities and/or the Merged Entities exercise common management of the various funeral home locations.

118.   Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities have common ownership and financial control.

119.   In light of the economic realities of the enterprise operated by SCI, the SCI Managing Entities and the Merged Entities, each of the defendants are joint employers of the Alderwoods Employees.

120.   At all relevant times, the Alderwoods Employees' work simultaneously benefited all of SCI, the SCI Managing Entities and the Merged Entities.

121.   At all relevant times, the Merged Entities acted directly or indirectly in the interest of SCI and the SCI Managing Entities in relation to the Alderwoods Employees.

122.   SCI, the SCI Managing Entities and the Merged Entities are not completely disassociated with respect to the employment of the Alderwoods Employees and the SCI Managing Entities and the Merged Entities are controlled by and/or are under common control

-22-

with SCI.

123.    In light of the economic realities of SCI, the SCI Managing Entities and the Merged Entities' enterprise, at all relevant times SCI, the SCI Managing Entities and the Merged Entities were integrated enterprises, employers, joint employers, single employers and/or successor employers of Plaintiffs for purposes of federal laws and/or SCI and the SCI Managing Entities constitute successors-in-interest to Alderwoods.

***The Individual Defendants Are Liable to Plaintiffs***

124.    At all relevant times, the Individual Defendants are or have been the employer of Plaintiffs.

125.    At all relevant times, the Individual Defendants have suffered or permitted the Plaintiffs to perform work for them.

126.    At all relevant times, the Individual Defendants are or have been liable for the employment of Plaintiffs.

127.    At all relevant times, the Individual Defendants were responsible for defendants' human resources and employment functions with respect to Plaintiffs.

128.    Upon information and belief, Individual Defendants' responsibilities for defendants' human resources and employment functions included drafting, approving, distributing, supervising, enforcing and/or monitoring defendants' human resources and employment policies, including those related to the hours Plaintiffs worked, the recordkeeping associated with those hours, and the compensation Plaintiffs received.

129.    Upon information and belief, Individual Defendants were directly involved in the operations of defendants' business with respect to these human resources and employment

-23-

functions.

130.    Upon information and belief, Individual Defendants exercised direction and control with respect to the defendants' human resources and employment functions.

131.    Upon information and belief, Individual Defendants actively managed defendants' human resources and employment policies, interfaced with the other defendants and their funeral locations regarding those policies, and made decisions regarding the policies and the manner in which the policies were applied to Plaintiffs.

132.    At all relevant times, Plaintiffs have acted directly or indirectly in the interest of the Individual Defendants.

133.    At all relevant times, Plaintiffs are or have been jointly employed by the Individual Defendants.

134.    At all relevant times, the Individual Defendants acted directly or indirectly in the interest of SCI and/or the SCI Managing Entities in relation to Plaintiffs.

## IV.    FACTUAL BACKGROUND

135.    Plaintiffs worked for defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and one-half for hours they worked over 40 in a week.

136.    Defendants' policy and/or practice was to not compensate Plaintiffs for work it suffered or permitted Plaintiffs to perform.

137.    Defendants knew Plaintiffs were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Plaintiffs worked.

138.    Defendants' practice is to be deliberately indifferent to these violations of the

-24-

statutory overtime requirements.

139.    The failure to pay overtime is willful.

140.    Examples of defendants' policies and practices to deprive Plaintiffs of their

earned wages and wage premiums are set forth below:

a.  **Subclass A:** Defendants implemented a "Community Work Policy." Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

b.  **Subclass B:** Defendants implemented an "On Call Pay Policy." Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for work performed outside the regular workday, off-site from the funeral home.

c.  **Subclass C:** Defendants' policy required that certain hourly employees train for and obtain certain licenses. Defendants did not pay for the training, test taking and continuing education requirements for those licenses despite suffering or permitting employees to perform such work.

d.  **Subclass D:** Defendants' policy required that certain hourly employees take other types of training. Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

e.  **Subclass E:** Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

f.  **Subclass F:** Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for lunch breaks. Defendants did, however, suffer and permit their employees to perform work during such meal breaks, but pursuant to defendants' "Meal Break Deduction Policy," time

-25-

spent on meal "breaks" was still deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

g.  **Subclass G:** Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

h.  **Subclass H:** Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted plaintiffs to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

i.  **Subclass I:** Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Plaintiffs' overtime.

141.    Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment.

142.    More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

## COUNT I
### FLSA

143.    The preceding paragraphs are incorporated herein as if fully set forth herein.

144.    Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs.

