1   STEVEN H. GURNEE, ESQ. SB# 66056
    DAVID M. DANIELS, ESQ. SB# 170315
2   NICHOLAS P. FORESTIERE, ESQ. SB#125118
    JOHN A. MASON, ESQ. SB# 166996
3   GURNEE & DANIELS LLP
    2240 Douglas Boulevard, Suite 150
4   Roseville, CA  95661-3805
    Telephone    (916) 797-3100
5   Facsimile    (916) 797-3131

6   Attorneys for Defendants
    ALDERWOODS GROUP, INC., PAUL HOUSTON,
7   SERVICE CORPORATION INTERNATIONAL,
    SCI FUNERAL AND CEMETERY PURCHASING
8   COOPERATIVE, INC., SCI EASTERN MARKET
    SUPPORT CENTER, L.P., SCI WESTERN MARKET
9   SUPPORT CENTER, L.P., and SCI HOUSTON
    MARKET SUPPORT CENTER, L.P.

10

11                        UNITED STATES DISTRICT COURT

12                       NORTHERN DISTRICT OF CALIFORNIA

13

14

15  WILLIAM HELM, DEBORAH PRISE,          )  Case Nos.  CV 08-01184 SI and
    HEATHER P. RADY, et al., on behalf of )  CV 08-1190-SI
16  themselves and all other employees and former )
    employees similarly situated,         )
17                                        )  **DEFENDANTS' RESPONSE TO**
                                          )  **PLAINTIFFS' CONSOLIDATED**
18              Plaintiffs,               )  **SUPPLEMENT TO THE FIRST JOINT**
           vs.                            )  **CASE MANAGEMENT STATEMENT**
19                                        )
    ALDERWOODS GROUP, INC., et al         )
20                                        )
              Defendants.                 )  Date:    July 25, 2008
21  _____ )  Time:    2:00 p.m.
                                          )  Dept.:   10
22  Claude Bryant, et al.                 )  Judge:  The Honorable Susan Illston
                                          )
23              Plaintiffs,               )
           vs.                            )
24                                        )
                                          )
25  SERVICE CORPORATION                   )
    INTERNATIONAL, INC., et al            )
26                                        )
              Defendants.                 )
27  _____ )

28

    **DEFENDANTS' RESPONSE TO PLAINTIFFS' CONSOLIDATED SUPPLEMENT**          1
    **TO THE FIRST JOINT CASE MANAGEMENT STATEMENT**
    Case No.: CV 08-01184 SI and CV 08-01190 SI

Defendants file this response to Plaintiffs' Consolidated Supplement to Joint and Case Management Statement (Plaintiffs' Supplement) filed in *William Helm, et al. v. Alderwood's Group et al.*, Case No. CV 08-1184-SI ("Helm", Docket No. 91.) and *Claude Bryant v. Service Corporation International,* Case No. CV 08–1190–SI (*Bryant II*, Docket No. 73.)

I.

**PLAINTIFF'S REQUEST FOR DISCOVERY CONCERNING DEFENDANTS' MOTIONS TO DISMISS AND STRIKE BEFORE THEY ARE RE-FILED IS BASED UPON MISCHARACTERIZATIONS AND IS PREMATURE**

Plaintiffs' Supplement request for discovery regarding Defendant's motions to dismiss and strike is premature and is based upon a mischaracterization of those motions. Plaintiffs seek discovery arguing that the defendants' *previously* filed motions to dismiss and strike, which have yet to be re-filed, are supported by evidentiary submissions. This is not correct. The arguments in Defendants' 12(b)(6) motions for failure to state a claim upon which relief can be granted, and their motions to strike the class action allegations, are based upon the case law that demonstrates the employer allegations and certain claims against the Defendants are, as a matter of law, without merit. The arguments that the employer allegations and claims against the Defendants alleged in the Amended Complaint in this action are without merit, that were previously pled in Plaintiffs' pleadings in the *Prise et al. v. Alderwoods Group Inc., et al.* (WDPA Case No. 06-1641) ("*Prise*"), were also previously confirmed by Judge Conti to be without any merit because they were factually devoid. Defendants requested judicial notice of Judge Conti's rulings. Defendants also requested judicial notice of the affidavits that plaintiffs attached to their pleadings in the other pending actions they filed throughout the country that provide background of this matter. Consequently there are simply no "evidentiary submissions" that are the basis of the arguments set forth in Defendants 12(b)(6) motions or their motions to strike.

Moreover, authorizing any discovery at this time regarding any of the Defendants' motions that have yet to be re-filed is totally premature. Until the Defendants' motions

**DEFENDANTS' RESPONSE TO PLAINTIFFS' CONSOLIDATED SUPPLEMENT       2**
**TO THE FIRST JOINT CASE MANAGEMENT STATEMENT**
Case No.:  CV 08-1184 SI and CV 08-01190 SI

1  are re-filed, there is no way to determine if any evidence is actually used in support of the

2  arguments in those motions.  Similarly, there is no way to determine what, if any, "limited

3  discovery" would even be appropriate.  Plaintiffs' discovery request should not even be

4  considered until after Defendants have re-filed their motions.  Consequently, Plaintiffs'

5  request for limited discovery before defendants even re-file their motions should be

6  denied.

7

8                                                    II.
   **THE COURT SHOULD ALSO CONSIDER THE RECENT CASE *OF BRINKER***

9  ***RESTAURANT CORP., ET AL. V. SUPERIOR COURT* IN ISSUING ANY CMC**
   **ORDERS GIVEN THE SUBSTANTIAL EFFECT IT WILL HAVE IN THIS CASE**

10        The recent case of *Brinker Restaurant Corp., et al. v. Superior Court* (2008) issued

11  by the California Court of Appeals, a copy of which is attached hereto, will substantially

12  affect the Plaintiffs' claims in this action that they were not provided their meal and rest

13  periods and were required to work "off the clock".  In *Brinker, supra*, the appellate court

14  ruled that employers need only provide, but not ensure, that rest and meal periods are

15  taken by their employees.  The *Brinker* decision confirms a decision issued by the by this

16  court in W*hite v. Starbucks Corp.,* 497 F.Supp.2d 1080 (N.D.Cal. 2007) which also

17  rejected the notion that employers must ensure their employees take meal breaks.  The

18  *Brinker* decision also held that allegations concerning an employer's failure to provide

19  meal and rest periods and "off the clock" work necessarily required an individualized

20  inquiry regarding those violations that make them unsuitable for class certification.

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28

**DEFENDANTS' RESPONSE TO PLAINTIFFS' CONSOLIDATED SUPPLEMENT**     3
**TO THE FIRST JOINT CASE MANAGEMENT STATEMENT**
Case No.:  CV 08-01184 SI and CV 08-01190 SI

1          Consequently, Defendants intends to revise their motions to dismiss and strike

2    based upon the *Brinker* decision.

3                                  Respectfully submitted.

4

5    Dated:    July 25, 2008.                        GURNEE & DANIELS LLP

6

7                               By _____

8                                  STEVEN H. GURNEE, ESQ.
                              NICHOLAS P. FORESTIERE, ESQ.
                              DAVID M. DANIELS, ESQ.

9                                  Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' RESPONSE TO PLAINTIFFS' CONSOLIDATED SUPPLEMENT**     **4**
**TO THE FIRST JOINT CASE MANAGEMENT STATEMENT**
Case No.:  CV 08-01184 SI and CV 08-01190 SI

Filed 7/22/08  (opn. on transfer from Supreme Court)

CERTIFIED FOR PUBLICATION

OPINION ON TRANSFER FROM THE CALIFORNIA SUPREME COURT

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRINKER RESTAURANT CORPORATION et al.,<br><br>      Petitioners,<br><br>      v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>      Respondent;<br><br>ADAM HOHNBAUM et al.,<br><br>      Real Parties in Interest. | D049331<br><br>(San Diego County<br>Super. Ct. No. GIC834348) |

Petition for writ of mandate after the superior court issued an order certifying a class. Patricia A. Y. Cowett, Judge. Petition granted.

Akin Gump Strauss Hauer & Feld, Rex S. Heinke and Johanna R. Shargel; Morrison & Foerster and Karen J. Kubin for Petitioner.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Julie A. Dunne and Guylyn R. Cummins for California Restaurant Association, Employers Group, California Hospital Association, California Retailers Association, National Council of Chain Restaurants and National Retail Federation as Amici Curiae on behalf of Petitioner.

William B. Sailer for California Employment Law Council as Amicus Curiae on behalf of Petitioner.

Greenberg Traurig, Gregory F. Hurley and Stacey Herter for National Association of Theatre Owners of California/Nevada, Inc., as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Lorens & Associates, L. Tracee Lorens, Robert D. Wilson III, Wayne A. Hughes; Cohelan & Khoury, Timothy D. Cohelan, Michael D. Singer, Christopher A. Olsen; The Turley Law Firm, William Turley; Furth, Lehmann & Grant, The Furth Firm, Frederick P. Furth, Jessica L. Grant; Schubert & Reed, Schubert Jonckheer Kolbe & Kralowec, Robert C. Schubert and Kimberly A. Kralowec for Real Parties in Interest.

Weinberg, Roger & Rosenfeld, David A. Rosenfeld, William A. Sokol, Theodore Franklin, Patricia M. Gates; and Miles E. Locker for Alameda County Central Labor Council, Contra Costa County Central Labor Council, Northern California Carpenters Regional Council, SEIU United Healthcare Workers-West and South Bay Central Labor Council as Amici Curiae on behalf of Real Parties in Interest.

Cynthia L. Rice and Jennifer Ambacher for California Rural Legal Assistance Foundation as Amicus Curiae on behalf of Real Parties in Interest.

2

In this action involving alleged violations of laws governing rest and meal breaks, we are presented with the following question:  Did the trial court err in certifying this matter as a class action without first determining the elements of plaintiffs and real parties in interest Adam Hohnbaum, Illya Haase, Romeo Osorio, Amanda June Rader and Santana Alvarado's (collectively plaintiffs) claims against defendants Brinker Restaurant Corporation, Brinker International, Inc., and Brinker International Payroll Company, LP (collectively Brinker)?

