**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE, et al.,

       Plaintiffs,

         vs.

ALDERWOODS GROUP, INC., et al.,

       Defendants.

Civil Action

No. 06-1641

_____

Transcript of proceedings on November 15, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Joy Flowers Conti, District Judge

APPEARANCES:

| | |
|---|---|
| For the Plaintiffs: | J. Nelson Thomas, Esq. |
| | Patrick J. Solomon, Esq. |
| | Charles H. Saul, Esq. |
| | Annette M. Gifford, Esq. |
| | Michael J. Lingle, Esq. |
| | Kyle T. McGee, Esq. |
| For the Defendants: | Matthew W. Lampe, Esq. |
| | Amy E. Dias, Esq. |
| Court Reporter: | Richard T. Ford, RMR, CRR |
| | 619 U.S. Courthouse |
| | Pittsburgh, PA  15219 |
| | (412) 261-0802 |

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1          (Proceedings held in open court; November 15, 2007).

2          THE COURT:   This is a hearing on various motions

3   that have been filed in the Prise versus Alderwoods Group,

4   Inc., Civil Action 06-1641.

5          Will counsel please enter your appearance.

6          MR. THOMAS:   Your Honor, Nelson Thomas on behalf of

7   the Plaintiffs.

8          MR. SOLOMON:   Patrick Solomon on behalf of the

9   Plaintiffs.

10          MR. SAUL:   Charles Saul on behalf of the

11   Plaintiffs.

12          MS. GIFFORD:   Annette Gifford on behalf of

13   Plaintiffs.

14          MR. LINGLE:   Mike Lingle on behalf of Plaintiffs.

15          THE COURT:   Who is going to be arguing for the

16   Plaintiffs?

17          MR. THOMAS:   Your Honor, I will be, Mr. Thomas.

18          THE COURT:   Thank you.

19          MR. LAMPE:   Matt Lampe, Your Honor, from Jones Day,

20   for the Defendants, and I will be doing the argument.

21          MS. DIAS:   And Amy Dias as well for the Defendants,

22   Your Honor.

23          THE COURT:   Thank you.   There were a number of

24   motions that have been filed.   The first motion has to do with

25   the motion for summary judgment that was filed by the

1   Defendants.  It essentially related to whether or not SCI is a
2   proper Defendant.

3           It strikes the Court that that matter is really
4   moot now in terms of the ultimate parent group.  Not -- they
5   are not seeking to pursue SCI as the ultimate parent.

6           MR. LAMPE:  I think, Your Honor, that in the
7   amended complaint that they are proposing to file SCI is
8   listed as a Defendant.  So I don't think that --

9           THE COURT:  I thought it was all different
10  subsidiaries.

11          MR. THOMAS:  Your Honor, we do have SCI listed as a
12  Defendant in the amended complaint, but we are not doing it --
13  we are not seeking to hold them liable as a shareholder.

14          THE COURT:  What's the purpose --

15          MR. THOMAS:  Your Honor, it would be as a successor
16  in interest; however, I know this Court has ruled on that
17  issue.

18          THE COURT:  Right, I have already ruled on it.  I
19  will make that ruling that they cannot be a Defendant, I will
20  grant the motion for summary judgment.

21          MR. THOMAS:  Your Honor, in the Prise versus
22  Alderwoods discrimination matter you also said that discovery
23  would be liberally granted.  We would just ask that the --
24  their removal from the amended complaint or their dismissal be
25  under the same terms that was in the discrimination case,

1  which, Your Honor, I believe was --

2          THE COURT:  That will be true.  It will be without

3  prejudice.  If you find some basis through the discovery that

4  would warrant reconsideration, the Court will consider that at

5  the appropriate time.

6          So the Court will grant the motion for summary

7  judgment and it will be without prejudice at a later time to

8  raise additional information if you find things in discovery.

9          MR. THOMAS:  Thank you, Your Honor.

10         THE COURT:  Okay.  So the motion for summary

11  judgment will be granted as stated.

12         The motion to amend the complaint -- I am going to

13  take up some of the matters that I think are less

14  controversial first.  The motion to amend the complaint, there

15  are several claims that are being amended.  One would be to

16  include the -- include allegations relating to a violation of

17  the FLSA by requiring employees to obtain certifications and

18  participate in training.

19         I don't see a problem with adding that expansion of

20  the allegations in the complaint.  So that would be my

21  preliminary assessment on that.  There are some other

22  corrections and revisions to the complaint along those lines

23  that would be permitted.

24         Another thing is to include all of these opt-in

25  Plaintiffs.  The Defendant has filed a -- Defendants have

1  filed a motion saying that all of those opt-in Plaintiffs,
2  some of them are not proper.  But really for the Court at this
3  stage to get into that, it would be akin to having a summary
4  judgment motion and it would be very -- we are going to be
5  moving forward with this case one way or the other, so I would
6  deny that motion without prejudice to raise this issue on who
7  the proper Plaintiffs are at a time when summary judgment
8  motions are filed.

9         MR. THOMAS:  Your Honor, you granted the motion to
10 amend on that issue.

11        THE COURT:  I will let you put all of those
12 Plaintiffs in.  I don't see any great prejudice.  For me not
13 to do that now, I would have to have a hearing, because we are
14 dealing with other people's rights and there may be some other
15 discovery that has to be done with respect to those
16 individuals, and at this stage of the proceedings I think it's
17 best just to move on without prejudice to deal with those
18 individuals subsequently.

19        MR. LAMPE:  Does that mean then you are also
20 denying the separately filed motion to strike?  Are we at that
21 point yet?

22        THE COURT:  Yes, because I think those are less
23 controversial.  It seems to me the big issues are who should
24 be the Defendants in this case.

25        MR. LAMPE:  If I could just have a few words on the

1   issue.

2           THE COURT:   Sure.

3           MR. LAMPE:   We really think that a number of these

4   Plaintiffs that are identified in our motion to strike aren't

5   even colorably, arguably, possibly capable of being in this

6   case.   For instance, in the list of the people whose claims

7   are time barred, the first person on the list was terminated

8   in 1995, Adams I think his name is.   So those sorts of

9   people --

10          THE COURT:   This is the kind of thing, quite

11  frankly, that counsel, if you are doing, you know, diligence

12  going through here, you should meet and confer over these

13  things.   If people don't want to be here, they should be

14  eliminated.

15          MR. THOMAS:   Your Honor, we have sent to Mr. Lampe

16  over 42 stipulations of dismissal.   They have not been

17  returned to us.   As we find people, we send them to him on

18  almost a weekly basis.   We have not heard from him on any of

19  those.   They have not been signed.

20          We would be glad to meet and confer on any of it.

21  But we have been doing our best to get people out of the case

22  who don't belong here.

23          THE COURT:   Why should you move to include them as

24  a named Plaintiff?

25          MR. THOMAS:   I don't believe we are moving to

1   include.  We are only moving to include people who we -- if we

2   have information they should not be included, we are asking --

3           THE COURT:  Why don't you meet and confer.  Why

4   don't you go through the list of the ones you think are

5   absolutely not proper and if -- because it's not that they are

6   excluded.  If they turn out to be properly named and they have

7   properly opted in, they are in.  It is a question of whether

8   we have this expansive listing.

9           MR. THOMAS:  They opted into the lawsuit, I am not

10  saying we moved to dismiss them from the caption of the case.

11  Those people who we sent --

12          THE COURT:  Why would they get to be a Plaintiff

13  here -- why should we list them as a Plaintiff?

14          MR. THOMAS:  We are not asking they be listed as

15  Plaintiffs.  We ask they be dismissed because they filed

16  opt-ins, so we have --

17          THE COURT:  They will not be listed as a Plaintiff.

18  That's what I am talking about.

19          MR. LAMPE:  That is a very, very small number.  Of

20  the people they you sent us dismissal entries for, there are

21  only eight that are subject to our motion.  What I would

22  propose is, to Mr. Thomas, he needs to tell us for everybody

23  listed in our motion, does he in fact feel he has a claim that

24  could surpass Rule 11 standards.

25          THE COURT:  So you have eight individuals.

1      MR. LAMPE: There's eight individuals among the
2  hundreds that we are asking to be struck that Plaintiffs have
3  actually sent us a dismissal entry for. There are hundreds
4  still outstanding that we think never worked for either of the
5  Defendants.

6      THE COURT: You can have an ongoing process here to
7  go through those; and as some people should not be in here,
8  then there can be just a simple motion to strike them from the
9  caption.

10      MR. THOMAS: Your Honor, the problem is the list
11  that the Defendants filed with this Court, which they
12  represented as true and accurate, turns out it wasn't. They
13  included people on that list who they had already said were
14  within the time period and held the job titles.

15      THE COURT: I think we need to move this case
16  forward and it is not -- it isn't going to end the case. I
17  don't think it is going to duly expand it. I would have to
18  sit through and hear -- have some kind of an evidentiary
19  hearing essentially on each one of those people. I just don't
20  think it's efficient use of the Court's time.

21      I think you do need to meet and confer in good
22  faith. People that should not be included in the caption
23  shouldn't be there. People should be dismissed from the case
24  as you go forward and you will have an ongoing duty to meet
25  and confer over that.

1          MR. THOMAS:  Thank you, Your Honor.

2          MR. LAMPE:  I just have one idea, you might find

3    this to be a good idea.

4          THE COURT:  Okay.

5          MR. LAMPE:  We would propose that within a certain

6    set period of time, to be determined by the Court, the

7    Plaintiffs have to tell us for all the people that are subject

8    to our motion, that they have had a conversation with the

9    person and can say, satisfactory with Rule 11, that in fact

10   that person has a claim, has a timely claim.  Because I think

11   that would weed out a great number of people that are

12   otherwise in the case, we have retention obligations with

13   respect to them.  And if they haven't even had a conversation

14   with these clients yet, I think there should be a deadline

15   imposed on them to come forward yes or no.  Not ultimately if

16   they are going to agree we have a good argument on the merits,

17   but if they are going to continue forward with those people.

