**EXHIBIT G**

1   David M. Daniels (SBN 170315)
2   Steven H. Gurnee (SBN 66056)
    Nicholas P. Forestiere (SBN 125118)
3   Gurnee & Daniels, LLP
    2240 Douglas Boulevard., Suite 150
4   Roseville, CA 95661-3875
    Telephone: (916) 797-3100
5   Facsimile: (916) 797-3131

6   Amy E. Dias (pro hac vice motion pending)
    aedias@jonesday.com
7   JONES DAY
    500 Grant Street, Suite 3100
8   Pittsburgh, PA 15219-2502
    Telephone: (412) 391-3939
9   Facsimile: (412) 394-7959

10  Matthew W. Lampe (pro hac vice motion pending)
    mwlampe@jonesday.com
11  JONES DAY
    325 John H. McConnell Boulevard, Suite 600
12  P.O. Box 165017
    Columbus, OH 43216-5017
13  Telephone: (614) 469-3939
    Facsimile: (614) 461-4198

14  Attorneys for Defendants
15  Alderwoods Group, Inc. and Service Corporation
    International

16

17              UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19

20  Deborah Prise, et al., on behalf of       Case No.
    themselves and all other employees
21  similarly situated,

22          Plaintiffs,

23      v.                                     **DEFENDANTS' NOTICE OF
                                               REMOVAL OF CIVIL ACTION
24  Alderwoods Group, Inc., et al.,            FROM STATE COURT
                                               [28 U.S.C. §§ 1332, 1441 (B) AND
25          Defendants.                        1446]**

26

27

28

COI-1377479v2

1                                              NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE ENTITLED COURT:

PLEASE TAKE NOTICE THAT Alderwoods Group, Inc. ("Alderwoods") and Service Corporation International ("SCI") (collectively "Defendants"), Defendants in the above-titled action, hereby remove this matter to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. The grounds for removal are as follows:

**<u>Compliance with Statutory Requirements</u>**

1.      On or about July 9, 2007, Plaintiffs filed a Class Action Complaint in the Superior Court of the State of California for the County of Alameda, Case No. RG 07334642. ("Complaint")  In their Complaint, Plaintiffs assert claims for violation of the California Labor Code, Failure to Maintain Proper Records (California Labor Code), Breach of Contract (under the laws of 38 states and territories), violation of State Wage and Hour Laws (under the laws of 38 states and territories), Unjust Enrichment (under the laws of 38 states and territories), Fraud and Deceit (under the laws of 38 states and territories), Quantum Meruit (under the laws of 38 states and territories), Negligent Misrepresentation (under the laws of 38 states and territories), Negligence (under the laws of 38 states and territories), and Unfair Competition (California Business and Professional Code § 17200 et seq.). Attached as Exhibit A is a true and correct copy of the Complaint.

2.      Plaintiffs served Defendants with the Summons ("Summons") and a copy of the amended Class Action Complaint on or after September 5, 2007. Defendants' removal of this action is timely because Defendants are removing this matter within 30 days of being formally served with a Summons and a copy of the Amended Complaint. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). Attached as Exhibit B are true and correct copies of the Summons, civil case cover sheet, ADR information package,

1    notice of hearing for a complex determination and case management conference,

2    minutes and order of September 7, 2007.

3          3.     Attached as Exhibit C is a true and correct copy of the Amended Class

4    Action Complaint received by the Defendants. *See* 28 U.S.C. § 1446(a). To the

5    Defendants' knowledge, there are no other process, pleadings, or orders in this

6    action than those set forth herein.

7          4.     Pursuant to 28 U.S.C. § 1446(d), Defendants promptly will provide

8    written notice of removal of the action to Plaintiffs, and promptly will file a copy of

9    this Notice of Removal with the Clerk of the Superior Court of the State of

10   California, County of Alameda.

## Intradistrict Assignment

13         5.     Plaintiffs filed this case in the Superior Court of California, County of

14   Alameda; therefore, this case properly may be removed to the Oakland or San

15   Francisco Divisions of the Northern District of California. *See* 28 U.S.C. §

16   1441(a); Civ. L. R. 3-2 (c), (d), 3-5(b).

## Jurisdiction

19         6.     This Court has original jurisdiction over this matter pursuant to 28

20   U.S.C. § 1332(d) (as amended by the Class Action Fairness Act of 2005, Pub. L.

21   No. 109-2, 119 Stat. 14 ("CAFA")). Under Section 1332(d), federal courts have

22   original diversity jurisdiction over a class action whenever: (1) "any member of a

23   [putative] class of plaintiffs is a citizen of a State different from any defendant," 28

24   U.S.C. § 1332(d)(2)(A), and (2) "the matter in controversy exceeds the sum or

25   value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2). Both

26   requirements are satisfied in this case.

27         7.     In this matter, diversity of citizenship exists because the Defendants

28   and at least one proposed class member are citizens of different states. *See* 28

U.S.C. § 1332(c)(1).  Alderwoods is a corporation incorporated under the laws of the State of Delaware and has its principal place of business in Ohio.  SCI is a corporation incorporated under the laws of the State of Texas and has its principal place of business in that State.  Plaintiff Deborah Prise was a citizen of Pennsylvania at the time Plaintiffs filed this action, and she still is.

8.     Further, though Defendants concede neither liability on Plaintiffs' claims nor the propriety or breadth of the class as alleged by Plaintiffs, the Complaint places in controversy a sum greater than $5,000,000.  *See* 28 U.S.C. § 1332(d)(2).  Plaintiffs claims defendants had a policy and practice of willfully not compensating them for all of their regular hours worked and overtime hours worked in excess of 8 hours a day and 40 hours a week.  Amended Complaint, ¶¶ 54,  56.  The Complaint does not allege a specific dollar amount in damages, but Plaintiffs seek unpaid wages, liquidated damages, compensatory damages, consequential damages, punitive damages and attorneys' fees on behalf of themselves and each of the purported class members. Amended Complaint, Prayer 20:25-26:27.

9.     Plaintiffs' claims in this case establish an amount in controversy that exceeds $5,000,000.  Specifically, as of September 2007, while Defendant SCI is a holding company with no employees, Defendants and/or their affiliates employ more than 15,000 non-exempt employees in the United States.  *See* Declaration of Judith Marshall ("Marshall Dec."), attached as Exhibit D, at ¶ 2.  Assuming an average hourly wage of $16.00 – by comparison, Plaintiffs Deborah Prise's and Heather Rady's most recent non-exempt wages were $18.60 and $17, respectively – these individuals would need to average only 14 hours of overtime during the relevant statutory periods to meet the minimum amount in controversy.

10.     Moreover, the amount in controversy in this matter is substantially higher than $5,000,000.  As noted, the information discussed in the preceding paragraph relates only to <u>current</u> employees.  Thus, the calculations do not include claims by former employees of Defendants and/or their affiliates included within

- 4 -

1   Plaintiffs' putative class definition, nor does it include potential damages related to

2   Plaintiffs' claims for penalties and other types of damages under the laws of 38

3   states and territories or any of the other claims set forth in the Amended Complaint.

4   Amended Compl., Ex. A, at ¶¶ 53, 87, 93, 99, 106, 115, 123, 129, and 133.

5           11.    In asserting the basis for diversity jurisdiction, Defendants do not

6   concede that Plaintiffs are entitled to overtime pay or that Plaintiffs ever worked

7   more than forty hours per workweek or more than eight hours per day.  Nor do the

8   Defendants concede that any or all non-exempt employees are class members or

9   that any class could be certified.

10          WHEREFORE, the above-titled action is hereby removed to this Court from

11  the Superior Court of the State of California, County of Alameda.

12  Dated:        October 5, 2007

13

14

15                                          By: _____
                                                Steven H. Gurnee
16                                              David M. Daniels
                                                Nicholas P. Forestiere
17
                                            Attorneys for Defendant
18                                          ALDERWOODS GROUP, INC. AND
                                            SERVICE CORPORATION
19                                          INTERNATIONAL

20

21

22

23

24

25

26

27

28

COI-1377479v2

_-5-_

Notice of Removal

**EXHIBIT H**

1    STEVEN H. GURNEE, ESQ. SB# 66056
     DAVID M. DANIELS, ESQ. SB# 170315
2    GURNEE & DANIELS LLP
     2240 Douglas Boulevard, Suite 150
3    Roseville, CA  95661-3805
     Telephone      (916) 797-3100
4    Facsimile      (916) 797-3131

5    AMY E. DIAS (pro hac vice motion pending)
     JONES DAY
6    500 Grant Street, Suite 3100
     Pittsburg, PA 15219-2502
7    Telephone:     (412) 391-3939
     Facsimile:     (412) 384-7959

8
     MATTHEW W. LAMPE (pro hac vice motion pending)
9    JONES DAY
     325 John H. McConnell Boulevard, Suite 600
10   Columbus, OH 43216-5017
     Telephone:     (614) 469-3939
11   Facsimile:     (614) 461-4198

12   Attorneys for Defendants
     ALDERWOODS GROUP, INC. and
13   SERVICE CORPORATION INTERNATIONAL

14

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17   Deborah Prise, et al., on behalf of themselves    )   No.  C 07-05140 EDL
     and all other employees similarly situated,       )
18                                                      )
                                                        )
19              Plaintiffs,                             )   **MEMORANDUM OF POINTS AND**
          vs.                                           )   **AUTHORITIES IN SUPPORT OF**
20                                                      )   **DEFENDANTS' MOTION TO DISMISS**
                                                        )
21   Alderwoods Group, Inc., et al.                     )   Date:    December 4, 2007
                                                        )   Time:    9:00 a.m.
22              Defendants.                             )   Ctrm:    E
                                                        )
23   _____         )   Trial Date:    None Set
                                                        )

24

25

26

27

28

**POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND ...................................................................................3

III.  ARGUMENT .......................................................................................4

    A.    Plaintiff's Rule 23 Class Allegations And Certification Request Should be
Dismissed for Failure to Satisfy the Requirements of Rule 23................................4

        1.    Plaintiffs Cannot Certify A Class Under Rule 23 Because they
Cannot Establish That There Are Common Issues Or That Common
Issues Predominate Where the court Would Be Required to Apply
The Laws of 38 Jurisdiction.........................................................................5

