# EXHIBIT B

## Part 6 of 8

Table of Contents

# SERVICE CORPORATION INTERNATIONAL

## CONSOLIDATED BALANCE SHEET

| | December 31, | |
|---|---|---|
| | 2008 | 2007 |
| | (In thousands, except share amounts) | |
| **ASSETS** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 128,397 | $ 168,594 |
| Receivables, net | 96,145 | 113,793 |
| Deferred tax asset | 79,571 | 73,182 |
| Inventories | 31,603 | 36,203 |
| Current assets held for sale | 1,279 | 2,294 |
| Other | 18,515 | 27,261 |
| Total current assets | 355,510 | 421,327 |
| Preneed funeral receivables and trust investments | 1,191,692 | 1,434,403 |
| Preneed cemetery receivables and trust investments | 1,062,952 | 1,428,057 |
| Cemetery property, at cost | 1,458,981 | 1,451,666 |
| Property and equipment, at cost, net | 1,567,875 | 1,569,534 |
| Non-current assets held for sale | 97,512 | 122,626 |
| Goodwill | 1,178,969 | 1,198,153 |
| Deferred charges and other assets | 452,634 | 400,734 |
| Cemetery perpetual care trust investments | 744,758 | 905,744 |
| | $ 8,110,883 | $ 8,932,244 |
| | | |
| **LIABILITIES & STOCKHOLDERS' EQUITY** | | |
| Current liabilities: | | |
| Accounts payable and accrued liabilities | $ 294,859 | $ 343,392 |
| Current maturities of long-term debt | 27,104 | 36,594 |
| Current liabilities held for sale | 465 | 149 |
| Income taxes | 4,354 | 46,305 |
| Total current liabilities | 326,782 | 426,440 |
| Long-term debt | 1,821,404 | 1,820,106 |
| Deferred preneed funeral revenues | 588,198 | 526,668 |
| Deferred preneed cemetery revenues | 771,117 | 753,876 |
| Deferred income taxes | 288,677 | 140,623 |
| Non-current liabilities held for sale | 75,537 | 91,928 |
| Other liabilities | 356,090 | 383,642 |
| Deferred preneed funeral and cemetery receipts held in trust | 1,817,665 | 2,390,288 |
| Care trusts' corpus | 772,234 | 906,590 |
| Commitments and contingencies (Note 12) | | |
| Stockholders' equity: | | |
| Common stock, $1 per share par value, 500,000,000 shares authorized, 249,472,075 and 262,858,169 issued and outstanding (net of 481,000 and 1,961,300 treasury shares at par, respectively) | 249,472 | 262,858 |
| Capital in excess of par value | 1,733,814 | 1,874,600 |
| Accumulated deficit | (726,756) | (797,965) |
| Accumulated other comprehensive income | 36,649 | 152,590 |
| Total stockholders' equity | 1,293,179 | 1,492,083 |
| | $ 8,110,883 | $ 8,932,244 |

(See notes to consolidated financial statements)

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

# SERVICE CORPORATION INTERNATIONAL

## CONSOLIDATED STATEMENT OF CASH FLOWS

|  | Years Ended December 31, | | |
|  | 2008 | 2007 | 2006 |
|  | (In thousands) | | |
| Cash flows from operating activities: |  |  |  |
| Net income | $ 97,083 | $ 247,729 | $ 56,511 |
| Adjustments to reconcile net income to net cash provided by operating activities: |  |  |  |
| Loss (income) from discontinued operations, net of tax | 362 | (4,412) | (3,907) |
| Equity in earnings of unconsolidated subsidiaries, net of cash received | (19,866) | (19,366) | (1,052) |
| Loss on early extinguishments of debt | — | 14,986 | 17,532 |
| Premiums paid on early extinguishments of debt | — | (11,650) | (16,728) |
| Depreciation and amortization | 114,157 | 115,682 | 84,010 |
| Amortization of intangible assets | 23,636 | 27,550 | 13,474 |
| Amortization of cemetery property | 32,690 | 35,824 | 28,263 |
| Amortization of loan costs | 3,573 | 6,261 | 16,328 |
| Provision for doubtful accounts | 9,243 | 10,754 | 9,156 |
| Provision for deferred income taxes | 109,118 | 34,652 | 38,257 |
| Losses (gains) on divestitures and impairment charges, net | 36,124 | (16,920) | 58,683 |
| Gain on redemption of securities | — | (158,133) | — |
| Share-based compensation | 9,970 | 8,787 | 7,035 |
| Excess tax benefits from share-based awards | — | (10,469) | — |
| Change in assets and liabilities, net of effects from acquisitions and dispositions: |  |  |  |
| Increase in receivables | (409) | (24,650) | (362) |
| Decrease (increase) in other assets | 26,100 | (4,374) | (8,488) |
| (Decrease) increase in payables and other liabilities | (143,956) | 51,407 | (10,607) |
| Net effect of preneed funeral production and deliveries: |  |  |  |
| Decrease in preneed funeral receivables and trust investments | 7,271 | 102,080 | 33,064 |
| Increase in deferred preneed funeral revenue | 23,785 | 17,746 | 5,433 |
| Decrease in deferred preneed funeral receipts held in trust | (23,334) | (95,581) | (29,968) |
| Net effect of preneed cemetery production and maturities: |  |  |  |
| Decrease in preneed cemetery receivables and trust investments | 56,333 | 83,689 | 34,018 |
| Increase (decrease) in deferred preneed cemetery revenue | 11,408 | 5,142 | (29,066) |
| (Decrease) increase in deferred preneed cemetery receipts held in trust | (22,388) | 21,626 | 21,626 |
| Other | (585) | 9 | (2,027) |
| Net cash provided by operating activities from continuing operations | 350,181 | 338,903 | 322,188 |
| Net cash provided by operating activities from discontinued operations | — | 17,279 | 2,031 |
| Net cash provided by operating activities | 350,181 | 356,182 | 324,219 |
| Cash flows from investing activities: |  |  |  |
| Capital expenditures | (154,101) | (157,011) | (97,527) |
| Acquisitions, net of cash acquired | (8,828) | (8,355) | (1,301,359) |
| Proceeds from divestitures and sales of property and equipment | 32,543 | 410,689 | 83,146 |
| Proceeds from redemption of securities | — | 158,691 | — |
| Net (deposits) withdrawals of restricted funds and other | (21,741) | (17,347) | 8,639 |
| Net cash used in provided by investing activities from continuing operations | (152,127) | 386,667 | (1,307,101) |
| Net cash provided by (used in) investing activities from discontinued operations | 858 | (8,546) | 9,599 |
| Net cash used in provided by investing activities | (151,269) | 378,121 | (1,297,502) |
| Cash flows from financing activities: |  |  |  |
| Payments of debt | (112,302) | (29,234) | (26,053) |
| Principal payments on capital leases | (25,851) | (27,057) | (21,346) |
| Proceeds from long-term debt issued | 82,133 | 398,996 | 850,000 |
| Debt issuance costs | — | (6,443) | (24,716) |
| Early extinguishments of debt | — | (472,545) | (181,543) |
| Proceeds from exercise of stock options | 14,812 | 52,938 | 5,946 |
| Excess tax benefits from share-based awards | — | 10,469 | — |
| Purchase of Company common stock | (142,155) | (505,121) | (27,870) |
| Payments of dividends | (41,501) | (34,629) | (29,431) |
| Bank overdrafts and other | (5,646) | 7,209 | 20,480 |
| Net cash (used in) provided by financing activities from continuing operations | (230,510) | (605,417) | 565,467 |
| Net cash used in financing activities from discontinued operations | — | (2,113) | (254) |
| Net cash (used in) provided by financing activities from continuing operations | (230,510) | (607,530) | 565,213 |
| Effect of foreign currency | (8,959) | 1,941 | 1,168 |
| Net (decrease) increase in cash and cash equivalents | (40,197) | 128,714 | (406,902) |
| Cash and cash equivalents at beginning of period | 168,594 | 39,880 | 446,782 |
| Cash and cash equivalents at end of period | $ 128,397 | $ 168,594 | $ 39,880 |

(See notes to consolidated financial statements)

51

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

# SERVICE CORPORATION INTERNATIONAL

## CONSOLIDATED STATEMENT OF STOCKHOLDERS' EQUITY

| | Outstanding Shares | Common Stock | Treasury Stock, Par Value | Capital in Excess of Par Value | Unearned Compensation | Accumulated Deficit | Accumulated Other Comprehensive Income | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | (In thousands, except per share amounts) | | | | |
| Balance at December 31, 2005 | 294,899 | 343,771 | (48,062) | 2,182,745 | (3,593) | (962,908) | 70,492 | 1,581,555 |
| Comprehensive income: | | | | | | | | |
| Net income | | | | | | 56,531 | | 56,531 |
| Other comprehensive income: | | | | | | | | |
| Foreign currency translation | | | | | | | 1,039 | 1,039 |
| Unrealized loss on available-for-sale securities | | | | | | | (3,731) | (3,731) |
| Reclassification for translation adjustments realized in net income | | | | | | | 5,114 | 5,114 |
| Total other comprehensive income | | | | | | | | 2,422 |
| Total comprehensive income | | | | | | | | 58,953 |
| Adjustment for initial adoption of SFAS 158 | | | | | | | (623) | (623) |
| Dividends on common stock ($.05 per share) | | | | (10,760) | | | | (10,760) |
| Common Stock: | | | | | | | | |
| Stock option exercises | 1,403 | 1,403 | | 4,542 | | | | 5,945 |
| Reclassification of unearned compensation for restricted stock | | | | (3,593) | 3,593 | | | — |
| Retirement of treasury share | | (51,942) | 51,942 | | | | | — |
| Restricted stock award, net of forfeiture and other | 430 | 430 | | 134 | | | | 564 |
| Employee share-based compensation earned | | | | 7,035 | | | | 7,035 |
| Purchase of Company common stock | (3,420) | (3,420) | | (24,450) | | | | (27,870) |
| Balance at December 31, 2006 | 293,221 | 293,232 | (10) | 2,155,644 | — | (906,399) | 72,926 | 1,594,773 |
| Comprehensive income: | | | | | | | | |
| Net income | | | | | | 247,224 | | 247,224 |
| Other comprehensive income: | | | | | | | | |
| Foreign currency translation | | | | | | | 92,003 | 92,003 |
| Unrealized loss on available-for-sale securities | | | | | | | (5,699) | (5,699) |
| Reclassification for losses on available-for-sale securities realized in net | | | | | | | 8,438 | 8,438 |
| Reclassification for translation adjustment realized in net gain | | | | | | | (16,065) | (16,065) |
| Recognition of prior service cost | | | | | | | 623 | 623 |
| Total other comprehensive income | | | | | | | | 80,292 |
| Total comprehensive income | | | | | | | | 328,028 |
| Cumulative effect of FIN 48 adoption | | | | | | 29,853 | | 29,853 |
| Tax benefits related to share-based awards | | | | 18,513 | | | | 18,513 |
| Dividends on common stock ($.13 per share) | | | | (36,426) | | | | (36,426) |
| Common Stock: | | | | | | | | |
| Stock option exercises | 7,732 | 7,732 | | 45,206 | | | | 52,938 |
| Restricted stock award, net of forfeiture and other | 314 | 314 | 60 | | | | | 243 |
| Employee share-based compensation earned | | | | 8,387 | | | | 8,787 |
| Purchase of Company common stock | (38,470) | (38,470) | | (297,498) | | (169,152) | | (505,120) |
| Retirement of treasury shares | | (36,459) | 36,459 | | | | | |
| Balance at December 31, 2007 | 262,658 | 264,319 | (1,965) | 1,874,608 | — | (797,950) | 152,596 | 1,492,083 |
| Comprehensive income: | | | | | | | | |
| Net income | | | | | | 97,084 | | 97,084 |
| Foreign currency translation | | | | | | | (115,941) | (115,941) |
| Total comprehensive loss | | | | | | | | (18,850) |
| Cumulative effect of accounting change | | | | | | (3,265) | | (3,265) |
| Dividends on common stock ($.16 per share) | | | | (40,393) | | | | (40,393) |
| Common Stock: | | | | | | | | |
| Stock option exercises | 3,944 | 3,944 | | 10,868 | | | | 14,812 |
| Reversal of tax benefits related to share-based awards | | | | (18,513) | | | | (18,513) |
| Restricted stock award, net of forfeiture and other | 354 | 293 | 61 | | | | | 708 |
| Employee share-based compensation earned | | | | 9,261 | | | | 9,261 |
| Purchase of Company common stock | (17,040) | (17,680) | 19,102 | (101,862) | | (22,409) | | (142,150) |
| Retirement of treasury shares | | (19,102) | 19,102 | | | | | |
| Balance at December 31, 2008 | 249,472 | 249,953 | (488) | 1,733,814 | — | (726,750) | 36,648 | 1,293,175 |

(See notes to consolidated financial statements)

Source: SERVICE CORPORATION , 10-K, March 02, 2009

52

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

SERVICE CORPORATION INTERNATIONAL

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

## 1. Nature of Operations

We are a provider of deathcare products and services, with a network of funeral service locations and cemeteries primarily operating in the United States and Canada. Our operations consist of funeral service locations, cemeteries, funeral service/cemetery combination locations, crematoria, and related businesses.

Funeral service locations provide all professional services relating to funerals and cremations, including the use of funeral facilities and motor vehicles and preparation and embalming services. Funeral-related merchandise, including caskets, burial vaults, cremation receptacles, flowers, and other ancillary products and services, is sold at funeral service locations. Cemeteries provide cemetery property interment rights, including mausoleum spaces, lots, and lawn crypts, and sell cemetery-related merchandise and services, including stone and bronze memorials, markers, casket and cremation memorialization products, merchandise installations, and burial openings and closings. We also sell preneed funeral and cemetery products and services whereby a customer contractually agrees to the terms of certain products and services to be provided in the future.

## 2. Summary of Significant Accounting Policies

### Principles of Consolidation and Basis of Presentation

Our consolidated financial statements include the accounts of Service Corporation International (SCI) and all subsidiaries in which we hold a controlling financial interest. Our financial statements also include the accounts of the funeral merchandise and service trusts, cemetery merchandise and service trusts, and cemetery perpetual care trusts in which we have a variable interest and are the primary beneficiary. Intercompany balances and transactions have been eliminated in consolidation.

### Business Combinations

We have applied the principles provided in Statement of Financial Accounting Standard SFAS No. 141 "*Accounting for Business Combinations*" (SFAS 141) to our prior business combinations. Tangible and intangible assets acquired and liabilities assumed were recorded at fair value and goodwill recognized for any difference between the price of the acquisition and our fair value determination. We have customarily estimated our purchase costs and other related transactions known to us at closing of the acquisition. To the extent that information not available to us at the closing date subsequently became available during the allocation period, as defined in SFAS 141, we have adjusted our goodwill, assets, or liabilities associated with the acquisition.

### Reclassifications and Out-of Period Adjustments

Certain reclassifications have been made to prior years to conform to current period financial statement presentation with no effect on our previously reported consolidated financial position, results of operations, or cash flows.

In connection with our ongoing efforts to remediate our previously reported material weaknesses and other internal control deficiencies, we recorded several immaterial adjustments to correct errors related to prior accounting periods during the three months and year ended December 31, 2008. We do not believe these adjustments are quantitatively or qualitatively material to our consolidated financial statements for the year ended December 31, 2008, nor were such items quantitatively or qualitatively material to any of our prior annual or quarterly financial statements. We do not believe these adjustments are qualitatively material to the three months ended December 31, 2008 although they are quantitatively significant to such period. The net impact of these adjustments was a decrease to our pre-tax income and net income in the amount of $7.0 million and $4.4 million, respectively, for the year ended December 31, 2008. The net impact of these adjustments is a decrease to our pre-tax income and net income in the amount of $2.1 million and $5.5 million, respectively, for the three months ended December 31, 2008.

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

*Use of Estimates in the Preparation of Financial Statements*

The preparation of the consolidated financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that may affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the consolidated financial statements and the reported amounts of revenues and expenses during the reporting period. As a result, actual results could differ from these estimates.

*Cash and Cash Equivalents*

We consider all highly liquid investments with an original maturity of three months or less to be cash equivalents. At December 31, 2008, the majority of our cash was invested in commercial paper. The carrying amounts of our cash and cash equivalents approximate fair value due to the short-term nature of these instruments.

*Accounts Receivable and Allowance for Doubtful Accounts*

Our trade receivables primarily consist of amounts due for funeral services already performed. We provide various allowances and/or cancellation reserves for our funeral and cemetery preneed and atneed receivables as well as for our preneed funeral and preneed cemetery deferred revenues. These allowances are based on an analysis of historical trends and include, where applicable, collection and cancellation activity. Atneed funeral and cemetery receivables are considered past due after 30 days. Collections are generally managed by the locations until a receivable is 180 days delinquent at which time it is fully reserved and sent to a collection agency. These estimates are impacted by a number of factors, including changes in the economy, relocation, and demographic or competitive changes in our areas of operation.

*Inventories and Cemetery Property*

Funeral and cemetery merchandise are stated at the lower of average cost or market. Cemetery property is recorded at cost. Inventory costs and cemetery property are relieved using specific identification in performance of a contract.

*Property and Equipment, Net*

Property and equipment are recorded at cost. Maintenance and repairs are charged to expense whereas renewals and major replacements that extend the assets useful lives are capitalized. Depreciation is recognized ratably over the estimated useful lives of the various classes of assets. Property is depreciated over a period ranging from seven to forty years, equipment is depreciated over a period from three to eight years and leasehold improvements are depreciated over the shorter of the lease term or ten years. Depreciation expense related to property and equipment was $114.2 million, $115.7 million, and $84.0 million for the years ended December 31, 2008, 2007, and 2006, respectively. When property is sold or retired, the cost and related accumulated depreciation are removed from the consolidated balance sheet; resulting gains and losses are included in the consolidated statement of operations in the period of sale or disposal.

*Leases*

We have lease arrangements primarily related to funeral service locations and transportation equipment that were primarily classified as capital leases at December 31, 2008. Lease terms related to funeral home properties generally range from one to 35 years with options to renew at varying terms. Lease terms related to transportation equipment generally range from one to five years with options to renew at varying terms. We calculate operating lease expense ratably over the lease term. We consider reasonably assured renewal options and fixed escalation provisions in our calculation. For more information related to leases, see Note 12.

54

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

*Goodwill*

The excess of purchase price over the fair value of identifiable net assets acquired in business combinations is recorded as goodwill. Goodwill is tested annually for impairment by assessing the fair value of each of our reporting units. As of December 31, 2008, our funeral segment reporting unit includes assets in North America and Germany. Our cemetery segment reporting unit includes assets in North America. We performed our annual impairment test of goodwill in accordance with SFAS No. 142 *"Goodwill and Other Intangible Assets"* (SFAS 142) during the fourth quarter using information as of September 30.

Our goodwill impairment test involves estimates and management judgment. In the first step of our goodwill impairment test, we compare the fair value of a reporting unit to its carrying amount, including goodwill. We determine fair value of each reporting unit using both a market and income approach. Our methodology considers discounted cash flows and multiples of EBITDA (earnings before interest, taxes, depreciation, and amortization) for both SCI and its competitors. The discounted cash flow valuation uses projections of future cash flows and includes assumptions concerning future operating performance and economic conditions that may differ from actual future cash flows. We do not record an impairment of goodwill in instances where the fair value of a reporting unit exceeds its carrying amount. If the aggregate step one fair value is less than the related carrying amount for a reporting unit, we compare the implied fair value of goodwill (as defined in SFAS 142) to the carrying amount of goodwill. If the carrying amount of reporting unit goodwill exceeds the implied fair value of that goodwill, an impairment loss is recognized in an amount equal to that excess. Based on our most recent annual impairment test performed during the fourth quarter using September 30 information, we concluded that there was no impairment of goodwill as of December 31, 2008.

