EXHIBIT 38

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | | |
|---|---|---|
| WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et al., on behalf of themselves and all other employees and former employees similarly situated, | ) ) ) ) | Case No. CV 08-1184-SI |
| | ) | Affirmation |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ALDERWOODS GROUP, INC., | ) ) | |
| Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

1    I, **Benson Ackerman**, under penalty of perjury do hereby depose and voluntarily

2    state:

3    1.    I have personal knowledge and I am competent to testify as to the matters set

4    forth herein.

5    2.    I reside at 1135 Diablo Ct., Auburn, California 95603.

6    3.    I was an employee of Alderwoods, Inc. ("Alderwoods" or the "Company") from

7    approximately 1998 until August 2005.

8    4.    While I worked for Alderwoods, I worked as Funeral Director/Embalmer out of

9    the Chapel of the Valley Mortuary in Castro Valley, California.

10    5.    As a Funeral Director/Embalmer I was an hourly employee.    As a Funeral

11    Director/Embalmer I was responsible for complying with all Alderwoods Company-wide

12    policies at my facilities.  The policies were issued from Alderwoods' headquarters and some of

13    the policies were contained in the "Policy and Procedures Binder."

14    **On Call Pay Policy**

15    6.    While working for Alderwoods, employees were only for paid for time spent

16    during on call periods for work actually done at the funeral home.  Therefore, all the work

17    done on call outside the workday and away from the funeral home was not to be

18    compensated for by Alderwoods.

19    7.    In all my years at Alderwoods, I had been instructed by manager Norm Curtis

20    as to the terms and existence of how I would be paid.

21    8.    As an Alderwoods Funeral Director/Embalmer, I was required to work on call

22    approximately one weekend each month.

23    9.    Alderwoods required that I be available to speak with families at all times.  I

24    regularly spoke with families and helped them make arrangements while on call and was not

25    compensated by Alderwoods because I was not at the funeral home when making those calls.

26

27

- 1 -

1   Alderwoods did not compensate me for time spent engaging in such on call activities after the

2   workday, off-site from the funeral home.

3   <u>Unrecorded Work Time Policy</u>

4       10.     Alderwoods' headquarters maintained an Unrecorded Work Time Policy while

5   I was employed by Alderwoods.  Under that policy hourly employees were encouraged to not

6   to record all overtime hours worked.

7       11.     Manager, Norm Curtis, regularly reminded employees that there was a need to

8   watch the number of hours that we worked and to not exceed that amount of time.

9       12.     While employed by Alderwoods, I worked overtime that I was encouraged not

10  to record because of the need to keep hours low.  The Company was aware that I worked

11  such overtime because my manager Norm Curtis typically saw me completing the work.

12  Other employees similarly did not record all of their overtime hours because management

13  encouraged them not to.

14      13.     Neither I nor other employees were ever compensated for such unrecorded

15  hours.

16  <u>Overtime Compensation for Work over Eight Hours in a Workday</u>

17      14.     As an Alderwoods employee, I was not compensated at an overtime rate for

18  any hours worked over eight in a day.

19  <u>Alderwoods' Failure to Provide Wages Immediately upon Termination</u>

20      15.     Alderwoods failed to provide a paycheck and pay me for all of my time

21  immediately upon termination of my employment.

22  <u>Alderwoods' Failure to Provide Timely and Accurate Wage Statements</u>

23      16.     Alderwoods failed to furnish me with timely and accurate wage statements for

24  all my hours worked as an Alderwoods employee.

25

26

27

17.    I have read and had an opportunity to correct this Affirmation consisting of three pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.


Executed on September 22 , 2009.



BENSON ACKERMAN

# EXHIBIT 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et al., on behalf of themselves and all other employees and former employees similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>ALDERWOODS GROUP, INC.,<br><br>             Defendant. | Case No. CV 08-1184-SI<br><br>Affirmation |

I, **HERBERT BATH**, under penalty of perjury do hereby depose and voluntarily state:

1.    I have personal knowledge and I am competent to testify as to the matters set forth herein.

2.    I reside at 200 Oak Avenue, Altamont, Kansas 67330.

3.    I was an employee of Alderwoods Group, Inc. from 2000 to June 2005.

4.    I was an Alderwoods Area Manager of seven locations including Bath Funeral Homes in Altamont, KS and Chetopa, KS.

- 1 -

**Alderwoods' Approach to Policies**

5.    As an Area Manager I was not permitted to make decisions as to how and what employees were paid.

6.    I understood these were corporate-wide policies because I received new policy memoranda by facsimile from my Regional Managers, Brent Matherly and Dennis Philips. Employees were required to initial these policy memoranda and they were faxed to these Regional Managers, who then forwarded them to corporate headquarters.

7.    I understood these were corporate-wide policies because I had absolutely no authority to create such policies and was instead instructed by the Regional Managers, Brent Matherly and Dennis Phillips, that all Alderwoods locations were to be uniform in policies.

8.    I understood these were corporate-wide policies because the Regional Managers, Brent Matherly and Dennis Phillips, conducted annual audits to confirm that Alderwoods national policies were being followed.

9.    I understood these were corporate-wide policies because Human Resources/Corporate sent each location five binders containing their policy information.

10.    I understood these were corporate-wide policies because all employee paychecks came from the same corporate location.

11.    As an Area Manager, I was aware of the defendants' company-wide policies and was responsible for the enforcement of such policies. Part of my responsibilities included communicating the policies to Location Managers as well as other employees. I was also expected to ensure that policies were maintained at each of the locations I supervised.

