# EXHIBIT 91

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et al., on behalf of themselves and all other employees and former employees similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALDERWOODS GROUP, INC.,<br><br>Defendant. | Case No. CV 08-1184-SI<br><br>Affirmation |

I, DENNIS BAKER, under penalty of perjury do hereby depose and voluntarily state:

1. I have personal knowledge and I am competent to testify as to the matters set forth herein.

2. I reside at 801 East Ocelot Street, Meridian, Idaho 83646.

3. I was an employee of Alderwoods Group, Inc. from 2000/2001 to 2005.

4. I was employed as a General Manager of the funeral home and cemetery at Phoenix Memorial in Phoenix, Arizona.

- 1 -


### Alderwoods' Approach to Policies

5. As a General Manager I was not permitted without consultation with Human Resources and my supervisors to make decisions as to how and what employees were paid.

6. I understood these were corporate-wide policies because I received new policy memoranda by facsimile from the Regional Vice President, Ken Diamond. Employees were required to initial these policy memoranda and they were faxed to Ken Diamond, who then forwarded them to corporate headquarters.

7. I understood these were corporate-wide policies because I had absolutely no authority to create such policies and was instead instructed by the Regional Vice President, Ken Diamond, that all Alderwoods locations were to be uniform in policies.

8. I understood these were corporate-wide policies because the Regional Vice President, Ken Diamond, conducted annual audits to confirm that Alderwoods national policies were being followed.

9. I understood these were corporate-wide policies because Human Resources/Corporate sent each location five binders containing their policy information.

10. I understood these were corporate-wide policies because all employee pay checks came from the same corporate location.

11. As a General Manager, I was aware of defendants' company-wide policies and was responsible for the enforcement of such policies. Part of my responsibilities included training and communicating regularly with employees regarding these company policies. In order to communicate with employees, I held frequent staff meetings and was expected to make sure employees complied with the Alderwoods company policies.

Community Work Policy

12. One of these policies was Alderwoods' Community Work Policy. This company-wide policy encouraged employees to volunteer their time to outside community organizations and events.

13. Since Alderwoods encouraged this community work to be done on a "volunteer" basis, the employees were not paid for any time spent at these outside community organizations and events.

14. This policy was addressed through a number of ways. For example, I was informed of the Community Work Policy by the Regional Vice President, Ken Diamond when I initially began my position as a General Manager. I was told that the community work was encouraged to be completed on a volunteer basis, so employees would not be paid for this work. I was also told that Alderwoods would pay dues and costs for any employee involvement in community events or organizations.

15. Company executives, including the Regional Vice President, Ken Diamond, emphasized the importance of the Community Work Policy for Alderwoods by repeatedly discussing the importance of community work. The primary purpose of the Community Work Policy was for employees to use their membership in "volunteer" community organizations so the community got to know the funeral home better and increase Alderwoods' market shares.

16. The Regional Vice President, Ken Diamond, indicated this policy came from headquarters and was a company-wide policy.

17. As a General Manager, I was encouraged by the Regional Vice President, Ken Diamond, to hold weekly staff meetings and discuss the importance of community

involvement, as well as many other topics. Employees were offered suggestions of various community organizations they could join in order to further generate business for the company.

### On Call Pay Policy

18. Another policy was the On Call Pay Policy.

19. Under this policy, Funeral Directors were required to be on call.

20. While on-call, employees were required to handle and respond to all phone-calls that were received by the funeral home. As part of the Funeral Director position, employees handled these calls but were not paid by Alderwoods for any time spent on these calls since they were outside of the regular workday and off-site from the funeral home.

21. As a General Manager, I knew Funeral Directors completed mandatory on-call work without being paid for time spent handling phone calls for the business because I created their on-call schedule. I was also aware of the work involved, since I was verbally updated on the on-call activities by those employees the following day.

22. Alderwoods had no system in place for employees to record the time spent handling phone calls so that they could be paid for this work.

### Training Policy

23. Alderwoods also had a company-wide Training Policy.

24. This policy required Funeral Directors to obtain and maintain corporate expectations on state licensing standards. If an employee completed their training requirements away from the funeral home and outside the regular work day, then it was not paid for by Alderwoods.

25. I was aware of the Training Policy because I received communications on the subject from Company Executives, including the Regional Vice President, Ken Diamond.

26. As a General Manager, I was required by the Regional Vice President, Ken Diamond, to ensure that employees attended the training events. Therefore, I sent e-mail reminders to employees and posted signs indicating upcoming classes employees were required to attend.

27. I have read and had an opportunity to correct this Affidavit consisting of 5 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on September 23, 2009.

*Dennis R. Baker*
DENNIS BAKER