**Exhibit B**

**ON-CALL WORK**

**TABLE OF CONTENTS**

**Page**

**ALDERWOODS COMPANY POLICY**.................................................................................................................. 1-2

    Summary of applicable company policy.

**NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS'**
**REPRESENTATIONS TO THE COURT REGARDING ON-CALL WORK** ......................................... 3-11

    Sworn deposition testimony of non-exempt Alderwoods' employees directly contradicting Plaintiffs'
    representations to the Court regarding allegedly common experiences involving on-call work.

**MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS'**
**REPRESENTATIONS TO THE COURT REGARDING ON-CALL WORK ICE** ........................................ 12-15

    Sworn deposition testimony of Alderwoods' managers directly contradicting Plaintiffs' representations
    to the Court regarding allegedly common experiences involving on-call work.

**NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS'**
**REPRESENTATIONS TO THE COURT REGARDING ON-CALL WORK** ..................................... 16-23

    Statements made under penalty of perjury by non-exempt Alderwoods' employees directly contradicting
    Plaintiffs' representations to the Court regarding allegedly common experiences involving on-call work.

**MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS'**
**REPRESENTATIONS TO THE COURT REGARDING ON-CALL WORK** ................................... 24-30

    Statements made under penalty of perjury by Alderwoods' managers directly contradicting Plaintiffs'
    representations to the Court regarding allegedly common experiences involving on-call work.

PII-1205594v1

**ON-CALL WORK**

| ALDERWOODS COMPANY POLICY ||
| :---: | :---: |
| **Policy** | **Cite to Written Company Policy**[*] |
| "All non-exempt employees are required to record all hours worked each day." | Hours of Work and Overtime, III.E Recording of Hours – ALD000005 (*see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648) |
| "Employees must review their time card/sheet, correct any errors, and sign it before submitting it to their manager for approval."<br><br>"Employees must check and sign their time card or timesheet at the end of each week to assure that their time cards are correct.  Any discrepancies must be reported to the Location Manager/General Manager as soon as practical." | *Id.*<br><br>Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 10. – ALD000010 |
| "Managers are also responsible for . . . ensuring that no 'off the clock' work is allowed; that is, that all work performed by employees is properly documented on time cards/time sheets." | Hours of Work and Overtime, IV.B.6 Manager Responsibilities – ALD000007 |
| "Location Managers/General Managers must verify and sign their respective employees' time cards/timesheet." | Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 12. – ALD000011 (*see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648) |
| "All non-exempt employees will be compensated for all hours worked." | Hours of Work and Overtime, Policy – ALD000004 |
| "Non-exempt employees are to be compensated for all overtime hours worked." | Procedures for Timekeeping (Recording Hours Worked), Purpose – ALD000009 |
| "Non-exempt employees will receive overtime pay of one and one-half (1.5) times their regular rate of pay for all hours worked over forty (40) in any work week . . . ." | Hours of Work and Overtime, III.F Overtime – ALD000006 |
| "When the employee is called to work during the on-call time, the employee will be paid at the employee's appropriate rate of pay . . . [and] [w]hen a non-exempt employee is required to take phone calls . . . the | Hours of Work and Overtime, III.G On-Call – ALD000006 (*see also id.* at III.H Call Back; Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets 9 – ALD000010; *id.* |

[*]All Policies cited in this section are attached as Exhibits 1, 3 and 4 to the Rhonda Suurd Declaration, who is Alderwoods' former Human Resources Manager.  Rhonda Suurd's Declaration is attached to the Brent Knight Declaration as Exhibit S.

ON-CALL WORK

| ALDERWOODS COMPANY POLICY | |
|---|---|
| **Policy** | **Cite to Written Company Policy**[•] |
| employee shall log the start and end times of each phone call [and] . . . will be paid for the time spent in phone conversations.  The recorded time will be included in determining if an employee qualifies for overtime pay in a work week." | Procedure—Call Logs 2-4 – ALD000011) |
| "If an employee is eligible for and receives piecework pay, the employee is still required to record the actual time worked.  The actual hours worked must be figured to determine the correct hourly rate of pay and overtime rate for the pay period." | Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013649 |

-2-

**ON-CALL WORK**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Burgess, Jason (Funeral Director, Embalmer)[i] | Never saw a written policy addressing compensation for on-call work.  Burgess Dep. Tr. at 148:18-22.[ii]

Acknowledges time records reflect instances in which he recorded telephone time while working on-call and was paid for it.  *Id.* at 135:3-137:14; 139:22-140:20; 149:7-16.

Cannot recall anyone telling him not to record time worked on-call.  *Id.* at 353:8-11. |
| Butler, Michael (Arranger) | On-call work included handling issues with faulty alarm system at the location, which required returning to the location to meet the police and reset alarm.  Butler Dep. Tr. at 100:3-13.

Manager said not to submit time for performing work on-call, but then sometimes would add overtime to Butler's pay for on-call work responsibilities.  *Id.* at 109:19-24; 189:7-9. |
| Carswell, Shane (Funeral Director) | Carswell reported all of the time that he worked for Alderwoods while he was on-call on a different time card other than his daily time card.  Carswell Dep. Tr. at 156:22-158:3.

Carswell indicates that there was work he believed he performed while he was on-call for which he was not compensated, including night call, prep work, and even at the flat rates.  Some nights he would get called and would have to arrive an hour early and still just get paid a flat rate.  *Id.* at 159:7-22.

Carswell was not sure that there was any time he performed work when he was on-call that he did not report in some fashion on his time sheet.  *Id.* at 164:2-19.

Carswell is not aware of any companywide policy that employees would not be compensated for actually performing work while on-call.  *Id.* at 175:2-11.

Carswell does not recall any Alderwoods' manager ever telling him not to record time spent handling phone calls while on-call, or that he would not be compensated for any time spent handling calls while on-call.  *Id.* at 226:22-227:5. |

---

[**] Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Carswell, Shane (*cont'd.*) | On-call work was handled differently when he was a funeral director/embalmer working in the central prep facility than it was when he was a location manager in the funeral home.  In central prep facility, he performed removals and embalming on-call and generally reported all on-call work performed.  *Id.* at 152:4-154:23; 156:14-164:8.<br><br>Sometimes he was paid a flat rate and sometimes he was paid for the actual time worked from the time he arrived at the location until he competed the removal/embalming.  *Id.* at 156-159; 163-64.<br><br>As manager of the funeral home, he handled whatever miscellaneous tasks were necessary to take care of the place but did not perform any removals or embalming and received no extra compensation for work performed on-call.  *Id.* at 167:2-168:11; 170:2-172:15. |
| Detschner, Steven (Funeral Director, Embalmer) | Complaint is limited to phone calls handled away from the funeral home because there was no mechanism for reporting his time.  Only started handling on-call phone calls after he became a funeral director.  Detschner Dep. Tr. at 125:21-126:10; 139:25-140:3.<br><br>He admitted reporting time spent on the phone if done at the location.  He admitted being paid for on-call work other than phone calls.  *Id.* at 139:5-24.<br><br>Told manager that he thought Massachusetts' law required them to be paid four hours every time they were on-call for just being on-call.  *Id.* at 140:13-19.<br><br>He was paid the standard two hours for removal and one hour for embalming. Sometimes it took less time, sometimes it took more time.  If it took longer, and the extra time could be justified, he would record the additional time with an explanation and there are examples of this in his timesheets.  He admitted that it took less than the time allotted.  He was paid for more time than he actually worked and in these instances he may have actually been paid for time spent on the phone setting up the removal.  *Id.* at 77:22-78:18; 149:4-150:25. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

