**Exhibit C**

**TRAINING TIME**

**TABLE OF CONTENTS**

**Page**

**ALDERWOODS COMPANY POLICY**................................................................................................1

    Summary of applicable company policy.

**NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING TRAINING TIME**............................................ 2-6

    Sworn deposition testimony of non-exempt Alderwoods' employees directly contradicting Plaintiffs'
    representations to the Court regarding allegedly common experiences involving training time.

**MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING TRAINING TIME**............................................ 7-10

    Sworn deposition testimony of Alderwoods' managers directly contradicting Plaintiffs' representations
    to the Court regarding allegedly common experiences involving training time.

**NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING TRAINING TIME**............................................ 11-15

    Statements made under penalty of perjury by non-exempt Alderwoods' employees directly contradicting
    Plaintiffs' representations to the Court regarding allegedly common experiences involving training time.

**MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING TRAINING TIME**............................................ 16-18

    Statements made under penalty of perjury by Alderwoods' managers directly contradicting Plaintiffs'
    representations to the Court regarding allegedly common experiences involving training time.

PII-1205603v1

**TRAINING TIME**

| ALDERWOODS COMPANY POLICY | |
|---|---|
| **Policy** | **Cite to Written Company Policy**[*] |
| "All non-exempt employees are required to record all hours worked each day." | Hours of Work and Overtime, III.E Recording of Hours – ALD000005 (*see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648) |
| "Employees must review their time card/sheet, correct any errors, and sign it before submitting it to their manager for approval."<br><br>"Employees must check and sign their time card or timesheet at the end of each week to assure that their time cards are correct.  Any discrepancies must be reported to the Location Manager/General Manager as soon as practical." | *Id.*<br><br>Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 10. – ALD000010 |
| "Managers are also responsible for . . . ensuring that no 'off the clock' work is allowed; that is, that all work performed by employees is properly documented on time cards/time sheets." | Hours of Work and Overtime, IV.B.6 Manager Responsibilities – ALD000007 |
| "Location Managers/General Managers must verify and sign their respective employees' time cards/timesheet." | Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 12. – ALD000011 (*see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648) |
| "All non-exempt employees will be compensated for all hours worked." | Hours of Work and Overtime, Policy – ALD000004 |
| "Non-exempt employees are to be compensated for all overtime hours worked." | Procedures for Timekeeping (Recording Hours Worked), Purpose – ALD000009 |
| "Non-exempt employees will receive overtime pay of one and one-half (1.5) times their regular rate of pay for all hours worked over forty (40) in any work week . . . ." | Hours of Work and Overtime, III.F Overtime – ALD000006 |

---

[*]All Policies cited in this section are attached as Exhibits 1, 3 and 4 to the Rhonda Suurd Declaration, who is Alderwoods' former Human Resources Manager.  Rhonda Suurd's Declaration is attached to the Brent Knight Declaration as Exhibit S.

**TRAINING TIME**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Training Time** |
| Burgess, Jason (Funeral Director, Embalmer)[i] | Obtaining limited insurance license was recommended, not required.  Burgess Dep. Tr. at 306:3-307:1.[ii]<br><br>No knowledge of whether individuals at other Alderwoods locations were required to obtain insurance license.  *Id.* at 57:21-24. |
| Butler, Michael (Arranger) | Was not asked to obtain and had no training related to obtaining an insurance license.  Butler Dep. Tr. at 190:18-191:4.<br><br>Did not engage in any training for which he was not compensated.  *Id.* at 191:8-17. |
| Carswell, Shane (Funeral Director) | Carswell does not remember if he wrote down the time that he spent in those training sessions or was compensated for the time spent in training sessions.  Carswell Dep. Tr. at 195:22-196:10. |
| Detschner, Steven (Funeral Director, Embalmer) | Was paid for training, including continuing education and CPR training, that he attended on his days off.  Detschner Dep. Tr. at 111:11-113:14. |
| Diggs, Jeffrey (Funeral Director, Embalmer) | No continuing education is required to maintain his funeral director's or embalmer's license.  Every two years he simply has to fill out some forms and pay a fee.  Diggs Dep. Tr. at 70:23-71:1; 72:17-23.<br><br>Not aware of any company-wide policy requiring employees to attend training and not compensating them for the time that they spent being trained.  *Id.* at 127:1-5.<br><br>Knows of no employees who had to attend any type of training and were not compensated for that time.  *Id.* at 127:7-10.<br><br>Not aware of any company-wide policy requiring employees to become licensed and not compensating them for the time and expense of doing so.  Never heard any other employees complaining about this.  *Id.* at 126:13-24. |
| Escobar, Stephen (Arranger) | Escobar was paid for the time he spent training as an employee of Alderwoods.  Escobar Dep. Tr. at 70:25-71:4.<br><br>Never attended any type of training for which he was not compensated.  *Id.* at 136:4-6. |

