# Exhibit D

PII-1206369v1

**PRE-NEEDS APPOINTMENTS**

**TABLE OF CONTENTS**

Page

**ALDERWOODS COMPANY POLICY** ..................................................................................................1
    Summary of applicable company policy.

**NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS**................................................ 2-4
    Sworn deposition testimony of non-exempt Alderwoods' employees directly contradicting Plaintiffs' representations to the Court regarding allegedly common experiences involving pre-needs appointments.

**MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS**................................................ 5-8
    Sworn deposition testimony of Alderwoods' managers directly contradicting Plaintiffs' representations to the Court regarding allegedly common experiences involving pre-needs appointments.

**NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS**................................................. 9-13
    Statements made under penalty of perjury by non-exempt Alderwoods' employees directly contradicting Plaintiffs' representations to the Court regarding allegedly common experiences involving pre-needs appointments.

**MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS**............................................. 14-18
    Statements made under penalty of perjury by Alderwoods' managers directly contradicting Plaintiffs' representations to the Court regarding allegedly common experiences involving pre-needs appointments.

**PRE-NEEDS APPOINTMENTS**

| ALDERWOODS COMPANY POLICY ||
| --- | --- |
| **Policy** | **Cite to Written Company Policy**\* |
| "All non-exempt employees are required to record all hours worked each day." | Hours of Work and Overtime, III.E Recording of Hours – ALD000005 (*see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648) |
| "Employees must review their time card/sheet, correct any errors, and sign it before submitting it to their manager for approval."  "Employees must check and sign their time card or timesheet at the end of each week to assure that their time cards are correct. Any discrepancies must be reported to the Location Manager/General Manager as soon as practical." | *Id.*   Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 10. – ALD000010 |
| "Managers are also responsible for . . . ensuring that no 'off the clock' work is allowed; that is, that all work performed by employees is properly documented on time cards/time sheets." | Hours of Work and Overtime, IV.B.6 Manager Responsibilities – ALD000007 |
| "Location Managers/General Managers must verify and sign their respective employees' time cards/timesheet." | Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 12. – ALD000011 (*see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648) |
| "All non-exempt employees will be compensated for all hours worked." | Hours of Work and Overtime, Policy – ALD000004 |
| "Non-exempt employees are to be compensated for all overtime hours worked." | Procedures for Timekeeping (Recording Hours Worked), Purpose – ALD000009 |
| "Non-exempt employees will receive overtime pay of one and one-half (1.5) times their regular rate of pay for all hours worked over forty (40) in any work week . . . ." | Hours of Work and Overtime, III.F Overtime – ALD000006 |

---

\* All Policies cited in this section are attached as Exhibits 1, 3 and 4 to the Rhonda Suurd Declaration, who is Alderwoods' former Human Resources Manager. Rhonda Suurd's Declaration is attached to the Brent Knight Declaration as Exhibit S.

-1-

PII-1205605v1

**PRE-NEEDS APPOINTMENTS**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS ||
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Burgess, Jason (Funeral Director, Embalmer)[i] | Never made pre-need sales. Burgess Dep. Tr. at 52:5-53:5.[ii] |
| Butler, Michael (Arranger) | Performed no work related to pre-needs appointments for which he was not compensated. *Id.* at 191:18-23. |
| Carswell, Shane (Funeral Director) | Did not make pre-need sales between December 2003 and May 2006. Carswell Dep. Tr. at 200:18-20. |
| Detschner, Steven (Funeral Director, Embalmer) | Was asked to take pre-needs insurance test. Destschner Dep. Tr. at 34:4-6.<br><br>Did not get pre-needs insurance license because he left the industry before taking any sort of examinations. *Id.* at 39:18-22. |
| Diggs, Jeffrey (Funeral Director, Embalmer) | Was not a licensed insurance agent and did not do any pre-need sales. Diggs Dep. Tr. at 69:12-15.<br><br>Did not have exposure to people writing pre-needs for his location. *Id.* at 129:5-6. |
| Escobar, Stephen (Arranger) | Did not conduct pre-need appointments. Escobar Dep. Tr. at 136:15-18. |
| Garza, Joe (Funeral Services Support L4) | Did not hold any licenses related to his employment at Alderwoods. Garza Dep. Tr. at 91:18-20. |
| Jones, Robert (Funeral Director) | Typically held pre-need appointments during the usual work day. Jones Dep. Tr. at 192:12-15.<br><br>Not aware of any company-wide policy that employees should not report the time they spent in pre-need appointments. *Id.* at 192:16-21. |
| Keath, Angela (Location Administrator) | Had no pre-needs appointments during the time she worked at Alderwoods. Keath Dep. Tr. at 186:12-15.<br><br>No individual claim for uncompensated time for pre-needs meetings. *Id.* at 186:16-19. |

