**Exhibit F**

PRE-APPROVAL OF OVERTIME

**TABLE OF CONTENTS**

**Page**

**ALDERWOODS COMPANY POLICY**.................................................................................................................................1
    Summary of applicable company policy.

**NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME** ............................................ 2-7
    Sworn deposition testimony of non-exempt Alderwoods' employees directly contradicting Plaintiffs'
    representations to the Court regarding allegedly common experiences involving pre-approval of overtime.

**MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME** ......................................... 8-11
    Sworn deposition testimony of Alderwoods' managers directly contradicting Plaintiffs' representations
    to the Court regarding allegedly common experiences involving pre-approval of overtime.

**NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME** ...................................... 12-16
    Statements made under penalty of perjury by non-exempt Alderwoods' employees directly contradicting
    Plaintiffs' representations to the Court regarding allegedly common experiences involving pre-approval of
    overtime.

**MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME** ...................................... 17-21
    Statements made under penalty of perjury by Alderwoods' managers directly contradicting Plaintiffs'
    representations to the Court regarding allegedly common experiences involving pre-approval of overtime.

**PRE-APPROVAL OF OVERTIME**

| ALDERWOODS COMPANY POLICY | |
|---|---|
| **Policy** | **Cite to Written Company Policy**[*] |
| "All non-exempt employees are required to record all hours worked each day." | Hours of Work and Overtime, III.E Recording of Hours – ALD000005 (*see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648) |
| "Employees must review their time card/sheet, correct any errors, and sign it before submitting it to their manager for approval."<br><br>"Employees must check and sign their time card or timesheet at the end of each week to assure that their time cards are correct.  Any discrepancies must be reported to the Location Manager/General Manager as soon as practical." | *Id.*<br><br><br>Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 10. – ALD000010 |
| "Managers are also responsible for . . . ensuring that no 'off the clock' work is allowed; that is, that all work performed by employees is properly documented on time cards/time sheets." | Hours of Work and Overtime, IV.B.6 Manager Responsibilities – ALD000007 |
| "Location Managers/General Managers must verify and sign their respective employees' time cards/timesheet." | Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 12. – ALD000011 (*see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648) |
| "All non-exempt employees will be compensated for all hours worked." | Hours of Work and Overtime, Policy – ALD000004 |
| "Non-exempt employees are to be compensated for all overtime hours worked." | Procedures for Timekeeping (Recording Hours Worked), Purpose – ALD000009 |
| "Non-exempt employees will receive overtime pay of one and one-half (1.5) times their regular rate of pay for all hours worked over forty (40) in any work week . . . ." | Hours of Work and Overtime, III.F Overtime – ALD000006 |
| "Working overtime that has not been pre-approved by the employee's manager may lead to disciplinary action." | Hours of Work and Overtime, VI. Disciplinary Action – ALD000008 |

[*]All Policies cited in this section are attached as Exhibits 1, 3 and 4 to the Rhonda Suurd Declaration, who is Alderwoods' former Human Resources Manager.  Rhonda Suurd's Declaration is attached to the Brent Knight Declaration as Exhibit S.

-1-

PRE-APPROVAL OF OVERTIME

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
| --- | --- |
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Burgess, Jason (Funeral Director, Embalmer)[i] | Often worked beyond scheduled hours without seeking pre-approval for overtime and was paid.  Burgess Dep. Tr. at 112:2-115:17.[ii] |
| Butler, Michael (Arranger) | Work performed before and after regular shifts could be approved and paid.  Butler Dep. Tr. at 109:19-24; 178:15-179:3; 185:3-5. |
| Carswell, Shane (Funeral Director) | Obtained pre-approval from his manager; was given verbal permission to work overtime, and does not recall ever being denied permission to work overtime.  Carswell Dep. Tr. at 110:4-24.

Indicated that the only time he worked overtime without pre-approval were things involving community service, which were simply expected of employees and did not require pre-approval.  *Id.* at 111:9-112:12.

Not aware that there was ever any issue of getting pre-approval for overtime work.  *Id.* at 181:15-182:25.

Not aware of any policy that he was subject to whereby if he worked overtime that was not pre-approved that he was not going to get paid for it.  *Id.* at 192:15-19.

During his time as the location manager, Carswell never refused to compensate employees for any overtime hours that they reported.  *Id.* at 210:17-21. |
| Detschner, Steven (Funeral Director, Embalmer) | He personally would not report insubstantial blocks of overtime before or after his shift, such as 15 or 20 minutes because he did not want to look petty.  He believed that reporting overtime minutes here and there would cast him in a negative light. Detschner Dep. Tr. at 63:2-22; 61:5-62:10.

