**Exhibit I**

# CONTRADICTIONS

## TABLE OF CONTENTS

| | Page |
|---|---|
| **NON-EXEMPT EMPLOYEES** | 1-8 |
| **MANAGEMENT EMPLOYEES** | 9-17 |

**CONTRADICTIONS**

| NON-EXEMPT EMPLOYEES[i] | | |
|---|---|---|
| **Non-Exempt Employee** | **Representation** | **Contradiction** |
| Breindel, Michele (Family Service Counselor) | "Alderwoods permitted me," a Family Service Counselor, "to perform on-call work after regular work hours and I was not compensated for at least some of such time." Breindel Information Sheet at B.[ii] | It would not be possible for a family service counselor at Breindel's location to work on call. Weinstein II Dep. Tr. at 30:14-25.[iii] |
| Burgess, Jason (Funeral Director, Embalmer) | "Through policies . . . communicated verbally and in writing, Alderwoods encouraged employees to perform work in the community." Burgess Interrog. Responses at 5.[iv] | Admitted in deposition that the statement was inaccurate because he never saw a written policy regarding community work. Burgess Dep. Tr. at 235:7-237:3. |
| | Estimated that he is owed compensation for eight hours per month for attending church. *Id.* at 6. | Admitted in deposition that the estimate was inaccurate and should have been ten hours per year. *Id.* at 239:3-241:3. |
| Butler, Michael (Arranger) | The "community work" for which he seeks compensation includes six hours per month he spent involved with his church. *Prise* Plaintiffs' Nov. 21, 2008 Suppl. Interrog. Responses at 15. | Withdrew this aspect of his claim and stipulated that he is not seeking any compensation related to his church activities. Butler Dep. Tr. at 85:11-88:13. |
| Carswell, Shane (Funeral Director) | "I also knew of several other employees in other job titles who were subject to the pre-approval for overtime policy. For example, support staff and secretaries who worked at the same location as me were not paid overtime unless that overtime was pre-approved. I was also aware that an apprentice who worked at the Sample Road location in Florida, worked overtime for which she was not compensated because it was not pre-approved." Carswell Aff. (Jun. 12, 2008) ¶ 6.[v] | Admitted he did *not* know any other Alderwoods employees who were not compensated for overtime hours that were not pre-approved. Carswell Dep. Tr. at 189:8-192:22. |
| Detschner, Steven (Funeral Director, Embalmer) | "Alderwoods would only pay employees to attend training if it occurred during their regularly scheduled shifts. . . . I was required to attend training that did not occur during my regularly scheduled shift and I was not compensated for that time." Detschner Aff. ¶¶ 11-12. | Admitted he reported and was paid for training, including continuing education and CPR training, that he attended on his days off and after his regularly scheduled shift. Detschner Dep. Tr. at 111:11-113:14; Detschner Time Sheets.[vi] |

**CONTRADICTIONS**

| NON-EXEMPT EMPLOYEES[i] | | |
|---|---|---|
| **Non-Exempt Employee** | **Representation** | **Contradiction** |
| Diggs, Jeffrey (Funeral Director, Embalmer) | "I believe I was not compensated for all the hours I spent working . . . because those hours were not pre-approved." Diggs Information Sheet at D. | Was not required to seek approval before working overtime; not aware of any company policy requiring employees to get approval before working overtime; did, in fact, work overtime without receiving his manager's approval and was paid anyway. Diggs Dep. Tr. at 131:1-7, 9-12; 130:23-25; 142:21-23. |
| Durden, James (Funeral Director, Embalmer) | Represented on one Information Sheet that "I was not compensated for all the hours I spent working . . . because those hours were not pre-approved." Durden Oct. 22, 2007 Information Sheet at D. | Represented on another Information Sheet that he had no "pre-approved" claim. Durden Oct. 8, 2007 Information Sheet at D. |
| | Represented on one Information Sheet that "I received compensation in addition to my hourly rate, such as bonuses, commissions, and other forms of additional pay that Alderwoods did not include when calculating overtime due to me." *Id.* at E. | Represented on another Information Sheet that he had no "overtime calculation" claim. *Id.* at E. |
| Garza, Joe (Funeral Services Support L4) | "I believe I received compensation in addition to my hourly rate, such as bonuses, commissions, and other forms of additional pay that Alderwoods did not include when calculating overtime due to me." Garza Information Sheet at I. | Did not receive any bonus, commission, or awards from Alderwoods and is not making a claim related to the same. Garza Dep. Tr. at 57:20-58:9; 90:20-91:1; 118:9-119:11. |
| Gonzales, Donna (Assistant Funeral Director) | "In addition to the on-call work, plaintiff also performed other overtime work that was not compensated because it was not approved. Plaintiff recalls that she performed work during her meal breaks for the entire period of her employment . . . for which she was not compensated." *Prise* Plaintiffs' Nov. 21, 2008 Suppl. Interrog. Responses at 7. | Disagreed with the statement that there were some times her overtime was not paid because it was not pre-approved. Gonzales Dep. Tr. at 185:24-186:2.<br><br>Was not required to get approval to work through a meal break. *Id.* at 171:25-172:2.<br><br>Uncompensated meal break claim applies to only a portion of her employment. *Id.* at 170:23-171:1. |

