## NETWORK DEPOSITION SERVICES
### Transcript of William Opie Bernard Ore

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

- - -

| | |
|---|---|
| DEBORAH PRISE and HEATHER RADY, on behalf of themselves and all employees similarly situated, )))) | |
| Plaintiffs, )) | |
| vs. )) | Civil Action No. 06-1641 |
| ALDERWOODS GROUP, INC. and SERVICE CORPORATION INTERNATIONAL, )))) | |
| Defendants. ) | |

- - -

Deposition of WILLIAM OPIE BERNARD ORE

Thursday, March 19, 2009

- - -

The deposition of WILLIAM OPIE BERNARD ORE, one of the plaintiffs herein, called as a witness by the defendants, pursuant to notice and the Federal Rules of Civil Procedure pertaining to the taking of depositions, taken before me, the undersigned, Jessica L. Tapia, a Notary Public in and for the Commonwealth of Pennsylvania, at the Holiday Inn, 930 East Grafton Road, Fairmont, West Virginia 26554, commencing at 9:51 o'clock a.m., the day and date above set forth.

- - -

Network Deposition Services
Suite 1101, Gulf Tower
707 Grant Street
Pittsburgh, Pennsylvania  15219
(412)281-7908

- - -

Johnstown
814-266-2042

Toll-Free
866-565-1929

Pittsburgh
412-281-7908

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 148

1   about E down there, does that go -- what about the

2   lunch hours and stuff like that?  Where does that

3   come in?

4        Q       There's nothing here related to

5   lunches.  It doesn't have that on this sheet.

6   Just to be clear, I don't see any reference to

7   meal breaks here.  If we can go back and look at

8   B, which refers to on call work.  Do you see

9   that?

10       A       Yes.

11       Q       And is that a claim that you have in

12  this litigation?

13       A       Yes.

14       Q       All right.  And C, I see that that is

15  blank; correct?

16       A       Yes.

17       Q       So that is not a claim that you're

18  making in this litigation?

19       A       No.

20       Q       All right.  D refers to hours that

21  were not pre-approved; right?

22       A       Right.

23       Q       Is that a claim that you're making?

24       A       Yeah.

25       Q       I am going to hand you what will be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 149

1    marked as Defendant's Exhibit 11.

2            (Thereupon, Defendant's Exhibit No. 11

3        was marked for identification.)

4    BY MS. BRAUN:

5        Q    We looked at a time sheet previously

6    today; correct?

7        A    Yes.

8        Q    Is this also a time sheet?

9        A    Yes.

10       Q    For the record, this is Bates labeled

11   1684.  My question to you is, there is a notation

12   on the first entry here that says "no lunch."

13       A    Right.

14       Q    Do you see that?

15       A    On top.

16       Q    Now, is that something that you wrote

17   in?

18       A    Yes.

19       Q    And if we look down at the third

20   entry, is there another entry that also says "no

21   lunch;" correct?

22       A    Right.

23       Q    Is that something that you wrote?

24       A    Yes.

25       Q    Now, do you believe that you were paid

Johnstown              Toll-Free              Pittsburgh
814-266-2042         866-565-1929          412-281-7908

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 150

1    on those occasions here?

2        A     For those two, yes.

3        Q     So you would agree with me that this

4    shows that you were, in fact, paid on some

5    occasions where you didn't have a lunch?

6        A     That's right.

7        Q     Okay.  You understood that you could

8    write "no lunch" on your time card?

9        A     Yes.

10       Q     But despite this, you say that there

11   may have been instances where you were not paid

12   for working through a lunch?

13       A     Right, I know there were.

14       Q     My question is, did something change?

15   I mean, here, you are clearly writing "no lunch"

16   and being paid for that time; correct?

17           MR. EHRMAN:  I'm going to object

18       because your question assume that there is

19       information on Exhibit 11 that says whether

20       he was paid or not.  I am asking -- you

21       know, this time card has time.  It doesn't

22       say anything about pay, unless I'm missing

23       something.  Is there something on here that

24       says something about pay?

