**Exhibit P**

**Part 2 of 2**

shall be paid for a full day's work.  If the employee is unable to return to work, the employee shall be paid for a full day's work upon verification by a physician or hospital.

(d)     All injuries and accidents, regardless of how minor or by whom suffered, must be reported to the Employer immediately by the employee suffering it, or by any witness, unless the employee's physical condition prevents such immediate report.

(e)     Where directed by the Employer or required by law, personal protective equipment shall be worn by employees.  When required to be worn, the Employer shall provide such personal protective equipment, except in the case of safety shoes, which shall be provided by the employee at his own expense.

## 7.     SENIORITY

(a)     Seniority shall be defined as length of an employee's continuous service commencing with the latest date of hiring with the Employer in any classification covered by this Agreement.  There shall be one (1) seniority list covering all of the classifications in the bargaining unit.  Except as otherwise provided herein, the most senior employees will be at the top of the seniority list for all purposes.  If two (2) or more employees have the same seniority date, their seniority ranking shall be determined alphabetically by their last names.  If two (2) or more employees have the same seniority date and the same last name, their seniority ranking shall be determined alphabetically by their first names.  The Employer shall prepare the seniority list setting forth the name of each employee and his seniority date, shall post the seniority list, and shall give it to the Shop Steward. Whenever revisions are required, a new list will be posted and a copy sent to the Union.  If no written objection is filed within fourteen (14) calendar days of the posting of any seniority list, it shall be considered correct and final.

(b)     Seniority does not accumulate during periods of unpaid leaves of absences spanning more than one hundred eighty (180) consecutive calendar days unless otherwise required by law.  Seniority shall prevail for vacation selections and for any other purpose specifically identified in this Agreement.

(c)     The Employer shall have absolute discretion whether to retain or offer a licensed funeral director position to a registered resident after his residency, and same shall not be subject to grievance or arbitration.  Registered Residents who are retained by the Employer shall have a ninety (90) day probationary period after the conclusion of the residency program during which the Employer may at its sole discretion reassign, reclassify, suspend, discipline or terminate such employee and same shall not be subject to grievance or arbitration.  Registered Residents, if they achieve licensee status, shall be entitled to seniority from their original date of hire.  For layoff purposes only, Registered Residents shall be deemed to be at the bottom of the seniority list so that all Registered Residents must be laid off or terminated before any Funeral Director can be laid off for lack of work.

(d)   Newly hired employees shall have a probationary period of ninety (90) consecutive calendar days during which the Employer may, at its sole discretion, reassign, reclassify, suspend, discipline or terminate any such probationary employee and same shall not be subject to grievance or arbitration.  The Employer may extend any probation period up to an additional fifteen (15) consecutive calendar days upon notice to the Union of any such extension.  During a probation period, the employee shall not be entitled to any paid time off or to holiday pay, nor shall he be eligible to participate in any employee benefit plans.  An employee's seniority shall commence after the completion of the probation period and shall be retroactive to the employee's most recent date of hire by the Employer.

(e)   The Employer shall notify the Union promptly in writing by giving the name, address, social security number, date of hiring, unit classification and pay rate upon hiring of any new employee.  The Employer shall notify the Union in writing promptly in cases of layoff, discharge, unpaid leaves of absence, when employees come off of probation, and when employees are recalled to work from layoff, giving the name of the employees and the applicable dates.

(f)   Any employee desiring an unpaid leave of absence from his employment (other than FMLA leave) must secure written permission from the Employer.  Such leave of absence shall generally be for not more than six (6) months, but may be extended by the Employer.  During the period of absence, the employee shall not engage in gainful employment.  Failure to comply with this provision shall result in the complete loss of employment and seniority rights.

(g)   An employee who is promoted or transferred to a position with the Employer outside the bargaining unit shall be removed from the seniority list upon such promotion or transfer, and his seniority shall not accrue during the time that the employee is out of the unit.  If the employee is thereafter employed in the bargaining unit, the employee's previous seniority shall be restored.  Any employee who is granted an unpaid leave of absence to work for the Union and who thereafter returns to the bargaining unit shall have his previous seniority restored.  In both cases, the employee's seniority date shall be adjusted so that the employee's seniority is equal to his or her total continuous service with the Employer in a classification covered by this Agreement .

(h)   Unless otherwise provided by law, seniority shall be deemed terminated:

    (1)   When an Employee resigns for any reason, retires, or dies;

    (2)   When an Employee is discharged for just cause;

    (3)   When an employee is not recalled to work within one year after being laid off, or, in the case of an employee with less than one (1) year seniority, if not recalled within a period equal to his service;

(4)   When an employee on layoff fails to respond to a layoff recall offer within four (4) calendar days of notification or fails to report to work following recall from a layoff within two (2) calendar days after being notified of recall from layoff, unless excused by the Employer;

(5)   When an employee is absent for three (3) consecutive work days without calling in, or takes another job elsewhere which interferes with his assigned work for the Employer;

(6)   When the employee gives a false reason for obtaining a leave of absence or using leave, accepts gainful employment elsewhere while on an approved leave, or fails to return to work on the next scheduled work day following the expiration of leave without notifying the Employer in writing, prior to such expiration, of a reason satisfactory to the Employer for such failure;

(7)   When an employee is not on an active pay status with the Employer for any reason(s) for a period exceeding one (1) year, or for a period exceeding his length of service at the beginning of such absence, whichever is less.

## 8.   HOLIDAYS

(a)   The Employer observes the following holidays for holiday pay purposes and for any other purpose expressly stated in this Agreement:

New Year's Day (January 1)

Easter Sunday

Memorial Day (4th Monday in May)

Independence Day (July 4)

Labor Day (1st Monday in September)

Thanksgiving Day (4th Thursday in November)

Christmas Day (December 25)

In addition, each employee shall be entitled to two (2) personal days per year (with no carryover).

(b)   Except as otherwise provided in this Agreement, to be eligible for holiday pay for a given holiday, an employee must (i) be on the active payroll during the Workweek containing the holiday, either earning wages from the Employer due to hours worked or a paid leave of absence, or on FMLA leave, and (ii) not be in a probation period on the day of the holiday.

(c)     Holiday pay is eight (8) hours of pay at the employee's basic hourly rate, regardless of the employee's work schedule. Holiday pay shall not be considered hours worked for overtime calculation purposes.

(d)     The Employer retains the right to require any employee to work on any holiday. In the absence of an emergency, the Employer will not generally require an employee who is scheduled to be off on a holiday to work that holiday without giving the employee at least two (2) weeks' advance notice. An employee eligible for holiday pay who works on a holiday at the direction of the Employer shall receive holiday pay in addition to any amount to which he is entitled for the hours worked on that holiday. An employee who is scheduled to work on a holiday and does not work that day for any reason other than the employee's accident and/or illness evidenced by sufficient documentation, shall not receive holiday pay, even if otherwise eligible for it.

