**Exhibit T**

PII-1206369v1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HELM, et al.<br>On behalf of themselves and all employees similarly situated,<br><br>    Plaintiffs,<br>vs.<br><br>ALDERWOODS GROUP, INC., et al.<br><br>    Defendants. | CASE NO. 3:08-CV-01184 SI<br><br>**DECLARATION OF MONICA BERRYHILL** |

## DECLARATION OF MONICA BERRYHILL

I, Monica Berryhill, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

1. I am over 21 years of age, have personal knowledge of the facts set forth in this declaration, and could testify to them competently if called to do so.

2. I am currently the Location Manager at Bell Brothers and Jarvi Dowd Funeral Homes in Duluth, Minnesota. I started working at these locations in 1993. I first became location manager at Bell Brothers and Jarvi Dowd in 2002, and I remained in that position until 2004.

3. From 2004 to 2006, I worked for Alderwoods Group, Inc. in Learning and Development as a Geographic Trainer for Alderwoods' Western Geography, which encompassed locations west of Ohio. In that position, I was responsible for coordinating training for employees in my territory. I am familiar with the training programs that applied to both exempt and non-exempt employees, the method by which they were created, the method by which employees were to be trained, and the job positions to which the training was applicable.

4. I had two counterparts who held my position in Alderwoods' Northeast U.S. and Southeast U.S. Geographies. The Trainers in all three territories relied on location-level managers to conduct training for all employees who worked at the location level. Geographic Trainers were not expected to, nor did they, conduct training for location-level employees unless there were unique circumstances at a location, such as a manager not capable of performing the training.

5. Because Alderwoods relied on Location Managers to conduct training, and because some Location Managers were better at training their employees than others, both the type of training and the quality of training varied greatly from location to location. Moreover, because the job responsibilities for employees would vary greatly from location to location, the training actually received even by people in the same job positions varied to a great degree nationwide.

6. Training of non-exempt employees was expected to be conducted at the locations where they worked and it is my understanding that is where is was conducted. There were no computer training modules to my knowledge; indeed, many locations did not have sufficient computers to train employees. Rather, training was done in person by management employees.

7. I am familiar with the non-exempt positions at Alderwoods and the type of training those positions received.

8. Certain positions generally received very little training. For example, Gravediggers, Groundskeepers, and Maintenance employees received comparatively little training. To the extent they received training, it was generally on topics such as Driver's Safety and Staff Appearance. Funeral Directors and Location Managers received more training across a variety of subject areas. Moreover, where Gravediggers, Groundskeepers, and Maintenance employees would likely never have to go off-site for training, other employees like Funeral Directors and Embalmers may have to go offsite for certain kinds of training on rare occasions.

9. Alderwoods did not require all employees to obtain insurance licenses to sell pre-need insurance policies to customers. In fact, not all states even require licenses to sell pre-need. To my knowledge, while Alderwoods did not require anyone to obtain an insurance license, some employees were encouraged to obtain them to the extent they did not already have them before joining Alderwoods. When employees did obtain insurance licenses, it almost always was Funeral Directors or someone on a sales team like Family Services Counselors, not employees in all positions. Even among these positions, many had licenses prior to joining Alderwoods.

10. Alderwoods' policy always was that employees were to be paid for all time spent in company-mandated training. On any rare occasions when employees trained away from the location or after business hours, they also were required to record their time and were compensated for it. Alderwoods' corporate training did not require individual study time outside work, nor did it require exams outside work.

11. Some of Alderwoods' training programs could constitute continuing education for those employees who required continuing education for their licenses. These programs would not be designed specifically for the purpose of receiving continuing education credit, but nonetheless

could earn the employees credit if approved by state regulatory bodies. Thus, after the employees completed certain training, I would apply to state regulatory bodies for continuing education credit for those employees whose licenses required it. I am not aware of any job titles that required continuing education other than licensed Funeral Directors and Embalmers. This type of training, like all others, was fully compensated by Alderwoods.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 11, 2009

Monica P. Berryhill
Monica Berryhill

- 3 -