-26-

## COUNT II
## FAILURE TO MAINTAIN PROPER RECORDS

145.    The preceding paragraphs are incorporated herein as if fully set forth herein.

146.    Defendants violated provisions of the FLSA by failing to make, keep, and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment; more specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week, and/or the total overtime compensation for each work week and are liable to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)    an award of the value of Plaintiffs' unpaid wages;

(c)    liquidated, compensatory, consequential and punitive damages;

(d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' rights;

(e)    an award of pre- and post-judgment interest; and

(f)    such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact.

-27-

Respectfully Submitted,

MARGOLIS EDELSTEIN

Date: _____

_____
Charles H. Saul, Esquire
PA ID No. 19938
Attorney for Plaintiffs
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256

**EXHIBIT G**

1  Tod F. Schleier, State Bar No. 004612
   Bradley H. Schleier, State Bar No. 011696
2  SCHLEIER LAW OFFICES, P.C.
   3101 N. Central Avenue
3  Suite 1090
   Phoenix, AZ 85012
4  Telephone: (602) 277-0157
   Facsimile:  (602) 230-9250
5  tod@schleierlaw.com
   brad@schleierlaw.com
6
   Attorneys for Plaintiffs
7
   [Additional Counsel Listed on Following Page]
8

9                 UNITED STATES DISTRICT COURT

10                    DISTRICT OF ARIZONA

11                     PHOENIX DIVISION

12
   JAMES STICKLE; ELEANOR RIGGIO;        )  Case No.
13 FRANK ACUNA; JOSEPH BIERNACKI;        )
   GORDON FARMER; RHEALYN                )      **COMPLAINT— Class Action**
14 HOLLAND; RICHARD LAMASTERS;           )      **DEMAND FOR JURY TRIAL**
   KENNETH ALLEN, et. al,                )
15 on behalf of themselves               )
   and all employees similarly situated, )
16                                        )
         Plaintiffs,                      )
17                  - vs -                 )
                                          )
18 SCI WESTERN MARKET SUPPORT            )
   CENTER, L.P. a/k/a SCI WESTERN        )
19 MARKET SUPPORT CENTER, INC.; SCI      )
   EASTERN MARKET SUPPORT CENTER,        )
20 L.P.; SCI HOUSTON MARKET SUPPORT      )
   CENTER, L.P.; SCI FUNERAL AND         )
21 CEMETERY PURCHASING                   )
   COOPERATIVE, INC.; SERVICE            )
22 CORPORATION INTERNATIONAL; JANE       )
   D. JONES; GWEN PETTEWAY; THOMAS       )
23 RYAN; CURTIS BRIGGS; THE SCI 401K     )
   RETIREMENT SAVINGS PLAN; and JULIE    )
24 DOUGLAS,                              )
                                          )
25       Defendants.                      )
   _____)
26

27

COMPLAINT— Class Action, DEMAND FOR JURY TRIAL

1    Additional Attorneys for Plaintiffs, who will
     submit applications for admission *pro hac vice*:

2

3    J. Nelson Thomas, NY Attorney No. 2579159
     Patrick J. Solomon, NY Attorney No. 2716660
     Michael J. Lingle, NY Attorney No. 3925765

4    Annette Gifford, NY Attorney No. 4105870
     Justin Cordello, NY Attorney No. 4131447

5    DOLIN, THOMAS & SOLOMON LLP
     693 East Avenue

6    Rochester, NY 14607
     Telephone: (585) 272-0540

7    Facsimile:  (585) 272-0574
     nthomas@theemploymentattorneys.com

8
     Charles H. Saul, PA State Bar No.19938

9    Liberty J. Weyandt, PA State Bar No. 87654
     Kyle T. McGee, PA State Bar No. 205661

10   MARGOLIS EDELSTEIN
     525 William Penn Place

11   Suite 3300
     Pittsburgh, PA 15219

12   Telephone: (412) 281-4256
     Facsimile: (412) 642-2380

13   csaul@margolisedelstein.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

**CLASS ACTION COMPLAINT**

**AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Schleier Law Offices, P.C., Dolin, Thomas & Solomon LLP, and Margolis Edelstein, and file the following Class Action Complaint:

## I.  INTRODUCTION

1.       This is a proceeding for declaratory relief and monetary damages to redress the deprivation of rights secured to plaintiffs, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1332(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1059(a)(1), for defendants' failure to maintain accurate payroll records and credit plaintiffs' 401(k) plans with their non-reduced weekly wages and correct overtime compensation; and under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, for defendants' pattern of activity in employing the mails to pursue a scheme of improperly obtaining plaintiffs' property by means of false or fraudulent pretenses or representations.

## II.  JURISDICTION AND VENUE

2.       The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under 28 U.S.C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. §2201, under 29 U.S.C. §216 (b), and under 18 U.S.C. § 1964(a) and (c).