Reconsidering the matter following a transfer from the California Supreme Court and our vacating of the original opinion in this matter, we first recognize that "in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed." (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702.)[1]  We also recognize mandatory rest and meal breaks have "have long been viewed as part of the remedial worker protection framework" designed to protect workers' health and safety.  (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105, 1113 (*Murphy*).)  In addition, we note that in construing the applicable statutes and regulations, we look to the plain language of the laws and

─────────────────────────────────

[1]    This matter is before us for a second time after the California Supreme Court, upon our request, granted review and then transferred the matter back to us with directions that we "vacate the opinion and reconsider the matter as [we] see fit." (Order of Oct. 31, 2007, S157479.)

interpret them in a manner consistent with the Legislature's intent. (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818.)

 With these principles in mind, we conclude the class certification order is erroneous and must be vacated because the court failed to properly consider the elements of plaintiffs' claims in determining if they were susceptible to class treatment. Specifically, we conclude that (1) while employers cannot impede, discourage or dissuade employees from taking rest periods, they need only provide, not ensure, rest periods are taken; (2) employers need only authorize and permit rest periods every four hours or major fraction thereof and they need not, where impracticable, be in the middle of each work period; (3) employers are not required to provide a meal period for every five consecutive hours worked; (4) while employers cannot impede, discourage or dissuade employees from taking meal periods, they need only provide them and not ensure they are taken; and (5) while employers cannot coerce, require or compel employees to work off the clock, they can only be held liable for employees working off the clock if they knew or should have known they were doing so.  We further conclude that because the rest and meal breaks need only be "made available" and not "ensured," individual issues predominate and, based upon the evidence presented to the trial court, they are not amenable to class treatment.  Finally, we conclude the off-the-clock claims are also not amenable to class treatment as individual issues predominate on the issue of whether Brinker forced employees to work off the clock, whether Brinker changed time records, and whether Brinker knew or should have known employees were working off the clock.  Accordingly, we grant the petition and order the superior court to vacate its

order granting class certification and enter a new order denying certification of plaintiffs' proposed class.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Brinker and Its Written Policies*

Brinker operates 137 restaurants in California, including Chili's Grill & Bar, Romano's Macaroni Grill, and Maggiano's Little Italy.  Brinker previously owned the Cozymel's and Corner Bakery Café chains, but sold the former in late 2003 and the latter in early 2006.

### 1.  *Rest break and meal period policy*

Brinker's written policy, titled "Break and Meal Period Policy for Employees in the State of California," provides with regard to meal breaks, in a form to be signed by the employee, "I am entitled to a 30-minute meal period when I work a shift that is over five hours."  The form also provides, as to rest breaks, "If I work over 3.5 hours during my shift, I understand that I am eligible for one [10-]minute rest break for each four hours that I work."  The policy also provides that an employee's failure to follow the foregoing policies "may result in disciplinary action up to and including termination."

### 2.  *Working off the clock policy*

With respect to the issue of working off the clock, Brinker's "Hourly Employee Handbook" states in part:  "It is your responsibility to clock in and clock out for every shift you work. . . .  [Y]ou may not begin working until you have clocked in.  Working 'off the clock' for any reason is considered a violation of Company policy."  Brinker's handbook also states, "If you forget to clock in or out, or if you believe your time records

are not recorded accurately, you must notify a Manager immediately, so the time can be accurately recorded for payroll purposes."

     B. *2002 Settlement of Regulatory Action Against Brinker Restaurant Corporation*

     The California Division of Labor Standards Enforcement (the DLSE)[2] investigated Brinker Restaurant Corporation's compensation practices from October 1, 1999 to December 31, 2001, regarding its hourly restaurant employees in California. Among other things, the DLSE investigated Brinker's alleged failure to (1) provide unpaid meal periods as required by law, and, starting on October 1, 2000, pay premium wages to employees who were not provided with meal periods as required under Labor Code[3] section 226.7 and a specified Industrial Welfare Commission (IWC)[4] wage order; and (2) provide paid 10-minute rest breaks as required by law, and, starting on October 1,

_____

[2]    "The DLSE 'is the state agency empowered to enforce California's labor laws, including IWC wage orders.' [Citation.]" (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581.)

[3]    All further statutory references are to the Labor Code unless otherwise specified.

[4]    The IWC is the state agency in the Department of Industrial Relations "'empowered to formulate regulations (known as wage orders) governing employment in the State of California.'" (*Morillion v. Royal Packing Co., supra,* 22 Cal.4th at p. 581.) "It is the continuing duty of the [IWC] . . . to ascertain the wages paid to all employees in this state, to ascertain the hours and conditions of labor and employment in the various occupations, trades, and industries in which employees are employed in this state, and to investigate the health, safety, and welfare of those employees." (§ 1173.) The IWC is comprised of five members appointed by the Governor. (§ 70.) "Although the IWC was defunded by the Legislature effective July 1, 2004, its wage orders remain in effect. [Citation.]" (*Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429, 434, fn. 2 (*Bearden*).)

2000, pay premium wages to employees who were not provided with such rest breaks as required under section 226.7 and the specified IWC wage order.

In 2002 the DLSE filed suit against Brinker in the Los Angeles County Superior Court (the DLSE lawsuit).[5]  Before the DLSE completed its investigation and thus before it reached any final conclusions as to liability and damages, Brinker Restaurant Corporation and the DLSE entered into a settlement and release agreement (the DLSE settlement) under which Brinker Restaurant Corporation (1) paid $10 million to settle the DLSE lawsuit, and (2) agreed to a court-ordered injunction to ensure its compliance with California meal period and rest break laws until September 2006.

C. *Plaintiffs' Complaint*

Plaintiffs' first amended complaint (hereafter the complaint) alleges three types of wage and hour violations that are pertinent to the issues raised in this petition:

1. *Alleged rest break violations*

In their first cause of action, plaintiffs allege Brinker willfully violated section 226.7 and IWC Wage Orders Nos. 5-1998, 5-2000 and 5-2001 (hereafter collectively referred to as IWC Wage Order No. 5) by "fail[ing] to provide rest periods for every four hours or major fraction thereof worked per day to non-exempt employees, and failing to provide compensation for such unprovided rest periods."  Plaintiffs also allege that as a result of these alleged unlawful acts, they and the members of the proposed class are

---

5      *Division of Labor Standards Enforcement v. Brinker Restaurant Corporation*
(Super. Ct. Los Angeles County, 2002, No. BC279138).

entitled to recover premium wages and other relief under sections 226, 226.7 and IWC
Wage Order No. 5.

    2. *Alleged meal period and "early lunching" violations*

In their second cause of action, plaintiffs allege Brinker violated sections 226.7
and 512, and IWC Wage Order No. 5, by failing to "provide meal periods for days on
which non-exempt employees work(ed) in excess of five hours, or by failing to provide
meal periods [altogether], or to provide second meal periods for days employees worked
in excess of [10] hours, and failing to provide compensation for such unprovided or
improperly provided meal periods." Plaintiffs claim that Brinker engages in unlawful
"early lunching" by requiring its employees to take their meal periods soon after they
arrive for their shifts, usually within the first hour, and then requiring them to work in
excess of five hours, and sometimes more than nine hours straight, without an additional
meal period. Plaintiffs also allege that as a result of these alleged unlawful acts, they and
the members of the proposed class are entitled to recover premium wages and other relief
under sections 226 and 226.7, and IWC Wage Order No. 5.

    3. *Alleged off-the-clock/time shaving violations*

In their third claim, plaintiffs allege Brinker unlawfully required its employees to
work off the clock during meal periods. Although this claim is not expressly set forth in
the complaint, the court approved a stipulated amendment to the complaint under which
(1) that pleading "include[s] allegations that employees worked 'off the clock' without
setting forth those allegations with specificity"; and (2) plaintiffs' allegations with respect
to off-the-clock work "shall be limited to: (a) time worked during a meal period when an

individual was clocked out; and (b) time 'shaving,' which is defined as an unlawful alteration of an employee's time record to reduce the time logged so as to not accurately reflect time worked."

  D. *Cross-Motions on Plaintiffs' Rolling Five-Hour Meal Period Claim*

  In May 2005, pursuant to a court-approved stipulation to aid a mediation session, the parties submitted briefing to the court in the form of cross-motions on plaintiffs' rolling five-hour meal period claim. Specifically, the parties briefed the legal issue of "whether [Brinker] was required to provide a meal period for each five-hour block of time worked by an hourly employee." This statement of the issue followed the stipulation subheading: "<u>When Must A Meal Period Be Provided?</u>"

  In their motion, plaintiffs asserted that "Brinker's policy of requiring their employees to work for periods of over [five] continuous hours without a meal break violates [IWC Wage Order No. 5], as well as [sections] 512 and 226.7."

  In its motion, Brinker argued it was only required to "provide a first meal period to its hourly, non-exempt employees when such employees worked more than five hours and that [it] was required to provide a second meal period to [those] employees only after [they] worked more than [10] hours in a workday."

  Plaintiffs asserted in their written opposition to Brinker's motion that while rest breaks "need only be 'authorized and permitted,' . . . *the employer must 'ensure' that the employee takes meal periods*." (Italics added.) Acknowledging that the 10-hour second meal period provision in section 512 was not at issue in this case, plaintiffs also addressed their early lunching claim, asserting that Brinker's payroll records showed that

9

Brinker was "forcing employees to take their meal period right after they report to work,"
and thus it was "impossible for [Brinker] to comply with the applicable wage orders as [it
was] *not providing morning rest periods to [its] employees which precede the meal
period.* Instead, they [were] *giving employees their meal periods as soon as they
arrive[d] to work and then working them up to [10] additional hours without an
additional meal break.*" (Italics added.) Plaintiffs asked the court to find that "by failing
to provide second meal periods to employees required to work in excess of five hours
before or after a meal," Brinker was violating IWC Wage Order No. 5, and plaintiffs and
the members of the proposed class were entitled to compensation under section 226.7.

1. *July 2005 meal period "advisory opinion" and order*

On July 1, 2005, the court issued a written tentative advisory opinion on the issue
of when an employer must provide a meal period to an hourly employee under section
512. The court found that, under that section, a meal period "must be given *before [an]
employee's work period exceeds five hours.*" (Italics added.) The court stated that "the
DLSE wants employers to provide employees with break periods and meal periods
toward the middle of an employee['s] work period in order to break up that employee's
'shift.'" Thereafter, on July 15 of that year, the court issued a minute order (hereafter the
July 2005 order) stating the "advisory ruling" was "*confirmed* by the court *as an order.*"
(Italics added.)