18   The ones they want to continue forward with, we can have

19   discovery.  But two-thirds of them probably will not and then

20   they can be dismissed and we can move on.

21         MR. THOMAS:  Your Honor, we believe that there

22   certainly is a process that needs to occur here, conferring in

23   good faith.  We need to see the employee records, we need to

24   get contact info.

25         THE COURT:  Why don't you meet and confer and set

1   up a timetable where this can be accomplished and the Court

2   will approve the timetable for a review of each of the

3   Plaintiffs listed in the caption.

4               MR. LAMPE:  Thank you, Your Honor.

5               MR. THOMAS:  Thank you, Your Honor.

6               THE COURT:  So I will deny that motion to strike

7   without prejudice because what we will do is the parties are

8   required to meet and confer to set forth a process and a

9   timeline to complete the process for review of the named

10  Plaintiffs to determine whether each of the Plaintiffs has a

11  colorable claim to move forward with.  You can file that with

12  the Court.  When do you think, right after Thanksgiving, would

13  that be good, because we are coming on the heels of

14  Thanksgiving?

15              MR. LAMPE:  I think that sounds like a good date,

16  the earlier the better from our perspective.

17              THE COURT:  How about by the 29th if you could have

18  that filed just by what time frame you will use and what

19  process.

20              MR. THOMAS:  The other thing, Your Honor, it may be

21  helpful to have that part of a proposed discovery plan for the

22  case in general.

23              THE COURT:  Right.

24              MR. THOMAS:  With that still -- because the case

25  has sort of moved in different directions, we have not

1   submitted that to the Court.  My proposal would be that the

2   parties sit down and formulate a joint discovery plan on all

3   outstanding issues, including this.

4           THE COURT:  That would make sense to me by the

5   29th.  Because we have to start moving the case forward.

6           MR. LAMPE:  We agree with that.

7           THE COURT:  So it will be the whole -- you will

8   have to have that refinement in there about the process for

9   identifying the Plaintiffs that don't belong.

10          MR. THOMAS:  Thank you, Your Honor.

11          THE COURT:  So that takes two of those.  The other

12  two motions relate to motion to certify the class for

13  expedited collective action notification.

14          I don't know if you are familiar with the

15  Bell Atlantic versus Twombly case.  Have you reviewed that

16  case from the Supreme Court?

17          MR. THOMAS:  Yes, Your Honor.

18          THE COURT:  In that case the Supreme Court

19  clarified I think what has been an issue in the federal courts

20  for many years.  That is, what is the import of Federal Rule

21  of Civil Procedure 8, which requires that a plain statement be

22  filed.  That's the threshold requirement.

23          Now, the Supreme Court in Bell Atlantic Corporation

24  versus Twombly, 127 Supreme Court 1955, decided May 21, 2007,

25  stated that -- these are things that have been recognized for

1  a number of years -- that:  While a complaint attacked by a
2  Rule 12(b)(6) motion to dismiss does not need detailed factual
3  allegations, a Plaintiff's obligation to provide the grounds
4  of his entitlement to relief requires more than labels and
5  conclusions, and a formulaic recitation of the elements of a
6  cause of action will not do.

7          It also went on to state, quote:  The pleading must
8  contain something more than a statement of facts that merely
9  creates a suspicion of a legally cognizable right of action on
10  the assumption that all the allegations in the complaint are
11  true, even if doubtful in fact.

12          So you can move forward even if you have some
13  doubt, but you have to have enough factual allegations to
14  raise a right to relief above a speculative level.

15          And the Court referred specifically to its decision
16  in Conley versus Gibson, 355 US 41, 1957.  In that case, it
17  was famous for the statement that a complaint should not be
18  dismissed for failure to state a claim unless it appears
19  beyond doubt that the Plaintiff can prove no set of facts in
20  support of his claim which would entitle him to relief.

21          That no set of facts has been interpreted I think
22  by many district courts over the years to mean you can conjure
23  up any number of things and almost any claim could pass muster
24  on a rule to dismiss.

25          I think what is particularly telling about the

1 Twombly case is the statement that the Court -- that the Court
2 made: That phrase about no set of facts is best forgotten as
3 being -- and it stated that this famous observation has earned
4 its retirement. The phrase is best forgotten as an
5 incomplete, negative gloss on an accepted pleading standard:
6 Once a claim has been stated adequately, it may be supported
7 by showing any set of facts consistent with the allegations in
8 the complaint.

9          So what the Court is doing now is saying, we look
10 for plausibility, are there enough factual allegations set
11 forth in the complaint that go beyond mere factual
12 allegations, you know, which are disguised legal conclusions,
13 so you have to look for some plausibility in the actual
14 factual allegations from which the Court could determine that
15 there is a claim for relief which is stated.

16          Now, the Court noted: This is not Rule 9, you
17 don't have to a heightened pleading standard. However, you do
18 have to have enough in the complaint that the Court can apply
19 an appropriate standard.

20          And I have to say, going through this complaint,
21 this proposed amended complaint with respect to the new
22 Defendants, it doesn't meet the standard, it's just replete
23 with conclusion after conclusion after conclusion. I went
24 through it and when you go through paragraph by paragraph
25 going through there, it's all essentially saying: At all

1  relevant times -- this is Paragraph 45 -- SCI and SCI managing
2  entities are or have been Plaintiffs' employers.

3        It goes on and make conclusions that, in
4  Paragraph 50, that they comprise a single integrated
5  enterprise.  I think that's a disguised legal conclusion,
6  there is no factual support for that.

7        Just paragraph after paragraph saying that they
8  exercise control, they do this, they do that.  But it is
9  stated as really a very broad-based conclusion.  There's no
10 factual underpinning from which the Court could find any
11 plausible claim here.

12       I am always very troubled because, as pointed out
13 by the Defendants in there opposition to the filing of this
14 amended complaint, Alderwoods was acquired by SCI.  Many of
15 the Plaintiffs, especially the named Plaintiffs here, never
16 worked when SCI was in control of Alderwoods, even if we
17 assume there could be some control.  So you have an extended
18 period of time where we are going to be looking at what
19 Alderwoods was doing -- I will put Alderwoods in quotes, I
20 will call it the old Alderwoods was doing.  So you have all
21 these facts relating to Alderwoods.

22       In the complaint it talks about at all relevant
23 times SCI was in control of them.  That simply can't be true
24 from what the Court has seen from the other motion to dismiss
25 where the merger documents were attached.  There isn't any

1   question here about the point in time at which Alderwoods was

2   acquired by SCI. You cannot have a successor in interest

3   during those periods except for the entity that was acquired,

4   what I will call the new Alderwoods.

5       So you have the Alderwoods Group as a stand-alone,

6   you have SCI as a stand-alone entity and group of companies.

7   SCI acquired Alderwoods through a triangular merger where

8   Alderwoods wound up being a wholly owned, essentially a

9   wholly -- the new Alderwoods was a wholly owned subsidiary of

10  SCI. That new Alderwoods is a proper Defendant, they are a

11  successor in interest because it just changed shareholders,

12  it's the same entity, it's the same business operation. So

13  that is proper, yes.

14      To the extent actions continued in the new

15  Alderwoods like in the old Alderwoods and you had any

16  individuals directly involved in that continuation, you know,

17  involved in that action, so you can say these individuals who

18  are the employers for FLSA purposes because they had hands-on

19  involvement in that or if another subsidiary of SCI for that

20  subsequent conduct specifically related to the Alderwoods

21  entity had some of that type of involvement, maybe they could

22  be if the Defendant's conduct is ongoing to some of the

23  Plaintiffs.

24      So beyond that, to pluck out all of these

25  subsidiaries, I work for SCI, and -- and I am particularly

1   worried about the individuals.  Because the individuals, I
2   looked at some of the references to them and they say they
3   worked for SCI for years prior to the acquisition of
4   Alderwoods.  So how could they have been involved at all
5   relevant times with Alderwoods?  It doesn't make any sense to
6   me.

7           And you can't be a successor in interest in the way
8   I think you want them to be to pick up all of these other
9   entities.

10          So I just can't see, one, under Twombly, I don't
11  think it passes muster.

12          Two, under -- even if it would, I don't see under
13  Rule 20 that you can have this joinder where you have really
14  discrete transactions involved.  What SCI was doing prior to
15  the acquisition with its subsidiaries and other subsidiaries,
16  it just doesn't mesh.  You are going to be too confusing here.

17          If you want to bring a separate lawsuit against
18  what SCI was doing with its other -- or I guess any SCI entity
19  that was operating outside of the Alderwoods context, you can
20  bring another lawsuit.  I just don't know that it's proper
21  here.

22          MR. THOMAS:  Your Honor, if I can -- I understand
23  your concerns.  If I can make several comments.

24          First of all, you picked up the allegations at
25  Paragraph 45, and I understand what you are saying about

1  those.  However, from Paragraphs 7 through 43, that's where we
2  lay out the factual allegations involving the different
3  entities.  So, for instance --

4          THE COURT:  But this all gets back to, these are
5  SCI people, they had nothing to do during the bulk of the
6  time.  How does that work?

7          MR. THOMAS:  Your Honor, maybe we need to be --
8  maybe I need to be making this clearer in the complaint.  The
9  violations -- there are industry-wide practices in the funeral
10  home industry.  Both Alderwoods and SCI were engaging in
11  similar pay practices in the industry.  We know that from our
12  conversations with SCI people.

13          THE COURT:  It doesn't cut it, though, because the
14  conduct in question has to do with what Alderwoods was doing.
15  Whether SCI was doing the same thing doesn't make them liable
16  for the Alderwoods people for that period of time.