        2.    Plaintiffs Cannot Certify a Class Under Rule 23(b)(1) Because They
Cannot Establish A Risk of Inconsistent Judgments Nor That There
Is A Limited Pool of Funds.........................................................................9

        3.    Plaintiffs Cannot Certify A Class Under rule 23(b)(2) Because
Montegary Relief Predominates Over Any Request for Injunctive
Relief ...................................................................................................11

    B.    Plaintiffs' Rule 23 Claims Are Incompatible With A Section 216(b) Action And
Must Therefore Be Dismissed...............................................................................12

    C.    Plaintiffs' Claims Against SCI Should Be Dismissed Because SCI Is Not
An Employer and Is Note A Successor-In-Interest To Alderwoods'
Liability ...............................................................................................16

    D.    Plaintiffs' First and Second Causes of Action Should Be Dismissed Because
They Have Failed to Comply with California Labor Code Section 2699..............19

IV.    CONCLUSION..........................................................................................................21

TABLE OF AUTHORITIES

**Cases**

*Abarca v. Manheim Services Corp.*, No. 05 C 3873, 2006 U.S. Dist. LEXIS 13777, * 10-11 (N.D. Ill. March 24, 2006) ................................................................. 16

*Allison v. Citgo Pet. Corp.*, 151 F.3d 402, 411 (5th Cir. 1998) ...................................... 11, 12

*Caliber Bodyworks, Inc, v. Superior Court, (2005) 134 Cal.App.4th 365* ......................... 20

*Chao v. A-One Med. Serv., Inc.*, 346 F.3d 908, 920-923 (9th Cir. 2003) ......................... 14

*Church v. Consolidated Freightways, Inc.*, No. C-90-2290, 1991 WL 284083 (N.D. Cal. June 14, 1991) ........................................................................... 7, 9

*Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) .............................................. 8

*Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 448 (6th Cir. 2002 ........... 11

*Edwards v. City of Long Beach*, No. CV 05-8990, 2006 U.S. Dist. LEXIS 93141 at *10 (C.D. Cal. Dec. 12, 2006) .......................................................... 5, 13, 14, 15

*Glewwe v. Eastman Kodak Co.*, No. 05-CV-6462T, 2006 U.S. Dist. LEXIS 33449 at *7 (W.D.N.Y. May 25, 2006) ........................................................................... 1, 4

*Glewwe v. The Eastman Kodak Co.*, 2006 WL 1455476 (W.D.N.Y. May 25, 2006) .......... 6

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653-54 (C.D. Cal. Dec. 12, 1996) .................... 7

*Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist. LEXIS 56189 (D. N.J. Aug. 11, 2006) ........................................................................... 5, 13

*Himmelman v. Continental Cas. Co.*, No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5 (D.N.J. Aug. 11, 2006) ........................................................................... 4, 13

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989) ................................. 12, 15

*Hopkins v. Texas Mast Climbers, LLC*, No. H-04-1884, 2005 U.S. Dist. LEXIS 38721, *12 (S.D. Tex. Dec. 14, 2005) ........................................................................... 16

*In re Currency Conversion Fee Antitrust Litigation*, 230 F.R.D. 303, 312 (S.D.N.Y. 2004) 7

*In re Syncor ERISA Litig.*, 227 F.R.D. 338, 346 (C.D. Cal. 2005) ................................... 10

*In re: Paxil Litigation*, 212 F.R.D. 539 (C.D. Cal. Jan. 10, 2003) ...................................... 8

*Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975)..................................5, 16

*Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977) ("Rule 23 and § 216(b)
.................................................................................................................13

*LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975).......................13, 15

*Letouzel v. The Eastman Kodak Co.*, 2006 WL 1455478 (W.D.N.Y. May 25, 2006).........6

*Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004). ...............13

*Lewis v. Ward*, 852 A.2d 896, 906 (Del. Super. Ct. 2004) ...............................................18

*Luciano v. The Eastman Kodak Co.*, 2006 WL 1455477 (W.D.N.Y. May 25, 2006)..........6

*Madrigal v. Green Giant Co.*, No. C-78-157, 1981 U.S. Dist. LEXIS 15325 at *9 (E.D.
Wash. July 27, 1981)..............................................................................................13

*McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) .....................12, 14

*McDonnell Douglas Corp. v. U.S. Dist. Ct., C.D. Cal.,* 523 F.2d 1083, 1086 (9th Cir. 1975)
................................................................................................................10

*Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725 (S.D. Ohio 2006)..................16

*Mitsubishi Corp. v. Goldmark Plastic Compounds, Inc.*, 446 F. Supp. 2d 378 (W.D. Pa.
2006) .....................................................................................................................19

*Morgan v. Powe Timber Co.*, 367 F. Supp. 2d 1032, 1035 (S.D. Miss. 2005) ................18

*Nelsen v. King Cty.*, 895 F.2d 1248, 1255 (9th Cir. 1990). ...............................................11

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841 (1999) ......................................................10

*Otto v. Pocono Health Sys.,* 457 F.Supp.2d 522 (M.D. Pa. 2006 ........................4, 14, 15

*Parks Automotive Group, Inc. v. General Motors Corp.*, 237 F.R.D. 567 (D. S.C. 2006)...8

*Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No.
33 .........................................................................................................................18

*Sepulveda v. Wal-Mart Stores, Inc.*, 245 F.R.D. 229, 245 (C.D. Cal. 2006) ................9, 10

*Tran v. Le French Baker, Inc.*, No. C-94-0482 VRW, 1995 U.S. Dist. LEXIS 8371 (N.D.
Cal. 1995)..............................................................................................................14

*United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ......................................................18

*Zinser v. Accuflix Research Inst.*, 253 F.3d 1180, 1188-90 (9th Cir. 2001 ................2, 7, 10

*Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967)…........................................................ 19

**Statutes**

F.R.C.P. Rule 23 ............................................…...........1, 2, 3, 4, 5, 12, 13, 14, 15, 21

F.R.C.P. Rule 12(b)(6) .........................................…............................................. 4, 5, 12

F.R.C.P. Rule 12(f) ......................................................................................................... 12

F.R.C.P. Rule 23(a) ...................................................................................................5, 6, 9

F.R.C.P. Rule 23(a)(2) .......................................................................................2, 5, 9, 12

F.R.C.P. Rule 23(b) ........................................................................................................6, 9

F.R.C.P. Rule 23(b)(1) ..................................................................................2, 6, 9, 11

F.R.C.P. Rule 23(b)(2) ..............................................................................2, 6, 11, 12

F.R.C.P. Rule 23(b)(3) ...............................................................................................2, 5

F.R.C.P. Rule 23(c)(1) ...................................................................................................... 4

F.R.C.P. Section 23(b) ...............................................................................................5, 12

F.R.C.P. Section 23(d) .................................................................................................... 16

F.R.C.P. Section Rule 23(b)(1)(A) ...........................................................................9, 10

F.R.C.P. Section Rule 23(b)(1)(B) ...........................................................................9, 10

F.R.C.P. Section Rule 23(b)(3) .................................................................................5, 9

F.R.C.P. Section Rule 23(c) ........................................................................................... 16

Fair Labor Standards Act Section 216(b).......................................1, 2, 3, 4, 12, 14, 13, 15

Labor Code Section 2699 ........................................................................................19, 20

Labor Code Section 2699.3(a)(1)....................................................................................20

Labor Code Section 2699.3(a)(2)(A).............................................................................20

Labor Code Section 2699.3(a)(2)(B).............................................................................20

Labor Code Section 2699.5 ............................................................................................19

**Other Authorities**

5 Moore's Federal Practice § 23.42 ......................................................................11

Balotti and Finkelstein, The Delaware Law of Corporations and Business Organizations §
   9.7 (Aspen Law & Business 1998) ................................................................18

Civil Rights Act of 1964 ..................................................................................18

Civil Rights Act of 1991 ..................................................................................18

Equal Pay Act, 29 U.S.C. § 206 .........................................................................18

Private Attorney General Act of 2004....................................................................19

## I.  INTRODUCTION

On December 8, 2006, Plaintiffs Deborah Prise ("Prise") and Heather Rady ("Rady") filed a complaint in the U.S. District Court for the Western District of Pennsylvania alleging that Alderwoods Group, Inc. ("Alderwoods") and Service Corporation International ("SCI") violated the Fair Labor Standards Act and the wage and hour laws of 38 states and territories by failing to compensate employees for overtime, missed meal and break periods, and certain types of off-the-clock work that they allegedly performed.  Prise and Rady sought to certify both a collective action under FLSA Section 216(b), and a class action for their state claims under Rule 23 of the Federal Rules of Civil Procedure.  The District Court denied Plaintiffs' motions for collective action notification to purported SCI employees on two occasions, on April 19, 2007 and on September 6, 2007, finding that SCI was a holding company, and not an employer against whom a class could be certified.  Plaintiffs' Rule 23 claims were dismissed on June 8, 2007 when the District Court declined to assert supplemental jurisdiction over the state law claims.

Now, Prise and Rady, along with more than a hundred additional named plaintiffs (collectively "Plaintiffs"), seek to bring in this Court claims against both SCI and Alderwoods covering 38 states and territories, and seek to certify those claims in a single class action.  However, Plaintiffs can maintain neither their Rule 23 class claims nor their claims against SCI in this action and both should be dismissed from this case.

First, Plaintiffs' class claims must be dismissed.  It is well established that a court may dismiss class claims pursuant to Rule 12(b)(6) where a plaintiff cannot meet Rule 23's requirements.  *See, e.g., Glewwe v. Eastman Kodak Co.*, No. 05-CV-6462T, 2006 U.S. Dist. LEXIS 33449 at *7 (W.D.N.Y. May 25, 2006).  Here, Plaintiffs cannot certify a class under Rule

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page** 1

23(a)(2) or (b)(3) because common issues do not exist and the class method is not superior where the Court would be required to engage in a conflict of law analysis, and potentially interpret the laws, of 38 states and territories. *See, e.g., Zinser v. Accuflix Research Inst.*, 253 F.3d 1180, 1188-90 (9th Cir. 2001). Plaintiffs also cannot certify a class under Rule 23(b)(1) because they cannot establish that there is a risk of inconsistent judgments or a limited pool of funds. And Plaintiffs certainly cannot certify a class under Rule 23(b)(2) since their claims for compensatory damages clearly predominate over any request for injunctive relief because this Court would be required to perform individual damages calculations for each Plaintiff's wage and hour claims.