In addition to our annual review, we assess the impairment of goodwill whenever events or changes in circumstances indicate that the carrying value may be greater than fair value. Factors that could trigger an interim impairment review include, but are not limited to, significant underperformance relative to historical or projected future operating results and significant negative industry or economic trends. In the fourth quarter of 2008, we determined that the decline in our operating results, combined with significant declines in the economy, resulted in a triggering event that occurred subsequent to our annual impairment test of goodwill. We performed an additional impairment test based on December 31, 2008 information and concluded that there was no impairment of goodwill. However, if current economic conditions worsen causing further deterioration in our operating results, we may have another triggering event, that could result in an impairment to our goodwill. Our cemetery segment, which has a goodwill balance of $54.8 million as of December 31, 2008, is more sensitive to market conditions and goodwill impairments because it is more reliant on preneed sales which are impacted by customer discretionary income. For more information, see Note 8.

For our most recent annual impairment test performed in the fourth quarter using September 30 data, we used growth rates ranging from (2.0) to 5.3% over a three-year period, plus a terminal value determined using the constant growth method in projecting our future cash flows. We considered the impact of recent realized losses in our trusts in developing our projected cash flows. We used a 10.3% discount rate, which reflected our weighted average cost of capital based on our industry and our supplier industries and capital structure, as adjusted for equity risk premiums and size risk premiums based on our market capitalization. Fair value was calculated as the sum of the projected discounted cash flows of our reporting units over the next three years plus terminal value at the end of those three years. Our terminal value was calculated using a long-term growth rate of 3.0%.

For this additional impairment test using December 31 data, we used growth rates ranging from (7.5) to 6.1% over a five-year period plus a terminal value determined using the constant growth method. We considered the impact of recent realized losses in our trusts in developing our projected cash flows. We used an 11.0% discount rate, which reflects our current weighted average cost of capital determined based on our industry and our supplier industries and capital structure as adjusted for equity risk premiums and size risk premiums based on our market capitalization. Fair value was calculated as the sum of the projected discounted cash flows of the reporting units over the next five years plus terminal value. Our terminal value was calculated using a long-term growth rate of 3.0%.

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

*Other Intangible Assets*

Our intangible assets include cemetery customer relationships, trademarks and tradenames, and other assets primarily resulting from our acquisition of Alderwoods. Our trademark and tradenames and water rights assets are considered to have an indefinite life and are not subject to amortization. We test for impairment of intangible assets in accordance with Statement of Financial Accounting Standards (SFAS) No. 142 *"Goodwill and Other Intangible Assets"* (SFAS 142) annually during the fourth quarter using information as of September 30.

Our intangible assets impairment tests involve estimates and management judgment. For trademark and tradenames, our test is uses the relief from royalty method whereby we determine the fair value of the assets by discounted the cash flows that represent a savings over having to pay a royalty fee for use of the trademark and tradenames. The discounted cash flow valuation uses projections of future cash flows and includes assumptions concerning future operating performance and economic conditions that may differ from actual future cash flows. For our most recent annual impairment test performed in the fourth quarter using September 30 data, we estimated that the pre-tax savings would be 4% of the revenues associated with the trademark and tradenames, based primarily on our research of intellectual property valuation and licensing databases. We also assumed a terminal growth rate of 3.0% and discounted the cash flows at 10.5% based on the relative risk of these assets to our overall business. Based on our annual impairment test performed during the fourth quarter using September 30 information, we concluded that there was no impairment of intangible assets as of December 31, 2008.

In addition to our annual review, we assess the impairment of intangible assets whenever events or changes in circumstances indicate that the carrying value may be greater than the fair value. Factors that could trigger an interim impairment review include, but are not limited to, significant underperformance relative to historical or projected future operating results and significant negative industry or economic trends. In the fourth quarter of 2008, we determined that the decline in our operating results, combined with significant declines in the economy, resulted in a triggering event that occurred subsequent to our annual impairment test of intangible assets. We performed an additional impairment test based on December 31, 2008 information and concluded that there was an impairment of our trademark and tradenames asset of $3.8 million. For this additional impairment test, we estimated that the pre-tax savings would be 4% of the revenues associated with the trademark and tradenames, based primarily on our research of intellectual property valuation and licensing databases. We also assumed a terminal growth rate of 3.0% and discounted the cash flows at 11.2% based on the relative risk of these assets to our overall business. If the current economic conditions worsen, causing further deterioration in our operating results, we may have another triggering event that could result in further impairment to these assets.

Our preneed deferred revenue intangible asset is relieved using specific identification in performance of a contract. We amortize all other intangible assets on a straight-line basis over their estimated useful lives of 10-20 years. Amortization expense for preneed deferred revenue and other intangible assets was $23.6 million, $27.6 million, and $13.5 million for the years ended December 31, 2008, 2007, and 2006, respectively.

*Valuation of Long-Lived Assets*

We review the carrying value of our long-lived assets for impairment whenever events or circumstances indicate that the carrying amount of the asset may not be recoverable, in accordance with SFAS No. 144, *"Accounting for the Impairment or Disposal of Long-Lived Assets"* (SFAS 144). SFAS 144 requires that long-lived assets to be held and used are reported at the lower of their carrying amount or fair value. Fair value is based on an income approach that utilizes projections of undiscounted future cash flows expected to be generated by our long-lived assets. In the fourth quarter of 2008, we determined that the economic decline represented a change in circumstance for our long-lived assets to be held and used. As such, we reviewed our long-lived assets for impairment in accordance with SFAS 144, and we determined that no impairment charges were necessary. While we believe our estimates of undiscounted future cash flows used in performing this test are reasonable, different assumptions regarding such cash flows and comparable sales values could materially affect our evaluations.

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

# SERVICE CORPORATION INTERNATIONAL

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

Assets to be disposed of and assets not expected to provide any future service potential are recorded at the lower of their carrying amount or fair value less estimated cost to sell. We determined the fair value of assets to be disposed of using a market approach. See Note 19 for additional information related to assets to be disposed.

### Treasury Stock

We make treasury stock purchases in the open market or through privately negotiated transactions subject to market conditions and normal trading restrictions. We account for the repurchase of our common stock under the par value method. We use the average cost method upon the subsequent reissuance of treasury shares. On December 15, 2008, we cancelled 19.1 million shares of common stock held in our treasury. We cancelled 36.5 million and 51.9 million shares of common stock held in our treasury in 2007 and 2006, respectively. These retired treasury shares were changed to authorized but unissued status.

### Foreign Currency Translation

All assets and liabilities of our foreign subsidiaries are translated into U.S. dollars at exchange rates in effect as of the end of the reporting period. Revenue and expense items are translated at the average exchange rates for the reporting period. The resulting translation adjustments are included in *Stockholders' equity* as a component of *Accumulated other comprehensive income* in the consolidated statement of stockholders' equity and balance sheet.

The functional currency of SCI and its subsidiaries is the respective local currency. The transactional currency gains and losses that arise from transactions denominated in currencies other than the functional currencies of our operations are recorded in *Other income, net* in the consolidated statement of operations. We do not operate in countries which are considered to have hyperinflationary economies.

### Fair Value Measurements

We measure the available-for-sale securities held by our funeral, cemetery merchandise and service, and cemetery perpetual care trusts at fair value on a recurring basis. Changes in unrealized gains and/or losses related to these securities are reflected in *Other comprehensive income* and offset by the *Deferred preneed funeral and cemetery receipts held in trust* and *Care trusts' corpus interest* in those unrealized gains and/or losses. Certain of these securities have been classified in Level 3 of the SFAS No. 157 "*Fair Value Measurements*" (SFAS 157) hierarchy due to significant management judgment required as a result of the absence of quoted market prices, inherent lack of liquidity, or the long-term nature of the securities. These securities represent 5.9% of our total $2.0 billion trust fund portfolio measured at fair value on a recurring basis as of December 31, 2008. For more information see Notes 4, 5, and 6.

### Funeral Operations

Revenue is recognized when funeral services are performed and funeral merchandise is delivered. Our funeral trade receivables consist of amounts due for services already performed and merchandise delivered. An allowance for doubtful accounts is provided based on historical experience. We sell price-guaranteed preneed funeral contracts through various programs providing for future funeral services at prices prevailing when the agreements are signed. Revenues associated with sales of preneed funeral contracts are deferred until such time that the funeral services are performed. Allowances for customer cancellations are based upon historical experience. Sales taxes collected are recognized on a net basis in our consolidated financial statements.

Pursuant to state or provincial law, all or a portion of the proceeds from funeral merchandise or services sold on a preneed basis may be required to be paid into trust funds. We defer investment earnings related to these merchandise and service trusts until the associated merchandise is delivered or services are performed. Costs related to sales of merchandise and services are charged to expense when merchandise is delivered and services performed. See Note 4 for more information regarding preneed funeral activities.

57

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

#### *Cemetery Operations*

Revenue associated with sales of cemetery merchandise and services is recognized when the service is performed or merchandise is delivered. Our cemetery trade receivables consist of amounts due for services already performed and merchandise already delivered. An allowance for doubtful accounts has been provided based on historical experience. Revenue associated with sales of preneed cemetery interment rights is recognized in accordance with the retail land sales provisions of SFAS No. 66, *"Accounting for the Sales of Real Estate"* (SFAS 66). Under SFAS 66, revenue from constructed cemetery property is not recognized until 10% of the sales price has been collected. Revenue related to the preneed sale of unconstructed cemetery property is deferred until it is constructed and 10% of the sales price is collected. Revenue associated with sales of preneed merchandise and services is not recognized until the merchandise is delivered or the services are performed. Allowances for customer cancellations for preneed cemetery contracts are based upon historical experience. For services and non-personalized merchandise (such as vaults), we defer the revenues until the services are performed and the merchandise is delivered. Sales taxes collected are recognized on a net basis in our consolidated financial statements. For personalized marker merchandise, with the customer's direction generally obtained at the time of sale, we can choose to order, store, and transfer title to the customer. In situations in which we have no further obligation or involvement related to the merchandise, we recognize revenues and record the cost of sales in accordance with SAB No. 104 "Revenue Recognition" (SAB 104) upon the earlier of vendor storage of these items or delivery in our cemetery.

Pursuant to state or provincial law, all or a portion of the proceeds from cemetery merchandise or services sold on a preneed basis may be required to be paid into trust funds. We defer investment earnings related to these merchandise and services trusts until the associated merchandise is delivered or services are performed.

A portion of the proceeds from the sale of cemetery property interment rights is required by state or provincial law to be paid into perpetual care trust funds. Investment earnings from these trusts are distributed to us regularly, are recognized in current cemetery revenues, and are intended to defray cemetery maintenance costs, which are expensed as incurred. The principal of such perpetual care trust funds generally cannot be withdrawn.

Costs related to the sale of property interment rights include the property and construction costs specifically identified by project. At the completion of the project, construction costs are charged to expense in the same period revenue is recognized. Costs related to sales of merchandise and services are charged to expense when merchandise is delivered and when services are performed. See Notes 5 and 6 for more information regarding preneed cemetery activities.

#### *Income Taxes*

Income taxes are computed using the liability method. Deferred taxes are provided on all temporary differences between the financial bases and the tax bases of assets and liabilities. We record a valuation allowance to reduce our deferred tax assets when uncertainty regarding their realization exists. We intend to permanently reinvest the unremitted earnings of certain of our foreign subsidiaries in those businesses outside the United States, and therefore we have not provided for deferred federal income taxes on such unremitted foreign earnings. For more information related to income taxes, see Note 9.

### 3. Recent Accounting Pronouncements and Accounting Changes

#### *Transfers of Financial Assets*

In December 2008, the Financial Accounting Standards Board (FASB) issued FASB Staff Position (FSP) Statement of Financial Accounting Standards (SFAS) No. 140-4 and FASB Interpretation (FIN) No. 46(R)-8, *"Disclosures by Public Entities (Enterprises) about Transfers of Financial Assets and Interests in Variable Interest Entities"* (FSP 140-4). FSP 140-4 requires public entities to provide additional disclosures about transfers of financial assets. It also amends FASB interpretation No. 46(R) to require public enterprises, including sponsors that

58

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

have a variable interest in a variable interest entity, to provide additional disclosures about their involvement with variable interest entities. The provisions of this FSP are effective for reporting periods ending after December 15, 2008. The adoption of this FSP will have no impact on our consolidated financial statements; however, it does require us, effective with this filing, to add additional disclosures related to our involvement with variable interest entities, which consist of our preneed funeral and cemetery trust investments and our cemetery perpetual care trust investments. See Notes 4, 5, and 6 for additional information.

### Disclosures about Credit Derivatives

In September 2008, the FASB issued FSP SFAS No. 133-1 and FIN No. 45-4, "*Disclosures about Credit Derivatives and Certain Guarantees: An Amendment of SFAS No. 133 and FIN No. 45; and Clarification of Effective Date of SFAS No. 161*" (FSP 133-1). FSP 133-1 requires disclosures by sellers of credit derivatives, including credit derivatives embedded in hybrid instruments, and additional disclosure about the current status of the payment/performance risk of a guarantee. The provisions of this FSP that amend SFAS No. 133 and FIN No. 45 are effective for reporting periods ending after November 15, 2008. Our adoption of this FSP did not impact our consolidated financial statements.

### Sales of Real Estate

In July 2008, the FASB ratified the consensus reached by the Emerging Issues Task Force (EITF) on Issue No. 07-06 "*Accounting for Sale of Real Estate Subject to the Requirements of SFAS No. 66*" (EITF 07-06). EITF 07-06 provides clarification whether a buy-sell clause is a prohibited form of continuing involvement that would preclude partial sales treatment under SFAS No. 66, "*Accounting for Sales of Real Estate.*" We adopted the provisions of EITF 07-06 for new arrangements entered into and assessments performed on or after January 1, 2008. The adoption of this statement did not have a material impact on our consolidated financial statements. The future impact of adopting EITF 07-06 will be dependent on sales of real estate, if any, that we may pursue.

### Determination of the Useful Life of Intangible Assets

In April 2008, the FASB issued FSP SFAS No. 142-3, "*Determination of the Useful Life of Intangible Assets*" (FSP 142-3). FSP 142-3 amends the factors that should be considered in developing renewal or extension assumptions used to determine the useful life of a recognized intangible asset under SFAS 142, "*Goodwill and Other Intangible Assets*" and requires enhanced related disclosures. FSP 142-3 must be applied prospectively to all intangible assets recognized as of or acquired subsequent to January 1, 2009. We are currently evaluating the impact of adopting FSP 142-3 on our consolidated financial statements.

### Derivative Instruments and Hedging Activities

In March 2008, the FASB issued SFAS No. 161, "*Disclosures about Derivative Instruments and Hedging Activities — An Amendment of FASB Statement No. 133*" (SFAS 161). SFAS 161 amends and expands the disclosures required by SFAS 133 to provide an enhanced understanding of the reasons an entity engages in derivative instruments and hedging activities. It also requires disclosures about how such items are accounted for under SFAS 133 and how they impact the entity's financial statements. The provisions of SFAS 161 are effective beginning January 1, 2009. The adoption of this statement is not expected to have a material impact on our consolidated financial statements.

### Business Combinations

In December 2007, the FASB issued SFAS No. 141 (revised 2007), "*Business Combinations*" (SFAS 141(R)), which requires the acquiring entity to recognize assets acquired, liabilities assumed and any non-controlling interest in the acquired at the acquisition date, measured at the fair values as of that date, eliminating the "allocation period" allowed under SFAS 141. Among other changes, SFAS 141(R) includes the requirement that acquisition-related

59

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

(transition) costs be recognized separately from the acquisition and expensed as incurred, instead of accounted for as a cost of the acquired business. This statement is effective for us for business combinations for which the acquisition date is on or after January 1, 2009 and for certain income tax effects related to prior business combinations beginning January 1, 2009. The impact of adopting SFAS 141(R) will be dependent on future business combinations, if any, that we may pursue after its effective date.

### *Non-controlling Interests*

In December 2007, the FASB issued SFAS No 160, *"Noncontrolling Interests in Consolidated Financial Statements — an amendment of ARB No. 51"* (SFAS 160), which establishes accounting and reporting standards for the noncontrolling interest in a subsidiary and for the deconsolidation of a subsidiary. SFAS 160 clarifies that a noncontrolling interest in a subsidiary, which is sometimes referred to as unconsolidated investment, is an ownership interest in the consolidated entity that should be reported as a component of equity in the consolidated financial statements. Among other requirements, SFAS 160 requires consolidated net income to be reported at amounts that include the amounts attributable to both the parent and the non-controlling interest. It also requires disclosure, on the face of the consolidated income statement, of the amounts of consolidated net income attributable to the parent and to the noncontrolling interest. The provisions of SFAS 160 are effective for us on January 1, 2009. The adoption of this statement is not expected to have a material impact on our consolidated financial statements.

During our examination of SFAS 160 and its impact on our current accounting, we determined that balances historically designated as "non-controlling interest" in our consolidated preneed funeral and cemetery trusts and our cemetery perpetual care trusts do not meet the criteria for non-controlling interest as prescribed by SFAS 160. SFAS 160 indicates that only a financial instrument classified as equity in the trusts' financial statements can be a non-controlling interest in the consolidated financial statements. The interest related to our merchandise and service trusts is classified as a liability because the preneed contracts underlying these trusts are unconditionally redeemable upon the occurrence of an event that is certain to occur. Since the earnings from our cemetery perpetual care trusts are used to support the maintenance of our cemeteries, we believe the interest in these trusts also retains the characteristics of a liability. Accordingly, effective December 31, 2008, the amounts historically described as *"Non-controlling interest in funeral and cemetery trusts"* are characterized as either *"Deferred preneed funeral revenues held in trust"* or *"Deferred preneed cemetery revenues held in trust"*, as appropriate. The amounts historically described as *"Non-controlling interest in cemetery perpetual care trusts"* are characterized as *"Care Trusts' Corpus"*.

### *Split-Dollar Life Insurance Agreements*

In March 2007, the FASB ratified EITF Issue No. 06-10 *"Accounting for Collateral Assignment Split-Dollar Life Insurance Agreements"* (EITF 06-10). EITF 06-10 provides guidance for determining a liability for the postretirement benefit obligation as well as recognition and measurement of the associated asset on the basis of the terms of a collateral assignment agreement. We adopted the provisions of EITF 06-10 effective January 1, 2008. As a result of our adoption, we recorded a $3.3 million cumulative-effect adjustment which increased our *Accumulated deficit* as of January 1, 2008.

### *Fair Value Option*

In February 2007, the FASB issued SFAS No. 159, *"The Fair Value Option for Financial Assets and Financial Liabilities"* (SFAS 159). SFAS 159 permits entities to choose to measure various financial assets and financial liabilities at fair value. Unrealized gains and losses on items for which the fair value option has been elected are reported in earnings. The fair value option may be elected on an instrument-by-instrument basis, as long as it is applied to the instrument in its entirety. The election is irrevocable, unless an event specified in SFAS 159 occurs that results in a new election date. We adopted the provisions of SFAS 159 effective January 1, 2008. The adoption

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

of SFAS 159 had no impact on our consolidated financial statements as we elected not to measure any additional financial instruments at fair value as of the date of adoption.