## Community Work Policy

12.   One of these policies was Alderwoods' Community Work Policy.   This policy required employees to volunteer their time to outside community organizations.

13.   Alderwoods was clear in expecting this community work to be completed on a "volunteer" basis, and employees were not paid for any time spent performing community work.  However, Alderwoods paid all dues for community organizations and events.

14.   I was aware of the policy from a variety of sources since the Community Work Policy was frequently discussed by company executives.   For example, I was told about the policy from the Regional Manager, Brent Matherly, while on a manager conference call towards the beginning of my time as an Area Manager.

15.   Company executives, including the Regional Managers, repeatedly emphasized the importance of community work for Alderwoods. I was told on multiple occasions in meetings with both Brent Matherly and Dennis Phillips that under the Alderwoods corporate policy community work was an expectation but was never compensated. The primary purpose of the policy was to establish a relationship with the community in order to generate business for the company.

16.   Besides the frequent conference calls, company executives, including the Regional Managers, Brent Matherly and Dennis Phillips, continued to emphasize the importance of community work for Alderwoods.  As an Area Manager, they required me to communicate the policy to employees at each of my locations and ensure they understood and complied with it.

17. Further, Alderwoods' Regional Managers, Brent Matherly and Dennis Philips, required that all of my Location Managers held employee regular meetings to discuss the "best practices" of where employees could become involved in the community.

18. Alderwoods emphasized the importance of the Community Work Policy so much that they provided community relation binders on the subject to all funeral home and cemetery locations. The binders contained information on how employees could effectively volunteer in the community so as to generate business for Alderwoods.

**On Call Pay Policy**

19. Defendants also had a company-wide On Call Pay Policy.

20. Funeral Directors were typically on call every evening because of the small size of the funeral homes. As part of the Funeral Director position, employees handled these calls but were not paid by Alderwoods for any time spent on these calls since they were outside of the regular workday and off-site from the funeral home.

21. Employees were also responsible for performing embalmings and removals while on call and were not always compensated for their work. Employees were expected to understand it was part of their job and they would not be compensated.

22. As an Area Manager, I knew Funeral Directors completed mandatory on-call work without being paid for time spent handling phone calls for the business because I understood that on call work was a required part of the position. I was also aware of the work involved, since I was verbally updated on the on-call activities by those employees the following day.

23. Further, I was made aware of the On Call Pay Policy from the Regional Managers, Brent Matherly and Dennis Phillips, who indicated the policy was company-wide

and came "directly from up above" and could not be changed.   I expressed my frustration at the Policy of not compensating employees for their on-call work but was repeatedly told in Manager Meetings that it was a company-wide policy.

**Training Policy**

24.   Alderwoods also had a Training Policy which expected funeral directors to complete work outside of the regular work day for no pay.

25.   Funeral Directors were required to obtain and maintain their license in compliance with state law.

26.   If an employee worked on their training hours away from the funeral home and outside the regular work day, then it was not paid for by Alderwoods.

27.   I have read and had an opportunity to correct this Affidavit consisting of 5 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2009.

**HERBERT BATH**

EXHIBIT 40

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,
*on behalf of themselves and all other employees
similarly situated,*

                                    *Plaintiffs,*                    **AFFIRMATION**

            v.

ALDERWOODS GROUP, INC.,
                                    *Defendants.*

I, **Shane Carswell**, under penalty of perjury do hereby depose and voluntarily state:

1.      I have personal knowledge and I am competent to testify as to the matters set forth herein.

2.      I reside at 1986 NE 35th Court, Oakland Park, Florida.

3.      I was an employee of Alderwoods Group, Inc. ("Alderwoods" or the "Company") from approximately 1996 until 2006.

4.      While I worked for Alderwoods, I was a Funeral Director/Embalmer at Alderwoods' Roswell Funeral Home in Roswell, Georgia, Tara Garden Chapel in Jonesboro, Georgia, Kraeer Funeral Home in Fort Lauderdale, Florida and ABC Jennings Funeral Home in Fort, Lauderdale, Florida.

5.      During my last year of employment, I was a manager at Alderwoods' ABC Jennings Funeral Home.

6.      As a Funeral Director/Embalmer I was an hourly employee.  When I became manager, I was told that I would be a salaried employee.  However, Alderwoods continued to pay me on an hourly basis.

- 1 -

**<u>Pre-Approval for Overtime Policy</u>**

      7.    While I was employed by Alderwoods, I was aware that Alderwoods had a pre-approval for overtime policy.  Under that policy hourly employees were not compensated for overtime unless they were pre-approved for paid overtime.

      8.    As both a manager and an hourly employee I was aware that this pre-approval for overtime policy was a Company-wide policy.

      9.    I first learned about this policy early in my employment from James Mulligan, regional manager for Florida, Georgia and Alabama.  I was also informed of this policy by my local managers, Thomas Scroggs in Georgia and J.M. Jones in Florida.

      10.    Typically, each week I worked overtime that was not pre-approved and I was not compensated for such time.  The Company was aware that I worked such overtime.  I am also aware of other employees who were not compensated for overtime that was not pre-approved.

**<u>Meal Break Policy</u>**

      11.    While I was employed by Alderwoods, I was aware that Alderwoods had a meal break policy.  Under that policy, employees were required to record a full lunch or meal break, even when employees were unable to take a break or were interrupted during a break.

      12.    As both a manager and an hourly employee I was aware that this meal break policy was a Company-wide policy.

      13.    I first learned about this policy early in my employment from James Mulligan, regional manager for Florida, Georgia and Alabama.  I was also informed of this policy by my local managers, Thomas Scroggs in Georgia and J.M. Jones in Florida.