ON-CALL WORK

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Detschner, Steven (cont'd) | Not aware of any policy addressing how employees should be paid for on-call work. *Id.* at 216:9-19. |
| Diggs, Jeffrey (Funeral Director, Embalmer) | Was usually scheduled for phone duty only two nights a month.  Diggs Dep. Tr. at 112:2-5; 113:5-9.<br><br>Did not report or record any of the time that he spent on phone duty and never tried to obtain compensation for the time that he was on phone duty because "For me it was more of a hassle than it was worth." *Id.* at 114:18-115:1; 115:14-16; 125:25-126:12.<br><br>Nobody ever told Diggs that he would not be compensated for performing phone duty work. *Id.* at 117:17-19. |
| Escobar, Stephen (Arranger) | Earned piecework for performing removals in addition to his hourly rate.  Escobar Dep. Tr. at 116:16-117:8; 120:5-11.<br><br>Whether or not he reported removals on his time card depended on if his manager wanted him to, which in turn depended on whether the district manager wanted the manager to. *Id.* at 118:13-120:3.<br><br>Seeks to be paid for the entire period of time that he was required to be available on-call, that is from 5:00 p.m. to 8:00 a.m. *Id.* at 142:14-20. |
| Gonzales, Donna (Assistant Funeral Director) | Worked on-call for only a portion of her employment and was scheduled to be on-call almost every single night during this time Gonzales Dep. Tr. at 108:18-109:5; 114:12-16; 115:24-25.<br><br>Performed removals, answered the phone and also vacuumed, did the dishes and performed various other miscellaneous tasks when waiting at the mortuary on-call. *Id.* at 119:7-12; 121:14-19.<br><br>Was paid a flat rate for each removal and seeks to be paid that flat rate for all removals and body transports she performed, even if they were done during her regular day when she was on-the-clock and paid her hourly rate. *Id.* at 128:2-129:22; 140:19-141:3. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Johnson, Louise (Funeral Director, Embalmer) | Began performing on-call work and covered for another funeral director who was supposed to be on-call.  On-call means having to be available to answer your phone after normal business hours, being available to provide pricing information over the phone and answer any families' questions or make calls on their behalf, and this may be anytime between 5 pm and 8 am the next morning.  Has not had to go into the office while on-call. Johnson Dep. Tr. at 67:1-68:18.<br><br>Only covered on-calls when other funeral directors cannot cover them.  *Id.* at 67:7-20; 69:2-4.<br><br>She did not enjoy being woken up at three in the morning to talk to somebody on the phone because people generally have "ridiculous questions" "and it's not just that I get the call and I get paid for the call but then I'm awake, I can not go back to sleep, and I've got to get up in a few more hours and go work, and I could get calls six more times in between then."  She did not think getting paid was worth all of the upset and disruption that she sustained when she was on-call.  *Id.* at 128:3-20.<br><br>She was rarely on-call.  *Id.* at 128:21-24.<br><br>Never saw a written policy issued by Alderwoods saying that people performing on-call duties would not be fully compensated for the work they performed.  *Id.* at 228:15-19.<br><br>Timesheets logged on-call telephone calls for overtime purposes.  *Id.* at 160:15-24.<br><br>No alcohol consumption when on-call.  *Id.* at 174:25-175:11.<br><br>When she first started, employees received one hour of overtime standard for being on-call.  Then each phone call was worth 15 minutes of overtime.  Then it changed to fifteen minute blocks.  *Id.* at 176:20-177:8. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Jones, Robert (Funeral Director) | Was paid piece work for death calls in the amount of $35 per removal.  Jones Dep. Tr. at 150:11-18; 151:5-12.<br><br>Jones did not report any other time that he spent performing on-call work because, "I was so passionate about my job and my position that the compensation really was not an issue for me." *Id.* at 189:14-25.<br><br>Did not tell his manager or anyone else at Evergreen that he was performing on-call work and not reporting all of his time. *Id.* at 190:4-10.<br><br>Not aware of any company policy at Evergreen for not compensating employees for time spent performing on-call services. *Id.* at 190:11-15.<br><br>Not aware of any written Alderwoods' policy stating that employees were not to report all the time they spent performing on-call services.  *Id.* at 193:11-194:1. |
| Keath, Angela (Location Administrator) | Was never on-call and never performed on-call work.  Keath Dep. Tr. at 184:10-19; 216:5-12.<br><br>Has no individual claim for uncompensated on-call work. *Id.* at 184:13-16.<br><br>Not aware of any Location Administrators who were on-call. *Id.* at 185:16-18.<br><br>The only hourly Alderwoods' employees she was aware were on-call were funeral directors. *Id.* at 185:10-15; 216:13-217:1.<br><br>Employees at her location who worked on-call kept track of the time they worked while they were on-call; they were compensated for a guaranteed minimum of three hours for responding to a death call (removal/embalming) even if it took less than three hours; if it took longer than three hours, they reported the time in excess of three hours and it was entered into payroll. *Id.* at 220:7-25; 225:9-228:5. |