---

[**] Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Training Time** |
| Garza, Joe (Funeral Services Support L4) | Did not hold any licenses related to his employment at Alderwoods and did not receive any training related thereto.  Garza Dep. Tr. at 91:15-20. |
| Johnson, Louise (Funeral Director, Embalmer) | No formal training or orientation when hired.  Johnson Dep. Tr. at 56:5-7.

Never attended any type of formal training orientation at any time while working at Harbor Lawn other than SCI training meetings which started in the last year or two and an on-line set of courses relating to the Dignity School that all employees are now required to attend.  *Id.* at 56:5-15.

Prior to the Dignity School classes, never had any formal orientation or training concerning overtime.  *Id.* at 59:3-6.

No formal training concerning on-call work.  *Id.* at 59:7-13.

Employer paid for annual fee to keep embalmer's and funeral director's licenses current.  *Id.* at 81:7-16.

On one occasion she put something on her time card which was later taken off, probably because it was not pre-approved:  "I took an education seminar and in the past they had either paid for me to get into the seminar or they paid for an eight hour day for me to be there.  It wasn't necessarily required, but they compensated me.  And then this time when I put it down, it was one of those occasions where he was in a bad mood or the company was coming down hard on him on overtime at that point, and he decided to take that off."  *Id.* at 109:11-23.

Not claiming any compensation for time spent training for or taking a test to become a licensed insurance agent or time maintaining that license.  *Id.* at 219:22-220:1.

Has both an embalmer and a funeral directors license.  *Id.* at 80:17-81:16. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Training Time** |
| Jones, Robert (Funeral Director) | No continuing education requirements for funeral director's license in Alaska.  Jones Dep. Tr. at 96:14-23; 97:24-98:1.<br><br>Not seeking to be compensated for any time spent training or taking a test to obtain an insurance license.  *Id.* at 176:15-21.<br><br>Not aware of any written Alderwoods policy stating that employees were not to report all the time they spent performing training.  *Id.* at 193:11-194:5. |
| Keath, Angela (Location Administrator) | Does not hold any professional licenses (*e.g.*, funeral director license or insurance agent license).  Keath Dep. Tr. at 185:19-186:1.<br><br>No individual claims related to any time she spent training to obtain or maintain any professional license.  *Id.* at 186:2-11.<br><br>Was compensated for time spent in training that occurred during her normal work hours.  *Id.* at 193:20-194:2.<br><br>Was on the clock for and was compensated for time spent in OSHA and anti-sexual harassment training that occurred outside regular work hours.  *Id.* at 194:3-24.<br><br>Only uncompensated training time was the time she spent traveling to/from (3.5 to 4 hours each way) and attending a dinner meeting (3 hours) at a location administrator meeting.  *Id.* at 189:8-190:3; 190:14-17; 192:2-7. |
| Kuhta, Richard (Funeral Director, Embalmer) | No individual claim regarding any compensable time related to any training he received while employed with Alderwoods.  Kuhta Dep. Tr. at 118:2-119:14. |
| Lanza, Michael (Apprentice Funeral Director, Embalmer) | Not aware of a company policy of not compensating employees for training time.  Lanza Dep. Tr. at 224:19-225:7. |