---

[**]Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS ||
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Kuhta, Richard (Funeral Director, Embalmer) | No individual claim regarding any compensable time related to any pre-needs meetings.  Kuhta Dep. Tr. at 119:15-18. |
| Lanza, Michael (Funeral Director/ Embalmer, Apprentice) | Never saw a company policy stating that employees would not be compensated for pre-needs appointments.  Lanza Dep. Tr. at 225:8-14.<br><br>None of the funeral directors at the Powers funeral home sold pre-need.  *Id.* at 234:23-25.<br><br>Funeral home had designated pre-need staff.  *Id.* at 98:1-2. |
| Leal, Adrian (Funeral Director/ Embalmer, Apprentice) | Indicated that funeral directors are required to become licensed insurance agents because that was what was required in order to legally sell pre-needs policies.  Leal Dep. Tr. at 185:4-11. |
| Long, Kasi (Funeral Director) | Generally tried to schedule pre-need appointments during regular business hours.  Long Dep. Tr. at 43:9-11. |
| McDonald, Beverly (Funeral Director) | Had pre-needs appointments outside her regular schedule which lasted for 45 minutes to 2-3 hours.  McDonald Dep. Tr. at 179:7-9; 181:19-22.<br><br>Did not report this time because Manager told her it would not be paid and not to report it.  *Id.* at 181:1-6.<br><br>Spent an average of 4-5 hours a week in pre-needs appointments outside her regular work hours.  *Id*. at 181:23-182:4. |
| Ore, William (Funeral Director/ Embalmer, Apprentice) | Did not conduct pre-needs appointments.  Ore Dep. Tr. at 31:1-6.<br><br>Funeral home had a pre-need sales person who worked out of a separate office behind the funeral home.  *Id.* at 31:1-25. |
| Peters, John (Funeral Director) | Most pre-need appointments occurred during normal business hours.  Peters Dep. Tr. at 130:12-131:7. |

---

**\*\***Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time.  Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy."  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Rady, Heather (Funeral Director, Embalmer) | Would stay on the clock and was paid for pre-need appointments that ran after her regular work day. Rady Dep. Tr. at 169:17-170:23. |
| Reddick, Jack (Assistant Funeral Director) | Did not hold insurance license necessary to make pre-need sales. Reddick Dep. Tr. at 67:6-68:2. |
| Schabloski, John (Funeral Director, Embalmer) | Did not handle pre-need work; one employee handled all pre-need at the funeral home. Schabloski Dep. Tr. at 29:21-31:6.<br><br>Did not hold an insurance license, which was required in State of Michigan to make pre-need sales. *Id.* at 40:13-41:10. |
| Takesian, Stephen (Family Service Professional) | Never sold any pre-needs goods or services. Takesian Dep. Tr. at 18:2-4, 13-16. |