If it was an hour or more, he would report and be paid without any special pre-approval.  *Id.* at 147:4-149:19. |

---

** Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

### PRE-APPROVAL OF OVERTIME

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Detschner, Steven (*cont'd.*) | He admitted that pre-approval is a vague term and could be interpreted or applied different ways. He never specifically told what he was to do to get pre-approval. He personally felt that if the work could be corroborated by a manager who was present, then it was approved. On-call work did not require separate approval because it was understood to be part of your duties. *Id.* at 59:24-61:16; 68:14-69:2; 82:9-25. |
| Diggs, Jeffrey (Funeral Director, Embalmer) | Was not required to seek approval before working overtime; not aware of any company policy requiring employees to get approval before working overtime; did, in fact, work overtime without receiving his manager's approval and was paid anyway. Diggs Dep. Tr. at 131:1-7, 9-12; 130:23-25; 142:21-23. |
| Escobar, Stephen (Arranger) | Was compensated for all overtime work that he recorded. Escobar Dep. Tr. at 63:5-11; 104:23-106:5. Was never told that in order to work overtime he had to have it approved by his manager. *Id.* at 77:21-78:7. Did not need his supervisor's approval to work any overtime or to work outside of his normal scheduled hours. *Id.* at 91:23-92:4; 92:24-93:3. |
| Gonzales, Donna (Assistant Funeral Director) | Funeral directors would "volunteer" to work overtime by "sign[ing] up" on a posted sheet as to what days in a given week they were available to work. *Id.* at 163:18-22; 164:1-19. There was not a pre-approval process in her case; prior to a management transition, her existing managers told her she "was able to work as much overtime as [she] wanted to" and thereby "approved it without having to be pre-approved by the new director or new manager"; therefore, when the new manager took over, she would not request pre-approval for overtime; "on occasion, not always" her new manager would mark off or refuse to sign her time cards and not approve payment of her overtime. *Id.* at 162:18-163:22; 167:8-169:22. |

---

**Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved. Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Johnson, Louise (Funeral Director, Embalmer) | Did not seek pre-approval for overtime when embalming because supervisors were people that had their own lives and she did not want to bother them.  Johnson Dep. Tr. at 165:22-166:5.<br><br>Never attempted to contact managers or human resources for clarification about how overtime is calculated and paid.  *Id.* at 166:17-167:2. |
| Jones, Robert (Funeral Director) | If he "accumulated an extraordinary amount of overtime above what [the manager] would normally pay [him]," he would ask his manager for approval to be paid for the additional overtime, his manager would grant approval, and Jones would be paid.  Jones Dep. Tr. at 54:11-55:12.<br><br>Was paid a guaranteed number of overtime hours.  *Id.* at 118:1-5.<br><br>This arrangement was unique to Jones and did not apply to any other funeral directors.  *Id.* at 118:20-119:1.<br><br>Employees, other than himself, needed to have approval prior to reaching the overtime period, but that requirement was "somewhat, not strictly" enforced.  *Id.* at 194:13-19; 195:2.<br><br>Not aware of any overtime that employees worked without getting approval.  *Id.* at 203:24-204:1. |
| Keath, Angela (Location Administrator) | Does not know whether other Alderwoods employees were not compensated for overtime hours because they were not pre-approved.  Keath Dep. Tr. at 151:17-152:7. |
| Kuhta, Richard (Funeral Director, Embalmer) | Seeking compensation for a total of two to three eight-hour days when his Location Manager was on vacation for which he was not paid overtime, with respect to which he could not remember whether he sought approval before or after performing the work.  Kuhta Dep. Tr. at 73:15-74:14.  Other than on those two or three days, if he worked overtime hours, he was compensated for them.  *Id.* at 77:23-79:7. |

---

** Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| | Was compensated for the five hours of overtime he was scheduled to work in a standard week, which was "built into [his] regular payroll." *Id.* at 35:16-21; 48:20-49:7; 72:2-15.<br><br>When his Location Manager would ask him to work additional overtime hours and Kuhta agreed to do so, Kuhta was compensated for those overtime hours. *Id.* at 72:2-73:14.<br><br>Not aware of what happened with other employees with regard to their pay or overtime. *Id.* at 84:25-85:16.<br><br>Does not know whether there was any policy under which employees who did not get their overtime hours pre-approved were not compensated for them. *Id.* at 90:20-91:7; 93:23-94:9; 95:12-17. |
| Leal, Adrian (Apprentice Funeral Director, Embalmer) | Claims that when pre-approval did not occur, he would not be paid for overtime. Leal Dep. Tr. at 179:2-5. |
| Long, Kasi (Funeral Director) | Was not always required to get pre-approval for overtime and does not recall when the requirement was in effect. Long Dep. Tr. at 75:14-21; 110:20-111:12.<br><br>Could not "specifically recall an incident" in her "direct recollection" when she got approval to work overtime; could not recall any incident when she asked for pre-approval and was denied. *Id.* at 113:11-115:11 |
| McDonald, Beverly (Funeral Director) | Was writing "whatever it took to make 50" hours on her timesheet and usually did her timesheets in advance. McDonald Dep. Tr. at 46:16-48:3.<br><br>Signed time cards in advance. *Id.* at 64:8-9.<br><br>Did not work typical average days; her hours varied depending on workload; and overtime hours would vary from 1-50 hours depending on deaths. *Id.* at 45:9-24; 66:11-21; 94:1-4. |