**CONTRADICTIONS**

| NON-EXEMPT EMPLOYEES[i] | | |
|---|---|---|
| **Non-Exempt Employee** | **Representation** | **Contradiction** |
| Jones, Robert (Funeral Director) | "I was aware that this community work policy was a nationwide company policy." Jones Aff. ¶ 13. | Not aware of any community service requirement that was imposed by Alderwoods at any other facilities. Jones Dep. Tr. at 187:24-188:3. |
| | "While I worked for Alderwoods, I was involved in community organizations." *Id*. ¶ 10. | Seeks compensation only for work performed for the Lions Club between 1996 and 1998, at a time when Alderwoods did not exist. *Id.* at 177:3-180:21. |
| Keath, Angela (Location Administrator) | "I believe Alderwoods permitted me to perform on-call work after regular work hours and I was not compensated for at least some of such time." Keath Information Sheet at B. | Was never on-call and never performed on-call work. Keath Dep. Tr. at 184:10-19; 216:5-12.<br><br>Has no individual claim for uncompensated on-call work. *Id.* at 184:13-16.<br><br>Not aware of any Location Administrators who were on-call. *Id.* at 185:16-18. |
| | "While I was employed by Alderwoods, I was aware that Alderwoods had a pre-approval for overtime policy. Under that policy hourly employees were not compensated for overtime unless the overtime was pre-approved." Keath Aff. ¶ 6. | Does not know whether other Alderwoods employees were not compensated for overtime hours because they were not pre-approved. *Id.* at 151:17-152:7. |
| | "I believe I received compensation in addition to my hourly rate, such as bonuses, commissions, and other forms of additional pay that Alderwoods did not include when calculating overtime due to me during the period December 8, 2003 to the present." Keath Information Sheet at I. | Only form of compensation she received other than her hourly rate and overtime pay was a bonus of less than $50. Keath Dep. Tr. at 93:21-94:16.<br><br>Not claiming that her bonus was improperly excluded from calculating her overtime pay rate; not claiming that there should have been any other pay that should have been used to calculate her overtime rate; has no claim in the lawsuit related to her bonus. *Id.* at 156:1-21. |

**CONTRADICTIONS**

| NON-EXEMPT EMPLOYEES[i] | | |
|---|---|---|
| **Non-Exempt Employee** | **Representation** | **Contradiction** |
| Kuhta, Richard (Funeral Director, Embalmer) | "While I was employed by Alderwoods, I was aware that Alderwoods had a pre-approval for overtime policy. Under that policy hourly employees were not compensated for overtime unless they were pre-approved for paid overtime." Kuhta Aff. (Apr., 2008) ¶ 5; Kuhta Aff. (Jun. 12, 2008) ¶ 2. | Not aware of what happened with other employees with regard to their pay or overtime. Kuhta Dep. Tr. at 84:25-85:16.<br><br>Does not know whether there was any policy under which employees who did not get their overtime hours pre-approved were not compensated for them. *Id.* at 90:20-91:7; 93:23-94:9; 95:12-17. |
| | "I learned about the pre-approval policy through a memorandum I received from someone at Alderwoods' regional level." Kuhta Aff. (Apr., 2008) ¶ 6. | Could not identify a specific memorandum regarding pre-approval and did not recall the particular memorandum or its contents. *Id.* at 85:22-86:5; 86:18-20. |
| | "Additionally, my regional manager, Michael Blasberg, said that he would not pay employees overtime." *Id*. | Could not say that Michael Blasberg ever said that he would not pay employees overtime. *Id.* at 86:24-87:4. |
| | "I believe that, as part of my job duties for Alderwoods, I spent time training for and taking a test to become a licensed insurance agent, and time maintaining that license, that I was not compensated for." Kuhta Information Sheet at C. | No individual claims regarding any compensable time related to any insurance agent license (including for time spent obtaining or maintaining such license), as he waived and/or withdrew any such claims on the record in his deposition. *Id.* at 118:2-119:18. |
| Lanza, Michael (Apprentice Funeral Director, Embalmer) | "I was also evaluated on my participation in community work." Lanza Aff. ¶ 11. | Was never evaluated on participation in community work. Lanza Dep. Tr. at 203:9-12. |
| McDonald, Beverly (Funeral Director) | "I believe that, as part of my job duties for Alderwoods, I spent time training for and taking a test to become a licensed insurance agent, and time maintaining that license, that I was not compensated for." McDonald Information Sheet at C. | Obtained her license prior to her employment with Alderwoods and, other than requiring that state law requirements be followed, Alderwoods did not have any requirements for keeping an insurance license and did not require any "keeping our license training[,]" and she is not aware of any training requirements under Texas state law for maintaining her insurance license. McDonald Dep. Tr. at 170:3-15; 171:14-20; 172:7-13; 172:25-173:2; 173:16-23. |