25           MS. BRAUN:  Well, the hours are

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

1    totaled here.  I think we can agree to
2    that.
3         MR. EHRMAN:  You mean the 30?  Would
4    that be 30?
5         MS. BRAUN:  Each and every day,
6    there's an indication of how many hours.
7    Q    Mr. Ore, do you see that?
8    A    Yes, I see that.
9    Q    And do you see that there's a total at
10   the bottom as well?
11   A    Yes.
12   Q    So can we agree that looking at the
13   "no lunch" entry, that the time reflected there,
14   the 5.25, includes the lunch that you worked
15   through?
16   A    Yes.
17        MR. EHRMAN:  I think the document
18   speaks for itself, again.
19        MS. BRAUN:  Okay.  That's fine.
20   Moving on.
21   Q    I am going to turn to the responses to
22   Defendant's first set of interrogatories.  This is
23   a document that Mr. Ehrman spoke on the record
24   about initially this morning.  There are some
25   changes that were made to your interrogatory

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 157

1      Q      Let's look at Defendant's 12, which is
2   the letter.  Defendant's 12 is the letter dated
3   November 21.  You said you had not seen this
4   document before?  Can you take a minute and review
5   it for me, please.
6            Have you had a chance to read it,
7   Mr. Ore?
8      A      Yes.
9      Q      All right.  Now, do you believe this
10  document to be accurate?
11     A      Pretty much, yes.
12     Q      Is there something that strikes you as
13  inaccurate?
14     A      Well, like where it says back here the
15  two hours of visitation work, I don't --
16     Q      Could you tell me what page you're on,
17  please.
18            MR. EHRMAN:  19 of 20.
19     Q      I don't see visitation.
20     A      Yes, right here at the bottom.
21     Q      Page 19 then?
22     A      Yes.  "Two hours the entire period of
23  this employee's was compensated because" -- that's
24  not it.  Yes, it was, above that.  "Staying late
25  for visitations."  It says M, for staying late for

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 158

1    visitation.  I never worked visitations.  I don't
2    think it matters.
3         Q    And then just staying right there for
4    a moment, it says that you spent time and
5    performed work -- let me start again.
6              I'm talking about pretty much the same
7    sentence right there that you are talking about.
8    We're at the bottom of 19.  "Plaintiff's best
9    current recollection is that he performed work
10   before or after his regular shift."
11             Previously, we talked about work that
12   you may have done at the end of your shift, but
13   you did not recall any instances that you would
14   have worked before your shift?
15        A    Right.
16        Q    So were there instances when you would
17   have worked before your regular shift?
18        A    You mean like in the morning?
19        Q    Right, because to be very clear, you
20   had testified that your typical start time was
21   8:00 a.m.; correct?
22        A    Yes.
23        Q    Are you claiming that you worked time
24   before 8:00 a.m. for which you were not
25   compensated?

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 165

1    sorry.
2              MR. EHRMAN:  Answering phone calls.
3         Q     We are going to get to that.  I want
4    to focus on where I am asking the questions here.
5    All right.  So you say that despite the fact that
6    you didn't stay late for visitations, you believe
7    that this two hour approximation is still correct?
8         A     Right.
9         Q     All right.  Now I'm continuing on.
10   You state that you currently recall that you spent
11   approximately 1.25 hours per week for the entire
12   period of your employment performing work during
13   your meal breaks.  Do you see that sentence?
14        A     Yes.
15        Q     Now, how did you arrive at 1.25 hours?
16        A     Well, it really should have been about
17   an hour, I guess.  This is probably about twice a
18   week I worked during my lunch period.
19        Q     About two times a week you worked
20   through your lunch period.  On some occasions, you
21   were paid for working through your lunch period;
22   correct?
23        A     Some, yes.
24        Q     Well, I mean, how many times were you
25   paid?  You said you worked --

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

1    A    I don't know.  It's who ever picked

2    these out, they probably picked the ones that had

3    him paying me and left the other ones in the box.

4    Because I -- I just guarantee you that.

5    Q    This is the question though.  My

6    question was, were you sometimes paid when you

7    worked through your lunch break?

8    A    Yes.  It's right there (indicating).

9    Q    And if you worked through your lunch

10   break two times a week and you were sometimes paid

11   for working through your lunch break, is your

12   revised response of one hour per week accurate?