## 9.     VACATIONS

(a)     Annual paid vacation leave accrues monthly at the following rates:

| Length of Service is: | Monthly Accrual | To a Max of |
|---|---|---|
| 1st full calendar year through 9th full calendar year | 6.66 hours | 10 days/year |
| 10th full calendar year through 14th full calendar year | 10 hours | 15 days/year |
| 15th full calendar year through 24th full calendar year | 13.33 hours | 20 days/year |
| 25th full calendar year and longer | 16.66 hours | 25 days/year |

Employees who have not completed at least one year of service before January 1 of any year shall begin accruing paid vacation at the beginning of the first full month worked after the employee completes his or her probationary period, at a monthly rate of 6.66 hours per calendar month. Any employee hired prior to January 1, 2001 who is accruing vacation at a higher rate than set forth in this paragraph shall not lose vacation time accrual solely as a result of this schedule.

(b)     Employees accrue vacation leave on the last calendar day of each month, so long as they are on an active payroll status on that date. At the end of the calendar year, employees will forfeit any vacation that they have accrued but not used; employees may not carry over hours of accrued but unused vacation leave to the next year. Employees will not receive vacation leave pay for any vacation leave that is forfeited at the end of the year.

(c)     The employee shall give the Employer at least four (4) weeks' notice of his or her desire to take vacation leave. Vacation schedules shall be set by agreement among the Employer and the employees in advance, with any unresolved conflicts between employee vacation schedules resolved by seniority. Except in the case of an emergency, once an employee's block of vacation time has been scheduled, the Employer shall not change it without at least one (1) week's advance notice to the

employee.  Except as otherwise provided in this Agreement, vacations shall be taken in blocks of Workweeks, provided, however, five (5) single non-consecutive vacation days may be taken upon request made two (2) weeks in advance and with the prior written approval of the Employer.  Vacation may be scheduled at anytime during the year except between Thanksgiving and New Year's Day, unless mutually agreed by the Employer and the employee. Employees may schedule more vacation leave than what they have accrued before their vacation starts, but may not schedule more vacation leave than what they can accrue if they remain on an active payroll status until the end of the calendar year. Employees may not schedule or take more than 2 consecutive weeks of vacation leave at any one time.

(d)   An employee who quits or is terminated with accrued but unused vacation leave shall be paid vacation leave pay for each hour of accrued but unused vacation with his or her final wages.  If an employee who quits or is terminated has taken vacation in excess of that which he accrued, the amount of excess vacation pay paid to him shall be subtracted from his or her final wages.

(e)   Vacation leave pay is one (1) hour of pay at the employee's basic hourly rate for each hour of accrued vacation leave.  An employee shall not be paid more than eight (8) hours of vacation pay for any day of vacation.  An employee shall not be paid vacation pay for hours that the employee worked.  Vacation leave is charged, and vacation leave pay is paid, in quarter-of-an-hour increments for all scheduled working time lost while on vacation.

(f)   Vacation leave may be scheduled in quarter-of-an-hour increments when it is being used for union activity under [Article ___ Union Activity].  Under certain circumstances, the use of vacation leave may be governed or permitted by the Employer's FMLA policy.  To the extent such provisions apply and are inconsistent with the provisions of this Article, the provisions of the FMLA policy shall govern.

## 10.   GRIEVANCE AND ARBITRATION

(a)   When used in this Agreement, the term "grievance" means any dispute or difference involving the application or interpretation of the express terms of this Agreement, and excludes:  (a) any controversy that arose before this Agreement's effective date; or (b) any dispute concerning:  (i) the reassignment, reclassification, suspension or discharge of individuals whose licenses have been suspended or revoked; (ii) the reassignment, reclassification, suspension or discharge of newly-hired employees; or (iii) the discipline of employees for violations of the no strike provisions; or (c) any other dispute or controversy which is specifically excluded by a provision of this Agreement from the operation of this Article.  When used in this Agreement, "grievant" refers to an individual employee who is seeking through this procedure to resolve a grievance. The grievant may, if he or she chooses, be represented in the grievance process by a representative of the Union, but need not be.

(b)     If a grievant or the Union has a grievance, it shall first be discussed with the General Manager within five (5) working days after the occurrence of the event upon which the grievance is based or within five (5) working days after the grievant or the Union, as the case may be, knew or should have known of the event upon which the grievance is based, whichever is later.  The grievant may but need not request the attendance of the Steward at this discussion with the General Manager. The General Manager shall have five (5) working days within which to provide a verbal answer.  In the event that no settlement can be reached, a grievance, to be processed further, must be submitted in writing to the Employer.

(c)     If a written grievance is to be submitted, either the grievant or the Union must prepare and submit it in writing to the General Manager within five (5) working days after receiving the verbal answer, but in no event more than fifteen (15) working days after the occurrence of the event upon which the grievance is based or the date on which the grievant or the Union knew or should have known of the event upon which the grievance is based, whichever is later.  The General Manager shall meet with the grievant (and a Union representative if the grievant so requests) or the Union (if it is the Union's grievance), to discuss the grievance, at a time to be fixed by the General Manager, but no later than five (5) working days from the date the written grievance is received by the General Manager, unless the parties agree otherwise.  The General Manager shall give his written answer to the grievance within five (5) working days following the conclusion of the meeting.   In the event that no settlement can be reached, the Union may submit the grievance to impartial arbitration under the provisions of this Article by written notice to the General Manager within ten (10) working days of receipt of the written answer.

(d)     A written grievance must contain all of the following information:  the grievant's name, job title and signature; the dates on which the grievance was discussed with the General Manager, the General Manager's answer was given and the grievance was filed in writing; the date and time the incident giving rise to the grievance occurred and a description of the incident and other pertinent facts; the specific Articles and Sections of the Agreement allegedly violated; and the desired remedy to resolve the grievance.

(e)     The Employer may initiate a grievance by filing with the Union Business Agent a written description of the incident giving rise to the grievance, the date and time of such incident, specific Articles and Sections of the Agreement allegedly violated, and the remedy desired to resolve the grievance.  Such grievances shall be filed with the Union Business Agent no more than ten (10) working days after the incident giving rise to the grievance has occurred or the date upon which the General Manager knew or should have known of the event upon which the grievance is based, whichever is later.  Within ten (10) working days after the Union Business Agent's receipt of a grievance filed by the Employer, representatives of the Union and the Employer shall meet in an attempt to resolve the grievance.  In the event that the Union and the Employer are unable to resolve

the grievance, the Employer may submit the grievance to the impartial arbitration by written notice to the Union Business Agent.