3.       Venue is appropriate in the District of Arizona because unlawful acts alleged in this complaint were committed in this district and because defendants conduct business in this District.  Additionally, several plaintiffs, including James Stickle, Eleanor Riggio and Frank Acuna, were employed by defendants, suffered violations, and currently reside

1    in this District.  Venue is proper before this Court under 28 U.S.C. § 1391(b).

2    **III.**    **PROCEDURAL HISTORY**

3       4.     On December 12, 2006, Service Corporation International ("SCI"), a named

4 defendant in this action, was named in a complaint filed in the Western District of

5 Pennsylvania.

6       5.     The Western District of Pennsylvania complaint also named Alderwoods

7 Group, Inc. ("Alderwoods") as a defendant in that action.

8       6.     Prior to the filing of the Pennsylvania complaint, SCI had acquired

9 Alderwoods and Alderwoods had become SCI's wholly-owned subsidiary.

10       7.     After the merger, SCI continued to operate the vast majority of both its own

11 funeral homes and those of Alderwoods.

12       8.     The Pennsylvania complaint was filed as a class and collective action

13 alleging, *inter alia*, that employees who worked at defendants' funeral home locations

14 were not properly paid for all the time they worked for defendants.

15       9.     The employees (whether they worked only at an Alderwoods location that

16 became an SCI location, or at any other SCI location) shared a number of factual

17 similarities: they suffered similar pay violations; SCI and/or its agents were their joint

18 employers; SCI was liable for the violations of the entities it had acquired.

19       10.     Because of the overlapping legal liability of defendants, as well as the

20 overlapping factual issues in the matter, plaintiffs believed it was legally appropriate and in

21 the interests of judicial efficiency for defendants to be named in a common action.

22       11.     The Court in the Western District of Pennsylvania certified a class of

23 employees and directed that notice be sent to those individuals who worked at an

24 Alderwoods location.

25       12.     In response to that notice, hundreds of current and former employees opted-

26 in to the Pennsylvania action.

27       13.     Eventually, the Court in the Western District of Pennsylvania determined it

1 would only hear claims on behalf of employees who worked only for Alderwoods, and that
2 claims of employees who had worked only at other SCI locations should be heard in a
3 separate action.

4     14.    Therefore, plaintiffs bring this separate action for SCI employees who did
5 not work at an Alderwoods location.

6     15.    In the instant action, employees who worked at funeral locations owned by
7 SCI and its subsidiaries and affiliates allege violations of certain federal laws, including
8 the Fair Labor Standards Act, against SCI as well as its holdings and employees who were
9 responsible for the policies which resulted in the violations and which, therefore, are liable
10 as employers under federal law.

11     16.    The plaintiffs in this lawsuit include employees who worked at all SCI
12 funeral locations.

13 **IV.    CLASS ACTION ALLEGATIONS**

14     17.    The claims arising under ERISA and RICO are properly maintainable as a
15 class action under Federal Rule of Civil Procedure 23.

16     18.    The class action is maintainable under subsections (1), (2) and (3) of Rule
17 23(b).

18     19.    The class consists of current and former employees of defendants whose
19 401(k) plans were not credited with their non-reduced weekly wages and correct overtime
20 compensation.    Additionally, the class consists of current and former employees of
21 defendants who were injured by defendants' scheme to cheat employees out of their
22 property and to convert the employees' property, including their wages and/or overtime
23 pay, by misleading employees about their rights under the FLSA.

24     20.    The class size is over 50 employees.

25     21.    Plaintiffs will adequately represent the interests of the class members
26 because they are similarly situated to the class members and their claims are typical of, and
27 concurrent to, the claims of other class members.

1    22.    There are no known conflicts of interest between Named Plaintiffs and other

2    class members.

3    23.    The class counsel, Schleier Law Offices, P.C., Dolin, Thomas & Solomon

4    LLP and Margolis Edelstein, are qualified and able to litigate the class members' claims.

5    24.    The class counsel is experienced in employment litigation, and its attorneys

6    are experienced in class action litigation, including class actions arising under federal

7    statutes.

8    25.    Common questions of law and fact predominate in this action because the

9    claims of all class members are based on whether defendants' policy of not crediting

10    employees with their non-reduced weekly wages and correct overtime compensation is a

11    violation of ERISA or was part of a scheme to defraud plaintiffs in violation of RICO.

12    26.    The class action is maintainable under subsections (2) and (3) of Rule 23(b)

13    because plaintiffs seek injunctive relief, common questions of law and fact predominate

14    among the class members and the class action is superior to other available methods for the

15    fair and efficient adjudication of the controversy.