E. *Brinker's First Writ Petition (Challenging the July 2005 Meal Period Order)*

In November 2005 Brinker filed its first petition for writ of mandate (D047509) in
this matter. In the petition, Brinker challenged the court's July 2005 meal period order.

10

Specifically, Brinker requested a writ directing the trial court to "vacate its earlier order holding that:  (1) a non-exempt employee is entitled to a meal period for each five-hour block of time worked[; and] (2) the premium pay owed for a violation of [section 226.7] is a wage."

In support of its petition, Brinker argued the trial court erred by interpreting section 512 to mean that an hourly employee's entitlement to a meal period is "rolling," such that "a separate meal period must be provided for each *five-hour block of time* worked . . . regardless of the total hours worked in the day.  In other words, the [court] interpreted the law to be that . . . [o]nce a meal period concludes, the proverbial clock starts ticking again, and if the employee works five hours more, a second meal period must be provided."

Brinker also argued that although an employee working more than five hours and less than 10 hours is entitled under section 512 to a 30-minute meal period at some point during the workday, "nothing in [s]ection 512 . . . requires a second meal period be provided solely because [the] employee works five hours after the end of the first meal period, where the total time worked is less than [10] hours."  Brinker further asserted that IWC Wage Order No. 5 also "does not dictate the anomalous result that meal periods must be provided every five hours" because, like section 512, it requires only that an employee working more than five hours "gets a meal period *at some point* during the workday."  Brinker complained that the court's meal period ruling "requires servers to sit down, unpaid, during the most lucrative part of their working day."

11

By order dated January 20, 2006, this court denied Brinker's first petition on the ground writ relief was not available to challenge an advisory opinion.

F.  *Plaintiffs' Motion for Class Certification*

In April 2006 plaintiffs moved to certify a class of "[a]ll present and former employees of [Brinker] who worked at a Brinker[-]owned restaurant in California, holding a non-exempt position, from and after August 16, 2000 ('Class Members')."  In their moving papers, plaintiffs alternatively defined the class as "all hourly employees of restaurants owned by [Brinker] in California who have not been provided with meal and rest breaks in accordance with California law and who have not been compensated for those missed meal and rest breaks."  In a footnote, plaintiffs stated that the compensation they had not received for the "missed meal and rest breaks" included "'off-the-clock' work as [Brinker] engage[s] in several practices to avoid providing meal breaks known as, 'time shaving;' inserting meal periods into payroll records when they were not provided; and forcing employees to work 'off-the-clock' during meal breaks."  The class in question is estimated to consist of more than 59,000 Brinker employees.

Plaintiffs' motion also sought certification of six subclasses, three of which are pertinent to this appeal:  (1) a "Rest Period Subclass," consisting of "Class Members who worked one or more work periods in excess of three and a half (3.5) hours without receiving a paid 10 minute break during which the Class Member was relieved of all duties, from and after October 1, 2000"; (2) a "Meal Period Subclass," consisting of "Class Members who worked one or more work periods in excess of five (5) consecutive hours, without receiving a thirty (30) minute meal period during which the Class Member

was relieved of all duties, from and after October 1, 2000"; and (3) an "Off-The-Clock

Subclass," consisting of "Class Members who worked 'off-the-clock' or without pay from

and after August 16, 2000."

Plaintiffs asserted that "[Brinker's] corporate policies of improper early meals,

time shaving, failure to provide meal periods altogether or for less than [30] minutes,

failure to provide rest periods, and forcing 'off-the-clock' work, are centralized and

common to the Class."  They stated that "[u]tilization of the class action vehicle is the

superior method of trying this case, due to the fact that [Brinker] maintain[s] data and

reports in 'searchable' format . . . that specifically identify the number of employees who

are not receiving meal breaks for every [five] hours worked, not receiving meal periods at

all, and the instances where time cards have been manipulated, known at Brinker as

'time-shaving.'"  Plaintiff further stated that "[t]his case can be easily tried as a class

action with the use of statistical evidence to prove the effects of company-wide policies

and practices on the Class Members."

In support of their contention that common issues predominated, plaintiffs

submitted evidence that Brinker used a centralized computer system that could generate

reports showing class-wide meal and rest break violations.  Specifically, plaintiffs assert

the computer records could be used to show all "employee shifts that lasted over five

hours with breaks that were less than 30 minutes;" a "five hour short report" showing

"employees that worked more than five hours in a day, but their time was changed to

reflect less than five hours" to reveal "time shaving" done to conceal meal period

violations; and run a "time card maintenance report" that identifies all changes made to

original records.  Plaintiffs also submitted detailed declarations from 33 current and

former hourly employees.  Some stated they were denied rest breaks but said nothing

about whether they were denied meal breaks, or what time in their shift meal breaks were

taken.  Others stated they were not provided rest or meal breaks.  Some of the declarants

stated they were given meal breaks, but were required to take them within the first hour

of working and were not given another meal break after working five hours.  Some, but

not all, stated they were required to work when they were clocked out for lunch or after

their shift ended.  Some stated they did not "waive" their breaks, but instead were not

relieved of work duties so they could take their breaks.

     Plaintiffs also submitted statistical and survey evidence that allegedly showed that

even after its settlement with the DLSE, Brinker continued to prevent its employees from

taking meal and rest periods.  This evidence purported to show rest periods were not

given, meal periods were not provided for every five hours worked, meal periods were

taken for a period of less than 30 minutes, and second meal periods were not provided

where employees worked more than five hours after the first meal period.

     In its opposition, Brinker argued that a rest break class should not be certified

because (1) under IWC Wage Order No. 5, paid rest breaks need only be permitted, not

necessarily taken; (2) Brinker permitted its employees to take rest breaks; (3) whether

individual employees took the rest breaks that Brinker provided required a "hopelessly

individualized" inquiry; and (4) individual issues thus predominated.

     Brinker next argued that a meal period class should not be certified because (1)

under sections 512 and 226.7, unpaid meal periods need only be provided, not necessarily

14

taken; (2) plaintiffs' "rolling, five-hour approach to meal periods," which "would call for a second meal period for work days with *fewer than* 10 hours unless the first meal is taken exactly mid-shift" (original italics), was wrong because "[u]nder the plain language of [s]ection 512, an employee working more than five hours, but fewer than 10, is entitled to one 30-minute meal period at some point during the work day," and "[s]ection 512 on its face calls for a second meal period only when more than 10 hours are worked"; (3) Brinker provided all required meal periods to its employees; (4) whether each employee was provided with meal periods as required by law "var[ied] person-by-person, shift-by-shift, and day-by-day," and "involve[d] hundreds of individualized inquiries"; and (5) individual issues thus predominated.

Brinker also argued that plaintiffs' off-the-clock claim should not be certified as a class action claim because (1) plaintiffs had not cited any Brinker policy to alter time records or permit off-the-clock work, and Brinker has a policy expressly prohibiting such work; (2) plaintiffs had no proof of "class-wide off-the-clock work"; (3) even if off-the-clock work occurred, Brinker could not be held liable unless it "suffered or permitted the work"; and (4) any off-the-clock work would have to be individually proven.

In support of its opposition to the class certification motion, Brinker submitted more than 600 declarations from hourly workers and almost 30 declarations from managers. Brinker submitted declarations from managers who stated they permitted their employees to take rest and meal breaks. The managers explained in detail their compliance with rest and meal break laws. They also explained that there was no uniform practice for meal breaks because it was different for servers, host and bartenders

15

than for dishwashers and cooks, and it differed for lunch shifts versus dinner shifts. They explained that Brinker allowed restaurant managers to handle meal and rest breaks compliance locally, without a system wide standard practice. For example, one manager explained lunch servers rarely worked shifts long enough to take lunch breaks, dishwashers and cooks at lunch would take lunch as a group, dinner servers had a "rolling" meal break policy, and dinner cooks and dishwashers took turns taking meal breaks. Every 15 minutes or so, one employee would clock out for a 30-minute meal break. Another manager stated that he came up with an Excel spreadsheet called a "Meal Compliance Log," which was attached as an exhibit to his declaration. According to that manager, it was not used by other restaurants and easily allowed him to determine from time cards which employees were violating meal break policies and to give the employees written warnings about the violations. That manager also used a "Pasta Pal" system for meal and rest breaks, where opening shift servers and closing shift servers were paired up to assist each other in meal and rest breaks. Another manager stated that management at his restaurant had a written schedule to ensure meal breaks, which, at the request of employees, were often taken an hour after coming to work to ensure they could maximize their tips during peak business hours. They explained they allowed rest breaks and sometimes employees took more rest breaks than required by law. The manager declarations also explained how they would sometimes need to make changes in an employee's time card to accurately reflect hours worked because the employee would not clock out before beginning their meal period or would return from a meal period without clocking back in. Some restaurants had "meal compliance officers," whose entire shift

was devoted to relieving other employees so they could take breaks.  A manager of one

of the named plaintiffs provided a declaration and supporting documentation challenging

that plaintiff's claim he was not given rest and meal breaks and also stated he periodically

gave that plaintiff and other employees free meals as a way of thanking them for their

hard work.

Brinker submitted declarations from 283 employees who stated they were allowed

rest breaks while employed by Brinker.  With regard to meal breaks, 336 employees

declared they were regularly provided 30-minute meal breaks.  Brinker also submitted

433 statements obtained by the DLSE that indicated meal breaks were made available to

Brinker employees.

In their reply brief, plaintiffs elaborated on their meal period, rest break, and off-

the-clock claims**.**

With respect to their meal period claims, plaintiffs asserted in their reply papers

that under the court's July 2005 order Brinker was required to provide its employees with

a meal period for every five hours worked, and common issues predominated on

plaintiffs' rolling five-hour meal period claim.

Plaintiffs maintained that common issues predominate on their claims for "missed

or inadequate meal periods."  Citing *Cicairos v. Summit Logistics, Inc.* (2005) 133

Cal.App.4th 949, 962-963 (*Cicairos*), plaintiffs asserted that employers have an

affirmative duty to ensure employees receive meal periods, and the waiver provisions of

section 512 "cannot rationally be interpreted to mean the 'mutual consent' of employer

and employee required to waive meal periods is relaxed to a *lesser* standard permitting

17

employees to 'informally decline' (without obtaining the employer's consent)" because such an interpretation "flies in the face of the affirmative obligation placed upon the employer to relieve employees for meal periods enunciated in *Cicairos*."