17          MR. THOMAS:  It doesn't, but there are SCI people
18  in this case who never worked for Alderwoods.

19          THE COURT:  They shouldn't be here.

20          MR. THOMAS:  And, Your Honor, here is the issue --
21  and I will be glad to split the cases up.  But when we were
22  doing the case for case management purposes, our view is --
23  and if the Court disagree, I don't have any problem.  We
24  ourselves have wrestled with the issue, is it better to be
25  done in one lawsuit or separate lawsuits.

1    The reason we concluded that one lawsuit made more
2  sense was that you have people, you take an Alderwoods
3  employee who became employed by SCI.  If there were two
4  lawsuits, they would file claims in one and then in the other.
5  That's okay.  But our thought was it's easier if you have an
6  employee who has continued in both and who has violations
7  under both, that they be in the same lawsuit together.
8    I would also say --
9    THE COURT:  That would be true if that was all just
10  the same Alderwoods people who then became employed by SCI.
11  But now you are picking up all these other SCI people who had
12  no connections with Alderwoods.
13    MR. THOMAS:  There are probably three universes of
14  employees, at least three universes of employees we are
15  dealing with:
16    People who worked for SCI who never worked for
17  Alderwoods and have their own violations and who now are
18  working for SCI side-by-side with people who used to work with
19  Alderwoods and they both have the same violations, so you have
20  that universe.
21    You have the universe of people who worked for
22  Alderwoods, but never became employed by SCI.
23    And you have the universe of people who worked for
24  Alderwoods and then ended up working for SCI.
25    Our thought had been and the reason we are putting

1   those together is at least at the initial stage it is easier

2   for the case to be managed with all of those together.

3   However, as we noted in our papers, if the Defendants' concern

4   is and the Court's concern is that those should be in separate

5   lawsuits, the problem then becomes -- the solution for that is

6   a motion to sever and to say, there should be an SCI suit --

7             THE COURT:   There is not and SCI suit now, so you

8   just need to file a new one.

9             MR. THOMAS:   Correct.  Well, yes, I guess with

10  SCI's dismissal, correct, if the motion to amend is not

11  granted, that's correct.

12            But then I would say to Your Honor, I would be

13  glad -- we are glad to file them as separate lawsuits and

14  really --

15            THE COURT:   See, I think it would just be so

16  confusing for the Court and for the jury because people will

17  be talking out of both things.  What we need to focus on here,

18  because that's the thrust of this, what was Alderwoods doing.

19  There may be some continuation issues with SCI; and if you

20  could pin the continuation for Alderwoods to SCI, to some

21  other entity other than the new Alderwoods, that's something

22  that the Court could consider later.

23            But right now I think you have to focus on

24  Alderwoods because that's what it is and you can't have

25  Alderwoods being tainted by what SCI was doing at the same

1   time with separate employees and totally unconnected entities.

2           MR. THOMAS:  That is fine, Your Honor, we will file

3   a separate lawsuit against SCI.  Would Your Honor prefer that

4   that -- for the -- we have the Alderwoods --

5           THE COURT:  See, we have to get this case moving.

6           MR. THOMAS:  Correct.  Let's assume there is a

7   person who has opted into the Alderwoods action, an Alderwoods

8   Plaintiff.  They have worked at Alderwoods.  They then worked

9   with the SCI employing entities.  Would Your Honor think that

10  from a confusion and case management perspective it is better

11  to take the post-merger claims and those would be in the

12  lawsuit against SCI or a totally separate lawsuit?  Or -- what

13  would be the -- we are glad to do it any way --

14          THE COURT:  I think anybody that has continued in

15  the new Alderwoods, they should all stay together.

16          MR. THOMAS:  Okay.

17          THE COURT:  People who have never worked for

18  Alderwoods should not be included in this.

19          What's the thought of the Defendant?

20          MR. LAMPE:  We agree completely with that.

21  Alderwoods continues.  It's still Alderwoods.  It was before

22  the merger and after.

23          THE COURT:  You can find some of this is

24  continuing, you can have some good factual grounds to bring in

25  an individual who is currently employed and through one of the

1   SCI entities where you can have a plausible claim against

2   their employer, I will consider that if you can file a motion

3   to amend that has the sufficient factual background that takes

4   it beyond the realm of the conclusions.

5           MR. THOMAS:  What I would -- Your Honor, at that

6   point, just so I'm sure I am not going to do something that

7   confuses things more, at that point you will have in the

8   Alderwoods lawsuit, because it does continue and these

9   individuals that we have named would be -- we would seek to

10  add them, those individuals will now be named in two lawsuits.

11  One is the Alderwoods and continuation --

12          THE COURT:  I am not going to permit them at this

13  stage to be named in this lawsuit because I don't see enough

14  facts in here to bring them in.  So I am not going to permit

15  the amendment to bring up the additional Defendants, whether

16  they're the corporate entities or the individuals.  But it's

17  going to be without prejudice if through your discovery you

18  can discern that there are some facts or something that would

19  give rise to a proper amendment that could be made.

20          MR. THOMAS:  The amendment, Your Honor, we know

21  enough already to know the practices are continuing when they

22  have gone over to SCI, so we will be adding those SCI

23  individuals.  So those SCI individuals and those entities will

24  be in two lawsuits.

25          THE COURT:  I am going to remind you when you talk

1  about somebody being an employer, you have to talk about

2  somebody hands-on. Somebody at a higher level, just because

3  they are the CEO, they have control over everything, that

4  would mean every CEO through every chain or subsidiary of

5  every corporation in America is going to be a Defendant in one

6  of these cases. That's not what is contemplated. You are

7  talking about somebody who is hands-on, that has -- that is

8  involved. Am I mistaken on what the law is?

9          MR. THOMAS: Your Honor, generally CEOs of

10  companies are almost always found to be employers. That is, I

11  think -- I have yet to see a case where a CEO was not found to

12  meet --

13          THE COURT: The CEO of Alderwoods, if they have

14  some --

15          MR. THOMAS: If they have an active management of

16  the company, they are not a figurehead CEO, but actively

17  managing the company --

18          THE COURT: We are talking about the CEOs of all of

19  these other entities you are trying to bring in.

20          MR. THOMAS: But also too, I mean, I believe -- we

21  can cite the cases and we will go through that. I understand

22  your concerns about a CEO. Certainly in terms of the Western

23  Market Support Center, Eastern Market Support Center, they

24  have said that all the HR functions flow to them, they are

25  separate corporations, I believe that those certainly meet the

1   active hands-on.  We have the director of HR, active hands-on

2   management.  I guess the CEO and other --

3           THE COURT:  The active hands-on management, that is

4   a conclusion.  So you have to have, what did they do.

5           MR. THOMAS:  We have their affidavits saying that

6   Eastern Market Support Center administered all HR

7   administrative functions for employees in that area.  I think

8   that's more than a conclusion, that's an affidavit from them

9   saying that's what they did.  So that would be our basis for

10  it.  That would be our basis.

11          That's fine, we will file the new complaint against

12  SCI --

13          THE COURT:  I think you need to meet and confer.

14  You will probably have the same counsel on the other side too.

15  So you can try to achieve some efficiencies and economies in

16  terms of doing discovery.  But I have to try to keep the cases

17  separate because this one has Alderwoods, the old and the new.

18  The other one would just have whatever SCI entity would be

19  appropriate.

20          MR. THOMAS:  And particularly, Your Honor, that's

21  why, because of discovery, among other things, that's why we

22  thought it would be better, not at trial or post-discovery --

23          THE COURT:  You can consolidate things for purposes

24  of discovery, but they have to be discrete cases.  You can

25  certainly meet and confer about that.  But we have to move

 1  this case forward. This is an '06 case. We are now coming to

 2  the end of '07. It doesn't get any better and you haven't

 3  really started -- when are you going to have the amended

 4  complaint filed?

 5          MR. THOMAS: I would think by the 29th as well we

 6  would try to have an amended complaint in and probably try to

 7  file a new complaint by then as well, maybe two new

 8  complaints.

 9          THE COURT: Okay. So then the answer should be due

10  20 days after the filing.

11          MR. THOMAS: Your Honor, we would move immediately

12  for notice --

13          THE COURT: Mr. Lampe, is that right?

14          MR. LAMPE: Yes, Your Honor, 20 days would be fine.

15          THE COURT: Do you wish to be heard about the other

16  issues the Court said would be okay to amend?

17          MR. LAMPE: No, Your Honor.

18          THE COURT: Okay.

19          MR. THOMAS: Your Honor, we will refile the SCI

20  notice motion immediately upon --

21          THE COURT: So the amended complaint will be filed

22  on the 29th. Your discovery plan, the 26(f) plan will be

23  filed on the 29th. We will have a conference to schedule the

24  discovery, let's pick a date for that so we can schedule that

25  all right now. Can we do that at 5 o'clock on December 5th?

1          MR. LAMPE:   That day, Your Honor, I am going to be
2     on the west coast.
3          THE COURT:   Okay.  How about the 10th at 5 o'clock?
4          MR. LAMPE:   That works fine for me, Your Honor.
5          THE COURT:   I am sorry, let me check.
6          MR. THOMAS:   Your Honor --
7          THE COURT:   You can't do it at that time?
8          MR. THOMAS:   I have an appearance in federal court
9     that day.
10          THE COURT:   At 5 o'clock?
11          MR. THOMAS:   That morning.  But to get down here
12     might be tough.  I could certainly try.
13          THE COURT:   You are in town here?
14          MR. THOMAS:   No, the one I have the oral argument
15     for is in Rochester.
16          THE COURT:   Let's do another date then.  Just a
17     second.  We can do this by phone call too.  We have seen each
18     other enough now, I don't need to worry about whether the
19     lawyers are talking and we can set up discussions for
20     settlement.
21          MR. THOMAS:   That will be fine then.
22          THE COURT:   We will do telephone for everyone.
23     Also, this is the type of situation where the Court at this
24     stage would say, have the parties talked seriously about
25     mediation or an alternative dispute mechanism?  That's going

1  to be part of our discussions in getting ready for the

2  Rule 26(f).  So really think about how that should come about.

3          New cases that are filed in January will all be

4  subject to mandatory ADR, the Court has approved that.  So we

5  are really intent upon having parties speaking as early as

6  possible to see if there can be an amicable resolution.  So

7  talk seriously about what vehicle would be appropriate in this

8  case.