Plaintiffs' class claims also must be dismissed for the separate and independent reason that their request for Rule 23 certification is, to quote one court, "inherently incompatible" with their Section 216(b) FLSA collective action in the Western District of Pennsylvania. Courts routinely deny Rule 23 class certification where plaintiffs also seek collective action certification under Section 216(b) because Rule 23 class actions thwart the purpose of the collective action, and create confusion for class members who receive both opt-in and opt-out notices.

Second, Plaintiffs' claims against SCI must be dismissed in their entirety. As the U.S. District Court for the Western District of Pennsylvania determined, SCI is a holding company without any employees, and thus is not a proper defendant in this wage and hour litigation. In addition, Plaintiffs have no "successor-in-interest" claim against SCI because Alderwoods still exists and SCI is only a parent company of the entity that acquired Alderwoods.

Accordingly, for the reasons described in detail below, Defendants respectfully request that this Court issue an order dismissing and/or striking Plaintiffs' Rule 23 class certification allegations (specifically, First Amended Compl., ("FAC") ¶¶ 8, 50-58; and all references to "Class

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                                 **Page** 2

Members" and "Subclasses" contained in the First Amended Complaint), and dismissing SCI from this case with prejudice.

## II.     BACKGROUND

On December 8, 2006, Prise and Rady filed a complaint against Alderwoods and SCI in the U.S. District Court for the Western District of Pennsylvania alleging violations of the Fair Labor Standards Act of 1938 (Counts I-II) and the statutory and common laws of 38 states and territories, including California (Counts III-IX).   They brought their claims in the Western District of Pennsylvania based on their allegations that they were former employees of Alderwoods (but not SCI) in that judicial district and that the Defendants did business in that district.   They sought to bring a collective action pursuant to FLSA Section 216(b) for their FLSA claims and a Rule 23 class action for their state law claims.   On April 19, 2007, and again on September 6, 2007, the Honorable Judge Joy Flowers Conti denied Prise's and Rady's motion for FLSA collective action certification and expedited notice as to SCI employees, finding that SCI is a holding company that did not have any employees.   Judge Conti granted-in-part and denied-in-part their motion with respect to Alderwoods' employees, limiting notice to only seven job titles.   On June 8, 2007, Judge Conti dismissed Prise's and Rady's Rule 23 class allegations, finding that it was inappropriate to exercise supplemental jurisdiction over the state law claims where such claims would overwhelm the FLSA claims that were the basis for federal jurisdiction.

Prise and Rady, along with more than 100 other named plaintiffs filed the instant lawsuit on July 9, 2007.   In the First Amended Complaint, Plaintiffs acknowledge that "the state law claims asserted herein were previously dismissed from the United States District Court for the Western District of Pennsylvania on or about June 8, 2007." (FAC ¶ 2.)   Indeed, Plaintiffs allege here the exact same state law causes of action previously dismissed by the Western District of Pennsylvania

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page** 3

– including claims for state wage and hour law (third cause of action), unjust enrichment/restitution (fourth cause of action) fraud and deceit (sixth cause of action), misrepresentation (seventh cause of action) breach of contract (eighth cause of action) and quantum meruit (tenth cause of action) – plus claims for violations of the California Labor Code and Business and Professions Code. Plaintiffs' Complaint seeks to certify a class of the exact same employees that they sought to cover in their collective action in the Western District of Pennsylvania.

### III.   ARGUMENT

**A.     Plaintiffs' Rule 23 Class Allegations And Certification Request Should Be Dismissed For Failure To Satisfy The Requirements Of Rule 23.**

Plaintiffs' class allegations and certification request must be dismissed because it is clear, even at this stage of the litigation, that Plaintiffs' proposed class or subclasses cannot meet the requirements for a viable class pursuant to Rule 23. Although Plaintiffs have not yet moved for class certification, "courts may decide the issue of certification based on a review of the complaint prior to a party's motion to certify the proposed class. In fact, Rule 23(c)(1) encourages courts to 'at an early practicable time determine by order whether to certify the action as a class action.'" *Glewwe*, 2006 U.S. Dist. LEXIS 33449 at *7 (internal citations omitted). Accordingly, many district courts have appropriately dismissed deficient Rule 23 class allegations pursuant to Rule 12(b)(6). *See, e.g., Otto v. Pocono Health Sys.,* 457 F.Supp.2d 522 (M.D. Pa. 2006) (granting motion to dismiss plaintiffs' Rule 23 state law class claims under Rule 12(b)(6) on grounds that Rule 23 opt-out state law class action claims could not proceed accompanied by a § 216(b) opt-in action); *Himmelman v. Continental Cas. Co.,* No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5 (D.N.J. Aug. 11, 2006) (granting defendant's motion to dismiss/strike plaintiff's Rule 23 class

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page** 4

allegations because Rule 23 certification of state law claims is legally incompatible with FLSA claim); *Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist. LEXIS 56189 (D. N.J. Aug. 11, 2006) (granting defendant's Rule 12(b)(6) motion to dismiss Rule 23 class action allegations because they are incompatible with FLSA collective action).

To maintain a Rule 23 class action, a plaintiff must satisfy all the prerequisites of Rule 23(a). Fed.R.Civ.P. 23(a). Additionally, a plaintiff must fulfill the requirements for at least one of the three types of class actions enumerated in Rule 23(b). Fed.R.Civ.P. 23(b); *see also Edwards v. City of Long Beach*, No. CV 05-8990, 2006 U.S. Dist. LEXIS 93141 at *10 (C.D. Cal. Dec. 12, 2006). This is true even at this early stage of the litigation. *See, e.g., Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975) (affirming district court's order granting defendant's motion, brought at inception of the case, to dismiss plaintiff-appellants' class action and striking class allegations from their first amended complaint for failure to satisfy requirements of Rule 23(b)(3)).

Here, Plaintiffs seek to bring a class action based on claims brought under the wage and hour laws and common laws of 38 states and territories. Plaintiffs cannot establish that such a purported class meets the requirements of Rule 23.

> **1.      Plaintiffs Cannot Certify A Class Under Rule 23 Because They Cannot Establish That There Are Common Issues Or That Common Issues Predominate Where The Court Would Be Required To Apply The Laws Of 38 Jurisdictions.**

Federal courts throughout the country have held that class claims may not be certified pursuant to Rule 23(a)(2) or (b)(3) where they require the application of the laws of multiple states. The Western District of New York recently addressed the issue of multiple state claims in a class

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                                                   **Page** 5

action in three similar cases: *Glewwe v. The Eastman Kodak Co.*, 2006 WL 1455476 (W.D.N.Y. May 25, 2006), *Luciano v. The Eastman Kodak Co.*, 2006 WL 1455477 (W.D.N.Y. May 25, 2006), and *Letouzel v. The Eastman Kodak Co.*, 2006 WL 1455478 (W.D.N.Y. May 25, 2006) (collectively the "*Kodak* cases"). In the *Kodak* cases, like here, the plaintiffs sought damages under the FLSA and the wage and hour laws of over 30 states. In addition, the plaintiffs brought claims under the common laws of more than 40 states. In dismissing the state claims in each action, the Court held that the plaintiffs failed to establish both commonality under Rule 23(a) and the predominance of common issues as required by Rule 23(b)(3). *Glewee*, 2006 WL 1455476, at *2-4; *Luciano*, 2006 WL 1455477, at *2-5; *Letouzel*, 2006 WL 1455478, at *2-4. With respect to Rule 23(a), the court noted that each state's wage law had its "own peculiar requirements and defenses," and that adjudication of the wage and contract claims "would require the interpretations and application of several different laws of several different states and territories," and thus found that the plaintiffs' claims were not common to the class. *Glewwe*, 2006 WL 1455476, at *2; *Luciano*, 2006 WL 1455477, at * 2; *Letouzel*, 2006 WL 1455478, at *2. In addition, the court concluded that even if the plaintiffs could satisfy Rule 23(a), they failed to satisfy Rule 23(b), explaining that:

> [t]he employees at issue were employed in several different states at several different locations subject to different terms and conditions, and different state laws. Different remedies are available in each state, and the methods of overtime calculation vary from state to state. Because the issues common to the purported class members are actually subordinate to the issues unique to each of the individual members, I find that the plaintiffs failed to establish a basis for a class action pursuant to Rule 23(b)(3).

*Glewwee*, 2006 WL 1455476, at *3 (also stating that there was no risk of inconsistent adjudications as contemplated under Rule 23(b)(1) and that Rule 23(b)(2) was inapplicable to claims for damages); *Letouzel*, 2006 WL 1455478, at *3 (same). *See also Luciano*, 2006 WL

1455477, at *4 (same).

Notably, Courts in the Ninth Circuit also have held that a class is not certifiable under Rule 23 where the class action would require the analysis and application of the laws of multiple states. In *Zinser*, 253 F.3d at 1188-90, the Ninth Circuit Court of Appeals affirmed the District Court's denial of class certification where the class claims required the application of the laws of up to 48 states. In doing so, the Court of Appeals noted that common questions of fact and law do not predominate to the extent that "the laws of forty-eight states must be consulted to answer" questions related to class members' claims. *Id.* at 1189-90. Likewise, this Court previously has denied certification of state law claims involving multiple jurisdictions where the Court determined that certification of such claims would require application of California's choice of law principles to each state law claim. *Church v. Consolidated Freightways, Inc.*, No. C-90-2290, 1991 WL 284083 (N.D. Cal. June 14, 1991). In *Church*, this Court reasoned that:

> Given the number of causes of actions, the jurisdictions involved, and the presumed interest of each forum in regulating the employment relationships within its jurisdiction, the number of resolutions this Court must make even before approaching the merits of the action as to which law to apply is overwhelming. On this issue alone, then, a class action is not the superior method of adjudicating the interests implicated as determination of the choice of law issue would require numerous 'mini-trials' in and of itself.

*Id.* at *12.