### Defined Benefit Pensions

In September 2006, the FASB issued SFAS No. 158, *"Employers' Accounting for Defined Benefit Pension and Other Postretirement Plans — an amendment of FASB Statements No. 87, 88, 106, and 132(R)"* (SFAS 158), which requires recognition of the funded status of a benefit plan in the balance sheet. SFAS 158 also requires recognition, in *Other comprehensive income*, of certain gains and losses that arise during the period but which were deferred under previous pension accounting rules. SFAS 158 also modified the requirements for the timing of reports and disclosures. SFAS 158 provides recognition and disclosure elements that were effective for us during the year ended December 31, 2006 and measurement date elements are effective for us during the year ended December 31, 2008. We terminated our cash balance plan in 2007. We adopted the recognition and disclosure element of SFAS 158 effective December 31, 2006 and as a result we reclassified $0.6 million of unamortized prior service costs from *Other long-term liabilities* to *Accumulated other comprehensive income*.

### Fair Value Measurements

In September 2006, the FASB issued SFAS No. 157, *"Fair Value Measurements"* (SFAS 157). SFAS 157 defines fair value as the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date, establishes a framework for measuring fair value, and expands disclosures about instruments measured at fair value. SFAS 157 establishes a three-level valuation hierarchy for disclosure of fair value measurements. The valuation hierarchy is based upon the transparency of inputs to the valuation of an asset or liability as of the measurement date. The three levels are defined as follows:

- Level 1 — inputs to the valuation methodology are quoted prices (unadjusted) for identical assets or liabilities in active markets;

- Level 2 — inputs to the valuation methodology include quoted prices for similar assets or liabilities in active markets, and inputs that are observable for the asset or liability, either directly or indirectly, for substantially the full term of the financial instrument;

- Level 3 — inputs to the valuation methodology are unobservable and significant to the fair value measurement.

An asset's or liability's categorization within the valuation hierarchy is based upon the lowest level of input that is significant to the fair value measurement.

In February 2008, the FASB issued FASB Staff Position (FSP) FAS 157-1. *"Application of FASB Statement No. 157 to FASB Statement 13 and Other Accounting Pronouncements that Address Fair Value Measurements for Purposes of Lease Classification or Measurement under Statement 13"* (FSP 157-1) and FSP No. FAS 157-2, *"Effective Date of FASB Statement No. 157"* (FSP 157-2). FSP 157-1 amends SFAS 157 to exclude SFAS No. 13, "Accounting for Leases" and its related accounting pronouncements that address leasing transactions. FSP 157-2 provides a one-year deferral of the effective date of SFAS 157 for non-financial assets and liabilities, except those that are recognized or disclosed in the financial statements at fair value at least annually. In accordance with FSP 157-2, we adopted the provisions of SFAS 157 for our financial assets and liabilities that are measured on a recurring basis at fair value, effective January 1, 2008. These financial assets include the investments of our funeral, cemetery, and cemetery perpetual care trusts. For additional disclosures required by FSP 157 for these assets, see Notes 4, 5, and 6.

As allowed by FSP 157-2, the provisions of SFAS 157 have not been applied to our non-financial assets and liabilities. The major categories of assets and liabilities that are subject to non-recurring fair value measurement, for which we have not yet applied the provisions of SFAS 157, are as follows: reporting units measured at fair value in

61

Table of Contents

## SERVICE CORPORATION INTERNATIONAL
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

the first step of a goodwill impairment test under SFAS 142; indefinite-lived intangible assets measured at fair value for impairment assessment under SFAS 142; non-financial assets measured at fair value for an impairment assessment under SFAS 144; and non-financial assets and liabilities initially measured at fair value in a business combination under SFAS 141.

In October 2008, the FASB issued FSP No. SFAS 157-3, *"Determining the Fair Value of a Financial Asset When the Market for That Asset Is Not Active"* (FSP SFAS 157-3), which clarifies the application of SFAS 157 in a market that is not active and provides an example to illustrate key considerations in determining the fair value of a financial asset when the market for that financial asset is not active. FSP SFAS 157-3 is effective immediately, including prior periods for which financial statements have not been issued. We adopted FSP SFAS 157-3 effective with our financial statements for the quarter ended September 30, 2008. The adoption of FSP SFAS 157-3 had no impact on our consolidated results of operations, financial position, or cash flows.

*Uncertainty in Income Taxes*

In June 2006, the FASB issued FIN 48, *"Accounting for Uncertainty in Income Taxes — an Interpretation of FASB Statement No. 109"* (FIN 48), which clarifies the accounting for uncertain income tax positions recognized in an enterprise's financial statements in accordance with SFAS No. 109, *"Accounting for Income Taxes"*. This interpretation requires companies to use a prescribed model for assessing the financial statement recognition and measurement of all tax positions taken or expected to be taken in its tax returns. FIN 48 also provides guidance on derecognition, classification, interest and penalties, accounting in interim periods, disclosure, and transition. We adopted the provisions of FIN 48 on January 1, 2007. See Note 9 for more information.

### 4. Preneed Funeral Activities

*Preneed Funeral Receivables and Trust Investments*

*Preneed funeral receivables and trust investments*, net of allowance for cancellation, represent trust investments, including investment earnings, and customer receivables related to unperformed, price-guaranteed preneed funeral contracts. Our funeral merchandise and service trusts are defined as variable interest entities pursuant to FIN46(R); also, per FIN46(R), we have determined that we are the primary beneficiary of these trusts, as we absorb both a majority of the losses and returns associated with our trusts. Our cemetery trust investments detailed in Notes 5 and 6 are accounted for in the same manner, in accordance with FIN46(R). When we receive payments from the customer, we deposit the amount required by law into the trust and reclassify the corresponding amount from *Deferred preneed funeral revenues* into *Deferred preneed funeral receipts held in trust*. Amounts are withdrawn from the trusts after the contract obligations are performed. Cash flows from preneed funeral contracts are presented as operating cash flows in our consolidated statement of cash flows.

*Preneed funeral receivables and trust investments* are reduced by the trust investment earnings (realized and unrealized) that we have been allowed to withdraw in certain states prior to maturity. These earnings are recorded in *Deferred preneed funeral revenues* until the service is performed or the merchandise is delivered.

62

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The table below sets forth the investment-related activities associated with our preneed funeral merchandise and service trusts for the years ended December 31:

|  | 2008 | 2007 | 2006 |
|---|---|---|---|
|  | (In thousands) | | |
| Deposits | $ 93,586 | $ 84,712 | $ 77,691 |
| Withdrawals | $ 122,294 | $ 176,528 | $ 109,758 |
| Purchases of available-for-sale securities | $ 383,975 | $ 1,093,255 | $ 646,667 |
| Sales of available-for-sale securities | $ 382,940 | $ 901,609 | $ 862,507 |
| Realized gains from sales of available-for-sale securities | $ 46,703 | $ 106,394 | $ 83,350 |
| Realized losses from sales of available-for-sale securities | $ (76,192) | $ (29,940) | $ (36,653) |

The components of *Preneed funeral receivables and trust investments* in our consolidated balance sheet at December 31 were as follows:

|  | 2008 | 2007 |
|---|---|---|
|  | (In thousands) | |
| Trust investments, at market | $ 636,712 | $ 848,195 |
| Cash and cash equivalents | 125,657 | 194,728 |
| Insurance-backed fixed income securities | 216,394 | 201,258 |
| Receivables from customers | 249,224 | 225,905 |
| Unearned finance charge | (6,316) | (5,961) |
|  | 1,221,671 | 1,464,125 |
| Allowance for cancellation | (29,979) | (29,722) |
| Preneed funeral receivables and trust investments | $ 1,191,692 | $ 1,434,403 |

An allowance for contract cancellation is estimated based on our historical experience. If a preneed funeral contract is cancelled prior to delivery, state or provincial law determines the amount of the refund owed to the customer, if any, including the amount of the attributed investment earnings. Upon cancellation, we receive the amount of principal deposited to trust and previously undistributed net investment earnings and, where required, issue a refund to the customer. We retain excess funds, if any, and recognize the attributed investment earnings (net of any investment earnings payable to the customer) as revenue in our consolidated statement of operations. In certain jurisdictions, we may be obligated to fund any shortfall if the amounts deposited by the customer exceed the funds in trust. Funds in trust assets exceeded customer deposits at the year ended December 31, 2008.

63

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The activity in *Preneed funeral receivables and trust investments* for the years ended December 31 was as follows:

| | 2008 | 2007 | 2006 |
|---|---|---|---|
| | | (In thousands) | |
| Beginning balance — Preneed funeral receivables and trust investments | $ 1,434,403 | $ 1,516,676 | $ 1,226,192 |
| Net preneed contract sales | 155,988 | 146,250 | 121,287 |
| Cash receipts from customers | (119,981) | (119,458) | (110,438) |
| Deposits to trust | 93,586 | 84,712 | 77,691 |
| Acquisitions (dispositions) of businesses, net | 23,838 | (73,502) | 256,138 |
| Net undistributed investment (losses) earnings(1) | (217,767) | 54,397 | 82,007 |
| Maturities and distributed earnings | (144,257) | (184,579) | (130,852) |
| Change in cancellation allowance | (603) | 8,816 | (532) |
| Effect of foreign currency and other | (33,515) | 1,091 | (4,817) |
| Ending balance — Preneed funeral receivables and trust investments | $ 1,191,692 | $ 1,434,403 | $ 1,516,676 |

(1) Includes both realized and unrealized investment (losses) earnings.

64

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The cost and market values associated with our funeral trust investments recorded at fair market value at December 31, 2008 and 2007 are detailed below. Cost reflects the investment (net of redemptions) of control holders in common trust funds, mutual funds, and private equity investments. Fair market value represents the value of the underlying securities held by the common trust funds, mutual funds at published values, and the estimated market value of private equity investments. The fair market value of funeral trust investments was 76% and 101% of the related cost basis of such investments as of December 31, 2008 and 2007, respectively.

| | December 31, 2008 | | | |
| --- | --- | --- | --- | --- |
| | Cost | Unrealized Gains | Unrealized Losses | Fair Market Value |
| | (In thousands) | | | |
| Fixed income securities: | | | | |
| U.S. Treasury | 61,907 | 569 | (17,533) | 44,943 |
| Foreign government | 86,216 | 951 | (828) | 86,339 |
| Corporate | 21,144 | 106 | (670) | 20,580 |
| Mortgage-backed | 26,230 | 233 | (7,728) | 18,735 |
| Asset-backed | 20 | — | — | 20 |
| Equity securities: | | | | |
| Common stock | 343,144 | 3,244 | (102,782) | 243,606 |
| Mutual funds: | | | | |
| Equity | 98,499 | 691 | (33,276) | 65,914 |
| Fixed income | 156,393 | 2,475 | (40,380) | 118,488 |
| Private equity and other | 47,858 | 2,697 | (9,675) | 40,880 |
| Trust investments | $ 841,411 | $ 10,966 | $ (212,872) | $ 639,505 |
| Less: Assets associated with businesses held for sale | | | | (2,793) |
| | | | | $ 636,712 |

65

Table of Contents

**SERVICE CORPORATION INTERNATIONAL**

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Cost | Unrealized Gains | Unrealized Losses | Fair Market Value |
|---|---|---|---|---|
| | | December 31, 2007 | | |
| | | (In thousands) | | |
| Fixed income securities: | | | | |
| U.S. Treasury | 79,430 | 630 | (378) | 79,682 |
| Foreign government | 60,330 | 344 | (440) | 60,234 |
| Corporate | 14,937 | 206 | (233) | 14,910 |
| Mortgage-backed | 2,670 | 53 | (17) | 2,706 |
| Asset-backed | 33 | — | — | 33 |
| Equity securities: | | | | |
| Preferred stock | 1,581 | 36 | (23) | 1,594 |
| Common stock | 378,628 | 12,415 | (6,131) | 384,912 |
| Mutual funds: | | | | |
| Equity | 127,606 | 3,991 | (2,246) | 129,351 |
| Fixed income | 140,857 | 3,005 | (1,612) | 142,250 |
| Private equity and other | 43,820 | 2,815 | (5,297) | 41,338 |
| Trust investments | $ 849,892 | $ 23,495 | $ (16,377) | $ 857,010 |
| Less: Assets associated with businesses held for sale | | | | (8,815) |
| | | | | $ 848,195 |

Where quoted prices are available in an active market, securities held by the common trust funds and mutual funds are classified as Level 1 investments pursuant to the three-level valuation hierarchy provided in SFAS 157. Our investments classified as Level 1 securities include common stock and mutual funds.

Where quoted market prices are not available for the specific security, fair values are estimated by using either quoted prices of securities with similar characteristics or a fair value model with observable inputs that include a combination of interest rates, yield curves, credit risks, prepayment speeds, rating, and tax-exempt status. These securities included United States (U.S.) Treasury, foreign government, corporate, mortgage-backed and asset-backed fixed income securities, and preferred stock equity securities, all of which are classified within Level 2 of the SFAS 157 valuation hierarchy.

The valuation of private equity and other investments requires significant management judgment due to the absence of quoted market prices, inherent lack of liquidity, or the long-term nature of such assets. The fair value of these investments is estimated based on the market value of the underlying real estate and private equity investments. The underlying real estate value is determined using the most recent available appraisals. Private equity investments are valued using market appraisals or a discounted cash flow methodology depending on the nature of the underlying assets. The appraisals assess value based on a combination of replacement cost, comparative sales analysis, and discounted cash flow analysis. As a result of the adoption of SFAS 157 in the first quarter of 2008, we recorded a $3.5 million decrease in the fair value of our private equity investments held by the funeral trusts to reflect time-based restrictions on the exit from the investments. As a result of the adoption, we recorded the decrease and a corresponding increase in *Other comprehensive income* in our consolidated balance sheet. Our private equity and other investments are included within Level 3 of the SFAS 157 valuation hierarchy. We further reviewed our private equity and other investments in accordance with the guidance included in FSP SFAS 157-3 (see Note 3) and determined that no additional adjustments to fair value were required.

66

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

SERVICE CORPORATION INTERNATIONAL

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The inputs into the fair value of our market-based funeral trust investments are categorized as follows:

| | December 31, 2008 | | | |
| --- | --- | --- | --- | --- |
| | Quoted Market Prices in Active Markets (Level 1) | Significant Other Observable Inputs (Level 2) | Significant Unobservable Inputs (Level 3) | Fair Market Value |
| | | | (In thousands) | |
| Trust investments | $ 428,008 | $ 170,617 | $ 40,880 | $ 639,505 |

The change in our market-based funeral trust investments with significant unobservable inputs (Level 3) is as follows (in thousands):

| | |
| --- | --- |
| Fair market value, January 1, 2008 | $ 37,865 |
| Total unrealized losses included in *Other comprehensive income*(1) | (5,920) |
| Total realized gains included in *Other expense, net*(2) | 420 |
| Purchases, sales, contributions, and distributions, net | 8,515 |
| Fair market value, December 31, 2008 | $ 40,880 |

---

(1) All gains (losses) recognized in *Other comprehensive income* for our funeral trust investments are attributable to our preneed customers and are offset by a corresponding increase (decrease) in *Deferred preneed funeral receipts held in trust.* See Note 7 for further information related to our *Deferred preneed funeral receipts held in trust.*

(2) All gains (losses) recognized in *Other expense, net* for our funeral trust investments are attributable to our preneed customers and are offset by a corresponding reclassification in *Other expense, net* to *Deferred preneed funeral receipts held in trust.* See Note 7 for further information related to our *Deferred preneed funeral receipts held in trust.*

Maturity dates of our fixed income securities range from 2009 to 2038. Maturities of fixed income securities at December 31, 2008 are estimated as follows:

| | Fair Market Value |
| --- | --- |
| | (In thousands) |
| Due in one year or less | $ 63,945 |
| Due in one to five years | 42,423 |
| Due in five to ten years | 37,156 |
| Thereafter | 27,093 |
| | $ 170,617 |

We assess our trust investments for other-than-temporary declines in fair value on a quarterly basis. Impairment charges, if any, as a result of this assessment, which reduce the *Preneed funeral receivables and trust investments,* are recognized as investment losses in *Other expense, net* in our consolidated statement of operations and are offset by the corresponding reclassifications in *Other expense, net,* which reduces *Deferred preneed funeral receipts held in trust.* See Note 7 for further information related to our *Deferred preneed funeral receipts held in trust.* During 2008 we recorded a $9.1 million impairment charge for other-than-temporary declines in fair value related to unrealized losses on certain equity securities. In the second quarter of 2007, we recorded a $3.6 million impairment charge for other-than-temporary declines in fair value related to unrealized losses on certain private equity and other investments.

We have determined that the remaining unrealized losses in our funeral trust investments at both December 31, 2008 and 2007 are considered temporary in nature, as the unrealized losses were due to temporary fluctuations in

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

SERVICE CORPORATION INTERNATIONAL

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

interest rates and equity prices. The investments are diversified across multiple industry segments using a balanced allocation strategy to minimize long-term risk. The unrealized losses reflect the effects of the current economic crisis. We believe that none of the securities are other-than-temporarily impaired based on our analysis of the investments. Our analysis included a review of the portfolio holdings and discussions with the individual money managers as to the sector exposures, credit ratings and the severity and duration of the unrealized losses. Our funeral trust investment unrealized losses, their associated fair market values and the duration of unrealized losses as of December 31, 2008, are shown in the following table.

| | Less Than 12 Months | | Greater Than 12 Months | | Total | |
|---|---|---|---|---|---|---|
| | Fair Market Value | Unrealized Losses | Fair Market Value | Unrealized Losses | Fair Market Value | Unrealized Losses |
| | | | (In thousands) | | | |
| Fixed income securities: | | | | | | |
| U.S. Treasury | $ 18,750 | $ (7,944) | $ 15,513 | $ (9,589) | $ 34,263 | $ (17,533) |
| Foreign government | 19,711 | (828) | — | — | 19,711 | (828) |
| Corporate | 9,751 | (453) | 411 | (217) | 10,162 | (670) |
| Mortgage-backed | 8,118 | (3,495) | 6,925 | (4,233) | 15,043 | (7,728) |
| Equity securities: | | | | | | |
| Common stock | 124,474 | (52,652) | 91,003 | (50,130) | 215,477 | (102,782) |
| Mutual funds: | | | | | | |
| Equity | 33,709 | (15,589) | 27,181 | (17,687) | 60,890 | (33,276) |
| Fixed income | 43,432 | (19,348) | 33,975 | (21,032) | 77,407 | (40,380) |
| Private equity and other | 2,317 | (995) | 18,509 | (8,680) | 20,826 | (9,675) |
| Total temporarily impaired securities | $ 260,262 | $ (101,304) | $ 193,517 | $ (111,568) | $ 453,779 | $ (212,872) |

Earnings from all trust investments are recognized in current funeral revenues when the service is performed or merchandise is delivered. In addition, we are entitled to retain, in certain jurisdictions, a portion of collected customer payments when a customer cancels a preneed contract; these amounts are also recognized in current revenues. Recognized earnings (realized and unrealized) related to these trust investments were $37.5 million, $45.8 million, and $35.1 million for the years ended December 31, 2008, 2007, and 2006, respectively.