      14.    I missed meal breaks or was interrupted during a break regularly.  Even when I worked during a lunch break, I was required to record my time as though I had taken a full

break and I was not compensated for the time I worked during what was supposed to be my break. The Company was aware that I worked during what were supposed to be meal breaks. I am also aware of other employees who worked through their meal breaks or were interrupted during breaks, but were not compensated for that time.

**Training Policy**

15. Alderwoods also maintained a Company-wide policy requiring employees to attend various types of training. Under the policy, however, Alderwoods would only pay employees to attend training if it occurred during their regularly scheduled shifts. When training was scheduled outside of employees' regular shifts, those employees were not paid for time spent in training.

16. As both a manager and an hourly employee I was aware that this training policy was a Company-wide policy.

17. I first learned about this policy early in my employment from James Mulligan, regional manager for Florida, Georgia and Alabama. I was also informed of this policy by my local managers, Thomas Scroggs in Georgia and J.M. Jones in Florida.

18. I was required to attend training that did not occur during my regularly scheduled shift and I was not compensated for that time. The Company was aware that I attended training outside of my regular shift. I am also aware of other employees who were required to attend training outside of their regular shifts but were not compensated for that time.

19. During my employment with Alderwoods I received a or performance-based bonus.

- 3 -

20.   I have read and had an opportunity to correct this Affirmation consisting of four pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on April    , 2008.

Shane Carswell

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,
*on behalf of themselves and all other employees*
*similarly situated,*

                                    Plaintiffs,                    **AFFIRMATION**

                v.

ALDERWOODS GROUP, INC.
                                    *Defendants.*

I, Shane Carswell, under penalty of perjury do hereby depose and voluntarily state:

1.      Previously, I submitted an affirmation in support of plaintiffs' motion for expedited collective action notification (my "First Affirmation"). I submit this affirmation to clarify some of the statements I made in the earlier affirmation. I have personal knowledge and I am competent to testify as to the matters set forth herein.

Pre-Approval for Overtime Policy

2.      In my First Affirmation, I stated that I was aware Alderwoods had a pre-approval for overtime policy under which hourly employees were not compensated for overtime unless they were pre-approved for paid overtime.

3.      I understand that Alderwoods is now claiming that I have not stated which hourly employees or job titles were subject to this policy. I wish to clarify that I did not identify any specific hourly employees or job titles in my First Affirmation because I was aware that this policy applied to *all* hourly employees of Alderwoods.

4.      No manager or other person at Alderwoods ever told me that the pre-approval for overtime policy did *not* apply to any hourly employees or to any hourly job title. I

- 1 -

understood that *all* hourly employees would not be compensated for overtime hours unless they were pre-approved to be paid for that time.

5.    When I was working as a manger at Alderwoods' ABC Jennings Funeral Home, my Operations Manger informed me that the pre-approval for overtime policy was a company-wide policy applicable to all hourly employees.

6.    I also knew of several other employees in other job titles who were subject to the pre-approval for overtime policy.  For example, support staff and secretaries who worked at the same location as me were not paid overtime unless that overtime was pre-approved.  I was also aware that an apprentice who worked at the Sample Road location in Florida, worked overtime for which she was not compensated because it was not pre-approved.

<u>Meal Break Policy</u>

7.    In my First Affirmation, I also stated that I was aware Alderwoods had a meal break policy that required employees to record a full lunch or meal break, even when employees were unable to take a break or their break was interrupted.

8.    I understand Alderwoods is now claiming that I have not stated which hourly employees or job titles were subject to this policy.  I wish to clarify that I did not identify any specific hourly employees or job titles in my First Affirmation because I was aware that this policy applied to *all* hourly employees of Alderwoods.

9.    No manager or other person at Alderwoods ever told me that the meal break policy did *not* apply to any hourly employees or to any hourly job title.  I understood that *all* hourly employees were required to record a full meal or lunch break.

- 2 -

10.   I also knew of several employees in other job titles who were subject to the meal break policy.  For example, secretaries and support staff who worked at the same locations as me worked through part or all of their meal periods but were not paid for such time.

11.   I have read and had an opportunity to correct this Affirmation consisting of three pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on June *12*, 2008.

_____
Shane Carswell

- 3 -

EXHIBIT 41

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,
*on behalf of themselves and all other employees
similarly situated,*

                                     *Plaintiffs,*

        v.

ALDERWOODS GROUP, INC. and SERVICE
CORPORATION INTERNATIONAL,

                                       *Defendants.*

**AFFIRMATION**

I, **Millard Jude Daigle**, under penalty of perjury do hereby depose and voluntarily state:

1.    I have personal knowledge and I am competent to testify as to the matters set forth herein.

2.    I reside at 2456 Highway 20, Vacherie, Louisiana.

3.    I was an employee of Alderwoods Group, Inc. ("Alderwoods" or the "Company") from approximately 2000, when Alderwoods acquired the funeral home where I was employed, until 2005.

4.    While I worked for Alderwoods, I was a Funeral Director/Assistant Manager at Alderwoods' Tharp-Sontheimer-Tharp Funeral Home and at Alderwoods' Lamana-Panno-Fallo Funeral Home, both of which were located in Metarie, Louisiana.

5.    As a Funeral Director/Assistant Manager I was an hourly employee.

**Pre-Approval for Overtime Policy**

6.    While I was employed by Alderwoods, I was aware that Alderwoods had a pre-approval for overtime policy. Under that policy hourly employees were not compensated for overtime unless they were pre-approved for paid overtime.