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Keath, Angela (*cont'd.*) | During the time that after hour phone logs were used at her location, employees who were using them were compensated for the time reported on their logs. *Id.* at 224:6-23. |
| Kuhta, Richard (Funeral Director, Embalmer) | Being on-call meant being available to answer calls from families; was not required to perform removals or embalming on-call and only had to leave home in unusual, rare situations.  Khuta Dep. Tr. at 106:23-108:18.<br><br>Was never instructed not to report on-call work time; never discussed among employees or by managers.  *Id.* at 114:12-115:5; 113:8-11. |
| Lanza, Michael (Funeral Director, Embalmer Apprentice) | Not aware of a company-wide policy of not compensating employees for work performed on-call.  Lanza Dep. Tr. at 219:6-10.<br><br>Either in late 2003 or 2004, funeral home re-hired an answering service, and no employees of the funeral home performed any on-call work.  *Id.* at 217:8-18.<br><br>For a period of time an outside company handled removals; later a removal staff was hired.  Funeral Directors did not make removals.  *Id.* at 60:1-65:13. |
| Leal, Adrian (Funeral Director, Embalmer Apprentice) | Participated in on-call time, which consisted of taking three cell phones home and answering calls for three separate locations.  Leal Dep. Tr. at 28:11-29:1.<br><br>Understood on-call could mean that any time that the phone rang and he answered it, he was to log 15 minutes per call and was required to also log how much time was spent on the call and any other identifying information including date of the call, telephone number that was calling, family name and subject matter.  *Id.* at 59:11-60:13.<br><br>Because he lived far enough away from the funeral home, he did not have to actually go in when he was on-call to respond to calls; rather, he was required to make arrangements to dispatch someone who was closer to handle any on-site issues.  *Id.* at 64:23-65:13. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Leal, Adrian<br>(*cont'd.*) | Believes that supervisor explained the on-call policy differently than what was intended in the written policies located in his policy manual. *Id.* at 101:16-103:1.<br><br>Understood that on-call time was compensable only when the employees were actually working, that they were not required to remain on company premises, that they were not confined to their homes or any particular place so long as they were within a reasonable travel distance and they were required not to consume alcohol or other intoxicants while on-call. *Id.* at 115:9-116:4.<br><br>Was not aware of any policy that required employees to perform on-call work and not get paid for it, "I am not aware of any volunteerism that they are asking you to do and not get paid for it." *Id.* at 175:19-25.<br><br>Was not paid for any outgoing calls while on-call. *Id.* at 186:24-25. |
| Long, Kasi<br>(Funeral Director) | Was not included in the on-call rotation with the rest of the funeral directors for her locations, but would occasionally fill in on-call if they were extremely busy or someone was on vacation. Long Dep. Tr. at 145:22-146:11. |
| McDonald, Beverly<br>(Funeral Director) | While on-call she would handle removals, do embalmings, meet with families and take telephone calls. McDonald Dep. Tr. at 158:21-159:5.<br><br>She only wrote down her time initially for embalming because her Manager told her only embalming was paid; however, at some point her Manager allegedly told her to record her time spent on after-hours calls and she wrote that time down on her time sheet. *Id.* at 161:2-162:19; 85:16-86:14. Before this change she did not record time spent on after-hour phone calls but she did not recall whether any Alderwoods Manager ever instructed her not to record time spent on after-hours calls. *Id.* at 86:20-87.5. She was told at one point to write down the actual time that she spent on a call by her Manager. *Id.* at 90:12-17.<br><br>The only on-call restrictions that she could remember were not to travel outside of the County, not to drink and to be available by telephone. *Id.* at 159:6-19. |

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work. Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals. Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Ore, William (Apprentice Funeral Director, Embalmer) | While working on-call, recorded time spent on phone calls, writing obituaries, and possibly other on-call tasks on Call Out Sheets.  Ore Dep. Tr. at 112:13-121:9.  No policy regarding compensation for on-call work besides verbal directive from manager.  *Id.* at 206:8-208:20. |
| Peters, John (Funeral Director) | Answered phone calls, arranged for removals and embalmed bodies while working on-call.  Peters Dep. Tr. at 107:14-109:25.  "Was understood" that on-call employees already had pre-approval to perform whatever work was required while on-call.  *Id.* at 115:25-116:12.  Throughout his entire employment with Alderwoods he always recorded on his timesheets the time that he spent actually engaged in work while on-call.  *Id.* at 110:21-25; 114:24-115:24. |
| Rady, Heather (Funeral Director, Embalmer) | Reported and was compensated for all on-call work performed after July 2005.  Rady Dep. Tr. at 93:3-94:7.  Even before that time, asked manager to be paid for on-call phone time on one occasion and was paid.  *Id.* at 69:1-18. |
| Reddick, Jack (Assistant Funeral Director) | Never saw written policy regarding on-call work or compensation for on-call work; does not believe such a policy was part of Alderwoods' policy manual.  Reddick Dep. Tr. at 134:17-135:23. |
| Schabloski, John (Funeral Director, Embalmer) | Clocked in and out at base funeral home location when performing removals and/or embalming on-call and was paid for actual time spent performing this work.  Schabloski Dep. Tr. at 76:2-77:21; 80:6-15.  Did not report phone time or other on-call tasks performed at home or at other funeral home locations because his time clock was not there and he never asked anyone how to record the time.  *Id.* at 138:1-23; 142:17-143:1.  Never told he would not be paid for time worked on-call.  *Id.* at 80:3-5. |

---

[**] Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

ON-CALL WORK

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Takesian, Stephen (Family Service Professional) | Never worked on-call.  Takesian Dep. Tr. at 126:19-20; 168:20-169:6.<br><br>Funeral directors worked on-call and carried a phone/beeper; not aware of any policy, but believes they were paid for on-call time.  *Id.* at 126:22-127:18.<br><br>Funeral directors always were paid for their call-back time if they had to come in from home.  *Id.* at 130:14-25.<br><br>Location had a third party service that did first call body pickups.  *Id.* at 127:5-11. |
| Twiss, Matthew (Arranger) | For a period of time, recorded start and stop time for work performed on-call in an on-call log.  Twiss Dep. Tr. at 85:4-17; 203:15-204:16.<br><br>Recorded at least one hour of time spent working on-call.  *Id.* at 152:3-18<br><br>Acknowledged that records show payment for the on-call work he recorded.  *Id.* at 178:14-179:16; 185:5-186:2. |
| Wilkinson, Jack (Funeral Director) | Generally scheduled to work every other weekend on-call and otherwise as needed/asked.  Wilkinson Dep. Tr. at 49:7-50:9.<br><br>Took a call then walked downstairs (he lived at the location) to clock in; was paid actual hours worked from the time he clocked in until all on-call work was completed.  *Id.* at 87:6-18; 159:23-160:1.<br><br>Never told not to record the time he worked while on-call.  *Id.* at 118:17-20.<br><br>No recollection of a written policy regarding on-call work.  *Id.* at 139:8-24.<br><br>Not aware of a policy stating that Alderwoods' employees were not to record time worked on-call.  *Id.* at 118:22-119:1.<br><br>Paid hourly rate for hours recorded for on-call work.  *Id.* at 159:23-160:1. |