---

[**]Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
| --- | --- |
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Training Time** |
| Leal, Adrian (Apprentice Funeral Director, Embalmer) | Was not aware of any Alderwoods policy requiring employees to become licensed and not compensating them for the time spent to become licensed.  Leal Dep. Tr. at 176:5-12. |
| Long, Kasi (Funeral Director) | Never held an insurance license; not aware of any other employees at her locations who held licenses.  Long Dep. Tr. at 38:19-23.<br><br>Continuing education credits for a funeral director's license could be obtained during regularly scheduled work hours, in which case she was on the clock and compensated for the time.  *Id.* at 198:20-199:8. |
| McDonald, Beverly (Funeral Director) | Had her insurance agent license and funeral director embalmer license before she began working for Alderwoods.  McDonald Dep. Tr. at 170:3-15; 185:12-186:5.<br><br>Admits that Alderwoods paid for any cost or fees associated with maintaining these licenses.  *Id.* at 172:7-24; 186:9-17.<br><br>Claims Alderwoods required her to attend training 5-6 times a year.  About half of the sessions took place outside her regular work hours.  Sometimes she was not compensated for after-work hours trainings.  *Id.* at 173:24-176:11.<br><br>Was compensated for time spent taking classes online at work during business hours to maintain her licenses, but not for time spent at home after business hours taking classes.  *Id.* at 184:19-24; 186:9-188:23.<br><br>Admitted there were copies of Alderwoods' policies and regulations at her location, but does not believe she reviewed them.  *Id.* at 36:23-37:17; 110:10-12. |
| Ore, William (Apprentice Funeral Director, Embalmer) | Did not hold an insurance license.  Ore Dep. Tr. at 32:5-9.<br><br>Never suggested that he should obtain an insurance license.  *Id.* at 32:10-13. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Training Time** |
| Peters, John (Funeral Director) | Never took an insurance exam and never spent time maintaining a license.  Peters Dep. Tr. at 167:16-168:10. |
| Rady, Heather (Funeral Director, Embalmer) | Some funeral directors never obtained an insurance license and suffered no consequences.  Rady Dep. Tr. at 122:1-14.<br><br>"Policy" requiring funeral directors to obtain license did not apply to her because she already had a license.  *Id.* at 126:4-17. |
| Reddick, Jack (Assistant Funeral Director) | Has never held an insurance license.  Reddick Dep. Tr. at 67:6-14.<br><br>Was encouraged, not required, to obtain an insurance license through Mayflower and he decided not to pursue it.  *Id.* at 67:15-68:22; 72:16-23. |
| Schabloski, John (Funeral Director, Embalmer) | Did not hold an insurance license.  Schabloski Dep. Tr. at 40:13-19.<br><br>Not required or encouraged to obtain an insurance license.  *Id.* at 40:20-23; 42:1-9. |
| Takesian, Stephen (Family Service Professional) | Was paid for time spent obtaining real estate license.  Takesian Dep. Tr. at 169:16-170:7. |
| Twiss, Matthew (Arranger) | Did not hold an insurance license.  Twiss Dep. Tr. at 43:12-13. |
| Wilkinson, Jack (Funeral Director) | Did not hold an insurance license.  Wilkinson Dep. Tr. at 33:18-23.<br><br>Never encouraged to obtain an insurance license.  *Id.* at 34:14-16.<br><br>No knowledge as to whether it was mandated at other locations that funeral directors obtain insurance licenses.  *Id.* at 164:12-15. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
| --- | --- |
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Training Time** |
| Bath, Herbert (General Manager) | Did not know whether the one employee under his supervision who obtained her funeral director license during her employment with Alderwoods or any of the other funeral directors under his supervision who obtained their funeral director license prior to their employment with Alderwoods reported the time or whether they were compensated for the time they spent obtaining/maintaining their respective licenses.  Bath Dep. Tr. at 249:25-251:21.

Never refused to pay an employee who trained away from a funeral home or outside of scheduled work hours.  *Id.* at 256:10-14.

No knowledge as to whether employees at locations other than the ones for which he had management responsibility worked training hours away from the funeral home or outside the regular workday, or whether they reported that time, or whether they were compensated for that time.  *Id.* at 306:3-15.

No knowledge as to whether Alderwoods' employees were compensated for time they spent obtaining or maintaining their insurance licenses.  *Id.* at 60:25-61:5.

Funeral directors that worked at the locations he managed were not required to have an insurance agent license.  *Id.* at 51:4-8.

To his knowledge, funeral directors at Alderwoods were not required to have an insurance agent license.  *Id.* at 51:9-17.

Not aware of any Alderwoods policy requiring employees to become licensed insurance agents and then not compensating them for time obtaining or maintaining such a license.  *Id.* at 61:8-14. |
| Burkle, Clark (Location Manager) | Does not hold an insurance license.  Burkle Dep. Tr. at 35:4-6.