---

** Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS ||
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Baker, Dennis (Location Manager) | Only "sales counselors," or family service counselors were required to obtain a license to sell pre-need policies. Funeral directors were not required to obtain licenses to sell pre-need policies. Baker Dep. Tr. at 119:7-12.<br><br>Funeral directors did not sell pre-need policies at Phoenix Memorial. Only "sales counselors" or family service counselors had responsibility for pre-need appointments and presentations. Funeral directors, embalmers, or administrative employees did not participate in pre-need presentations. *Id*. at 119:13-15; 121:23-122:11.<br><br>Does not know of any Alderwoods policy of not compensating employees for obtaining insurance licenses. *Id*. at 120:25-121:4.<br><br>Does not know whether any family service counselors received compensation while studying for license exams. *Id*. at 121:8-11.<br><br>Is not aware of any policy that family service counselors could not record time spent in pre need appointments that went beyond their scheduled hours. Does not know of any family service counselors who didn't record their time spent in pre-need appointments. *Id*. at 123:23-124:10. |
| Bath, Herbert (General Manager) | Most of the employees who reported to him who had pre-needs or pre-arrangements meetings or appointments were salaried; for those who were hourly, he did not give them any instructions as to how to record such time; he has no idea with respect to employees who did not work at locations he managed what their pre-needs appointments or meetings schedules were like, what they were told about how to record their time, or whether they were paid for such time. Bath Dep. Tr. at 221:7-225:4. |
| Burkle, Clark (Location Manager) | Funeral Home has a designated group of employees at the Advanced Planning Center that offer pre-need services. Burkle Dep. Tr. at 36:20-37:8. |
| Daigle, Millard[iii] (Assistant Manager) | Admits that during the time he worked with Alderwoods, he did not hold an insurance agent license (which the State of Louisiana required to sell pre-needs) and did not sell pre-needs. Daigle Dep. Tr. at 210:25-211:8. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| **MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS\*\*** ||
| :---: | :---: |
| **TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS** ||
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Daigle, Millard (*cont'd.*) | Reported and was compensated for time he spent in pre-needs meetings or appointments at the funeral home during the day. *Id.* at 231:8-22. <br><br> Did not report and was not compensated for time he participated in pre-needs meetings or appointments after hours. *Id.* at 231:23-232:12; 232:17-20. <br><br> No Alderwoods manager ever told him not to report or that he would not be compensated for time he spent in pre-needs meetings or appointments. *Id.* at 232:21-25. <br><br> Not aware of any Alderwoods manager instructing any Alderwoods employee not to report time spent in pre-needs sales or appointments. *Id.* at 233:6-10. <br><br> Not aware of any other Alderwoods employees who were not compensated for time they spent in pre-needs meetings or appointments. *Id.* at 233:11-16. <br><br> Not aware of any company-wide policy that an employee should not report all the time spent in pre-needs appointments or meetings. *Id.* at 234:10-14. <br><br> Does not know whether other Alderwoods employees reported or were compensated for the time they spent doing pre-needs meetings or appointments. *Id.* at 235:11-20. |
| Hensley, Ric (Location Manager) | Only one employee (Ina Roberts) who reported to him directly or indirectly as a General Manager was responsible for selling pre-needs; she was a salaried manager not eligible for overtime work and was paid a commission on her pre-needs sales. Hensley Dep. Tr. at 119:8-120:11; 121:18-122:6. <br><br> Not aware of any policy at Alderwoods Group that provided that employees who dealt with pre-needs arrangements would not be compensated if they were dealing with them outside of their regular work hours, and that is certainly not what he did within his group. *Id.* at 120:12-20. |

---

\*\*Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| **MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS\*\* TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS** | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Kamienski, Richard (General Manager) | Pre-need counselors scheduled own work hours and managed own pre-need appointments. Kamienski Dep. Tr. at 160:1-161:3.<br><br>Not aware of any Alderwoods policy requiring employees to work selling pre-need policies after normal business hours without compensation. *Id.* at 162:18-22. |
| Miles, Barry[iv] (Location Manager) | Had his pre-need license since 1993. Miles Dep. Tr. at 81:6-11.<br><br>Obtained pre-need license to sell policies and make extra money. Was not required to obtain the license or sell pre-need policies. *Id.* at 82:18-83:25.<br><br>Funeral directors were not required to obtain a license to sell pre-need policies. It was up to each funeral director whether to sell pre-need policies. *Id.* at 118:7-19. |
| Pramik, Robert (Market Growth Manager) | There were several funeral directors who reported to Pramik who did not have their insurance licenses. Pramik Dep. Tr. at 160:5-25. He never disciplined his funeral directors who did not have insurance licenses. *Id.* at 161:14-19. He was not aware that they were ever disciplined by anyone in Alderwoods. *Id.* at 161:25-162:6.<br><br>Not aware of whether funeral directors outside the Harrisburg, Pa. market actually got insurance licenses. *Id.* at 159:18-23. |
| Prise, Deborah (Location Manager) | Received commissions for pre-need. Prise Dep. Tr. (Day 1) at 24:10-11; 25:5-19.<br><br>Not aware of any policy requiring licensed funeral directors to become licensed to sell pre-needs. *Id.* at 130:10-18. |
| Thomas, Sandy (Location Manager) | Doesn't know how pre-needs sales reps were told to record their time, whether they ever did not record time they spent working, or weren't paid for the time they actually worked. Thomas Dep. Tr. at 124:10-125:12. |
| Weinstein, Stacey (Location Manager) | The only individuals who sold pre-needs were funeral directors, some of the embalmers and all of the managers because they are the only individuals licensed to do so in the state of Florida. Weinstein Dep. Tr. (Day 1) at 57:16-58:5. |