---

**Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved. Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| McDonald, Beverly (*cont'd*) | Did not keep a personal record of her time. *Id.* at 49:15-17.<br><br>Sought pre-approval to work overtime from location manager when it was foreseeable, but he would not approve payment of such overtime. Typically did not report all overtime hours because they would not be approved. *Id.* at 114:8-116:3.<br><br>Received an August 2, 2005 discipline notice for failing to sign her weekly time card and failing to account for her time on the clock. *Id.* at 101:17-102:12.<br><br>Denies that her Manager requested her resignation because of her failure to comply with timekeeping policies. *Id.* at 103:24-104:9. |
| Ore, William (Funeral Director, Embalmer Apprentice) | For a period of employment, not required to seek pre-approval for overtime hours. Ore Dep. Tr. at 134:7-17.<br><br>Admits that there were occasions that he did not seek pre-approval and was paid for overtime hours worked. *Id.* at 136:10-16.<br><br>Not aware of a written policy requiring pre-approval for working overtime. *Id.* at 179:15-180:4. |
| Peters, John (Funeral Director) | Testified that his Manager told him as soon as he was hired that he had to get approval to work overtime and that requirement continued for the entire period of employment. Peters Dep. Tr. at 100:6-101:6.<br><br>Testified that he was never denied approval to work overtime. *Id.* at 101:13-15; 102:10-13.<br><br>Was never denied overtime pay because the overtime had not been pre-approved. *Id.* at 104:17-105:13.<br><br>Was never told that he would not be paid if he failed to have overtime pre-approved. *Id.* at 106:1-107:7. |

---

**Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved. Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

## PRE-APPROVAL OF OVERTIME

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Rady, Heather (Funeral Director, Embalmer) | Reported overtime on time sheets even when it wasn't pre-approved.  Rady Dep. Tr. at 97:11-98:10.  Time cards would reflect at least some overtime that was not pre-approved but was paid.  *Id.* at 163:6-21. |
| Schabloski, John (Funeral Director, Embalmer) | Worked for several months without seeking pre-approval for overtime; understood that seeking pre-approval for overtime was something new.  Schabloski Dep. Tr. at 152:12-25. |
| Takesian, Stephen (Family Service Professional) | Preauthorization for overtime was required on the funeral side of the business, but not on the cemetery side.  Takesian Dep. Tr. at 109:3-9. |
| Twiss, Matthew (Arranger) | Was paid, on some occasions, for overtime that was not pre-approved.  Twiss Dep. Tr. at 101:5-12. |
| Wilkinson, Jack (Funeral Director) | Not required to seek pre-approval for overtime hours.  Wilkinson Dep. Tr. at 61:22-24; 64:2-4.  Not aware of a policy that required employees to seek pre-approval for overtime.  *Id.* at 110:18-111:1. |

---

[**]Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Baker, Dennis (Location Manager) | Not seeking overtime in the lawsuit because as General Manager and Location Manager, he was a salaried employee. Baker Dep. Tr. at 15:3-8.<br><br>Has no knowledge of whether there was any portion of his budget as a General Manager at Phoenix Memorial allocated to overtime.  Does not recall specific discussions with regional manager about overtime budgets; or any of supervisors giving him a budget for overtime.  *Id*. at 47:13-48:23; 98:5-7.<br><br>No one he ever supervised at Phoenix Memorial or Buells Chapel ever complained to him about not getting paid for all the hours they worked.  *Id*. at 52:10-13.<br><br>It was his responsibility at the locations he managed to approve overtime requests.  Is unaware of any Alderwoods policy that employees would not get paid for overtime if it was not pre-approved.  *Id*. at 92:17-93:21; 126:7-14.<br><br>Does not recall ever refusing to pay someone overtime worked because it was not pre-approved.  *Id*. at 125:2-11. |
| Bath, Herbert (General Manager) | Understood as an area manager of Alderwoods that if an employee performed and reported overtime work, he should be compensated for it, whether or not it was pre-approved.  Bath Dep. Tr. at 264:19-25.<br><br>As a Location Manager, did not ever require any of the employees who reported to him to get his approval before they worked overtime.  *Id.* at 263:10-14. |
| Burkle, Clark (Location Manager) | No member of Alderwoods management ever told him that only approved overtime would be paid.  Burkle Dep. Tr. at 61:4-6.<br><br>Not required to seek pre-approval for any overtime hours that he worked.  *Id.* at 86:17-20. |