**CONTRADICTIONS**

| NON-EXEMPT EMPLOYEES[i] | | |
|---|---|---|
| **Non-Exempt Employee** | **Representation** | **Contradiction** |
| Ore, William (Apprentice Funeral Director, Embalmer) | "I received compensation in addition to my hourly rate, such as bonuses, commissions, and other forms of additional pay that Alderwoods did not include when calculating overtime due to me." Ore Information Sheet at E. | Testified that he has no overtime calculation claim. Ore Dep. Tr. at 143:14-145:19. |
| | Stayed late for visitations at night for which he was not compensated. *Prise* Plaintiffs' Nov. 21, 2008 Suppl. Interrog. Responses at 19. | Admitted in deposition that he never worked visitations. *Id.* at 157:1-158:2. |
| | Supplemental interrogatory responses state that he spent approximately 12 hours per year for his entire employment completing his continuing education requirements to maintain his funeral director license for which he was not compensated. *Id.* at 20. | Admitted in deposition that he never had a funeral director's license, and thus his interrogatory response was incorrect. *Id.* at 167:2-24. |
| | Supplemental interrogatory responses state that he spent 30 hours per year preparing for and conducting safety and health training for which he was not compensated. *Id.* at 20. | Admitted in deposition that interrogatory response was inaccurate because he did not have such responsibilities when he was hired. *Id.* at 169:8-23. |
| | Alderwoods required employees, including Plaintiff, through policies communicated verbally and in writing to obtain approval in order to be compensated for overtime. *Id.* at 19. | Admitted in deposition that never saw such a policy. *Id.* at 179:15-180:4. |
| | He spent one hour per week for the entire period of his employment answering calls while on-call for which he was not compensated. *Id.* at 19. | Admitted that interrogatory response was inaccurate because he was paid for time recorded on phone sheets. *Id.* at 181:2-182:21. |
| | He spent approximately 12 hours per year performing community work for which he was not compensated. *Id.* at 19. | Admitted in deposition that estimate of time performing community service work was inaccurate. *Id.* at 194:9-196:3. |
| | His manager, or secretary at his manager's direction, punched out his time card. Ore Interrog. Responses at 6. | Admitted in deposition that this was an incorrect statement. *Id.* at 196:23-197:25. |

**CONTRADICTIONS**

| NON-EXEMPT EMPLOYEES[i] | | |
|---|---|---|
| **Non-Exempt Employee** | **Representation** | **Contradiction** |
| Peters, John (Funeral Director) | "I received compensation in addition to my hourly rate, such as bonuses, commissions, and other forms of additional pay that Alderwoods did not include when calculating overtime due to me." Peters Information Sheet at E. | Did not understand Section E of the information sheet and stated "I did not check this off," testifying that someone else had checked off the claims on his Information Sheet. Peters Dep. Tr. at 164:1-167:14. |
| Rady, Heather (Funeral Director, Embalmer) | "Employees . . . were not paid for community work performed outside the regular work day . . . ." Rady Aff. ¶ 14. | Was paid for attending Rotary Club and participation in adopt-a-highway program. Rady Dep. Tr. at 68:8-20, 178:23-179:22.<br><br>Was paid for working petting zoo and for other community service performed outside normal work hours. *Id.* at 61:14-62:9; 67:23-68:25. |
| Reddick, Jack (Assistant Funeral Director) | "While I worked for Alderwoods, I spent 24 hours a day for 7 days a week on call." Reddick Aff. ¶ 16. | Admitted in deposition that the instruction he received from manager David Hill was to be available when Hill worked weekends on call. Reddick Dep. Tr. at 66:9-67:5. |
| | "[T]he Company had a company-wide policy requiring hourly employees . . . to belong to at least one outside community organization." *Id.* ¶ 6. | Testified that it was "suggested" he belong to a community service organization. *Id.* at 229:17-230:6. |
| | Testified repeatedly that he did not record time spent at a community activity on community participation sheet. Reddick Dep. Tr. at 98:3-16; 103:7-15; 160:10-20; 162:3-5; 196:14-18; 234:4-6. | Later changed testimony, stating that he "thought" he recorded the time. *Id.* at 238:12-22. |
| | "[T]he Company had an on-call policy requiring funeral directors and assistant funeral directors to spend time on call." Reddick Aff. ¶ 15. | Admitted in deposition that he never saw a such a written policy. *Id.* at 134:17-135:23. Further admitted that no separate policy regarding on call work existed, he is only aware of references to on-call work in hiring requirements. *Id.* at 239:2-241:25. |
| | "I also spoke with a number of other funeral directors in other Alderwoods locations who also indicated that they were not paid for time spent on call." *Id.* ¶ 18. | Testified that other funeral directors he spoke with complained that they were not paid for time on call while *not* performing an on-call tasks. *Id*. at 242:4-244:3. |