13   A    It has to be, yes.

14   Q    Why does it have to be?

15   A    Because sitting in your seat, you are

16   wanting an estimation that is lower, and it's not

17   -- you can't sit and tell me I wasn't paid either.

18   That's got to be.

19         MR. EHRMAN:  Listen.  Just listen to

20      the question and try to answer it.  I mean,

21      what is it that you recall about the lunch

22      breaks.

23   A    Not getting paid for a thing.  That's

24   what.  Anything else?

25   Q    I have more questions.

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 167

1      A      Go.

2      Q      Okay.  All right.  I'm sticking with

3   this same document, the letter.  I'm still on page

4   20 of 20.  And it says here, "Plaintiff's manager,

5   Warren Putnam, required him to conduct safety and

6   health training for which he was not compensated.

7   He was required to complete continuing education

8   to maintain his funeral directors license".

9      A      That is not correct.

10     Q      Because?

11     A      I wasn't a funeral director.

12     Q      You did not have a license at any

13  point?

14     A      That's correct.

15     Q      And so here it says, if you go down

16  another sentence, I'm going to pick up in the

17  middle, it says, "In that he spent approximately

18  12 hours per year for his entire employment

19  completing his continued education requirements to

20  maintain his funeral directors license for which

21  he was not compensated."

22            That is incorrect?

23     A      That is incorrect.  That's a state

24  law.  I don't know where that came from.

25     Q      Now I'm going pick up with the safety

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 169

1  period since they brought lunch to us.
2       Q     So lunch was provided?
3       A     Right.
4       Q     Some of the time -- did you spend some
5  of the time eating?
6       A     While, I guess, while you was in class
7  you did.
8       Q     Okay.  Now, this statement says,
9  "Plaintiff's best current recollection is that he
10 spent approximately 30 hours per year for his
11 entire period of employment preparing for and
12 conducting safety and health training for which he
13 was not compensated."
14            Now, you testified earlier that you
15 did not have safety and health responsibilities
16 when you were initially hired; correct?
17      A     Right.  It was when Becky quit, so it
18 would be about six months into my employment.  I
19 think that's when she left.
20      Q     Okay.  So it would be inaccurate to
21 say that it is 30 hours per year for your entire
22 employment?
23      A     Not for the entire time, right.
24      Q     Well, what would be accurate?  If 30
25 hours per year for your entire employment is not

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 179

1      Q      How long did they last?

2      A      Just depends.  Some of them lasted

3    eight hours.  Some of them lasted four hours.

4    They were at least four hours long.  The one at

5    Rob's place lasted two days, but that was --

6      Q      Do you recall whether you were paid

7    for that one at Rob's that lasted two days?

8      A      I couldn't tell you.  I can't

9    remember.

10          MR. SAUL:  This is Charlie.  Would

11      this be a good time to take a short break?

12          MS. BRAUN:  We can.

13          (Recess taken.)

14    BY MS. BRAUN:

15      Q      Mr. Ore, we are back on the record

16    again.  I'm still talking about the same exhibit,

17    which is the letter dated November 21, 2008.  We

18    are still on page 19 of 20.  Now, we have been

19    talking about this approval in order to be

20    compensated for working overtime.  We have been

21    focusing on the bottom of page 19.  My question to

22    you is, it says here, "Through company policies

23    and practice, which were communicated verbally and

24    in writing, Alderwoods required employees,

25    including Plaintiff, to obtain approval in order

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 180

1    to be compensated for working overtime."

2            Did you ever see a policy in writing

3    requiring you to obtain approval for overtime?

4        A    No.

5        Q    If I can direct your attention, you

6    know, we're kind of working backwards through the

7    document.  I'm looking at the two or three

8    paragraphs preceding.  They are in the middle of

9    the page.

10            MR. EHRMAN:  How does this paragraph

11        start?

12            MS. BRAUN:  Let's start with, it says,

13        "In terms of verbal communications,

14        Plaintiff cannot recall each and every

15        communication concerning requests that he

16        perform on call work, other than general

17        requests."