(f)   **Arbitration**

(1)   Within twenty (20) calendar days after submitting a grievance to arbitration, the party referring the grievance to arbitration shall request the American Arbitration Association ("AAA") to furnish the parties with a list of seven (7) potential arbitrators from which the parties shall select an impartial arbitrator. After receiving the list, and within twenty-one (21) calendar days of its receipt, an arbitrator shall be selected by each party striking in turn, one strike at a time, from the list of seven (7) names. The party referring the grievance to arbitration shall strike the first name. The name remaining on the list after each party has exercised its strikes shall become the arbitrator. In the event that, during the arbitration selection process, any party takes more than three (3) calendar days to exercise one of its strikes, that party will forfeit its right to exercise strikes, and the other party may select the arbitrator from the remaining names on the list. If the selected arbitrator is unable or unwilling to serve, the party referring the grievance to arbitration shall, within ten (10) calendar days of receiving notice of that arbitrators inability or unwillingness to serve, request AAA to furnish the parties with another list of seven (7) potential arbitrators, and the parties will repeat the process described above.

(2)   The Union shall notify the Employer within seven (7) calendar days prior to the hearing of the names of the employees whom it intends to call as witnesses. The Employer may stagger the release of the employees so as not to interfere with its operations.

(3)   The party referring the grievance to arbitration bears the burden of proof. Testimony at the arbitration hearing shall be taken under oath. Transcripts, the cost of which shall be shared by the Employer and the Union, shall be made of all arbitration hearings. A copy of any transcript shall be provided to both the Union and the Employer. Either party may request to submit a brief in lieu of closing arguments, which request shall be granted by the arbitrator. The arbitrator shall issue a written decision and award after consideration of the evidence and briefs, if any.

(4)   The authority of the arbitrator shall be exclusively limited to the interpretation of the written provisions of this Agreement. The arbitrator shall have no power to add to or subtract from or in any way modify the terms of this Agreement. The arbitrator shall not have the authority to substitute his judgment or discretion for that of the Employer or the Union in an area that has not been clearly delegated to him by the terms of this Agreement. Except as otherwise expressly stated in this Article, the decision and award of the arbitrator shall be final and binding on both parties.

PI-1059189v1

(5)    Unless otherwise specified, the fees and expenses of the arbitration, including the arbitrator, the location, the transcripts, and any other joint fees and expenses of holding the arbitration, shall be borne equally by the parties. Each party shall bear the expense of its own representatives, witnesses (and any pay for loss of work that such witnesses suffer as a result of being called as a witness for that party), copying costs , and the other expenses associated with preparing, presenting and briefing its own case.

(g)    A grievance not submitted and processed in accordance with the time limits and procedures specified herein shall be deemed abandoned and shall not thereafter be considered under the provisions of this Agreement or in any other forum. Any adjustment of a grievance at any step in the grievance or arbitration procedure will not serve as precedent to the resolution of any other grievance or issue whatsoever.

(h)    When used in this Article only, "working days' shall be defined as Monday through Friday, and shall not include Saturdays or Sundays.

(i)    The writing and presentation of a grievance may be done during a grievant's work hours, provided the amount of time lost for this activity is reasonable, as determined by the Employer.

## 11.    DISCHARGE - SUSPENSION - DISCIPLINE

(a)    No employee shall be discharged, disciplined or suspended without just cause. While the Employer shall generally follow the principles of progressive discipline and counseling for performance, attendance and misconduct problems except in instances of serious misconduct, the Employer reserves the right not to do so if, in the Employer's sole judgment, the circumstances warrant more severe disciplinary action or counseling. At the discretion of the Employer, an employee may be suspended with pay until an investigation is conducted.

(b)    Disputes concerning verbal and written warnings shall not be subject to the arbitration procedures. Suspensions or dismissals may be processed through both the grievance and the arbitration procedures.

(c)    Employees may request that a Shop Steward represent them at any grievance presentation or disciplinary conference. The Employer will honor such requests so long as the attendance of that representative does not unreasonably delay the grievance presentation or disciplinary conference. Any delay of a disciplinary conference in excess of seventy-two (72) hours from the time the Employer first scheduled such conference shall be considered unreasonable. As used in this Agreement, "grievance presentation" refers to meetings between Union and Employer representatives over grievances, and does not include routine supervisory encounters or discussions about complaints, controversies, disagreements or disputes that are not "grievances." When used in this

PI-1059189v1

Agreement, the term "disciplinary conference" refers to any investigatory interview which may foreseeably result in the Employer taking disciplinary action, and does not include routine supervisory encounters or performance evaluations.

**12. MILITARY SERVICE**

(a) The Employer and the Union shall grant all privileges and benefits provided by federal, state and local uniformed service laws to an employee whose absence from a position of employment with the Employer was necessitated by reason of service in a uniformed service under such laws.

(b) An employee entering service in a uniformed service shall provide the Employer as much advance written or verbal notice of such service as is reasonable and practicable under the circumstances.

**13. SHOP STEWARDS**

(a) The Employer recognizes the right of the Union to designate one (1) employee as a Shop Steward and one (1) employee, where required, as an Alternate Steward. The Union reserves the right to remove the Steward at any time. Before an employee shall function as a Steward for the bargaining unit, the Union shall provide the Employer with written certification of that person's selection and authorization to act on the Union's behalf.

(b) The authority of the Shop Steward and Alternate shall be limited to the following duties and activities:

(1) The investigation and presentation of grievances and participation in disciplinary conferences in accordance with the provisions of this Agreement;

(2) The collection of dues, fees, fines and assessments, when authorized by appropriate Local Union action;

(3) The communication of such messages and information that originate with and are authorized by the Local Union.

(c) Shop Stewards and Alternates shall not conduct any kind of vote or engage in organizing of individuals employed by the Employer, or on the Employer's premises. Shop Stewards and Alternates shall not interrupt or interfere with individuals employed by the Employer while they are working, and shall not disrupt the Employer's operations. They shall make reasonable efforts to minimize the amount of Union activity on the Employer's premises during working hours and to minimize the amount of time lost due to Union activity.

(d)     Shop Stewards and Alternates have no authority to take strike action or any other action interrupting the Employer's business, except as authorized by official action of the Union.

(e)     Shop Stewards and Alternates shall not be discriminated against, nor shall they be discriminated in favor of, by reason of the position they hold.

## 14.    UNION ACTIVITY

(a)     Any employee, including the Steward and Alternate, conducting Union activity authorized by this Agreement during working time shall first report to the General Manager, request permission to stop work, and state: the reason for stopping work and whether it will be necessary for him to go off the Employer's premises. Permission will be granted based on the needs of the Employer and the employee's work schedule. Upon returning to work from his Union activity, the employee will first report to the General Manager before resuming work, or as soon as practicable after resuming work. If the General Manager will not permit the employee to leave his assigned task at the time requested, the General Manager shall designate the time at which the employee may leave.