16    **V.**    **PARTIES**

17    **A.**    **Plaintiffs**

18    27.    The plaintiffs ("Plaintiffs") are employees and former employees of

19    defendants who were suffered or permitted to work by defendants and not paid their

20    regular or statutorily required rate of pay for all hours worked.  "Plaintiffs" expressly

21    includes each individual identified in the caption, together with any similarly situated

22    current or former employees who may file consent forms to opt-in to this collective action.

23    28.    Attached to this complaint in its **Appendix A** are the current Plaintiffs'

24    consent forms seeking recovery against their employers in an FLSA action.  Each of these

25    individuals, as well as any individual who opts-in to this action, has full party status

26    pursuant to 29 U.S.C. § 216 (b).

27    29.    Defendants are liable to Plaintiffs as employers, joint employers, single

employers, alter egos and/or otherwise according to federal and state common law.

**B.     Defendants**

30.     Defendants SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI Cooperative"), SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc. ("SCI Western"), SCI Eastern Market Support Center, L.P. ("SCI Eastern"), and SCI Houston Market Support Center, L.P. ("SCI Houston") (collectively, SCI Western, SCI Eastern and SCI Houston are referred to as the "SCI Support Centers"), are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

31.     Defendant The SCI 401K Retirement Savings Plan (the "Plan") is a 401(k) plan in which Plaintiffs are or were eligible to participate.

32.     Defendant SCI sponsors the Plan and defendants the SCI Cooperative and the SCI Support Centers benefit from the Plan.

33.     Defendant Julie Douglas is the administrator of the Plan.

34.     Upon information and belief, defendants are Plaintiffs' fiduciaries with respect to the Plan.

35.     At all times relevant to this action, defendants are employers of Plaintiffs within the meaning of 29 U.S.C. § 203 (d) and comprise an "enterprise" engaged in commerce as defined in 20 U.S.C. §§ 203(r), 203(s).

***The SCI Support Centers Are Liable to Plaintiffs***

36.     SCI Western is a limited partnership or corporation which is owned, directly or indirectly, by SCI.

37.     SCI Eastern is a limited partnership which is owned, directly or indirectly, by SCI.

38.     SCI Houston is a limited partnership which is owned, directly or indirectly, by SCI.

39.     The primary functions of the SCI Support Centers are to help facilitate the

execution of corporate strategies, coordinate communications between the field and corporate offices, and serve as liaisons for the implementation of policies and procedures.

40.  The SCI Support Centers provide "day-to-day human resources services and support for individual locations," including "**all** executive, management, administrative, accounting, data processing, and **human resources services** for [defendants'] locations." **Appendix B**, declaration of Judith M. Marshall dated July 5, 2007, at ¶4 (emphasis added).

41.  "[O]n-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with" the SCI Support Centers.  Appendix B at ¶ 6.

42.  Each SCI Support Center has an ownership interest in the SCI Cooperative and together the SCI Support Centers collectively own a majority of the SCI Cooperative.

43.  The SCI Support Centers, through their controlling interest in the SCI Cooperative, provide "Dignity University training programs" by which defendants ensure uniform services at their nationwide locations, publish and maintain the weekly newsletter "Frontline," and the "Global Village" intranet site, through which defendants communicate with their nationwide employees, and administer benefit plans for employees and contract with third-party benefit providers to respond to questions related to day-to-day benefits services.  Appendix B at ¶¶6-7; **Appendix C**, declaration of Gwen Petteway dated July 9, 2007, at ¶5.

44.  Additionally, the SCI Support Centers, through their controlling interest in the SCI Cooperative, maintain a payroll department and database which centralize information regarding Plaintiffs, including employment records and payroll information. **Appendix D**, declaration of Liana Jensen dated October 4, 2007, at ¶3.

45.  Defendants' public filings reflect that SCI and the entities it owns, directly or indirectly, including the SCI Support Centers, employ "a single line management model in an effort to streamline the organization and ensure that operational efficiencies [are] achieved throughout the SCI network."

46.    Defendants' public filings reflect that the funeral home locations that SCI owns, directly or indirectly, "are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles."

47.    Upon information and belief, including defendants' admissions, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, are actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

48.    Upon information and belief, including defendants' admissions, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

49.    Upon information and belief, including defendants' admissions, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively ensure defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

50.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, play a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

51.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set employees' schedules, hours and standard benefit levels.

52.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set standard pay scales.

53.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, determine and draft policies, answer questions regarding human resources issues and policies, resolve issues regarding policies and their application, counsel locations on human resources issues, and communicate with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

54.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, provide employees with information regarding benefit plans and providers, oversee the implementation and execution of benefit plans, retain ultimate authority for providing information and responding to questions regarding the benefit plans, maintain records regarding the benefit plans, make determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and are responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

55.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

56.    Upon information and belief, including defendants' admissions, the SCI Support Centers' primary function of facilitating the execution of corporate strategies includes maintaining and directing a single, integrated set of operations across the SCI

1  network.