Plaintiffs also stated that "[Brinker's claims that] it can meet its legal obligation to 'provide' meal periods by 'making them available,' and that employees may 'informally decline' them" was erroneous, because *Cicairos, supra,* 133 Cal.App.4th 949 "confirm[s] that *meal periods may not be waived* (*or 'informally declined'*)."  (Italics added.)

Plaintiffs asserted that common issues predominate on their rest break claims because they "presented corporate policy evidence of a pattern and practice by Brinker of failing to provide a rest period prior to employees' meal period as a result of its practice of scheduling meals early."  Specifically, plaintiffs argued that "Brinker maintains company-wide policies discouraging rest periods, including requiring servers to give up tables and tips if they want a break and failing to provide rest periods *prior* to scheduled early meals."

Last, claiming that common issues also predominate on their "off-the-clock" meal period claims, plaintiffs stated, "Plaintiffs' submissions . . . provide evidence employees were asked to work while clocked out for meals."  Noting they had limited their off-the-clock claims "to those relating to meal periods," plaintiffs also asserted that "Brinker's corporate records prove their 'time-shaving' claim.  When entries are manipulated to delete time from an employee's shift to bring it under five hours, records reflect that change."

G. *Order Granting Class Certification*

Following issuance of a tentative ruling on plaintiffs' class certification motion, and after a hearing thereon, the court took the matter under submission.  On July 6, 2006, the court issued its order granting the motion and certifying the proposed class (class certification order), finding that "common issues predominate over individual issues." The court specifically found that "*common questions regarding the meal and rest period breaks* are sufficiently pervasive to permit adjudication in this one class action.  [¶] [Brinker's] arguments regarding the necessity of making employees take meal and rest periods actually points to a *common legal issue* of *what* [*Brinker*] *must do to comply with the Labor Code*.  Although a determination that [Brinker] need not *force employees to take breaks* may require some individualized discovery, the common alleged issues of meal and rest violations predominate."  (Italics added.)

Brinker's writ petition followed.

DISCUSSION

1. *LAW GOVERNING CLASS CERTIFICATION MOTIONS*

The California Supreme Court has explained that "[t]he decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion:  'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.' [Citation.]  A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on *improper criteria*, or (3) it rests on

*erroneous legal assumptions.* [Citations.]"  (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 (*Fireside Bank*), italics added.)  A class certification order "based upon *improper criteria or incorrect assumptions* calls for reversal '"even though there may be substantial evidence to support the court's order."'  [Citations.]"  (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 436 (*Linder*), italics added.)

The standards for class certification in California are well established.  "Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.'"  (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*).)  The party seeking class certification has the burden to establish "(1) . . . a sufficiently numerous, ascertainable class, (2) . . . a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods."  (*Fireside Bank, supra,* 40 Cal.4th at p. 1089; *Sav-On, supra,* 34 Cal.4th at p. 326.)  In turn, "the 'community of interest requirement embodies three factors:  (1) *predominant common questions of law or fact*; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.'  [Citation.]"  (*Fireside Bank, supra,* 40 Cal.4th at p. 1089, italics added; *Sav-On, supra,* 34 Cal.4th at p. 326.)  Here, the parties to this writ proceeding contest only the first factor of predominance.

Whether certification of a class is appropriate is "essentially a procedural [question] that does not ask whether an action is legally or factually meritorious."

(*Linder, supra,* 23 Cal.4th at pp. 439-440.)  "A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]"  (*Sav-On, supra*, 34 Cal.4th at p. 326.)

A critical inquiry on a class certification motion is whether "the *theory of recovery* advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment."  (*Sav-On, supra*, 34 Cal.4th at p. 327, italics added.)  In order to determine whether common questions of law or fact predominate, "the trial court *must* examine the issues framed by the pleadings and the law applicable to the causes of action alleged."  (*Hicks v. Kaufman and Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916 (*Hicks*), italics added, fn. omitted, citing *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 810-811.)

## II.  *ANALYSIS*

### A.  *Failure To Determine Elements of Plaintiffs' Claims*

As we explained in part I, *ante*, in order to determine if common questions of fact predominated, the trial court was required to "examine the issues framed by the pleadings and the law applicable to the causes of action alleged."  (*Hicks, supra,* 89 Cal.App.4th at p. 916, fn. omitted.)  More specifically, in a wage and hour case such as this, the court was required to determine the elements of plaintiffs' claims.

For example, in *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, the trial court certified a nationwide class without first deciding what law applied to

the class members' claims.  The Court of Appeal denied the defendant's petition for writ of mandate, and the California Supreme Court reversed.  In doing so the high court held "the decision in this case to order certification of a nationwide class was premised upon the faulty legal assumption that [the applicable law] need not be resolved as part of the certification process."  (*Id.* at p. 927.)  "[A] trial court cannot reach an informed decision on predominance and manageability" (*ibid.*) without first "determining the applicable law or delving into manageability issues."  (*Id.* at p. 926.)

Here, it is undisputed that the court did not reach the issue of what law applied to plaintiffs' claims.  Rather, the court expressly held, as did the court in *Washington Mutual*, that the applicable law "need not be resolved as part of the certification process." (*Washington Mutual Bank v. Superior Court, supra,* 24 Cal.4th at p. 927.)  The court erred in so finding because it could not determine whether individual or common issues predominate in this case, and thus whether a class action was proper, without first determining this threshold issue.  Further, as we explain in greater detail, *post*, had the court correctly decided the elements of plaintiffs' rest, meal break and off-the-clock claims, it could have only concluded liability could only be established by making individual inquiry into each plaintiff's claims, and they thus are not amenable to class treatment.

B.  *Rest Break Claims*

Section 226.7, subdivision (a) provides:  "No employer shall require any employee to work during any meal or *rest period mandated by an applicable order of the* [*IWC*]." (Italics added.)  For purposes of section 226.7, IWC Wage Order No. 5-2001, which

became operative on January 1, 2001, and governs an employer's obligations with respect to rest breaks, is the current IWC wage order at issue in this writ proceeding.[6]  The pertinent provisions of  IWC Wage Order No. 5-2001 are codified in California Code of Regulations, title 8, section 11050, subdivision 12(A) (hereafter Regulation 11050(12)(A)), which provides:  "Every employer shall authorize and permit all employees to take rest periods, which *insofar as practicable shall be in the middle of each work period*.  The authorized rest period time shall be based on *the total hours worked daily* at the rate of ten (10) minutes net rest time *per four* (*4*) *hours or major fraction thereof*.  However, a rest period need not be authorized for employees *whose total daily work time is less than three and one-half* (*3 1/2*) *hours*.  Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."  (Italics added.)

In order to properly interpret Regulation 11050(12)(A), we apply the following principles of statutory interpretation:  "The objective of statutory construction is to determine the intent of the enacting body so that the law may receive the interpretation

_____

6      With exceptions not applicable here, IWC Wage Order No. 5-2001 applies to "all persons employed in the public housekeeping industry, whether paid on a time, piece rate, commission, or other basis."  (Cal. Code Regs., tit. 8, § 11050, subd. 1.)  It defines "public housekeeping industry" to mean "*any industry, business, or establishment which provides meals*, housing, or maintenance services whether operated as a primary business or when incidental to other operations in an establishment not covered by an industry order of the [IWC], *and includes*, but is not limited to the following:  [¶] (1) *Restaurants*, night clubs, taverns, bars, cocktail lounges, lunch counters, cafeterias, boarding houses, clubs, *and all similar establishments where food in either solid or liquid form is prepared and served to be consumed on the premises*."  (*Id.*, § 11050, subd. 2(P)(1), italics added.)

that best effectuates that intent.  [Citation.]  'We first examine the words themselves

because the statutory language is generally the most reliable indicator of legislative

intent.  [Citation.]  The words of the statute should be given their ordinary and usual

meaning and should be construed in their statutory context.'  [Citation.]"  (*Fitch v. Select

Products, Inc., supra,* 36 Cal.4th at p. 818.)  The interpretation of a statute presents a

question of law subject to de novo appellate review.  (*CBS Broadcasting, Inc. v. Superior

Court* (2001) 91 Cal.App.4th 892, 906.)

    The phrase "per four (4) hours or major fraction thereof" does not mean that a rest

period must be given every three and one-half hours.  Regulation 11050(12)(A) states

that calculation of the appropriate number of rest breaks must "be based on the total hours

worked daily."  Thus, for example, if one has a work period of seven hours, the employee

is entitled to a rest period after four hours of work because he or she has worked a full

four hours, not a "major fraction thereof."  It is only when an employee is scheduled for a

shift that is more than three and one-half hours, but less than four hours, that he or she is

entitled to a rest break before the four hour mark.

    Moreover, because the sentence following the "four (4) hours or major fraction

thereof" limits required rest breaks to employees who work at least three and one-half

hours in one work day, the term "major fraction thereof" can only be interpreted as

meaning the time period between three and one-half hours and four hours.  Apparently

this portion of the wage order was intended to prevent employers from avoiding rest

breaks by scheduling work periods slightly less that four hours, but at the same time

made three and one-half hours the cut-off period for work periods below which no rest period need be provided.

In supplemental briefing following transfer plaintiffs for the first time rely upon a February 16, 1999 DLSE opinion letter in support of their position that rest breaks must be provided every three and one-half hours. Specifically, that letter, responding to a query from an attorney in Camarillo, California, attempted to "clarify the meaning of 'or major fraction thereof'" in Regulation 11050(12)(A). Jose Millan, the Chief Deputy Labor Commissioner, concluded that this phrase meant that "an employer must provide its employees with a 10-minute rest period when the employees work <u>any</u> time over the midpoint of each four hour block of time . . . ." The DLSE elaborated, quoting a 1948 opinion from the chief of the Division of Industrial Welfare (the predecessor to the DLSE) (1948 Chief's Decision):

> "'Rest Periods - in the Orders shall be construed to mean that for each four hours (or majority fraction thereof) worked in a day the employee has earned the right to 10 minutes' rest time. That is, if the (employee) works more than 2 and up to 6 hours in a day, (the employee) is entitled to 10 minutes; if (the employee) works more than 6 and up to 10 hours in a day (the employee) is entitled to 20 minutes; if (the employee) works more than 10 and up to 14 hours in the day, (the employee) is entitled to 30 minutes, etc.'" (Feb. 16, 1999 DLSE Opn. Letter, quoting Chief's Decisions, Section 1101: Rest Periods, *General Interpretation and Enforcement Procedure of the Orders and the Labor Code Sections,* Manual of Procedure, Division of Industrial Welfare, Department of Industrial Relations (1948).)