9          We will do it 5 o'clock on the 10th.  We will do it

10  by conference call, that way we won't be delaying things.

11          And you should start implementing your discovery

12  plan as soon as you have agreed on it.  Don't wait for the

13  Court to order it, you can start your discovery.  You could

14  have had discovery prior to this, but I understand there

15  hasn't been a lot done.

16          So the motion for collective action, the Court is

17  not going to approve, that's moot because the Court did not

18  permit the amendment.

19          MR. THOMAS:  Your Honor, could we get a schedule in

20  place because we will be moving against SCI on the same,

21  largely the same affidavits and same basis for the new

22  lawsuit.  Could -- we can file that motion probably

23  simultaneously with the complaint on the 29th, and their

24  answer and their response to that 20 days later?

25          MR. LAMPE:  I think it is completely inappropriate

1  to talk about the schedule for a motion in a case that hasn't
2  even been filed yet.
3          THE COURT:  Well, what I am going to ask you to do
4  is meet and confer.  You are going to be filing that.  As soon
5  as you file it, you should be talking with the other side
6  about this and you will be filing your motion for expedited
7  hearing on the notice.  And the Court will set a schedule, if
8  that is filed, for them to respond to that and we will have a
9  hearing.  It will probably be sometime in early January will
10 probably be about the best that will happen, just from a sense
11 of timing.
12          MR. THOMAS:  Thank you, Your Honor.
13          THE COURT:  Okay.
14          MR. THOMAS:  Very good.
15          THE COURT:  Anything else to come before the Court?
16          MR. LAMPE:  Not from us, Your Honor.
17          THE COURT:  Thank you.
18          MR. THOMAS:  Thank you.
19          (Record closed).
20
21                    C E R T I F I C A T E
22          I, Richard T. Ford, certify that the foregoing
23 is a correct transcript from the record of proceedings in the
24 above-titled matter.
25 S/Richard T. Ford

**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY
on behalf of themselves and all employees
similarly situated,

        Plaintiffs,

        v.

ALDERWOODS GROUP, INC. and
SERVICE CORPORATION
INTERNATIONAL,

        Defendants.

Civil Action No. 06-1641

Judge Joy Flowers Conti

## DECLARATION OF JUDITH M. MARSHALL

I, Judith M. Marshall, do hereby declare and state as follows:

1.    I am over 21 years of age, have personal knowledge of the facts set forth in this declaration, and could testify to them competently if called to do so.

2.    I am currently employed by SCI Funeral & Cemetery Purchasing Cooperative, Inc. in the position of Senior Legal Assistant. I have held this position since January, 2003.

3.    As Senior Legal Assistant, I have served as Corporate Secretary for SCI Funeral & Cemetery Purchasing Cooperative, Inc. As part of my job duties, I am familiar with the corporate structure of Service Corporation International ("Service Corp"), which is the ultimate parent company of my employer. Based upon my own personal knowledge, Service Corp is a holding company that has no employees.

4.    As a holding company without any employees, Service Corp does not provide direction or issue policies and procedures to its subsidiary companies. It does not have a human resources function. Rather, day-to-day human resources services and support for individual

1

locations are provided by three separate companies – SCI Eastern Market Support Center, L.P., SCI Western Market Support Center, Inc., and SCI Houston Market Support Center, L.P. Each of these entities has a Management Services Agreement with the locations in their region of the country that states that they will provide all executive, management, administrative, accounting, data processing, and human resources services for the locations. Consistent with the Management Services Agreement, these entities are responsible for fielding questions related to human resources issues for the companies for which they provide services. In turn, each of these companies has entered into a separate contract with SCI Funeral & Cemetery Purchasing Cooperative, Inc. to provide additional human resources services and support for Service Corp's subsidiaries.

5.      Service Corp also does not distribute any employee handbooks or manuals, nor has it sponsored any employee benefit plans within the time frame of this lawsuit, or provide any services to its subsidiaries. Service Corp has no payroll system. Service Corp does not have any management, or control over the labor relations of its subsidiaries. Service Corp is not responsible for, and plays no role in, hiring and terminating any employees.

6.      Service Corp does not provide training to employees of its subsidiaries and affiliated companies. Rather, on-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with the various human resources providers – SCI Eastern Market Support Center, L.P., SCI Western Market Support Center, Inc., SCI Houston Market Support Center, L.P., and SCI Funeral & Cemetery Purchasing Cooperative, Inc. Service Corp also does not provide Dignity University training programs – Dignity University training is provided by SCI Funeral & Cemetery Purchasing Cooperative, Inc.

2

7.      Service Corp does not issue communications to employees of its subsidiaries and affiliated companies. The weekly newsletter "Frontline," is a publication of SCI Funeral & Cemetery Purchasing Cooperative, Inc. (A copy of "Frontline" is attached hereto as Ex. A.) Likewise, the "Global Village" intranet site also is operated and maintained by SCI Funeral & Cemetery Purchasing Cooperative, Inc. Moreover, while I understand that Plaintiffs claim that Service Corp communicated to employees through e-mails from "President Tom Ryan," Tom Ryan is not an employee of Service Corp, but rather an employee of SCI Executive Services, Inc. Mr. Ryan holds the title of President and Chief Executive Officer of Service Corp

8.      I am aware that four individuals have submitted affirmations in this case asserting that they were non-exempt employees of Service Corp. Consistent with my statements above, none of these individuals were Service Corp employees. Rather, Johnny Coleman was employed by SCI Kansas Funeral Services, Inc.; James Stickle was employed by SCI Arizona Funeral Services, Inc.; James Stark was an employee of SCI Washington Funeral Service, Inc.; and Scott Gullett was an employee of SCI Funeral Services of Florida, Inc. These entities are just four of approximately 180 Service Corp subsidiaries and affiliated companies nationwide that directly own and operate funeral service locations.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

July _5_, 2007

_Judith M. Marshall_
Judith M. Marshall

3

**EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH PRISE AND HEATHER RADY | Civil Action No. 06-1470 |
| Plaintiffs, | |
| v. | Judge Joy Flowers Conti |
| ALDERWOODS GROUP, INC., BURTON L. HIRSCH FUNERAL HOME, INC., H. P. BRANDT FUNERAL HOME, INC., H. SAMSON, INC., NEILL FUNERAL HOME, INC, & SERVICE CORPORATION INTERNATIONAL | JURY TRIAL DEMANDED |
| Defendants. | |

## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

NOW COME, the Plaintiffs, Deborah Prise and Heather Rady, by and through their attorneys, MARGOLIS EDELSTEIN, CHARLES H. SAUL, ESQUIRE and LIBERTY J. WEYANDT, ESQUIRE, and file the following Motion for Leave to File Second Amended Complaint and aver as follows:

1.    This civil action was originally filed by Plaintiffs Prise and Rady on November 6, 2006, which sought relief against Defendants Alderwoods Group, Inc., Burton L. Hirsch Funeral Home, Inc., H. P. Brandt Funeral Home, Inc., H. Samson, Inc., Neill Funeral Home, Inc., under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000(e), *et. seq* ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206 ("EPA").

2.    Plaintiffs filed an Amended Complaint on February 23, 2007, in which Plaintiffs added Service Corporation Inc., as a Defendant in the case. Upon information and belief, Plaintiffs

1

averred that Alderwoods and SCI merged on or about November 28, 2006, via an "Agreement and Plan of Merger," dated April 2, 2006 (see Exhibit 1), which occurred after the filing of Plaintiffs' original Complaint.

3.     It was Plaintiffs' intention to include SCI as a Defendant under a theory of successor liability. However, Defendants interpreted Plaintiffs' Amended Complaint differently, and believed that Plaintiffs' claimed that SCI was the actual employer of Plaintiffs during the time period of the alleged incidents.

4.     Defendants' interpretations of what Plaintiffs' Complaint alleges are hypo-technical and exaggerated, in light of this Court's liberal notice-pleading requirements. It has been confirmed to Defendants that Plaintiffs do not claim that SCI was their employer during the time period in which the incidents alleged in the Complaint occurred, but that SCI is alleged to be liable under a successor liability theory.

5.     Plaintiffs' counsel offered to amend the Complaint to clarify Plaintiffs' position with respect to Defendant SCI in order to resolve this conflict. However, Defendants' counsel refused to consent to Plaintiffs' filing of a Second Amended Complaint, (to resolve the problems which Defendants complained of), but instead demanded the Complaint be withdrawn, or Defendants would request Rule 11 sanctions[1].

6.     Defendants' counsel then claimed that Alderwods and SCI did not merge. Defendants asserted that Alderwoods and SCI are two separate and distinct corporations, and, therefore, Defendants claim that SCI is not a proper party in this action.

---

[1] Plaintiffs believe that Defendants wanted Plaintiffs to withdraw their Complaint, such that when a new Complaint was filed, Defendants could then assert that the statute of limitations had expired.

7.    The parties appeared before the Court on May 23, 2007, for a status conference, during which the above issues were discussed. The Court permitted Plaintiffs the opportunity to file a Motion requesting leave to file a Second Amended Complaint and also permitted Defendants to file a response thereto[2].