Numerous other courts throughout the country also have found that the application of different states' laws militates against allowing a class action. *See e.g., Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653-54 (C.D. Cal. Dec. 12, 1996) (denying certification in a tort action and holding that even if the state laws were relatively similar, the fact that the Court had to reference so many laws weighed against class certification); *In re Currency Conversion Fee Antitrust Litigation*, 230 F.R.D. 303, 312 (S.D.N.Y. 2004) (denying certification because variations in state

laws governing fraud, unconscionability, bad faith and unjust enrichment predominated over any common issues); *Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) (denying certification of a nationwide class involving breach of express and implied warranty claims under 48 states' laws); *Parks Automotive Group, Inc. v. General Motors Corp.*, 237 F.R.D. 567 (D. S.C. 2006) (denying certification because individualized factual inquiries precluded adjudication of negligence, breach of warranty and indemnity claims on a class wide basis and several different contract laws, with different requirements and defenses, were involved).

Here, Plaintiffs assert claims for breach of contract, wage and hour violations, unjust enrichment, fraud and deceit, quantum meruit, negligent misrepresentation, and negligence under the laws of 38 states and territories. (FAC. third – tenth causes of action.) Plaintiffs' Complaint requires this Court to apply the laws governing these various claims in 38 different jurisdictions, all of which have an equal interest in regulating employment relationships. Given the different requirements and available defenses under each state law, common issues of fact and law do not exist, and they clearly do not predominate in this case.

Importantly, subclasses would not remedy the defects of the proposed class. For instance, in *In re: Paxil Litigation*, 212 F.R.D. 539 (C.D. Cal. Jan. 10, 2003), the plaintiffs proposed that putative class members in states with similar laws be grouped into subclasses. The Central District denied certification and held that the subclass approach did not create a manageable trial plan because the plaintiffs failed to show that the differences between the state laws (that were grouped together within the proposed subclasses) were nonmaterial. *Id.* at 543-45. The court also noted that there was a question of whether due process rights would be violated by combining different state laws to create a new legal standard for each subclass. *Id..* Moreover, as this Court previously has found, the burden of reviewing the different laws of 38 jurisdictions itself would require a

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL** **Page 8**

finding that the class method is not superior because of the numerous mini-trials that would be required simply to conduct the choice of law analysis. *See Church*, 1991 WL 284083 at *12.

At bottom, Plaintiffs' class certification request would require the Court to apply the laws of 38 different jurisdictions, all of which have an interest in regulating employment relationships. The potential analysis and application of so many different laws creates an unmanageable case, where any common issues would be severely outweighed by individual state law analyses. Plaintiffs thus cannot meet the requirements of Rule 23(a)(2), nor can they meet the requirements of Rule 23(b)(3).

> **2.      Plaintiffs Cannot Certify A Class Under Rule 23(b)(1) Because They Cannot Establish A Risk Of Inconsistent Judgments Nor That There Is A Limited Pool Of Funds.**

Plaintiffs' allegations likewise do not satisfy the requirements of Rule 23(b)(1). To satisfy Rule 23(b)(1), a plaintiff must satisfy either Rule 23(b)(1)(A), which allows for certification of a class (where Rule 23(a) is satisfied) if "the prosecution of separate actions ... would create a risk of ... inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class;" or Rule 23(b)(1)(B), which requires a showing of a risk of adjudications with respect to individual members of the class that would be dispositive of the interests of other members not parties to the adjudications or substantially impair their ability to protect their interests.    Fed.R.Civ.P. 23(b)(1)(A) & (B); *see also Sepulveda v. Wal-Mart Stores, Inc.*, 245 F.R.D. 229, 245 (C.D. Cal. 2006). Plaintiffs cannot meet either of these standards.

In this case, Plaintiffs do not, and indeed cannot, allege any facts in their Complaint that would establish a risk that separate actions would produce incompatible judgments. The Ninth

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                                 **Page** 9

Circuit in particular has adopted an "extremely conservative view" on whether this prong of the class test is met, requiring a finding that either: "(1) rulings in separate actions would subject defendant to incompatible judgments requiring inconsistent conduct to comply with the judgment; or (2) a ruling in the first of a series of separate actions will 'inescapably alter the substance of the rights of others having similar claims.'" *Sepulveda*, 245 F.R.D. at 245 (quoting *McDonnell Douglas Corp. v. U.S. Dist. Ct., C.D. Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975)). The Ninth Circuit also has held that Rule 23(b)(1)(A) certification should not be granted where the plaintiffs' claims are primarily for monetary relief. *See, e.g., Zinser*, 253 F.3d 1180; *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 346 (C.D. Cal. 2005).

Here, as discussed below, Plaintiffs primarily seek monetary damages and therefore this case falls outside of the limited circumstances where plaintiffs in the Ninth Circuit have been able to satisfy the Rule 23(b)(1)(A) requirement for class certification. *Id.* In addition, there is no risk of inconsistent judgments. This case primarily involves Plaintiffs' claims that they were required to perform off-the-clock work, missed meal and rest periods and overtime payment. To recover, Plaintiffs would be required to individually prove they were required to work while off-the-clock, were not given meal and rest periods and to establish their individual damages. The ability of one plaintiff to establish that she worked while off-the-clock will have no bearing on the claims of others, thus negating any concern over inconsistent judgments.

Nor can Plaintiffs succeed under Rule 23(b)(1)(B), which requires that Plaintiffs demonstrate that the case involves a "fund with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability." *Zinser*, 253 F.3d at 1197 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841 (1999)). Rule 23(b)(1)(B) applies only where there is a limited, fixed pool of money available to cover the

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                      **Page** 10

would-be class members' damages and where the claims brought contain no "unique facts or individual relationships with" the party opposing class certification.  5 Moore's Federal Practice § 23.42.  Because Plaintiffs do not, and cannot, claim that Defendants have only a limited pool of funds to satisfy the class claims, and because the claims seek individualized monetary damages, Plaintiffs' class allegations cannot satisfy the requirements of Rule 23(b)(1).

### 3.     Plaintiffs Cannot Certify A Class Under Rule 23(b)(2) Because Monetary Relief Predominates Over Any Request For Injunctive Relief.

Nor can Plaintiffs satisfy the requirements of Rule 23(b)(2).  It is well established, both in the Ninth Circuit and elsewhere, that class certification under Rule 23(b)(2) is not appropriate where the relief relates "exclusively or predominately to money damages."  *Nelsen v. King Cty.*, 895 F.2d 1248, 1255 (9th Cir. 1990).  *See also Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 448 (6th Cir. 2002) (reversing District Court's grant of class certification and finding that injunctive relief did not predominate); *Allison v. Citgo Pet. Corp.*, 151 F.3d 402, 411 (5th Cir. 1998) ("We, like nearly every other circuit, have adopted the position taken by the advisory committee that monetary relief may be obtained in a (b)(2) class action so long as the predominant relief sought is injunctive or monetary.")  Moreover, "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief...."  *Id.* at 413.  Where the requested compensatory relief requires individualized damages determinations, injunctive relief does not predominate and the class should not be certified under Rule 23(b)(2).  *Id.*. at 415.

There is no question here that Plaintiffs' request for compensatory relief predominates over any claims for injunctive relief.  Plaintiffs' claims in this case relate to off-the-clock work, and missed meal and rest periods for which they allege they were not compensated.  Indeed, Plaintiffs'

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                          **Page** 11

Complaint alleges seven different forms of off-the-clock work, plus a claim regarding improper calculation of overtime, that they claim pertain to employees in 38 jurisdictions. Compensatory damages for each of these claims, if proven, would have to be individually determined based on the number of hours each employee allegedly performed such work. Injunctive relief simply does not predominate where damages are dependent "on the intangible, subjective differences of each class member's circumstances." *Allison*, 151 F.3d at 415. Thus, Plaintiffs cannot seek certification under Rule 23(b)(2).

In short, Plaintiffs' cannot, under any circumstances, meet the requirements of Rule 23(a)(2) or (b). Thus, this Court should dismiss Plaintiffs' class action allegations.

**B.     Plaintiffs' Rule 23 Claims Are Incompatible With A Section 216(B) Action And Must Therefore Be Dismissed.**

This Court should strike Plaintiffs' class action allegations and certification request under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure for the separate and independent reason that Plaintiffs cannot maintain a Rule 23 opt-out action here while continuing to pursue their FLSA Section 216(b) opt-in collective action claims in the U.S. District Court for the Western District of Pennsylvania. Congress created the opt-in procedure under the FLSA "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989). Allowing a plaintiff to circumvent the opt-in requirement and bring unnamed parties into court by calling upon state statutes similar in substance to the FLSA that lack the opt-in requirement would undermine Congress's intent to limit these types of claims to collective actions. *See, e.g., McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004).

Consistent with the Congressional purpose behind the FLSA, courts in the Ninth Circuit have found Rule 23 class actions inherently incompatible with Section 216(b) claims. *See, e.g., Edwards*, 2006 U.S. Dist. LEXIS 93141; *Madrigal v. Green Giant Co.*, No. C-78-157, 1981 U.S. Dist. LEXIS 15325 at *9 (E.D. Wash. July 27, 1981) (dismissing plaintiffs' state law wage claims on the grounds that "their inclusion in the complaint as alternative remedies for enforcing the FLSA runs afoul of the intent of Congress in enacting the FLSA"). As the Court in *Edwards* explained, "allowing both a § 216(b) collective action and a Rule 23 class action to proceed would frustrate the purpose of requiring plaintiffs to affirmatively opt-in to § 216(b) collective actions." *Edwards*, 2006 U.S. Dist. LEXIS 93141 at *17. Indeed, "the policy behind requiring FLSA plaintiffs to opt-in to the class would largely be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement." *Id.* (quoting *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004). *See also Himmelman.*, No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5 (D.N.J. Aug. 11, 2006) (granting defendant's motion to dismiss/strike plaintiff's Rule 23 class allegations because state law class allegations are legally incompatible with FLSA claim); *Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist. LEXIS 56189, at *5 (D. N.J. Aug. 11, 2006) ("[T]hese two schemes are inherently incompatible."); *see also Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977) ("Rule 23 and § 216(b) class actions are 'mutually exclusive' and 'irreconcilable'"); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (observing that the "two types of class actions are <u>mutually exclusive</u> and <u>irreconcilable</u>" and stating "[i]t is crystal clear that §216(b) precludes pure Rule 23 class actions in FLSA suits" (emphasis added)).

In addition, allowing Plaintiffs to assert concurrent Rule 23 class claims here would defeat

Section 216(b)'s intent to afford individuals a substantive right to control the adjudication of their wage claims. As noted by one court:

> It is clear that Congress labored to create an opt-in scheme when it created Section 216(b) specifically to alleviate the fear that absent individuals would not have their rights litigated without their input or knowledge. To allow a Section 216(b) opt-in action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement.