*Deferred Preneed Funeral Revenues*

At December 31, 2008 and 2007, *Deferred preneed funeral revenues*, net of allowance for cancellation, represent future funeral service revenues, including distributed trust investment earnings associated with unperformed trust-funded preneed funeral contracts that are not held in trust accounts. *Deferred preneed funeral revenues* are recognized in current funeral revenues when the service is performed or merchandise is delivered. Future funeral service revenues and net trust investment earnings that are held in trust accounts are included in *Deferred preneed funeral receipts held in trust.*

68

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The following table summarizes the activity in *Deferred preneed funeral revenues* for the years ended December 31 were as follows:

| | 2008 | 2007 | 2006 |
|---|---|---|---|
| | | (In thousands) | |
| Beginning balance — Deferred preneed funeral revenues, net | $ 526,668 | $ 537,792 | $ 535,384 |
| Net preneed contract sales | 149,150 | 135,417 | 107,291 |
| Acquisitions (dispositions) of businesses, net | 41,469 | (120,290) | 25,758 |
| Net investment (losses) earnings(1) | (191,601) | 56,779 | 76,127 |
| Recognized deferred preneed revenues | (162,409) | (173,126) | (136,370) |
| Change in cancellation allowance | (2,336) | 6,499 | (7,815) |
| Change in deferred preneed funeral receipts held in trust | 222,565 | 76,370 | (52,512) |
| Effect of foreign currency and other | 4,692 | 7,227 | (10,065) |
| Ending balance — Deferred preneed funeral revenues, net | $ 588,198 | $ 526,668 | $ 537,792 |

———————————

(1) Includes both realized and unrealized investment (losses) earnings.

### *Insurance-Funded Preneed Funeral Contracts*

Not included in our consolidated balance sheet are insurance-funded preneed funeral contracts that will be funded by life insurance or annuity contracts issued by third party insurers. The proceeds of the life insurance policies or annuity contracts will be reflected in funeral revenues as these funerals are performed by the Company.

### 5.  Preneed Cemetery Activities

### *Preneed Cemetery Receivables and Trust Investments*

*Preneed cemetery receivables and trust investments*, net of allowance for cancellation, represent trust investments, including investment earnings, and customer receivables, net of unearned finance charges, for contracts sold in advance of when the property interment rights, merchandise, or services are needed. Our cemetery merchandise and service trusts are defined as variable interest entities pursuant to FIN46(R); also, per FIN46(R), we have determined that we are the primary beneficiary of these trusts, as we absorb both a majority of the losses and returns associated with our trusts. The trust investments detailed in Notes 4 and 6 are accounted for in the same manner, in accordance with FIN46(R). When we receive payments from the customer, we deposit the amount required by law into the trust, remove the corresponding amount from *Deferred preneed cemetery revenues*, and record the amount into *Deferred preneed cemetery receipts held in trust*. Amounts are withdrawn from the trusts when the contract obligations are performed. Cash flows from preneed cemetery contracts are presented as operating cash flows in our consolidated statement of cash flows.

*Preneed cemetery receivables and trust investments* are reduced by the trust investment earnings (realized and unrealized) that we have been allowed to withdraw in certain states prior to maturity. These earnings are recorded in *Deferred preneed cemetery revenues* until the service is performed or the merchandise is delivered.

69

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The table below sets forth the investment-related activities associated with our cemetery merchandise and service trusts for the years ended December 31:

|  | 2008 | 2007 | 2006 |
|---|---|---|---|
|  | (In thousands) | | |
| Deposits | $ 106,724 | $ 115,651 | $ 117,518 |
| Withdrawals | $ 132,725 | $ 148,627 | $ 88,673 |
| Purchases of available-for-sale securities | $ 846,679 | $ 1,067,208 | $ 772,923 |
| Sales of available-for-sale securities | $ 424,009 | $ 1,377,914 | $ 990,138 |
| Realized gains from sales of available-for-sale securities | $ 47,411 | $ 196,880 | $ 100,326 |
| Realized losses from sales of available-for-sale securities | $ (85,527) | $ (77,529) | $ (47,256) |

The components of *Preneed cemetery receivables and trust investments* in the consolidated balance sheet at December 31 were as follows:

|  | 2008 | 2007 |
|---|---|---|
|  | (In thousands) | |
| Trust investments, at market | $ 659,149 | $ 759,218 |
| Cash and cash equivalents | 139,753 | 399,301 |
| Receivables from customers | 341,688 | 351,409 |
| Unearned finance charges | (48,999) | (47,527) |
|  | 1,091,591 | 1,462,398 |
| Allowance for cancellation | (28,639) | (34,341) |
| Preneed cemetery receivables and trust investments | $ 1,062,952 | $ 1,428,057 |

An allowance for contract cancellation is estimated based on historical experience. If a preneed cemetery contract is cancelled prior to delivery, state or provincial law determines the amount of the refund owed to the customer, if any, including the amount of the attributed investment earnings. Upon cancellation, we receive the amount of principal deposited to trust and previously undistributed net investment earnings and, where required, issue a refund to the customer. We retain excess funds, if any, and recognize the attributed investment earnings (net of any investment earnings payable to the customer) as revenue in our consolidated statement of operations. In certain jurisdictions, we may be obligated to fund any shortfall if the amounts deposited by the customer exceed the funds in trust. Funds in trust assets exceeded customer deposits at the year ended December 31, 2008.

70

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

SERVICE CORPORATION INTERNATIONAL

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The activity in *Preneed cemetery receivables and trust investments* for the years ended December 31 was as follows:

|  | 2008 | 2007 | 2006 |
|---|---|---|---|
|  |  | (In thousands) |  |
| Beginning balance — Preneed cemetery receivables and trust investments | $ 1,428,057 | $ 1,522,584 | $ 1,288,515 |
| Net preneed contract sales | 424,939 | 499,965 | 324,713 |
| Acquisitions (dispositions) of businesses, net | 8,728 | (105,428) | 155,224 |
| Net undistributed investment (losses) earnings(1) | (336,263) | 88,700 | 107,760 |
| Cash receipts from customers, net of refunds | (432,468) | (521,475) | (381,688) |
| Deposits to trust | 106,724 | 115,651 | 117,518 |
| Maturities, deliveries, and associated earnings | (132,725) | (148,627) | (88,673) |
| Change in cancellation allowance | 8,328 | 9,124 | 890 |
| Effect of foreign currency and other | (12,368) | (32,437) | (1,675) |
| Ending balance — Preneed cemetery receivables and trust investments | $ 1,062,952 | $ 1,428,057 | $ 1,522,584 |

(1) Includes both realized and unrealized investment (losses) earnings.

The cost and market values associated with our cemetery merchandise and service trust investments recorded at fair market value at December 31, 2008 and 2007 are detailed below. Cost reflects the investment (net of redemptions) of control holders in common trust funds, mutual funds, and private equity investments. Fair market value represents the value of the underlying securities held by the common trust funds, mutual funds at published values, and the estimated market value of private equity investments. The fair market value of cemetery trust investments was 71% and 104% of the related cost basis of such investments as of December 31, 2008 and 2007, respectively.

71

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Cost | Unrealized Gains | Unrealized Losses | Fair Market Value |
|---|---|---|---|---|
| | | December 31, 2008 | | |
| | | (In thousands) | | |
| Fixed income securities: | | | | |
| U.S. Treasury | 60,699 | 139 | (19,146) | 41,692 |
| Foreign government | 11,949 | 466 | — | 12,415 |
| Corporate | 9,726 | 130 | (520) | 9,336 |
| Mortgage-backed | 21,832 | 50 | (6,867) | 15,015 |
| Equity securities: | | | | |
| Common stock | 457,248 | 1,279 | (136,109) | 322,418 |
| Mutual funds: | | | | |
| Equity | 203,032 | 480 | (67,330) | 136,182 |
| Fixed income | 189,492 | 952 | (55,452) | 134,992 |
| Private equity and other | 36,949 | 1,211 | (6,323) | 31,837 |
| Trust investments | $ 990,927 | $ 4,707 | $ (291,747) | $ 703,887 |
| Less: Assets associated with businesses held for sale | | | | (44,738) |
| | | | | $ 659,149 |

| | Cost | Unrealized Gains | Unrealized Losses | Fair Market Value |
|---|---|---|---|---|
| | | December 31, 2007 | | |
| | | (In thousands) | | |
| Fixed income securities: | | | | |
| U.S. Treasury | 19,371 | 899 | (205) | 20,065 |
| Foreign government | 14,016 | 296 | — | 14,312 |
| Corporate | 17,297 | 452 | (90) | 17,659 |
| Equity securities: | | | | |
| Preferred stock | 2,979 | 144 | (33) | 3,090 |
| Common stock | 402,028 | 20,923 | (5,956) | 416,995 |
| Mutual funds: | | | | |
| Equity | 182,214 | 12,905 | (2,861) | 192,258 |
| Fixed income | 126,728 | 5,535 | (1,185) | 131,078 |
| Private equity and other | 26,124 | 2,103 | (3,493) | 24,734 |
| Trust investments | $ 790,757 | $ 43,257 | $ (13,823) | $ 820,191 |
| Less: Assets associated with businesses held for sale | | | | (60,976) |
| | | | | $ 759,215 |

Where quoted prices are available in an active market, securities held by the common trust funds and mutual funds are classified as Level 1 investments pursuant to the three-level valuation hierarchy provided in SFAS 157. Our investments classified as Level 1 securities include common stock and mutual funds.

72

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

SERVICE CORPORATION INTERNATIONAL

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

Where quoted market prices are not available for the specific security, fair values are estimated by using either quoted prices of securities with similar characteristics or a fair value model with observable inputs that include a combination of interest rates, yield curves, credit risks, prepayment speeds, rating, and tax-exempt status. These securities included United States (U.S.) Treasury, foreign government, corporate, and mortgage-backed fixed income securities, and preferred stock equity securities, all of which are classified within Level 2 of the SFAS 157 valuation hierarchy.

The valuation of private equity and other investments requires significant management judgment due to the absence of quoted market prices, inherent lack of liquidity, or the long-term nature of such assets. The fair value of these investments is estimated based on the market value of the underlying real estate and private equity investments. The underlying real estate fair value is determined using the most recent available appraisals. Private equity investments are valued using market appraisals or a discounted cash flow methodology depending on the nature of the underlying assets. The appraisals assess value based on a combination of replacement cost, comparative sales analysis, and discounted cash flow analysis. As a result of the adoption of SFAS 157 in the first quarter of 2008, we recorded a $2.9 million decrease in the fair value of our private equity investments held by the cemetery merchandise and service trusts to reflect time-based restrictions on the exit from the investments. As a result of the adoption, we recorded the decrease and a corresponding increase in *Other comprehensive income* in our consolidated balance sheet. Our private equity and other investments are included within Level 3 of the SFAS 157 valuation hierarchy. We further reviewed our private equity and other investments in accordance with the guidance included in FSP SFAS 157-3 (see Note 3) and determined that no additional adjustments to fair value were required.

The inputs into the fair value of our market-based cemetery merchandise and service trust investments are categorized as follows:

| | December 31, 2008 | | | |
| --- | --- | --- | --- | --- |
| | Quoted Market Prices in Active Markets (Level 1) | Significant Other Observable Inputs (Level 2) | Significant Unobservable Inputs (Level 3) | Fair Market Value |
| | | | (In thousands) | |
| Trust investments | $ 593,592 | $ 78,458 | $ 31,837 | $ 703,887 |

The change in our market-based cemetery merchandise and service trust investments with significant unobservable inputs (Level 3) is as follows (in thousands):

| | |
| --- | --- |
| Fair market value, January 1, 2008 | $ 21,809 |
| Total unrealized losses included in *Other comprehensive income*(1) | (3,109) |
| Total realized gains included in *Other income, net*(2) | 325 |
| Purchases, sales, contributions, and distributions, net | 12,812 |
| Fair market value, December 31, 2008 | $ 31,837 |

(1) All gains (losses) recognized in *Other comprehensive income* for our cemetery merchandise and service trust investments are attributable to our preneed customers and are offset by a corresponding increase (decrease) in *Deferred preneed cemetery receipts held in trust*. See Note 7 for further information related to our *Deferred preneed cemetery receipts held in trust.*

(2) All gains (losses) recognized in *Other income, net* for our cemetery merchandise and service trust investments are attributable to our preneed customers and are offset by a corresponding increase (decrease) in *Deferred preneed cemetery receipts held in trust*. See Note 7 for further information related to our *Deferred preneed cemetery receipts held in trust.*

73

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

Maturity dates of our fixed income securities range from 2009 to 2038. Maturities of fixed income securities at December 31, 2008 are estimated as follows:

|  | Fair Market Value (In thousands) |
|---|---|
| Due in one year or less | $ 1,286 |
| Due in one to five years | 25,756 |
| Due in five to ten years | 25,118 |
| Thereafter | 26,298 |
|  | $ 78,458 |

We assess our trust investments for other-than-temporary declines in fair value on a quarterly basis. Impairment charges, if any, as a result of this assessment, which reduce the *Preneed cemetery receivables and trust investments*, are recognized as investment losses in *Other expense, net* in our consolidated statement of operations and are offset by the corresponding reclassification in *Other expense, net*, which reduces *Deferred preneed cemetery receipts held in trust*. See Note 7 for further information related to our *Deferred preneed cemetery receipts held in trust*. During 2008, we recorded an $11.4 million impairment charge for other-than-temporary declines in fair value related to unrealized losses on certain equity securities. In the second quarter of 2007, we recorded a $3.2 million impairment charge for other-than-temporary declines in fair value related to unrealized losses on certain private equity and other investments.

We have determined that the remaining unrealized losses in our cemetery trust investments are considered temporary in nature, as the unrealized losses were due to temporary fluctuations in interest rates and equity prices. The investments are diversified across multiple industry segments using a balanced allocation strategy to minimize long-term risk. The unrealized losses reflect the effects of the current economic crisis. We believe that none of the securities are other-than-temporarily impaired based on our analysis of the investments, which included a review of the portfolio holdings, discussions with the individual money managers as to the sector exposures, credit ratings, and the severity and duration of the unrealized losses. Our cemetery trust investment unrealized losses, their associated fair market value and the duration of unrealized losses as of December 31, 2008, are shown in the following table.

| | Less Than 12 Months | | Greater Than 12 Months | | Total | |
|---|---|---|---|---|---|---|
| | Fair Market Value | Unrealized Losses | Fair Market Value | Unrealized Losses | Fair Market Value | Unrealized Losses |
| | (In thousands) | | | | | |
| Fixed income securities: | | | | | | |
| U.S. Treasury | $ 34,817 | $ (15,637) | $ 5,757 | $ (3,509) | $ 40,574 | $ (19,146) |
| Corporate | 4,204 | (435) | 113 | (85) | 4,317 | (520) |
| Mortgage-backed | 12,491 | (5,610) | 2,066 | (1,257) | 14,557 | (6,867) |
| Equity securities: | | | | | | |
| Common stock | 265,985 | (119,166) | 42,575 | (16,943) | 308,560 | (136,109) |
| Mutual funds: | | | | | | |
| Equity | 101,895 | (46,405) | 29,282 | (20,925) | 131,177 | (67,330) |
| Fixed income | 100,882 | (46,308) | 15,045 | (9,144) | 115,927 | (55,452) |
| Private equity and other | 1,179 | (413) | 13,469 | (5,910) | 14,648 | (6,323) |
| Total temporarily impaired securities | $ 521,453 | $ (233,974) | $ 108,307 | $ (57,773) | $ 629,760 | $ (291,747) |

74

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

Earnings from all trust investments are recognized in current cemetery revenues when the service is performed or the merchandise is delivered. In addition, we are entitled to retain, in certain jurisdictions, a portion of collected customer payments when a customer cancels a preneed contract; these amounts are also recognized in current revenues. Recognized earnings (realized and unrealized) related to these trust investments were $9.2 million, $25.9 million, and $15.0 million for the years ended December 31, 2008, 2007, and 2006, respectively.

*Deferred Preneed Cemetery Revenues*

At December 31, 2008 and 2007, *Deferred preneed cemetery revenues*, net of allowance for cancellation, represent future cemetery revenues, including distributed trust investment earnings associated with unperformed trust-funded preneed cemetery contracts that are not held in trust accounts. *Deferred preneed cemetery revenues* are recognized in current cemetery revenues when the service is performed or merchandise delivered. Future cemetery revenues and net trust investment earnings that are held in trust accounts are included in *Deferred preneed cemetery receipts held in trust.*

The following table summarizes the activity in *Deferred preneed cemetery revenues* for the years ended December 31:

|  | 2008 | 2007 | 2006 |
|---|---|---|---|
|  |  | (In thousands) |  |
| Beginning balance — Deferred preneed cemetery revenues | $ 753,876 | $ 754,193 | $ 792,485 |
| Net preneed and atneed deferred sales | 338,114 | 374,412 | 311,077 |
| Acquisitions (dispositions) of businesses, net | 529 | (20,321) | (12,073) |
| Net investment (losses) earnings(1) | (299,422) | 91,601 | 103,587 |
| Recognized deferred revenues | (356,501) | (405,891) | (320,076) |
| Change in cancellation allowance | 7,866 | 3,233 | 2,711 |
| Change in deferred preneed cemetery receipts held in trust | 330,333 | (21,347) | (129,180) |
| Effect of foreign currency and other | (3,678) | (22,004) | 5,662 |
| Ending balance — Deferred preneed cemetery revenues | $ 774,117 | $ 753,876 | $ 754,193 |

_____

(1) Includes both realized and unrealized investment (losses) earnings.

### 6. Cemetery Perpetual Care Trusts

We are required by state or provincial law to pay into perpetual care trusts a portion of the proceeds from the sale of cemetery property interment rights. Our cemetery perpetual care trusts are defined as variable interest entities pursuant to FIN46(R); also, per FIN46(R), we have determined that we are the primary beneficiary of these trusts, as we absorb both a majority of the losses and returns associated with our trusts. The trust investments detailed in Notes 4 and 5 are accounted for in the same manner, in accordance with FIN46(R). We consolidate our cemetery perpetual care trust investments with a corresponding amount recorded as *Care trusts' corpus.* Cash flows from cemetery perpetual care contracts are presented as operating cash flows in our consolidated statement of cash flows.