- 1 -

7.    As an hourly employee I was aware that this pre-approval for overtime policy was a Company-wide policy.

8.    I was informed by my area manager, Billy Henry, that employees would not be paid for overtime.  I was also aware that when other employees submitted time cards which reflected overtime hours which had not been pre-approved my location manager, Ronnie Windaham, would change their time cards to reflect only 40 hours in each week.

9.    Typically, each week I worked overtime that was not pre-approved and I was not compensated for such time.  The Company was aware that I worked such overtime.  I am also aware of other employees who were not compensated for overtime that was not pre-approved.

**Meal Break Policy**

10.    While I was employed by Alderwoods, I was aware that Alderwoods had a meal break policy.  Under that policy, employees were required to record a full lunch or meal break, even when employees were unable to take a break or were interrupted during a break.

11.    As an hourly employee I was aware that this meal break policy was a Company-wide policy.

12.    I missed meal breaks or was interrupted during a break regularly.  Even when I worked during a lunch break, I was required to record my time as though I had taken a full break and I was not compensated for the time I worked during what was supposed to be my break.  The Company was aware that I worked during what were supposed to be meal breaks. I am also aware of other employees who worked through their meal breaks or were interrupted during breaks, but were not compensated for that time.

**Training Policy**

13.   Alderwoods also maintained a Company-wide policy requiring employees to attend various types of training.   Under the policy, however, Alderwoods would only pay employees to attend training if it occurred during their regularly scheduled shifts.   When training was scheduled outside of employees' regular shifts, those employees were not paid for time spent in training.

14.   As an hourly employee I was aware that this training policy was a Company-wide policy.

15.   I was required to attend training that did not occur during my regularly scheduled shift and I was not compensated for that time.   The Company was aware that I attended training outside of my regular shift.   I am also aware of other employees who were required to attend training outside of their regular shifts but were not compensated for that time.

16.   During my employment with Alderwoods I occasionally received commissions and/or performance-based bonuses.

17.   I have read and had an opportunity to correct this Affirmation consisting of three pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on April   , 2008.

_Millard Jude Daigle_
Millard Jude Daigle

- 3 -

EXHIBIT 42

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH PRISE and HEATHER RADY, *on behalf of themselves and all other employees similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>ALDERWOODS GROUP, INC.,<br>Defendants. | AFFIRMATION |

I, **Steven Detschner**, under penalty of perjury do hereby depose and voluntarily state:

1. I have personal knowledge and I am competent to testify as to the matters set forth herein.

2. I reside at 5 Windjammer Lane, South Yarmouth, Massachusetts.

3. I was an employee of Alderwoods Group, Inc. ("Alderwoods" or the "Company") from approximately 2002 until 2004.

4. While I worked for Alderwoods, I was an Embalmer for approximately two years and after that I was a Funeral Director at Alderwoods' Doane Beal and Anes Funeral Home and Nickerson Funeral Home locations in Massachusetts.

5. As an Embalmer and as a Funeral Director I was an hourly employee.

**Pre-Approval for Overtime Policy**

6. While I was employed by Alderwoods, I was aware that Alderwoods had a pre-approval for overtime policy. Under that policy hourly employees were not compensated for overtime unless they were pre-approved for paid overtime.

- 1 -

7.     I received a memorandum from one of Alderwoods' regional managers informing me of the pre-approval for overtime policy.  Additionally, my location managers David Hunt and Jerry Tilton stated that employees were required to obtain pre-approval for overtime.

8.     Throughout my employment with Alderwoods I often worked overtime that was not pre-approved and I was not compensated for such time.  The Company was aware that I worked such overtime.  I am also aware of other employees who were not compensated for overtime that was not pre-approved.

## Meal Break Policy

9.     While I was employed by Alderwoods, I was aware that Alderwoods had a meal break policy.  Under that policy, employees were not paid for time that was supposed to be a lunch or meal break each day, even when employees were unable to take a break or were interrupted during a break.

10.    Throughout my employment with Alderwoods, I missed meal breaks or was interrupted during a break regularly.  Even when I worked during a lunch break, I was paid as though I had taken a full break and I was not compensated for the time I worked during what was supposed to be my break.  The Company was aware that I worked during what were supposed to be meal breaks.  I am also aware of other employees who worked through their meal breaks or were interrupted during breaks, but were not compensated for that time.

## Training Policy

11.    Alderwoods also maintained a Company-wide policy requiring employees to attend various types of training.  Under the policy, however, Alderwoods would only pay employees to attend training if it occurred during their regularly scheduled shifts.  When

- 2 -

training was scheduled outside of employees' regular shifts, those employees were not paid for time spent in training.

12.   I was required to attend training that did not occur during my regularly scheduled shift and I was not compensated for that time.   The Company was aware that I attended training outside of my regular shift.   I am also aware of other employees who were required to attend training outside of their regular shifts but were not compensated for that time.

13.   I have read and had an opportunity to correct this Affirmation consisting of three pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.


I affirm under penalty of perjury that the foregoing is true and correct.


Executed on April 29, 2008.

_____
Steven Detschner

EXHIBIT 43

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,
*on behalf of themselves and all other employees
similarly situated,*

|  |  |  |
|---|---|---|
| | *Plaintiffs,* | AFFIRMATION |
| v. | | |
| ALDERWOODS GROUP, INC. | *Defendants.* | |

I, Heidi Fontaine, under penalty of perjury do hereby depose and voluntarily state:

1.   I have personal knowledge and I am competent to testify as to the matters set forth herein.

2.   I reside at 578 Avenue G, Westwego, LA 70094.

3.   I was an employee of Alderwoods Group, Inc. ("Alderwoods" or the "Company") from approximately 2004 until 2006.

4.   While I worked for Alderwoods, I was a Administrative Assistant at Alderwoods' Bultman Funeral Home in New Orleans, Louisiana from 2004 through 2005, and Tharp-Sontheimer Funeral Home in New Orleans, Louisiana from 2005-2006.