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Baker, Dennis (Location Manager) | From 2000 or 2001 through 2004 or 2005, the location he managed sometimes used a third party for removals and embalming was done during normal business hours. Baker Dep. Tr. at 7:14-16; 72:25-75:2; 85:5-8. <br><br> If hourly employees took a call after hours, they were paid for 15 minutes even if the call lasted only a few minutes. If the call went longer, they would claim the additional time. *Id*. at 75:9-21; 77:4-20. <br><br> Does not recall seeing a written policy that said on-call work should not be compensated. *Id*. at 81:19-82:3. |
| Bath, Herbert (General Manager) | The only job positions that were on-call were funeral directors, embalmers and location managers. Bath Dep. Tr. at 235:25-236:6. <br><br> To his knowledge, except for one instance in which one funeral director/embalmer was not compensated for removing and embalming a body, all other employees who performed embalming or removals while they were on-call were compensated for their work. *Id*. at 237:11-238:18. <br><br> Does not know whether employees at the locations for which he had management responsibility reported the time they spent on after-hour calls or were compensated for that time. *Id*. at 240:13-241:12. <br><br> No knowledge as to whether employees at locations other than those for which he had management responsibility reported the time they spent on-call or were compensated for such time. *Id*. at 242:23-243:5. |
| Burkle, Clark (Location Manager) | Never saw a written policy addressing how employees were to be compensated for on-call work. Burkle Dep. Tr. at 56:21-24. |
| Daigle, Millard[iii] (Assistant Manager) | Was on-call "all the time" to handle phone calls but performed no other types of work on-call. Daigle Dep. Tr. at 199:11-201:22. |

----

[**]Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work. Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals. Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Daigle, Millard (*cont'd.*) | No discussion/directive regarding recording on-call time, and was never told by any Alderwoods' manager that he would not be compensated for on-call work. *Id.* at 202:10-22; 205:2-6.

Does not know whether other funeral directors reported or were compensated for the time they spent on-call. *Id.* at 209:20-210:9. |
| Hensley, Ric (Location Manager) | The only positions that reported to Hensley during the time he was General Manager that were scheduled to be on-call were funeral directors and funeral directors assistants. Hensley Dep. Tr. at 81:3-14.

Employees who responded to a death call were paid a rate (which Hensley referred to as "piece work") of two hours of pay per death call. *Id.* at 77:25-78:8; 84:6-13.

During Hensley's tenure as General Manager, there was a never a time to his knowledge that someone responded to a death call and was not compensated for that time. *Id.* at 77:6-10. |
| Kamienski, Richard (General Manager) | None of the employees he managed performed any type of piece work or were paid on a flat rate basis. Kamienski Dep. Tr. at 124:11-125:6.

Funeral directors, funeral arrangers and location managers were the only employees required to work on-call. *Id.* at 189:3-14; 229:21-230:2. |
| Miles, Barry[iv] (Location Manager) | Only funeral directors took after-hours calls. Miles Dep. Tr. at 132:13-18; 229:24-230:4.

He was paid a flat rate of three hours pay for each after hour removal and 15 minutes for each call taken after hours. *Id.* at 185:7-11. Does not know whether any other Alderwoods' locations had the same procedure for on-call work. *Id.* at 214:2-8.

Agrees that despite what he was told at his specific location, Alderwoods' company policy was to pay hourly employees on-call for the time they spent on an after-hours call. *Id.* at 203:21-204:9. |

[**]Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work. Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals. Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

ON-CALL WORK

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Pramik, Robert (Market Growth Manager) | The on-call policy applied only to funeral directors.  Pramik Dep. Tr. at 140:14-16.  Part-time employees would help with removals, but were not on-call.  They could say "no".  *Id.* at 141:21-142:16.  Two of the seven funeral directors he supervised were salaried (and thus not eligible for overtime).  *Id.* at 30:2-7.<br><br>Pramik only learned of the "no pay for after-hours calls" policy from his supervisor, Ted Reese.  *Id.* at 146:8-12.  There was no company-wide meeting that the attended where this policy was discussed.  *Id.* at 148:18-149:3.<br><br>Pramik had no knowledge of what the on-call policy was for markets outside Harrisburg.  *Id.* at 143:15-20. |
| Prise, Deborah (Location Manager) | Recorded her time and was paid for performing removals on-call.  Prise Dep. Tr. (Day 1) at 114:11-21.<br><br>Beginning in July 2005, employees were paid for on-call work time.  *Id.* at 117:17-118:4. |
| Thomas, Sandy (Location Manager) | No employees received piece work pay at Alderwoods. Thomas Dep. Tr. at 41:2-7.<br><br>Alderwoods' policy required employees on-call to carry and maintain a call log.  He and the other on-call employees carried and maintained a call log when they were on-call, and recorded all of their calls.  *Id.* at 61:9-62:8.<br><br>The office manager never worked on-call after hours.  *Id.* at 64:23-65:6. |
| Weinstein, Stacey (Location Manager) | The only job positions that worked on-call time were funeral directors or funeral director managers.  Weinstein Dep. Tr. (Day 1) at 61:7-16.<br><br>Weinstein claims that she did not record in any fashion any of her on-call time.  *Id.* (Day 1) at 65:14-22.<br><br>Weinstein indicates that she never instructed anyone as a supervisor about recording or not recording on-call time.  *Id.* (Day 1) at 68:7-10. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

## ON-CALL WORK

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| White, Raymond (Location Manager) | Clocked in and out for after-hours removals. White Dep. Tr. at 146:12-147:3. If he did not clock in, he was told to write down his time on his time card. *Id.* at 165:23-166:8. Was also told that he could write down the time it took for him to get to the funeral home after he received a call and he would be paid for it. *Id.* at 228:19-229:10; 232:17-233:10. <br><br> Was never told not to keep track of time he spent answering the telephone after-hours. *Id.* at 147:15-148:1; 152:3-7. Was never told that there was a company-wide policy not to compensate employees for time they spent taking phone calls while on-call. *Id.* at 151:8-14. Never asked what the policy was. *Id.* at 151:16-18. <br><br> He was not aware of any policy for compensating employees for on-call work at other funeral homes. *Id.* at 152:16-21. |

---

**\*\***Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work. Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals. Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

## ON-CALL WORK

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Allen, Lois (Receptionist) | Never performed after hour removals.  Allen Decl. ¶ 6ᵛ. |
| Arms, Beverly (Assistant Administrator) | Did not work on-call or with the deceased.  She generally worked only one or two evenings a week, for about two hours each evening, at viewings.  Arms Dec. ¶ 4. |
| Ayling, Mary (Receptionist) | She was not required to work on-call or perform removals of bodies.  Ayling Dec. ¶¶ 9, 10. |
| Baird, William (Funeral Director, Embalmer) | No one at the funeral home performed removals.  Removals were handled by a central location in the New Orleans area.  Baird Dec. ¶ 7. |
| Ballard, Constance (Location Administrator) | Only part-time employees worked after-hours removals at Memory Chapel.  They were paid on a piecework rate of $50 per removal, while their hourly rate was $10 to $11 an hour.  Generally, a removal took between an hour and two hours.  Ballard Dec. ¶ 10. |
| Bollinger, Karen (Family Services Counselor) | She worked after-hours only on pre-need sales.  She did not perform after-hours removals.  Bollinger Dec. ¶ 7. |
| Cain, Waldo (Funeral Attendant) | Performed removals and was paid hourly for each removal.  He recorded his time spent on a removal by punching in and punching out.  Cain Decl. ¶ 11. |
| Crisp, Donald (Funeral Director) | Would be "on-call" approximately three nights a week performing removals or answering after-hours calls to the funeral home.  He was paid hourly for removals and recorded his time from when he received the call at home until he returned home.  Crisp Dec. ¶¶ 10-11.<br><br>Was not paid a "piece rate" for removals.  *Id.* ¶ 11.<br><br>Each on-call employee used a phone log to record their time.  For any call that lasted 15 minutes or less, he was paid for 15 minutes.  If a call lasted more than 15 minutes, then he was paid for each minute the call lasted.  *Id.* ¶ 12. |