Never encouraged to obtain insurance license.  *Id.* at 35:7-11. |

---

[**]Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
| --- | --- |
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Training Time** |
| Burkle, Clark (*cont'd.*) | Not required to obtain insurance license. *Id.* at 39:1-3. <br><br> No knowledge of another employee being required or encouraged to obtain insurance license. *Id.* at 38:19-25. |
| Daigle, Millard[iii] (Assistant Manager) | Did not have an insurance agent license during his employment with Alderwoods. Daigle Dep. Tr. at 210:10-14; 210:25-211:4. <br><br> Testified that an insurance agent license is required in Louisiana to sell pre-needs. *Id.* at 210:15-20. <br><br> Not aware that any of the funeral directors at his location or any other Alderwoods locations were licensed insurance agents because most locations had a licensed insurance agent on staff who sold pre-need insurance. *Id.* at 211:14-23. <br><br> Not aware of any requirement, encouragement or incentive for funeral directors at his or any other Alderwoods locations to have an insurance agent license. *Id.* at 211:9-13; 211:24-212:9. |
| Hensley, Ric (Location Manager) | The only formal training from Alderwoods that Hensley recalls is OSHA training; he is not aware of any time that an employee at one of the five locations for which he was responsible (as General Manager) was not compensated for attending such OSHA training; it is his understanding that it was Alderwoods Group's policy to pay employees for attending training sessions like the OSHA training. Hensley Dep. Tr. at 93:7-96:3; 96:11-14. <br><br> Employees were compensated for informal, on-the-job training. *Id.* at 96:4-10. <br><br> Funeral directors in Tennessee must perform 10 continuing education hours every two years to maintain their license. *Id.* at 97:3-10; 98:17-23. <br><br> A lot of funeral directors went online to get their continuing education, and a lot of them would do it on the clock; if they did so, they would be paid for it. *Id.* at 97:15-98:2. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time. Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Training Time** |
| Hensley, Ric (*cont'd.*) | It was "just an understanding" that funeral directors were not paid for time spent performing continuing education outside of regular business hours; he does not recall anything in writing and never had any conversation on the subject. *Id.* at 102:4-105:5.<br><br>Does not know whether there are and is not aware of any funeral directors who reported to him as General Manager who performed their Funeral Director continuing education hours outside of regular business hours who were not paid for time spent getting their continuing education.  *Id.* at 99:12-100:22; 104:8-11.<br><br>Other than continuing education performed outside of regular hours by funeral directors, he is not aware of any other training time that was not compensated by Alderwoods Group while he was a General Manager or any policy providing that employees are not paid for training time. *Id.* at 106:5-17. |
| Kamienski, Richard (General Manager) | No continuing education requirements for funeral director's license in California.  Kamienski Dep. Tr. at 38:12-20.<br><br>No continuing education requirements to maintain an embalmer's license in California.  *Id.* at 39:12-40:19.<br><br>No continuing education requirements to maintain insurance licenses in California.  *Id.* at 41:25-42:10.<br><br>Employees reported time they spent attending training sessions, and if they incurred overtime for attending the training session, such overtime would have been approved, reported and paid.  *Id.* at 165:25-166:8.<br><br>Kamienski is not aware of any Alderwoods policy requiring employees to attend training after normal business hours without paying them for attending the training.  *Id.* at 169:4-10. |
| Miles, Barry[iv] (Location Manager) | Obtained insurance license before working for Alderwoods.  Miles Dep. Tr. at 80:24-81:11.<br><br>Recorded time spent at an insurance class/continuing education.  *Id.* at 183:16-184:3. |

---

**\*\***Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME ||
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Training Time** |
| Miles, Barry (*cont'd.*) | Never recorded time spent at continuing education classes after-hours, but no one at Alderwoods told him that he could not submit that time, and he never asked about whether he could submit that time and be paid for it. *Id.* at 267:25-268:11.

No knowledge of whether any other employees reported training time or were told not to report the time; knows of no company-wide policy in this regard or any local policy. *Id.* at 269:3-22 |
| Pramik, Robert (Market Growth Manager) | Pramik did not know what the Alderwoods policy was with regard to paying for time spent at funeral directors' continuing education courses. Pramik Dep. Tr. at 222:20-23.

Pramik's employees were allowed to study for pre-need licensing during work hours. *Id.* at 171:5-12. He had no knowledge of what the practice outside the Harrisburg, Pa. market was in regards to compensating employees for hours spent studying to get a pre-need insurance license. *Id.* at 182:8-18. |
| Prise, Deborah (Location Manager) | Cannot identify a specific member of management who told them they would not get paid for training. Prise Dep. Tr. (Day 1) at 150:17-21.