---

\*\*Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS ||
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Weinstein, Stacey (*cont'd.*) | Weinstein testified that for pre-needs policies she received commissions but not hourly payments, so she cannot say that she received no compensation for her pre-needs sales work. *Id.* (Day 2) at 58:15-59:11. |
| White, Raymond (Location Manager) | Never sold pre-need contracts with Alderwoods. White Dep. Tr. at 56:23-24; 139:13-15.<br><br>Managers did not allow funeral directors to sell pre-needs. *Id.* at 138:24-139:12. He was never asked to obtain a license to sell pre-need contracts. *Id.* at 153:15-17. The funeral directors at other locations in the area also did not have pre-need insurance licenses. *Id.* at 154:18-155:4. Pre-need sales in Indiana was handled only by sales counselors. *Id.* at 155:21-156:2. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS ||
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Allen, Lois (Receptionist) | She was not involved in the selling of pre-needs policies, nor was she ever required to make pre-needs presentations or sell pre-needs policies. Allen Dec. ¶ 7.[v] |
| Arms, Beverly (Assistant Administrator) | She did not sell pre-need policies at Powers Funeral Home. Arms Dec. ¶ 6. |
| Ayling, Mary (Receptionist) | She was never required to sell pre-needs policies or make pre-needs presentations. Ayling Dec. ¶ 11. |
| Baird, William (Funeral Director, Embalmer) | Alderwoods sold pre-need policies through a dedicated pre-need sales staff. Hourly employees were not required to sell pre-needs policies. Baird Dec. ¶ 8. |
| Bollinger, Karen (Family Services Counselor) | She was a family service counselor. Her job was to sell pre-need policies. Bollinger Dec. ¶ 3.<br><br>She received both hourly pay and commission, whichever was greater. There were only a few weeks where she was paid hourly, without commissions. *Id.* ¶ 4. She was paid overtime if she qualified based on the number of hours she had worked. *Id.* ¶ 5. She always recorded the time that she had worked. *Id.* ¶ 6. She occasionally made pre-need presentations after-hours, but never cold-calls. *Id.* ¶ 7. |
| Cain, Waldo (Funeral Attendant) | He was not involved in the selling of pre-needs policies, nor was he ever required to make pre-needs presentations or sell pre-needs policies. Cain Dec. ¶ 12. |
| Crisp, Donald (Funeral Director) | Was not involved in the selling of pre-need policies, nor was he ever required to obtain a pre-need insurance license, make pre-need presentations or sell pre-need policies. Alderwoods used family service counselors exclusively to sell pre-need policies and make presentations. Crisp Dec. ¶ 13. |
| Elliott, James (Funeral Director) | Alderwoods did not require that funeral directors sell pre-need insurance. He used to sell pre-need policies, but stopped when Alderwoods switched to another pre-need insurance company. When he sold pre-need policies, he did so on commission. He made pre-need presentations during business hours and was paid for the time that he made these presentations. This was in addition to any commission he might make. Elliott Dec. ¶ 8. |
| Fogg, Margaret (Location Administrator) | She did not sell pre-need policies. Fogg Dec. ¶ 13. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS ||
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Gibson, Jill (Funeral Arranger) | She did not sell pre-need policies. These were sold by pre-need counselors. Gibson Dec. ¶ 16. |
| Goni, Helen (Office Manager) | Was not involved in the selling of pre-need policies, nor was she ever required to make pre-need presentations or sell pre-need policies. Goni Dec. ¶ 10. |
| Hunt, Theodore (Funeral Attendant) | He was not involved in the selling of pre-needs policies, nor was he ever required to make pre-needs presentations or sell pre-needs policies. Hunt Dec. ¶ 10. |
| Jones, Regina (Funeral Director) | She did not sell pre-need policies. No funeral directors were required or even encouraged to sell pre-need policies under Alderwoods, and none in fact sold pre-need policies. Alderwoods had a separate pre-need sales staff that handled these sales. R. Jones Dec. ¶ 11. |
| Karneol, Rozlyn (Assistant Administrator) | She did not sell pre-need policies. She referred customers who inquired about pre-needs to her manager. Karneol Dec. ¶ 6. |
| Korell, Karee (Funeral Director) | She was not involved in the selling of pre-need policies, nor was she ever required to make pre-need presentations or sell pre-need policies. Alderwoods used family service counselors exclusively to sell pre-need policies and make presentations. Korell Dec. ¶ 13. |
| LaPlaunt, Daniel (Funeral Director) | He was not involved in or required to make pre-need presentations or sell pre-need policies. LaPlaunt Dec. ¶ 13.<br><br>Alderwoods used advanced planning personnel exclusively to sell pre-need policies and make presentations. *Id.*<br><br>No one at Alderwoods ever required him to obtain a license to sell pre-need policies. *Id.* |
| Laska, Robert (Funeral Director) | Was not involved in the selling of pre-need policies, or required to make pre-need presentations or sell pre-need policies. Laska Dec. ¶ 13. |
| Lay, John (Funeral Attendant) | Did not sell pre-need insurance policies and was not required to do so. Lay Dec. ¶ 14. |
| Luciano, Christopher (Funeral Director, Embalmer) | Funeral directors were not required to sell pre-need policies. Luciano Dec. ¶ 14.<br><br>Alderwoods paid for any time selling pre-needs, as well as for courses and tests to obtain the insurance license. Employees were paid for their time when they took the insurance examination. *Id.* |