---

[**] Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
| --- | --- |
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| | No idea of the scope of policies beyond Gorsline Funeral Home. *Id.* at 100:4-22. |
| | No recollection of a written policy requiring pre-approval. *Id.* at 75:9-14. |
| | Never heard member of management say that employees would not be paid unless they sought and received pre-approval for all overtime. *Id.* at 75:15-18. |
| Daigle, Millard[iii] (Assistant Manager) | Can not ever remember his Alderwoods managers discussing pre-approval; there was never a discussion about pre-approval; the discussion was about working 40 hours a week, no overtime – not about pre-approval.  Daigle Dep. Tr. at 76:4-80:1; 83:11-84:14. |
| | Had to get pre-approval for overtime, but no overtime was allowed. *Id.* at 154:11-19; 155:25-156:8. |
| | Was never told and is not aware of any other employee being told that overtime had to be approved in order to be paid. *Id.* at 85:21-86:2. |
| Hensley, Ric (Location Manager) | There was no requirement of pre-approval for overtime for employees who reported to Hensley either directly or indirectly during his entire tenure as General Manager.  Hensley Dep. Tr. at 122:18-25; 124:19-24. |
| | Not aware of any Alderwoods Group policy that provided that employees could not work overtime unless it was pre-approved. *Id.* at 126:6-9. |
| Kamienski, Richard (General Manager) | Does not recall a policy requiring employees to obtain prior approval before working overtime.  Kamienski Dep. Tr. at 175:25-176:23. |
| | Not aware of any company policy saying that employees would not be paid for overtime that was not pre-approved, and to his knowledge, that has never occurred. *Id.* at 178:5-23. |

---

[**]Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Miles, Barry[iv] (Location Manager) | Never had a time sheet rejected because he worked overtime that was not approved. Miles Dep. Tr. at 169:14-16. It was Alderwoods policy to pay hourly employees all overtime hours worked. *Id.* at 175:2-13. No knowledge of an overtime pre-approval policy, except that the part-time office staff were supposed to "watch their time." *Id.* at 223:6-17; 223:23-225:18 Is not aware of anyone who has submitted time for overtime and not been paid for it. *Id.* at 225:8-226:1. Overtime never had to be pre-approved. *Id.* at 284:9-12. |
| Pramik, Robert (Market Growth Manager) | Pramik does not know if the "pre-approval" policy was in the Alderwoods policy and procedures binders. Pramik Dep. Tr. at 199:16-200:4. He did not recall seeing a written policy stating that overtime would not be paid unless pre-approved, but could only assume that his supervisor, Ted Reese, had circulated a memorandum on the subject. *Id.* at 187:11-17. Pramik admitted that he applied the "pre-approval" policy differently than his former boss, Ted Reese. *Id.* at 363:15-364:2). Pramik occasionally "post-approved" overtime. *Id.* at 361:5-362:13. Pramik had no idea how managers outside his market enforced the policy requiring pre-approval for overtime. *Id.* at 189:10-23. |
| Prise, Deborah (Location Manager) | Policy that overtime would not be paid unless pre-approved within the Policy Manual. Prise Dep. Tr. (Day 1) at 148:18-149:24; Prise Dep. Tr. (Day 2) at 16:20-17:6. She didn't bother to try to get pre-approval because she didn't want to "whine and complain." Prise Dep. Tr. (Day 1) at 166:5-17. |

---

[**] Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved. Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Prise, Deborah (*cont'd*) | Does not recall any examples of asking for pre-approval and being denied. *Id.* at 168:11-21.<br><br>No one ever marked down her timesheets. *Id.* at 172:18-173:1. |
| Thomas, Sandy (Location Manager) | Never worked overtime that was not pre-approved. No employee who reported to him worked overtime that was not pre-approved. Does not recall not approving overtime requests for any hourly employee. Does not recall ever having his request to work overtime denied by his manager. Thomas Dep. Tr. at 57:9-58:2. |
| Weinstein, Stacey (Location Manager) | There was never an occasion where Weinstein requested pre-approval for overtime and it was denied. Weinstein Dep. Tr. (Day 1) at 41:14-20. |
| White, Raymond (Location Manager) | Never sought pre-approval to work overtime. Was unaware of an Alderwoods policy that required pre-approval of overtime. White Dep. Tr. at 95:12-96:4; 96:9-17. He was never told that only approved time would be paid. *Id.* at 97:22-24. |