**CONTRADICTIONS**

| NON-EXEMPT EMPLOYEES[i] | | |
|---|---|---|
| **Non-Exempt Employee** | **Representation** | **Contradiction** |
| Reddick, Jack (*cont'd.*) | No written pre-approval for overtime policy existed other than a memo from his manager. Reddick Dep. Tr. at 142:9-14. | The company maintained a written policy regarding pre-approval for overtime in its policies and procedures manual. *Id*. at 245:4-21. |
| | "I am also aware of other employees who were not compensated for overtime unless it was not pre-approved. Reddick Aff. ¶ 22. | Testified that his claimed knowledge of other employees not being compensated for overtime that was not pre-approved is "hearsay." *Id*. at 249:2-18. |
| | Under the "pre-approval for overtime policy . . . hourly employees were not compensated for overtime unless the overtime was pre-approved." *Id*. ¶ 19. | Testified that he never sought pre-approval for overtime and that the "policy" was not enforced. *Id*. at 135:24-138:3; 145:13-146:23. |
| Riggs, Stephanie (Funeral Director) | "Alderwoods permitted me to perform on-call work after regular work hours and at least some of the time was not paid for by Alderwoods." Riggs Information Sheet at B. | Riggs' time records reveal that she kept a Weekly Payroll Telephone Log Report and reported time spent handling after hours phone calls as early as 2004. Riggs Weekly Payroll Telephone Log Reports. |
| Schabloski, John (Funeral Director, Embalmer) | "Through company policies and practices, which were communicated verbally and in writing, Alderwoods encouraged employees to perform work in the community." *Prise* Plaintiffs' Nov. 21, 2008 Suppl. Interrog. Responses at 8. | Admitted in deposition that he never saw a policy regarding community service in writing during time he was an Alderwoods employee. Schabloski Dep. Tr. at 132:23-133:14; 158:15-159:1. |
| | Estimates amount of community organization work performed over the entire period of Schabloski's employment with Alderwoods. *Id*. at 8. | Admitted in deposition that interrogatory response is inaccurate because there was a period of his employment during which he had no community involvement. *Id*. at 161:22-162:10. |
| | "Through company policies, which were communicated verbally and in writing, Alderwoods required employees, including plaintiff, to work on call shifts." *Id*. | Admitted in deposition that he had never seen a written policy regarding on-call work. *Id*. at 93:19-22; 163:7-18. |
| Takesian, Stephen (Family Service Professional) | "Alderwoods permitted me to perform on-call work after regular work hours and I was not compensated for at least some of such time." Takesian Information Sheet at B. | Never worked on-call. Takesian Dep. Tr. at 126:19-20; 168:20-169:6. |

**CONTRADICTIONS**

| NON-EXEMPT EMPLOYEES[i] | | |
|---|---|---|
| **Non-Exempt Employee** | **Representation** | **Contradiction** |
| Taylor, Tori (Family Service Counselor) | Represented on one Information Sheet that she had a claim for community services, on-call work, training time, un-pre-approved time and unrecorded work time. Taylor May 24, 2008 Information Sheet at A, B, D, G, H. | Represented on another Information Sheet that she did not have a claim for community services, on-call work, training time, un-pre-approved time and unrecorded work time. Taylor May 5, 2008 Information Sheet at A, B, D, G, H. |
| Wilkinson, Jack (Funeral Director) | "Through company policies and practices, which were communicated verbally and in writing, Alderwoods required employees, including plaintiff, to work on call shifts." *Prise* Plaintiffs' Nov. 21, 2008 Suppl. Interrog. Responses at 6. | Admitted in deposition that he did not recall a written policy regarding on-call work. Wilkinson Dep. Tr. at 139:8-24. |