18        Q    Do you see where we are there,

19    Mr. Ore?

20        A    Uh-huh.

21        Q    And the next paragraph starts with,

22    "During on call shifts" discusses various types of

23    activities that you claim that you did while you

24    were working on call.  Do you see that there?

25        A    Yes.

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

1      Q      The first -- excuse me.  The second

2   sentence, "Plaintiff's best recollection is that

3   he spent approximately one hour per week for the

4   entire period of his employment answering phone

5   calls for which he was not compensated."

6             We discussed the sheet that you

7   completed during your employment.  Do you want to

8   refer back to that exhibit?

9             MR. EHRMAN:  No, no.

10     Q      Mr. Ore, do you need to refer back to

11  that sheet that we discussed where you recorded

12  time for calls?

13     A      No.

14     Q      Now, your recollection was not

15  entirely clear as to when you first started

16  completing those sheets.  Is that correct?

17     A      Right.

18     Q      But once you did, you recorded the

19  time you spent on the phone while you were

20  on call; correct?

21     A      Yes.

22     Q      So were you compensated for -- do you

23  believe that you were compensated for the time you

24  recorded on the sheets?

25     A      Yes.

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

1      Q     So you would agree with me that this

2  statement is inaccurate, in that it says, one hour

3  per week for the entire period of your employment

4  answering phone calls?

5         MR. EHRMAN:  I'm not sure.

6         MS. BRAUN:  I'm not --

7         MR. EHRMAN:  What is inaccurate?

8  BY MS. BRAUN:

9      Q     This refers to the entire period of

10  your employment, that you spent approximately one

11  hour per week for the entire period of your

12  employment answering phone calls.  That is what

13  this says; correct?

14      A     Yeah.

15      Q     Given what you just testified to, that

16  is an inaccurate statement; correct?

17      A     Correct.

18      Q     Is it an accurate statement for the

19  period of time for which you didn't use the call

20  sheets?

21      A     Yes.

22      Q     One hour?

23      A     It would be.

24      Q     And how do you get --

25      A     That would make sense, probably.

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 192

1   they used to be numbered.  I don't remember how
2   many of them, maybe six, across these binders.
3   Like I said, one of them was the OSHA and health
4   stuff.  One of these was procedures and stuff.
5   One of them was vacations.
6        Q    And what do you recall -- this
7   document you are referring to that talked about
8   on call work, what do you recall that saying?
9        A    I can't recall.  I couldn't really
10  tell you and be accurate.  I would be guessing if
11  I told you.
12       Q    All right.  Let's stick with this
13  document.
14            MR. EHRMAN:  You mean Exhibit No. 12
15      when you say "this document"?
16            MS. BRAUN:  We're still with the same
17      document which says Defendant's Exhibit 12.
18       Q    I am on the page, the page number is
19  not there but it starts out with your name,
20  William Ore.  The third paragraph says, "Through
21  company policies which were communicated verbally
22  and in writing, Alderwoods encouraged employees to
23  perform work in the community."
24            Do you ever recall seeing anything in
25  writing regarding the performance of community

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 193

1   work?
2        A      Requiring, is that what you mean?
3        Q      Right, require.
4        A      No.
5        Q      Now, here in this final paragraph on
6   this page, you talk about a couple of different
7   examples of community work.  You say sunrise
8   services, Christmas Eve services and Christian
9   concerts.
10              We have discussed sunrise services;
11  correct?
12       A      The Christian concerts was the choral.
13  That's what that should have been.
14       Q      That is what I wanted to clarify.
15       A      Right.
16       Q      Just to go through it.  We talked
17  about the sunrise services; correct?
18       A      Yes.
19       Q      That's the Easter sunrise service?
20       A      Yes.
21       Q      Now, this says Christmas Eve services
22  and Christian concerts.  Is that the same thing?
23       A      As the choral.
24       Q      Like the Christmas caroling?
25       A      Caroling, right.