(b)     Immediately before leaving and immediately after returning to work, the employee shall record the time he leaves for and returns from his Union activity on a grievance time sheet, and describe his activity with sufficient detail so that the time, or distinct portions of it, can be classified for pay purposes as paid time or unpaid time. The grievance time sheets must be submitted to the General Manager by the end of each Workweek during which Union activity during working time has been conducted.

(c)     Employees, including the Steward and Alternate, shall not be paid by the Employer for any time spent preparing for or performing Union activities or conducting Union business, including for any time spent participating in contract negotiations or in other representational activities or functions, except that: (a) if a grievance presentation is conducted during the grievant's scheduled working time, the grievant shall not suffer any loss of pay while attending such meeting; and (b) if the Employer requires or an employee specifically requests to the Employer the presence of the Steward at a grievance presentation or disciplinary conference involving Employer representatives and such employee during the Steward's scheduled work time, the Employer shall pay the Steward at his basic hourly rate for any scheduled work time that is lost due to attendance at such a presentation or conference.

(d)     Except as provided in paragraph (c), in all other instances involving Union activities or business, employees, including the Steward may, with prior approval of the General Manager, take time off without pay or may take accrued but unused vacation leave for time spent on such activities or business during his scheduled work time. Such time off will be granted to no more than one (1) employee at one time and shall not exceed three (3) consecutive calendar days for

any employee. An employee shall not be paid more than eight (8) hours of any form of leave pay for any day of such leave. An employee shall not be paid any form of leave pay for hours that the employee worked. Employees shall provide the Employer with at least thirty (30) calendar days advance notice of any request for an authorized absence in connection with a Union meeting, conference or convention. If the meeting, conference or convention is a regularly scheduled event, which the employee desires to attend on a recurring basis, the employee shall give the General Manager a copy of the schedule at the time he gives advance notice of his first request for an authorized absence.

(e)     Except as otherwise provided by law, the conduct of any Union activity on the Employer's premises and the granting of any unpaid leave or time away from work for employees to conduct Union business are subject to the Employer's operational needs, staffing level and/or work load requirements, and the nature of the Employer's business. Subject to the provisions of this Article, the Employer, on a case-by-case basis, may refuse to permit Union activity on its premises and may deny leave for employees to conduct Union business.

(f)     Any Shop Steward or Alternate (but not both) required to appear in court, or at the National Labor Relations Board, or at any arbitration proceedings in any matter affecting this Agreement, shall be governed by the provisions in this Agreement concerning Jury and Witness Duty.

## 15.  BEREAVEMENT LEAVE

(a)     An employee who requests to be excused from work by reason of the death of a relative shall be granted an excused absence (inclusive of days off) with pay as follows:

| | | |
|---|---|---|
| Father, Mother, Spouse, Child, Sister or Brother | - | up to 5 consecutive days off |
| Father-in-law, Mother-in-law, Daughter-in-law, Son-in-law, Grandparent | - | up to 3 consecutive days off |

(b)     Payment for such days shall be limited to a maximum of eight (8) hours per day at the employee's hourly straight-time rate for actual scheduled work time lost for the purpose of attending the funeral, religious observance or necessary business directly relating to the death beginning on or immediately following the day of death. The hours so paid for (but not actually worked) shall not be used in computing overtime pay for hours worked in excess of forty (40) hours in the work week, or for any other overtime, premium or other pay purposes.

(c)     The Employer may require the employee to furnish reasonable evidence supporting the claim of death of the family member.

(d)     An employee who requests to be excused from scheduled work for the purpose of attending the funeral, religious observance or necessary business directly relating

16

to the death of a Brother-in-law or Sister-in-law shall be granted up to 2 days as an excused absence without pay. This leave shall be subject to the same documentation requirements as applicable to paid bereavement leave.

(e)    Under no circumstances will an employee's vacation, sick or other leave time be extended because of bereavement, nor will the Employer pay an employee in lieu of time off for bereavement purposes.

## 16.   USE OF EMPLOYEE'S VEHICLE

An employee required to use his own vehicle in the service of the Employer shall receive a car allowance at the standard per-mile IRS mileage reimbursement rate for business use. An employee who uses his vehicle for his own convenience shall not receive a car allowance.

## 17.   NO DISCRIMINATION

(a)    The Employer and the Union shall not discriminate for or against any employee with respect to hiring, discharge, compensation, terms, conditions, or privileges of employment or harass any employee because of his/her race, color, religion, sex, national origin, age, physical or mental disability, marital status, or any other basis prohibited by federal, state, or local law. The Employer and the Union shall not retaliate against any employee for opposing any practice made unlawful by any employment discrimination law, or for making a charge, testifying, assisting, or participating in any manner in any investigation, proceeding, or litigation under any employment discrimination law. The Employer and the Union shall not discriminate for or against, interfere with, restrain or coerce any employee because of his union membership or non-membership, because of his union activity or lack of union activity, or because of his support or lack of support of any labor organization, except as permitted by law.

(b)    The Employer may implement and modify uniform nondiscrimination policies in conformity with applicable law, and may unilaterally take all necessary steps to comply with such laws. The Employer may directly discuss these policies with employees, and investigate, remedy and deal with employees with respect to any complaints of discrimination or harassment or requests to institute reasonable accommodations for qualified employees with disabilities. The Employer will involve the Union in such discussions where appropriate. Complaints by employees against the Employer that arise under or concern this Article and that are not resolved to the employees' satisfaction through the policies and procedures referred to herein are "grievances" subject to resolution through the grievance and arbitration provisions of this Agreement.

## 18.   FAMILY AND MEDICAL LEAVE

The Employer shall comply with the Family and Medical Leave Act ("FMLA") as it exists from time to time, and may implement a uniform policy in conformity with the FMLA and modify such policy, after notice to and discussion with the Union. The Employer retains the right to directly discuss these policies with employees, and to investigate and discuss with

PI-1059189v1

employees any family and medical leave entitlement disputes, requests, certifications, benefits and job restoration rights, and to require employees who are entitled to and request an intermittent or reduced family and medical leave schedule to transfer temporarily to an alternative position which better accommodates recurring periods of absence or a part-time schedule.  Disputes under the Employer's FMLA policy shall not be subject to the grievance and arbitration procedure.

### 19.   SEPARABILITY

    (a)    In the event any provision of this Agreement is held to be in conflict with or in violation of an applicable federal, state, or local law, rule, ordinance or decision or valid administrative rule or regulation, such provision shall be inoperative, but all provisions of this Agreement not in conflict therewith shall continue in full force effect anything therein apparently to the contrary notwithstanding  Upon the happening of such event, either party may request the commencement of negotiations to replace such invalid provision.  Upon such request, the other party shall enter into good faith negotiations.