2      57.    Upon information and belief, including defendants' admissions, the SCI

3  Support Centers are responsible for, and subject to, centralized management directions and

4  decisions.

5      58.    The SCI Support Centers are owned, directly or indirectly, by defendant SCI.

6  Additionally, SCI maintains an ownership interest, directly or indirectly, in the SCI

7  Cooperative that is owned by the SCI Support Centers.

8      59.    Upon information and belief, the SCI Support Centers are part of an

9  extensive and complex network of corporations which SCI has created and owns in an

10  effort to operate its nationwide locations in a unified, consistent manner.  This network

11  promotes a fraud or injustice, in that it attempts to avoid liability for paying its common

12  employees and prevents employees from accurately identifying their employers.

13     60.    Because the SCI Support Centers have authority to hire or fire employees,

14  provide day-to-day support regarding human resources issues, including the hiring and

15  firing of employees, and control the drafting and enforcement of the policies which govern

16  the hiring and firing of employees, the SCI Support Centers have the power to hire and fire

17  employees.

18     61.    Because the SCI Support Centers have authority to establish employees'

19  work schedules and/or conditions of employment, provide day-to-day support regarding

20  human resources issues, including employees' work schedules and/or conditions of

21  employment, control the drafting and enforcement of the policies which govern

22  employees' schedules and/or conditions of employment, and administer employees'

23  benefit programs, the SCI Support Centers supervise and control employees' work

24  schedules and/or conditions of employment.

25     62.    Because the SCI Support Centers have authority to establish employees' rate

26  and method of payment and centrally control payroll functions, the SCI Support Centers

27  determine the rate and method of employees' payment.

63.   Because the SCI Support Centers play a central role in the keeping of centralized records, including a database, regarding employees' employment records, the SCI Support Centers maintain employees' employment records.

64.   For all of the foregoing reasons, among others, including the SCI Support Centers' services and support with respect to "all executive, management, administrative, accounting, data processing, and human resources services," training, and nationwide communications with employees, the SCI Support Centers provide centralized control over defendants' labor relations.

65.   Because the SCI Support Centers provide day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administer employee's benefit programs, they are affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in relation to the employment of Plaintiffs.

66.   Because the SCI Support Centers are actively involved in the creation of the illegal policies complained of in this case, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensure defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, the SCI Support Centers actively participate in the violations complained of in this action.

67.   Because the SCI Support Centers, together with the SCI Cooperative, are owned by SCI, directly or indirectly, the SCI Support Centers and other defendants share common ownership.

68.   Because the SCI Support Centers are subject to centralized management directions and decisions that govern the entities owned by SCI, including a single line management model applicable to the entire SCI network, the SCI Support Centers and other defendants share common management.

69.     Because the SCI Support Centers are subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, the SCI Support Centers and other defendants share functional integration of operations.

70.     Because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to employees, centrally control the payroll functions related to employees' employment, provide services and support with respect to "all executive, management, administrative, accounting, data processing, and human resources services," training, and nationwide communications with employees, and are subject to a network-wide single line management model, the SCI Support Centers are not completely disassociated with respect to employees' employment.

71.     The SCI Support Centers may be deemed to share control of employees, directly or indirectly, by reason of the fact that they are under common control with the SCI Cooperative and the funeral home locations because they are all owned by SCI, directly or indirectly, and because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to Plaintiffs, centrally control the payroll functions related to employees' employment, provide services and support with respect to "all executive, management, administrative, accounting, data processing, and human resources services," training, and nationwide communications with employees, and are subject to a network-wide single line management model.

72.     Because the SCI Support Centers are part of an extensive and complex network through which SCI promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, the SCI Support Centers are an alter ego of SCI and the other entities SCI owns.

73.     Based upon the foregoing, the SCI Support Centers are liable to Plaintiffs because of their active role in operating the business, their role in the violations

complained of in this action, their status as employer, joint employer, single employer, alter ego, or otherwise according to federal and state common law.

***The SCI Cooperative Is Liable to Plaintiffs***

74.   The SCI Cooperative is a Delaware corporation which is owned, directly or indirectly, by SCI and the SCI Support Centers.

75.   The SCI Cooperative, through agreements with the SCI Support Centers, "provide[s] additional human resources services and support" for the funeral home locations.  Appendix B at ¶4.

76.   "[O]n-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with" the SCI Cooperative.  Appendix B at ¶6.

77.   The SCI Cooperative publishes and maintains the weekly newsletter "Frontline," and the "Global Village" intranet site, publications through which defendants communicate with their nationwide employees.  Appendix B at ¶7.