Thus, the DLSE interpreted the term "major fraction thereof" to mean any time over 50 percent of a four-hour work period. However, this interpretation is incorrect as it renders the current version of Regulation 11050(12)(A) internally inconsistent. An

25

employee cannot, as the 1948 Chief's Decision says, be entitled to a 10-minute break if she or she "works more than 2 . . . hours in a day," if the employee is not entitled to a 10-minute break if he or she works "less than three and one-half" hours in a day.  We will not interpret Regulation 11050(12)(A) in a manner that renders an entire sentence meaningless, and in a manner that leads to absurd results.  (*Reno v. Baird* (1998) 18 Cal.4th 640, 658; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-77.)  Further, we need not accept as precedent a DLSE letter that is contrary to law.  (See *Murphy, supra,* 40 Cal.4th at p. 1105, fn. 7.)

There is a rational explanation why the 1948 Chief's Decision, upon which the February 16, 1999 DLSE opinion letter is based, interpreted the then-existing version of Regulation 11050(12)(A) to provide a rest break every two hours.  In 1948, the rest break regulation was found in title 8 of the California Administrative Code,[7] section 11390 (Regulation 11390), and provided:

> "Every employer shall authorize all employees to take rest periods which, insofar as practicable, shall be in the middle of each work period.  Rest periods shall be computed on the basis of 10 minutes for four hours working time, or *majority* fraction thereof.  No wage deduction shall be made for such rest periods."  (Italics added.)

As can be seen from the text of Regulation 11390, it did not contain the sentence providing "a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours."  Thus, it would not make Regulation

_____

[7]    Effective January 1, 1988, the Legislature adopted a new designation for this code, i.e., the California Code of Regulations.

26

11390 internally inconsistent to interpret it to mean that for a work shift of more than two hours, a 10-minute rest break must be provided.

Moreover, Regulation 11390 used the term "majority," while Regulation 11050(12)(A) uses the term "major."  The term majority is defined as:  "The greater number.  The number greater than half of any total."  (Black's Law Dict. (6th ed. 1990) p. 955, col. 1.)  That definition comports with the IWC's interpretation of former Regulation 11390 to mean if an employee works "more than 2 and up to 6 hours in a day, (the employee) is entitled to 10 minutes" in rest break.  However, when Regulation 11390 was revised and renumbered as Regulation 11380 in 1952, at which time the sentence stating that no rest period need be given to workers who worked a daily work time of less than three and one-half hours was added, the term "majority" was changed to "major."  (Cal. Code Regs., tit. 8, § 11380, subd. (12).)  It is readily apparent this change was made as use of the term "majority," and the interpretation given that term by the 1948 Chief's Decision, would conflict with the three and one-half hour cut off for provision of rest periods.

Plaintiffs also cite a wage and hour treatise in support of its position.  However, the cited portion of the treatise, Simmons, *Wage and Hour Manual for California Employers* (12th ed. 2007) at page 173, merely states that "the California Wage Orders require employers to 'authorize and permit' rest periods for nonexempt employees whose total daily work time is at least 3-1/2 hours."  This phrase is consistent with an interpretation that rest breaks must be given if an employee works between three and one-

half hour and four hours, but if four or more hours are worked, it need be given only every four hours, not every three and one-half hours.

In supplemental briefing, plaintiffs have expanded their argument and now contend that employees are entitled to a second rest period after working six hours, and a third rest period after working 10 hours. This contention is unavailing.

This argument ignores the plain text of Regulation 11050(12)(A). If the IWC had intended that employers needed to provide a second rest period at the six-hour mark, and a third rest period at the 10-hour mark, it would have stated so in Regulation 11050(12)(A).

Furthermore, contrary to plaintiffs' assertion, the provisions of Regulation 11050(12)(A) do not require employers to authorize and permit a first rest break *before* the first scheduled meal period. Rather, the applicable language of Regulation 11050(12)(A) states only that rest breaks "insofar as *practicable* shall be in the middle of each work period." (Italics added.) Regulation 11050(12)(A) is silent on the question of whether an employer must permit an hourly employee to take a 10-minute rest break before the first meal period is provided. As Brinker points out, an employee who takes a meal period one hour into an eight-hour shift could still take a post-meal period rest break "in the middle" of the first four-hour work period, in full compliance with the applicable provisions of IWC Wage Order No. 5-2001.

Moreover, the language of Regulation 11050(12)(A) is clearly intended to provide employers with some discretion to not have rest periods in the middle of a work period if, because of the nature of the work or the circumstances of a particular employee, it is not

28

"practicable."  This discretion is of particular importance for jobs, such as in the restaurant industry, that require flexibility in scheduling breaks because the middle of a work period is often during a mealtime rush, when an employee might not want to take a rest break in order to maximize tips and provide optimum service to restaurant patrons. As long as employers make rest breaks available to employees, and strive, where practicable, to schedule them in the middle of the first four-hour work period, employers are in compliance with that portion of Regulation 11050(12)(A).

In support of their argument that employers must provide a rest period before the first meal period, plaintiffs cite a September 17, 2001 DLSE opinion letter.  The 2001 DLSE opinion letter, which interpreted IWC Wage Order No. 16-2001, stated that "[i]f an employer *regularly requires employees to work five hours prior to their 30*[-]*minute lunch break*" (italics added), as a general matter under IWC Wage Order No. 16-2001 "the first rest period should come sometime before the meal break."  (Sept. 17, 2001 DLSE Opn. Letter re:  IWC Order 16-2001 Rest Period Provisions, p. 4.)  However, that letter stated that its findings applied only to "persons employed in the on-site occupations of construction, drilling, logging, and mining" (*id.* at p. 1) and is thus inapplicable to this case.  Moreover, plaintiffs do not contend that Brinker "regularly requires employees to work five hours prior to their 30[-]minute lunch break."  On the contrary, plaintiffs complain that Brinker regularly engages in unlawful early lunching by requiring its employees to take their meal periods soon after they arrive for their shifts, usually within the first hour.

Brinker asserts the court failed to address the issue of whether employers must "force" employees to take rest breaks and, had it correctly ascertained that Brinker was not responsible for requiring its employees to take rest breaks, "it necessarily would have concluded that liability could only be established on an individual basis and that plaintiffs' claims were not amenable to class treatment."  In their return to the petition, plaintiffs respond they never disputed that rest breaks can be waived, and thus the court did not have to consider or decide that legal question.

Although plaintiffs acknowledge that employees can waive their right to take rest breaks that their employers authorize and permit as required by law, the court's class certification order is silent with respect to both the elements plaintiffs must prove to establish their rest break claims and the critical legal issue of whether employees may waive their right to take such breaks.  In basing its predominance finding on the "common legal issue" of "what [Brinker] must do to comply with the Labor Code," the court assumed it was not required to determine the elements of plaintiffs' rest break claims before it certified the proposed class of Brinker's hourly employees.  However, on the alleged facts of this purported class action, the court's assumption was incorrect, thus requiring reversal of the class certification order.  (See *Linder*, *supra*, 23 Cal.4th at p. 436).  Because the applicable provisions of Regulation 11050(12)(A) provide only that rest periods should be scheduled in the middle of each work period "insofar as practicable," the propriety of permitting a rest break near the end of a typical four-hour work period depends on whether the scheduling of such a rest break was practicable in a given instance, and thus cannot be litigated on a class basis.

Furthermore, because (as the parties acknowledge) Brinker's hourly employees may waive their rest breaks, and thus Brinker is not obligated to ensure that its employees take those breaks, any showing on a class basis that plaintiffs or other members of the proposed class missed rest breaks or took shortened rest breaks would not necessarily establish, without further individualized proof, that Brinker violated the provisions of section 226.7, subdivision (a) and Regulation 11050(12)(A) as plaintiffs allege in their complaint.

Had the court properly determined that (1) employees need be afforded only one 10-minute rest break every four hours "or major fraction thereof" (Reg. 11050(12)(A)), (2) rest breaks need be afforded in the middle of that four-hour period only when "practicable," and (3) employers are not required to ensure that employees take the rest breaks properly provided to them in accordance with the provisions of IWC Wage Order No. 5, only individual questions would have remained, and the court in the proper exercise of its legal discretion would have denied class certification with respect to plaintiffs' rest break claims because the trier of fact cannot determine on a class-wide basis whether members of the proposed class of Brinker employees missed rest breaks as a result of a supervisor's coercion or the employee's uncoerced choice to waive such breaks and continue working. Individual questions would also predominate as to whether employees received a full 10-minute rest period, or whether the period was interrupted. The issue of whether rest periods are prohibited or voluntarily declined is by its nature an individual inquiry.

Plaintiffs assert that even if the court erred in failing to define the elements of plaintiffs' rest period claims prior to certifying the class we must remand this matter to allow the court to determine if their "expert statistical and survey evidence" makes their rest break claims amenable to class treatment.  However, while it is clear that courts may use such evidence in determining if a claim is amenable to class treatment (see *Sav-On, supra,* 34 Cal.4th at p. 333), that evidence does not change the individualized inquiry in determining if Brinker allowed rest periods, or forbid employees from taking them.  As summarized in the factual background, *ante*, in addition to being based upon faulty legal principles, that evidence only purported to show when rest breaks were taken, or not.  It did not show *why* rest breaks were not taken.  It could also not show *why* breaks of less than 10 uninterrupted minutes were taken.  Plaintiffs claim they were forced to forgo rest breaks, while Brinker submitted evidence from management and employees that rest breaks were made available but on occasion waived by the employees.  The question of whether employees were forced to forgo rest breaks or voluntarily chose not to take them is a highly individualized inquiry that would result in thousands of mini-trials to determine as to each employee if a particular manager prohibited a full, timely break or if the employee waived it or voluntarily cut it short.  (*Brown v. Federal Express Corp.* (C.D.Cal. 2008) ___ F.R.D. ___ [2008 WL 906517 at *8] (*Brown*) [meal period violations claim not amenable to class treatment as court would be "mired in over 5000 mini-trials" to determine if such breaks were provided].)  This individualized proof makes plaintiffs' rest break claims not amenable to class treatment.