8.    Upon information and belief, Plaintiffs aver that Alderwoods and SCI effectively merged on or about November 28, 2006, through the use of a subsidiary corporation, Coronado Acquisition Corporation ("Coronado"), created solely for the purpose of SCI's acquisition of Alderwoods. The merge of SCI's interests with that of Alderwoods has been scrutinized at length by the Federal Trade Commission.   The two entities signed what has been publically referred to as "Agreement and Plan of Merger." (Exhibit 1). Public  records also state that SCI acquired Alderwoods. The merger of the two entities is somewhat complicated, and without the benefit of discovery, Plaintiffs are unable to ascertain for certain the true relationship between Alderwoods, SCI and SCI's wholly owned subsidiary, Coronado.

9.    SCI has already legitimately been named as a party in Plaintiffs' First Amended Complaint.  In all fairness, Plaintiffs' request to amend the Complaint again, with respect to Defendant SCI, stems from Defendants' complaints about the amendment.  In all fairness, the relationship between the two entities is complicated and confusing with numerous filings with the SEC.   Defendants have stated that another entity, namely Coronado Acquisition Group ("Coronado"), was created to effectuate the acquisition of Alderwoods.  Coronado is believed to be a wholly owned subsidiary of SCI.  According to documents filed by SCI with the SEC, Alderwoods

---

[2] Should the Court grant Plaintiffs' Motion, new deadlines for Responsive pleadings and responses thereto will need to be set.

and Coronado merged, and became a wholly owned subsidiary of SCI, which is now called
Alderwoods (see Exhibit 1). Plaintiffs contend that this makes SCI a successor in interest to
Alderwoods.

10.    Upon information and belief SCI has acquired all the stock and assets of Alderwoods.
It is also Plaintiffs understanding that SCI agreed to assume all of Alderwood's liabilities, based
upon a review of limited documents which have been available for review.   Since the merger
between Alderwoods and SCI took place after the filing of this suit, and after the EEOC
investigation, SCI either knew, or should have known of the action and, therefore, should have been
aware that they would also be taking on responsibility for the liabilities of Alderwoods that have
been alleged in the Complaint.

11.    A true and correct copy of Plaintiff's proposed Second Amended Complaint is
attached hereto and marked as Exhibit 2.

12.    Additionally, Plaintiffs also wish to amend their Complaint to include allegations
under the Pennsylvania Human Relations Act.  Subsequent to the filing of the First Amended
Complaint, Plaintiffs received Notices of Rights from the Pennsylvania Human Relations
Commission, dated April 17, 2007. Therefore, Plaintiffs wish to amend their Complaint to include
causes of action which arise under the Pennsylvania Human Relations Act ("PHRA"), of which this
Court has supplement jurisdiction. See attachments to Exhibit 2.

13.    No party is prejudiced by the filing of the Second Amended Complaint.  Defendant
SCI has already been named as a party to the action via Plaintiffs' First Amended Complaint. The
Amendment with respect to SCI is to clarify Plaintiffs' position that SCI is liable under a successor

4

liability theory, which is being done in part to rectify Defendants' complaints with respect to the

pleading. The amendment with respect to the PHRA claims is the type of amendment which is

routinely granted by the Court, in light of the fact that Plaintiffs could not have included such causes

of action in their Complaint until they were given the right to do so by the PHRC. Furthermore, the

PHRA claim, mirrors the claims already pled under Title VII.

         WHEREFORE, Plaintiffs, respectfully requests that this Court grant the instant

Motion for Leave to Amend Complaint.

                              Respectfully submitted,

                              MARGOLIS EDELSTEIN

Date:  6/8/07                     /s/ Liberty J. Weyandt

                              CHARLES H. SAUL, ESQUIRE
                              PA I.D. #19938

                              LIBERTY J. WEYANDT, ESQUIRE
                              P.A. I.D. #87654

                              525 William Penn Place
                              Suite 3300
                              Pittsburgh, PA 15219
                              (412) 281-4256

                              Attorneys for Plaintiff

## Candace Nelson

| | |
|---|---|
| **From:** | ECF-CAND@cand.uscourts.gov |
| **Sent:** | Tuesday, November 06, 2007 2:58 PM |
| **To:** | efiling@cand.uscourts.gov |
| **Subject:** | Activity in Case 3:07-cv-05140-MJJ Prise v. Alderwoods Group, Inc. et al Request for Judicial Notice |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT
RESPOND to this e-mail because the mail box is unattended.
\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without
charge. To avoid later charges, download a copy of each document during this first viewing.**

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email
the Help Desk by replying to this message; include your question or comment along with the original
text.

Please note that these Notices are sent for all cases in the system when any case activity occurs,
regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an
electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed
document.
*If there is no second hyperlink, there is no electronic document available .*
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no
hyperlink...' on the ECF home page at https://ecf.cand.uscourts.gov for more information.

The following transaction was received from by Daniels, David entered on 11/6/2007 2:57 PM PST and
filed on 11/6/2007

| | |
|---|---|
| **Case Name:** | Prise v. Alderwoods Group, Inc. et al |
| **Case Number:** | 3:07-cv-5140 |
| **Filer:** | Service Corporation International |
| | Alderwood Group, Inc. |

**Document Number:** 20

**Docket Text:**
Request for Judicial Notice *in Support of Motion to Dismiss First Amended Complaint* filed
byAlderwood Group, Inc., Service Corporation International. (Attachments: # (1) Exhibit Part 2 to
Request for Judicial Notice in Support of Motion to Dismiss First Amended Complaint)(Daniels, David)
(Filed on 11/6/2007)

**3:07-cv-5140 Notice has been electronically mailed to:**

**EXHIBIT F**

1  Sanford Jay Rosen, State Bar No. 62566
Maria V. Morris, State Bar No. 223903

2  Lori E. Rifkin, State Bar No. 244081
ROSEN, BIEN & GALVAN, LLP

3  315 Montgomery Street, Tenth Floor
San Francisco, CA 94104

4  Telephone: (415) 433-6830
Facsimile: (415) 433-7104

5  srosen@rbg-law.com

6  [Additional Counsel Listed on Following Page]

7

8  Attorneys for Plaintiffs

ENDORSED
FILED
ALAMEDA COUNTY

SEP 0 4 2007

CLERK OF THE SUPERIOR COURT
By **KMEL DHILLON** Deputy

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  COUNTY OF ALAMEDA

11  WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, [see Complaint and Appendices for a listing of plaintiffs] et al., on behalf of themselves and all other employees and former employees similarly situated,

            Plaintiffs,

v.

SERVICE CORPORATION INTERNATIONAL and ALDERWOODS GROUP, INC.,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. RG07334642

**CLASS ACTION**

**AMENDED COMPLAINT**

(1) **VIOLATION OF CALIFORNIA LABOR LAWS**
(2) **FAILURE TO MAINTAIN PROPER RECORDS**
(3) **STATE WAGE AND HOUR LAWS**
(4) **UNJUST ENRICHMENT/ RESTITUTION**
(5) **CONVERSION**
(6) **FRAUD AND DECEIT**
(7) **MISREPRESENTATION**
(8) **BREACH OF CONTRACT**
(9) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
(10)  **QUANTUM MERUIT**
(11)  **UNLAWFUL BUSINESS PRACTICES**

**DEMAND FOR JURY TRIAL**

1    Additional Attorneys for Plaintiffs, who will
     submit applications for admission *pro hac vice*:
2
     J. Nelson Thomas, NY Attorney No. 2579159
3    Patrick J. Solomon, NY Attorney No. 2716660
     Michael J. Lingle, NY Attorney No. 3925765
4    Justin Cordello, NY Attorney No. 4131447
     Annette Gifford, NY Attorney No. 4105870
5    DOLIN, THOMAS & SOLOMON LLP
     693 East Avenue
6    Rochester, NY 14607
     Telephone: (585) 272-0540
7    Facsimile:  (585) 272-0574
     nthomas@theemploymentattorneys.com
8
     Charles H. Saul, PA State Bar No.19938
9    Liberty J. Weyandt, PA State Bar No. 87654
     MARGOLIS EDELSTEIN
10   525 William Penn Place
     Suite 3300
11   Pittsburgh, PA 15219
     Telephone: (412) 281-4256
12   Facsimile: (412) 642-2380
     csaul@margolisedelstein.com
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CLASS ACTION COMPLAINT

2      **AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated,

3 by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP

4 and Margolis Edelstein, and file the following Class Action Complaint:

5 **I.      INTRODUCTION**

6      1.      This is a proceeding for declaratory and injunctive relief and monetary damages

7 to redress the deprivation of rights secured to plaintiffs individually, as well as all other

8 employees similarly situated, under the laws of California and other laws of the various States

9 in which defendants do business.

10      2.      Plaintiffs' state law claims asserted herein were previously dismissed from the

11 United States District Court for the Western District of Pennsylvania on or about June 8, 2007

12 and have been tolled since that time pursuant to 28 U.S.C. § 1367, as well as the tolling rules

13 applied to class actions.

14 **II.      JURISDICTION AND VENUE**

15      3.      This Court has jurisdiction over defendants because defendants conduct business

16 in this State.

17      4.      Venue as to each defendant is proper in this judicial district, pursuant to Code of

18 Civil Procedure § 395.5 and Corporations Code § 2105.

19      5.      Upon information and belief, defendant Service Corporation International, Inc. is

20 a foreign corporation which has not obtained a certificate of qualification to do business in

21 California.

22      6.      Upon information and belief, defendant Alderwoods Group, Inc. is a foreign

23 corporation which has obtained a certificate of qualification to do business in California, but

24 which has not designated a principal place of business within the State of California.