*Otto v. Pocono Health Sys.*, 457 F Supp. 2d 522, 524 (M.D. Pa. 2006). Allowing a Rule 23 class to proceed here would effectively circumvent these substantive FLSA rights because any individuals who choose not to opt-in to the FLSA collective action will nevertheless have their wage claims resolved through the Rule 23 opt-out class action, and the collateral estoppel and/or *res judicata* doctrine will foreclose their ability to bring their own wage claims. *See e.g., Chao v. A-One Med. Serv., Inc.*, 346 F.3d 908, 920-923 (9th Cir. 2003) (dismissing the FLSA claims of one employee (out of 8) on *res judicata* grounds because she had previously filed state law overtime claims against her employer); *Tran v. Le French Baker, Inc.*, No. C-94-0482 VRW, 1995 U.S. Dist. LEXIS 8371 (N.D. Cal. 1995) (finding plaintiff's FLSA collective action claims barred by the *res judicata* effect of plaintiff's prior state administrative claim for unpaid overtime).

Indeed, Courts in the Ninth Circuit have held that a Rule 23 class action cannot be maintained simultaneously with an FLSA collective action because "confusion would result from requiring potential plaintiffs to both opt-in and opt-out of the claims in the suit." *Edwards*, 2006 U.S. Dist. LEXIS 93141 at *14-15. *See also McClain*, 222 F.R.D. at 577 (noting "the inherently contrasting nature of opt-in versus opt-out actions would create challenges were these actions to proceed simultaneously in federal court" because, among other things, it is confusing for a potential class member to receive a notice indicating that they must opt out of some claims and opt

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                                    **Page** 14

in to others).  Such confusion could result in the loss of rights by Rule 23 plaintiffs, whose interests Plaintiffs purport to represent, because those who do not opt-out of a Rule 23 class are bound by the judgment.  *See LaChapelle*, 513 F.2d at 288.

The decisions of this Court's sister courts, and courts nationwide, apply with equal force to Plaintiffs' Rule 23 claims in this case even though Plaintiffs' FLSA opt-in claims are being litigated in a different court.  Indeed, there is no substantive difference as far as the purpose and intent of the FLSA is concerned between bringing the incompatible opt-in and opt-out claims in the same court or in different courts.  Under either scenario, Plaintiffs' Rule 23 opt-out class claims defeat the purpose of the FLSA's opt-in procedure, whether the purpose is to protect the employer "from the burden of representative actions," *Hoffman-La Roche*, 493 U.S. at 173, or to provide absent class members with the power to control the adjudication of their claims, *Otto*, 457 F Supp. 2d at 523-24.  Regardless of whether the claims are brought in one court or two courts, Plaintiffs seek to backdoor Rule 23 claims to attain a broader class than would be attained under a Section 216(b) collective action, at the expense of both the Defendants and putative class members who choose not to opt in to the collective action.  Moreover, the potential for confusion that concerned the *Edwards* court is even greater in a case such as this because not only would putative class members receive conflicting opt-in and opt-out forms, but such forms would come from two separate courts, thus – understandably – increasing the potential for confusion for putative class members who may not understand why essentially the same claims are being litigated in two different federal courts, using two different class procedures, in different parts of the country.

Plaintiffs thus can neither meet the requirements for class certification under Rule 23, nor can they bring Rule 23 claims consistent with their Section 216(b) collective action claims.  Their class allegations and certification request therefore should be stricken from the Complaint.

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page** 15

According to the Ninth Circuit, it is appropriate to strike such allegations at the inception of the case. *See, e.g., Kamm*, 509 F.2d 205 (9th Cir. 1975) (affirming district court's order granting defendant's motion to dismiss brought at inception of case pursuant to Rule 23(c) and (d) and dismissing plaintiff-appellants' class action and striking class allegations from their first amended complaint on the ground that the alleged class action was not the superior method for resolving the alleged controversy).

**C.    Plaintiffs' Claims Against SCI Should Be Dismissed Because SCI Is Not An Employer And Is Not A Successor-In-Interest To Alderwoods' Liability.**

The Court should dismiss Plaintiffs' claims against SCI in their entirety because the Western District of Pennsylvania already has determined that SCI is a holding company without any employees and, as such, is not the employer of any of the Plaintiffs in this action. Indeed, it is well established that that holding companies are not employers in the context of wage and hour litigation. *See, e.g., Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725 (S.D. Ohio 2006) (holding that company with no employees or payroll is not an employer); *Hopkins v. Texas Mast Climbers, LLC*, No. H-04-1884, 2005 U.S. Dist. LEXIS 38721, *12 (S.D. Tex. Dec. 14, 2005) (dismissing claims against holding company and finding holding company not an "employer" under federal law); *Abarca v. Manheim Services Corp.*, No. 05 C 3873, 2006 U.S. Dist. LEXIS 13777, * 10-11 (N.D. Ill. March 24, 2006) (holding that a parent corporation is considered an employer under federal law "only where it exercises day-to-day control over the employees at issue.")

Here, the U.S. District Court for the Western District of Pennsylvania has found – on two occasions – that SCI is a holding company without any employees and, accordingly, that a class cannot be certified against it. Specifically, on April 19, 2007, Judge Joy Flowers Conti denied

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page** 16

conditional certification with respect to SCI, stating "I am not sure that I would be able to move forward and certify a class of employees if [SCI] is merely a holding company and really wouldn't have those type of [non-exempt] employees." (Apr. 19 Tr. at 8:18-21, attached hereto as Ex. "A".) However, Judge Conti allowed Prise and Rady to conduct additional discovery with respect to SCI and to renew their request for conditional certification, which they did on June 8, 2007.  At a hearing on that renewed motion on September 6, 2007, Judge Conti again held that SCI was not an employer and thus could not be responsible for any of the conduct alleged by Prise and Rady.  In so holding, Judge Conti rejected Prise's and Rady's arguments that SCI could be liable as a parent corporation, stating that "SCI as the corporate board is not doing something overtly to be involved in the management or the operation control of the business."  (Sept. 6 Tr. at 10-11, attached hereto as Ex. "B".)  Notably, all of the Plaintiffs in this lawsuit also have opted-in, or attempted to opt-in, as plaintiffs in the Pennsylvania lawsuit, meaning that Judge Conti's determination that SCI is not an employer applies directly to the Plaintiffs in this action.

Plaintiffs thus know, from their experience in the Western District of Pennsylvania, that SCI is not an employer and is not a proper defendant in their lawsuits seeking overtime pay from the Defendants.  Plaintiffs were fully motivated to litigate this issue in Pennsylvania and twice fully briefed and argued the question of SCI's status.  But, having been denied twice in Pennsylvania, Plaintiffs seek to take another bite out of the apple here, hoping for a different result in a different forum.  This Court should not countenance Plaintiffs' tactics, and should dismiss SCI from this case.

SCI also cannot be held liable, as alleged in the Complaint (FAC. ¶ 38), as "a successor-in-interest to Defendant Alderwoods' liability" because SCI did not enter into any merger transaction with Alderwoods.  Indeed, Plaintiffs have acknowledged in yet another case filed in the Western

District of Pennsylvania[1] that Alderwoods merged, not with SCI, but with an SCI subsidiary, Coronado Acquisition Corporation, on or about November 28, 2006. The surviving corporation is Alderwoods Group, Inc., a wholly-owned subsidiary of SCI. *See Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33 (Pls.' Mot. for Leave to File Second Amd. Compl. ¶ 9, attached hereto as Ex. "C".) This is a standard "triangle" merger, a "common" and "legitimate" form of merger under the law. *See Lewis v. Ward*, 852 A.2d 896, 906 (Del. Super. Ct. 2004); *see also Morgan v. Powe Timber Co.*, 367 F. Supp. 2d 1032, 1035 (S.D. Miss. 2005) (quoting Balotti and Finkelstein, The Delaware Law of Corporations and Business Organizations § 9.7 (Aspen Law & Business 1998), explaining "A triangle merger permits A, the acquiring company, to acquire control of T, the target company, without A being a constituent corporation, by forming a new Delaware subsidiary, (S), into which T is merged.").

Plaintiffs' claim that SCI is liable as a successor-in-interest to Alderwoods' liability based on this transaction is contrary to basic corporate law principles. A parent corporation, except in extraordinary circumstances, is not liable for its subsidiaries' actions. As the United States Supreme Court has noted, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Likewise, the "[m]ere ownership of a subsidiary does not justify the imposition of liability on a parent corporation. Such liability only is appropriate 'when the court must prevent fraud, illegality or injustice, or when

---

[1] On November 6, 2006, Plaintiffs Prise and Rady filed a Complaint in the U.S. District Court for the Western District of Pennsylvania, Court, Civil Action No. 2:06-cv-01470-JFC, against Alderwoods Group, Inc. and certain Alderwoods subsidiaries alleging violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) *at seq.* and the Equal Pay Act, 29 U.S.C. § 206.

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                      **Page** 18

recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.'" *Mitsubishi Corp. v. Goldmark Plastic Compounds, Inc.*, 446 F. Supp. 2d 378 (W.D. Pa. 2006) (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967)).

Plaintiffs here have not alleged any form of fraud, illegality or injustice that would require SCI to be a party to this lawsuit. To the contrary, Alderwoods merged with an SCI subsidiary and continues to exist as a corporation, separate and distinct from SCI. As a matter of law, SCI, as a parent company, cannot be liable as a successor-in-interest to Alderwoods. Thus, to the extent that Plaintiffs assert claims against SCI as a "successor-in-interest" to Alderwoods (FAC. ¶ 19), those claims must be dismissed.

### D.    Plaintiffs' First and Second Causes of Action Should Be Dismissed Because They Have Failed to Comply with California Labor Code Section 2699.

Plaintiffs' First and Second causes of action allege technical violations of the California Labor Code which are subject to the provisions of Labor Code Section 2699, the "Labor Code Private Attorneys General Act of 2004" (hereinafter "PAGA"). The First and Second causes of action must necessarily fail because Plaintiffs have not and cannot plead and prove their compliance with PAGA.