75

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

**SERVICE CORPORATION INTERNATIONAL**

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The table below sets forth the investment-related activities associated with our cemetery perpetual care trusts for the years ended December 31:

|  | 2008 | 2007 | 2006 |
|---|---|---|---|
|  | (In thousands) | | |
| Deposits | $ 23,347 | $ 26,253 | $ 22,477 |
| Withdrawals | $ 31,628 | $ 26,377 | $ 43,254 |
| Purchases of available-for-sale securities | $ 218,140 | $ 727,682 | $ 915,880 |
| Sales of available-for-sale securities | $ 222,445 | $ 470,749 | $ 1,082,707 |
| Realized gains from sales of available-for-sale securities | $ 19,070 | $ 45,203 | $ 40,934 |
| Realized losses from sales of available-for-sale securities | $ (32,312) | $ (15,339) | $ (26,675) |

The components of *Cemetery perpetual care trust investments* in our consolidated balance sheet at December 31 were as follows:

|  | 2008 | 2007 |
|---|---|---|
|  | (In thousands) | |
| Trust investments, at market | $ 673,237 | $ 817,228 |
| Cash and cash equivalents | 71,521 | 88,516 |
| Cemetery perpetual care trust investments | $ 744,788 | $ 905,744 |

The cost and market values associated with our cemetery perpetual care trust investments recorded at fair market value at December 31, 2008 and 2007 are detailed below. Cost reflects the investment (net of redemptions) of control holders in common trust funds, mutual funds, and private equity investments. Fair market value represents the value of the underlying securities or cash held by the common trust funds, mutual funds at published value, and the estimated market value of private equity investments. The fair market value of perpetual care trusts was 81% and 100% of the related cost basis of such investments as of December 31, 2008 and 2007, respectively.

|  | December 31, 2008 | | | |
|---|---|---|---|---|
|  | Cost | Unrealized Gains | Unrealized Losses | Fair Market Value |
|  | (In thousands) | | | |
| Fixed income securities: | | | | |
| U.S. Treasury | 5,805 | 769 | (808) | 5,766 |
| Foreign government | 20,837 | 773 | — | 21,610 |
| Corporate | 42,139 | 202 | (5,079) | 37,262 |
| Mortgage-backed | 4,376 | 1 | (835) | 3,542 |
| Equity securities: | | | | |
| Preferred stock | 5,558 | 1 | (1,186) | 4,373 |
| Common stock | 112,453 | 1,373 | (23,487) | 90,339 |
| Mutual funds: | | | | |
| Equity | 90,044 | 25 | (20,931) | 69,138 |
| Fixed income | 519,132 | 233 | (106,187) | 413,178 |
| Private equity and other | 53,043 | 1,484 | (6,251) | 48,276 |
| Cemetery perpetual care trust investments | $ 853,387 | $ 4,861 | $ (164,764) | $ 693,484 |
| Less: Assets associated with businesses held for sale | | | | (20,247) |
|  | | | | $ 673,237 |

76

---

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Cost | Unrealized Gains | Unrealized Losses | Fair Market Value |
|---|---|---|---|---|
| | | December 31, 2007 | | |
| | | (In thousands) | | |
| Fixed income securities: | | | | |
| U.S. Treasury | 2,647 | 703 | (1) | 3,349 |
| Foreign government | 25,065 | 789 | (13) | 25,841 |
| Corporate | 42,437 | 225 | (555) | 42,107 |
| Mortgage-backed | 348 | 7 | — | 355 |
| Equity securities: | | | | |
| Preferred stock | 2,403 | 13 | (58) | 2,358 |
| Common stock | 128,815 | 3,501 | (2,840) | 129,476 |
| Mutual funds: | | | | |
| Equity | 44,221 | 1,208 | (1,003) | 44,426 |
| Fixed income | 555,509 | 3,256 | (10,714) | 548,051 |
| Private equity and other | 34,894 | 3,145 | (542) | 37,497 |
| Cemetery perpetual care trust investments | $ 836,339 | $ 12,847 | $ (15,726) | $ 833,460 |
| Less: Assets associated with businesses held for sale | | | | (16,232) |
| | | | | $ 817,228 |

Where quoted prices are available in an active market, securities held by the common trust funds and mutual funds are classified as Level 1 investments pursuant to the three-level valuation hierarchy provided in SFAS 157. Our investments classified as Level 1 securities include common stock and mutual funds.

Where quoted market prices are not available for the specific security, fair values are estimated by using either quoted prices of securities with similar characteristics or a fair value model with observable inputs that include a combination of interest rates, yield curves, credit risks, prepayment speeds, rating, and tax-exempt status. These securities included United States (U.S.) Treasury, foreign government, corporate, mortgage-backed and asset-backed fixed income securities, and preferred stock equity securities, all of which are classified within Level 2 of the SFAS 157 valuation hierarchy.

The valuation of private equity and other investments requires significant management judgment due to the absence of quoted market prices, inherent lack of liquidity, or the long-term nature of such assets. The fair value of these investments is estimated based on the market value of the underlying real estate and private equity investments. The underlying real estate value is determined using the most recent available appraisals. Private equity investments are valued using market appraisals or a discounted cash flow methodology depending on the nature of the underlying assets. The appraisals assess value based on a combination of replacement cost, comparative sales analysis, and discounted cash flow analysis. As a result of the adoption of SFAS 157 in the first quarter of 2008, we recorded a $4.9 million decrease in the fair value of our private equity investments held by the cemetery perpetual care trusts to reflect time-based restrictions on the exit from the investments. As a result of the adoption, we recorded the decrease and a corresponding increase in *Other comprehensive income* in our consolidated balance sheet. Our private equity and other investments are included within Level 3 of the SFAS 157 valuation hierarchy. We further reviewed our private equity and other investments in accordance with the guidance included in FSP SFAS 157-3 (see Note 3) and determined that no additional adjustments to fair value were required.

77

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

### SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The inputs into the fair value of our market-based cemetery perpetual care investments are categorized as follows:

| | December 31, 2008 | | | |
|---|---|---|---|---|
| | Quoted Market Prices in Active Markets (Level 1) | Significant Other Observable Inputs (Level 2) | Significant Unobservable Inputs (Level 3) | Fair Market Value |
| | | | (In thousands) | |
| Trust investments | $ 572,655 | $ 72,553 | $ 48,276 | $ 693,484 |

The change in our market-based cemetery perpetual care trust investments with significant unobservable inputs (Level 3) is as follows (in thousands):

| | |
|---|---|
| Fair market value, January 1, 2008 | $ 32,644 |
| Total unrealized losses included in *Other comprehensive income*(1) | (13,569) |
| Total realized gains included in *Other expense, net*(2) | 32 |
| Purchases, sales, contributions, and distributions, net | 29,169 |
| Fair market value, December 31, 2008 | $ 48,276 |

(1) All gains (losses) recognized in *Other comprehensive income* for our cemetery perpetual care trust investments are attributable to our customers and are offset by a corresponding increase (decrease) in *Care trusts' corpus*. See Note 7 for further information related to our *Care trusts' corpus*.

(2) All gains (losses) recognized in *Other expense, net* for our cemetery perpetual care trust investments are attributable to our customers and are offset by a corresponding reclassification in *Other expense, net* to *Care trusts' corpus*. See Note 7 for further information related to our *Care trusts' corpus*.

We assess our trust investments for other-than-temporary declines in fair value on a quarterly basis. Impairment charges, if any, as a result of this assessment, which reduce the *Cemetery perpetual care trust investments*, are recognized as investment losses in *Other expense, net* in our consolidated statement of operations and are offset by the corresponding reclassification in *Other expense, net*, which reduces *Care trusts' corpus*. See Note 7 for further information related to our *Care trusts' corpus*. During 2008 we recorded a $2.0 million impairment charge for other-than-temporary declines in fair value related to unrealized losses on certain equity securities. In the second quarter of 2007, we recorded a $1.2 million impairment charge for other-than-temporary declines in fair value related to unrealized losses on certain private equity and other investments.

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

### SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

We have determined that the remaining unrealized losses in our cemetery perpetual care trust investments are considered temporary in nature, as the unrealized losses were due to temporary fluctuations in interest rates and equity prices. The investments are diversified across multiple industry segments using a balanced allocation strategy to minimize long-term risk. The unrealized losses reflect the effects of the current economic crisis. We believe that none of the securities are other-than-temporarily impaired based on our analysis of the investments. Our analysis included a review of the portfolio holdings, and discussions with the individual money managers as to the sector exposures, credit ratings, and the severity and duration of the unrealized losses. Our cemetery perpetual care trust investment unrealized losses, their associated fair market values and the duration of unrealized losses as of December 31, 2008, are shown in the following table.

| | Less Than 12 Months | | Greater Than 12 Months | | Total | |
|---|---|---|---|---|---|---|
| | Fair Market Value | Unrealized Losses | Fair Market Value | Unrealized Losses | Fair Market Value | Unrealized Losses |
| | (In thousands) | | | | | |
| Fixed income securities: | | | | | | |
| U.S. Treasury | $ 2,729 | $ (435) | $ 1,358 | $ (373) | $ 4,087 | $ (808) |
| Corporate | 17,224 | (2,992) | 9,932 | (2,082) | 27,156 | (5,074) |
| Mortgage-backed | 1,705 | (410) | 1,507 | (425) | 3,212 | (835) |
| Equity securities: | | | | | | |
| Preferred stock | 2,335 | (562) | 2,085 | (624) | 4,420 | (1,186) |
| Common stock | 48,676 | (12,937) | 37,292 | (10,550) | 85,968 | (23,487) |
| Mutual funds: | | | | | | |
| Equity | 40,611 | (11,950) | 28,635 | (8,972) | 69,246 | (20,931) |
| Fixed income | 231,564 | (53,735) | 182,207 | (52,452) | 413,771 | (106,187) |
| Private equity and other | 19,480 | (3,476) | 10,582 | (2,775) | 30,062 | (6,251) |
| Total temporarily impaired securities | $ 364,324 | $ (86,511) | $ 273,598 | $ (78,253) | $ 637,922 | $ (164,764) |

Maturity dates of our fixed income securities range from 2009 to 2038. Maturities of fixed income securities at December 31, 2008 are estimated as follows:

| | Fair Market Value |
|---|---|
| | (In thousands) |
| Due in one year or less | $ 2,929 |
| Due in one to five years | 35,444 |
| Due in five to ten years | 13,734 |
| Thereafter | 16,073 |
| | $ 68,180 |

Distributable earnings from these cemetery perpetual care trust investments are recognized in current cemetery revenues to the extent we have incurred qualifying cemetery maintenance costs. Recognized earnings related to these cemetery perpetual care trust investments were $36.0 million, $44.9 million, and $42.1 million for the years ended December 31, 2008, 2007, and 2006, respectively.

79

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

### SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

**7.  Deferred Preneed Funeral and Cemetery Receipts Held in Trust and Care Trusts' Corpus**

*Deferred Preneed Funeral and Cemetery Receipts Held in Trust*

We consolidate in our balance sheet the merchandise and service trusts associated with our preneed funeral and cemetery activities in accordance with FIN 46R. Although FIN 46R requires the consolidation of the merchandise and service trusts, it does not change the legal relationships among the trusts, us or our customers. The customers are the legal beneficiaries of these merchandise and service trusts, and therefore their interests in these trusts represent a liability.

The components of *Deferred preneed funeral and cemetery receipts held in trust* in our consolidated balance sheet at December 31 are detailed below.

| | December 31, 2008 | | |
|---|---|---|---|
| | Preneed Funeral | Preneed Cemetery | Total |
| | | (In thousands) | |
| Trust investments, at market | $  636,712 | $  659,149 | $  1,295,861 |
| Cash and cash equivalents | 125,657 | 139,753 | 265,410 |
| Insurance-backed fixed income securities | 216,394 | — | 216,394 |
| Accrued trust operating payables, deferred tax assets, and other | 16,816 | 23,184 | 40,000 |
| Deferred preneed funeral and cemetery receipts held in trust | $  995,579 | $  822,086 | $  1,817,665 |

| | December 31, 2007 | | |
|---|---|---|---|
| | Preneed Funeral | Preneed Cemetery | Total |
| | | (In thousands) | |
| Trust investments, at market | $  848,195 | $  759,215 | $  1,607,410 |
| Cash and cash equivalents | 194,728 | 399,301 | 594,029 |
| Insurance-backed fixed income securities | 201,258 | — | 201,258 |
| Accrued trust operating payables, deferred tax liabilities, and other | (3,737) | (8,672) | (12,409) |
| Deferred preneed funeral and cemetery receipts held in trust | $  1,240,444 | $  1,149,844 | $  2,390,288 |

*Care Trusts' Corpus*

The *Care trusts' corpus* reflected in our consolidated balance sheet represents the cemetery perpetual care trusts, net of the accrued expenses and other long-term liabilities of our perpetual care trusts.

The components of *Care trusts' corpus* in our consolidated balance sheet at December 31 are detailed below.

| | 2008 | 2007 |
|---|---|---|
| | (In thousands) | |
| Trust investments, at market | $  673,237 | $  817,228 |
| Cash and cash equivalents | 71,521 | 88,516 |
| Accrued trust operating payables, deferred tax assets, and other | 27,476 | 846 |
| Care trusts' corpus | $  772,234 | $  906,590 |

80

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

SERVICE CORPORATION INTERNATIONAL

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

*Other Expense, Net*

The components of *Other expense, net* in our consolidated statement of operations for the years ended December 31, 2008, 2007, and 2006 are detailed below. See Notes 4, 5, and 6 for further discussion of the amounts related to the funeral, cemetery and perpetual care trusts.

| | Year Ended December 31, 2008 | | | | |
|---|---|---|---|---|---|
| | Funeral Trusts | Cemetery Trusts | Cemetery Perpetual Care Trusts (In thousands) | Other, Net(1) | Total |
| Realized gains | $ 46,703 | $ 47,411 | $ 19,070 | $ — | $ 113,184 |
| Realized losses and impairment charges | (85,298) | (96,919) | (34,338) | — | (216,555) |
| Interest, dividend, and other ordinary income | 43,265 | 31,894 | 37,177 | — | 112,336 |
| Trust expenses and income taxes | (14,090) | (22,619) | (837) | — | (37,546) |
| Net trust investment (loss) income | (9,420) | (40,233) | 21,072 | — | (28,581) |
| Reclassification to deferred preneed funeral and cemetery receipts held in trust | 9,420 | 40,233 | — | — | 49,653 |
| Reclassification to care trusts' corpus | | | (21,072) | | (21,072) |
| Total deferred preneed funeral and cemetery receipts held in trust and care trusts' corpus | 9,420 | 40,233 | (21,072) | — | 28,581 |
| Other expense | | | | (629) | (629) |
| Total other expense, net | $ — | $ — | $ — | $ (629) | $ (629) |

81

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Year Ended December 31, 2007 | | | | |
|---|---|---|---|---|---|
| | Funeral Trusts | Cemetery Trusts | Cemetery Perpetual Care Trusts | Other, Net(1) | Total |
| | | | (In thousands) | | |
| Realized gains | $ 106,394 | $ 196,880 | $ 45,203 | $ — | $ 348,477 |
| Realized losses and impairment charges | (33,507) | (80,732) | (16,505) | — | (130,744) |
| Interest, dividend, and other ordinary income | 26,791 | 41,218 | 40,713 | | 108,722 |
| Trust expenses and income taxes | (10,534) | (17,264) | (4,644) | | (32,442) |
| Net trust investment income | 89,144 | 140,102 | 64,767 | | 294,013 |
| Reclassification to deferred preneed funeral and cemetery receipts held in trust | (89,144) | (140,102) | — | | (229,246) |
| Reclassification to care trusts' corpus | | | (64,767) | | (64,767) |
| Total deferred preneed funeral and cemetery receipts held in trust and care trusts' corpus | (89,144) | (140,102) | (64,767) | | (294,013) |
| Other expense | | — | | (3,804) | (3,804) |
| Total other expense, net | $ — | $ — | $ — | $ (3,804) | $ (3,804) |

| | Year Ended December 31, 2006 | | | | |
|---|---|---|---|---|---|
| | Funeral Trusts | Cemetery Trusts | Cemetery Perpetual Care Trusts | Other, Net(1) | Total |
| | | | (In thousands) | | |
| Realized gains | $ 83,350 | $ 100,326 | $ 40,934 | $ — | $ 224,610 |
| Realized losses | (36,653) | (47,256) | (26,675) | — | (110,584) |
| Interest, dividend, and other ordinary income | 22,614 | 36,337 | 30,881 | | 89,832 |
| Trust expenses and income taxes | (8,492) | (12,989) | (2,148) | | (23,629) |
| Net trust investment income | 60,819 | 76,418 | 42,992 | | 180,229 |
| Reclassification to deferred preneed funeral and cemetery receipts held in trust | (60,819) | (76,418) | — | | (137,237) |
| Reclassification to care trusts' corpus | | | (42,992) | | (42,992) |
| Total deferred preneed funeral and cemetery receipts held in trust and care trusts' corpus | (60,819) | (76,418) | (42,992) | — | (180,229) |
| Other expense | | — | | (1,453) | (1,453) |

Source: SERVICE CORPORATION , 10-K, March 02, 2009

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total other expense, net | $ | — | $ | — | $ | — | $ | (1,453) | $ | (1,453) |

(1) Amounts included within *Other expense, net* primarily relate to foreign currency gains and losses and surety bonding expenses.

82

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

SERVICE CORPORATION INTERNATIONAL

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

8.  **Goodwill**

The changes in the carrying amounts of goodwill for our funeral and cemetery segments are as follows:

| | Funeral Segment | Cemetery Segment | Total |
|---|---|---|---|
| | | (In thousands) | |
| Balance as of December 31, 2006 | $ 1,241,666 | $ 22,606 | $ 1,264,272 |
| Reduction in goodwill related to the Alderwoods acquisition | (86,437) | (1,561) | (87,998) |
| Increase in goodwill related to other acquisitions | 984 | 6,432 | 7,416 |
| Reduction of goodwill related to dispositions | (27,045) | (179) | (27,224) |
| Effect of foreign currency and other | 41,687 | — | 41,687 |
| Balance as of December 31, 2007 | $ 1,170,855 | $ 27,298 | $ 1,198,153 |
| Increase in goodwill related to acquisitions | 22,162 | 25,876 | 48,038 |
| Reduction of goodwill related to dispositions | (9,930) | (141) | (10,071) |
| Effect of foreign currency and other | (58,868) | 1,717 | (57,151) |
| Balance as of December 31, 2008 | $ 1,124,219 | $ 54,750 | $ 1,178,969 |

During 2007, we adjusted our goodwill for various purchase price allocation adjustments as follows (in thousands):

| | |
|---|---|
| Adjustments to fair value of deferred revenue | $ (2,681) |
| Adjustments to fair value of intangible assets | 35,158 |
| Adjustments to fair value of trust assets | 26,900 |
| Adjustments to fair value of acquired locations | (49,469) |
| Adjustments to deferred taxes | (93,650) |
| Other | (4,256) |
| Total adjustment to Alderwoods goodwill | $ (87,998) |

During 2007, we finalized our assessment of the fair value of assets acquired and liabilities assumed in our Alderwoods acquisition. Accordingly, we reflected the final impact of the assessment on goodwill and deferred federal income taxes, including the impact of the adoption of FIN 48 as explained in Note 9. Additionally, we recorded adjustments to our acquired Alderwoods goodwill related to our verification of the contract status and fair values of preneed cemetery and funeral deferred revenues and related trust and intangible assets. We also adjusted the fair values of certain assets and liabilities sold during 2007 in relation to certain Alderwoods locations mandated for divestment pursuant to our recent FTC decree.

During 2008, we recorded certain adjustments to goodwill related to income tax and other effects of prior business combinations, in the amount of $42.8 million.

9.  **Income Taxes**

The provision or benefit for income taxes includes U.S. federal income taxes, determined on a consolidated return basis, foreign and state income taxes.