5.   As an Administrative Assistant I was an hourly employee.

Pre-Approval for Overtime Policy

6.   While I was employed by Alderwoods, I was aware that Alderwoods had a pre-approval for overtime policy.  Under that policy hourly employees were not compensated for overtime unless the overtime was pre-approved.

7.   As an hourly employee I was aware that this pre-approval for overtime policy was a Company-wide policy.

- 2 -

8.   I was informed by my Managers Kelly Porte and Billy Henry that under Company policy, all overtime hours must be pre-approved or else employees will not be paid for them.

9.   Typically, each week I worked overtime that was not pre-approved and I was not compensated for such time. The Company was aware that I worked such overtime. I am also aware of other employees who were not compensated for overtime that was not pre-approved.

## Meal Break Policy

10.   While I was employed by Alderwoods, I was aware that Alderwoods had a meal break policy. Under that policy, employees were required to record a full lunch or meal break, even when employees were unable to take a break or were interrupted during a break.

11.   As an hourly employee I was aware that this meal break policy was a Company-wide policy.

12.   I was also informed by my Managers Kelly Porte and Billy Henry that employees had to deduct a full lunch break from their hours each day, whether or not they took a lunch, or if their lunch break was interrupted.

13.   I missed meal breaks or was interrupted during a break regularly. Even when I worked during a lunch break, I was required to record my time as though I had taken a full break and I was not compensated for the time I worked during what was supposed to be my break. The Company was aware that I worked during what were supposed to be meal breaks. I am also aware of other employees who worked through their meal breaks or were interrupted during breaks, but were not compensated for that time.

14.   I have read and had an opportunity to correct this Affirmation consisting of three pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on April 29 2008.

Heidi Fontaine

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,
*on behalf of themselves and all other employees
similarly situated,*

|                              |              |
|------------------------------|--------------|
|                   Plaintiffs, | **AFFIRMATION** |
|                              |              |
| v.                           |              |
|                              |              |
| ALDERWOODS GROUP, INC.       |              |
|                   *Defendants.* |              |

I, Heidi Fontaine, under penalty of perjury do hereby depose and voluntarily state:

1.   Previously, I submitted an affirmation in support of plaintiffs' motion for expedited collective action notification (my "First Affirmation"). I submit this affirmation to clarify some of the statements I made in the earlier affirmation. I have personal knowledge and I am competent to testify as to the matters set forth herein.

Pre-Approval for Overtime Policy

2.   In my First Affirmation, I stated that I was aware Alderwoods had a pre-approval for overtime policy under which hourly employees were not compensated for overtime unless they were pre-approved for paid overtime.

3.   I understand that Alderwoods is now claiming that I have not stated which hourly employees or job titles were subject to this policy. I wish to clarify that I did not identify any specific hourly employees or job titles in my First Affirmation because I was aware that this policy applied to *all* hourly employees of Alderwoods.

4.   While I was employed by Alderwoods, I was informed by my managers, Kelly Porte and Billy Henry, that the pre-approval for overtime policy was a company-wide policy applicable to all hourly employees.

5.    No manager or other person at Alderwoods ever told me that the pre-approval for overtime policy did *not* apply to any hourly employees or to any hourly job title.   I understood that *all* hourly employees would not be compensated for overtime hours unless they were pre-approved to be paid for that time.

6.    I also knew of several other employees in other job titles who were subject to the pre-approval for overtime policy, including embalmers, administrators, hostesses and couriers who worked at the same locations as me.

**Meal Break Policy**

7.    In my First Affirmation, I also stated that I was aware Alderwoods had a meal break policy that required employees to record a full lunch or meal break, even when employees were unable to take a break or their break was interrupted.

8.    I understand Alderwoods is now claiming that I have not stated which hourly employees or job titles were subject to this policy.  I wish to clarify that I did not identify any specific hourly employees or job titles in my First Affirmation because I was aware that this policy applied to *all* hourly employees of Alderwoods.

9.    My managers, Kelly Porte and Billy Henry, also informed me that the meal break policy was a company-wide policy that applied to all hourly employees.

10.   No manager or other person at Alderwoods ever told me that the meal break policy did *not* apply to any hourly employees or to any hourly job title.  I understood that *all* hourly employees were required to record a full meal or lunch break.

11.   I also knew of several employees in other job titles who were subject to the meal break policy.  For example, a courier who worked at the same location as me worked through part or all of his meal periods but was not paid for such time.

12. I have read and had an opportunity to correct this Affirmation consisting of three pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on June 12, 2008.

Heidi Fontaine

# EXHIBIT 44

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,
*on behalf of themselves and all other employees
similarly situated,*

                                        Plaintiffs,              AFFIRMATION

                v.

ALDERWOODS GROUP, INC.,
                                        Defendants.

I, **Joe Garza**, under penalty of perjury do hereby depose and voluntarily state:

1.     I have personal knowledge and I am competent to testify as to the matters set forth herein.

2.     I reside at 8901 Braeswood #304, Houston, Texas.

3.     I was an employee of Alderwoods Group, Inc. ("Alderwoods" or the "Company") from approximately 2006 until Alderwoods was acquired by Service Corporation International.