---

**\*\***Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Elliott, James (Funeral Director) | He was on-call for after-hours removals about four times a month.  When on-call, he worked at the funeral home until 9 p.m., then responded to calls from home.  There was also a non-funeral director employee who was on-call for removals.  Elliott Dec. ¶ 5.<br><br>The employees were paid for at least two hours for any removal, with the amount of time allotted increasing the further from town the employees had to travel.  If he qualified for overtime, he was paid overtime for the removals.  He estimates that 99% of the removals were completed within 2 hours, and most took significantly less time.  *Id.* ¶ 6.<br><br>Funeral directors also responded to phone calls when on-call.   They were paid their hourly rate for the time of the call.  Most calls, however, were taken by an answering service, and the funeral directors contacted only in emergencies and for removals.  *Id.* ¶ 7. |
| Fogg, Margaret (Location Administrator) | She did not work after-hours removals.  Fogg Dec. ¶ 9.<br><br>If an employee took a telephone call after-hours, they were paid 15 minutes for each call, and additional 15-minute increments thereafter depending on how long the call lasted.  *Id.* |
| Forrest, Wendy (Location Administrator) | At one time, employees conducting after-hours removals were paid a flat three hours of time per removal at the employee's hourly rate, including overtime if the employee qualified.  Forrest Dec. ¶ 10.<br><br>Removals were usually performed by drivers who were scheduled to be on duty.  Now, a service center handles removals for Humphrey Mortuary.  *Id.*<br><br>Funeral directors were paid an automatic 15 minutes for each after-hours call they received, and may have been paid by the minute if the call was longer than 15 minutes.  *Id.* ¶ 11. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Gibson, Jill (Funeral Arranger) | When she was a driver for the funeral home, she performed after-hours removals.  She logged her time onto "first call sheets" and was paid hourly for the time it took her to complete the removal.  Gibson Dec. ¶ 10.<br><br>Funeral directors at Humphrey Mortuary were not on-call for removals.  Gibson, as a driver, was on-call three nights a week.  *Id.* ¶ 11.<br><br>Funeral directors and Arrangers at Humphrey Mortuary handled business after-hours.  She was paid an automatic 15 minutes for each call.  She does not recall any phone calls lasting longer than 15 minutes.  *Id.* ¶ 12. |
| Goni, Helen (Office Manager) | Was never required to work on-call, or perform after-hours removals, nor did she.  Her manager handled all after-hours phone calls.  Goni Dec. ¶¶ 8-9. |
| Hunt, Theodore (Funeral Attendant) | He was never required to, nor did he ever perform removals.  Hunt Dec. ¶ 9. |
| Jones, Regina (Funeral Director) | Funeral directors at Baldwin-Lee Funeral Home rotated on-call for after-hours removals.  If on-call, the funeral directors were required to be present and on the clock at the funeral home until 9 p.m.  Afterwards, the funeral directors could leave the funeral home but remained on-call.  If she received an after-hours call for a residence removal, she was paid at her hourly rate for the time of the removal.  She took a removal vehicle home with her so that she could drive directly to the residence and not have to stop at the funeral home first.  R. Jones Dec. ¶ 6.<br><br>A separate group of employees handled non-residence removal calls.  These were full-time employees who worked a night shift.  *Id.* ¶ 7.<br><br>Occasionally, she received after-hours business calls when she was on-call.  She was paid at her hourly rate for the time of the call.  She sometimes did not record short calls, but this was her choice and she was never told that she should not record this time.  *Id.* ¶ 8. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Karneol, Rozlyn (Assistant Administrator) | She never worked directly with the deceased or performed removals. Karneol Dec. ¶ 4.<br><br>She was asked to work beyond her scheduled hours only on rare occasions. If she did, she was paid for the time that she worked. *Id.* ¶ 8. |
| Korell, Karee (Funeral Director) | Worked "on-call" two to three nights a week performing removals or answering after-hours phone calls. Korell Dec. ¶ 10.<br><br>Was paid a minimum of three hours for each removal she performed. If a removal took longer than three hours, then she was paid for each hour after that. *Id.* ¶ 11.<br><br>Recorded her time "on-call" answering phones. For any call that lasted 15 minutes or less, she was paid for 15 minutes. If a call lasted more than 15 minutes, then she was paid for each minute the call lasted. *Id.* ¶ 12. |
| LaPlaunt, Daniel (Funeral Director) | Was "on-call" about seven nights a month, performing removals or answering after-hours phone calls. LaPlaunt Dec. ¶ 10.<br><br>After-hours removals performed by a funeral director and part-time employee. They were paid by the hour for each removal plus an additional $40 per removal. *Id.* ¶ 11.<br><br>Recorded his time for each removal from the time he took the call until the time the removal was completed. *Id.*<br><br>Recorded the time he spent answering phone calls after hours. For any call that lasted 15 minutes or less, he recorded 15 minutes. If a call lasted more than 15 minutes, then he recorded each additional minute the call lasted. *Id.* ¶ 12. |
| Laska, Robert (Funeral Director) | As a part-time employee, and during residency as a funeral director, he was never on-call for after-hours work. Laska Dec. ¶ 10.<br><br>Only funeral directors at his location were on-call after hours. As a funeral director, his "on-call" duties consisted of performing removals or answering after-hours phone calls. *Id.* |

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work. Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals. Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Laska, Robert (cont'd.) | Removals performed after hours were generally performed by a funeral director. Depending upon where the removal was, a part time employee would assist. Whenever he did a removal, he recorded his time from when he first received the call until the removal was completed. Removals were done "on the clock" and funeral directors were paid their hourly wage, including any overtime. *Id.* ¶ 11.

Funeral directors were not paid a "piece rate" for removals. At times, his location would use a third party removal service to perform removals. *Id.* ¶ 11.