Has no way of knowing the number of hours she spent in continuing education in 2004-2005. *Id.* (Day 2) at 59:16-61:4. |
| Thomas, Sandy (Location Manager) | From 2002 until the beginning of 2006, was not required to attend any training sessions. Attended two training sessions in 2006, which occurred during normal business hours and was paid for them. Does not recall any other training he attended. Thomas Dep. Tr. at 99:5-101:9. |
| Weinstein, Stacey (Location Manager) | Alderwoods' policy regarding training indicated that only Funeral Directors were expected to complete training with no pay. As far as Weinstein knows, it was only applied to the funeral directors during her tenure at Alderwoods. Weinstein Dep. Tr. (Day 2) at 62:22-63:10. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time. Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
| --- | --- |
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Training Time** |
| Allen, Lois (Receptionist) | She never received any training or was required to attend training sessions or meetings.  Allen Dec. ¶ 11.[v] |
| Arms, Beverly (Assistant Administrator) | She received no training for the work she performed at Powers Funeral Home.  Arms Dec. ¶ 9. |
| Ayling, Mary (Receptionist) | Training and staff meetings occurred during the day, and she was always on the clock and paid for the time in training and meetings.  Ayling Dec. ¶ 16. |
| Baird, William (Funeral Director, Embalmer) | Alderwoods offered courses to satisfy the continuing education requirement for funeral directors in Louisiana.  These courses were free of charge to funeral directors, and the funeral directors were paid for their time attending them.  The funeral home did not pay employees for time attending non-Alderwoods courses.  Baird Dec. ¶ 10. |
| Ballard, Constance (Location Administrator) | The only training that she received at Memory Chapel was on-the-job training regarding office procedures and systems.  Ballard Dec. ¶ 14. |
| Bollinger, Karen (Family Services Counselor) | Received several weeks of training when she began her job as a family service counselor.  This included direct training by her supervisor and shadowing other employees in her position.  She was paid hourly for this time.  Bollinger Dec. ¶ 9.

Always recorded and was paid for time spent at office safety and policy training.  She never attended after-hours training.  Id. ¶ 10. |
| Cain, Waldo (Funeral Attendant) | Only training he recalls is an orientation meeting held by Alderwoods management at his location shortly after Alderwoods assumed ownership.  The orientation was held during normal working hours, and the hourly employees recorded their time spent at that meeting.  Cain Dec. ¶ 16. |
| Crisp, Donald (Funeral Director) | Was required by the state to complete 12 hours of continuing education every two years.  Would complete these courses while on the clock and be paid for his time spent attending courses.  Crisp Dec. ¶ 17. |
| Elliott, James (Funeral Director) | The funeral home paid for his continuing education credit requirements as a funeral director.  Most of the courses were on-line and he and other employees would take these courses at the funeral home during the work day.  They were paid for this time.  He does not recall ever taking training courses off-site or after-hours.  Elliott Dec. ¶ 12. |