---

**\*\***Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS ||
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Mann, Kelley (Office Manager) | Was not required to make pre-need sales or attend pre-need presentations. Alderwoods had separate staff who handled pre-need sales. On rare occasions, she would assist families with pre-need issues which occurred during normal business hours. Mann Dec. ¶ 14.<br><br>No hourly maintenance or office staff employees were required to make pre-need sales or presentations. *Id.*<br><br>Pre-need staff were required to record the time they worked. They were paid the greater of the hours worked, or commissions earned. None of the pre-need staff were paid less than the hourly rate for the number of hours they actually worked. *Id.* ¶ 15. |
| Messier, Claudia (Funeral Director, Embalmer) | Did not sell pre-need insurance policies. There was separate pre-need staff that handled these sales. Was neither asked nor encouraged to sell pre-need policies. Messier Dec. ¶ 11. |
| Olsen, Judith (Office Manager) | Was not involved in the selling of pre-need policies, nor was she required to make pre-need presentations or sell pre-need policies. Olsen Dec. ¶ 11. |
| Patterson, William (Funeral Director) | Did not sell pre-need policies at Humphrey Mortuary. A pre-need counselor sold insurance policies. Alderwoods did not require that he, as a funeral director, obtain an insurance license to sell pre-need policies. Patterson Dec. ¶ 10. |
| Powell, William (Funeral Director) | As a funeral director, did not and was not required to sell pre-need policies. There was a pre-need counselor at the funeral home who sold insurance policies. Powell Dec. ¶ 12. |
| Pruitt, Jeanne (Office Administrator) | Was not involved in the selling of pre-need policies or required to make pre-need presentations. Separate employees handled pre-need policies and presentations. Hourly employees were not involved in pre-need work at her location. Pruitt Dec. ¶ 11. |
| Rogers, Kenneth (Funeral Attendant) | Did not sell pre-need policies. Only funeral directors who sold pre-need policies would discuss sales with the families. Rogers Dec. ¶ 9. |
| Rosen, C. Josef (Funeral Director) | Was never required to sell pre-need policies by Alderwoods. Was unaware of any funeral directors who sold pre-need insurance; a pre-need counselor handled these sales. Rosen Dec. ¶ 15. |
| Sands, Edith (Location Administrator) | Never sold pre-need insurance policies. Referred customers inquiring about pre-need policies to a funeral director or a sales representative. Sands Dec. ¶ 8. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS ||
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Santmyer, William (Funeral Attendant) | Did not sell pre-need policies. Occasionally received a referral fee if he referred a customer to a pre-need salesperson. Santmyer Dec. ¶ 13. |
| Sims, Mertie (Office Manager) | Was never required to obtain a pre-need license. She only made a few sales and was paid a commission for each sale. Any time she spent on pre-need sales was during the normal business day and she was paid for her hourly rate for the time spent. Alderwoods had separate counselors who sold policies. No other hourly employees sold policies or were required to do so. *Id.* ¶ |
| Slight, Marshall (Courier) | Was not involved in the selling of pre-needs policies, nor was he ever required to make pre-needs presentations or sell pre-needs policies. Slight Dec. ¶ 7. |
| St. Laurent, Andy (Grounds Supervisor) | Was not involved in the selling of pre-need policies, nor was he ever required to make pre-need presentations or sell pre-need policies. Alderwoods used cemetery sales counselors to sell pre-need policies and make presentations. St. Laurent Dec. ¶ 14. |
| Strang, Robert (Funeral Director, Embalmer Intern) | Was not involved in selling pre-need policies, or required to make pre-need presentations or sell pre-need policies. Alderwoods used family service counselors to sell pre-need policies and make presentations. Strang Dec. ¶ 12. |