---

[**]Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved. Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation. *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Ayling, Mary (Receptionist) | She was not required to obtain approval prior to working overtime.  Ayling Dec. ¶ 7.[v] |
| Ballard, Constance (Location Administrator) | Ballard rarely worked overtime.  She did so only if something came up in the office that had to be completed before the next work day.  Ballard Dec. ¶ 5.<br><br>She was always able to get approval from her manager for any overtime that she worked.  She was always paid for the overtime that she worked.  *Id.* ¶ 9. |
| Bollinger, Karen (Family Services Counselor) | She was not required to obtain approval from a supervisor before working overtime.  Bollinger Dec. ¶ 5. |
| Crisp, Donald (Funeral Director) | Alderwoods paid him for all the overtime he worked.  He does not recall any policy which required his overtime to be pre-approved, nor does he recall ever having his overtime not approved.  Crisp Dec. ¶ 7. |
| Elliott, James (Funeral Director) | Elliott was always paid for the overtime that he recorded.  He was not required to obtain pre-approval for overtime, though most of his overtime was scheduled in advance.  Elliott Dec. ¶ 4. |
| Fogg, Margaret (Location Administrator) | Employees were paid for time worked, even if they had not obtained pre-approval of their overtime.  Fogg Dec. ¶ 8. |
| Forrest, Wendy (Location Administrator) | Forrest was paid for the overtime that she worked even when she could not obtain pre-approval from a manager.  Forrest Dec. ¶ 6.<br><br>Forrest does not recall a pre-approval policy at Humphrey Mortuary.  *Id.* |
| Gibson, Jill (Funeral Arranger) | Gibson generally did not get pre-approval from her manager before working overtime because, when she was on-call, her manager was already aware that she would be working.  Gibson never experienced any problems in being paid for the overtime that she worked.  Gibson Dec. ¶ 8. |

***

**Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

**PRE-APPROVAL OF OVERTIME**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
| --- | --- |
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Goni, Helen<br>(Office Manager) | Never worked overtime.  Goni Dec. ¶ 5. |
| Hunt, Theodore<br>(Funeral Attendant) | Regional manager had to approve overtime.  He does not recall ever having an overtime request not approved, nor did Alderwoods fail to pay him for any overtime he worked which was not pre-approved. Hunt Dec. ¶ 7. |
| Jones, Regina<br>(Funeral Director) | Overtime was generally scheduled in advance, using an on-call rotation.  If Jones worked unscheduled overtime, she would let her manager know what she was doing.  Even if she could not get pre-approval from her manager, Jones was always paid for the overtime that she worked.  R. Jones Dec. ¶ 5. |
| Karneol, Rozlyn<br>(Assistant Administrator) | She always recorded and was always paid for the time that she worked.  Karneol Dec. ¶ 7. |
| Korell, Karee<br>(Funeral Director) | Does not recall any policy which required her overtime to be pre-approved, nor does she recall ever having her overtime not approved.  Alderwoods paid her for all the overtime she actually worked.  Korell Dec. ¶ 7. |
| LaPlaunt, Daniel<br>(Funeral Director) | Manager preferred that he checked with him before working overtime, but he does not recall any Alderwoods policy which required overtime to be pre-approved.  LaPlaunt Dec. ¶ 6.<br><br>Does not recall ever having his overtime not approved.  If he ever worked any overtime that his manager did not initially approve, he would be paid for working that overtime.  *Id.* |
| Laska, Robert<br>(Funeral Director) | Would check with his manager before working overtime.  Manager always approved his overtime.  If he ever worked any overtime that his manager did not initially approve, he would be paid for working that overtime. Laska Dec. ¶ 6. |
| Lay, John<br>(Funeral Attendant) | The practice under Alderwoods was to have overtime approved by the manager to allow him to manage employees' time.  There were occasions when Lay was unable to obtain approval before working overtime.  When this occurred, he was paid for the overtime that he worked.  Lay Dec. ¶ 8. |
| Luciano, Christopher<br>(Funeral Director,<br>Embalmer) | Luciano was not required to obtain pre-approval for overtime at Romano Funeral Home, but was required to do so later.  Never had any difficulty getting approval when he needed to work overtime.  Luciano Dec. ¶ 7.  Was always paid for overtime that he worked.  *Id.* ¶ 6. |

** Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

**PRE-APPROVAL OF OVERTIME**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences<br>Involving Pre-Approval Of Overtime** |
| Mann, Kelley<br>(Office Manager) | Generally, overtime was to be approved prior to working overtime.  Does not recall any instance where either she, or any other hourly employee, wasn't paid overtime that was not first pre-approved.  Mann Dec. ¶ 8. |
| Olsen, Judith<br>(Office Manager) | Overtime had to be pre-approved, but she never recalled her manager not approving her overtime.  If she worked overtime that was not pre-approved, she still would have been paid.  Olsen Dec. ¶ 7. |
| Patterson, William<br>(Funeral Director) | Pre-approval was not required to work overtime at Humphrey Mortuary.  Was fully paid for the overtime he worked, even if he did not receive pre-approval.  Patterson Dec. ¶ 4. |
| Powell, William<br>(Funeral Director) | Was not required to obtain pre-approval before working overtime.  Most overtime was worked on a schedule.  Was always paid for the time that he worked.  Powell Dec. ¶ 7. |
| Pruitt, Jeanne<br>(Office Administrator) | Did not have to obtain the approval of her manager before working overtime.  If she worked overtime that was not approved, she was always paid for it.  Pruitt Dec. ¶ 7. |
| Rogers, Kenneth<br>(Funeral Attendant) | Never worked any overtime at the funeral home.  Rogers Dec. ¶ 5. |
| Rosen, C. Josef<br>(Funeral Director) | Overtime did not require pre-approval from a manager.  Rosen recorded all the overtime he worked.  Rosen Dec. ¶ 8. |
| St. Laurent, Andy<br>(Grounds Supervisor) | Had to obtain prior approval from manager before working overtime.  St. Laurent Dec. ¶ 7.<br><br>Alderwoods paid him for all the overtime he worked.  *Id.*<br><br>Does not recall ever having overtime not approved, but if he ever worked overtime which was not previously approved, he would still be paid time-and-a-half for the overtime worked.  *Id.* |
| Sims, Mertie<br>(Office Manager) | Generally had to obtain pre-approval for overtime; however, if she worked overtime that was not approved she would always be paid for it.  Sims Dec. ¶ 7. |

---

**Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences<br>Involving Pre-Approval Of Overtime** |
| Strang, Robert<br>(Funeral Director,<br>Embalmer Intern) | Alderwoods paid him for all the overtime he worked.  Strang Dec. ¶ 7.<br><br>Does not recall any policy which required overtime to be pre-approved, nor does he recall ever having his overtime not approved.  *Id.* |
| Strintz, Jack<br>(Courier) | Never had to get prior approval for overtime, nor did Alderwoods fail to pay him for any overtime he worked which was not pre-approved.  Strintz Dec. ¶ 7. |
| Turnage, Brenda<br>(Assistant Administrator) | Turnage never worked any overtime for the Kiker-Seale Funeral Home.  Turnage Dec. ¶ 5. |
| Walsh, Cathy<br>(Administrative<br>Assistant) | Never had to get prior approval for overtime, nor did Alderwoods fail to pay her for overtime she worked which was not pre-approved.  Walsh Dec. ¶ 7. |
| Welch, Sharon<br>(Funeral Director<br>Apprentice) | Pre-approval was required by the Carr & Erwin Funeral Home depending on the situation.  If Welch stayed late to complete work she was already doing, she would ask for approval.  Was always paid for any overtime that she worked.  Welch Dec. ¶ 5. |
| Wentworth, Shirley<br>(Funeral Support Staff) | Never had to get prior approval for overtime, nor did Alderwoods fail to pay her for any overtime she worked which was not pre-approved.  Wentworth Dec. ¶ 7. |
| Windsor, Nancy<br>(Location Administrator) | Was always able to get approval for the overtime that she worked.  Was always paid for the overtime that she worked.  Windsor Dec. ¶ 5. |
| Young, Annette<br>(Assistant<br>Administrator/Musical<br>Director) | Young did not recall having to obtain approval to work overtime.  Was generally at the funeral home because she had been called in by a manager.  Young Dec. ¶ 5.  Was always paid for any overtime that she worked.  *Id.* |