**CONTRADICTIONS**

| MANAGEMENT EMPLOYEES[vii] | | |
|---|---|---|
| **Management Employee** | **Representations** | **Contradictions** |
| Bath, Herbert (General Manager) | "[U]nder the Alderwoods corporate policy community work was an expectation but was never compensated." Bath Aff. ¶ 15. | Employees were paid for community work done during regular business hours. Bath Dep. Tr. at 171:8-21.<br><br>Hourly employees who assisted with community events were compensated on some occasions. *Id.* at 193:1-195:14. |
| | "If an employee worked on their training hours away from the funeral home and outside the regular work day, then it was not paid for by Alderwoods." *Id.* ¶ 26. | Never refused to pay an employee who trained away from funeral home or outside of scheduled work hours. *Id.* at 256:10-19.<br><br>No knowledge as to whether employees at locations other than the ones for which he had management responsibility worked training hours away from the funeral home or outside the regular workday; or whether they reported that time; or whether they were compensated for that time. *Id.* at 306:3-15. |
| Burkle, Clark (Location Manager) | "As part of my job duties for Alderwoods, the company permitted me to perform community service and some of the time was not paid for." Burkle Information Sheet at A. | Admitted in deposition that he is not seeking compensation for community service activities. Burkle Dep. Tr. at 82:23-84:19. |
| | "I believe I was not compensated for all the hours I spent working . . . because those hours were not pre-approved." *Id.* at D. | Admitted in deposition that he is no longer pursuing any pre-approval for overtime claim. *Id.* at 86:3-20. |
| | "I believe I received compensation in addition to my hourly rate, such as bonuses, commissions, and other forms of additional pay that Alderwoods did not include when calculating overtime due to me." *Id.* at E. | Admitted in deposition that he has no overtime calculation claim. *Id.* at 86:21-87:14. |

**CONTRADICTIONS**

| MANAGEMENT EMPLOYEES[vii] | | |
|---|---|---|
| **Management Employee** | **Representations** | **Contradictions** |
| Burkle, Clark (*cont'd.*) | "Through policies . . . communicated verbally and in writing, Alderwoods encouraged employees to perform work in the community." Burkle Interrog. Responses at 5. | Admitted in deposition that he never saw such a policy in writing nor, as an hourly employee, was he ever verbally encouraged to participate or perform work in the community. *Id.* at 95:9-25. |
| | "[B]ecause of the company wide nature of these policies, plaintiff identifies employees at other facilities as being [able] to testify as to these policies." *Id.* at 7. | Admitted in deposition that he has no knowledge of the scope of any policies-i.e. whether they applied only to Gorsline Funeral Home or beyond Gorsline. *Id.* at 100:4-22. |
| Daigle, Millard (Assistant Manager) | "I believe that, as part of my job duties for Alderwoods, I spent time training for and taking a test to become a licensed insurance agent, and time maintaining that license, and that I was not compensated for at least some of such time." Daigle Information Sheet at E. | Did not hold an insurance agent license during his employment with Alderwoods. Daigle Dep. Tr. at 210:10-14; 210:25-211:4. |
| | "While I was employed by Alderwoods, I was aware that Alderwoods had a pre-approval for overtime policy. Under that policy hourly employees were not compensated for overtime unless they were pre-approved for paid overtime." Daigle Aff. ¶ 6. | Cannot ever remember his Alderwoods managers discussing pre-approval; there was never a discussion about pre-approval; the discussion was about working 40 hours a week – not about pre-approval. *Id.* at 76:4-84:14; 154:10-19; 155:25-156:8.<br><br>Was never told and is not aware of any other employee being told that overtime had to be approved in order to be paid. *Id.* at 85:23-86:2. |
| Hensley, Ric (Location Manager) | "This company-wide policy required employees to volunteer their time to outside community organizations and events. . . . Alderwoods required me as a General Manager to ensure that all employees complied with the Community Work Policy at their locations." Hensley Aff. ¶¶ 12, 20. | Not all employees got involved in community service and those who did participate were primarily managers. Hensley Dep. Tr. at 50:2-22.<br><br>Employees could elect not to get involved in community service, and there were no consequences. *Id.* at 54:20-55:8. |