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 194

1  Q    So that -- you said that was just on
2  Christmas Eve?
3  A    Right.
4  Q    It says Christmas Eve services and
5  Christmas concerts.  We are really talking about
6  the thing we already discussed, which is the
7  Christmas Eve carols?
8  A    Correct.
9  Q    Okay.  On the next page, this
10  paragraph continues.  It says, "Plaintiff's best
11  recollection, current recollection is that he
12  spent approximately 12 hours per year for the
13  entire period of his employment performing this
14  aforementioned community work."
15       I think you previously testified that
16  that sunrise service was between 4:00 and 6:00?
17  A    Right.
18  Q    Is that right?
19  A    Right.
20  Q    All right.  And that the Christmas Eve
21  carols were an hour and a half?
22  A    About that, yes.
23  Q    This statement here, that you spent
24  approximately 12 hours per year, is that an
25  accurate statement?

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 195

1    A    Yeah, some what.  You have got to
2  think of what we had coming up to it, building up
3  to it.
4    Q    What would that be?
5    A    Some of us had to be there like during
6  the morning to put all that out.  It wouldn't be
7  12 hours, more like eight.
8    Q    Did you personally have to come in --
9  let's talk about the Easter service.  Did you
10  personally have to come in before 4:00 o'clock?
11    A    Yeah.  I think it was, gosh, 3:00,
12  2:30 or 3:00 when most of us came in.  Not most of
13  us.  I can't say that.  There was like four of
14  us.  Because they cook breakfast for those
15  people, we had to sit there and cook breakfast for
16  them.  It was a pain.
17    Q    For Christmas Eve?
18    A    No, it was pretty short because
19  everything was set up for them.  They just came in
20  and got their things.  We just made cocoa and that
21  was about it.
22    Q    So that was -- your previous testimony
23  was that that was like an hour and a half?
24    A    Yeah, that is probably what it is.
25    Q    So we agree then that this 12 hours

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

1    per year is incorrect?

2        A      Yes, pretty much.  It should be about

3    eight.

4        Q      Can I have you look at Plaintiff's

5    Exhibit 1, please.  Again, this is your response

6    to Defendant's first set of interrogatories.

7              MR. EHRMAN:  Which interrogatory do

8        you want him to look at?

9        Q      Could you please look at your response

10   to Interrogatory No. 3 on page 5.  About in the

11   middle of the page, it says, "Subject to and

12   without waiving the foregoing objections,

13   Plaintiff responds he performed overtime work."

14   Then this is edited, this is revised, it says

15   "on call work, work at lunch breaks, community

16   work and training"?  Is that what it says here?

17       A      Yeah.  That's what it says.

18       Q      What training work are you referring

19   to?

20       A      Just what we were doing in classes and

21   the OSHA things and health things we were talking

22   about.  That's what that was about.

23       Q      Okay.  And if you could look at your

24   response to Interrogatory No. 4, I am on page 6.

25   The last sentence here talks about, it says,

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

Page 197

1   "Warren Putnam also enforced pay policies

2   non-verbally by punching out time cards of

3   Plaintiff and his co-workers."

4           Did he punch out your time card?  Did

5   Mr. Putnam punch out your time card?

6       A    Only on Fridays, but Warren Putnam --

7           MR. EHRMAN:  Do you remember him

8       punching out your time card?

9       A    No.

10      Q    And this sentence continues to say

11  that Flo -- excuse me.  I believe what this is

12  trying to say is that Warren Putnam directed Flo

13  to do that, to punch out time cards.  Are you

14  reading that sentence?  Could you read it to

15  yourself.

16      A    Yes.

17      Q    Is that what that sentence says?

18      A    It says "Secretary Flo to do so."

19      Q    Did Mr. Putnam direct Flo to punch out

20  your time card?

21      A    I don't know.  I know what they are

22  talking about, it's just worded wrong.

23      Q    For the record, your answer is that --

24      A    No, she didn't.  She didn't punch it

25  out.

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

1      A      No, ma'am.

2      Q      My intent isn't to have asked you this

3  twice, but I need to ask you, did you keep any

4  personal record of your involvement in setting up

5  the tables, you know, at the church or your

6  involvement with the sunrise services?

7      A      No, ma'am.

8      Q      Now, you also testified that you had

9  seen a written on call policy.  Is that correct?

10     A      Procedure.

11     Q      And you thought you saw that in the

12  binders?