### 20.   CHECK-OFF

    (a)    From the wages paid on the first payday of each month, the Employer, if authorized by each employee by written assignment, will deduct from his wages a sum equal to such employee's dues and/or initiation fees and/or uniform assessment owed the Union and remit the same to the Union or its duly authorized representatives not later than the 10th day after the payday on which deducted.  In the event there shall be no earnings or wages due on the first payday of any month, the Employer shall deduct from the first wages due thereafter the dues and/or initiation fees and/or uniform assessments so owed and to be turned over to the Union within 10 days from the time such deductions are made.  It is understood that this provision is subject to the laws and requirements of the Act.  The Employer shall give immediate notice to the Union in writing when a checkoff is revoked by an employee.

    (b)    The Employer shall not be liable to the Union for the remittance or payment of any sum other than that constituting deductions actually made from employee wages earned, and the Union shall indemnify and hold harmless the Employer against any and all liability which may arise by reason of the deductions described in this Article.

### 21.   INSURANCE

    (a)    The Employer shall make available to employees the Alderwoods Group, Inc. standard group insurance program.  Employees will be permitted to participate on the same terms and conditions (including, without limitation, plan design, coverage, employee contribution, etc.) as are applicable to Alderwoods Group, Inc. employees, and any changes or modifications in the program that are made during the term of this Agreement that are made applicable to non-bargaining unit

employees shall also be applied to employees under this Agreement. In the event of any such change or modification, the Employer will notify the Union in writing of the change in advance of such changes taking effect, but shall have no other obligation to the Union with respect to such changes.

(b)    Notwithstanding anything provided in section (a) above, with respect to medical insurance only, the Employer shall pay the entire premium for HMO or Managed Care coverage (in lieu of any employer allowance) for those employees who are enrolled in such coverage.

## 22.    SAVINGS PLAN

The Employer shall make available to employees the Alderwoods Group, Inc. standard 401(k) plan (Alderwoods Group, Inc. 401(k) Retirement Plan). Employees will be permitted to participate on the same terms and conditions (including without limitation, contribution limits, vesting and Employer matching) as are applicable to Alderwoods Group, Inc. employees, and any changes or modifications in the plan that are made during the term of this Agreement that are made applicable to non-bargaining unit employees shall also be applied to employees under this Agreement. In the event of any such change or modification, the Employer will notify the Union in writing of the change in advance of such changes taking effect, but shall have no other obligation to the Union with respect to such changes.

## 23.    CONFLICT OF INTEREST

Employees may not engage in any outside activities or interests that conflict with the best interests of the Employer, Alderwoods Group, Inc., or any affiliate. All such activities must be disclosed to management. Such conduct shall consist of being connected with any business (as owner, partner, officer, manager, or shareholder) in competition with the Employer, Alderwoods Group, Inc., or any affiliate. Ownership of shares of stock in listed, publicly traded companies acquired as a part of a normal investment program is permitted.

## 24.    OUTSIDE REGISTRATION

No employee may have a funeral home registration hanging in a non-Alderwoods Group, Inc. funeral home without the express written consent of the Employer.

## 25.    PROFESSIONAL CLOTHING

The Employer shall reimburse each employee for up to four hundred dollars ($400) on an annual basis for professional clothing, upon the presentation to the Employer of appropriate documentation.

## 26.    TEMPORARY TRANSFERS, SUBCONTRACTING, CALL-OUT

(a)    The Employer retains all rights to require and assign employees, and to lease, loan, or transfer employees, to perform the duties encompassed by their licenses at the Employer's funeral establishments, at other locations that the Employer approves, and at funeral establishments owned by the Employer or any other

19

entity, so long as the arrangement is not permanent and the employee is compensated for any reasonable travel expenses in accordance with the Employer's expense reimbursement policy.

(b)     Managers may continue to perform work as licensed funeral directors provided that no more than two managers may perform such work at any one time.

(c)

    (1)     Work beyond that which can be performed by on-duty employees and work to be performed by employees who are not otherwise scheduled to work shall first be made available to the employees not on duty who have signed up at least forty-eight (48) hours in advance on the voluntary on-call list. The Employer shall give employees who sign up for such work first opportunity to perform on-call work by order of seniority if practical. Any employee whose name appears on the on-call sign-up must accept such calls and accomplish same expeditiously, except in the case of an emergency. Procedures for implementation will be arranged by the Employer after discussion with the Shop Steward.

    (2)     In the event that employees do not sign up in a manner to provide necessary coverage, or employees fail to perform pursuant to their sign-up, the Employer may utilize the services of any other person or entity that it chooses to perform such services on any terms which it in its sole discretion shall agree to. Such person or entity is not an "employee" within the meaning of this Agreement, and shall not be subject to any provision of this Agreement.

    (3)     Employees who perform recall overtime pursuant to this Article shall be paid at their basic hourly rate and will receive any overtime they may be entitled to under the terms of this Agreement. Any hourly pay will be for the period from the time they arrive at the Employer's premises until the time they complete the work that they were called in to perform. Each employee shall be required to maintain detailed records of such work.

## 27.   EMPLOYEES' CONVENIENCES

Before the Employer removes dressing rooms, lockers, toilets or washing facilities for employee use, it will notify the Union of its intention to do so, and, upon request, discuss the matter with the Union.

## 28.   LAYOFF AND RECALL

(a)     In the event that the Employer determines to reduce the work force by way of a layoff, the reduction shall be effected by the displacement first of any Registered Residents before any Licensed Funeral Directors are displaced. Where a choice must be made among more than one Registered Resident or more than one Licensed Funeral Director, the Employer shall select among them, after

20

discussion with the Union, based upon their demonstrated skills, performance, disciplinary record, or other comparable job-related criteria. Where, in the judgment of the Employer, employees are relatively equal using such criteria, the seniority of such employees shall be utilized as a tie breaker with the employee having the least amount of seniority being laid off first.

(b)     In the event that the Employer determines to recall employees who have been laid off, such employees shall be recalled based upon the Employer's need for individuals with the ability and occupational skills of the individuals with seniority who are on layoff. Where, in the judgment of the Employer, employees with seniority on layoff have relatively equal ability and occupational skill, seniority of such employees shall be used as a tie breaker with the employee with the most amount of seniority being recalled first. Notice of recall shall be deemed to have been given and received when the employee, any member of his or her household or family, or any person at employee's designated address has been informed of the recall by certified mail addressed to the employee's last known address as reflected in the Employer's records. In the event that the certified letter is returned to the Employer as unaccepted or undeliverable, it will be deemed that the employee shall have forfeited his seniority rights to recall.

## 29.     BULLETIN BOARD, NO SOLICITATION OR DISTRIBUTION

(a)     The Employer shall furnish one (1) bulletin board in the lunch room of the Employer's funeral establishment at 125 Old Country Road, Hicksville, New York and shall permit representatives of the Union to post official, authorized Union notices restricted to the following items: (a) notices of Union meetings; (b) notices of Union elections and election results; (c) notices of appointments to Union offices; (d) notices of Union recreational and social affairs; (e) posting of seniority lists; and (f) posting of a copy of this Agreement. Notices shall avoid controversial issues, and anything political, libelous, scurrilous, inflammatory, or critical of: the Employer or its affiliates, vendors or customers; any labor organization; or any employee or other person. Notices may be required to be shown to the Employer before posting. The bulletin board shall not be used for Union organizing purposes. Materials which have not been authorized by the Union and the Employer, which otherwise contravene the terms of this Article, or which have served their purpose will be promptly removed.