78.   The SCI Cooperative administers benefits by "contract[ing] with third-party benefit providers to respond to questions related to day-to-day benefits services, such as local provider questions, access to online services, and benefits provider contact information.  To the extent that those third-party providers cannot respond to questions, [the SCI Cooperative] will respond."  Appendix C at ¶5.

79.   The SCI Cooperative maintains a payroll department and "a database that contains information on current and former employees of SCI subsidiaries."  Appendix D at ¶3.

80.   Defendants' public filings reflect that SCI and the entities it owns directly or indirectly, including the SCI Cooperative, employ "a single line management model in an effort to streamline the organization and ensure that operational efficiencies [are] achieved throughout the SCI network."

81.   Defendants' public filings reflect that the funeral home locations that SCI

owns, directly or indirectly, "are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles."

82.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of plaintiffs' overtime.

83.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of plaintiffs' overtime.

84.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

85.    Upon information and belief, including defendants' admissions, the SCI Cooperative, in concert with others, plays a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

86.    Upon information and belief, including defendants' admissions, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents,

1    make decisions that set employees' schedules, hours, and standard benefit levels.

2          87.    Upon information and belief, including defendants' admissions, the SCI

3    Cooperative, in concert with others, has the authority to, and does, through its agents,

4    make decisions that set standard pay scales.

5          88.    Upon information and belief, including defendants' admissions, the SCI

6    Cooperative determines and drafts policies, answers questions regarding human resources

7    issues and policies, resolves issues regarding policies and their application, counsels

8    locations on human resources issues, and communicates with employees about company

9    issues and human resources issues and policies, including issues related to hours worked

10   and payment for such hours worked.

11         89.    Upon information and belief, including defendants' admissions, the SCI

12   Cooperative provides employees with information regarding benefit plans and providers,

13   oversees the implementation and execution of benefit plans, retains ultimate authority for

14   providing information and responding to questions regarding the benefit plans, maintains

15   records regarding the benefit plans, makes determinations, either directly or indirectly,

16   regarding the scope and amount of benefits available to employees, and is responsible for

17   providing employees, directly or indirectly, with information regarding their benefits,

18   including benefits statements and information regarding their 401(k) plans.

19         90.    Upon information and belief, including defendants' admissions, the SCI

20   Cooperative maintains payroll records regarding employees and, in concert with others, the

21   SCI Cooperative has the authority to, and does, through its agents, make decisions

22   concerning the issuance of payroll checks, directly or indirectly.

23         91.    Upon information and belief, including defendants' admissions, the SCI

24   Cooperative's functions in providing services and support regarding human resources,

25   training, benefits administration, and payroll include a function maintaining and directing a

26   single, integrated set of operations across the SCI network.

27         92.    Upon information and belief, including defendants' admissions, the SCI

Cooperative is responsible for, and subject to, centralized management directions and decisions.

93.     The SCI Cooperative is owned, directly or indirectly, by defendants SCI and the SCI Support Centers.  Additionally, SCI owns the SCI Support Centers, directly or indirectly.

94.     Upon information and belief, the SCI Cooperative is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner.  This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

95.     Because the SCI Cooperative has authority to hire or fire Plaintiffs, provides day-to-day support regarding human resources issues, including the hiring and firing of Plaintiffs, and controls the drafting and enforcement of the policies which govern the hiring and firing of employees, the SCI Cooperative has the power to hire and fire employees.

96.     Because the SCI Cooperative has authority to establish employees' work schedules and/or conditions of employment, provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, the SCI Cooperative supervises and controls employees' work schedules and/or conditions of employment.

97.     Because the SCI Cooperative has authority to establish employees' rate and method of payment and centrally control payroll functions, the SCI Cooperative determines the rate and method of employees' payment.

98.     Because the SCI Cooperative keeps centralized records, including a database, regarding employees' employment records, the SCI Cooperative maintains

1 employees' employment records.

2     99.   For all of the foregoing reasons, among others, including the SCI

3 Cooperative's human resources services and support, training function, publication of

4 communications across the SCI network, administration of benefit programs, and

5 maintenance of the payroll department, the SCI Cooperative provides centralized control

6 over defendants' labor relations.

7     100.   Because the SCI Cooperative provides day-to-day support regarding human

8 resources issues, including employees' work schedules and/or conditions of employment,

9 controls the drafting and enforcement of the policies which govern employees' schedules

10 and/or conditions of employment, and administers employees' benefit programs, it is

11 affirmatively, directly, and actively involved in operations of the defendants' business

12 functions, particularly as it relates to the employment of the plaintiffs.