Further, contrary to plaintiffs' suggestion in their supplemental briefing, our conclusion that individual issues predominate does not dictate that claims asserting violations of rest break laws can never be certified as a matter of law. Rather, we are only concluding that under the facts presented to the trial court in this case, and the manner in which plaintiffs' claims are defined, the claims in this case are not suitable for class treatment. Moreover, we are not, as plaintiffs claim, improperly determining the merits of their claims. (See *Lewis v. Robinson Ford Sales, Inc.* (2007) 156 Cal.App.4th 359, 367 ["in determining class certification questions, the courts do not decide the merits of the case"].) Rather, as explained, *ante*, we are only determining the law applicable to their claims.

For all of the foregoing reasons, we conclude that the class certification order rests on improper criteria and incorrect assumptions with respect to the rest break claims, and thus the court abused its discretion in finding that those claims are amenable to class treatment. Accordingly, the portion of the class certification order certifying the rest break subclass must be vacated. (*Fireside Bank, supra,* 40 Cal.4th at p. 1089.)

C. *Meal Period Claims*

Plaintiffs also assert two principal claims regarding missed or inadequate meal periods. First, plaintiffs assert a rolling five-hour meal period claim, alleging Brinker's uniform meal period policy violates sections 512 and 226.7, and IWC Wage Order No. 5, by failing to provide or make available to Brinker's hourly employees a 30-minute uninterrupted meal period for every five *consecutive* hours of work. Related to this claim is plaintiffs' assertion that Brinker's "most egregious meal period violations" stem from

33

its practice of early lunching, under which Brinker allegedly requires its hourly

employees to take their meal periods soon after they arrive for their shifts, usually within

the first hour, and then requires them to work in excess of five hours, and sometimes

more than nine hours straight, without an additional meal period.

Second, plaintiffs claim that employers have an affirmative duty under IWC Wage

Order No. 5 to ensure that hourly employees are relieved of all duty during meal periods,

and Brinker's uniform meal period policy violates sections 512 and 226.7, and IWC

Wage Order No. 5, by failing to ensure that its hourly employees "receive" or "take" their

meal periods.

We conclude the court (1) abused its discretion in concluding that plaintiffs'

rolling five-hour and early lunching meal period claims are amenable to class treatment

because it was based upon incorrect legal assumptions and (2) incorrectly assumed that,

in order to render an informed certification decision, it did not have to resolve the issue of

whether Brinker had a duty to ensure that its employees take their meal periods.  We

further conclude that employers need only make meal breaks available, not "ensure" they

are taken, and, for the same reasons expressed in our discussion regarding rest breaks, the

meal break claims are not amenable to class treatment.

1.  *Rolling five-hour meal period claim*

As discussed, *ante*, the court found, in what it initially termed an "advisory"

opinion,  a meal period "must be given *before [an] employee's work period exceeds five

hours*."  (Italics added.)  The court also stated that "the DLSE wants employers to provide

employees with break periods and *meal periods toward the middle of an employee*[*'*]*s*

34

*work period* in order to break up that employee's 'shift.'" (Italics added.) The court

further stated that Brinker "appears to be in violation of [section] 512 by not providing a

'meal period' *per every five hours of work*." (Italics added.) Two weeks later, at an ex

parte hearing, the court issued a minute order (the July 2005 order) stating the "advisory

ruling" was "*confirmed* by the court *as an order*." (Italics added.)[8]

We conclude that the court's rolling five-hour meal period ruling in its July 2005

order was erroneous, and thus the class certification order rests on improper criteria with

respect to the plaintiffs' rolling five-hour meal period claim and cannot stand to the extent

it was based on that ruling. (See *Fireside Bank, supra,* 40 Cal.4th at p. 1089.)

Section 512, subdivision (a) (hereafter section 512(a)), which governs an

employer's obligations with respect to the "providing" of meal periods to its hourly

employees, provides:

> "An employer may not employ an employee for a work period of
> more than five hours *per day* without *providing* the employee with a
> meal period of not less than 30 minutes, except that if the *total work
> period per day* of the employee is no more than six hours, the meal
> period may be waived by mutual consent of both the employer and
> employee. An employer may not employ an employee for a work
> period of more than 10 hours *per day* without *providing* the
> employee with a second meal period of not less than 30 minutes,
> except that if the *total hours worked* is no more than 12 hours, the
> second meal period may be waived by mutual consent of the

---

8    This court's order denying Brinker's first writ petition stated in part:  "The review
of an advisory opinion would result in an advisory opinion.  California courts generally
have no power to render an advisory opinion. [Citation.] The petition is denied." Upon
further review, that order was erroneous as the "advisory" opinion by the trial court was
later confirmed by the court as an official order.

employer and the employee only if the first meal period was not
waived."  (Italics added.)

Section 512(a) thus plainly provides that an employer in California has a statutory

duty to make a first 30-minute meal period available to an hourly employee who is

permitted to work more than five hours *per day*, unless (1) the employee is permitted to

work a "total work period per day" that is six hours or less, and (2) both the employee

and the employer agree by "mutual consent" to waive the meal period.

This interpretation of section 512(a), regarding an employer's duty to provide a

first meal period, is consistent with the plain language set forth in IWC Wage Order No.

5-2001, which provides in part:  "No employer shall employ any person for a *work period*

*of more than five* (5) *hours* without a meal period of not less than 30 minutes, except that

when a work period of not more than six (6) hours will complete the day's work the meal

period may be waived by mutual consent of the employer and the employee."  (Cal. Code

Regs., tit. 8, § 11050, subd. 11(A), italics added.)  Although that subdivision of the wage

order refers to "work period of more than five (5) hours" rather than to "work period of

more than five (5) hours *per day*," the Legislature used the term "work period of more

than five hours *per day*" (italics added) in section 512(a), and we presume the Legislature

intended the provisions of IWC Wage Order No. 5-2001 and section 512(a) to be given a

consistent interpretation.  "[S]ection 516, as amended in 2000, does not authorize the

IWC to enact wage orders inconsistent with the language of section 512."  (*Bearden,*

*supra,* 138 Cal.App.4th at p. 438.)

With respect to the issue of *when* an employer must make a first 30-minute meal period available to an hourly employee, Brinker's uniform meal period policy (titled "Break and Meal Period Policy for Employees in the State of California") comports with the foregoing interpretation of section 512(a) and IWC Wage Order No. 5-2001. It provides that employees are "entitled to a 30-minute meal period" when they "work a shift that is over five hours."

Section 512(a) also plainly provides that an employer in California has a statutory duty to make a second 30-minute meal period available to an hourly employee who has a "work period of more than 10 hours *per day*" (italics added) unless (1) the "total hours" the employee is permitted to work per day is 12 hours or less, (2) both the employee and the employer agree by "mutual consent" to waive the second meal period, and (3) the first meal period "was not waived."

Plaintiffs contend, and the trial court ruled in its July 2005 order, that Brinker's written meal policy violates section 512(a) and IWC Wage Order No. 5 (specifically, Cal. Code Regs., tit. 8, § 11050, subd. 11(A)) because it allows the practice of early lunching and fails to make a 30-minute meal period available to an hourly employee for every five consecutive hours of work. Plaintiffs contend that hourly employees are entitled to a second meal period five hours after they return to work from the first meal period.

Under this interpretation, however, the term "per day" in the first sentence of section 512(a) would be rendered surplusage, as would the phrase "[a]n employer may not employ an employee for a work period of more than 10 hours per day without

providing the employee with a second meal period of not less than 30 minutes" in the second sentence of that subdivision.

"It is a well established principle of statutory construction that '[t]he courts presume that every word, phrase, and provision of a statute was intended to have some meaning and perform some useful function . . . .' [Citation.]" (*Twain Harte Homeowners Assn. v. County of Tuolumne* (1982) 138 Cal.App.3d 664, 698-699.) "Interpretations that lead to absurd results or render words surplusage are to be avoided. [Citation.]" (*Woods v. Young* (1991) 53 Cal.3d 315, 323.)

Here, the interpretation of section 512(a) given by plaintiffs and the court is erroneous as a matter of law, and thus must be avoided because it renders surplusage the provisions of that subdivision governing the question of when an employer must provide meal periods to an hourly employee. (See *Woods v. Young, supra,* 53 Cal.3d at p. 323.)

Citing *California Hotel & Motel Assn. v. Industrial Welfare Com.* (1979) 25 Cal.3d 200, the court stated in its order that "[t]he California Supreme Court has interpreted wage orders to require a meal period for each five-hour period an employee works," and "[a] meal period of [30] minutes per five hours of work is generally required." That case, however, is distinguishable as it involved an IWC wage order (No. 5-76) that is not involved in the present case. (*California Hotel & Motel Assn., supra,* 25 Cal.3d at p. 205, fn. 7.) As summarized by the Supreme Court, the pertinent provision of that wage order provided that "[a] meal period of 30 minutes per *5 hours of work* is generally required." (*Ibid.*, italics added.) As already discussed, however, section 512(a), which governs here, provides in part: "An employer may not employ an

employee for a *work period of more than five hours per day* without providing the

employee with a meal period of not less than 30 minutes." (Italics added.) The

distinction between the two provisions is of critical importance. Whereas IWC wage

order No. 5-76 generally required a meal period for every "5 hours of work," section

512(a) generally requires a first meal period for every "work period of more than five

hours *per day.*" (Italics added.)

 Moreover, *California Hotel & Motel Assn. v. Industrial Welfare Com., supra,* 25

Cal.3d 200 was decided before section 516 was amended in 2000, which amendment

forbids wage orders inconsistent with section 512. (*Bearden, supra,* 138 Cal.App.4th at

p. 438 [section 516 provides IWC orders "must be consistent with the specific provisions

of [section 512]"].) Indeed, the legislative history of the 2000 amendment to section 516

declares its intent was to "prohibit the [IWC] from adopting a working condition order

that conflicts with [section 512(a)'s] 30-minute meal period requirements . . . ." (Legis.