25      7.      Venue is also proper in this judicial district because defendants maintain and

26 operate one or more business locations, transact business, and/or have agents in Alameda

27 County, as well as in other counties in the State of California, and are otherwise within this

28 Court's jurisdiction for purposes of service of process.  Obligations and/or liabilities of the

1  defendants arose in this County because defendants have contracted to employ or have
2  employed plaintiffs in Alameda County, as well as in other counties in the State of California.
3  Some of the claims in this matter arose from contracts for employment which were to be
4  performed, at least in part, in Alameda County, as well as in other counties in the State of
5  California.  Some of the unlawful acts alleged herein occurred in Alameda County, as well as
6  in other counties in the State of California, and have a direct effect on plaintiffs within
7  Alameda County and within the State of California.

8  **III.   PARTIES**

9  **A. Plaintiffs**

10        8.      The class members ("Class Members") are those employees and former
11  employees of defendants who were suffered or permitted to work by defendants and not paid
12  their regular or statutorily required rate of pay for all hours worked.  Class Members expressly
13  include, among others, those identified in the caption, together with Appendix A and Appendix
14  B to this Complaint.  As more fully set forth in paragraphs 3 and 7, which Class Members
15  incorporate by reference as if fully set forth herein, Class Members' claims are connected to
16  Alameda County as some of those claims arose from contracts to be performed in Alameda
17  County, some of the unlawful acts alleged herein occurred in Alameda County, and some of
18  those acts have a direct effect on Class Members within Alameda County.

19  **B. Defendants**

20        9.      Defendant Service Corporation International ("SCI") is a corporation with its
21  headquarters being at 1929 Allen Parkway, Houston, Texas 77019, which does business in the
22  State of California, and in the County of Alameda.

23        10.     Defendant Alderwoods Group, Inc. ("Alderwoods") is a corporation with its
24  headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202, which does
25  business in the State of California, and in the County of Alameda.

26        11.     Defendants maintain and operate one or more business locations, transact
27  business and/or have agents in Alameda County.  Defendants' obligations and/or liabilities
28  arose in this County, defendants employ or have employed Class Members in Alameda

County, as well as in other counties in California.  Defendants employed Class Members
pursuant to contracts for employment which were to be performed, at least in part, in Alameda
County, as well as in other counties in California.  Some the unlawful acts alleged herein
occurred in Alameda County, as well as in other counties in the State of California, and have a
direct effect on Class Members within Alameda County and within the State of California.

12.    At all relevant times, defendants have suffered or permitted Class Members to
perform work for them.

### SCI Is Liable to All Class Members

13.    At all relevant times, defendant SCI has suffered or permitted Class Members to
perform work for it at its funeral service locations.

14.    At all relevant times, defendant SCI is liable for the employment of Class
Members in this action.  This includes liability for Class Members employed by SCI's
affiliates, including without limitation Alderwoods (the "SCI Affiliates").

15.    Class Members are or have been employed by SCI and its funeral service
locations and/or have been jointly employed by SCI and Alderwoods and their funeral service
locations.

16.    SCI operates locations, either directly or through the SCI Affiliates, and therefore
is the employer of Class Members who are or were employed at all locations.

17.    At all relevant times, SCI and the SCI Affiliates have suffered or permitted Class
Members to perform work for them.

18.    Business operations of the funeral service locations are centrally controlled by
SCI.

19.    At all relevant times, SCI maintains centralized control of employment relations.

20.    At all relevant times, the human resource functions of the funeral service
locations report directly or indirectly to SCI.

21.    In addition to centralized control of employment relations, SCI exercises
common management of its various funeral service locations.

22.     Further, SCI owns all of its funeral service locations and exercises financial control over the business operations of those locations.

23.     Class Members are informed and believe, and therefore allege, that SCI and the SCI Affiliates operate interrelated business operations.

24.     Class Members are informed and believe, and therefore allege, that SCI and the SCI Affiliates exercise central control of labor relations.

25.     Class Members are informed and believe, and therefore allege, that SCI and the SCI Affiliates operate under common management.

26.     Class Members are informed and believe, and therefore allege, SCI and the SCI Affiliates have common ownership and financial control.

27.     In light of the economic realities of the enterprise operated by SCI and the SCI Affiliates, SCI is a joint employer of all Class Members for purposes of state laws.

28.     Collectively, SCI and the SCI Affiliates, and all of their funeral service locations, comprise a single, integrated enterprise, as they perform related activities through common control for a common business purpose.

### *SCI and Alderwoods Are Liable to Class Members Employed by Alderwoods*

29.     At all relevant times, defendants SCI and Alderwoods have suffered or permitted Class Members to perform work for them.  This includes Class Members employed by Alderwoods's affiliates (the "Alderwoods Affiliates").

30.     Class Members are or have been employed by SCI and Alderwoods and Alderwoods's funeral service locations.

31.     SCI and Alderwoods operate locations, either directly or through the Alderwoods Affiliates, and therefore are the employer of Class Members who are or were employed at all Alderwoods locations.

32.     At all relevant times, the funeral service locations of Alderwoods and the Alderwoods Affiliates have employed Class Members.

33.    Class Members who are or have been employed by Alderwoods and/or its funeral service locations have been jointly employed by SCI and Alderwoods and their funeral service locations.

34.    Class Members are informed and believe, and therefore allege, that Alderwoods, through its shareholders, has adopted the merger agreement by and between Alderwoods and SCI (collectively, "Merged Entities").

35.    Class Members are informed and believe, and therefore allege, that the Merged Entities, under the merger agreement, continue business operations in substantially the same form as before the merger.

36.    Class Members are informed and believe, and therefore allege, that the Merged Entities, under the merger agreement, continue to use substantially the same workforce as before the merger, with substantially the same supervisors and same working conditions.

37.    Class Members are informed and believe, and therefore allege, that the Merged Entities, under the merger agreement, provide essentially the same services as before the merger and use the same facilities, equipment and method of providing services.

38.    Class Members are informed and believe, and therefore allege, that thus, SCI is a successor-in-interest to defendant Alderwoods's liability.

39.    Class Members are informed and believe, and therefore allege, that the Merged Entities, under the merger agreement, operate interrelated business operations.

40.    Class Members are informed and believe, and therefore allege, that the Merged Entities exercise central control of labor relations.

41.    Class Members are informed and believe, and therefore allege, that the Merged Entities operate under common management.

42.    Class Members are informed and believe, and therefore allege, that the Merged Entities have common ownership and financial control.

43.    In light of the economic realities of the Merged Entities' enterprise, defendants are joint employers of Class Members for purposes of state laws.

1     44.    Collectively, defendants named herein and all of their funeral service locations

2 comprise a single, integrated enterprise, as they perform related activities through common

3 control for a common business purpose.

4     45.    Business operations of the Alderwoods funeral service locations are centrally

5 controlled by SCI and Alderwoods.

6     46.    At all relevant times, SCI and Alderwoods maintained centralized control of

7 employment relations at the Alderwoods funeral service locations.

8     47.    At all relevant times, the human resource functions of the Alderwoods funeral

9 service locations report directly or indirectly to SCI and Alderwoods.

10    48.    In addition to centralized control of employment relations, Alderwoods and SCI

11 exercise common management of the Alderwoods funeral service locations.

12    49.    Further, Alderwoods and SCI own all of the Alderwoods funeral service

13 locations and exercise financial control over the business operations of those locations.

14 **IV.   CLASS ACTION ALLEGATIONS**

15    50.    The claims arising under the state wage laws set forth below are properly

16 maintainable as a class action under Cal. Civ. Proc. § 382.

17    51.    Class Members are those employees and former employees of defendants who

18 were suffered or permitted to work by defendants and not paid their regular or statutorily

19 required rate of pay for all hours worked.

20    52.    The class size is believed to be over 10,000 employees, a significant percentage

21 of whom are within California.

22    53.    Common questions of law and fact predominate in this action because the claims

23 of all Class Members are based on whether defendants' practice of not paying nonexempt

24 employees their regular or statutorily required rate of pay for all hours worked violates

25 California state law and the state laws of the various other states in which defendants do

26 business.

27    54.    Common questions of law and fact include, but are not limited to, the following:

28       a.   Whether Class Members are entitled to payment for all of the time they

worked for defendants.

   b. Whether Class Members are entitled to payment at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

   c. Whether defendants' employment policies violated defendants' legal obligation to pay Class Members for all of the time they worked for defendants.

   d. Whether defendants' employment policies violated defendants' legal obligation to pay Class Members at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

   e. Whether defendants failed to maintain proper and accurate records regarding Class Members' employment.

55.    The named plaintiffs' claims are typical of, and concurrent to, the claims of Class Members, because they are similarly situated.  The named plaintiffs and all Class Members were subjected to defendants' policies and practices of failing to compensate employees for overtime work.

56.    The named plaintiffs will fairly and adequately represent and protect the interests of Class Members.  The class counsel, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, are qualified and able to litigate Class Members' claims.  The class counsel are experienced in employment litigation, and their attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

57.    There are no known conflicts of interest between and among Class Members.

58.    A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Each Class Member has been damaged and is entitled to recovery by reason of defendants' illegal policy and/or practice of permitting, suffering, and/or failing to pay employees their regular or statutorily required rate of pay for all hours

worked.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

**V.     FACTUAL BACKGROUND**

59.     Class Members are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

60.     Defendants' policy and/or practice was to not compensate Class Members their regular or statutorily required rate of pay for work defendants suffered or permitted Class Members to perform.