The recently enacted Private Attorney General Act of 2004, allows aggrieved employees to bring civil actions to recover penalties for violations of the Labor Code when the Labor Commissioner fails to act. A civil action seeking civil remedies available under the Act, which are enumerated in Section 2699.5 may not be commenced (or a pending action amended to include a Section 2699 claim) until the following statutory requirements have been met:

////

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                                 **Page** 19

A. ***Written notice to the employer and the state:***  The aggrieved party must give written notice *by certified mail* to the employer and the Labor and Workforce Development agency specifying the Labor Code provisions violated, 'including the facts and theories to support the alleged violation.' Lab C § 2699.3(a)(1); and,

B. ***Agency Action:***  If the Agency does not intend to investigate the alleged violation, it must so notify the aggrieved employee and the employer by certified mail within 30 days after the employee's was postmarked.  The aggrieved employee may file a §2699 action upon receipt of the Agency's notice; or if the Agency fails to provide notice, within 33 days after the employee's notice was postmarked. Lab.C. §2699.3(a)(2)(A).  If the Agency intends to investigate the alleged violation, it must so notify the aggrieved employee and the employer with 33 days after the employee's notice was postmarked.   It then has 120 days to issue a citation.   Lab.C. § 2699.3(a)(2)(B).

*See also, Caliber Bodyworks, Inc, v. Superior Court, (2005) 134 Cal.App.4[th] 365.*

*[holding that causes of action, and portions thereof, seeking civil remedies available under the Act were subject to notice and exhaustion perquisites under the Act.]*

Here, Plaintiffs First and Second causes of action seek civil penalties which are subject to the PAGA notice and exhaustion requisites.  Plaintiffs have not and cannot plead that they have properly satisfied these statutory prerequisite prior to filing their civil action.   They have not provided written notice to either defendant, or the State.  Consequently, Plaintiffs cannot plead that the State has taken any action in response to alleged Labor Code violations by defendants.  The First and Second cause of action must therefore be dismissed.

////

////

////

////

////

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                                    **Page** 20

### IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court issue an order dismissing and/or striking Plaintiff's Rule 23 class certification allegations (specifically, FAC., ¶¶ 8, 50-58; and all references to "Class Members" and "Subclasses" contained in the Complaint), and dismissing SCI with prejudice.

Dated:   October 12, 2007                                    GURNEE & DANIELS LLP


                                        By _____ s/Steven H. Gurnee _____
                                                  STEVEN H. GURNEE, ESQ.
                                                  DAVID M. DANIELS, ESQ.
                                                  Attorneys for Defendants
                                                  ALDERWOODS GROUP, INC. and
                                                  SERVICE CORPORATION
                                                  INTERNATIONAL

**EXHIBIT I**

1   Sanford Jay Rosen, SBN 62566
    Maria V. Morris, SBN 223903
2   Lori E. Rifkin, SBN 244081
    ROSEN, BIEN & GALVAN, LLP
3   315 Montgomery Street, Tenth Floor
    San Francisco, CA 94104
4   Telephone: (415) 433-6830;
    Facsimile: (415) 433-7104
5   srosen@rbg-law.com
6
    [Additional Counsel Listed on Following Page]
7
    Attorneys for Plaintiffs
8

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12  WILLIAM HELM, DEBORAH PRISE,          Case No. C 07-05140 MJJ
    HEATHER P. RADY, et al., on behalf of
13  themselves and all other employees and former
    employees similarly situated,
14
                    Plaintiffs,             **Notice of Voluntary Dismissal**
15
          v.
16
    SERVICE CORPORATION NTERNATIONAL
17  and ALDERWOODS GROUP, INC.,
18            Defendants.

19

20

21

22

23

24

25

26

27

28

1   Additional Attorneys for Plaintiffs who have not yet applied to be
    admitted *pro hac vice*:
2
3   J. Nelson Thomas, NY Attorney No. 2579159
    Patrick J. Solomon, NY Attorney No. 2716660
    Michael J. Lingle, NY Attorney No. 3925765
4   Justin Cordello, NY Attorney No. 4131447
    Annette Gifford, NY Attorney No. 4105870
5   DOLIN, THOMAS & SOLOMON LLP
6   693 East Avenue, Rochester, NY 14607
    Telephone: (585) 272-0540;
7   Facsimile:  (585) 272-0574
    nthomas@theemploymentattorneys.com
8
    Charles H. Saul, PA SBN 19938
9   Liberty J. Weyandt, PA SBN 87654
10  MARGOLIS EDELSTEIN
    525 William Penn Place, Suite 3300
11  Pittsburgh, PA 15219
    Telephone: (412) 281-4256;
12  Facsimile: (412) 642-2380
    csaul@margolisedelstein.com
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
## NOTICE OF VOLUNTARY DISMISSAL
3
   Pursuant to Federal Rule of Civil Procedure 41(a)(1), it is hereby stipulated that
4
plaintiffs in the above-captioned action hereby discontinue their claims without prejudice.
5
6                                              Respectfully Submitted,
7                                              ROSEN, BIEN & GALVAN, LLP
8
9   Dated: November 28, 2007                   By:  /s/ Lori Rifkin
10                                             Sanford Jay Rosen, State Bar No. 62566
                                               Maria V. Morris, State Bar No. 223903
11                                             Lori E. Rifkin, State Bar No. 244081
                                               315 Montgomery Street, Tenth Floor
12                                             San Francisco, CA 94104
                                               Telephone: (415) 433-6830
13
                                               DOLIN, THOMAS & SOLOMON LLP
14                                             J. Nelson Thomas, NY Attorney No.
                                               2579159
15                                             Patrick J. Solomon, NY Attorney No.
                                               2716660
16                                             Michael J. Lingle, NY Attorney No.
                                               3925765
17                                             Justin Cordello, NY Attorney No. 4131447
                                               Annette Gifford, NY Attorney No. 4105870
18                                             693 East Avenue
                                               Rochester, NY 14607
19                                             Telephone: (585) 272-0540
20                                             MARGOLIS EDELSTEIN
                                               Charles H. Saul, PA State Bar No.19938
21                                             Liberty J. Weyandt, PA State Bar No.
                                               87654
22                                             525 William Penn Place, Suite 3300
                                               Pittsburgh, PA 15219
23                                             Telephone: (412) 281-4256
                                               Attorneys for Plaintiffs
24
25
26
27
28

**EXHIBIT J**

1  Sanford Jay Rosen, State Bar No. 62566
   Maria V. Morris, State Bar No. 223903
2  Lori E. Rifkin, State Bar No. 244081
   ROSEN, BIEN & GALVAN, LLP
3  315 Montgomery Street, Tenth Floor
   San Francisco, CA 94104
4  Telephone: (415) 433-6830
   Facsimile: (415) 433-7104
5  srosen@rbg-law.com

6  Attorneys for Plaintiffs

7  [Additional Counsel Listed on Following Page]

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO/OAKLAND DIVISION

12
   CLAUDE BRYANT, CRAIG FULCHER,        CV  07       5696
13 SANFORD LEVINE and THOMAS            Case No.
   THOMPSON,                            **COMPLAINT— Collective Action**
14 on behalf of themselves              **DEMAND FOR JURY TRIAL**
   and all employees similarly situated,

15         Plaintiffs,

16                    - vs -

17 ALDERWOODS GROUP, INC., SERVICE
   CORPORATION INTERNATIONAL, SCI
18 FUNERAL AND CEMETERY PURCHASING
   COOPERATIVE, INC., SCI EASTERN
19 MARKET SUPPORT CENTER, L.P., SCI
   WESTERN MARKET SUPPORT CENTER,
20 L.P. a/k/a SCI WESTERN MARKET
   SUPPORT CENTER, INC., SCI HOUSTON
21 MARKET SUPPORT CENTER, L.P., JANE D.
   JONES, GWEN PETTEWAY, THOMAS
22 RYAN, PAUL A. HOUSTON and CURTIS
   BRIGGS,
23
          Defendants.
24

25

26

27

28

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1  Additional Attorneys for Plaintiffs, who will
   submit applications for admission *pro hac vice*:
2
   Patrick J. Solomon, NY Attorney No. 2716660
3  Annette Gifford, NY Attorney No. 4105870
   DOLIN, THOMAS & SOLOMON LLP
4  693 East Avenue
   Rochester, NY 14607
5  Telephone: (585) 272-0540
   Facsimile: (585) 272-0574
6  psolomon@theemploymentattorneys.com

7  Charles H. Saul, PA State Bar No.19938
   Liberty J. Weyandt, PA State Bar No. 87654
8  MARGOLIS EDELSTEIN
   525 William Penn Place
9  Suite 3300
   Pittsburgh, PA 15219
10 Telephone: (412) 281-4256
   Facsimile: (412) 642-2380
11 csaul@margolisedelstein.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COLLECTIVE ACTION COMPLAINT

**AND NOW** come Plaintiffs Claude Bryant, Craig Fulcher, Sanford Levine, Thomas Thompson, et al., on behalf of themselves and all others similarly situated, by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP, and Margolis Edelstein and file the following Collective Action Complaint:

## I.   INTRODUCTION

1.     This is a proceeding for declaratory relief and monetary damages to redress the deprivation of rights secured to Plaintiffs Claude Bryant, Craig Fulcher, Sanford Levine, Thomas Thompson, et al., as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

## II.   JURISDICTION AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S. C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. §2201, and under 29 U.S.C. §216 (b).

3.     Venue is appropriate in the Northern District of California since some of the unlawful acts alleged were committed in this district and because defendants conduct business in this district.  Venue is proper before this Court under 28 U.S.C. § 1391(b).

4.     Intradistrict Assignment.   This is a nationwide collective action notification involving violations which occurred across the country, including some which occurred in the Northern District of California.

## III.   PARTIES

### A.   Plaintiffs

5.     The plaintiffs ("Plaintiffs") are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  Plaintiffs expressly include each individual identified

1

in the caption, together with any similarly situated current or former employees who may file consent forms to opt-in to this collective action.

6. Attached to this complaint in its Appendix A are the current Plaintiffs' consent forms to opt-in to this collective action. Each of these individuals, as well as any individual who opts-in to this action after the date of this complaint has full party status pursuant to 29 U.S.C. § 216 (b).

7. All of the defendants except for Alderwoods Group, Inc. are liable to all plaintiffs either directly as an employer or as successor-in-interest to plaintiffs' direct employer.