83

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

Income from continuing operations before income taxes for the years ended December 31 were as follows:

|  | 2008 | 2007 | 2006 |
|---|---|---|---|
|  |  | (In thousands) |  |
| United States | $ 125,694 | $ 369,730 | $ 85,928 |
| Foreign | 37,468 | 17,257 | 11,521 |
|  | $ 163,162 | $ 386,987 | $ 97,449 |

Income tax provision (benefit) for the years ended December 31 consisted of the following:

|  | 2008 | 2007 | 2006 |
|---|---|---|---|
|  |  | (In thousands) |  |
| Current: |  |  |  |
| United States | $ (60,270) | $ 84,405 | $ 2,522 |
| Foreign | 11,285 | 8,296 | 8,236 |
| State | 5,584 | 16,317 | (4,170) |
| Total current income taxes | (43,401) | 109,018 | 6,588 |
| Deferred: |  |  |  |
| United States | $ 99,752 | $ 16,058 | $ 33,114 |
| Foreign | 645 | (210) | (1,982) |
| State | 8,721 | 18,804 | 7,125 |
| Total deferred income taxes | 109,118 | 34,652 | 38,257 |
| Total income taxes | $ 65,717 | $ 143,670 | $ 44,845 |

The current benefit associated with U.S. income taxes in 2008 is related to the refund of 2007 estimated taxes. We made income tax payments, net of refunds, of $20.1 million, $44.5 million, and $15.6 million in 2008, 2007, and 2006, respectively.

The differences between the U.S. federal statutory income tax rate and our effective tax rate for the years ended December 31 were as follows:

|  | 2008 | 2007 | 2006 |
|---|---|---|---|
|  |  | (In thousands) |  |
| Computed tax provision at the applicable federal statutory income tax rate | $ 57,107 | $ 135,446 | $ 34,108 |
| State and local taxes, net of federal income tax benefits | 9,298 | 22,829 | 1,921 |
| Dividends received deduction and tax exempt interest | (1,177) | (1,453) | (680) |
| Foreign jurisdiction differences | (4,975) | (1,349) | (1,343) |
| Write-down of assets and other losses with no tax benefit | — | — | 1,471 |
| Permanent differences associated with dispositions | 2,586 | 14,611 | 9,508 |
| Changes in uncertain tax positions | 818 | (29,287) | — |
| Other | 2,060 | 2,873 | (134) |
| Provision for income taxes | $ 65,717 | $ 143,670 | $ 44,845 |
| Total effective tax rate | 40.3% | 37.1% | 46.0% |

During the fourth quarter of 2007, we generated taxable capital gains on the sale of our investment in our French unconsolidated subsidiary (See Note 19) which allowed us to recognize the benefit of capital loss

84

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

SERVICE CORPORATION INTERNATIONAL

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

carryforwards that we had previously concluded were more likely than not to expire unutilized because of uncertainty with respect to the timing of the deduction. That benefit decreased our 2007 effective tax rate by nine percentage points. Our 2008, 2007, and 2006 effective tax rates were negatively impacted by permanent differences between the book and tax bases of North American asset dispositions.

Deferred taxes are determined based on differences between the financial reporting and tax bases of assets and liabilities and are measured using the enacted tax rates. The tax effects of temporary differences and carryforwards that give rise to significant portions of deferred tax assets and liabilities as of December 31 consisted of the following:

| | 2008 | 2007 |
|---|---|---|
| | (In thousands) | |
| Inventories and cemetery property, principally due to purchase accounting adjustments | $ (330,413) | $ (325,051) |
| Property and equipment, principally due to differences in depreciation methods and purchase accounting adjustments | (78,765) | (72,599) |
| Intangibles | (55,984) | (46,992) |
| Other | — | (241) |
| Deferred tax liabilities | (465,162) | (444,883) |
| Loss and tax credit carryforwards | 181,890 | 271,581 |
| Deferred revenue on preneed funeral and cemetery contracts, principally due to earnings from trust funds | 117,753 | 141,767 |
| Accrued liabilities | 7,268 | 2,015 |
| Receivables, principally due to sales of cemetery interment rights and related products | 6,131 | 30,548 |
| Other | 12,836 | — |
| Deferred tax assets | 325,878 | 445,911 |
| Less: Valuation allowance | (69,822) | (68,469) |
| Net deferred income taxes | $ (209,106) | $ (67,441) |

*Deferred tax asset* and *Deferred income taxes* consists of the following as of December 31:

| | 2008 | 2007 |
|---|---|---|
| Current portion | $ 79,571 | $ 73,182 |
| Non-current portion | $ (288,677) | $ (140,623) |
| Net deferred tax liability | $ (209,106) | $ (67,441) |

Deferred tax assets relating to tax benefits of employee share-based compensation have been reduced to reflect stock options exercised and restricted stock that vested. Some exercises and vestings resulted in tax deductions in excess of previously recorded benefits based on the option value at the time of grant ("windfalls"). Pursuant to SFAS 123(R) "Share-Based Payment", the additional tax benefit associated with the windfall is not recognized unless the deduction reduces taxes payable. Accordingly, since the tax benefit did not reduce our current taxes payable in the years ended December 31, 2008 and 2007 due to the existence of net operating loss carry forwards, these "windfall" tax benefits are not reflected in our deferred tax assets which resulted from net operating losses. Windfalls not reflected as deferred tax assets in the table above are $6.9 million and $18.5 million for the years ended December 31, 2008 and 2007, respectively.

85

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

At December 31, 2008 and 2007, U.S. income taxes had not been provided on $137.3 million and $121.8 million, respectively, of the remaining undistributed earnings of our Canadian subsidiaries. We intend to permanently reinvest these undistributed foreign earnings in those businesses outside the United States. It is not practicable to determine the amount of federal income taxes, if any, that might become due if such earnings are repatriated.

In June 2006, the FASB issued FIN 48, which clarifies the accounting for uncertain income tax positions recognized in an enterprise's financial statements in accordance with SFAS No. 109, "*Accounting for Income Taxes*". This interpretation requires companies to use a prescribed model for assessing the financial statement recognition and measurement of all tax positions taken or expected to be taken in its tax returns. FIN 48 also provides guidance on derecognition, classification, interest and penalties, accounting in interim periods, disclosure, and transition.

The following table summarizes the activity related to our gross unrecognized tax benefits from January 1, 2007 to December 31, 2008 (in thousands):

|  | Federal, State and Foreign Tax (In thousands) |
|---|---|
| Balance at January 1, 2007 | $ 198,773 |
| Additions to tax positions related to the current year | 803 |
| Reductions to tax positions related to prior year | (45,115) |
| Reductions to tax positions related to acquired entities in prior years, offset to goodwill | (774) |
| Statute expirations | (5,799) |
| Balance at December 31, 2007 | $ 147,888 |
| Additions to tax positions related to prior years | 8,132 |
| Reductions to tax positions related to acquired entities in prior years, offset to goodwill | (8,700) |
| Statute expirations | (4,863) |
| Balance at December 31, 2008 | $ 142,457 |

Our total unrecognized tax benefits that, if recognized, would affect our effective tax rate was $51.6 million as of December 31, 2008.

During 2008, we recorded an increase of $8.1 million to our liability for unrecognized tax benefits primarily related to U.S. and foreign tax positions taken in previous fiscal years, of which $6.0 million was taken to goodwill. In addition, we recorded a $13.6 million decrease to our FIN 48 liability due to the expiration of statute of limitation on positions taken in previous fiscal years, of which $8.7 million was offset to goodwill.

We adopted the provisions of FIN 48 on January 1, 2007. As a result of the initial adoption of FIN 48, we recognized a $12.0 million net increase in our liability for unrecognized tax benefits, which was recorded as a $24.0 million increase to goodwill (related to uncertain tax positions acquired in the recent Alderwoods transaction) and a $12.0 million decrease in our *Accumulated deficit* as of January 1, 2007. As of the date of the initial adoption and after considering the impact of recognizing the net liability increase noted above, our unrecognized tax benefits totaled $257.1 million, of which $156.3 million would impact our effective tax rate, if recognized.

During the fourth quarter of 2007, we identified certain computational errors in our initial FIN 48 adoption impact related to both unrecognized tax benefits and the potential accrued interest associated with such unrecognized tax benefits at the time of adoption. The net effect of these computational errors, including an $11.1 million adjustment for interest, was recorded as a $17.9 million decrease in our liability for unrecognized tax benefits

86

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

**SERVICE CORPORATION INTERNATIONAL**

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

during the fourth quarter of 2007. As revised for this immaterial correction of an error, our FIN 48 adoption resulted in a $5.9 million reduction in our liability for unrecognized tax benefits, of which $24.0 million was recorded as an increase to goodwill and $29.9 million was recorded as a decrease in our *Accumulated deficit* as of January 1, 2007. As of the date of adoption and after considering the impact of recognizing the immaterial correction of an error noted above, our unrecognized tax benefits totalled $198.8 million, of which $80.0 million would impact our effective tax rate, if recognized.

Consistent with our historical financial reporting, we include potential accrued interest and penalties related to unrecognized tax benefits within our income tax provision account. We have accrued $32.2 million and $29.8 million for the payment of interest, net of tax benefits, and penalties as of December 31, 2008 and 2007, respectively. To the extent interest and penalties are not assessed with respect to uncertain tax positions or the uncertainty of deductions in the future, amounts accrued will be reduced and reflected as a reduction of the overall income tax provision.

During the fourth quarter of 2007, we generated taxable capital gains from the sale of our investment in our French operations which allowed us to recognize the benefit of capital loss carryforwards that we had previously concluded were more likely than not to expire unutilized. The reduction to the tax associated with prior years of $45.1 million primarily relates to the recognition of capital loss carryforward amounts.

In 2008 and 2007, we recorded a net decrease in our liability for uncertain tax positions of $4.9 million and $5.8 million, respectively, relating to uncertain positions taken in prior years, as a result of expiring federal, state, and foreign statute of limitations.

We file income tax returns, including tax returns for our subsidiaries, with federal, state, local, and foreign jurisdictions. Our tax returns are subject to routine compliance review by the taxing authorities in the jurisdictions in which we file tax returns in the ordinary course of business. We consider the United States to be our most significant tax jurisdiction; however, the taxing authorities in France and Spain are auditing various tax returns. Current audits are occurring in the United States and various state and foreign locations covering open tax years through 2006. The Internal Revenue Service has recently completed its field work for tax years 1999 through 2002 and is currently auditing tax years 2003 through 2005. It is reasonably possible that changes to our global unrecognized tax benefits could be significant; however, due to the uncertainty regarding the timing of completion of audits and possible outcomes, a current estimate of the range of increases or decreases that may occur within the next twelve months cannot be made.

Various subsidiaries have foreign, federal, and state carryforwards of $1.8 billion with expiration dates through 2028.

The loss carryforwards will expire as follows:

| | Federal | State | Foreign | Total |
|---|---|---|---|---|
| | | (In thousands) | | |
| 2009 | $    543 | $   29,484 | $    912 | $   30,939 |
| 2010 | 154 | 16,417 | 1,216 | 17,787 |
| 2011 | 95 | 75,299 | — | 75,394 |
| 2012 | | 37,438 | | 37,438 |
| Thereafter | 163,048 | 1,378,938 | 48,434 | 1,590,420 |
| Total | $ 163,840 | $ 1,537,576 | $ 50,562 | $ 1,751,978 |

We believe that some uncertainty exists with respect to future realization of certain loss carryforwards, therefore a valuation allowance has been established for those carryforwards where more likely than not uncertainty exists. The valuation allowance is primarily attributable to state net operating losses and is due to complexities involving the various state laws restricting state net operating loss utilization. The 2008 increase in valuation

87

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

# SERVICE CORPORATION INTERNATIONAL

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

allowance is due to a $3.7 million increase in federal valuation allowances related to acquisitions and a $3.2 million increase in valuation allowances on tax losses in foreign jurisdictions offset by a $5.5 million decrease in valuation allowance on state operating losses. At December 31, 2008, the loss and tax credit carryforward deferred assets and associated valuation allowances by jurisdiction are as follows:

|  | Federal | State | Foreign | Total |
|---|---|---|---|---|
|  | (In thousands) | | | |
| Loss and tax credit carryforwards | $ 61,756 | $ 99,131 | $ 21,003 | $ 181,890 |
| Valuation allowance | $  6,319 | $ 44,563 | $ 18,940 | $  69,822 |

## 10.   Debt

Debt as of December 31 was as follows:

|  | 2008 | 2007 |
|---|---|---|
|  | (In thousands) | |
| 6.5% notes due March 2008 | $       — | $  45,209 |
| 7.7% notes due April 2009 | 28,731 | 28,731 |
| 7.875% debentures due February 2013 | 55,627 | 55,627 |
| 7.375% senior notes due October 2014 | 250,000 | 250,000 |
| 6.75% notes due April 2015 | 200,000 | 200,000 |
| 6.75% notes due April 2016 | 250,000 | 250,000 |
| 7.0% notes due June 2017 | 300,000 | 300,000 |
| 7.625% senior notes due October 2018 | 250,000 | 250,000 |
| 7.5% notes due April 2027 | 200,000 | 200,000 |
| Series B senior notes due November 2011 | 150,000 | 150,000 |
| Obligations under capital leases | 109,782 | 112,507 |
| Mortgage notes and other debt, maturities through 2050 | 58,976 | 19,917 |
| Unamortized pricing discounts and other | (4,608) | (5,291) |
| Total debt | 1,848,508 | 1,856,700 |
| Less current maturities | (27,104) | (36,594) |
| Total long-term debt | $ 1,821,404 | $ 1,820,106 |

Current maturities of debt at December 31, 2008 comprised primarily of convertible debentures and capital leases. Our 7.7% notes due April 2009 are classified as long-term as we intend to refinance these notes through a drawdown on our revolving credit agreement. Our consolidated debt had a weighted average interest rate of 6.70% and 7.09% at December 31, 2008 and 2007, respectively. Approximately 87% and 89% of our total debt had a fixed interest rate at December 31, 2008 and 2007, respectively.

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS --- (Continued)

The aggregate maturities of our debt for the five years subsequent to December 31, 2008 (in thousands) was as follows:

| | |
|---|---:|
| 2009 | $ 27,104 |
| 2010 | 45,376 |
| 2011 | 192,458 |
| 2012 | 10,881 |
| 2013 | 91,229 |
| 2014 and thereafter | 1,481,460 |
| | $ 1,848,508 |

### *Bank Credit Facility*

We entered into a five-year $450 million bank credit facility in November 2006 with a syndicate of financial institutions, comprised of a $300 million revolving credit facility and a $150 million term loan facility, including a sublimit of $175 million for letters of credit.

The bank credit facility matures in November 2011. As of December 31, 2008, we have used the facility to support $52.7 million of letters of credit. The credit facility provides us with flexibility for working capital, if needed, and is guaranteed by our domestic subsidiaries. The subsidiary guaranty is a guaranty of payment of the outstanding amount of the total lending commitment. It covers the term of the credit facility, including extensions, and totaled a maximum potential amount of $52.7 million at December 31, 2008. The credit facility contains certain financial covenants, including a minimum interest coverage ratio, a maximum leverage ratio, maximum capital expenditure limitations, and certain cash distribution and share repurchase restrictions. We pay a quarterly fee on the unused commitment, which ranges from 0.25% to 0.50%.

### *Debt Issuances and Additions*

During 2008, we entered into loan agreements with financial institutions totaling $45.0 million. The proceeds, which are included in mortgage notes and other debt, were used for deposits related to certain transportation vehicles. Additionally we drew $54.3 million on our revolving credit facility, the proceeds of which were used to pay our 6.50% Notes due 2008 and for general corporate purposes.

In April 2007, we completed a private offering of $400.0 million aggregate principal unsecured senior notes, consisting of $200.0 million aggregate principal amount of 6.75% Senior Notes due 2015 and $200.0 million aggregate principal amount of 7.50% Senior Notes due 2027. We are entitled to redeem the notes at any time by paying a make-whole premium. The notes are subject to the provisions of our Senior Indenture dated as of February 1, 1993, as amended, which includes covenants limiting, among other things, the creation of liens securing indebtedness and sale-leaseback transactions. We used the net proceeds from the offering to fund the closing of the tender offers for our 6.50% Notes due 2008 and 7.70% Notes due 2009, as further discussed below, and for general corporate purposes. Under the terms of the registration rights agreement entered into in connection with the offerings of the notes, we filed a registration statement with the SEC with respect to an offer to exchange the notes for registered notes with substantially identical terms. The registration statement was declared effective by the SEC and the offering to exchange was completed in the third quarter of 2007.

In November 2006, in connection with the closing of the Alderwoods acquisition, we issued $200.0 million of privately placed debt securities, consisting of $50.0 million of Floating Rate Series A Senior Notes due October 2011 and $150.0 million of Floating Rate Series B Notes due October 2011. Interest on these privately placed debt securities accrues at the rate of 3-month LIBOR plus 2.0% (3.43% at December 31, 2008) and is payable quarterly in arrears.

89

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

In October 2006, we completed a private offering of $500.0 million aggregate principal unsecured senior notes, consisting of $250.0 million aggregate principal of 7.375% Senior Notes due 2014 and $250.0 million aggregate principal of 7.625% Senior Notes due 2018. We are entitled to redeem the notes at any time by paying a make-whole premium. The notes are subject to the provisions of our Senior Indenture dated as of February 1, 1993, as amended, which includes certain covenants limiting, among other things, the creation of liens securing indebtedness and sale-leaseback transactions. During the fourth quarter of 2006, we completed the required registration statement and exchanged publicly held registered notes for the unregistered notes.

### *Debt Extinguishments and Reductions*

Subsequent to December 31, 2008, we purchased $7.3 million aggregate principal amount of our 6.75% Notes due 2015 and $2.0 million aggregate principal amount of our 7.00% Notes dues 2017 on the open market. As a result of these transactions, we will recognize an extinguishment gain of $1.6 million in our consolidated statement of operations in the first quarter of 2009.

In the fourth quarter of 2008, we repaid $54.3 million of amounts drawn on our revolving credit facility. In the first quarter of 2008, we repaid $45.2 million aggregate principal amount of our 6.50% Notes due 2008. There was no gain or loss recognized as a result of this repayment.

In the fourth quarter of 2007, we purchased $13.5 million aggregate principal amount of our 6.875% Notes due 2007. In addition to this repurchase, we also prepaid $50 million of our Series A Senior Notes due 2011. As a result of this transaction, we recognized a loss of $0.5 million recorded in *Loss on early extinguishment of debt* in our consolidated statement of operations, which represents the write-off of unamortized deferred loan costs of $0.5 million.

In the second quarter of 2007, we purchased $149.8 million aggregate principal amount of our 6.50% Notes due 2008 and $173.8 million aggregate principal amount of our 7.70% Notes due 2009 in a tender offer. In connection with the repurchase of the notes, we recognized a *Loss on early extinguishment of debt* of approximately $12.1 million, which represents the write-off of unamortized deferred loan costs of $1.1 million, a $1.0 million loss on a related interest rate hedge, and $10.0 million in premiums paid to extinguish the debt.

In the first quarter of 2007, we repaid $100.0 million aggregate principal amount of our term loan. As a result of this transaction, we recognized a loss of $2.4 million recorded in *Loss on early extinguishment of debt* in our consolidated statement of operations, which represents the write-off of unamortized deferred loan costs of $1.7 million and a $0.7 million premium to early extinguish the debt.

In the fourth quarter of 2006, we purchased $139.0 million aggregate principal amount of our outstanding 7.70% Notes due 2009 in a tender offer. As a result of this transaction, we recognized a loss of $17.5 million recorded in *Loss on early extinguishment of debt,* in our consolidated statement of operations. Also in the fourth quarter of 2006, we redeemed $11.3 million aggregate principal amount of our debentures associated with the acquisitions of various locations. These transactions resulted in no recognized gain or loss.