4.     While I worked for Alderwoods, I was an Evening Dispatcher at Fannin Funeral Home in Houston, Texas.

5.     As an Evening Dispatcher I was an hourly employee.

**Pre-Approval for Overtime Policy**

6.     While I was employed by Alderwoods, I was aware that Alderwoods had a pre-approval for overtime policy.  Under that policy hourly employees were not compensated for overtime unless they were pre-approved for paid overtime.

7.     I learned about the pre-approval policy when manager Kevin Byron told me that we would not be paid for overtime hours.  As an Evening Dispatcher, I was not permitted to

leave until my replacement arrived to cover the next shift.  I often worked unapproved overtime hours when my replacement arrived late.

8.    Typically, each week I worked overtime that was not pre-approved and I was not compensated for such time.  The Company was aware that I worked such overtime.  I am also aware of other employees who were not compensated for overtime that was not pre-approved.

9.    I have read and had an opportunity to correct this Affirmation consisting of two pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on April   , 2008.

Joe Garza

- 2 -

# EXHIBIT 45

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et al., on behalf of themselves and all other employees and former employees similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALDERWOODS GROUP, INC.,<br><br>Defendant. | Case No. CV 08-1184-SI<br><br>Affirmation |

I, **RICK HENSLEY**, under penalty of perjury do hereby depose and voluntarily state:

1. I have personal knowledge and I am competent to testify as to the matters set forth herein.

2. I reside at 4305 Felty Drive, Knoxville, Tennessee 37918.

3. I was an employee of Alderwoods Group, Inc. from 2004/2005 to April 2007.

4. I was employed as a General Manager over five locations in Tennessee including McCarty Mortuary, Evergreen Funeral Chapel, Weaver Funeral Home, Woodhaven Funeral Home and Rawlings Funeral Home.

- 1 -

**Alderwoods' Approach to Policies**

5.    As a General Manager I was not permitted to make decisions as to how and what employees were paid.

6.    I understood these were corporate-wide policies because I received new policy memoranda by facsimile from my Regional Manager, Mitchell Gerth.  Employees were required to initial these policy memoranda and they were faxed to Mitchell Gerth, who then forwarded them to corporate headquarters.

7.    I understood that all the policies that Mitchell Gerth explained to me were being filtered down from headquarters.

8.    I understood these were corporate-wide policies because I had absolutely no authority to create such policies and was instead instructed by the Regional Manager, Mitchell Gerth, that all Alderwoods locations were to be uniform in policies.

9.    I understood these were corporate-wide policies because Human Resources/Corporate sent each location five binders containing their policy information.

10.    I understood these were corporate-wide policies because all employee pay checks came from the same corporate location.

11.    As a General Manager I knew the defendants company-wide policies and was responsible for the enforcement of such policies.  Part of my responsibilities included training and communicating regularly with employees regarding these company policies.  In order to communicate with employees, I held frequent staff meetings and was expected to make sure employees complied with the Alderwoods company policies.

- 2 -

**Community Work Policy**

12.   One of these policies was Alderwoods' Community Work Policy.  This company-wide policy required employees to volunteer their time to outside community organizations and events.

13.   Since Alderwoods expected this community work to be done on a "volunteer" basis, the employees were not paid for any time spent at these outside community organizations and events.

14.   I knew about this policy from a number of sources.  For example, as a General Manager I was told on a conference call by the Regional Manager Mitchell Gerth, that this Community Work Policy was a new nationwide company policy.  Although I cannot recall the specific date of the conversation, I remember the conversation was toward the beginning of my employment as a General Manager.   As stated above, he explained that employees were supposed to perform this work for the company on a purely volunteer basis, not a paid basis.  This work was to be completed outside of their regular scheduled work day.

15.   Company executives, including the Regional Manager, Mitchell Gerth, emphasized the importance of community work for Alderwoods.  The primary purpose of the policy was to help the company by bringing additional business into the funeral home.

16.   Following that call, Alderwoods continued to emphasize the Community Work Policy for its locations, including mine.  Each week I participated in conference calls with company executives, including the Regional Manager, Mitchell Gerth, and I was told to regularly check in with employees and make sure that they were completing the volunteer work and recording it in the defendant's binder.   Employees were required to record all contact and time spent within the community.

- 3 -

17. I was on these conference calls every single week and the Community Work Policy was a regular discussion topic. Upper Management, including the Regional Manager, Mitchell Gerth, made it clear that headquarters always wanted to know how and where the employees were performing community work.

18. When I learned about the program, I was instructed by my Regional Manager, Mitchell Gerth, to hold a meeting to discuss the new Alderwoods community work policy with all Location Managers. During this meeting all managers brainstormed how they would get their employees to comply with the new policy.

19. As a General Manager, I was required to ensure that all Location Managers held weekly staff meetings with employees to discuss the importance of community work. At these meetings suggestions were provided to employees about where they could become involved in the community and "volunteer" time to help Alderwoods develop business.

20. Alderwoods required me as a General Manager to ensure that all employees complied with the Community Work Policy at their locations.

21. Alderwoods emphasized the importance of community work so much that they provided binders on the subject. The community binders contained spreadsheets discussing community influencers and how employees could effectively volunteer in the community so as to generate business for defendants.

22. The Location Managers would then forward the work sheets to me, which I forwarded to my supervisor, the Regional Manager, Mitchell Gerth. My understanding was that the work sheets were forwarded to corporate headquarters.

- 4 -

**On Call Pay Policy**

23.   Another Alderwoods policy included their company-wide On Call Pay Policy. Employees were required to be on-call on average two days a week and every other weekend.