He recorded his time for phone calls in 15 minute intervals. For any call that lasted less than a full 15 minute interval, he was permitted to record the full 15 minutes. *Id.* ¶ 12. |
| Lay, John (Funeral Attendant) | Kraeer Funeral Home had a removal team. Lay only performed one removal for the funeral home during work hours. Lay Dec. ¶ 10. |
| Luciano, Christopher (Funeral Director, Embalmer) | At the Romano Funeral Home, he was on-call for removals every other day. At Doane, Beal & Ames, he was on-call 8 nights a month. At both locations, he was paid from the time he was called until he returned home. Was also paid for his time spent handling telephone calls after-hours. Luciano Dec. ¶¶ 8-10. |
| Mann, Kelley (Office Manager) | None of the office staff at the cemetery were required to be on-call. On holidays, the superintendent would be on-call, and paid double time if he was called in. Mann Dec. ¶ 9.

On rare occasions, she answered after-hours calls, for which she recorded her time and was paid. None of the other cemetery hourly employees were required to answer phone calls or perform removals after hours. *Id.* ¶¶ 9-10. |
| Messier, Claudia (Funeral Director, Embalmer) | Was never on-call for removals at Custer Christiansen because she did not live close to the funeral home. The manager asked for volunteers to serve on-call; it was not required. Messier Dec. ¶ 7. Custer Christiansen used a third-party removal service for some removals. *Id.* ¶ 8. |
| Olsen, Judith (Office Manager) | Was never required to be on-call. Olsen Dec. ¶ 9. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work. Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals. Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Patterson, William (Funeral Director) | Performed after-hours removals for about 2 weeks when he started at Humphrey Mortuary, but was given an option and chose not to be on-call for after-hours removals.  Removals were usually performed by drivers who were scheduled for after-hours work and worked a night shift.  Funeral directors were not required to perform after-hours removals. Patterson Dec. ¶ 6.

When he worked after-hours removals, he was paid 3 hours at his hourly rate for each removal.  He also could be paid his overtime rate if he qualified.  All the removals he performed were completed within 3 hours. *Id.* ¶ 7.

Did take after-hours phone calls and was automatically paid 15 minutes for any call.  Would be paid in 15 minute increments if the phone call lasted more than 15 minutes. *Id.* ¶ 8. |
| Powell, William (Funeral Director) | Funeral directors rotated on-call time.  There were paid hourly for after-hours removals, including overtime if they qualified.  Powell Dec. ¶ 9. |
| Pruitt, Jeanne (Office Administrator) | Was never required to be on-call.  Pruitt Dec. ¶ 9.

In 2002 or 2003, hourly employees who performed after-hours removals were credited a minimum of 2 hours for each removal they performed.  If a removal took less than 2 hours, then they would be credited with and paid for 2 hours.  For any removal that took more than two hours, the hourly employees were credited with the actual time it took to do the removal. *Id.* ¶ 10.

In 2003 or 2004, the removal pay procedure changed.  Hourly employees were credited with the actual hours it took to do the removal, plus $40 for each removal. *Id.*

Hourly employees were to record their time from when they took the removal call until the removal was complete. *Id.* |
| Rogers, Kenneth (Funeral Attendant) | Was never on-call or required to do any work he was not willing to do.  Only recalls assisting with one after-hours removal, for which he was paid hourly.  Rogers Dec. ¶ 7. |

---

**\*\*** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Rosen, C. Josef<br>(Funeral Director) | Funeral directors at Kraeer Funeral Home did not perform after-hours removals.  A team of full-time employees handled after-hours removals.  Rosen Dec. ¶ 10.<br><br>Was never "on-call" for removals.  *Id.* ¶ 11. |
| Sands, Edith<br>(Location Administrator) | Did not perform removals, either during the day or after-hours.  Sands Dec. ¶ 6.  Worked overtime only on rare occasions.  *Id.* ¶ 5. |
| Santmyer, William<br>(Funeral Attendant) | Was never on-call for removals.  Would be scheduled to perform removals at certain hours.  Santmyer Dec. ¶ 10.  When he conducted an after-hours removal, he was paid hourly for his time.  *Id.* ¶ 9. |
| Sims, Mertie<br>(Office Manager) | Was never required to work on-call.  Sims Dec. ¶ 9.<br><br>After-hours removals were preformed by two hourly employees who were paid by the hour while on-call.  *Id.*<br><br>After-hours phone calls were handled by funeral directors who logged the time for each call and were paid for the time spent answering phone calls.  No other hourly employees did any on-call work.  *Id.* ¶ 10. |
| St. Laurent, Andy<br>(Grounds Supervisor) | Not required to be on-call as a cemetery groundskeeper.  St. Laurent Dec. ¶ 11.<br><br>Worked on-call three to four nights a week performing after-hours removals and taking phone calls.  *Id.*<br><br>Was paid $55 for each removal, which took about 1½ to 2 hours.  *Id.* ¶ 12.<br><br>Recorded his time for answering phone calls after hours.  Would record 15 minutes for each call that lasted no more than 15 minutes.  For calls lasting longer, he would record all of his time by each additional minute.  *Id.* ¶ 13. |
| Strang, Robert<br>(Funeral Director,<br>Embalmer Intern) | Performed after-hours removals.  For each he would record his time from when he left his house until he returned home.  Strang Dec. ¶ 10.<br><br>Was paid a minimum of three-and-a-quarter hours for each removal performed.  If a removal took longer than three-and-a-quarter hours, then he was paid for each hour after that.  *Id.* |

**<sup>**</sup>Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Strang, Robert (*cont'd.*) | As a funeral director/embalmer intern, he was not required to be "on-call." On occasion, a funeral director who was on call would ask him to be his back up. He would always record his time for this work, and be paid time-and-a-half for the time he worked. *Id.* ¶ 11. |
| Strintz, Jack (Courier) | Never was required to, nor did he ever, perform removals. Strintz Dec. ¶ 9. |
| Turnage, Brenda (Location Administrator) | Was not involved in after-hours removals or calls. Turnage Dec. ¶ 7. |
| Walsh, Cathy (Administrative Assistant) | Was never required to be on-call. Walsh Dec. ¶ 9. |
| Welch, Sharon (Funeral Director Apprentice) | Funeral directors and apprentices were on a rotating on-call schedule for after-hours work. If she received a removal call, she was paid on an hourly basis from the time she received the call until the removal was completed. This included overtime if she had accumulated sufficient hours to qualify. Welch Dec. ¶ 7. |
| Wentworth, Shirley (Funeral Support Staff) | Was never required to be on-call. Wentworth Dec. ¶ 9. |
| Windsor, Nancy (Location Administrator) | Was never on-call for removals or business calls. Never handled removals. Was paid her hourly rate for any overtime worked. Windsor Dec. ¶ 7. |
| Young, Annette (Assistant Administrator, Musical Director) | Never performed any after-hours removals or calls. If she worked after-hours, she was paid at her hourly rate, including overtime, if applicable. Young Dec. ¶ 8. |