---

**      Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Training Time** |
| Fogg, Margaret (Location Administrator) | Employees were paid for the time they attended training, including meetings that extended beyond the regular business day.  Fogg Dec. ¶ 14.<br><br>She was paid for training that she attended.  *Id.* ¶¶ 14-15. |
| Forrest, Wendy (Location Administrator) | She received on-the-job training when she was hired as location administrator.  She was paid for the time she spent in training.  Forrest Dec. ¶ 15. |
| Gibson, Jill (Funeral Arranger) | When she was a driver and later in the death certificate department, she learned on the job and was paid for the time she spent learning the trade.  Gibson Dec. ¶ 17.<br><br>As a funeral arranger, she was required by the state to pass an annual test.  She traveled to Los Angeles to take this test.  She was paid for the time she spent taking the state exam.  Alderwoods would occasionally pay to put her in a hotel overnight, depending on where and when the test was.  *Id.* ¶ 18. |
| Goni, Helen (Office Manager) | Does not recall any mandatory training while working for Alderwoods.  Attended monthly staff meetings which were held during normal business hours.  Was always on the clock and paid for her time attending these meetings.  Goni Dec. ¶ 16. |
| Hunt, Theodore (Funeral Attendant) | Whenever he attended meetings or training, he would always be on the clock and record his time spent at both meetings and training.  Hunt Dec. ¶ 15. |
| Jones, Regina (Funeral Director) | Occasionally, she attended meetings related to Alderwoods' business, practices, or procedures.  These were always held during the business day, and she was paid for the time that she attended these meetings.  R. Jones Dec. ¶ 12. |
| Karneol, Rozlyn (Assistant Administrator) | She received two or three days of training when she started working at the funeral home, which consisted of shadowing another employee in the same position.  She was paid for her time for this training and received no other training.  Karneol Dec. ¶ 10. |
| Korell, Karee (Funeral Director) | Does not recall having to take any required training or attend meetings.  As part of obtaining her funeral director's license she was required to "shadow" her manager during the day.  Was always paid for the time that she did this.  Korell Dec. ¶ 17. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Training Time** |
| LaPlaunt, Daniel (Funeral Director) | Was the training coordinator for his location.  They had annual certification training and other periodic training meetings which were held during normal business hours.  The hourly employees would be on the clock and paid to attend these meetings.  LaPlaunt Dec. ¶ 17.<br><br>Does not recall any Alderwoods policy that required after-hours training sessions for which employees were required to attend off the clock and not paid.  *Id.* |
| Laska, Robert (Funeral Director) | Had periodic training and meetings which were usually held on Friday afternoons, but always during normal business hours.  Hourly employees would be on the clock and paid to attend these meetings.  Laska Dec. ¶ 17.<br><br>Is not aware of any Alderwoods policy that required hourly employees to attend after-hours training sessions for which they were not paid.  *Id.* |
| Luciano, Christopher (Funeral Director, Embalmer) | Alderwoods paid for all the licensing courses that funeral directors had to take and often hosted courses at Alderwoods locations.  Luciano Dec. ¶ 15.<br><br>Continuing education courses were scheduled during the work day.  Luciano was paid for the time he spent attending these courses.  *Id.* ¶¶ 15-16. |
| Mann, Kelley (Office Manager) | Pre-need counselors were paid for the time they spent in training.  Mann. Dec. ¶ 17.<br><br>Attended staff meetings which were always held during the normal business day.  All hourly employees would be on the clock and paid for attending those meetings.  *Id.* ¶ 16. |
| Messier, Claudia (Funeral Director, Embalmer) | Was required to take a yearly refresher course for funeral arrangers to satisfy the state licensing requirement.  Alderwoods held refresher courses during business hours at several locations.  Was paid for the time that she attended these courses.  Messier Dec. ¶ 12. |
| Olsen, Judith (Office Manager) | Had to attend administration training which was held during normal business hours.  Would always be paid her hourly wage while attending training sessions.  Olsen Dec. ¶ 17. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Training Time** |
| Patterson, William (Funeral Director) | Was paid for his time during his initial orientation at Humphrey Mortuary. Did not have any other training while at Alderwoods. Patterson Dec. ¶ 11. |
| Powell, William (Funeral Director) | Could not recall any after-hours training programs. Any training he attended was during the work day, and he was paid for his attendance. Was once paid to travel to Nashville for a continuing education course. Was paid for his time to take this course. Powell Dec. ¶ 13. |
| Pruitt, Jeanne (Office Administrator) | Attended administration training sessions periodically. Training sessions were always held during normal business hours, and she would always be paid for her time attending training sessions. Pruitt Dec. ¶ 17. |
| Rogers, Kenneth (Funeral Attendant) | The only training he was provided was on-the-job training for which he was paid. Rogers Dec. ¶ 10. |
| Rosen, C. Josef (Funeral Director) | Funeral directors in Florida were required to take continuing education courses. Kraeer Funeral Home usually held the courses during the business day. If there was an after-hours course, he was paid overtime for his attendance. Rosen Dec. ¶ 16. |