| Strintz, Jack (Courier) | Was not involved in the selling of pre-needs policies, nor was he ever required to make pre-needs presentations or sell pre-needs policies. Strintz Dec. ¶ 9. |
| Turnage, Brenda (Assistant Administrator) | Did not sell pre-need insurance policies. Turnage Dec. ¶ 9. |
| Walsh, Cathy (Administrative Assistant) | Was not involved in the selling of pre-needs policies, or was she ever required to make pre-needs presentations or sell pre-needs policies. Walsh Dec. ¶ 11. |
| Welch, Sharon (Funeral Director, Apprentice) | Was an apprentice funeral director and was not permitted to sell pre-need policies. There was a pre-need counselor who handled pre-need sales. Welch Dec. ¶ 10.<br><br>Was not required to sell pre-need policies as either an apprentice or a funeral director. *Id.* |
| Wentworth, Shirley (Funeral Support Staff) | Was not involved in the selling of pre-needs policies, nor was she ever required to make pre-needs presentations or sell pre-needs policies. Wentworth Dec. ¶ 11. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS ||
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Windsor, Nancy (Location Administrator) | Did not make pre-need sales. There was a pre-need counselor who made these sales. Windsor Dec. ¶ 9. |
| Young, Annette (Assistant Administrator, Musical Director) | Did not sell pre-need policies. These were sold by a pre-need counselor. Young Dec. ¶ 11. |

---

**\*\***Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| **MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**\*\* TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Amiker, Ellaway (General Manager, Cemetery) | Hourly maintenance staff and administrative office staff were not required to attend pre-need presentations or make pre-need sales. Alderwoods had a separate staff of family service counselors who handled pre-need sales. Amiker Dec. ¶ 10. |
| Anton, George (Location Manager) | Neither he nor any of the employees who reported to him ever participated, or were required to participate, in pre-needs presentations or sales. Anton Dec. ¶ 16. |
| Clark, William (Location Manager) | The Baldwin-Lee Funeral Home had pre-need counselors who sold pre-need insurance. They were the only employees who sold pre-need policies and the only employees required to obtain an insurance license to allow them to sell pre-need policies. Clark Dec. ¶ 10.<br><br>Alderwoods paid for the licensing fees of the sales staff. The sales staff was paid a combination of hourly wages and commissions. They were paid overtime if they accrued sufficient hours. *Id.* |
| Clisby, Chad (Location Manager) | No employees were encouraged or required to sell pre-need policies other than the dedicated pre-need sales staff. Funeral directors did not sell pre-need policies. Clisby Dec. ¶ 12. |
| Collins, Ronald (Vice President Northeast United States) | If non-exempt employees sold pre-needs policies or did any work after their scheduled hours, they were required to report their time. While employees occasionally may have met with families after scheduled hours, Alderwoods' policy was clear that they had to record all time just as during the regular work day. They were not permitted to punch out and continue working, nor could their manager refuse to record their work time. Collins Dec. ¶ 19.[vi] |
| Crowe, Patrick (General Manager) | Funeral directors were the only hourly employees involved in pre-need sales. Crowe Dec. ¶ 18.<br><br>Funeral directors were on the clock for all pre-need appointments. *Id.*<br><br>Is not aware of any funeral director not recording their time spent on pre-need sales and presentations, nor is he aware of any Alderwoods policy which prohibited hourly employees from recording time spent on pre-need sales and appointments. *Id.* |