---

**Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
| --- | --- |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences<br>Involving Pre-Approval Of Overtime** |
| Amiker, Ellaway<br>(Cemetery General<br>Manager) | He preferred hourly employees to obtain approval before working overtime, but because of the nature of the cemetery business, that was not always possible.  Amiker Dec. ¶ 5.<br><br>Hourly employees always paid for all overtime worked, even if it wasn't first approved by him.  *Id.* |
| Anton, George<br>(Location Manager) | Is unaware of any Alderwoods policy that encouraged or required managers not to pay overtime that was not pre-approved.  The hourly employees who reported to him were not required to obtain pre-approval for overtime.  Anton Dec. ¶ 9. |
| Clark, William<br>(Location Manager) | No pre-approval was required to work overtime at Baldwin-Lee Funeral Home.  Usually, there were only two funeral directors at each location, so Clark knew what each employee was doing.  The funeral home was generally under-budget on overtime.  Clark Dec. ¶ 4. |
| Clisby, Chad<br>(Location Manager) | Clisby does not recall a pre-approval policy for overtime.  He set schedules for employees' time and therefore usually knew ahead of time when overtime was to be worked.  If Clisby was not in the office, employees could work overtime without contacting him.  They were paid for any overtime worked, even if not pre-approved.  Clisby Dec. ¶ 5. |
| Collins, Ronald<br>(Vice President Northeast<br>United States) | Alderwoods required overtime to be pre-approved, but employees had to be paid for it regardless of whether it was pre-approved.  The point of the policy was to let managers assess whether overtime was necessary in advance.  Collins Dec. ¶ 13.[vi] |
| Crowe, Patrick<br>(General Manager) | Hourly employees he supervised were not required to obtain approval prior to working overtime.  Crowe Dec. ¶ 10. |
| Curnow, Brian<br>(General Manager) | Curnow was unaware of any Alderwoods policy that stated that employees should not be paid if they did not get their overtime pre-approved.  Curnow Dec. ¶ 10.<br><br>Employees at Powers Funeral Home were not required to obtain pre-approval for overtime from Curnow and were always paid for the overtime they worked.  *Id.*¶ 10-11. |

---

**Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| D'Andrea, Daniel (Location Manager) | He is unaware of any Alderwoods policy that encouraged or required managers not to pay overtime that was not pre-approved.  D'Andrea Dec. ¶ 9. <br><br> The hourly employees who reported to him were not required to obtain pre-approval for overtime.  *Id.* <br><br> In his experience, Alderwoods employees were always paid for the time they worked, including overtime.  *Id*. ¶ 10. |
| Dias, Joe (Location Manager) | Hourly employees who reported to him at his location were required to obtain pre-approval for overtime worked.  This was his policy, not an Alderwoods policy.  Dias Dec. ¶ 9. <br><br> He is not aware of any hourly employee who worked overtime and was not paid for that overtime.  *Id.* |
| Eagan, Charles (Location Manager) | Alderwoods' policy was for overtime to be pre-approved by managers.  He never had an issue with pre-approval at his location.  His employees were always paid for the overtime that they worked, even if they could not obtain approval from him beforehand.  Eagan Dec. ¶ 5. |
| Friden, Paul (Location Manager) | He does not recall any policy which required overtime to be pre-approved, nor does he recall ever having his overtime as an hourly employee not approved.  Friden Dec. ¶ 7. |
| Greeno, Donald (General Manager) | Employees under Greeno were required to obtain pre-approval before working overtime.  Even if the employee did not obtain pre-approval, Alderwoods would pay the employee for any overtime worked.  The employee might be subject to reprimand, but would always be paid.  Greeno Dec. ¶ 4. <br><br> Greeno never instructed his employees that overtime submitted without approval would not be paid.  *Id.* ¶ 5. |
| Harper, William Ray (General Manager) | Harper did not require that overtime be pre-approved.  Most overtime work was scheduled ahead of time.  Harper Dec. ¶ 4. <br><br> Employees were always paid for the hours that they worked, regardless of whether their time was pre-approved.  *Id.* |

---

** Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

**PRE-APPROVAL OF OVERTIME**

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
| --- | --- |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Harper, William Ray (*cont'd*) | Employees were not required to punch-in strictly at their start time; they could punch in earlier and be paid for the time they worked.  Harper Dec. ¶ 5. |
| Jones, Jay (Location Manager) | Jones was not required to get pre-approval from his manager before working overtime.  The funeral home only had two funeral directors for three locations, so his manager was aware that he often had to work overtime.  He was always paid for the overtime that he worked.  J. Jones Dec. ¶ 5.  Jones in unaware of an Alderwoods policy that required pre-approval of overtime.  *Id.* |
| Krueger, Richard (Location Manager) | Krueger did not require pre-approval of overtime.  When work needed to be done, it was understood that the employees would work overtime.  Employees were always paid the overtime that they worked.  Krueger Dec. ¶ 4. |
| Lawrence, Gloria (Location Manager) | As an hourly employee, Lawrence recorded any overtime that she worked.  Lawrence Dec. ¶ 5.  Manager required pre-approval, but Lawrence never had difficulty obtaining approval.  On the few occasions when she could not get approval beforehand, such as when her manager was not at the funeral home, Lawrence was always paid for the time that she worked.  *Id.* ¶ 7. |
| Mayes, Buddy (Vice President Southeastern United States) | Alderwoods required employees to get overtime pre-approved so managers could determine whether the overtime was necessary or whether the work could be done during business hours.  Policy was clear that if overtime was worked it had to be paid regardless of whether it was pre-approved.  Mayes Dec. ¶ 16.[vii] |
| McCarthy, Eleanor (Location Manager) | Is unaware of any Alderwoods policy that encouraged or required managers not to pay overtime that was not pre-approved.  The hourly employees who reported to her at the Sample Road Chapel were not required to obtain pre-approval for overtime worked during her tenure as Manager.  McCarthy Dec. ¶ 9. |
| Nowatka, Steven (Funeral Director) | Is unaware of any Alderwoods policy that encouraged or required managers not to pay overtime that was not pre-approved.  Nowatka Dec. ¶ 9. |