PII-1205911v1     -10-

**CONTRADICTIONS**

| MANAGEMENT EMPLOYEES[vii] | | |
|---|---|---|
| **Management Employee** | **Representations** | **Contradictions** |
| Hensley, Ric (*cont'd.*) | "I knew about this policy from a variety of sources. For example, as a General Manager I was told on a conference call by the Regional Manager Mitchell Gerth, that this Community Work Policy was a new *nationwide* company policy. . . ." *Id.* ¶ 14 (emphasis added). | In the conference call Hensley had with Regional Manager Mitchell Gerth in which the Alderwoods Community Work policy was discussed, Gerth was talking about *Hensley's specific group*, meaning the employees at the five locations under Hensley's management as General Manager. *Id.* at 64:2-66:2. |
| | "Funeral directors were required to obtain and maintain their licenses in compliance with Tennessee state law. Alderwoods paid the costs involved in completing the licensing requirements *but Funeral Directors were not paid for the time spent completing the work*. As part of the requirement, they had to complete ten continuing education hours of training every two years. *Id.* ¶ 27 (emphasis added). | A lot of funeral directors went online to get their continuing education, and a lot of them would do it on the clock; if they did so, they would be paid for it. *Id.* at 97:15-98:2.<br><br>Does not know whether there are and is not aware of any funeral directors who reported to him as general manager who performed their funeral director continuing education hours outside of regular business hours who were not paid for time spent getting their continuing education. *Id.* at 99:12-100:22; 104:8-11. |
| | "If an employee worked on their training hours away from the funeral home and outside the regular work day, then it was not paid for by Alderwoods." *Id.* ¶ 28. | Other than continuing education performed outside of regular hours by funeral directors, he is not aware of any other training time that was not compensated by Alderwoods while he was a general manager or any policy providing that employees are not paid for training time. *Id.* at 106:5-17. |
| Kamienski, Richard (General Manager) | "This company-wide policy required employees to volunteer their time to outside community organizations and events. . . . All employees were required to perform community work in the 'name of Alderwoods' to promote the funeral home." Kamienski Aff. ¶¶ 12, 17. | 90% of employees did not participate or perform any community service; such employees were not reprimanded or disciplined, and they faced no consequences whatsoever. Kamienski Dep. Tr. at 143:12-144:24. |

**CONTRADICTIONS**

| MANGEMENT EMPLOYEES[vii] | | |
|---|---|---|
| **Management Employee** | **Representations** | **Contradictions** |
| Kamienski, Richard (*cont'd.*) | "In the annual performance evaluation, employees were evaluated on how much community work they had completed that year." *Id.* ¶ 18. | Employees were not evaluated on community service. *Id.* at 147:9-25. |
| Miles, Barry (Location Manager) | Was paid a maximum of 15 minutes per phone call and three hours per removal regardless of how long these tasks actually lasted. Miles Dep. Tr. at 185:7-186:8. | Miles' time cards show that he reported and was paid for actual time on calls exceeding 15 minutes and actual time on removals exceeding 3 hours. Miles Dep. Tr. at 206:12-210:23; 215:6-21. |
| | "[P]laintiff also performed other overtime work that was not compensated because it was not approved." *Prise* Nov. 21, 2008 Suppl. Interrog. Responses at 13. | Testified that overtime never had to be pre-approved. *Id.* at 283:18-284:12. |
| Pramik, Robert (Market Growth Manager) | The written policy on pre-approval for overtime policy was maintained by Alderwoods in written matter. Pramik Aff. (Jun. 13, 2008) ¶ 6. | Not aware if the "pre-approval" policy was in the Alderwoods policy and procedures binders. Pramik Dep. Tr. at 199:16-200:4. Did not recall seeing a written policy stating that overtime would not be paid unless pre-approved, but could only assume that his supervisor, Ted Reese, had circulated a memorandum on the subject. *Id.* at 187:11-17. |
| | As market general manager, he informed staff that any overtime submitted without approval would not be paid. Pramik Aff. (Feb. 7, 2007) ¶ 34. | Pramik admitted that he applied the "pre-approval" policy differently than his former boss, Ted Reese. *Id.* at 363:15-364:2. Pramik occasionally "post-approved" overtime. *Id.* at 361:5-362:13. |
| | The "meal break" policy applied to "all hourly employees, regardless of location or job title." Pramik Aff. (Jun. 13, 2008) ¶ 12. | The "meal break policy" only applied to funeral directors. Non-funeral director employees always got to take their lunch. *Id.* at 212:1-5, 12-14. |
| | On "most days employees either did not take a lunch, or it was significantly interrupted." Pramik Aff. (Apr. 30, 2009) ¶ 16. | Non-funeral director employees always got to take their lunch. *Id.* |

**CONTRADICTIONS**

| MANGEMENT EMPLOYEES[vii] | | |
|---|---|---|
| **Management Employee** | **Representations** | **Contradictions** |
| Pramik, Robert (*cont'd.*) | The meal break policy was a "company-wide" policy. Pramik Aff. (Jun. 13, 2008) ¶ 12. | Pramik was not told when he became market general manager that he should dock pay for missed lunches. *Id.* at 210:21-211:17. He did not deduct lunch breaks from his employees' pay if they had not taken a lunch. *Id.* at 208:18-24; 209:1. He was not aware of how the meal break policy was implemented in other market areas. *Id.* at 209:6-14. |
| | Alderwoods "had a company-wide policy" requiring employees to attend various types of training. *Id.* ¶¶ 14, 16. | Admitted that he did not know what the Alderwoods policy was with regard to paying for time spent at funeral directors' continuing education courses. *Id.* at 222:20-23. |
| | The "community work policy" required at least "hourly employees, such as funeral directors to belong to one outside community organization." Pramik Aff. (Feb. 7, 2007) ¶ 8. | He testified that the community work policy applied only to funeral directors. Non-funeral director hourly employees were only encouraged, not required to belong to at least one outside community organization. *Id.* at 85:9-19; 115:17-20. |
| | The "community work policy" was "company-wide." *Id.* | Pramik had no knowledge of what employees were told in other markets regarding the community work policy. *Id.* at 119:21-120:3. He had no knowledge of what actions, if any, were taken against employees in other markets who did not participate in community activities. *Id.* at 120:12-17. He had no knowledge of whether employees outside his market were paid for time spent performing community work. *Id.* at 139:1-5. |