13     A      Yes, binders.

14     Q      Now, was it your understanding that

15  the binders contained -- let me ask you this

16  question.  What was your understanding of to whom

17  the binder policies/procedures applied to?  Who

18  did those apply to?

19     A      I mean, they applied to everybody.  Is

20  that what you're asking, or who they came from?

21     Q      I'm asking who they applied to.

22     A      I believe they applied to everybody.

23     Q      When you say everybody, who do you

24  mean?

25     A      Full-time, part-time staff also,

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

1    whatever your job, you know what I mean.

2        Q    So you are talking about employees at

3    Edo Miller?

4        A    Right.

5        Q    Do you know if those policies applied

6    to employees outside your location, the policies

7    in the binders that we're talking about?  Do you

8    know if they applied to employees at other

9    locations?

10       A    You want to know if they had binders

11   in other funeral homes?

12       Q    Yes.  Do you know if they did?

13       A    I couldn't say and be accurate, no.

14       Q    In the on call policy that you believe

15   you saw in the binders, we have talked previously

16   about three separate circumstances under which you

17   recorded, whether it be a name of a person or

18   hours?

19           MR. EHRMAN:  Recorded time?

20           MS. BRAUN:  Recorded --

21       Q    I'm specifically not saying time

22   because sometimes you said you just recorded the

23   name of a deceased; correct?

24       A    Right.

25       Q    There were three different methods

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

NETWORK DEPOSITION SERVICES
Transcript of William Opie Bernard Ore

1    that you had to make some record of what you did
2    on call?
3        A       Right.
4        Q       Did this on call policy that you
5    believe you saw address, specifically address, you
6    know, how to use, for example, how to use the time
7    card and write down the name of the deceased?  Did
8    that say that in that policy?
9        A       I don't remember about that.
10       Q       Do you -- I'm not trying to ask you
11   twice.  I don't think -- are we clear on what you
12   believe the policy to say.  What is your
13   recollection of what that policy said?
14       A       The on call policy?
15       Q       Yes.
16       A       I mean, I don't remember most of it.
17   The only thing I remember in it is like the no
18   drinking.  Most of it was common sense stuff.  You
19   know, it told you how you were supposed to act and
20   carry yourself as an employee of Alderwoods.
21       Q       I think that's all I have.
22               MR. EHRMAN:  We are going to start on
23           the redirect.  I spoke to Tonya and I
24           advised her Christina, that you're going to
25           ask a majority of the questions.

006ba1cf-a1ec-4f89-a7a7-69cc6122f2be

**NETWORK DEPOSITION SERVICES**
**Transcript of William Opie Bernard Ore**

247

```
 1                    CERTIFICATE
 2   COMMONWEALTH OF PENNSYLVANIA, )
                                   )  SS:
 3   COUNTY OF ALLEGHENY.          )
 4        I, Jessica L. Tapia, do hereby certify that
     before me, a Notary Public in and for the
 5   Commonwealth aforesaid, personally appeared
     WILLIAM OPIE BERNARD ORE, who then was by me first
 6   duly cautioned and sworn to testify the truth, the
     whole truth, and nothing but the truth in the
 7   taking of his oral deposition in the cause
     aforesaid; that the testimony then given by him as
 8   above set forth was by me reduced to stenotypy in
     the presence of said witness, and afterwards
 9   transcribed by means of computer-aided
     transcription.
10
          I do further certify that this deposition
11   was taken at the time and place in the foregoing
     caption specified, and was completed SINE DIE.
12
          I do further certify that I am not a
13   relative, counsel or attorney of either party, or
     otherwise interested in the event of this action.
14
          IN WITNESS WHEREOF, I have hereunto set my
15   hand and affixed my seal of office at Pittsburgh,
     Pennsylvania, on this  27  day of MARCH         ,
16   2009.
17
18
19
       _____
20         Jessica L. Tapia, Notary Public
           In and for the Commonwealth of
21         Pennsylvania
           My commission expires August 19, 2010.
22
                        - - -
23
24
25
```

| Johnstown | Toll-Free | Pittsburgh |
|---|---|---|
| 814-266-2042 | 866-565-1929 | 412-281-7908 |