(b)     Except as provided in this Article, no Union material, other literature, signs or written materials of any kind shall be posted by the Union or any employee anywhere in the Employer's funeral establishments or other facilities where the Employer conducts its operations, or on the Employer's vehicles, equipment, supplies, etc., except on the bulletin board designated for use by the Union.

(c)     Except as specifically provided in this Agreement, there shall be no union activity of any kind on Employer's premises. Employees shall not solicit or distribute any kind of written material to individuals employed by the Employer for any purposes during working time. Working time does not include break time, meal

time or any other non-working time during the work day when individuals employed by the Employer are properly not engaged in work. Employees shall not distribute any kind of written material to individuals employed by the Employer for any purpose in working areas. Working areas do not include lunch rooms, break rooms, non-public rest or wash-up rooms, or parking lots. Employees shall not wear or display on their persons, clothing, vehicles or other personal property any Union buttons, badges, pins, decals, stickers, arm bands, ball caps, t-shirts, jackets or any other items mentioning the Union or bearing the Union insignia or logo in preparation rooms, funeral chapels, grieving areas or corridors adjacent to these areas, or in hearses, or at churches, cemeteries, or locations to or from which the body of a deceased is being moved.

30.  **WAGE PAYMENT**

(a)  The pay period will consist of two consecutive Workweeks. Payday shall be set by the Employer, and may be changed upon advance notice to the Union and employees. Employees shall be paid by check, unless they have consented to have their pay directly deposited or electronically transferred to a financial institution. The Employer shall give each Employee an itemized statement for each pay period of all earnings and deductions.

(b)  When not in active pay status, an employee must make other arrangements to pay those amounts expressly authorized in writing by the employee for deduction from gross wages, to the extent that such amounts must be paid during such periods. For purposes of this Agreement, an employee is in an "active pay status" during only those pay periods when he is earning wages from the Employer due to hours worked or paid leaves of absence, or on an unpaid FMLA leave of absence, and not on layoff or on another form of unpaid leave of absence, or receiving workers' compensation income benefits for the entire period.

31.  **NO STRIKE/NO LOCKOUT**

(a)  During the term of this Agreement, the Union shall not directly or indirectly call, sanction, encourage, finance, and/or assist in any way, nor shall any employee directly or indirectly instigate or participate in any way, in any strike for any purpose or reason. For purposes of this Agreement, a "strike" shall be defined as any withdrawal of services, slowdown, walkout, work stoppage, sympathy strike, picketing, boycott, honoring of picket lines or other interference with any Employer operation, or the placement of the Employer or any of its affiliates, vendors or customers on any "do not patronize" list or "unfair" list. Any violation of this provision shall be cause for discipline up to and including discharge.

(b)  The Union shall cooperate with the Employer and shall take all reasonable actions within its power to prevent activity prohibited by this Article, and to terminate such activity if it occurs. In the event of a strike in violation of this Article, the Union shall immediately notify all employees that the activity is prohibited by this Article and is not in any way sanctioned or approved by the Union. The Union

shall also direct all employees to return to work at once.  Neither party shall discuss or negotiate the merits of any underlying dispute until such a time as the strike is fully terminated and normal operations have been resumed.

(c)    During the term of this Agreement, the Employer shall not lock out any or all of the employees in the bargaining unit.  For purposes of this Agreement, a "lockout" shall be defined as any refusal of the Employer to permit the employees to report to work or perform their regularly scheduled assigned duties solely as a means of bringing economic pressure to bear in support of the Employer's collective bargaining position or positions on any dispute which has arisen between the parties, and shall not include the normal and good faith exercise of the rights reserved to the Employer in this Agreement.

(d)    Neither the violation of this Agreement nor the commission of any unfair labor practice or other illegal act shall excuse the employees or the Union from their obligations under this Article.  For violations of this Article, the parties shall have all legal and equitable remedies available to them.

(e)    Notwithstanding any other provision of this Article, it shall not be a violation of this Agreement for an employee to refuse to cross a lawful picket line of the Union if to cross the picket line would place the employee in imminent danger of serious bodily harm.

## 32.    MANAGEMENT RIGHTS

(a)    The management of the Employer's business and the direction of operations and the workforce are vested solely in the Employer and except as otherwise specifically provided for in this Agreement, the Employer's management prerogative shall not be deemed limited.  The parties agree that all inherent and common law management functions, rights and responsibilities of the Employer which are not specifically modified or restricted by a specific provision of this Agreement are retained by and shall remain the exclusive function of the Employer.  The Employer's failure to exercise any right hereby reserved to it or its exercising any right in a particular way shall not be deemed a waiver of any such right or preclude the Employer from exercising the same in some other way not in conflict with the express terms of this Agreement.

(b)    The Employer retains the right and authority to determine in accordance with its judgment matters of policy including but not limited to:  to determine the functions, programs and objectives of the Employer and efficiently fulfill such functions and objectives including the transfer or alteration of any services or operations; to determine the types and standards of services to be delivered and the products and services to be sold; to determine the budget; to determine how technology and/or new methods may be utilized to improve the Employer's operations; to determine the Employer's organizational structure; to hire, promote, retire, demote, transfer, lay off and recall employees to work; to determine the starting and quitting time and the number of hours and shifts to be

worked; to establish and modify attendance and tardiness policies and procedures; to maintain and improve the efficiency and effectiveness of employees and of the Employer's operations; to determine the overall methods, process, means, or personnel by which the Employer's operations are to be conducted; to determine the assignment of work and the size and composition of the work force; to establish, change, combine or abolish job classifications and the job content thereof; to transfer employees from job to job and shift to shift, and to change, add to or reduce the number of shifts and work schedules; to introduce new or improved service methods, materials, machinery and equipment; to determine the location at which work is to be done; to subcontract, contract out or outsource work; to reprimand, suspend, discipline, or discharge employees for just cause; to determine the adequacy of the work force; to close down its operations or any part thereof or expand, reduce, alter, combine, transfer, assign or cease any job, function, department, operation or service; to direct, supervise, or evaluate employees and to effectively manage the work force; to choose the factors to consider and standards to use when selecting or evaluating employees; and to make or change and enforce rules, policies and practices not in conflict with the provisions of this Agreement, including the right to test applicants, newly-hired and existing employees for substance abuse.