13     101.   Because the SCI Cooperative is actively involved in the creation of the

14 illegal policies complained of in this case, actively advises defendants' agents on the

15 enforcement of the illegal policies complained of in this case and actively ensures

16 defendants' compliance or non-compliance with federal law, including the requirements of

17 the FLSA, ERISA and RICO, the SCI Cooperative actively participates in the violations

18 complained of in this action.

19     102.   Because the SCI Cooperative, together with the SCI Support Centers, is

20 owned by SCI, directly or indirectly, the SCI Cooperative and other defendants share

21 common ownership.

22     103.   Because the SCI Cooperative is subject to centralized management directions

23 and decisions that govern the entities owned by SCI, including a single line management

24 model applicable to the entire SCI network, the SCI Cooperative and other defendants

25 share common management.

26     104.   Because the SCI Cooperative is subject to a single line management model

27 applicable to the entire SCI network for the purpose of streamlining the organization and

1  achieving operational efficiencies, the SCI Cooperative and other defendants share

2  functional integration of operations.

3      105.   Because the SCI Cooperative controls the drafting and enforcement of the

4  employment and human resources policies related to employees, centrally controls the

5  payroll functions related to employees' employment, provides services and support with

6  respect to human resources, training, and nationwide communications with employees, and

7  is subject to a network-wide single line management model, the SCI Cooperative is not

8  completely disassociated with respect to employees' employment.

9      106.   The SCI Cooperative may be deemed to share control of employees, directly

10  or indirectly, by reason of the fact that it is under common control with the SCI Support

11  Centers and the funeral home locations because they are all owned by SCI, directly or

12  indirectly, and because the SCI Cooperative controls the drafting and enforcement of the

13  employment and human resources policies related to employees, centrally controls the

14  payroll functions related to employees' employment, provides services and support with

15  respect to human resources, training, and nationwide communications with employees, and

16  is subject to a network-wide single line management model.

17      107.   Because the SCI Cooperative is part of an extensive and complex network

18  through which SCI promotes a fraud or injustice in attempting to shield from liability itself

19  and other entities which are responsible for employees' employment and in preventing

20  employees from accurately determining the identity of their employers, the SCI

21  Cooperative is an alter ego of SCI and the other entities SCI owns.

22      108.   Based upon the foregoing, the SCI Cooperative is liable to Plaintiffs because

23  of its active role in operating the business, its role in the violations complained of in this

24  action, its status as employer, joint employer, single employer, alter ego, or otherwise

25  according to federal and state common law.

26  ***SCI Is Liable to Plaintiffs***

27      109.   Defendant SCI is a corporation with its headquarters being at 1929 Allen

Parkway, Houston, Texas 77019.

110.   SCI owns, directly or indirectly, various funeral home locations and various other companies or entities, including the SCI Cooperative and the SCI Support Centers, in a nationwide enterprise.

111.   Defendants' public filings reflect that SCI and the entities it owns directly or indirectly, including the SCI Cooperative and the SCI Support Centers, employ "a single line management model in an effort to streamline the organization and ensure that operational efficiencies [are] achieved throughout the SCI network."

112.   Defendants' public filings reflect that the funeral home locations that SCI owns, directly or indirectly, "are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles."

113.   Upon information and belief, including defendants' admissions, at all relevant times all functions at all entities in the SCI network, including the SCI Cooperative and the SCI Support Centers, reported to SCI, directly or indirectly.

114.   Upon information and belief, including defendants' admissions, at all relevant times SCI maintained control and authority, directly or indirectly, over all functions at the entities in the SCI network, including the SCI Cooperative and the SCI Support Centers.

115.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

116.   Upon information and belief, including defendants' admissions, SCI, in

concert with others, has the authority to, and does, through its agents, make decisions concerning advising defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

117.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

118.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

119.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning employees' schedules, hours and standard benefit levels.

120.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning standard pay scales.

121.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the determination and drafting of policies, answering questions regarding human resources issues and policies, resolving issues regarding policies and their application, counseling locations on human resources issues, and communicating with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

122. Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning providing employees with information regarding benefit plans and providers, overseeing the implementation and execution of benefit plans, providing information and responding to questions regarding the benefit plans, maintaining records regarding the benefit plans, making determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

123. Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

124. SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning maintaining and directing a single, integrated set of operations across the SCI network.

125. Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning centralized management directions and decisions.

126. Upon information and belief, SCI is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner. This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

127. Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning hiring or firing employees, providing support regarding human resources issues, including the hiring and firing of Plaintiffs, and controlling the drafting and enforcement of the policies which govern the hiring and firing

1    of employees, SCI has the power to hire and fire employees.