Counsel's Dig., Sen. Bill No. 88 (1999-2000 Reg. Sess.), Stats. 2000, ch. 492.) The

Senate third reading analysis for Senate Bill No. 88, which amended section 516 in 2000,

states: "This bill clarifies two provisions of the Labor Code enacted in Chapter 134.

Labor Code Section 512 codifies the duty of an employer to provide employees with

meal periods. Labor Code Section 516 establishes the authority of IWC to adopt or

amend working condition orders with respect to break periods, meal periods, and days of

rest. *This bill provides that IWC's authority to adopt or amend orders under Section 516*

*must be consistent with the specific provisions of Labor Code Section 512.*" (Italics

added.)  Thus, to the extent IWC wage order No. 5-76 is inconsistent with section 512, it is invalid.  (*Bearden, supra,* 138 Cal.App.4th at pp. 438-44.)

In support of their claim that lunch breaks must be provided in the middle of a shift, plaintiffs also rely upon a June 14, 2002 DLSE opinion letter.  However, that opinion letter has since been withdrawn and therefore cannot be relied upon to support plaintiffs' claims.  (Acting Deputy Chief Gregory L. Rupp, mem. to all DLSE staff, Dec. 20, 2004.)  Plaintiffs' reliance on the September 17, 2001 DLSE opinion letter is also misplaced as that letter concerned the timing of rest periods, not meal breaks.  As discussed, *ante*, the wage order pertaining to rest breaks provides that, to the extent practicable, rest periods should be scheduled in the middle of a work period.  No such restriction on the timing of meal periods is contained in the wage order concerning meal periods.

We conclude the court abused its discretion in certifying the class in this matter to the extent it relied on an erroneous interpretation of section 512(a).  As already discussed, a class certification order based upon improper criteria or incorrect assumptions must be reversed, even though there may be substantial evidence to support it.  (*Linder*, *supra*, 23 Cal.4th at p. 436.)  Here, the court's order certifying the meal period subclass class was based upon both improper criteria regarding the elements of the rolling five-hour meal period claim and an incorrect assumption about when an employer must provide a meal period under the provisions of section 512(a).  Without a proper interpretation of section 512(a), the court could not correctly ascertain the legal elements that members of the proposed class would have to prove in order to establish their meal period claims, and

thus could not properly determine whether common issues predominate over issues that affect individual members of the class.

   2.  *Brinker's alleged failure to ensure employees take meal periods*

   Plaintiffs also claim that Brinker's uniform meal period policy violates sections 512 and 226.7, as well as IWC Wage Order No. 5, by failing to *ensure* that its hourly employees take their meal periods.[9]  Plaintiffs initially opposed this court deciding this issue, arguing the trial court had already done so, and, even if it had not, the issue should be remanded to the trial court to decide it in the first instance.  However, in supplemental briefing following transfer from the California Supreme Court, plaintiffs join Brinker in requesting that we decide the legal question of whether employers must "ensure" meal periods are taken or whether they must only be made "available."  In order to promote judicial economy and because this is a purely legal issue that we may decide in the first instance, we will address this issue on the merits.

---

[9]     Amici curiae Employers Group, California Restaurant Association, National Council of Chain Restaurants, National Retail Federation, California Hospital Association, and The California Retailers Association frame the issue as follows: "Whether California's Labor Code imposes on employers a duty to not only *provide* uninterrupted meal periods, but to further *force* employees to take their meal periods and to *police* their compliance—regardless of the reason proffered by the employee for not wanting a meal period and even against the employee's will."  Amici curiae California Employment Law Council and National Association of Theatre Owners of California/Nevada, Inc. raise a similar issue:  "[W]hether employers must force their employees to take meal . . . breaks or whether they must simply provide the opportunity for such breaks."

We conclude that California law provides that Brinker need only provide meal periods, and, as a result, as with the rest period claims, plaintiffs' meal period claims are not amenable to class treatment.

As already discussed, the critical inquiry on a class certification motion is whether the theory of recovery advanced by the certification proponents is likely to prove amenable to class treatment (*Sav-On, supra*, 34 Cal.4th at p. 326), and, in order to determine whether common questions of law or fact predominate, the trial court must examine the issues framed by the pleadings and the law applicable to the alleged causes of action (*Hicks, supra,* 89 Cal.App.4th at p. 916).

As stated, *ante*, section 512(a) provides that an employer "may not employ an employee for a work period of more than five hours per day without *providing* the employee with a meal period of not less than 30 minutes" (italics added) and, if the employee's work period is less than six hours, "*the meal period may be waived*" (italics added).

"'To ascertain the common meaning of a word, "a court typically looks to dictionaries."'" (*Arocho v. California Fair Plan Ins. Co.* (2005) 134 Cal.App.4th 461, 466, fn. omitted.)  The term "provide" is defined in Merriam-Webster's Collegiate Dictionary (11th ed. 2006) at page 1001 as "to supply or *make available*."  (Italics added.)  Thus, from the plain language of section 512(a), meal periods need only be made available, not ensured, as plaintiffs claim.  Moreover, plaintiffs' interpretation of section 512(a) is inconsistent with the language allowing employees to waive their meal breaks for shifts of less than five hours.

In *White v. Starbucks Corp.* (N.D.Cal. 2007) 497 F.Supp.2d 1080 (*Starbucks*), the United States District Court for the Northern District of California rejected the notion that employers must ensure their employees take meal breaks:  "The interpretation that White advances—making employers ensurers of meal breaks—would be impossible to implement for significant sectors of the mercantile industry (and other industries) in which large employers may have hundreds or thousands of employees working multiple shifts.  Accordingly, the court concludes that the California Supreme Court, if faced with this issue, would require only that an employer *offer* meal breaks, without forcing employers actively to ensure that workers are taking these breaks.  In short, the employee must show that he was *forced to forego* [*sic*] his meal breaks as opposed to merely showing that he did not take them regardless of the reason."  (*Starbucks, supra,* 497 F.Supp.2d at pp. 1088-1089.)

More recently in *Brown, supra,* 2008 WL 906517, the United States District Court for the Central District of California considered a motion to certify a class of former and current Federal Express drivers who allegedly had been deprived of rest and meal periods in violation of sections 512 and 226.7.  In analyzing the motion the district court first noted that "'[t]o determine whether common issues predominate, this Court must first examine the substantive issues raised by Plaintiffs and second inquire into the proof relevant to each issue.' [Citation.]"  (*Brown, supra,* 2008 WL 906517 at *3.)

As in this case, the plaintiffs in *Brown* asserted that "California law requires employers to ensure that meal breaks are actually taken."  (*Brown, supra,* 2008 WL 906517 at *4.)  The district court rejected this argument, holding that section 512 and the

applicable wage order did not support plaintiff's position. (*Brown, supra,* at *5.)  The

court explained that section 512's statement that employer must "provide" meal periods

"does not suggest any obligation to ensure that employees take advantage of what is

made available to them." (*Brown, supra,* 2008 WL 906517 at *5.)  The court also noted

that the California Supreme Court "in characterizing violations of California's meal

period obligations . . . repeatedly described it as an obligation not to force employees to

work through breaks." (*Ibid.*, fn. omitted.)  The court also noted that "[r]equiring

enforcement of meal breaks would place an undue burden on employers whose

employees are numerous . . . .  It would also create perverse incentives, encouraging

employees to violate company meal break policy in order to receive extra compensation

under California wage and hour laws." (*Id.* at *6.)

We find the reasoning in *Starbucks* and *Brown* persuasive and conclude that

employers need not ensure meal breaks are actually taken, but need only make them

available.

Plaintiffs assert that *Cicairos, supra,* 133 Cal.App.4th 949 and *Perez v. Safety-

Kleen Systems* (N.D.Cal. 2007) 2007 WL 1848037 (*Perez*) hold that meal breaks, unlike

rest breaks, must be ensured, not merely made available.  This contention is unavailing.

In *Cicairos, supra,* 133 Cal.App.4th 949, truck drivers brought an action against

their former employer that included a claim for violation of section 512 and an IWC

wage order applicable to the transportation industry.  The court in *Cicairos* held that,

based on the facts presented there, the defendant's obligation to provide the plaintiffs with

an adequate meal period was not satisfied "by assuming that the meal periods were

taken." (*Cicairos, supra,* 133 Cal.App.4th at p. 962.) "[E]mployers have 'an affirmative

obligation to ensure that workers are actually relieved of all duty.'" (*Ibid.*)

      Plaintiffs assert this language means employers must "ensure" meal breaks are

taken. The plaintiff in *Starbucks* made the same argument, and the Northern District

rejected it, distinguishing *Cicairos* on its facts: "*Cicairos* should be read under the facts

presented by that case. There, the defendant employer had a computerized system on

each truck that allowed defendant to keep track of the drivers' activities, such as speed,

starts and stops, and time. [Citation.] Furthermore, drivers had to input certain activities

manually, such as road construction and heavy traffic. [Citation.] Although the

defendant was required to record employee meal periods under Wage Order No 9 and

although a collective bargaining agreement required the company to schedule lunch

periods, the employer did not schedule meal periods, did not include an activity code for

them and did not monitor compliance. [Citation.] Finally, evidence showed that the

defendant's management pressured drivers to make more than one trip daily, making it

harder to stop for lunch. [Citation.] Under those facts, the court found that defendant

failed to establish that it 'provided' plaintiffs with their required meal periods. [Citation.]

White harps on one sentence in the case stating that 'employers have "an affirmative

obligation to ensure that workers are actually relieved of all duty."' [Citation.] That

language is consistent, however, with a rule requiring an employer to *offer* or *provide* or

*authorize and permit* a meal break, i.e., the interpretation that Starbucks endorses. The

defendant in *Cicairos knew* that employees were driving while eating and did not take

steps to address the situation. This, in combination with management policies,

effectively deprived the drivers of their breaks."  (*Starbucks, supra,* 497 F.Supp.2d at p. 1089; accord, *Brown, supra,* 2008 WL 906517 at *6.)

The court in *Starbucks* also rejected such an interpretation of *Cicairos* on policy grounds:  "Under White's reading of *Cicairos,* an employer with no reason to suspect that employees were missing breaks would have to find a way to force employees to take breaks or would have to pay an additional hour of pay every time an employee voluntarily chose to forego [*sic*] a break.  This suggests a situation in which a company punishes an employee who foregoes [*sic*] a break only to be punished itself by having to pay the employee.  In effect, employees would be able to manipulate the process and manufacture claims by skipping breaks or taking breaks of fewer than 30 minutes, entitling them to compensation of one hour of pay for each violation.  This cannot have been the intent of the California Legislature, and the court declines to find a rule that would create such perverse and incoherent incentives."  (*Starbucks, supra,* 497 F.Supp.2d at p. 1089.)