61.     Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

62.     Defendants' practice is to be deliberately indifferent to violations of the statutory overtime requirements.

63.     The failure to pay overtime is willful.

64.     Examples of defendants' policies and practices to deprive Class Members of their earned wages and wage premiums are set forth below:

    a.  Defendants implemented a "Community Work Policy."  Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants.  Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

    b.  Defendants implemented an "On Call Pay Policy."  Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for work performed outside the regular workday, off-site from the funeral home.

    c.  Defendants' policy required that certain hourly employees train for and obtain certain licenses.  Defendants did not pay for the training, test taking and continuing education requirements for those licenses despite suffering or permitting employees to perform such work.

    d.  Defendants' policy required that certain hourly employees take other types of

training.  Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

e.  Defendants implemented a "Pre-Needs Appointment Policy."  Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases.  To the degree that such appointments were beyond the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not to be paid for such time worked under the "Pre-Needs Appointment Policy."  Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

f.  Defendants implemented a "Meal Break Deduction Policy."  Under the policy, defendants no longer paid for lunch breaks.  Defendants did, however, suffer and permit its employees to perform work during such meal breaks, but pursuant to defendant's "Meal Break Deduction Policy" time spent on meal "breaks" was still to be deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

g.  Defendants implemented a "Pre-Approval for Overtime Pay Policy."  Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved.  Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments.  However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

h.  Defendants implemented an "Unrecorded Work Time Policy."  Under this policy, defendants suffered or permitted Class Members to perform work, but directed that such work not be recorded.  Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

i.  Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of the Class Members' overtime.

65.    Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Class Members concerning their wages, hours and other conditions of employment.

66.     More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

## FIRST CAUSE OF ACTION

**VIOLATION OF CALIFORNIA LABOR LAWS (by all plaintiffs against all defendants)**

67.     Class Members hereby incorporate by reference paragraphs 1 through 66 of this Complaint as if fully set forth herein.

**Failure to Pay Overtime Compensation**

68.     Defendants willfully violated their obligations under California law, including those under California Labor Code §1194, *et seq.*, by failing to pay Class Members the legal overtime compensation applicable to Class Members.

69.     As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Immediately Pay Wages Upon Discharge/Layoff/Resignation**

70.     Defendants willfully violated their obligations under California law, including those under California Labor Code § 201, *et seq.*, by willfully failing to pay Class Members who have been discharged or laid off all wages earned and unpaid at the time of discharge or layoff.

71.     Defendants willfully violated their obligations under California law, including those under California Labor Code § 202, *et seq.*, by willfully failing to pay Class Members who have resigned all wages earned and unpaid at the time of resignation, or within 72 hours thereafter.

72.     Defendants did not pay Class Members who were discharged, were laid off or resigned their regular or statutorily required rate of pay for all hours worked, as required by California law.  Defendants' failure to pay those amounts is ongoing.

73.     As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

74.     Defendants are liable to Class Members for civil penalties, pursuant to California Labor Code § 203, in the amounts set forth therein.

**Failure to Provide Required Meal and Rest Periods**

75.     Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226.7 and 512, *et seq.*, by willfully failing to provide Class Members with legally required meal and rest periods.

76.     Defendants repeatedly and regularly interrupted Class Members' meal and rest periods and/or required Class Members to forego their meal and rest periods.

77.     Defendants failed to compensate Class Members for missed meal and rest breaks.

78.     As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Furnish Timely and Accurate Wage Statements**

79.     Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226(a) and 226.3, *et seq.*, by willfully failing to provide Class Members with timely and accurate wage statements as required by California law.

80.     As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

81.     Wherefore, Class Members request relief as described below.

## SECOND CAUSE OF ACTION

**FAILURE TO MAINTAIN PROPER RECORDS (by all plaintiffs against all defendants)**

82.     Class Members hereby incorporate by reference paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83.     Defendants willfully violated their obligations under California law, including those under  California Labor Code § 1174, *et seq.*, by failing to make, keep, and preserve adequate and accurate records of the employment of Class Members concerning their wages, hours and other conditions of employment; more specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day,

1 the total hours worked each work week, and/or the total overtime compensation for each work
2 week.

3    84.    Defendants are liable to Class Members for civil penalties, pursuant to California
4 Labor Code §§ 1174.5 and 2698, *et seq.*, in the amounts set forth therein.

5    85.    Wherefore, Class Members request relief as described below.

6 **THIRD CAUSE OF ACTION**

7 **STATE WAGE AND HOUR LAWS (by all plaintiffs against all defendants)**

8    86.    Class Members hereby incorporate by reference paragraphs 1 through 85 of this
9 Complaint as if fully set forth herein.

10    87.    Defendants willfully violated their obligations to properly compensate Class
11 Members under the wage laws of the states in which defendants do business including:

12        a.    Alaska Stat. § 23.10.050, *et seq.*;

13        b.    Arizona Rev. Stat. § 23-201, *et seq.*;

14        c.    Arkansas Code § 11-4-201, *et seq.*;

15        d.    Colorado Rev. Stat. § 8-6-101, *et seq.*;  Colorado Code Regs. § 1103-1, *et
16              seq.*;

17        e.    Connecticut Gen. Stat. § 31-58, *et seq.*;

18        f.    820 Illinois Comp. Stat. 105/1, *et seq.*;  820 Illinois Comp. Stat. 105/12(a);
19              820 Illinois Comp. Stat. 115/1, *et seq.*;

20        g.    Indiana Code § 22-2-2-1, *et seq.*;  Indiana Code § 22-2-2-4, *et seq.*;  Indiana
21              Code § 22-2-5-1, *et seq.*;  Indiana Code § 22-2-9-2, *et seq.*;

22        h.    Kansas Stat. § 44-1201, *et seq.*;

23        i.    Louisiana Rev. Stat. § 23:631, *et seq.*;

24        j.    Maryland Code, Lab. & Empl. § 3-401, *et seq.*;

25        k.    Massachusetts Gen. Laws Ch. 151, § 1, *et seq.*;  Massachusetts Gen. Laws
26              Ch. 149, § 148, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 100, *et seq.*;

27        l.    Michigan Comp. Laws § 408.381, *et seq.*;

28        m.    Minnesota Stat. § 177.21, *et seq.*;  Minnesota Stat. § 181.13, *et seq.*;

n.  Montana Code § 39-3-401, *et seq.*;

o.  Nevada Rev. Stat. § 608.005, *et seq.*;

p.  New Jersey Stat. § 34.11-56a, *et seq.*;

q.  New Mexico Stat. § 50-4-1, *et seq.*;

r.  New York Lab. Law § 160, *et seq.*;

s.  North Carolina Gen. Stat. § 95-25.1, *et seq.*;

t.  Ohio Rev. Code § 4111.01, *et seq.*;

u.  Oregon Rev. Stat. § 653.005, *et seq.*;

v.  43 Pennsylvania Stat. § 333.101, *et seq.*;  43 Pennsylvania Stat. § 206.3, *et seq.*;

w.  29 Laws of Puerto Rico §250, *et seq.*;

x.  Rhode Island Gen. Laws § 28-12-1, *et seq.*;

y.  South Carolina Code § 41-10-10, *et seq.*;

z.  Washington Rev. Code § 49.46.005, *et seq.*;

aa. West Virginia Code § 21-5C-1, *et seq.*;

bb. Wisconsin Stat. § 104.001, *et seq.*

88.    As a direct and proximate cause of defendants' violations of these statutes, Class Members have suffered damages.

89.    Wherefore, Class Members request relief as described below.

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT/RESTITUTION (by all plaintiffs against all defendants)

90.    Class Members hereby incorporate by reference paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.    Defendants have received financial gain at the expense of Class Members.

92.   Defendants have received that financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit at the expense of Class Members.

93.   Defendants' willful failure to pay overtime wages for work performed for defendants has unjustly enriched defendants to the detriment of Class Members.  As a result of this conduct, the common laws and state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia, imply a contract obligating defendants to make restitution to Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

94.   As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

95.   Wherefore, Class Members request relief as described below.

### FIFTH CAUSE OF ACTION
### CONVERSION (by all plaintiffs against all defendants)

96.   Class Members hereby incorporate by reference paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97.   At all relevant times, defendants had and continued to have a legal obligation to pay Class Members all earnings and overtime due.  The wages belong to Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for services performed are the property of the Class Members.

98.   In refusing to pay wages and overtime to Class Members, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Class Members for defendants' own use, purpose and benefit.  At the time the conversion took place, Class Members were entitled to immediate possession of the amount of wages and

overtime earned. As a result, Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial. This conversion was willful, oppressive, malicious, and fraudulent and/or done with conscious disregard of the rights of the Class Members. This conversion was concealed from Class Members.

99.    Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

100.    As a result of defendants' actions, Class Members were damaged and are entitled to all funds converted by defendants with interest thereon, all profits resulting from such conversion, and punitive or exemplary damages.

101.    Wherefore, Class Members request relief as described below.

## SIXTH CAUSE OF ACTION

### FRAUD AND DECEIT (by all plaintiffs against all defendants)

102.    Class Members hereby incorporate by reference paragraphs 1 through 101 of this Complaint as if fully set forth herein.

103.    Defendants, through their corporate publications and through statements of their agents, represented that wages would be paid legally and in accordance with defendants' obligations pursuant to applicable federal and state laws. Some examples include defendants' statements in their policy manuals that "[a]ll non-exempt employees will be compensated for all hours worked" and that defendants "will comply with all applicable federal, state and local laws. If any of the provisions of this policy conflict with any federal, state or local laws or regulations, then the laws or regulations will supersede the Company's policy in those specific locations."

1    104.   Defendants, however, at all times intended to violate applicable federal and state

2    laws by failing to pay Class Members their regular or statutorily required rate of pay for all

3    hours worked.

4    105.   These misrepresentations were material to the terms of Class Members'

5    employment contracts, and Class Members relied on the misrepresentations in agreeing to

6    accept and continue employment with defendants.  This reliance was reasonable, as Class

7    Members had every right to believe that defendants would abide by their obligations pursuant

8    to applicable federal and state law.