8. Defendant Alderwoods Group, Inc. ("Alderwoods") is liable to those plaintiffs who worked at funeral locations owned by Alderwoods and/or its affiliates (the "Alderwoods Employees").

**B. Defendants**

9. Defendant Alderwoods Group, Inc. ("Alderwoods") is a corporation with its headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202.

10. Defendant Service Corporation International ("SCI") is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019.

11. Defendant SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI Cooperative") is a Delaware corporation which is owned by SCI.

12. Defendant SCI Eastern Market Support Center, L.P. ("SCI Eastern") is a limited partnership which is owned by SCI.

13. Defendant SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc. ("SCI Western") is a limited partnership or corporation which is owned by SCI.

14. Defendant SCI Houston Market Support Center, L.P. ("SCI Houston") is a limited partnership which is owned by SCI.

15. Defendants SCI Eastern, SCI Western and SCI Houston are referred to herein collectively as the "SCI Support Centers."

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

16. The SCI Support Centers and the SCI Cooperative are referred to herein collectively as the "SCI Managing Entities."

17. Defendants Alderwoods, SCI, and the SCI Managing Entities are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

18. Upon information and belief, the SCI Managing Entities conduct human resources and other employment-related functions for defendants and their funeral locations.

19. Upon information and belief, the SCI Support Centers provide all executive, management, administrative, accounting, data processing, and human resources services for defendants and their funeral locations.

20. Upon information and belief, the field personnel and training departments of the SCI Managing Entities provide on-site training for defendants and their funeral locations.

21. Upon information and belief, the SCI Cooperative, through agreements with the SCI Support Centers, provides additional human resources services and support for defendants and their funeral locations.

22. Upon information and belief, the SCI Cooperative creates and distributes employee handbooks for defendants and their funeral locations.

23. Upon information and belief, the SCI Cooperative provides Dignity University training for defendants and their funeral locations.

24. Upon information and belief, the SCI Cooperative produces communications to employees of defendants and their funeral locations, including the weekly newsletter "Frontline," and the intranet site "Global Village."

25. Upon information and belief, the SCI Cooperative administers benefit plans for the employees and has contracted with third-party benefit providers to respond to questions related to day-to-day benefits services, such as local provider questions, access to online services, and benefits provider contact information.

26. Upon information and belief, the SCI Managing Entities facilitate implementation of corporate strategies, policies and procedures.

3

27.     Upon information and belief, the SCI Managing Entities are directly involved in the operations of defendants' business with respect to plaintiffs' employment.

28.     Upon information and belief, the SCI Managing Entities exercise or have exercised managerial responsibilities and substantial control over the terms of plaintiffs' employment.

29.     Upon information and belief, the SCI Managing Entities provided management services to SCI and its affiliates in relation to plaintiffs' employment.

30.     Upon information and belief, the SCI Managing Entities are not completely disassociated from SCI and its affiliates with respect to plaintiffs' employment.

31.     Upon information and belief, the SCI Managing Entities are controlled by or are under common control with SCI and its affiliates.

32.     Defendant Jane D. Jones has acted as Vice President of Human Resources for defendant SCI since 2005.

33.     Upon information and belief, Ms. Jones oversees human resources, training and education, and payroll and commission services – activities that assist approximately 20,000 employees in North America.

34.     Defendant Gwen Petteway has acted as Human Resources Director of defendant SCI Houston since February 2005.

35.     Upon information and belief, Ms. Petteway's job responsibilities include providing and/or supervising human resources services to the subsidiary and affiliate companies of SCI, as well as training and benefits provided to those companies.

36.     Upon information and belief, Ms. Petteway's job responsibilities include providing and/or supervising day-to-day human resources service and support for defendants' funeral home locations.

37.     Defendant Thomas Ryan has acted as President and Chief Executive Officer of SCI since in or around 2003.

38.     Upon information and belief, Mr. Ryan's responsibilities include actively managing SCI.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

39.    Defendant Paul A. Houston is President, Chief Executive Officer and a Director of Alderwoods.

40.    Upon information and belief, Mr. Houston has been Chief Executive Officer of Alderwoods since in or around 2002.

41.    Upon information and belief, Mr. Houston's responsibilities include actively managing Alderwoods.

42.    Defendant Curtis Briggs is President and/or Vice President of various entities owned by SCI.

43.    Upon information and belief, Mr. Briggs is:

a.  Vice President for the General Partner of SCI Eastern

b.  Vice President for the General Partner of SCI Houston

c.  President and/or Vice President of the SCI Cooperative

d.  President and/or Vice President of SCI Western

44.    Upon information and belief, Mr. Briggs's responsibilities include actively managing the SCI Managing Entities.

45.    Defendants Jones, Petteway, Ryan, Houston and Briggs are referred to herein collectively as the "Individual Defendants."

**SCI and the SCI Managing Entities Are Liable to Plaintiffs**

46.    Plaintiffs are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked. Plaintiffs expressly include each individual identified in the caption, together with any similarly situated current or former employees who may file consent forms to opt-in to this collective action. Any individual who opts-in to this action has full party status pursuant to 29 U.S.C. § 216 (b).

47.    At all relevant times, SCI and the SCI Managing Entities are or have been Plaintiffs' employers.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

48. At all relevant times, SCI and/or the SCI Managing Entities have suffered or permitted Plaintiffs to perform work for them.

49. At all relevant times, SCI and/or the SCI Managing Entities are or have been liable for the employment of Plaintiffs.

50. At all relevant times, Plaintiffs have acted directly or indirectly in the interest of SCI and/or the SCI Managing Entities.

51. At all relevant times, SCI and/or the SCI Managing Entities have operated locations, either directly or through the SCI Affiliates, and therefore are the employers of Plaintiffs who are or were employed at all locations.

52. Collectively, SCI, the SCI Affiliates, the SCI Managing Entities and their funeral service locations comprise a single, integrated enterprise, as they perform related activities through unified operation or common control for a common business purpose.

53. Upon information and belief, SCI and the SCI Affiliates exercise complete dominion and control over the various funeral service locations.

54. At all relevant times, Plaintiffs are or have been jointly employed by SCI, the SCI Affiliates and/or the SCI Managing Entities at their funeral service locations.

55. At all relevant times, the funeral service locations of SCI, the SCI Affiliates and/or the SCI Managing Entities are or have been the Plaintiffs' employer.

56. Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities operate interrelated business operations.

57. At all relevant times, business operations of the funeral locations are or have been centrally controlled by SCI and/or the SCI Managing Entities.

58. Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities exercise common control of labor relations.

59. Upon information and belief, SCI and/or the SCI Managing Entities own all of the funeral service locations and exercise financial control over the business operations of those locations.

60.    At all relevant times, SCI and/or the SCI Managing Entities maintain or have maintained centralized control of employment relations.

61.    At all relevant times, the human resource functions of the funeral service locations report or have reported directly or indirectly to SCI and/or the SCI Managing Entities.

62.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities operate under common management.

63.    Upon information and belief, SCI and/or the SCI Managing Entities exercise common management of the various funeral locations.

64.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities have common ownership and financial control.

65.    In light of the economic realities of the enterprise operated by SCI, the SCI Affiliates and the SCI Managing Entities, SCI and the SCI Managing Entities are joint employers of all Plaintiffs.

66.    At all relevant times, Plaintiffs' work simultaneously benefited all of SCI, the SCI Affiliates and the SCI Managing Entities.

67.    At all relevant times, the SCI Managing Entities acted directly or indirectly in the interest of SCI in relation to Plaintiffs.

68.    At all relevant times, SCI acted directly or indirectly in the interest of the SCI Managing Entities in relation to Plaintiffs.

69.    SCI and the SCI Managing Entities are not completely disassociated with respect to the employment of Plaintiffs and the SCI Managing Entities are controlled by and/or are under common control with SCI.

70.    In light of the economic realities of SCI, the SCI Affiliates and the SCI Managing Entities' enterprise, at all relevant times SCI and the SCI Managing Entities were integrated enterprises, employers, joint employers and/or single employers of Plaintiffs for purposes of federal laws.

*All Defendants Are Liable to the Alderwoods Employees*

71.     All defendants are liable to those plaintiffs who worked at funeral locations owned by Alderwoods and/or its affiliates prior to the time Alderwoods was acquired by defendant Service Corporation International (the "Alderwoods Employees"), either directly or as successors-in-interest.

72.     At all relevant times, Alderwoods has been the employer of the Alderwoods Employees.

73.     At all relevant times, Alderwoods has suffered or permitted the Alderwoods Employees to perform work for Alderwoods.

74.     At all relevant times, Alderwoods has been liable for the employment of the Alderwoods Employees.

75.     At all relevant times, the Alderwoods Employees have acted directly or indirectly in the interest of Alderwoods.

76.     At all relevant times, Alderwoods has operated locations, either directly or through the Alderwoods Affiliates, and therefore is the employer of Plaintiffs who were employed at all Alderwoods locations.

77.     Collectively, Alderwoods, the Alderwoods Affiliates and their funeral service locations comprise a single, integrated enterprise, as they perform related activities through unified operation or common control for a common business purpose.

78.     Upon information and belief, Alderwoods has exercised complete dominion and control over the Alderwoods funeral service locations.

79.     At all relevant times, the Alderwoods Employees have been jointly employed by Alderwoods and the Alderwoods Affiliates at their funeral service locations.

80.     At all relevant times, the funeral service locations of Alderwoods and the Alderwoods Affiliates have been the Alderwoods Employees' employer.

81.     Upon information and belief, Alderwoods and the Alderwoods Affiliates operate interrelated business operations.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

82.   At all relevant times, business operations of the funeral locations have been centrally controlled by Alderwoods.

83.   Upon information and belief, Alderwoods has exercised common control of labor relations.

84.   Upon information and belief, Alderwoods has owned all of the Alderwoods funeral service locations and has exercised financial control over the business operations of those locations.

85.   At all relevant times, Alderwoods has maintained centralized control of employment relations.

86.   At all relevant times, the human resource functions of the Alderwoods funeral service locations have reported directly or indirectly to Alderwoods.

87.   Upon information and belief, Alderwoods and the Alderwoods Affiliates operate under common management.

88.   Upon information and belief, Alderwoods has exercised common management of the various Alderwoods funeral home locations.