During the second quarter of 2006, our 7.2% Notes due 2006 matured, and we made a payment consisting of $10.7 million in principal and $0.4 million in interest to the debtholders and redeemed $1.0 million aggregate principal amount of our debentures associated with the acquisition of various locations. These transactions resulted in no recognized gain or loss.

### *Capital Leases*

In 2008 and 2007, we acquired $27.5 million and $31.7 million, respectively, of transportation equipment using capital leases. In 2006, we acquired $126.4 million of transportation equipment under capital leases, of which $102.3 million had been classified as operating leases in prior periods. See additional information regarding these leases in Note 12.

90

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

**SERVICE CORPORATION INTERNATIONAL**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

*Additional Debt Disclosures*

At December 31, 2008 and 2007, we had deposited $23.8 million and $23.7 million, respectively, in restricted, interest-bearing accounts that were pledged as collateral for various credit instruments and commercial commitments. Our restricted cash is included in *Deferred charges and other assets* in our consolidated balance sheet. Unamortized pricing discounts, totaling $4.6 million and $5.3 million at December 31, 2008 and 2007, respectively, primarily relate to our September 2002 exchange offering of the 7.7% notes due April 2009.

We had assets of approximately $38.1 million and $4.8 million pledged as collateral for the mortgage notes and other debt at December 31, 2008 and 2007, respectively.

Cash interest payments for the three years ended December 31 were as follows, in thousands:

| | |
|---|---|
| 2008 | $ 131,844 |
| 2007 | $ 140,298 |
| 2006 | $ 104,789 |

Cash interest payments in 2006 include $6.4 million of bridge financing costs related to the Alderwoods acquisition.

Cash interest payments forecasted as of December 31, 2008 for the five years subsequent to December 31, 2008 are as follows, in thousands:

| | |
|---|---|
| 2009 | $ 121,138 |
| 2010 | $ 120,691 |
| 2011 | $ 121,045 |
| 2012 | $ 112,924 |
| 2013 | $ 108,848 |
| 2014 and thereafter | $ 464,439 |

**11.   Credit Risk and Fair Value of Financial Instruments**

*Fair Value Estimates*

The fair value estimates of the following financial instruments have been determined using available market information and appropriate valuation methodologies. The carrying values of cash and cash equivalents, trade receivables, and trade payables approximate the fair values of those instruments due to the short-term nature of the instruments. The fair values of receivables on preneed funeral contracts and cemetery contracts are impracticable to estimate because of the lack of a trading market and the diverse number of individual contracts with varying terms.

91

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The fair value of our debt instruments at December 31 was as follows:

| | 2008 | 2007 |
|---|---|---|
| | (In thousands) | |
| 6.5% notes due 2008 | — | 45,209 |
| 7.7% notes due 2009 | 27,869 | 28,444 |
| 7.875% debentures due 2013 | 49,441 | 55,071 |
| 7.375% senior notes due 2014 | 215,000 | 253,750 |
| 6.75% notes due 2015 | 154,500 | 196,500 |
| 6.75% notes due 2016 | 190,000 | 239,375 |
| 7.0% notes due 2017 | 234,000 | 288,750 |
| 7.625% senior notes due 2018 | 194,750 | 251,250 |
| 7.5% notes due 2027 | 129,750 | 185,000 |
| Series B senior notes due 2011 | 106,222 | 150,000 |
| Mortgage notes and other debt, maturities through 2050 | 43,674 | 19,917 |
| Total fair value of debt instruments | $ 1,345,206 | $ 1,713,266 |

The fair values of our long-term, fixed rate securities, except the Series B senior notes due 2011 were estimated using market prices for those securities and they, therefore, fall within Level 1 of the SFAS 157 hierarchy discussed in Note 3. The Series B Senior Notes due 2011 and the mortgage and other debt fall within Level 3 of the SFAS 157 hierarchy. The fair value of these instruments has been estimated using discounted cash flow analysis based on our incremental borrowing rate for similar borrowing arrangements.

### Credit Risk Exposure

Our cash deposits, some of which exceed insured limits, are distributed among various market and national banks in the jurisdictions in which we operate. In addition, we regularly invest excess cash in financial instruments which are not insured, such as money-market funds and Eurodollar time deposits, that are offered by a variety of reputable financial institutions and commercial paper that is offered by corporations with quality credit ratings. We believe that the credit risk associated with such instruments is minimal.

We grant credit to customers in the normal course of business. The credit risk associated with our funeral, cemetery, and preneed funeral and preneed cemetery receivables due from customers is generally considered minimal because of the diversification of the customers served. Furthermore, bad debts have not been significant relative to the volume of deferred revenues. Customer payments on preneed funeral or preneed cemetery contracts that are either placed into state-regulated trusts or used to pay premiums on life insurance contracts generally do not subject us to collection risk. Insurance-funded contracts are subject to supervision by state insurance departments and are protected in the majority of states by insurance guaranty acts.

### 12.  Commitments and Contingencies

### Leases

Our leases principally relate to funeral home facilities and transportation equipment. The majority of our lease arrangements contain options to (i) purchase the property at fair value on the exercise date, (ii) purchase the property for a value determined at the inception of the leases, or (iii) renew for the fair rental value at the end of the primary lease term. Rental expense for operating leases was $26.9 million, $30.1 million, and $24.5 million for the years

92

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

ended December 31, 2008, 2007, and 2006, respectively. As of December 31, 2008, future minimum lease payments for non-cancelable operating and capital leases exceeding one year were as follows:

| | Operating | Capital |
|---|---|---|
| | (In thousands) | |
| 2009 | $ 9,300 | $ 27,510 |
| 2010 | 7,522 | 45,702 |
| 2011 | 5,982 | 13,740 |
| 2012 | 5,615 | 10,738 |
| 2013 | 5,284 | 7,872 |
| 2014 and thereafter | 49,214 | 25,120 |
| Total | $ 82,917 | $ 130,682 |
| Less: Interest on capital leases | | (20,900) |
| Total principal payable on capital leases | | $ 109,782 |

### Management, Consulting, and Non-Competition Agreements

We have entered into management, employment, consulting, and non-competition agreements, generally for five to ten years, with certain officers and employees and former owners of businesses that we acquired. At December 31, 2008, the maximum estimated future cash commitment under agreements with remaining commitment terms, and with original terms of more than one year, was as follows:

| | Employment | Consulting | Non-Competition | Total |
|---|---|---|---|---|
| | (In thousands) | | | |
| 2009 | $ 1,876 | $ 1,042 | $ 2,694 | $ 5,612 |
| 2010 | 1,405 | 446 | 1,727 | 3,578 |
| 2011 | 529 | 124 | 1,329 | 1,982 |
| 2012 | 529 | 117 | 1,072 | 1,718 |
| 2013 | 243 | 39 | 598 | 880 |
| 2014 and thereafter | 539 | 153 | 1,987 | 2,679 |
| Total | $ 5,121 | $ 1,921 | $ 9,407 | $ 16,449 |

### Representations and Warranties

As of December 31, 2008, we have contingent obligations of $31.9 million (of which $23.5 million is reflected in our financial statements as a liability) resulting from our previous international asset sales and joint venture transactions. In some cases, we have agreed to guarantee certain representations and warranties made in such disposition transactions with letters of credit or interest-bearing cash investments. We have interest-bearing cash investments of $23.2 million included in *Deferred charges and other assets* collateralizing certain of these contingent obligations. We believe it is remote that we will be required to fund to third parties claims against these representations and warranties above the carrying value of the liability.

In 2004, we disposed of our funeral operations in France to a newly formed, third-party company. As a result of this sale, we recognized certain Euro-denominated contractual obligations related to representations, warranties,

93

---

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

# SERVICE CORPORATION INTERNATIONAL

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

and other indemnifications. The remaining obligations related to these indemnifications at December 31, 2008 were as follows:

| | Time Limit | Maximum Potential Amount of Future Payments | Carrying Value as of December 31, 2008 |
|---|---|---|---|
| | | | (In thousands) |
| Litigation provision | Until entire resolution of (i) the relevant claims or (ii) settlement of the claim by the purchaser at the request of the vendor | (1) | $ 13,759 |
| VAT taxes | January 31, 2009 | (1) | 5,075 |
| Other | Until entire resolution of (i) the relevant claims or (ii) settlement of the claim by the purchaser at the request of the vendor | (1)(2) | 3,419 |
| Total | | | $ 22,253 |
| Less: Deductible of majority equity owner | | | (1,429) |
| | | | $ 20,824 |

(1) The potential maximum exposure for these items combined is €60.0 million or $84.6 million at December 31, 2008.

(2) Includes €2.0 million or $2.8 million of social risks that become statute barred in the second quarter of 2009.

### Insurance Loss Reserves

We purchase comprehensive general liability, morticians and cemetery professional liability, automobile liability, and workers' compensation insurance coverage structured with high deductibles. The high-deductible insurance program means we are primarily self-insured for claims and associated costs and losses covered by these policies. As of December 31, 2008 and 2007, we have self-insurance reserves of $63.6 million and $69.9 million, respectively.

### Litigation

We are a party to various litigation matters, investigations, and proceedings. For each of our outstanding legal matters, we evaluate the merits of the case, our exposure to the matter, possible legal or settlement strategies, and the likelihood of an unfavorable outcome. We intend to defend ourselves in the lawsuits described herein; however, if we determine that an unfavorable outcome is probable and can be reasonably estimated, we establish the necessary accruals. We hold certain insurance policies that may reduce cash outflows with respect to an adverse outcome of certain of these litigation matters. We accrue such insurance recoveries when they become probable of being paid and can be reasonably estimated.

*Conley Investment Counsel v. Service Corporation International, et al; Civil Action 04-MD-1609; In the United States District Court for the Southern District of Texas, Houston Division (the "2003 Securities Lawsuit").* The 2003 Securities Lawsuit resulted from the transfer and consolidation by the Judicial Panel on Multidistrict Litigation of three lawsuits — *Edgar Neufeld v. Service Corporation International, et al*; Cause No. CV-S-03-1561-HDM-PAL; In the United States District Court for the District of Nevada; and *Rujira Srisythemp v. Service Corporation International, et. Al .*; Cause No. CV-S-03-1392-LDG-LRL; In the United States District Court for the District of Nevada; and *Joshua Ackerman v. Service Corporation International, et. Al .* ; Cause No. 04-CV-20114; In the United States District Court for the Southern District of Florida. The 2003 Securities Lawsuit names as defendants SCI and several of SCI's current and former executive officers or directors. The 2003 Securities Lawsuit is a purported class action alleging that the defendants failed to disclose the unlawful

94

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

**SERVICE CORPORATION INTERNATIONAL**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

treatment of human remains and burial sites at two cemeteries in Fort Lauderdale and West Palm Beach, Florida. No discovery has occurred, and we cannot quantify our ultimate liability, if any, for the payment of damages.

*Burial Practices Claims.* We are named as a defendant in various lawsuits alleging improper burial practices at certain of our cemetery locations. These lawsuits include the *Valls* and *Garcia* lawsuits described in the following paragraphs.

*Maria Valls, Pedro Valls, and Roberto Valls, on behalf of themselves and all other similarly situated v. SCI Funeral Services of Florida, Inc. d/b/a Memorial Plan a/k/a Flagler Memorial Park, John Does and Jane Does;* Case No. 23693CA08; In the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida ("Valls Lawsuit"). The Valls Lawsuit was filed December 5, 2005, and named a subsidiary of SCI as a defendant. Plaintiffs have requested that the court certify this matter as a class action. The plaintiffs allege the defendants improperly handled remains, did not keep adequate records of interments, and engaged in various other improprieties in connection with the operation of the cemetery. Although the plaintiffs seek to certify as a class all family members of persons buried at the cemetery, the court has dismissed plaintiffs' class action allegations on two occasions; however, the dismissals were without prejudice. Plaintiffs filed a third amended complaint and we again moved to dismiss the class action allegations. The court dismissed the class allegations with prejudice, and the plaintiffs have appealed the ruling. The plaintiffs are seeking monetary damages and have reserved the right to seek leave from the court to claim punitive damages. The plaintiffs are also seeking injunctive relief and we cannot quantify our ultimate liability, if any, for the payment of any damages.

*Reyvis Garcia and Alicia Garcia v. Alderwoods Group, Inc., Osiris Holding of Florida, Inc, a Florida corporation, d/b/a Graceland Memorial Park South, f/k/a Paradise Memorial Gardens, Inc.,* was filed in December 2004, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No.: 04-25646 CA 32. Plaintiffs are the son and sister of the decedent, Eloisa Garcia, who was buried at Graceland Memorial Park South in March 1986, when the cemetery was owned by Paradise Memorial Gardens, Inc. Initially, the suit sought damages on the individual claims of the plaintiffs relating to the burial of Eloisa Garcia. Plaintiffs claimed that due to poor record keeping, spacing issues and maps, and the fact that the family could not afford to purchase a marker for the grave, the burial location of the decedent could not be readily located. Subsequently, the decedent's grave was located and verified. In July 2006, plaintiffs amended their complaint, seeking to certify a class of all persons buried at this cemetery whose burial sites cannot be located, claiming that this was due to poor record keeping, maps, and surveys at the cemetery. Plaintiffs subsequently filed a third amended class action complaint and added two additional named plaintiffs. The plaintiffs are seeking unspecified monetary damages, as well as equitable and injunctive relief. No class has been certified in this matter. Since the action is in its preliminary stages, we cannot quantify our ultimate liability, if any, for the payment of any damages.

*Funeral Regulations Lawsuits.* We are named as a defendant in various lawsuits alleging violations of federal and state funeral related regulations and/or statutes, including the *Baudino* and *Sanchez* lawsuits described in the following paragraphs.

*Mary Louise Baudino, et al. v. Service Corporation International, et al.* was filed in November 2004 in Los Angeles County Superior Court; Case No. BC324007 ("Baudino Lawsuit"). The Baudino Lawsuit was initially filed as a putative nationwide class action brought on behalf of all persons, entities, and organizations who purchased funeral services from SCI. Plaintiffs alleged that funeral related regulations and/or statutes ("Rules") required us to disclose our markups on all items obtained from third-parties in connection with funeral service contracts and that the failure to make certain disclosures of markups resulted in breach of contract and other legal claims. The plaintiffs sought to recover an unspecified amount of monetary damages as well as attorneys' fees, costs, and interest. We denied all of the claims and denied that the plaintiffs had standing to sue for violations of the Rules. On September 15, 2006, the trial court granted our motion for summary judgment on the merits. Plaintiffs appealed the summary judgment ruling. The appellate court affirmed the summary judgment in December 2008. In February 2009, the time frame for plaintiffs to appeal expired and the case ended.

95

Table of Contents

SERVICE CORPORATION INTERNATIONAL

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

*Richard Sanchez et al v. Alderwoods Group, Inc. et al* was filed in February 2005 in the Superior Court of the State of California, for the County of Los Angeles, Central District; Case No. BC328962. Plaintiffs seek to certify a nationwide class on behalf of all consumers who purchased funeral goods and services from Alderwoods. Plaintiffs allege in essence that the Federal Trade Commission's Funeral Rule requires Alderwoods to disclose its markups on all items obtained from third-parties in connection with funeral service contracts. Plaintiffs allege further that Alderwoods has failed to make such disclosures. Plaintiffs seek to recover an unspecified amount of monetary damages, attorney's fees, costs, and unspecified "injunctive and declaratory relief." This case is substantially similar to the Baudino Lawsuit, and we expect that the outcome of this case will be governed by the law applied in the Baudino Lawsuit.

*Antitrust Claims.* We are named as a defendant in two related class action antitrust cases filed in 2005. The first case is Cause No 4:05-CV-03394; *Funeral Consumers Alliance, Inc. v. Service Corporation International, et al.* ; in the United States District Court for the Southern District of Texas — Houston ("Funeral Consumers Case"). This is a purported class action on behalf of casket consumers throughout the United States alleging that we and several other companies involved in the funeral industry violated federal antitrust laws and state consumer laws by engaging in various anti-competitive conduct associated with the sale of caskets.

The second case is Cause No. 4:05-CV-03399; *Pioneer Valley Casket, et al. v. Service Corporation International*, et al.; in the United States District Court for the Southern District of Texas — Houston Division ("Pioneer Valley Case"). This lawsuit makes the same allegations as the Funeral Consumers Case and is also brought against several other companies involved in the funeral industry. Unlike the Funeral Consumers Case, the Pioneer Case is a purported class action on behalf of all independent casket distributors that are in the business or were in the business any time between July 18, 2001 to the present.

The Funeral Consumers Case and the Pioneer Valley Case seek injunctions, monetary damages, and treble damages. The plaintiffs in the Funeral Consumers Case filed an expert report indicating that the damages sought from all defendants range from approximately $950 million to $1.5 billion, before trebling. Additionally, the plaintiffs in the Pioneer Valley Case filed an expert report indicating that the damages sought from all defendants would be approximately $99 million, before trebling. We deny that we engaged in anticompetitive practices related to our casket sales and intend to vigorously contest these claims and plaintiffs' damages reports. In both cases, we have filed reports of our experts, which vigorously dispute the validity of the plaintiffs' damages theories and calculations. We cannot quantify our ultimate liability, if any, for the payment of damages.

In November 2008, the Magistrate Judge issued recommendations that motions for class certification be denied in both the Funeral Consumers Case and the Pioneer Valley Case. Plaintiffs have filed objections to the recommendations.

In addition to the Funeral Consumers Case and the Pioneer Valley Case, we received Civil Investigative Demands, dated August 2005 and February 2006, from the Attorney General of Maryland on behalf of itself and other state attorneys general, who have commenced an investigation of alleged anticompetitive practices in the funeral industry. We have also received similar Civil Investigative Demands from the Attorneys General of Florida and Connecticut.

*Wage and Hour Claims.* We are named a defendant in various lawsuits alleging violations of federal and state laws regulating wage and hour overtime pay, including the Prise, Bryant, Bryant, Stickle, and Welch lawsuits described in the following paragraphs.

*Prise, et al., v. Alderwoods Group, Inc., and Service Corporation International*; Cause No. 06-164; in the United States District Court for the Western District of Pennsylvania (the "Wage and Hour Lawsuit"). The Wage and Hour Lawsuit was filed by two former Alderwoods (Pennsylvania), Inc., employees in December 2006 and purports to have been brought under the Fair Labor Standards Act ("FLSA") on behalf of all Alderwoods and SCI affiliated employees who performed work for which they were not fully compensated, including work for which

96

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

overtime pay was owed. The court has conditionally certified a class of claims as to certain job positions for Alderwoods employees.

Plaintiffs allege causes of action for violations of the FLSA, failure to maintain proper records, breach of contract, violations of state wage and hour laws, unjust enrichment, fraud and deceit, quantum meruit, negligent misrepresentation, and negligence. Plaintiffs seek injunctive relief, unpaid wages, liquidated, compensatory, consequential and punitive damages, attorneys' fees and costs, and pre- and post-judgment interest. We cannot quantify our ultimate liability, if any, in this lawsuit.

*Bryant, et al. v. Alderwoods Group, Inc., Service Corporation International, et al.;* Case No. 3:07-CV-5696-SI; in the U.S. District Court for the Northern District of California. This lawsuit was filed on November 8, 2007 against SCI and various subsidiaries and individuals. It too is related to the Wage and Hour Lawsuit, raising similar claims and brought by the same attorneys. This lawsuit has been transferred to the U.S. District Court for the Western District of Pennsylvania and is now Case No. 08-CV-00891-JFC. We cannot quantify our ultimate liability, if any, in this lawsuit.