24.   While on-call, employees were required to handle and respond to all phone-calls that were received by the funeral home.  As part of the Funeral Director position, employees handled these calls but were not paid by Alderwoods for any time spent on these calls since they were outside of the regular workday and off-site from the funeral home.

25.   As Alderwoods employees, Funeral Directors completed mandatory on-call work without being paid for time spent handling phone calls.   I was aware of the work they performed, since I was verbally updated on the on-call activities by those employees the following day.

**Training Policy**

26.   Alderwoods also had a company Training Policy which expected Funeral Directors to maintain their licenses.

27.   Funeral directors were required to obtain and maintain their licenses in compliance with Tennessee state law.  Alderwoods paid the costs involved in completing the licensing requirements but Funeral Directors were not paid for the time spent completing the work. As part of the requirement, they had to complete ten continuing education hours of training every two years.

28.   If an employee worked on their training hours away from the funeral home and outside the regular work day, then it was not paid for by Alderwoods.

H:\Alderwood Group\Manager Identification\Interview Memos\affirmations\alderwoods\former manager affirmation (Hensley, Rick)FINAL VERSION.doc

29.   I have read and had an opportunity to correct this Affidavit consisting of 6 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on September ___, 2009

RICK HENSLEY

H:\Alderwood Group\Manager Identification\Interview Memos\affirmations\former manager affirmation (Hensley, Rick)FINAL VERSION.doc

EXHIBIT 46

1

UNITED STATES DISTRICT COURT

2

NORTHERN DISTRICT OF CALIFORNIA

3

4

SAN FRANCISCO/OAKLAND DIVISION

5

WILLIAM HELM, DEBORAH PRISE,                    )   Case No. CV 08-1184-SI
HEATHER P. RADY, et al., on behalf of           )

6

themselves and all other employees and former   )

7

employees similarly situated,                   )
                                                )   Affirmation

8

              Plaintiffs,                        )
                                                )

9

v.                                              )
                                                )

10

ALDERWOODS GROUP, INC.,                         )
                                                )

11

              Defendant.                         )
                                                )

12

                                                )
                                                )

13

                                                )
                                                )

14

                                                )
                                                )

15

                                                )
                                                )

16

                                                )
                                                )

17

                                                )
                                                )

18

                                                )

19

20

21

22

23

24

25

26

27

I, **Philip Hollis**, under penalty of perjury do hereby depose and voluntarily state:

1. I have personal knowledge and I am competent to testify as to the matters set forth herein.

2. I reside at 85 West Main Street, Broadalbin, NY 12025.

3. I was an employee of Alderwoods, Inc. ("Alderwoods" or the "Company") from approximately July 2000 until December 2006.

4. While I worked for Alderwoods, I worked as a Funeral Director/Embalmer/Manager out of O'Neill Redden Drown in Plattsburgh, NY, E.F. Drown Funeral Home Services in Champlain, NY and Lyon Mountain Funeral Home in Lyon Mountain, NY.

5. As a Funeral Director/Embalmer/Manager, I was an hourly employee. As an hourly employee, I was responsible for complying with all Alderwoods Company-wide policies at my facilities. The policies were issued from Alderwoods' headquarters and some of the policies were contained in the "Policy and Procedures Binder."

<u>On Call Pay Policy</u>

6. Alderwoods' headquarters maintained an On Call Pay Policy while I was employed by Alderwoods.

7. This corporate On Call Pay Policy meant that Alderwoods employees were paid for only part of the work they did while on call. Under this policy, an employee would only be paid for time spent during on call periods for work actually done at the funeral home. Therefore, all the work done on call outside the workday and away from the funeral home was not to be compensated for by Alderwoods.

8. Throughout all my time working for Alderwoods, my manager Steve LaPointe never instructed employees, including myself, how to be compensated for this work.

9. As a Funeral Director/Embalmer/Manager, I was required to work on call approximately three nights a week and every other weekend.

- 1 -

1    10.    Alderwoods required that I be available to make arrangements and speak with
2  families while on call and was not compensated for all my time by Alderwoods because I was
3  not at the funeral home when making those calls.   I was not compensated for any of this on-
4  call work.

5    11.    Employees, including myself were also required to perform embalmings and
6  removals and were only compensated with a flat rate fee regardless of the length of time spent
7  completing the work.   There was no system in place in order to track the time spent
8  performing this work.

9    12.    I had conversations with co-workers and employees at my location who
10  expressed they were similarly experiencing the On Call Pay Policy.

11  <u>Pre-Needs Policy</u>

12    13.    Alderwoods' headquarters maintained a Pre-Needs Policy while I was
13  employed by Alderwoods.   Under that policy hourly employees were not compensated for
14  pre needs sales work that occurred after hours.

15    14.    In all my years at Alderwoods, I had been instructed by management as to the
16  terms and existence of the Pre-Needs Policy and this policy was rigidly enforced by company
17  management.

18    15.    Manager Steve LaPointe informed employees at my location of this Pre-Needs
19  Policy, and regularly monitored my compliance with it.

20    16.    As an Alderwoods hourly employee, I was constantly encouraged to make pre-
21  arrangement sales presentations after normal working hours as doing so would increase
22  Company profits.   Managers made it clear to me that it was important to schedule pre-
23  arrangement appointments when it was convenient for the family, even when it was after
24  hours and off the clock. I would also submit my paperwork to my managers each day, and
25  they were aware when I was regularly performing these pre-arrangement presentations after
26  hours.

27

17. I was not compensated for time I spent selling pre-arrangement agreements policies after hours.

18. I had conversations with co-workers and employees at other locations who expressed they were similarly experiencing the Pre-Needs Policy.