---

**\*\*** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work. Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals. Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Amiker, Ellaway (Cemetery General Manager) | None of the hourly employees who reported to him were ever required to, or did, work on-call.  Amiker Dec. ¶ 7. |
| Anton, George (Location Manager) | He and the employees who reported to him would sometimes perform removals.  On occasion, these removals were after-hours.  The hourly employees who assisted with removals were paid for their work by the hour, including overtime if they exceeded 40 hours of work in a given week.  Anton Dec. ¶ 6.<br><br>Hourly employees were not paid a "piece" rate for removals.  When needed, he would employ a third-party removal service to perform removals.  Only the removal service was paid a "piece" rate for removals.  *Id.* ¶ 7. |
| Clark, William (Location Manager) | After-hours removals were handled by another funeral home in Jackson, Mississippi.  Funeral directors remained on-call for residence removals, which required two employees.  The on-call funeral director stayed at the funeral home, on the clock, until 9 p.m.  After this, if the funeral director was called out for a removal, the funeral director was paid at his or her hourly rate for the time it took to complete the removal.  Clark Dec. ¶ 6. |
| Clisby, Chad (Location Manager) | After-hours removals were handled by a 24-hour Care Center that covered the Houston area.  The funeral directors at Hunters Creek did not perform after-hours removals.  Clisby Dec. ¶ 8.<br><br>The 24-hour Care Center also handled after-hours business calls.  If the Care Center could not handle the call, Clisby always took the call.  *Id.* ¶ 9. |
| Collins, Ronald (Vice President Northeastern United States) | Alderwoods' policy always required employees to report any work performed while on-call.  This policy was specifically formalized in 2005 with respect to telephone calls taken while on-call, but it was always the expectation that if non-exempt employees conducted business while on-call, whether it be taking calls, conducting removals, etc., they would be paid for it.  Collins Dec. ¶ 15.[vi]<br><br>At some locations, third-party services would take phone calls and handle removals.  In other locations, employees were on-call, but it was limited to certain positions like Funeral Directors.  In still other locations, removals were handled only by part-time employees.  *Id.* ¶ 17. |

---

[**] Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Collins, Ronald (*cont'd.*) | Alderwoods' 2006 on-call procedures roll out did not change the policy, but standardized company practices for recording on-call time. *Id.* ¶ 18. |
| Crowe, Patrick (General Manager) | On-call procedures were governed by a collective bargaining agreement from November 2001 through October 2004. Crowe Dec. ¶ 7. <br><br> After the collective bargaining agreement expired, funeral directors were the only hourly employees who were on-call answering phones.  They were paid for 15 minutes for each call even it lasted only a few minutes.  If a call lasted longer than 15 minutes, they were paid for each additional minute.  *Id.* ¶ 14. <br><br> Removals were performed by both funeral directors and a third party removal service.  Funeral directors were paid by the hour for each removal.  No hourly employee was paid a "piece rate" for removals.  *Id.* ¶¶ 7, 8. |
| Curnow, Brian (General Manager) | At Mills & Mills, part-time staff performed most after-hours removals, and funeral directors were on-call one night a week should the part-time staff require assistance.  Curnow Dec. ¶ 6. <br><br> Employees at Mills & Mills were paid the greater of a piece rate or their hourly rate for three hours, even though most removals took only two hours.  The piece rate was usually more than the employee would make hourly, even on overtime.  *Id.* ¶ 7. <br><br> Powers Funeral Home contracted out to a third-party removal service for after-hours removals.  Powers' staff did not perform after-hours removals.  *Id.* |
| D'Andrea, Daniel (Location Manager) | The hourly employees he supervised sometimes performed after-hours removals.  The hourly employees who assisted with removals were paid for their work by the hour.  D'Andrea Dec. ¶ 6. <br><br> Hourly employees were not paid a "piece" rate for removals.  From time to time, when needed, he would employ a third-party removal service to perform after hour removals.  Only the removal service was paid a "piece" rate for removals.  *Id.* ¶ 7. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Dias, Joe (Location Manager) | He was the only employee "on-call" at his location. No hourly employees took after-hours phone calls, or were required to be "on-call" after hours. If he needed assistance after hours, he called a part-time hourly employee to help if they were available. Dias Dec. ¶ 13.<br><br>Any part-time hourly employee who assisted him after hours would always be paid for at least 2 hours if they worked 2 hours or less. If the work took longer than two hours, then they were paid their hourly wage. This was a policy that he implemented at his location. It was not an Alderwoods' policy. *Id.* ¶ 13.<br><br>For after-hours removals, a part-time employee would be paid by the hour, and be required to record their time for a removal by punching their time card on the time clock. For any removal that took less than two hours, the employee was paid for two hours, plus $20. For removals that took longer than two hours, the employee would be paid their hourly rate plus $20. This was a policy that he implemented at his location. It was not a formal Alderwoods' policy. *Id.* ¶ 6. |
| Eagan, Charles (Location Manager) | His employees did not conduct removals. There was a central location in the New Orleans area that handled removals and embalming. Eagan Dec. ¶ 7.<br><br>Funeral directors could be on-call to take business calls after-hours. Eagan usually tried to take these calls himself. If a funeral director took an after-hours telephone call, the director was paid at his or her hourly rate for the length of the call. This would include overtime if the director had accrued sufficient time. *Id.* ¶ 6[a]. |
| Friden, Paul (Location Manager) | As an hourly employee, he was "on-call" approximately one night a week, performing removals or answering after-hours phone calls. Friden Dec. ¶ 10.<br><br>As an hourly employee, he was paid a minimum of $40 for each removal. If a removal took longer than three hours, then he would be paid for each hour after that. *Id.* ¶ 11.<br><br>He recorded his time for answering phone calls, and was paid 15 minutes for each call that lasted 15 minutes or less, and paid for each minute thereafter. *Id.* ¶ 12. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work. Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals. Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Greeno, Donald<br>(General Manager) | After-hours removals were performed by part-time employees who did not earn overtime.  Greeno Dec. ¶ 9.  They were paid a piece rate per removal that was equal to or more than the employees' hourly rate.  *Id.*<br><br>Funeral directors could be on-call to receive business calls.  They were paid at their hourly rate, or overtime rate if applicable, for the time they were on the phone.  *Id.* ¶ 10. |
| Harper, William Ray<br>(General Manager) | There was a funeral director who worked exclusively the 5-9 shift and was on-call most evenings.  When the night funeral director was not on-call, other funeral directors rotated on-call duties.  If the funeral director took a call after hours, he or she wrote their time down and was paid for the time of the call based on their hourly rate.  Cemetery staff were never on-call.  Harper Dec. ¶ 7. |
| Jones, Jay<br>(Location Manager) | When working an after-hours removal, he was paid for a minimum of two hours at his hourly rate for each removal.  The funeral home paid his overtime rate if he had accrued sufficient hours.  Generally, a removal took at most an hour and a half.  If the removal took longer than two hours, he recorded his actual time and was paid his hourly rate.  All staff who performed after-hours removals were paid in this manner.  J. Jones Dec. ¶ 7. |
| Krueger, Richard<br>(Location Manager) | Employees who performed after-hours removals were paid their hourly rate, including overtime if they accrued sufficient hours in the week, plus an additional flat rate.  The amount of the additional flat rate depended on whether the removal required prep work.  Krueger Dec. ¶ 5.<br><br>On-call employees were not required to be at the funeral home.  If an employee was on-call and received a removal call, they were paid from the time the call was received until it was completed.  *Id.* ¶ 6.<br><br>If a funeral director received an after-hours business call, the funeral director was automatically paid 15 minutes for the call, and paid 15-minute increments thereafter depending on the length of the call.  *Id.* |
| Lawrence, Gloria<br>(Location Manager) | As an apprentice embalmer, she was on-call for after-hours removals.  Was paid for the time of the removal.  Lawrence Dec. ¶ 10.<br><br>Part-time employees were the first employees called for removals; she was only a back-up.  *Id.* ¶ 11. |