| Sands, Edith (Location Administrator) | Alderwoods did not require Sands to participate in any training programs. Sands Dec. ¶ 9. |
| Santmyer, William (Funeral Attendant) | The majority of his training as a funeral attendant was on the job training for which he was paid. Occasionally attended training on how to participate in different denominations' funeral services. This training was held during work hours. Was paid for the time he spent at this training. Never required to attend an after-hours training course. Santmyer Dec. ¶ 14. |
| Sims, Mertie (Office Manager) | Does not recall ever having to attend a training session. Sims Dec. ¶ 18. |
| Slight, Marshall (Courier) | For any training he was required to attend, Slight would always be on the clock and record his time spent while attending training meetings. Was always paid for the time attending these training sessions. Slight Dec. ¶ 9. |
| St. Laurent, Andy (Grounds Supervisor) | Only training he was required to attend was cremation training in 2004. Was paid for the time he spent attending the session. St. Laurent Dec. ¶ 18. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time. Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING TRAINING TIME | |
| --- | --- |
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Training Time** |
| Strang, Robert<br>(Intern Funeral Director,<br>Embalmer) | Attended training sessions at the funeral home during normal business hours; was always on the clock when attending these sessions and would be paid for attending.  Strang Dec. ¶ 17.<br><br>He does not know of any Alderwoods policy requiring hourly employees to attend training sessions after hours and off the clock.  *Id.* |
| Turnage, Brenda<br>(Assistant Administrator) | Did not receive any training to work in the office at Kiker-Seale Funeral Home.  Learned on the job how to fill out forms and to refresh her typing skills.  Was paid for this time.  Turnage Dec. ¶ 10. |
| Walsh, Cathy<br>(Administrative<br>Assistant) | Any training she had was on the job, and she was paid for the time she spent in training.  Whenever the funeral home held meetings, the hourly employees would always be on the clock and record their time spent at both meetings and training.  Walsh Dec. ¶ 16. |
| Welch, Sharon<br>(Apprentice Funeral<br>Director) | Carr & Erwin Funeral Home occasionally offered training on office practices, procedures, and systems.  Was paid for attending any such training.  Welch Dec. ¶ 11. |
| Wentworth, Shirley<br>(Funeral Support Staff) | Her training consisted mostly of computer training.  Would do any training on the job, and was paid for the time she spent in training.  Whenever she had to attend staff meetings, she would always be on the clock and record her time spent at both meetings and training.  Wentworth Dec. ¶ 17. |
| Windsor, Nancy<br>(Location Administrator) | The only training that Alderwoods required her to attend was office manager meetings where new office procedures or systems were discussed.  Was paid for her attendance at these meetings.  Was not required to attend any other training.  Windsor Dec. ¶ 10. |
| Young, Annette<br>(Assistant Administrator,<br>Musical Director) | Occasionally, Alderwoods provided training on new office procedures or equipment.  Was paid for the time she attended this training.  Young Dec. ¶ 11. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Training Time** |
| Amiker, Ellaway (General Manager, Cemetery) | Any training of hourly employees would occur at monthly staff meetings. These meetings were held during the normal business day, and hourly employees would be on the clock and paid for attending. Amiker Dec. ¶ 11. |
| Anton, George (Location Manager) | Training was required for the hourly employees both initially when they were hired and periodically during their tenure with the Crematory. An Alderwoods employee would come to the Crematory and train the hourly employees on safety and data recording procedures. All training was done on the job, and the hourly employees would be paid for any hours spent in training. On occasion, an hourly employee may have to travel to a location where a training course was being provided. The employee was paid for all travel and time spent attending those training sessions. Anton Dec. ¶¶ 21-22. |
| Clark, William (Location Manager) | There was a training period for new employees, which occurred during normal work hours and for which the employees were paid. Clark Dec. ¶ 11. |
| Clisby, Chad (Location Manager) | Funeral directors in Texas are required to take 16 hours of continuing education credits every two years. This requirement only applied to funeral directors. Alderwoods paid for all courses and credits for the funeral directors to maintain their licenses. The funeral directors were paid for their time to attend these courses, even if the course was held after-hours. Clisby Dec. ¶ 13. |
| Collins, Ronald (Vice President, Northeast United States) | Alderwoods never had a company-wide policy requiring non-exempt employees to undergo job-related training without compensation. Training was almost always during employees' normal working hours. To the extent any training was not during normal working hours, non-exempt employees were still required to record their time and were compensated for it. Collins Dec. ¶ 12.[vi] |
| Crowe, Patrick (General Manager) | Hourly employees were always paid for any time spent in training or staff meetings. Crowe Dec. ¶ 22. |
| Curnow, Brian (General Manager) | Sales employees who took classes to obtain their insurance licenses were reimbursed for their classes. Curnow Dec. ¶ 17. |
| D'Andrea, Daniel (Location Manager) | All training was done on the job, and the hourly employees who reported to him would be paid for any hours spent in training. D'Andrea Dec. ¶ 22. |