---

\*\*Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** | |
|---|---|
| **TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS** | |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Curnow, Brian (General Manager) | Only pre-need sales staff sold pre-need insurance. Funeral directors and other staff did not, nor were these employees required to obtain an insurance license. Curnow Dec. ¶¶ 16-17.<br><br>Sales staff were paid overtime for pre-need calls if they exceeded 40 hours in a work week. They were paid either their hourly wage or commissions, whichever was greater. *Id.* ¶ 18. |
| D'Andrea, Daniel (Location Manager) | Alderwoods had a separate sales staff that sold pre-needs insurance to families. Neither he nor any of his staff at his location ever participated, or were required to participate, in pre-needs presentations or sales. D'Andrea Dec. ¶ 16.<br><br>None of the Funeral Directors or staff at his location did, or were required to do, pre-needs presentations or sales. *Id.* ¶ 17. |
| Dias, Joe (Location Manager) | Only he did pre-need sales and presentations. No hourly employees participated in pre-need sales. Dias Dec. ¶ 17. |
| Eagan, Charles (Location Manager) | Alderwoods did not permit funeral directors to sell pre-need insurance policies. There was a separate sales staff, consisting of pre-need counselors, who were licensed to sell pre-need policies. Eagan Dec. ¶ 11. |
| Friden, Paul (Location Manager) | He was not involved in the selling of pre-need policies, nor was he ever required to make pre-need presentations or sell pre-need policies. Friden Dec. ¶ 13.<br><br>Alderwoods used family service counselors exclusively to sell pre-need policies and make presentations. *Id.*<br><br>If he ever attended a pre-need presentation, he would clock-in and be paid for attending the meeting. *Id.* |
| Harper, William Ray (General Manager) | Any employees who sold pre-need policies were paid on commission, which was paid by the pre-need insurance company. The pre-need sales staff were paid hourly for a few weeks when they started, but thereafter were paid exclusively on commission. Harper Dec. ¶ 8.<br><br>There were some funeral directors who also sold pre-need insurance. If a funeral director made a pre-need presentation after-hours, he or she was paid for his or her time. *Id.* |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

PII-1205605v1                                                  -15-

**PRE-NEEDS APPOINTMENTS**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Jones, Jay (Location Manager) | When he was a funeral director, he did not sell pre-need policies. The funeral home had a sales person who handled pre-need sales. There was, at one point, a funeral director who had a pre-need license and she handled walk-in business. Funeral directors were not required nor encouraged to obtain a pre-need insurance license. J. Jones Dec. ¶ 10.<br><br>He believed pre-need sales staff were paid by commission. *Id.* |
| Krueger, Richard (Location Manager) | Funeral directors were allowed to sell pre-need policies if they were licensed. However, funeral directors were not required to sell pre-need insurance. The funeral home had a pre-need sales staff that sold this insurance. Krueger Dec. ¶ 9.<br><br>Funeral directors who sold pre-need policies were paid commissions on their sales. The funeral home also paid for their licensing. *Id.*<br><br>Pre-need sales staff received hourly wages for 60 days when they began working and were paid strictly on commission thereafter. *Id.* |
| Lawrence, Gloria (Location Manager) | Did not sell pre-need policies. These were sold by a pre-need counselor. No funeral directors sold pre-need policies or were encouraged to do so. Lawrence Dec. ¶ 19.<br><br>Pre-need counselors were paid the greater of their hourly rate or commissions. *Id.* ¶ 20. |
| Mayes, Buddy (Vice President Southeast United States) | Alderwoods never had a policy requiring employees to schedule pre-needs appointments after hours or a policy of refusing to pay for pre-needs appointments that went after hours. Employees were not permitted to punch out and continue working, nor could their manager refuse to record their work time. Mayes Dec. ¶ 22.[vii] |
| McCarthy, Eleanor (Location Manager) | Neither she nor any of the employees who reported to her, including funeral directors, ever participated, or were required to participate, in pre-needs presentations or sales. McCarthy Dec. ¶¶ 16-17. |
| Nowatka, Steven (Funeral Director) | Neither he nor any of the employees who reported to him ever participated, or were required to participate, in pre-needs presentations or sales. Nowatka Dec. ¶ 16. |