---

** Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
| --- | --- |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences<br>Involving Pre-Approval Of Overtime** |
| Nowatka, Steven (*cont'd*) | Hourly employees he supervised were supposed to obtain pre-approval from their Regional Manager for any substantial overtime that they worked.  Nominal overtime hours did not require pre-approval.  *Id.*<br><br>Alderwoods employees were always paid for the time they worked, including overtime.  Any overtime that required pre-approval was always approved.  If for some reason an overtime request was not approved, but an hourly employee worked that overtime anyway, the employee was paid for that overtime.  *Id.* ¶ 10. |
| Phillips, Shawn (Vice President Western United States) | Alderwoods required overtime to be pre-approved, but employees had to be paid for it regardless of whether it was pre-approved.  The point of the policy was to let manager assess whether overtime was necessary in advance, not as a way to avoid paying it after it was worked.  Phillips Dec. ¶ 14.[viii] |
| Porte, Kelly (Assistant Manager) | Did not have to ask her manager for approval to work overtime.  Was paid for the overtime she recorded.  Porte Dec. ¶ 5. |
| Rizzotto, Michael (Location Manager) | Hourly employees who reported to him were not required to obtain his approval prior to working overtime.  Rizzotto Dec. ¶ 8.<br><br>Not aware of any Alderwoods policy that encouraged or required managers not to pay overtime that was not pre-approved.  *Id.* |
| Schwab, Roxann (General Manager) | No Alderwoods policy permitted an employee who had not received pre-approval for overtime to not be paid for time worked.  Schwab Dec. ¶ 7.<br><br>Pre-approval was not the normal policy, but was only required at problem locations that had been recording unusually heavy overtime.  Employees were always paid for the time they worked, even if it was not pre-approved.  *Id.*<br><br>Does not recall any of her local managers stating that overtime submitted without approval would not be paid.  *Id.* ¶ 8. |

---

**Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.

PRE-APPROVAL OF OVERTIME

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING PRE-APPROVAL OF OVERTIME | |
| --- | --- |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving Pre-Approval Of Overtime** |
| Schwinghamer, Steven (Location Manager) | Did not require employees to obtain pre-approval of overtime.  Employees were always paid for the overtime they worked, even if not pre-approved.  Never told employees that they would only be paid for overtime that he approved.  Schwinghamer Dec. ¶ 5. |
| Warn, Robin (General Manager) | Pre-approval was rarely necessary at Lakewood Cemetery because the maintenance staff worked on a schedule, and if a funeral was running late, they would let the manager know.  Employees were always paid for any overtime they worked, even if they were not able to get approval from the manager first.  Warn Dec. ¶ 5.<br><br>Clerical staff at the Lakewood Cemetery did not work overtime.  *Id.* ¶ 6. |

---

[i] By identifying employees has having "non-exempt" job positions, Alderwoods does not waive and expressly reserves the right to argue that these positions qualify as exempt job positions.

[ii] *See* Brent Knight Declaration Exhibit N for a compilation of all deposition transcript excerpts cited herein.

[iii] For purposes of this analysis, Millard Daigle is listed among the management deponents although he also held non-exempt, hourly positions at Alderwoods.  The same holds true for Deborah Prise.

[iv] For purposes of this analysis, Barry Miles is listed among the management deponents although he was paid on an hourly basis as a manager.  The same holds true for Sandy Thomas, Stacey Weinstein and Raymond White.

[v] *See* Brent Knight Declaration Exhibit O for a compilation of all field employee declarations cited herein.

[vi] Attached to Brent Knight Declaration as Exhibit P.

[vii] Attached to Brent Knight Declaration as Exhibit Q.

[viii] Attached to Brent Knight Declaration as Exhibit R.

---

[**]Plaintiffs represented to the Court that Alderwoods did not pay any non-exempt employee for any overtime that was not pre-approved.  Plaintiffs further represented that Alderwoods' management permitted all non-exempt employees to routinely work overtime hours that had not been pre-approved, and then crossed that time off of time sheets or failed to submit the time to payroll for compensation.  *See* Plaintiffs' Notice of Motion and Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23; Memorandum in Support at 17-19.