**CONTRADICTIONS**

| MANAGEMENT EMPLOYEES[vii] | | |
|---|---|---|
| **Management Employee** | **Representations** | **Contradictions** |
| Pramik, Robert (*cont'd.*) | Community work was "mandated." *Id.* ¶ 10. | Pramik testified that he did not warn any employees that they could be terminated if they did not follow the community work policy. *Id.* at 119:8-12. He admitted that there was no discipline if an employee skipped a meeting of a community organization to which they belonged. The employees were never disciplined for not being active enough in the organization. *Id.* at 112:21-23; 113:20-22. |
| | Attested to the existence of a "company-wide policy requiring licensed funeral directors" to become licensed insurance agents in states where pre-need funeral sales could be funded by insurance. *Id.* ¶ 21. | Pramik admitted he had no knowledge of whether funeral directors outside the Harrisburg market received insurance licenses. *Id.* at 159:18-23. He further admitted that several funeral directors who reported to him did not have their insurance licenses. *Id.* at 160:5-25.<br><br>Pramik never disciplined his funeral directors who did not have insurance licenses. *Id.* at 161:14-19. He was not aware that they were ever disciplined by anyone in Alderwoods. *Id.* at 161:25-162:6. |
| | Attested that Alderwoods "maintained a company-wide on call policy." *Id.* ¶ 18. | Pramik admitted that the "on-call" policy applied only to funeral directors, not part-time employees. *Id.* at 140:14-16, 141:21-142:16.<br><br>He only learned of the "on-call" policy from his supervisor, Ted Reese. *Id.* at 146:8-12. There was no company-wide meeting that Pramik attended where this policy was discussed. *Id.* at 148:18-149:3.<br><br>He admitted that he was unaware of what the on-call policy was for markets outside Harrisburg. *Id.* at 143:15-20. |

**CONTRADICTIONS**

| MANGEMENT EMPLOYEES[vii] | | |
|---|---|---|
| **Management Employee** | **Representations** | **Contradictions** |
| Pramik, Robert (*cont'd.*) | Was not compensated for community work that he performed for Alderwoods, for on-call work after hours, for training that he attended, or for non-approved overtime after December 8, 2003. Pramik Information Sheet at A, B, C, G. | He admitted that he was a salaried manager throughout the relevant time period. *Id.* at 31:6-12; 17-24. |
| Prise, Deborah (Location Manager) | "Employees . . . were not paid for community work performed outside the regular work day . . . ." Prise Aff. (Dec. 7, 2006) ¶ 18. | Was "partially" granted pre-approval and paid for attending a cocktail party outside business hours. Prise (Day 1) Dep. Tr. at 88:22-89:14. |
| Thomas, Sandy (Location Manager) | "As part of my job duties for Alderwoods, the company permitted me to perform community service and I was not compensated for at least some of such time." Thomas Oct. 10, 2007 Information Sheet at A. | Represented on another Information Sheet that he had no claim for unpaid community service time. Thomas Aug. 21, 2007 Information Sheet at A. |
| | Employees were not authorized to be paid if they wrote "no lunch" on their timecards; he would not approve overtime because an employee was simply "busy"; and, as a rule of thumb, he was instructed not to report more than six or seven hours of overtime. Thomas Dep. Tr. at 34:14-21; 115:9-116:5. | Time cards of Thomas and employees he supervised reveal that Thomas did sign and approve "no lunch" entries for payment; Thomas did sign and approve overtime worked by employees who were "busy"; and Thomas himself reported upwards of 61 hours of overtime in a week. Bell, Kulaga and Thomas Time Cards. |
| | "I prepared for and completed mandatory online trainings that were completed outside the regular workday and was not compensated for my time. The Company was aware that I completed these trainings because my manager monitored my progress." Thomas Aff. ¶ 15. | Admitted that he never completed any online training whatsoever as an employee of Alderwoods. Thomas Dep. Tr. at 8:18-9:6; 105:12-23. |
| | "This corporate On Call Pay Policy meant that Alderwoods employees were paid for only part of the work they did while on call . . . I had conversations with co-workers and employees at other locations who expressed they were similarly experiencing the On Call Pay Policy." Thomas Aff. ¶¶ 7, 11. | No knowledge of on-call "policy" beyond the three employees and two or three positions he supervised. Thomas Dep. Tr. at 77:3-80:33. |