## 33.   EMPLOYMENT RECORDS

(a)   The Employer agrees to maintain a system of keeping time, payrolls and Employees' records of service, as well as records pertaining to employment rates and hours of pay, payment for insurance and other contributions provided for in this Agreement or required by law.  Employees shall be paid and their attendance shall be monitored on the basis of time recorded by whatever means is used by the Employer from time to time.  Such records shall be made available to an authorized Union representative on reasonable demand, and he shall have the right to inspect same.

(b)   The Union agrees to share with the Employer any information, records and other documents regarding an employee that it may have in its possession.  Such records shall be made available to an authorized Employer representative on reasonable demand, and he shall have the right to inspect same.

## 34.   SICK LEAVE

(a)   Employees who have completed their probationary period shall generally be entitled to up to six (6) days of sick leave per calendar year, accrued on the last calendar day of each month that they are on an active payroll status at the rate of four (4) hours per month.  Employees shall be entitled to accumulate unused sick leave only up to a maximum of twelve (12) days of sick leave, after which no further sick leave will accrue until the sick leave accrual drops below twelve (12) days.

(b)    Employees shall be entitled to use accrued but unused sick leave to provide income protection in the event of: the illness or injury of the employee; medical or dental examination or treatment of the employee which cannot be scheduled during non-working hours; or the serious health condition of the employee or the need to care for a spouse, child or parent who has a serious health condition in accordance with the provisions of the Family and Medical Leave policy. Sick leave may be used only upon advance notification to, and agreement with, the Employer.

(c)    Sick leave is charged, and sick leave pay is paid, in quarter-of-an-hour increments for all scheduled working time lost while on sick leave. Employees may, if necessary, take more sick leave than they have accrued at the time the leave is taken, but may not take more sick leave than they will accrue if they remain on active payroll status until the end of the calendar year. If an employee who quits or is terminated has taken sick leave in excess of that which the employee has accrued, the amount of excess sick leave pay paid to the employee shall be subtracted or deducted from his or her final wages. Employees may use sick leave on the first day of absence for authorized reasons. Medical evidence in the form of a written statement from a physician that the employee is unable to perform his/her duties shall be required for absences for medical reasons of three (3) or more consecutive scheduled work days or seven (7) or more total work days in a thirty (30) calendar day period.

(d)    Sick leave pay is one (1) hour of pay at the employee's basic hourly rate for each hour of accrued sick leave that is used. An employee shall not be paid more than eight (8) hours of sick leave pay for any day of such leave, nor shall an employee be paid sick leave pay for hours that the employee worked. Sick leave shall be paid at the rate of pay in effect when utilized. An employee shall not be paid any other leave pay, such as vacation, for the same hours that he has been paid sick leave pay. An employee shall not be paid sick leave pay for the same hours, days, weeks or months for which he is receiving workers' compensation income benefits or any other form of disability income benefits. Employees will not receive sick leave pay for any unused sick leave either while they are employed by the Employer or upon the termination of their employment, except that any employee having 12 days of unused sick leave may, at the employee's election, be paid for up to six (6) days of sick leave in lieu of such leave.

(e)    Before they are permitted to return to work, employees who have been off from work due to illness or injury for five (5) or more consecutive work days must present to the Employer a certificate from the employee's physician attesting to the employee's fitness for duty. Employees who become totally and permanently disabled may be permanently replaced. Under certain circumstances, the use of sick leave may be governed by the provisions the Family and Medical Leave Act and/or provisions of this Agreement or the Employer's policy relating to that law. To the extent such provisions apply and are inconsistent with the provisions of this Article, the provisions of the FMLA policy and the FMLA provisions of this Agreement shall govern.

**35.**   **JURY AND WITNESS DUTY**

(a)   An employee who is called to jury duty service on a day that he or she is scheduled to work and who provides notice to the Employer as required by this paragraph shall be excused from work for the period which the employee serves on jury duty.  Promptly upon receiving a notice to serve as a juror, an employee shall notify the General Manager of the date(s) the employee is to report for jury duty service.  Upon request by the Employer, the employee shall provide a copy of the summons or notice.

(b)   For each of the first three days of jury service, the Employer will pay the employee the difference between what he or she received as jury duty pay and his or her regular straight time pay.  An employee may not receive more than eight (8) hours of jury duty pay per day, nor shall any employee receive jury duty pay in addition to another form of leave pay for hours on jury duty.  An employee shall not be paid any form of jury duty leave pay for hours that the employee worked. Following the third day of jury service, the Employer will place the employee in an unpaid leave of absence until his jury service ends, and he becomes available to work.  Employees may take accrued vacation leave for time lost while on jury service.  Employees on jury duty will attempt to spend as much time as is possible on their regular jobs, and to take no more leave than necessary and authorized.

(c)   In no event shall an employee be entitled to more than six (6) days of paid jury duty in any calendar year.  The Employer shall be required to maintain an employee's benefits and seniority for periods of Employer-paid jury duty.  On the last day of jury duty the employee shall notify the Employer prior to being released.  If said release is before twelve noon, the Employer shall advise the employee whether he shall report for the remainder of the day.

(d)   Where an employee is subpoenaed to attend a criminal proceeding as a witness, or attends as a victim,  the provisions of this Agreement relating to jury duty, including notice, pay and leave, shall apply.  Upon request of the Employer, the employee shall provide the General Manager with the name and telephone number of the district attorney or other official who sought the employee's attendance in connection with these proceedings.

(e)   An employee who is subpoenaed to testify, or who desires to participate in any capacity, in any other civil, criminal or agency proceeding, arbitration, mediation, or other proceeding before a legally constituted body, may request to use accrued vacation leave or an unpaid leave of absence in connection with such activities.

**36.**   **ALTERATION OF AGREEMENT AND WAIVER**

(a)   Except as otherwise provided by the terms of this Agreement, the Employer shall not enter into any individual contracts or agreements of any kind with any Employee which shall in any manner or form change or attempt to change,

26

modify or nullify any of the terms and conditions of this Agreement, and any such agreement, if made orally or otherwise, shall be void and of no force and effect. No amendment or revision of any of the terms or conditions contained in this Agreement shall be binding upon the parties unless executed in writing by the Union and the Employer. Any interpretation or application of any provision of this Agreement agreed upon by the Union and the Employer in writing shall be binding upon all employees, unless otherwise specifically provided in the written interpretation or application. The waiver of any breach or condition of this Agreement by either party shall not constitute a precedent in the future enforcement of any or all the terms and conditions herein.

(b)     This Agreement, and any supplement to it, embody the complete and final understanding reached by the parties as to the wages, hours and all other terms and conditions of employment of all employees, and any prior oral or written understandings, agreements or practices not incorporated in this Agreement are superseded by its terms. The Employer may eliminate past practices and local privileges, except as may be expressly stated in this Agreement. Neither party is bound or obligated by any promise not contained in this Agreement.