2    128. Because SCI, in concert with others, has the authority to, and does, through

3    its agents, make decisions concerning employees' work schedules and/or conditions of

4    employment, providing support regarding human resources issues, including Plaintiffs'

5    work schedules and/or conditions of employment, controlling the drafting and enforcement

6    of the policies which govern employees' schedules and/or conditions of employment, and

7    administering employees' benefit programs, SCI supervises and controls employees' work

8    schedules and/or conditions of employment.

9    129. Because SCI, in concert with others, has the authority to, and does, through

10   its agents, make decisions concerning employees' rate and method of payment and

11   centrally controlling payroll functions, SCI determines the rate and method of employees'

12   payment.

13   130. Because SCI, in concert with others, has the authority to, and does, through

14   its agents, make decisions concerning centralized records, including a database, regarding

15   employees' employment records, SCI maintains employees' employment records.

16   131. For all of the foregoing reasons, among others, including SCI's authority and

17   exercise of authority with respect to human resources services and support, training

18   function, publication of communications across its network, administration of benefit

19   programs, and maintenance of the payroll department, SCI provides centralized control

20   over defendants' labor relations.

21   132. Because SCI, in concert with others, has the authority to, and does, through

22   its agents, make decisions concerning human resources issues, including employees' work

23   schedules and/or conditions of employment, controlling the drafting and enforcement of

24   the policies which govern employees' schedules and/or conditions of employment, and

25   administering employees' benefit programs, it plays a central role in operations of

26   defendants' business functions, particularly in regards to the employment of Plaintiffs.

27   133. Because SCI, in concert with others, has the authority to, and does, through

its agents, make decisions concerning the illegal policies complained of in this case, advising of defendants' agents on the enforcement of the illegal policies complained of in this case and ensuring defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, SCI plays a central role in the violations complained of in this action.

134.   Because SCI owns, directly or indirectly, the SCI Cooperative and the SCI Support Centers, SCI and the other defendants share common ownership.

135.   Because SCI maintains and is subject to centralized management directions and decisions that govern the entities it owns, directly or indirectly, including a single line management model applicable to the entire SCI network, SCI and the other defendants share common management.

136.   Because SCI maintains and is subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, SCI and the other defendants share functional integration of operations.

137.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning drafting and enforcing employment and human resources policies related to employees, centrally controlling the payroll functions related to employees' employment, providing services and support with respect to human resources, training, and nationwide communications with employees, and is subject to a network-wide single line management model, SCI is not completely disassociated with respect to employees' employment.

138.   SCI may be deemed to share control of employees, directly or indirectly, by reason of the fact that it is under common control with the SCI Cooperative, the SCI Support Centers and the funeral home locations, all of which are owned by SCI, directly or indirectly, and because SCI plays a central role in the drafting and enforcement of the employment and human resources policies related to employees, centrally controlling the

295008f36a191fcb

payroll functions related to employees' employment, providing services and support with respect to human resources, training, and nationwide communications with employees, and maintains and is subject to a network-wide single line management model.

139. Because SCI maintains and is part of an extensive and complex network through which it promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, SCI is an alter ego of the other defendants and the other entities it owns.

140. Based upon the foregoing, SCI is liable to employees because of its central role in operating the business, its role in the violations complained of in this action, its status as employer, joint employer, single employer, alter ego, or otherwise according to federal and state common law.

***Jane D. Jones Is Liable to Plaintiffs***

141. Defendant Jane D. Jones has acted as Vice President of Human Resources for SCI since 2005.

142. Defendants' public filings reflect that Ms. Jones "oversees human resources, training and education, and payroll and commission services – activities that assist approximately 20,000 employees in North America."

143. Upon information and belief, including defendants' admissions, Ms. Jones is responsible for, provides direction and control over, and is authorized to direct all aspects of human resources functions across SCI's network.

144. Upon information and belief, including defendants' admissions, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay

Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

145.   Upon information and belief, including defendants' admissions, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

146.   Upon information and belief, including defendants' admissions, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

147.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

148.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in decisions that set employees' schedules, hours and standard benefit levels.

149.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved decisions that set standard pay scales.

150.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and

communications with employees about human resources issues and policies.

151.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

152.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in training and education functions across SCI's network.

153.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in determining the type and scope of training employees must attend as well as any compensation they receive for attending training.

154.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in payroll and commission functions across SCI's network.

155.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

156.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in benefit plans across SCI's network.

157.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

158.   Because Ms. Jones has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees,

and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Ms. Jones has the power to hire and fire employees.

159.    Because Ms. Jones has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Jones supervises and controls employees' work schedules and/or conditions of employment.

160.    Because Ms. Jones has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Ms. Jones determines the rate and method of employees' payment.

161.    Because Ms. Jones has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Jones maintains employees' employment records.

162.    Because Ms. Jones provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Plaintiffs.

163.    Because Ms. Jones is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or