*Perez* also does not support plaintiffs' position that meal breaks must be "ensured" as opposed to "made available."  In *Perez, supra,* 2007 WL 1848037 at *1, the court denied a summary judgment motion brought by the employer as to employees' claim the employer had "fail[ed] to provide meal and rest breaks."  In denying summary judgment on the meal break claim, the Northern District held there was an issue of fact as to whether the defendant "provided" (*id.* at *6) meal periods, given "the lack of a policy for meal breaks" (*id.* at *7), the fact plaintiffs "were on call at all times and were required to carry a company cell phone to maintain constant contact with the branch" (*id.* at *6) and

that they "were required to complete a detailed log each day which specifically stated

they were on duty from the time they arrived at the branch until going home at the end of

the day." (*Ibid.*)  Because there was evidence the employer had failed to *provide* meal

periods, the court declined to decide whether employers also had the duty to ensure meal

periods were taken:  "[T]he court need not resolve plaintiffs' argument that California law

'does not permit an employee . . . to decide to take a break or not take a break.'"  (*Id.* at

\*7.)  Relying on *Cicairos,* the court simply held "an employer must do something

affirmative to *provide* a meal period." (*Perez, supra,* 2007 WL 1848037 at \*7, italics

added.)

     We also conclude *Cicairos* and *Perez* are distinguishable on their facts.  In

*Cicairos* and *Perez* the courts only decided meal breaks must be provided, not ensured.

Indeed, as noted above, the court in *Perez* expressly declined to consider whether meal

breaks need be ensured.  We further agree with *Starbucks* that public policy does not

support the notion that meal breaks must be ensured.  If this were the case, employers

would be forced to police their employees and force them to take meal breaks.  With

thousands of employees working multiple shifts, this would be an impossible task.  If

they were unable to do so, employers would have to pay an extra hour of pay any time an

employee voluntarily chose not to take a meal period, or to take a shortened one.

     3.  *Amenability of plaintiffs' meal break claims to class treatment*

     Further, we conclude, as we did with regard to rest breaks, that because meal

breaks need only be made available, not ensured, individual issues predominate in this

case and the meal break claim is not amenable class treatment.  The reason meal breaks

were not taken can only be decided on a case-by-case basis. It would need to be determined as to each employee whether a missed or shortened meal period was the result of an employee's personal choice, a manager's coercion, or, as plaintiffs argue, because the restaurants were so inadequately staffed that employees could not actually take permitted meal breaks. As we discussed, *ante*, with regard to rest breaks, plaintiffs' computer and statistical evidence submitted in support of their class certification motion was not only based upon faulty legal assumptions, it also could only show the fact that meal breaks were not taken, or were shortened, not why. It will require an individual inquiry as to all Brinker employees to determine if this was because Brinker failed to make them available, or employees chose not to take them.

In the recent case *Brown, supra*, 2008 WL 906517, once the district court concluded that meal periods need only be provided, not ensured, it also held that individual issues would predominate over common ones at a trial on the meal period claims and the motion to certify a class as to those claims was denied. (*Id.* at *6.) The district court held that use of time sheets was not a viable method of proving the meal break claims on a class-wide basis as they would not provide the "reason for missed breaks." (*Id.* at *7.) The court further held that class treatment was not a superior means of adjudicating the meal break claims because "[i]n order to prevail, each will have to demonstrate that he or she was not able to take breaks required by California law. [¶] Without a viable method of common proof for evaluating the ability of 5,500 class members to take breaks as required by law, the Court will be mired in over 5000 mini-trials regarding individual job duties and expectations. The difficulties in managing such

48

a wide-ranging factual inquiry persuade the Court that class treatment is not a superior method for resolution of the class members' potential claims.  Moreover, because class treatment here would nonetheless require individual class members to establish the reason for their missed breaks, class members would face many of the same difficulties in motivation and expenditure of resources that they would encounter in separate actions.  In addition to this, they would face the inevitable delay imposed by waiting for the resolution of thousands of individual factual claims in the class action.  Class treatment is not a superior means of adjudicating this controversy." (*Id.* at *8.)

Likewise in our case, the evidence does not show that Brinker had a class-wide policy that prohibited meal breaks.  The evidence in this case indicated that some employees took meal breaks and others did not.  For those who did not, the reasons they declined to take a meal period requires individualized adjudication.  Further, plaintiffs' statistical and survey evidence does not render the meal break claims one in which common issues predominate.  While time cards might show when meal breaks were taken and when there were not, they cannot show *why.*  Indeed, even plaintiffs' employee declarations show no class-wide practice regarding meal breaks.  Some employees only claimed to have been refused rest breaks and said nothing about being denied meal breaks or that they were forced to take meal breaks at a certain time.  As Brinkers' manager declarations also show, individual restaurants were given discretion to, and did, implement individualized practices to ensure compliance with meal break policies.

We also reject plaintiffs' claim the absence of written waivers signals that missed meal periods necessarily resulted from management coercion.  There is no statutory

requirement under section 512(a) that the "mutual consent" necessary to a waiver must be in writing.  Had the Legislature intended such a requirement, they could have, and would have, placed such a requirement in the statute.

Plaintiffs assert the affirmative defense of waiver cannot defeat class certification. This contention is unavailing as "a defendant may defeat class certification by showing that an affirmative defense would raise issues specific to each potential class member and that issues presented by that defense predominate over common issues." (*Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1450.)

Further, it matters not that Brinker bears the burden of proof on an affirmative defense.  "The question before us . . . is not whether [Brinker] proved its defense, but whether it presented evidence from which the trial court could reasonably conclude that the adjudication of the defense would turn more on individualized questions than on common questions." (*Walsh v. IKON Office Solutions, Inc., supra,* 148 Cal.App.4th at p. 1453, fn. 8.)

D. *Off-The-Clock Claims*

Brinker asserts the court erred by certifying plaintiffs' off-the-clock claims for class treatment "without identifying any common questions or common proof with respect to those claims or, for that matter, even mentioning them."  Brinker asserts the resolution of plaintiffs' off-the-clock claims would require individual inquiries into whether a given employee actually performed off-the-clock work and whether the employee's manager had actual or constructive knowledge of such work.  Citing the declarations of two class members (Jerry Gallon and Will Gordon) who stated that they

50

often performed job duties while clocked out for meal periods or for the day, Brinker

argues the declarations failed to indicate whether these employees were required to work

off the clock or did so by their own choice, and also failed to indicate whether their

supervisors knew they were performing off-the-clock work in violation of Brinker policy.

Had the court examined the elements of plaintiffs' off-the-clock claims, Brinker asserts,

the court "never could have certified them."

   We conclude that, as with plaintiffs' rest and meal break claims, their off-the-clock

claims are not amenable to class treatment because, once the elements of those claims are

considered, individual issues predominate.

   Plaintiffs do not dispute that employers can only be held liable for off-the-clock

claims if the employer knows or should have known the employee was working off the

clock.  (*Morillion v. Royal Packing Co., supra,* 22 Cal.4th at p. 585.)  Nor do they dispute

that Brinker has a written corporate policy prohibiting off-the-clock work.

   Because of these facts, plaintiffs' off-the-clock claims are not amenable to class

treatment.  Plaintiffs propose to prove class-wide violations by Brinker by submitting

declarations, statistical evidence and survey evidence showing the number of times

employees worked during a meal period and the number of times changes were made to

time cards.  However, they do not submit evidence showing, on a class-wide basis, the

reason *why* they worked off the clock.  Indeed, as Brinker points out, two employees that

declared they "often performed job duties while clocked out for meal breaks or for the

day" did not indicate whether they were required to do so or did so by their own choice,

nor whether their supervisors had knowledge of such activities.  Thus, resolution of these

claims would require individual inquiries in to whether any employee actually worked off the clock, whether managers had actual or constructive knowledge of such work and whether managers coerced or encouraged such work.  Indeed, not all the employee declarations alleged they were forced to work off the clock, demonstrating there was no class-wide policy forcing employees to do so.

Similarly, plaintiffs' claim that managers adjusted time cards, i.e., conducted "time-shaving," would also necessitate an individualized inquiry.  As stated, *ante*, Brinker managers are authorized to adjust time cards if notified an employee's time was not accurately recorded.  It would therefore have to be determined on an individual basis why a particular time card was adjusted and whether the justification given was legitimate.

Brinker "has the right to inquire into the validity of each claim with regard to the authority of the manager to instruct the employee to work off-the-clock, store management's knowledge of the employee's having performed work off-the-clock, whether the employee, in fact, performed any work off-the-clock, [and] the reason the employee did not submit a time adjustment request form."  (*Wal-Mart Stores, Inc. v. Lopez* (Tex.Ct.App. 2002) 93 S.W.2d 548, 558 [reversing class certification of off-the-clock claim]; see also *Basco v. Wal-Mart Stores, Inc.* (E.D.La. 2002) 216 F.Supp.2d 592, 603 [individual issues arising from the "myriad possibilities that could be offered to explain why any one of the plaintiffs worked off the clock" would predominate over common issues]; *Petty v. Wal-Mart Stores, Inc.* (OhioCt.App. 2002) 773 N.E.2d 576, 582 [finding issues were individual as to each plaintiff because of various circumstances

under which employees worked off-the-clock and questions of management's knowledge

of, and condoning, plaintiffs' working off-the-clock].)[10]

Accordingly, we conclude the court erred in certifying as a class action plaintiffs'

off-the clock claims.

DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its

July 6, 2006 class certification order and enter a new order denying with prejudice

certification of plaintiffs' rest, meal period, and off-the-clock subclasses.  The stay issued

on December 7, 2006, is vacated.  Costs are awarded to Brinker.

CERTIFIED FOR PUBLICATION

_____

NARES, Acting P. J.

WE CONCUR:


_____

HALLER, J.


_____

O'ROURKE, J.


_____

10      Although these out-of-state cases are not binding authority in California, we find
their reasoning persuasive and consistent with our analysis of plaintiffs' off-the-clock
claims.

53