9    106.   Defendants willfully violated their obligations by committing fraud against Class

10   Members under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas,

11   California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas,

12   Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,

13   Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon,

14   Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia,

15   Washington, and West Virginia and are liable to Class Members.

16   107.   As a direct and proximate cause of the fraud committed by defendants, Class

17   Members did not receive the statutorily mandated wages for overtime and suffered damages.

18   108.   Defendants acted maliciously when they committed the wrongful acts which

19   constitute this cause of action such that it warrants the imposition of punitive and exemplary

20   damages.

21   109.   Wherefore, Class Members request relief as described below.

22                           **SEVENTH CAUSE OF ACTION**

23        **MISREPRESENTATION (by all plaintiffs against all defendants)**

24   110.   Class Members hereby incorporate by reference paragraphs 1 through 109 of this

25   Complaint as if fully set forth herein.

26   111.   In particular, Class Members incorporate and refer to paragraphs 103 through

27   105 above, regarding the material misrepresentations made by defendants.

28

112.   When defendants hired Class Members, they represented to Class Members that they would be fully compensated for all services performed, as more fully set forth above.

113.   There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice and policy of failing to pay their employees their regular or statutorily required rate of pay for all hours worked.

114.   Class Members relied upon defendants' representations by performing work and services for defendants.  This reliance was reasonable, as Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable federal and state law.

115.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia by misrepresenting to Class Members that they would be fully compensated for all services performed and are liable to Class Members.

116.   As a result of their reliance upon defendants' misrepresentations, Class Members suffered damages because they were not appropriately compensated with the regular or statutorily required rate of pay for all hours worked.

117.   As a direct and proximate result of defendants' negligent misrepresentation, Class Members suffered damages.

118.   Wherefore, Class Members request relief as described below.

## EIGHTH CAUSE OF ACTION

### BREACH OF CONTRACT (by all plaintiffs against all defendants)

119.   Class Members hereby incorporate by reference paragraphs 1 through 118 of this Complaint as if fully set forth herein.

120.   By entering into an employment relationship, defendants and each Class Member entered into a contract for employment.

121.   Each such contract included an implied or express term that defendants agreed to fulfill all of their obligations pursuant to applicable state and federal law.

122.   Defendants willfully breached the implied contract term by failing to pay Class Members for all of the time Class Members worked and by failing to pay Class Members their regular or statutorily required rate of pay for all hours worked.

123.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

124.   As a direct and proximate cause of defendants' breach of their contracts with Class Members, Class Members have suffered damages.

125.   Wherefore, Class Members request relief as described below.

### NINTH CAUSE OF ACTION

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(by all plaintiffs against all defendants)**

126.   Class Members hereby incorporate by reference paragraphs 1 through 125 of this Complaint as if fully set forth herein.

127.   The unwritten contract for at-will employment between Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would violate any state or federal law governing the employment relationship or any act that would deprive Class Members of the benefits of the contract.

128.   Defendants breached the implied covenant of good faith and fair dealing by failing to pay Class Members the wages and overtime that was due to Class Members.

129.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

130.   As a direct and proximate cause of defendants' breach of the implied covenant of good faith and fair dealing, Class Members have suffered damages.

131.   Wherefore, Class Members request relief as described below.

## TENTH CAUSE OF ACTION
### QUANTUM MERUIT (by all plaintiffs against all defendants)

132.   Class Members hereby incorporate by reference paragraphs 1 through 131 of this Complaint as if fully set forth herein.

133.   Defendants willfully violated their obligations by failing to pay Class Members for the reasonable value of the services performed by Class Members for defendants under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members under quantum meruit.

134.   As a direct and proximate cause of defendants' failure to pay Class Members for the reasonable value of services performed by Class Members for defendants, Class Members suffered damages.

135.   Wherefore, Class Members request relief as described below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ELEVENTH CAUSE OF ACTION

### UNLAWFUL BUSINESS PRACTICES (by all plaintiffs against all defendants)

136.   Class Members hereby incorporate by reference paragraphs 1 through 135 of this Complaint as if fully set forth herein.

137.   Defendants' failure to pay Class Members for all time worked constitutes unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professional Code § 17200, *et seq.*

138.   The conduct of defendants in failing to pay Class Members for all time worked constitutes and was intended to constitute unfair competition and unlawful unfair and fraudulent business acts and practices within the meaning of California Business and Professional Code § 17200, *et seq.*

139.   As a result of defendants' violations of California Business and Professional Code § 17200, *et seq.*, defendants have unjustly enriched themselves at the expense of Class Members.

140.   To prevent their unjust enrichment, defendants should be required, pursuant to California Business and Professional Code §§ 17203 and 17204, to disgorge their illegal gains for purpose of making full restitution to all injured Class Members.  Defendants should also be permanently enjoined from continuing their violations of California Business and Professional Code § 17200, *et seq.*

141.   Defendants willfully violated their obligations under the California Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.) and are liable to Class Members.

142.   Wherefore, Class Members request relief as described below.

## PRAYER FOR RELIEF

**WHEREFORE**, Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a)   an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)  an award of the value of Class Members' unpaid wages;

(c)  liquidated, compensatory, consequential and punitive damages;

(d)  an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Class Members' rights;

(e)  an award of pre- and post-judgment interest; and

(f)  such other and further legal or equitable relief as this Court deems to be just and appropriate.

**JURY DEMAND**

Class Members demand a jury to hear and decide all issues of fact.

Respectfully Submitted,

ROSEN, BIEN & GALVAN, LLP

Date: September 4, 2007

By: _Maria Morris_

Sanford Jay Rosen, State Bar No. 62566
Maria V. Morris, State Bar No. 223903
Lori E. Rifkin, State Bar No. 244081
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 433-6830

DOLIN, THOMAS & SOLOMON LLP
J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Justin Cordello, NY Attorney No. 4131447
Annette Gifford, NY Attorney No. 4105870
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

MARGOLIS EDELSTEIN
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
525 William Penn Place, Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256
Attorneys for Plaintiffs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **APPENDIX A**

**Due to local rules requiring that the caption fit onto a single page, not all plaintiffs have been listed in the caption.**

ROBERT CHERNETSKY, JEFFREY AYDELOTTE, ROBERT JONES, JAMES STICKLE, HENRY KLEIN, STACEY WEINSTEIN, JEFFREY SACHS, JOHNNY COLEMAN, JOHN KEATH, CHAD WICKHAM, CLAYTON CALLOWAY, EMILY MADDEN, LORI PHOENIX, JAMES CROUCH, JOHNNY JOHNSON, RICKIE HAMILTON, SANDY THOMAS, ROGER HUGO, ROBERT SHAW, BETTY KNIGHT, STEPHANIE RIGGS, CLAUDINE YOUNG, LARRY HAMMOCK, STEVEN TILLER, STROTHER FULCHER, MARY HOLDEN, JAMES STARK

**APPENDIX B**

**Due to local rules requiring that the caption fit onto a single page, not all plaintiffs have been listed in the caption.**

Consent forms are attached in this Appendix for the following individuals:

ROBERT A. ACEVEZ, FREDERICK R. ALDRICH, MERLIN ALEXANDER, KENNETH R. ALLEN, ELIAS ALVIDREZ, STEVEN A. ARNOLD, JAMES A. BAASCH, ROBERT BOWEN, MICHELE BREINDEL, MARC BROOKS, LAWRENCE F. CAMP, WILLIAM CASTELLARIN, DEBBIE K. CHATMAN (BRANDT), COREY W. CLARY, KATHRYN COSPER, DIANE CRAIG, JEFFREY A. DIGGS, KATHRYN DILDY, LOUIE DOMINGUEZ, MARC A. DUMONT, JAMES C. DURDEN, SCOTT J. ECKERT, STEPHEN ESCOBAR, LARRY FAIR, JOHN R. FERGUSON, DARIN D. FORAN, ROBERT IDEMOTO, KENNETH GIACONE, ELIZABETH M. GRANT, JUDONA M. GREEN, WILLIAM O. GWYN, LINDA T. HAGERTY, DOUGLAS HAZEN, CARRIE HENDERSON, JAMES HENDERSON, BERNARD M. HIRREL, JAMES HOLDER, RHAELYN HOLLAND, WILLIAM HUDSON III, JULIUS E. JOHNSON, WILTON KING, EDDIE KIRKPATRICK, W. SCOTT KOLWYCK, RONALD LANGLEY, FRANK LEWIS, CHARLES LOWTHER, SARAH MALMI, STEVEN L. MARTZ, EUGENIA C. MATTHEWS, NICK MCFERRAN, PAUL D. MEIZLER, HAROLD E. METCALF, MICHAEL NAPERALSKY, MARVIN L. NEVEU, SEAN J. OBERSKI, RICHARD E. PETERSEN, STEVEN PIERCE, J.D. POOL, MELISSA RAY, JACK L. REDDICK, DENNIS ROBERTSON, RICHARD E. SALHUS, JOHN SCHABLOSKI, DAVID SCHNELL, WARREN L. SEIZ, WILLIAM H. SHUFF, MARK SILEO, HOLLY SLAMOWITZ, MYRA S. SLOAN, MONECIA SMITH, JODY P. SPIESE, MIKAL STAMPKE, FRANCIS STEINHOFF, GREGORY STUMP, TORREY SUMMERS, WILLIAM T. SUTTER III, JOSEPH G. TAFOYA JR., STEPHEN TAKESIAN, JERRY TAWNEY, TORI TAYLOR, PHILIP R. TILLMAN, FLORINDA D. TREJO, GAYLE WALKER, DAVID W. WALLACE, ERIC WALLAND, JAMES WHALEY, GEORGE T. WHITE, BARRY WIEN, DAVID WYATT, JOHN S. ZALESKI