89.   Upon information and belief, Alderwoods and the Alderwoods Affiliates have common ownership and financial control.

90.   In light of the economic realities of the enterprise operated by Alderwoods and the Alderwoods Affiliates, Alderwoods is a joint employer of the Alderwoods Employees.

91.   At all relevant times, the Alderwoods Employees' work simultaneously benefited Alderwoods and the Alderwoods Affiliates.

92.   At all relevant times, the Alderwoods Affiliates acted directly or indirectly in the interest of Alderwoods in relation to the Alderwoods Employees.

93.   Alderwoods and the Alderwoods Affiliates have not been completely disassociated with respect to the employment of the Alderwoods Employees and the Alderwoods Affiliates have been controlled by and/or under common control with Alderwoods.

94.   Although SCI and the SCI Managing Entities were not the Alderwoods Employees' direct employers at the time of some of the FLSA violations alleged herein,

9

1 | Plaintiffs assert that SCI and the SCI Managing Entities, as further described below, are liable for
2 | all violations alleged, either as an employer or under a successor liability theory.

3 |      95.     Upon information and belief, Coronado Acquisition Group ("Coronado"), at
4 | relevant times hereto, was a wholly owned subsidiary of SCI, which was formed by SCI for the
5 | sole purpose of merging with Alderwoods. At relevant times hereto, SCI and Coronado had the
6 | same offices, telephone numbers, and corporate officers.

7 |      96.     Upon information and belief, Alderwoods, through its shareholders, has adopted a
8 | merger agreement by and between Alderwoods, Coronado and/or SCI.

9 |      97.     Upon information and belief, SCI, through its shareholders, has adopted a merger
10 | agreement between Alderwoods, Coronado and/or SCI.

11 |      98.     Upon information and belief, as of approximately November 2006, Alderwoods
12 | and/or Coronado ("Merged Entities") became a wholly owned subsidiary of SCI.

13 |      99.     Upon information and belief, the Merged Entities, under the merger agreement,
14 | continue business operations in substantially the same form as before the merger.

15 |      100.    Upon information and belief, the Merged Entities, under the merger agreement,
16 | continue to use substantially the same workforce as before the merger, with substantially the
17 | same supervisors and same working conditions as Alderwoods.

18 |      101.    Upon information and belief, the Merged Entities, under the merger agreement,
19 | provide essentially the same services as before the merger and use the same facilities, equipment
20 | and method of providing services as Alderwoods.

21 |      102.    Upon information and belief, SCI and the SCI Managing Entities are successors-in-
22 | interest to Alderwoods' liability. As a successors-in-interest, SCI and the SCI Managing Entities
23 | are jointly and severally liable for all of the unlawful conduct of Alderwoods alleged herein.

24 |      103.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities are
25 | or have been the employer of the Alderwoods Employees.

26 |      104.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities have
27 | suffered or permitted the Alderwoods Employees to perform work for them.

28 |

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

105.   At all relevant times, SCI, the SCI Managing Entities and the Merged Entities are or have been liable for the employment of the Alderwoods Employees.

106.   At all relevant times, the Alderwoods Employees have acted directly or indirectly in the interest of SCI, the SCI Managing Entities and the Merged Entities.

107.   At all relevant times, SCI, the SCI Managing Entities and the Merged Entities have operated locations, either directly or through the SCI Affiliates, and therefore are the employers of the Alderwoods Employees.

108.   Collectively, SCI, the SCI Managing Entities and the Merged Entities and their funeral service locations comprise a single, integrated enterprise, as they perform related activities through unified operation or common control for a common business purpose.

109.   Upon information and belief, SCI and/or the SCI Managing Entities, under the merger agreement, exercise complete dominion and control over Alderwoods and its funeral service locations.

110.   At all relevant times, the Alderwoods Employees are or have been jointly employed by SCI, the SCI Managing Entities and the Merged Entities at their funeral service locations.

111.   At all relevant times, the funeral service locations of Alderwoods are or have been the Alderwoods Employees' employer.

112.   Upon information and belief, SCI, the SCI Managing Entities and the Merged Entities operate interrelated business operations.

113.   At all relevant times, business operations of the funeral locations are or have been centrally controlled by SCI, the SCI Managing Entities and the Merged Entities.

114.   Upon information and belief, SCI, the SCI Managing Entities and the Merged Entities exercise common control of labor relations.

115.   Upon information and belief, SCI, the SCI Managing Entities and/or the Merged Entities own all of the funeral service locations and exercise financial control over the business operations of those locations.

116.   At all relevant times, SCI, the SCI Managing Entities and/or the Merged Entities maintain or have maintained centralized control of employment relations.

117.   At all relevant times, the human resource functions of the funeral service locations report or have reported directly or indirectly to SCI, the SCI Managing Entities and/or the Merged Entities.

118.   Upon information and belief, SCI, the SCI Managing Entities and the Merged Entities operate under common management.

119.   Upon information and belief, SCI, the SCI Managing Entities and/or the Merged Entities exercise common management of the various funeral home locations.

120.   Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities have common ownership and financial control.

121.   In light of the economic realities of the enterprise operated by SCI, the SCI Managing Entities and the Merged Entities, each of the defendants are joint employers of the Alderwoods Employees.

122.   At all relevant times, the Alderwoods Employees' work simultaneously benefited all of SCI, the SCI Managing Entities and the Merged Entities.

123.   At all relevant times, the Merged Entities acted directly or indirectly in the interest of SCI and the SCI Managing Entities in relation to the Alderwoods Employees.

124.   SCI, the SCI Managing Entities and the Merged Entities are not completely disassociated with respect to the employment of the Alderwoods Employees and the SCI Managing Entities and the Merged Entities are controlled by and/or are under common control with SCI.

125.   In light of the economic realities of SCI, the SCI Managing Entities and the Merged Entities' enterprise, at all relevant times SCI, the SCI Managing Entities and the Merged Entities were integrated enterprises, employers, joint employers, single employers and/or successor employers of Plaintiffs for purposes of federal laws and/or SCI and the SCI Managing Entities constitute successors-in-interest to Alderwoods.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

*The Individual Defendants Are Liable to Plaintiffs*

126. At all relevant times, the Individual Defendants are or have been the employer of Plaintiffs.

127. At all relevant times, the Individual Defendants have suffered or permitted the Plaintiffs to perform work for them.

128. At all relevant times, the Individual Defendants are or have been liable for the employment of Plaintiffs.

129. At all relevant times, the Individual Defendants were responsible for defendants' human resources and employment functions with respect to Plaintiffs.

130. Upon information and belief, Individual Defendants' responsibilities for defendants' human resources and employment functions included drafting, approving, distributing, supervising, enforcing and/or monitoring defendants' human resources and employment policies, including those related to the hours Plaintiffs worked, the recordkeeping associated with those hours, and the compensation Plaintiffs received.

131. Upon information and belief, Individual Defendants were directly involved in the operations of defendants' business with respect to these human resources and employment functions.

132. Upon information and belief, Individual Defendants exercised direction and control with respect to the defendants' human resources and employment functions.

133. Upon information and belief, Individual Defendants actively managed defendants' human resources and employment policies, interfaced with the other defendants and their funeral locations regarding those policies, and made decisions regarding the policies and the manner in which the policies were applied to Plaintiffs.

134. At all relevant times, Plaintiffs have acted directly or indirectly in the interest of the Individual Defendants.

135. At all relevant times, Plaintiffs are or have been jointly employed by the Individual Defendants.

136.   At all relevant times, the Individual Defendants acted directly or indirectly in the interest of SCI and/or the SCI Managing Entities in relation to Plaintiffs.

## IV.   FACTUAL BACKGROUND

137.   Plaintiffs worked for defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and one-half for hours they worked over 40 in a week.

138.   Defendants' policy and/or practice was to not compensate Plaintiffs for work it suffered or permitted Plaintiffs to perform.

139.   Defendants knew Plaintiffs were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Plaintiffs worked.

140.   Defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements.

141.   The failure to pay overtime is willful.

142.   Examples of defendants' policies and practices to deprive Plaintiffs of their earned wages and wage premiums are set forth below:

      a.   **Subclass A:**  Defendants implemented a "Community Work Policy."  Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

      b.   **Subclass B:**  Defendants implemented an "On Call Pay Policy."  Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for work performed outside the regular workday, off-site from the funeral home.

      c.   **Subclass C:**  Defendants' policy required that certain hourly employees train for and obtain certain licenses.  Defendants did not pay for the training, test taking and continuing education requirements for those licenses despite suffering or permitting employees to perform such work.

      d.   **Subclass D:**  Defendants' policy required that certain hourly employees take other types of training.  Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

e. **Subclass E:** Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

f. **Subclass F:** Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for lunch breaks. Defendants did, however, suffer and permit their employees to perform work during such meal breaks, but pursuant to defendants' "Meal Break Deduction Policy," time spent on meal "breaks" was still deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

g. **Subclass G:** Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

h. **Subclass H:** Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted plaintiffs to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

i. **Subclass I:** Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Plaintiffs' overtime.

143. Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment.

144. More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

## CLAIM I

## FLSA

145.  The preceding paragraphs are incorporated herein as if fully set forth herein.

146.  Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs.

## CLAIM II

## FAILURE TO MAINTAIN PROPER RECORDS

147.  The preceding paragraphs are incorporated herein as if fully set forth herein.

148.  Defendants violated provisions of the FLSA by failing to make, keep, and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment; more specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week, and/or the total overtime compensation for each work week and are liable to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a)  an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)  an award of the value of Plaintiffs' unpaid wages;

(c)  liquidated, compensatory, consequential and punitive damages;

(d)  an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' rights;

(e)  an award of pre- and post-judgment interest; and

(f)  such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact.

Respectfully Submitted,
ROSEN, BIEN & GALVAN, LLP

Date: November __ 8, 2007

By: _____
Sanford Jay Rosen, State Bar No. 62566
Maria V. Morris, State Bar No. 223903
Lori E. Rifkin, State Bar No. 244081
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 433-6830

DOLIN, THOMAS & SOLOMON LLP
Patrick J. Solomon, NY Attorney No. 2716660
Annette Gifford, NY Attorney No. 4105870
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

MARGOLIS EDELSTEIN
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
525 William Penn Place, Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256

Attorneys for Plaintiff

17

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1

## APPENDIX A

2

3  Consent forms for sixty-two plaintiffs to this action are hereby filed as attachments in this Appendix.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28