*Bryant, et al. v. Service Corporation International, et al.;* Case No. RG-07359593; and *Helm, et al. v. AWGI & SCI;* Case No. RG-07359602; In the Superior Court of the State of California, County of Almeda. These cases were filed on December 5, 2007 by counsel for plaintiffs in the Wage and Hour Lawsuit. These cases assert state law claims like those previously dismissed in the Wage and Hour Lawsuit. These cases were removed to federal court in the U.S. District Court for the Northern District of California, San Francisco/Oakland Division. The Bryant case is now Case No. 3:08-CV-01190-SI and the Helm case is now Case No. 2:-CV-01184-SI. We cannot quantify our ultimate liability, if any, in this lawsuit.

*Stickle, et al. v. Service Corporation International, et al.;* Case No. 08-CV-83; In the U.S. District Court for Arizona, Phoenix Division. Counsel for plaintiffs in the Wage and Hour Lawsuit filed this case on January 17, 2008, against SCI and various related entities and individuals asserting FLSA and other ancillary claims based on the alleged failure to pay for overtime. Plaintiffs seek the same class notice to SCI and related entities that were rejected by the Court in the Wage and Hour Lawsuit. We cannot quantify our ultimate liability, if any, in this lawsuit.

*Ordaz, et al. v. rose Hills Mortuary, L.P., et al.;* Case No. BC 386500; In the Superior Court of the State of California, for the County of Los Angeles. This case was filed on February 28, 2008 as a purported class action against our Rose Hills location asserting claims based on various violations of California law related to the payment of wages and work hours. We settled this case in January 2009.

*Shauna Welch v. California Cemetery & Funeral Services, LLC;* Case No. BC 396793; In the Superior Court of the State of California, for the County of Los Angeles. In August 2008, the plaintiff filed a class action on behalf of employees of a subsidiary in California for alleged violations of the California Labor Code and the Business & Professions Code. The plaintiff specifically alleges that she and the putative class are unable to negotiate their paychecks without paying a fee and/or without being subject to a waiting period since paychecks are issued from an out-of-state bank. We cannot quantify our ultimate liability, if any, in this lawsuit.

The ultimate outcome of the matters described above cannot be determined at this time. We intend to aggressively defend all of the above lawsuits; however, an adverse decision in one or more of such matters could have a material adverse effect on us, our financial condition, results of operations, and cash flows.

### 13. Stockholders' Equity

**(All shares reported in whole numbers)**

#### *Share Authorization*

We are authorized to issue 1,000,000 shares of preferred stock, $1 per share par value. No preferred shares were issued as of December 31, 2008 or 2007. At December 31, 2008 and 2007, 500,000,000 common shares of

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

SERVICE CORPORATION INTERNATIONAL

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

$1 par value were authorized. We had 249,472,075 and 262,858,169 shares issued and outstanding, net of 481,000 and 1,961,300 shares held in treasury at par at December 31, 2008 and 2007, respectively.

*Accumulated Other Comprehensive Income*

Our components of *Accumulated other comprehensive income* at December 31 are as follows:

| | Foreign Currency Translation Adjustment | Pension Related Adjustments | Unrealized Gains and Losses | Accumulated Other Comprehensive (Loss) Income |
|---|---|---|---|---|
| | | (In thousands) | | |
| Balance at December 31, 2005 | 70,499 | — | — | 70,499 |
| Activity in 2006 | 1,039 | — | (3,731) | (2,692) |
| Adjustment upon initial adoption of SFAS 158 | — | (623) | — | (623) |
| Increase in net unrealized gains associated with available-for-sale securities of the trusts | — | | 37,751 | 37,751 |
| Reclassification of net unrealized gains activity attributable to the deferred preneed funeral and cemetery receipts held in trust and care trusts' corpus | — | | (37,751) | (37,751) |
| Reclassification for translation adjustment realized in net gain | 5,114 | | | 5,114 |
| Balance at December 31, 2006 | $ 76,652 | $ (623) | $ (3,731) | $ 72,298 |
| Activity in 2007 | 92,003 | 623 | (5,699) | 86,927 |
| Reduction in net unrealized gains associated with available-for-sale securities of the trusts | | | (105,438) | (105,438) |
| Reclassification of net unrealized losses activity attributable to the deferred preneed funeral and cemetery receipts held in trust and care trusts' corpus | — | | 105,438 | 105,438 |
| Reclassification for losses on available-for-sale securities realized in net income | | | 9,430 | 9,430 |
| Reclassification for translation adjustment realized in net loss | (16,065) | — | — | (16,065) |
| Balance at December 31, 2007 | $ 152,590 | $ — | $ — | $ 152,590 |

98

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

### SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Foreign Currency Translation Adjustment | Pension Related Adjustments | Unrealized Gains and Losses | Accumulated Other Comprehensive (Loss) Income |
|---|---|---|---|---|
| | | | (In thousands) | |
| Activity in 2008 | (115,941) | — | — | (115,941) |
| Reduction in net unrealized gains associated with available-for-sale securities of the trusts | — | — | (605,355) | (605,355) |
| Reclassification of unrealized losses activity attributable to the deferred preneed funeral and cemetery receipts held in trust and care trusts' corpus | | | 605,355 | 605,355 |
| Balance at December 31, 2008 | $ 36,649 | $ — | $ — | $ 36,649 |

The reclassification for losses on available-for-sale securities adjustment of $9.4 million for the year ended December 31, 2007 primarily relates to the sale of a consolidated subsidiary and is included in *Income from discontinued operations* on our consolidated statement of operations. The reclassification for translation adjustment of $16.1 million for the year ended December 31, 2007 relates to the sale of our former equity investment in France and is included in *Equity in earnings of unconsolidated subsidiaries* on our consolidated statement of operations.

The reclassification adjustment of $5.1 million for the year ended December 31, 2006 primarily relates to the sale of our operations in Singapore. The $3.7 million unrealized loss on investment securities is related to investment securities held by a consolidated subsidiary.

The assets and liabilities of foreign operations are translated into U.S. dollars using the current exchange rate. The U.S. dollar amount that arises from such translation, as well as exchange gains and losses on intercompany balances of a long-term investment nature, are included in the cumulative currency translation adjustments in *Accumulated other comprehensive income.* Income taxes are generally not provided for foreign currency translation.

#### Share Repurchase Program

Subject to market conditions, normal trading restrictions, and limitations in our debt covenants, we may make purchases in the open market or through privately negotiated transactions under our share repurchase program. During 2008, we repurchased 17.7 million shares of common stock at an aggregate cost of $142.2 million including commissions, or an average cost per share of $8.03. During 2007, we repurchased 38.5 million shares of common stock at an aggregate cost of $505.1 million. During 2006, we repurchased 3.4 million shares of common stock at an aggregate cost of $27.9 million. In November 2008, our Board of Directors approved an increase in our share repurchase program authorizing the investment of up to an additional $120 million to repurchase our common stock. The remaining dollar value of shares authorized to be purchased under the share repurchase program was $123.4 million at December 31, 2008.

#### Cash Dividends

On November 12, 2008, our Board of Directors approved a cash dividend of $.04 per common share. At December 31, 2008, this dividend totaling $10.0 million was recorded in *Accounts payable and accrued liabilities* and *Capital in Excess of Par Value* in our consolidated balance sheet. Subsequent to December 31, 2008, this dividend was paid. We paid $41.5 million, $34.6 million, and $29.4 million in cash dividends in 2008, 2007, and 2006, respectively. On February 11, 2009, our Board of Directors approved a cash dividend of $.04 per common share.

99

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

**SERVICE CORPORATION INTERNATIONAL**

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

**14.   Share-Based Compensation**

*Stock Benefit Plans*

We maintain benefit plans whereby shares of our common stock may be issued pursuant to the exercise of stock options or restricted stock granted to officers and key employees. Our Amended 1996 Incentive Plan reserves 34,000,000 shares of common stock for outstanding and future awards of stock options, restricted stock, and other stock based awards to officers and key employees.

Our benefit plans allow for options to be granted as either non-qualified or incentive stock options. The options historically have been granted annually, or upon hire, as approved by the Compensation Committee of the Board of Directors. The options are granted with an exercise price equal to the market price of our common stock on the date grant, as approved by the Compensation Committee of the Board of Directors. The options are generally exercisable at a rate of 33⅓% each year unless alternative vesting methods are approved by the Compensation Committee of the Board of Directors. Restricted stock awards are generally expensed to income ratably over the period during which the restrictions lapse. At December 31, 2008 and 2007, 12,068,455 and 13,358,979 shares, respectively, were reserved for future option and restricted stock grants under our stock benefit plans.

We utilize the Black-Scholes option valuation model for estimating the fair value of our stock options. This model allows the use of a range of assumptions related to volatility, the risk-free interest rate, the expected life, and the dividend yield. The expected volatility utilized in the valuation model is based on implied volatilities from traded options on our stock and the historical volatility of our stock price. The dividend yield and expected holding period are based on historical experience and management's estimate of future events. The risk-free interest rate is derived from the U.S. Treasury yield curve based on the expected life of the option in effect at the time of grant. The fair values of our stock options are calculated using the following weighted average assumptions, based on the methods described above for the years ended December 31, 2008, 2007, and 2006:

| Assumptions | Years Ended December 31, | | |
| --- | --- | --- | --- |
| | 2008 | 2007 | 2006 |
| Dividend yield | 1.3% | 1.4% | 1.3% |
| Expected volatility | 45.9% | 38.9% | 37.9% |
| Risk-free interest rate | 2.9% | 4.8% | 4.5% |
| Expected holding period | 5.7 years | 5.9 years | 5.6 years |

The following table shows a summary of information with respect to stock option and restricted share compensation for 2008, 2007, and 2006, as included in our consolidated statement of operations for those respective periods:

| | December 31, | | |
| --- | --- | --- | --- |
| | 2008 | 2007 | 2006 |
| | | (In thousands) | |
| Total pretax employee share-based compensation expense included in net income | $ 9,261 | $ 8,787 | $ 7,035 |
| Income tax benefit related to share-based compensation included in net income | $ 3,732 | $ 3,401 | $ 3,198 |

*Stock Options*

The following table sets forth stock option activity for the year ended December 31, 2008:

(Shares reported in whole numbers and not in thousands)

100

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

### SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Options | Weighted-Average Exercise Price |
|---|---|---|
| Outstanding at December 31, 2007 | 13,568,445 | $ 6.25 |
| Granted | 1,434,143 | $ 11.58 |
| Exercised | (3,944,385) | $ 3.76 |
| Forfeited | (138,901) | $ 10.63 |
| Expired | (57,413) | $ 12.03 |
| Outstanding at December 31, 2008 | 10,861,889 | $ 7.77 |
| Exercisable at December 31, 2008 | 7,639,216 | $ 6.51 |

As of December 31, 2008, the aggregate intrinsic value for stock options outstanding and exercisable was $1.7 million and $1.7 million, respectively. Set forth below is certain information related to stock options outstanding and exercisable at December 31, 2008:

(Shares reported in whole numbers and not in thousands)

| | Options Outstanding | | | Options Exercisable | |
|---|---|---|---|---|---|
| Range of Exercise Price | Number Outstanding at December 31, 2008 | Weighted-Average Remaining Contractual Life | Weighted-Average Exercise Price | Number Exercisable at December 31, 2008 | Weighted-Average Exercise Price |
| $0.00 — 4.00 | 932,000 | 0.6 | $ 3.48 | 932,000 | $ 3.48 |
| 4.01 — 6.00 | 3,405,000 | 1.1 | $ 4.97 | 3,405,000 | $ 4.97 |
| 6.01 — 9.00 | 2,805,686 | 4.4 | $ 7.59 | 2,312,625 | $ 7.46 |
| 9.01 — 15.00 | 3,464,043 | 6.5 | $ 11.16 | 734,431 | $ 10.87 |
| 15.01 — 38.00 | 255,160 | 0.5 | $ 16.84 | 255,160 | $ 16.84 |
| $0.00 — 38.00 | 10,861,889 | 3.6 | $ 7.77 | 7,639,216 | $ 6.51 |

Other information pertaining to option activity during the years ended December 31 is as follows:

| | 2008 | 2007 | 2006 |
|---|---|---|---|
| Weighted-average grant-date fair value of stock options granted (valued using Black-Scholes model) | $ 4.78 | $ 4.35 | $ 3.11 |
| Total fair value of stock options vested (in thousands) | $ 5,627 | $ 3,965 | $ 1,987 |
| Total intrinsic value of stock options exercised (in thousands) | $ 16,559 | $ 47,800 | $ 6,448 |

We calculated our historical pool of windfall tax benefits by comparing the book expense for individual stock grants and the related tax deduction for options granted after January 1, 1995. Adjustments were made to exclude windfall tax benefits that were not realized due to our net operating loss position prior to December 31, 2006. Upon completion of this calculation, we determined an additional paid in capital pool of $2.1 million.

For the years ended December 31, 2008, 2007, and 2006, cash received from the exercise of stock options was $14.8 million, $52.9 million, and $5.9 million, respectively. We recognized windfall tax deduction of $17.9 million, $49.4 million, and $5.7 million in excess of previously recorded tax benefits, based on the option value at the time of grant for the years ended December 31, 2008, 2007, and 2006, respectively. Pursuant to SFAS 123(R) *"Share-Based Payment"*, the additional tax benefit associated with the windfall is not recognized until the deduction reduces taxes payable. We recognized compensation cost of $6.2 million, $5.4 million, and $4.0 million related to stock options for the years ended December 31, 2008, 2007, and 2006, respectively. As of December 31, 2008, the unrecognized compensation expense related to stock options of $8.2 million is expected to be recognized over a weighted average period of 1.9 years.

101

Source: SERVICE CORPORATION , 10-K, March 02, 2009

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

*Restricted Shares*

Restricted share activity was as follows:

(Shares reported in whole numbers)

| | Restricted Shares | | Weighted-Average Grant-Date Fair Value |
|---|---|---|---|
| Nonvested restricted shares at December 31, 2007 | 674,576 | $ | 9.04 |
| Granted | 290,000 | $ | 11.61 |
| Cancelled | (9,034) | $ | 10.51 |
| Vested | (363,601) | $ | 8.36 |
| Nonvested restricted shares at December 31, 2008 | 591,941 | $ | 10.69 |

The fair market value of our restricted stock, as determined on the grant date, is being amortized and charged to income (with an offsetting credit to *Capital in excess of par value*) generally over the average period during which the restrictions lapse. At December 31, 2008, unrecognized compensation expense of $3.5 million related to restricted shares, which is recorded in *Capital in excess of par value* on the balance sheet, is expected to be recognized over a weighted average period of 1.0 years. We recognized compensation cost of $3.0 million, $3.4 million, and $3.0 million in the years ended December 31, 2008, 2007, and 2006, respectively, related to our restricted shares.

### 15. Retirement Plans

We currently have a supplemental retirement plan for certain current and former key employees (SERP), a supplemental retirement plan for officers and certain key employees (Senior SERP), a retirement plan for certain non-employee directors (Directors' Plan), a Retirement Plan for Rose Hills Trustees, and a Rose Hills Supplemental Retirement Plan (Rose Hills SERP) (collectively, the "Plans"). We also provide a 401(k) employee savings plan. We terminated the Employee Retirement Plan of Rose Hills in 2008 and a non-contributory defined benefit pension plan covering certain employees in the United States (U.S. Pension Plan) in 2007.

Effective January 1, 2001, we curtailed our U.S. Pension Plan, SERP, Senior SERP, and Directors' Plan. Additionally, the plans assumed in connection with the Alderwoods acquisition are frozen. Because the Plans are frozen, the participants do not earn incremental benefits from additional years of service, and we have not incurred any additional service cost since December 31, 2000.

Retirement benefits under the SERP are based on years of service and average monthly compensation, reduced by benefits under Social Security. The Senior SERP provides retirement benefits based on years of service and position. The Directors' Plan provides for an annual benefit to directors following retirement, based on a vesting schedule.

The components of the Plans' net periodic benefit cost for the years ended December 31 were as follows:

| | 2008 | 2007 | 2006 |
|---|---|---|---|
| | | (In thousands) | |
| Interest cost on projected benefit obligation | $ 2,590 | $ 6,559 | $ 7,348 |
| Actual return on plan assets | (294) | (5,483) | (6,829) |
| Amortization of prior service cost | — | 168 | 183 |
| Recognized net actuarial (gain) loss | (2,512) | 3,052 | 2,961 |
| Plan dissolution and other | 1,968 | 11,176 | — |
| | $ 1,752 | $ 15,472 | $ 3,663 |

102

Table of Contents

## SERVICE CORPORATION INTERNATIONAL

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The Plans' funded status at December 31 was as follows:

| | 2008 | 2007 |
|---|---|---|
| | (In thousands) | |
| **Change in Benefit Obligation:** | | |
| Benefit obligation at beginning of year | $ 104,207 | $ 150,124 |
| Plan termination | (56,433) | |
| Interest cost | 2,590 | 6,559 |
| Actuarial loss | (568) | 11,558 |
| Benefits paid | (16,845) | (64,034) |
| Benefit obligation at end of year | $ 32,951 | $ 104,207 |
| **Change in Plan Assets:** | | |
| Fair value of plan assets at beginning of year | $ 67,104 | $ 84,686 |
| Plan termination | (56,433) | |
| Actual return on plan assets | (294) | 5,483 |
| Employer contributions | 6,468 | 41,894 |
| Benefits paid, including expenses | (16,845) | (64,959) |
| Fair value of plan assets at end of year | $ — | $ 67,104 |
| **Funded status of plan** | $ (32,951) | $ (37,103) |
| Net amount recognized in the Consolidated Balance Sheet | $ (32,951) | $ (37,103) |
| **Funding Summary:** | | |
| Projected benefit obligations | $ 32,951 | $ 104,207 |
| Accumulated benefit obligation | $ 32,951 | $ 104,207 |
| Fair value of plan assets | $ — | $ 67,104 |
| **Amounts recognized in the Consolidated Balance Sheet:** | | |
| Accrued benefit liability | $ (32,951) | $ (37,103) |

The retirement benefits under the Plans are unfunded obligations of the Company. We have purchased various life insurance policies on the participants in the Plans with the intent to use the proceeds or any cash value buildup from such policies to assist in meeting, at least to the extent of such assets, the Plan's funding requirements. The face value of these insurance policies at December 31, 2008 and 2007 was $75.1 million and $70.6 million, respectively, and the cash surrender value was $51.7 million and $47.7 million as of December 31, 2008 and 2007, respectively. No loans are outstanding against the policies, but there are no restrictions in the policies regarding loans.

The Plans' weighted-average assumptions used to determine the benefit obligation and net benefit cost are as follows: we base our discount rate used to compute future benefit obligations using an analysis of expected future benefit payments. The reasonableness of our discount rate is verified by comparing the rate to the rate earned on high-quality fixed income investments, such as the Moody's Aa index, plus 50 basis points. The assumed rate of return on plan assets was not applicable as we recognize gains and losses on plan assets during the year in which they occur. As all Plans are curtailed, the assumed rate of compensation increase is zero.

| | 2008 | 2007 | 2006 |
|---|---|---|---|
| Weighted average discount rate used to determine obligations | 5.95% | 5.64% | 5.55% |
| Discount rate used to determine net periodic pension cost | 5.75% | 5.53% | 5.75% |

103

Source: SERVICE CORPORATION , 10-K, March 02, 2009