**Training Policy**

19. Alderwoods' headquarters maintained a Training Policy while I was employed by Alderwoods. Alderwoods' Company-wide Training Policy required employees to attend various types of training without compensation in order to maintain their position with the company. Under the policy, however, Alderwoods would only pay employees to attend training if it occurred during their regularly scheduled shifts. When training was scheduled outside of employees' regular shifts, those employees were not paid for time spent in training.

20. In all my years at Alderwoods, I had been instructed by management as to the terms and existence of the Training Policy and this policy was rigidly enforced by company management.

21. I was informed by my manager Steve LaPointe that any training that took place outside regular working hours would not be paid.

22. As an hourly employee, I completed training outside the regular workday and was not compensated for my time. The Company was aware that I completed these trainings because my manager monitored my progress and paid the fees involved. Other employees were also required to attend training outside of their regular shifts but were not compensated for that time.

23. I had conversations with co-workers and employees at other locations who expressed they were similarly experiencing the Training Policy.

- 3 -

24.   I have read and had an opportunity to correct this Affirmation consisting of four pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.

Executed on September ___, 2009.

_____
Philip Hollis

-4-

EXHIBIT 47

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et al., on behalf of themselves and all other employees and former employees similarly situated,

Plaintiffs,

v.

ALDERWOODS GROUP, INC.,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 08-1184-SI

Affirmation

I, **Johnny Johnson**, under penalty of perjury do hereby depose and voluntarily state:

1. I have personal knowledge and I am competent to testify as to the matters set forth herein.

2. I reside at 125 East Harris Circle, Corinth, MS 38834.

3. I was an employee of Alderwoods, Inc. ("Alderwoods" or the "Company") from approximately February 2003 until August 2006.

4. While I worked for Alderwoods, I worked as an Assistant Funeral Director and a Pre-Needs Counselor.

5. As an Assistant Funeral Director, I was an hourly employee.   As a Pre-Needs Counselor and Assistant Funeral Director I was responsible for complying with all Alderwoods Company-wide policies at my facilities.   The policies were issued from Alderwoods' headquarters and some of the policies were contained in the "Policy and Procedures Binder."

**On Call Pay Policy**

6. Alderwoods' headquarters maintained an On Call Pay Policy while I was employed by Alderwoods.

7. This corporate On Call Pay Policy meant that Alderwoods employees were paid for only part of the work they did while on call.  Under this policy, an employee would only be paid for time spent during on call periods for work actually done at the funeral home. Therefore, all the work done on call outside the workday and away from the funeral home was not to be compensated for by Alderwoods.

8. In all my years at Alderwoods, I had been instructed by Managers Jay Jones and Judy McPeters as to the terms and existence of the On Call Policy and this policy was rigidly enforced by company management.

9. As an Alderwoods Assistant Funeral Director, I was required to work on call approximately three shifts a week.

10.     Alderwoods required that I be available to speak with families at all times. I regularly spoke with families and helped them make arrangements while on call and was not compensated by Alderwoods because I was not at the funeral home when making those calls. Alderwoods did not compensate me for time spent engaging in such on call activities after the workday, off-site from the funeral home.

11.     I had conversations with co-workers and employees at other locations who expressed they were similarly experiencing the On Call Pay Policy.

**Pre-Needs Policy**

12.     Alderwoods' headquarters maintained a Pre-Needs Policy while I was employed by Alderwoods.   Under that policy hourly employees were not compensated for pre needs sales work that occurred after hours.

13.     In all my years at Alderwoods, I had been instructed by management as to the terms and existence of the Community Work Policy and this policy was rigidly enforced by company management.

14.     Managers Jay Jones and Judy McPeters informed employees at my location of this Pre-Needs Policy, and regularly monitored my compliance with it.

15.     As both an Assistant Funeral Director and Pre-Needs Counselor, I was constantly encouraged to make pre-needs sales presentations after normal working hours as doing so would increase Company profits.   Managers made it clear to me that it was important to schedule pre-needs appointments when it was convenient for the family, even when it was after hours and off the clock.  I would also report my schedule to my managers each day, and they were aware when I was regularly performing these pre-needs presentations after hours.

16.     I was not compensated for time I spent selling pre-needs policies after hours.

17.     I had conversations with co-workers and employees at other locations who expressed they were similarly experiencing the Pre-Needs Policy.

**Pre-Approval for Overtime Pay Policy**

18.   Alderwoods' headquarters maintained a Pre-Approval for Overtime Pay Policy while I was employed by Alderwoods.  Under that policy, all overtime had to be pre-approved by management.  If I, or another employee, did not get pre-approval for overtime hours, we would not be allowed to record that time, and we would not be paid for those hours.

19.   In all my years at Alderwoods, I had been instructed by management as to the terms and existence of the Pre-Approval for Overtime Pay Policy and this policy was rigidly enforced by company management.

20.   My manager informed the staff that all overtime must be pre-approved by him and that any overtime submitted without approval would not be paid.  My managers would consistently remind employees at staff meetings that no overtime would be paid, even if it was worked, unless it had been pre-approved.

21.   While employed by Alderwoods I worked overtime and I was not compensated at a rate of time and a half for such time.  The Company was aware that I worked such overtime because I was assigned such work on a daily basis, and management discussed the completion of this work on a daily basis.

22.   I had conversations with co-workers and employees at other locations who expressed they were similarly experiencing the Pre-Approval for Overtime Pay Policy.

23.   I have read and had an opportunity to correct this Affirmation consisting of three pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.


Executed on September _16_, 2009.


Johnny Johnson

-3-