---

**\*\***Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Lawrence, Gloria (*cont'd.*) | Funeral directors handled after-hours business calls.  They were paid for the time of the call, on an hourly basis.  As an apprentice embalmer, she never received after-hours telephone calls. *Id.* ¶ 12.<br><br>Custer Christiansen Mortuary now uses a removal service for after-hours removals. *Id.* ¶ 13. |
| Mayes, Buddy (Vice President Southeastern United States) | Alderwoods' policy always required employees to report any work performed while on-call, including phone calls, and be compensated for it.  Mayes Dec. ¶ 18.[vii]<br><br>Many locations had third-party answering services and third-party removal services to handle after-hours phone calls and removals.  Even when Alderwoods' employees were required to handle calls and removals, they often were handled by part-time employees.  To the extent full-time employees handled calls and removals, it was almost always Funeral Directors, not other employees. *Id.* ¶ 19.<br><br>In 2006, Alderwoods rolled out a standardized method of logging on-call time.  On-call time was always to be recorded, but this created a uniform method. *Id.* ¶ 21. |
| McCarthy, Eleanor (Location Manager) | None of the hourly employees at her location performed after-hour removals.  These were performed by the employees at the embalming center who were paid their hourly rate.  McCarthy Dec. ¶ 6.<br><br>Hourly employees were not paid a "piece rate" for removals.  On occasion they would use a third-party removal service. *Id.* ¶ 7. |
| Nowatka, Steven (Funeral Director) | None of the hourly employees at his location performed after-hour removals.  Nowatka Dec. ¶ 6. |
| Phillips, Shawn (Vice President Western United States) | For as long as Phillips was VPO, Alderwoods' policy always required employees to record all work performed while on-call, including phone calls, and be compensated for it.  Phillips Dec. ¶ 16.[viii]<br><br>Most locations had third-party answering services and third-party removal services to handle both after-hours phone calls and removals.  Even when Alderwoods' employees were required to handle calls and removals, they often were handled |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Phillips, Shawn (*cont'd*.) | by part-time employees.  To the extent full-time employees handled calls and removals, it was employees responsible for funeral services, not other employees.  *Id.* ¶ 18.<br><br>In 2006, Alderwoods rolled out call logs to track on-call work instead of employees writing it on their time cards as had been past practice.  This was not a new policy, but a confirmation of existing policy, and the creation of a uniform way to track on-call time.  *Id.* ¶ 19. |
| Porte, Kelly (Assistant Manager) | Funeral directors did not perform after-hours removals.  Removals were handled from a central location in the New Orleans area.  Porte Dec. ¶ 8. |
| Rizzotto, Michael (Location Manager) | None of the hourly employees worked on-call answering phones after hours.  Rizzotto was the only one who did so.  Rizzotto Dec. ¶ 12. |
| Schwab, Roxann (General Manager) | Employees who took calls after-hours were paid 15 minutes per phone call.  If the call lasted longer, they were paid in additional 15-minute increments.  Schwab Dec. ¶ 10.<br><br>In her region, employees who performed after-hours removals were paid an hourly rate for 3 hours minimum per call.  The removals were handled by part-time employees.  *Id.* ¶ 11. |
| Schwinghamer, Steven (Location Manager) | Kiser Funeral Home used a removal service for after-hours removals.  No employees of the funeral home performed after-hour removals.  Schwinghamer Dec. ¶ 8.<br><br>Only funeral directors were on-call to take business calls after-hours.  The calls were first screened by an answering service.  If a funeral director took a call, he or she was paid fifteen minutes per call.  Most calls were less than fifteen minutes.  *Id.* ¶ 10. |
| Suurd, Rhonda (HR Manager) | Alderwoods always required employees to record their on-call work and compensated them for such time.  Suurd Dec. ¶ 14.<br><br>When Alderwoods rolled out on-call policy documentation in 2006, it was not implementation of a new policy but confirmation of the existing policy with new standardized procedures.  *Id.* ¶ 13. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.

**ON-CALL WORK**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Warn, Robin (General Manager) | No cemetery employees were ever on-call.  Warn Dec. ¶ 7. |

---

[i] By identifying employees has having "non-exempt" job positions, Alderwoods does not waive and expressly reserves the right to argue that these positions qualify as exempt job positions.

[ii] *See* Brent Knight Declaration Exhibit N for a compilation of all deposition transcript excerpts cited herein.

[iii] For purposes of this analysis, Millard Daigle is listed among the management deponents although he also held non-exempt, hourly positions at Alderwoods.  The same holds true for Deborah Prise.

[iv] For purposes of this analysis, Barry Miles is listed among the management deponents although he was paid on an hourly basis as a manager.  The same holds true for Sandy Thomas, Stacey Weinstein and Raymond White.

[v] *See* Brent Knight Declaration Exhibit O for a compilation of all field employee declarations cited herein.

[vi] Attached to Brent Knight Declaration as Exhibit P.

[vii] Attached to Brent Knight Declaration as Exhibit Q.

[viii] Attached to Brent Knight Declaration as Exhibit R.

---

[**]Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to work on-call time, but were not paid for that work.  Plaintiffs also represented that all non-exempt employees were not paid for all time worked on-call outside of a funeral home, including taking calls, preparing for, and traveling to, removals, and making removals.  Further, Plaintiffs represented that while certain changes were made in March 2006, all non-exempt employees continued to work uncompensated on-call time.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 10-12.