---

**[**]Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time. Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING TRAINING TIME | |
| --- | --- |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Training Time** |
| Dias, Joe (Location Manager) | He held meetings at his location to relay information or training to the hourly employees. These meetings were done during normal business hours, and the hourly employees would be paid for any hours spent at these meetings. Dias Dec. ¶ 21. |
| Eagan, Charles (Location Manager) | Funeral directors were required to take continuing education credits to maintain their license. About half the classes for these credits were during the day, and half were in the evening. Alderwoods paid for the time the funeral directors spent at these courses, as well as course fees. Eagan Dec. ¶ 12. Alderwoods also had training seminars to discuss new policies and procedures and new systems. These seminars were held during the work day and the employees who attended remained on the clock. *Id.* ¶ 13. |
| Friden, Paul (Location Manager) | Funeral homes would hold training sessions, mostly about safety issues, from time to time. He would clock-in and clock-out for every meeting, and was paid his hourly wage for attending those sessions. Friden Dec. ¶ 17. As an Alderwoods hourly employee, and later as a manager, he was not aware of any Alderwoods policies which required hourly employees not to record time spent at training sessions or other meetings. *Id.* ¶ 18. |
| Greeno, Donald (General Manager) | He does not recall any training that employees were required to take. Greeno Dec. ¶ 13. |
| Harper, William Ray (General Manager) | Funeral directors in Texas were required to take continuing education courses to maintain their licenses. They were paid for the time spent on these courses. Most took on-line courses during the work day while on the clock. Harper Dec. ¶ 12. On one occasion, he sent the entire maintenance staff for the Lawnhaven Cemetery to Missouri to attend an OSHA safety course. The employees were paid for their time and for the expenses of the trip. *Id.* ¶ 13. |
| Jones, Jay (Location Manager) | There was mandatory training for all employees, such as safety training or sexual harassment training, which was always held during the work day. The employees were paid to attend this training. No other training was required for the employees. J. Jones Dec. ¶ 11. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time. Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**  TO THE COURT REGARDING TRAINING TIME | |
| --- | --- |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Training Time** |
| Krueger, Richard (Location Manager) | The funeral home paid for re-licensing and continuing education courses for the funeral directors. Employees were paid for any training required by Alderwoods. Krueger Dec. ¶ 10. |
| Mayes, Buddy (Vice President, Southeast United States) | Alderwoods never had a company-wide policy requiring hourly employees to train off the clock. Regardless of the type of training, it was to be compensated. This requirement applied regardless of whether the training was off-site training or after working hours. Mayes Dec. ¶ 14.[vii] |
| McCarthy, Eleanor (Location Manager) | Training was required for the hourly employees both initially when they were hired and periodically during their tenure. All training was done on the job, and the hourly employees would be paid for any hours spent in training. On occasion, an hourly employee may have to travel to a location where a training course was being provided. The employee was paid for all travel and time spent attending those training sessions. McCarthy Dec. ¶¶ 21-22. |
| Nowatka, Steven (Funeral Director) | Training for the employees he supervised at his location consisted mostly of monthly meetings at the funeral home. All training was done on the job; hourly employees would be paid for any hours spent in training or meetings. Nowatka Dec. ¶¶ 20-23. |
| Phillips, Shawn (Vice President, Western United States) | Alderwoods never had a company-wide policy requiring hourly employees to perform mandatory job-related training while off the clock. Regardless of the type of training, and even if it was off-site training or after working hours, the training was to be compensated. Phillips Dec. ¶ 12.[viii] |
| Rizzotto, Michael (Location Manager) | Hourly employees attended training sessions or meetings periodically that were always held during the business day. Hourly employees were paid for any hours spent in training or meetings. Rizzotto Dec. ¶ 21.  Funeral directors were required to obtain continuing education credits. Alderwoods paid for the courses, and the funeral directors would be paid on the clock when studying for the credits. *Id.* ¶ 22. |
| Schwinghamer, Steven (Location Manager) | Funeral directors were required to take continuing education courses. The funeral directors took on-line courses during the work day and were paid for the time they took to complete these courses. No other employees were required to attend any training. Schwinghamer Dec. ¶ 13. |
| Warn, Robin (General Manager) | Employees were paid for attending training on safety issues, which was held during the day. Warn Dec. ¶ 11. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time. Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.

**TRAINING TIME**

---

[i] By identifying employees has having "non-exempt" job positions, Alderwoods does not waive and expressly reserves the right to argue that these positions qualify as exempt job positions.

[ii] *See* Brent Knight Declaration Exhibit N for a compilation of all deposition transcript excerpts cited herein.

[iii] For purposes of this analysis, Millard Daigle is listed among the management deponents although he also held non-exempt, hourly positions at Alderwoods.  The same holds true for Deborah Prise.

[iv] For purposes of this analysis, Barry Miles is listed among the management deponents although he was paid on an hourly basis as a manager.  The same holds true for Sandy Thomas and Stacey Weinstein.

[v] *See* Brent Knight Exhibit O for a compilation of all field employee declarations cited herein.

[vi] Attached to Brent Knight Declaration as Exhibit P.

[vii] Attached to Brent Knight Declaration as Exhibit Q.

[viii] Attached to Brent Knight Declaration as Exhibit R.

---

[**] Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to attend mandatory job-related training outside of normal working hours including on-line training, training to obtain and maintain certain licenses and HIV/communicable disease courses, but were not compensated for that time.  Plaintiffs further contend that all non-exempt employees nationwide were required to complete training but were not compensated for time spent in classes, time spent studying for and taking exams or for time spent completing continuing education classes.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 13-14.