---

[**]Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** | |
|---|---|
| **TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS** | |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Phillips, Shawn (Vice President Western United States) | If employees met with families after scheduled hours, Alderwoods' policy was clear that they had to record all time just as during the regular work day. They were not permitted to punch out and continue working, nor could their manager refuse to record their work time. Phillips Dec., ¶ 20.[viii] |
| Porte, Kelly (Assistant Manager) | Has not sold pre-need insurance since Alderwoods phased out the industrial insurance license the funeral home previously possessed. Porte Dec. ¶ 10.<br><br>When she sold pre-need insurance, she made commissions on sales. Did not conduct after-hours calls, but would meet with families after-hours. If she did so, it was at the funeral home and on the clock. *Id.* |
| Rizzotto, Michael (Location Manager) | He and the funeral directors provided the pre-need sales and presentations at his location. No other hourly employees participated in pre-need sales. Rizzotto Dec. ¶ 17.<br><br>Funeral directors would be on the clock for any time they worked on pre-need sales or presentations. Not aware of any funeral director not recording their time while involved in selling pre-need funeral arrangements or making presentations to customers. *Id.*<br><br>Not aware of any Alderwoods policy requiring funeral directors to work "off the clock" on pre-need sales or meetings. *Id.* |
| Schwab, Roxann (General Manager) | Family service counselors sold pre-need policies. Some funeral directors sold pre-need policies at smaller locations that could not be adequately serviced by a family service counselor. Schwab Dec. ¶ 16.<br><br>Employees who sold pre-need policies were paid by the hour or on commission, whichever was greater. Most sales staff wanted to make commissions instead of hours. *Id.* ¶ 17. |
| Schwinghamer, Steven (Location Manager) | Only employees at Kiker Funeral Home who sold pre-need policies were Schwinghamer and a funeral clerk. No other employees sold pre-need policies. The pre-need saleswoman was paid a commission for each pre-need policy she sold. The commission was more than she could make based on her hourly wage. Schwinghamer Dec. ¶ 12. |

---

**Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.

**PRE-NEEDS APPOINTMENTS**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-NEEDS APPOINTMENTS ||
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Needs Appointments** |
| Warn, Robin (General Manager) | Only the family service counselors sold cemetery and funeral pre-need policies at Lakewood Cemetery. They were paid on a commission basis, or for the time spent on an hourly basis, whichever was greater. Family service counselors were paid for after-hours family visits. Warn Dec. ¶ 10. |

---

[i] By identifying employees has having "non-exempt" job positions, Alderwoods does not waive and expressly reserves the right to argue that these positions qualify as exempt job positions.

[ii] *See* Brent Knight Declaration Exhibit N for a compilation of all deposition transcript excerpts cited herein.

[iii] For purposes of this analysis, Millard Daigle is listed among the management deponents although he also held non-exempt, hourly positions at Alderwoods. The same holds true for Deborah Prise.

[iv] For purposes of this analysis, Barry Miles is listed among the management deponents although he was paid on an hourly basis as a manager. The same holds true for Sandy Thomas, Stacey Weinstein and Raymond White.

[v] *See* Brent Knight Declaration Exhibit O for a compilation of all field employee declarations cited herein.

[vi] Attached to Brent Knight Declaration as Exhibit P.

[vii] Attached to Brent Knight Declaration as Exhibit Q.

[viii] Attached to Brent Knight Declaration as Exhibit R.

---

[**]Plaintiffs represented to the Court that all Alderwoods non-exempt employees were required to make pre-needs presentations and sell pre-needs policies outside of normal business hours, but were not paid for that time. Plaintiffs further contend managers monitored all non-exempt employees' compliance with this "policy." *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 14-15.