**CONTRADICTIONS**

| MANAGEMENT EMPLOYEES[vii] | | |
|---|---|---|
| **Management Employee** | **Representations** | **Contradictions** |
| Thomas, Sandy (*cont'd.*) | "Alderwoods' Company-wide Training Policy required employees to attend various types of training without compensation in order to maintain their position with the company . . . [w]hen training was scheduled outside of employees' regular shifts, those employees were not paid for time spent in training . . . I had conversations with co-workers and employees at other locations who expressed they were similarly experiencing the Training Policy." *Id.* ¶¶ 12, 16. | No knowledge of whether other employees attended training or did any online training with Alderwoods and if they did, no knowledge of whether they reported their time or were paid. *Id.* 104:3-22; 106:7-19. |
| Weinstein, Stacey (Location Manager) | "I was an employee of Alderwoods . . . from approximately August 2003 until May 9, 2007." Weinstein Aff. ¶ 3. | Her employment did not begin until August 2004, she went on disability leave seven months later in March 2005, returned to work for one day in May 2005, and then went back out on disability leave, never to return to work for Alderwoods. Weinstein II Dep. Tr. at 6:21-8:13. |
| White, Raymond (Location Manager) | "I believe I was not compensated for all the hours I spent working . . . because those hours were not pre-approved." White Information Sheet at D. | He never sought pre-approval to work overtime; was unaware of an Alderwoods policy that required pre-approval of overtime; was never told that only approved time would be paid; and was, in fact, paid for overtime that was not pre-approved. White Dep. Tr. at 95:12-96:17; 97:22-24; 160:4-16. |
| | "Plaintiff does recall that a number of statements about the pay policies were made by various managers during plaintiff's employment in addition to the very specific recollection of statements made by" his immediate manager. White Interrog. Responses at 7. | Admitted he could not recall anything specific that other managers said about pay practices or overtime compensation. *Id.* at 178:15-179:5. |
| | "Alderwoods permitted me to perform on-call work after regular work hours and at least some of the time was not paid for by Alderwoods . . . from December 8, 2003 to the present." White Information Sheet at B. | Admitted that he does not know whether or not he was fully paid for the overtime that he worked from December 2003 until his termination. *Id.* at 185:3-13. |

**CONTRADICTIONS**

| | MANGEMENT EMPLOYEES[vii] | |
|---|---|---|
| **Management Employee** | **Representations** | **Contradictions** |
| White, Raymond (*cont'd.*) | "[W]orked at a booth at a senior health fair approximately 8 hours per year for the entire period of his employment for which he was not compensated." *Prise* Plaintiffs' Nov. 21, 2008 Suppl. Interrog. Responses at 17. | Admitted that the senior fair was held on a weekday and that he was most likely paid for his time there. *Id.* at 189:3-190:12. |
| | "[W]orked approximately 4 hours per week for the entire period of his employment performing removals while on-call, for which he was not compensated." *Id.* | Admitted that this interrogatory response was inaccurate and that he may have been paid for his time. *Id.* at 146:12-147:3; 165:23-166:8; 191:9-19. |
| | "Plaintiff does currently recall his manager . . . telling him that overtime was not paid unless it was pre-approved." *Id.* at 18. | He admitted that his managers never told him that overtime that was not pre-approved would not be paid. *Id.* at 97:22-24; 193:20-194:11. |

---

[i] The employees included in this chart are named plaintiffs and/or Plaintiffs' witnesses.

[ii] Each individual who opted into *Prise v. Alderwoods Group, Inc.*, Case No. 06-1641 (W.D. Pa.) ("*Prise I*") was required to serve on Alderwoods a completed Information Sheet indicating whether Plaintiffs' various allegations applied to him or her. The Information Sheets cited herein are compiled and attached as Exhibit J to the Brent Knight Declaration.

[iii] All deposition excerpts cited herein are compiled and attached as Exhibit N to the Brent Knight Declaration.

[iv] All interrogatory responses cited herein were submitted by plaintiffs in the *Prise I* action and are compiled and attached as Exhibit K to the Brent Knight Declaration.

[v] Where an individual has submitted more than one affirmation, Alderwoods identifies the cited affirmation by reference to the date it was signed. If an individual submitted only one, then no date is referenced. All of Plaintiffs' affirmations cited herein are compiled and attached as Exhibit L to the Brent Knight Declaration.

[vi] All Employee Time Records cited herein are compiled and attached as Exhibit M to the Brent Knight Declaration.

[vii] The employees included in this chart are named plaintiffs and/or Plaintiffs' witnesses.