(c)     During the negotiations leading to the execution of this Agreement, the Union had the unlimited right to make demands and full opportunities to submit all items appropriate to and not removed by law from collective bargaining. The understandings and agreements arrived at by the parties after the Union's exercise of that right and those opportunities are fully set forth herein. For the duration of this Agreement, the Union voluntarily, unequivocally and expressly waives the right to submit for negotiation, and agrees that the Employer shall not be obligated to bargain collectively or individually with respect to, any subject or matter specifically referred to or covered in this Agreement, even though such subject or matters may not have been within the knowledge or contemplation of either or both parties at the time they negotiated or executed this Agreement.

## 37.    TERM OF AGREEMENT

This Agreement shall become effective at 12:01 a.m. on November 1, 2001, and shall remain in full force in effect until 12:01 a.m. on October 31, 2004.

IN WITNESS WHEREOF, this Agreement has been duly executed by the parties the day and year set forth below.

LOCAL 813, IBT

By:   /s/ Ronald G. Collins          By:   /s/ Brian McElhoney
          (Signature)                          (Signature)

By:   Ronald G. Collins           By:   Brian McElhoney
          (Please Print)                       (Please Print)

Title:   Vice President, Operations      Title:   Sr. Business Agent

Date:   November 7, 2001            Date:   November 1, 2001

PI-1059189v1

APPENDIX "A"

BASIC WAGE RATES

SECTION 5(a)

(a)     The basic wage rate for Licensed Funeral Directors shall be as follows:

LICENSED FUNERAL DIRECTORS

|  | First Contract Year | Second | Third |
|---|---|---|---|
| Hourly | $ 21.00 | $ 23.00 | $ 24.00 |
| Daily   (based on 8 hours worked) | $168.00 | $184.00 | $192.00 |
| Weekly (based on 40 hrs. worked) | $840.00 | $920.00 | $960.00 |

(b)     The minimum starting rate for new Directors shall be eighty percent (80%) of the minimum Director's rate for the first six (6) months of employment; eighty-five percent (85%) for the second six (6) months of employment; ninety percent (90%) for the third six (6) months of employment; and one hundred percent (100%) thereafter. The foregoing shall not apply to Licensed Funeral Directors who were hired with eighteen (18) or more moths of experience. Such employees shall be paid no less than the minimum rate of pay in effect for Director at their time of hire.

(c)     Any employee who has been employed by the Employer for a continuous period of 14 years or more as of the date of execution of this Agreement shall receive the basic wage rate of $24.00 per hour during the term of this Agreement.

NEW LICENSED FUNERAL DIRECTORS (INCLUDES FORMER RESIDENTS)

1.     First six (6) months of Employment - 80% of Directors Rate

|  | First Contract Year | Second | Third |
|---|---|---|---|
| Hourly | $ 16.80 | $ 18.40 | $ 19.20 |
| Daily   (based on 8 hours worked) | $134.40 | $147.20 | $153.60 |
| Weekly (based on 40 hrs. worked) | $672.00 | $736.00 | $768.00 |

2.     Second six (6) months of Employment - 85% of Directors Rate

|  | First Contract Year | Second | Third |
|---|---|---|---|
| Hourly | $ 17.85 | $ 19.55 | $ 20.40 |
| Daily   (based on 8 hours worked) | $142.80 | $156.40 | $163.20 |
| Weekly (based on 40 hrs. worked) | $714.00 | $782.00 | $816.00 |

3.     Third six (6) months of Employment - 90% of Directors Rate

|  | First Contract Year | Second | Third |
|---|---|---|---|
| Hourly | $ 18.90 | $ 20.70 | $ 21.60 |
| Daily   (based on 8 hours worked) | $151.20 | $165.60 | $172.80 |
| Weekly (based on 40 hrs. worked) | $756.00 | $828.00 | $864.00 |

(d)     The minimum starting rate for Registered Residents covered hereby shall be seventy percent (70%) of the minimum Director's rate in effect at their time of hire.

## REGISTERED RESIDENTS - 70% OF DIRECTORS RATE

|  | First Contract Year | Second | Third |
|---|---|---|---|
| Hourly | $ 14.70 | $ 16.10 | $ 16.80 |
| Daily   (based on 8 hours worked) | $117.60 | $128.80 | $134.40 |
| Weekly (based on 40 hrs. worked) | $588.00 | $644.00 | $672.00 |

<u>Memorandum of Agreement</u>

During negotiations leading to the Agreement between Vernon C. Wagner Funeral Homes, Inc. ("Employer") and Local 813 affiliated with International Brotherhood of Teamsters, AFL-CIO ("Union") dated November 1, 2001 (hereinafter, the "Agreement"), the parties discussed and agreed upon a procedure by which employees may be called in to work on recall overtime and be paid for such work (Article 26(c)). Since that time, the parties have had further discussions relating to procedures for implementing the on-call sign-up sheet (pursuant to the final sentence in Article 26(c)(1)) and the compensation of employees who work recall overtime (currently provided for in Article 26(c)(3)).

As a result of those discussions, the Employer and the Union have agreed to the following limited modification to the procedure outlined in Article 26(c), which will be used for a one-year period beginning on the first pay period beginning on or after June 1, 2002 ("trial period"). All terms shall retain their definitions set forth in the Agreement.

1. The parties agree that during the trial period, the procedure described in Article 26(c)(1) shall be amended to provide that employees who place their names on the on-call sign-up sheet may specify either a period of one day (24 hours), or a period of less than one day (24 hours) but not less than eight (8) hours, during which they may be called in to work. The Union will see to it that employees sign up for an equal amount of day and night recall overtime. All other aspects of Article 26(c)(1) and (2) shall remain unchanged.

2. The parties agree that Article 26(c)(3) shall be modified to provide that an employee who performs recall overtime pursuant to Article 26(c) shall be paid a minimum of three (3) hours at one and one-half times the employee's basic hourly rate.

   a. It is understood that if an employee is recalled or called out to perform a task (e.g., a removal), and there is more than one of the same task to perform, the employee will be compensated only once for the recall, i.e., the greater of three (3) hours or the number of hours actually worked, at time and one-half.

   b. It is further understood that if an employee is recalled to perform a multi-task assignment (e.g., a removal and an embalming), the employee will be paid the greater of (i) three (3) hours for <u>each</u> task, and (ii) the number of hours actually worked, at time and one-half of the employee's basic hourly rate. All other aspects of Article 26(c)(3) shall remain unchanged.

At the end of the one-year trial period, this memorandum of agreement shall terminate, and the provisions of Article 26 of the Agreement shall apply for the remaining term of the Agreement, unless the parties mutually agree in writing to extend or amend this memorandum of agreement.

Employer                                Union


by:    /s/ Ronald G. Collins_____          by   /s/ Brian McElhoney, Sr. B.A._____

        Date    06/05/02                        Date    05/20/02


PI-1059189v1