# EXHIBIT 37

PR260

9/22/2008

**SCI FUNERAL & CEMETERY PURCHASING COOP, INC.**

Check Detail Listing

Page 1 of 21

---

Lawson

PSID: ALDF / AWG Dept = 3139

| SSN | Name | Check Date | Check Number | | | |
|---|---|---|---|---|---|---|
| | SEIZ, WARREN L | 07/29/2005 | 50136606 | Loc 7017 Phoenix Memorial Park and Mortuary | | |

| | | | | Gross Wages 2,374.84 | | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds |
|---|---|---|---|---|---|---|---|
| Overtime | 13.78 | 475.41 | Arizona State Tax | 102.01 | 2,374.84 | | |
| Overtime Adjustm | 0.00 | 4.43 | Employee Medicare | 34.44 | | | |
| Piecework | | 55.00 | Employee Soc Sec | 147.24 | | | |
| Regular | 80.00 | 1,840.00 | Federal Withholdin | 443.52 | | | |

| Tax Deds | Other Deds | Net Pay |
|---|---|---|
| 727.21 | | 1,647.63 |

---

Lawson

PSID: ALDF / AWG Dept = 3139

| SSN | Name | Check Date | Check Number | | |
|---|---|---|---|---|---|
| | SEIZ, WARREN L | 08/12/2005 | 50348581 | Loc 7017 Phoenix Memorial Park and Mortuary | |

| | | | Gross Wages 2,759.77 | | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds |
|---|---|---|---|---|---|---|---|
| Overtime | 26.66 | 919.77 | Arizona State Tax | 124.67 | 2,759.77 | | |
| Regular | 80.00 | 1,840.00 | Employee Medicare | 40.01 | | | |
| | | | Employee Soc Sec | 171.11 | | | |
| | | | Federal Withholdin | 542.06 | | | |

| Tax Deds | Other Deds | Net Pay |
|---|---|---|
| 877.85 | | 1,881.92 |

---

Lawson

PSID: ALDF / AWG Dept = 3139

| SSN | Name | Check Date | Check Number | | |
|---|---|---|---|---|---|
| | SEIZ, WARREN L | 08/26/2005 | 50356459 | Loc 7017 Phoenix Memorial Park and Mortuary | |

| | | | Gross Wages 2,787.03 | | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds |
|---|---|---|---|---|---|---|---|
| Overtime | 27.45 | 947.03 | Arizona State Tax | 126.43 | 2,787.03 | | |
| Regular | 80.00 | 1,840.00 | Employee Medicare | 40.41 | | | |
| | | | Employee Soc Sec | 172.79 | | | |
| | | | Federal Withholdin | 549.70 | | | |

| Tax Deds | Other Deds | Net Pay |
|---|---|---|
| 889.33 | | 1,897.70 |

---

Lawson

PSID: ALDF / AWG Dept = 3139

| SSN | Name | Check Date | Check Number | | |
|---|---|---|---|---|---|
| | SEIZ, WARREN L | 09/09/2005 | 50364238 | Loc 7017 Phoenix Memorial Park and Mortuary | |

| | | | Gross Wages 2,246.76 | | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds |
|---|---|---|---|---|---|---|---|
| Overtime | 11.79 | 406.76 | Arizona State Tax | 94.65 | 2,246.76 | | |
| Regular | 80.00 | 1,840.00 | Employee Medicare | 32.58 | | | |
| | | | Employee Soc Sec | 139.20 | | | |
| | | | Federal Withholdin | 411.50 | | | |

| Tax Deds | Other Deds | Net Pay |
|---|---|---|
| 678.03 | | 1,568.73 |

ALD(HELM)01284.

# EXHIBIT 38

REDACTED

SCI FUNERAL & CEMETERY PURCHASING COOP, INC

Check Detail Listing

Page 1 of 7

PR260

**Lawson**

PSID- ALDF/AWG Dept #2920

| Name | Check Date | Check Number | | Loc 7037 Seaside Funeral Home | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SPIESE, JODY P | 12/05/2003 | 50147236 | | | Gross Wages 1,880.00 | | Pretax Deds | Tax Deds 575.40 | Other Deds | Net Pay 1,304.60 |

SSN

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 160.00 | California SDI | 16.92 | 1,880.00 | | | | | |
| Overtime | 8.00 | 240.00 | California State Ta | 91.97 | 1,880.00 | | | | | |
| Piecework | 0.00 | 40.00 | Employee Medicar | 27.26 | 1,880.00 | | | | | |
| Regular | 72.00 | 1,440.00 | Employee Soc Sec | 116.56 | 1,880.00 | | | | | |
| | | | Federal Withholdin | 322.69 | 1,880.00 | | | | | |

**Lawson**

PSID- ALDF/AWG Dept #2920

| Name | Check Date | Check Number | | Loc 7037 Seaside Funeral Home | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SPIESE, JODY P | 12/19/2003 | 50147365 | | | Gross Wages 2,002.60 | | Pretax Deds | Tax Deds 627.93 | Other Deds | Net Pay 1,374.67 |

SSN

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|
| Overtime | 12.00 | 360.00 | California SDI | 18.02 | 2,002.60 | | | | | |
| Overtime Adjustmo | 0.00 | 2.60 | California State Ta | 103.37 | 2,002.60 | | | | | |
| Piecework | 0.00 | 40.00 | Employee Medicar | 29.04 | 2,002.60 | | | | | |
| Regular | 80.00 | 1,600.00 | Employee Soc Sec | 124.16 | 2,002.60 | | | | | |
| | | | Federal Withholdin | 353.34 | 2,002.60 | | | | | |

**Lawson**

PSID- ALDF/AWG Dept #2920

| Name | Check Date | Check Number | | Loc 7037 Seaside Funeral Home | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SPIESE, JODY P | 01/02/2004 | 50151277 | | | Gross Wages 2,063.31 | | Pretax Deds 9.69 | Tax Deds 651.97 | Other Deds 8.31 | Net Pay 1,393.34 |

SSN

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 160.00 | California SDI | 24.13 | 2,045.31 | PPO 500/MEDICA | 8.31 | | | |
| Overtime | 12.50 | 375.00 | California State Ta | 107.33 | 2,045.31 | Pre-Tax Dental | 9.69 | | | |
| Overtime Adjustmo | 0.00 | 8.31 | Employee Medicar | 29.66 | 2,045.31 | | | | | |
| Piecework | 0.00 | 80.00 | Employee Soc Sec | 126.81 | 2,045.31 | | | | | |
| Regular | 72.00 | 1,440.00 | Federal Withholdin | 364.02 | 2,045.31 | | Amount | Company Ded | Company PPO 500 201.69 | Amount |

ALDF(HELM)00612

TPE260

9/12/2008

SCI FUNERAL & CEMETERY PURCHASING COOP, INC

Check Detail Listing

Page 3 of 7

## Lawson

PSID: ALDF / AWG Dept = 2920

SSN:

| Name | Check Date | Check Number | Loc: 7037 Seaside Funeral Home | | | | |
|---|---|---|---|---|---|---|---|
| SPIESE, JODY P. | 01/16/2004 | 50135166 | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| 1   SPIESE, JODY P. | | | 2,755.00 | 9.60 | 953.25 | 8.31 | 1,783.65 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 160.00 | California SDI | 32.30 | 2,737.00 | PPO 500 MEDICA | 8.31 | Company PPO 500 | 201.69 |
| Overtime | 38.50 | 1,155.00 | California State Ta | 171.67 | 2,737.00 | Pre-Tax Denial | | | |
| Regular | 72.00 | 1,440.00 | Employee Medicar | 39.68 | 2,737.00 | | | | |
| | | | Employee Soc Sec | 169.60 | 2,737.00 | | | | |
| | | | Federal Withholdin | 540.01 | | | | | |

## Lawson

PSID: ALDF / AWG Dept = 2920

SSN:

| Name | Check Date | Check Number | Loc: 7037 Seaside Funeral Home | | | | |
|---|---|---|---|---|---|---|---|
| SPIESE, JODY P. | 01/30/2004 | 50139196 | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | | | 1,955.95 | 9.69 | 605.67 | 8.31 | 1,332.28 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 10.50 | 315.00 | California SDI | 22.87 | 1,937.95 | PPO 500 MEDICA | 8.31 | Company PPO 500 | 201.69 |
| Overtime Adjustm | 0.00 | 0.95 | California State Ta | 97.36 | 1,937.95 | Pre-Tax Denial | 9.69 | | |
| Piecework | 0.00 | 40.00 | Employee Medicar | 38.10 | 1,937.95 | | | | |
| Regular | 80.00 | 1,600.00 | Employee Soc Sec | 120.16 | 1,937.95 | | | | |
| | | | Federal Withholdin | 327.18 | 1,937.95 | | | | |

## Lawson

PSID: ALDF / AWG Dept = 2920

SSN:

| Name | Check Date | Check Number | Loc: 7037 Seaside Funeral Home | | | | |
|---|---|---|---|---|---|---|---|
| SPIESE, JODY P. | 02/13/2004 | 50163133 | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | | | 1,780.00 | 9.69 | 529.77 | 8.31 | 1,232.23 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 6.00 | 180.00 | California SDI | 20.79 | 1,762.00 | PPO 500 MEDICA | 8.31 | Company PPO 500 | 201.69 |
| Regular | 80.00 | 1,600.00 | California State Ta | 81.00 | 1,762.00 | Pre-Tax Denial | 9.69 | | |
| | | | Employee Medicar | 25.55 | 1,762.00 | | | | |
| | | | Employee Soc Sec | 109.24 | 1,762.00 | | | | |
| | | | Federal Withholdin | 293.19 | 1,762.00 | | | | |

ALD(HELM)00613

PRIVAC[watermark]

PR260

**SCI FUNERAL & CEMETERY PURCHASING COOP, INC**

Check Detail Listing

Page 3 of 7

---

Lawson

PSTD: ALDF / AWG Dept * 2920

| Name | SPIESE, JODY P |
|---|---|

SSN:

Loc: 7037 Seaside Funeral Home

| Check Date | Check Number | Gross Wages | Pretax Ded | Tax Ded | Other Ded | Net Pay |
|---|---|---|---|---|---|---|
| 02/27/2004 | 50167132 | 1,971.39 | 9.69 | 612.35 | 8.31 | 1,341.06 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 11.00 | 330.00 | California SDI | 23.05 | 1,953.39 | PPO 590 MEDICA | 8.31 | Company PPO 590 | 201.69 |
| Overtime Adjustmen | 0.00 | 1.39 | California State Ta | 98.80 | 1,953.39 | Pre-Tax Dental | 9.69 | | |
| Piecework | 0.00 | -40.00 | Employee Medicar | 28.33 | 1,953.39 | | | | |
| Regular | 80.00 | 1,680.00 | Employee Soc Sec | 121.11 | 1,953.39 | | | | |
| | | | Federal Withholdin | 341.04 | 1,953.39 | | | | |

---

Lawson

PSTD: ALDF / AWG Dept * 2920

| Name | SPIESE, JODY P |
|---|---|

SSN:

Loc: 7037 Seaside Funeral Home

| Check Date | Check Number | Gross Wages | Pretax Ded | Tax Ded | Other Ded | Net Pay |
|---|---|---|---|---|---|---|
| 03/12/2004 | 50171074 | 2,110.00 | 9.69 | 672.10 | 8.31 | 1,419.90 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 17.00 | 510.00 | California SDI | 24.67 | 2,092.00 | PPO 590 MEDICA | 8.31 | Company PPO 590 | 201.69 |
| Regular | 80.00 | 1,600.00 | California State Ta | 111.69 | 2,092.00 | Pre-Tax Dental | 9.69 | WCB Accrual | 156.27 |
| | | | Employee Medicar | 30.33 | 2,092.00 | | | | |
| | | | Employee Soc Sec | 129.70 | 2,092.00 | | | | |
| | | | Federal Withholdin | 375.69 | 2,092.00 | | | | |

---

Lawson

PSTD: ALDF / AWG Dept * 2920

| Name | SPIESE, JODY P |
|---|---|

SSN:

Loc: 7037 Seaside Funeral Home

| Check Date | Check Number | Gross Wages | Pretax Ded | Tax Ded | Other Ded | Net Pay |
|---|---|---|---|---|---|---|
| 03/26/2004 | 50175150 | 1,947.00 | 9.69 | 596.97 | 8.31 | 1,325.03 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 6.00 | 180.00 | California SDI | 22.68 | 1,922.00 | PPO 590 MEDICA | 8.31 | Company PPO 590 | 201.69 |
| Regular | 72.00 | 1,440.00 | California State Ta | 94.06 | 1,922.00 | Pre-Tax Dental | 9.69 | WCB Accrual | 132.02 |
| Sick | 16.00 | 330.00 | Employee Medicar | 27.87 | 1,922.00 | | | | |
| | | | Employee Soc Sec | 119.17 | 1,922.00 | | | | |
| | | | Federal Withholdin | 333.19 | 1,922.00 | | | | |

ALD(HELM)00614

9/12/2008

PR260

**SCI FUNERAL & CEMETERY PURCHASING COOP. INC**

Check Detail Listing

Lawson

PSID: ALDF / AWG Dept = 2920

| SSN | Name | Check Date | Check Number | Loc: 7037 Seaside Funeral Home | | | | |
|-----|------|-----------|--------------|-------------------|------------|----------|------------|---------|
| | SPIESE, JODY P | 04/08/2004 | 50179088 | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | | | | 1,960.00 | 9.69 | 579.71 | 8.31 | 1,302.29 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|--------|-------------|--------|
| Overtime | 10.00 | 300.00 | California SDI | 22.21 | 1,882.00 | PPO 500 MEDICA | 8.31 | Company PPO 500 | 201.69 |
| Regular | 72.00 | 1,440.00 | California State Tax | 90.34 | 1,882.00 | Pre-Tax Dental | 9.69 | WCB Accrual | 126.34 |
| Sick | 8.00 | 160.00 | Employee Medicare | 27.29 | 1,882.00 | | | | |
| | | | Employee Soc Sec | 116.68 | 1,882.00 | | | | |
| | | | Federal Withholding | 323.19 | 1,882.00 | | | | |

Lawson

PSID: ALDF / AWG Dept = 2920

| SSN | Name | Check Date | Check Number | Loc: 7037 Seaside Funeral Home | | | | |
|-----|------|-----------|--------------|-------------------|------------|----------|------------|---------|
| | SPIESE, JODY P | 04/23/2004 | 50183130 | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | | | | 2,200.00 | 9.69 | 709.11 | 8.31 | 1,472.89 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|--------|-------------|--------|
| Overtime | 20.00 | 600.00 | California SDI | 25.75 | 2,182.00 | PPO 500 MEDICA | 8.31 | Company PPO 500 | 201.69 |
| Regular | 80.00 | 1,600.00 | California State Tax | 118.24 | 2,182.00 | Pre-Tax Dental | 9.69 | WCB Accrual | 140.52 |
| | | | Employee Medicare | 31.64 | 2,182.00 | | | | |
| | | | Employee Soc Sec | 135.29 | 2,182.00 | | | | |
| | | | Federal Withholding | 308.19 | 2,182.00 | | | | |

Lawson

PSID: ALDF / AWG Dept = 2920

| SSN | Name | Check Date | Check Number | Loc: 7037 Seaside Funeral Home | | | | |
|-----|------|-----------|--------------|-------------------|------------|----------|------------|---------|
| | SPIESE, JODY P | 05/07/2004 | 50187068 | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | | | | 1,775.50 | 9.69 | 525.78 | 8.31 | 1,231.22 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|--------|-------------|--------|
| Overtime | 4.50 | 135.00 | California SDI | 20.73 | 1,757.00 | PPO 500 MEDICA | 8.31 | Company PPO 500 | 201.69 |
| Piecework | 0.00 | 40.00 | California State Tax | 78.71 | 1,757.00 | Pre-Tax Dental | 9.69 | WCB Accrual | 121.38 |
| Regular | 80.00 | 1,600.00 | Employee Medicare | 25.47 | 1,757.00 | | | | |
| | | | Employee Soc Sec | 108.93 | 1,757.00 | | | | |
| | | | Federal Withholding | 291.94 | 1,757.00 | | | | |

ALD(HELM)006815

# EXHIBIT 39

PR260

## SCI FUNERAL & CEMETERY PURCHASING COOP, INC

### Check Detail Listing

**Lawson**

PSID: ALDF / AWG Dept = 3595

| SSN | Name | Check Date | Check Number | Loc: 7457 McReynolds Neve & Larson Funeral Home |
|---|---|---|---|---|
| | TILLER, STEVEN D | 12/05/2003 | 50144894 | |

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 88.00 | Employee Medicare | 19.58 | 1,498.46 | 25.85 | 232.16 | 120.46 | 1,117.99 |
| Overtime | 30.00 | 495.00 | Employee Soc Sec | 83.71 | Taxable | Other Ded | | Company Ded | Amount |
| Overtime Adjustm | 0.00 | 3.45 | Federal Withholdin | 128.87 | 1,350.15 | HMO Medical | | Company Portion F | 411.69 |
| Piecework | 0.00 | | | | Pre-Tax Dental | | | 120.46 | |
| Regular | 80.00 | 880.00 | | | 1,350.15 | | | | |
| | 80.00 | 20.00 | | | | | | | |

**Lawson**

PSID: ALDF / AWG Dept = 3595

| SSN | Name | Check Date | Check Number | Loc: 7457 McReynolds Neve & Larson Funeral Home |
|---|---|---|---|---|
| | TILLER, STEVEN D | 12/19/2003 | 50149932 | |

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 44.50 | 734.25 | Employee Medicare | 23.32 | 1,754.81 | 25.85 | 290.66 | 120.46 | 1,317.84 |
| Overtime Adjustm | 0.00 | 20.56 | Employee Soc Sec | 99.72 | Taxable | Other Ded | | Company Ded | Amount |
| Piecework | 0.00 | 120.00 | Federal Withholdin | 167.62 | 1,608.50 | HMO Medical | | Company Portion F | 411.69 |
| Regular | 80.00 | 880.00 | | | Pre-Tax Dental | | | 120.46 | |
| | 80.00 | | | | 1,608.50 | | | | |

**Lawson**

PSID: ALDF / AWG Dept = 3595

| SSN | Name | Check Date | Check Number | Loc: 7457 McReynolds Neve & Larson Funeral Home |
|---|---|---|---|---|
| | TILLER, STEVEN D | 01/02/2004 | 50152921 | |

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 88.00 | Employee Medicare | 20.05 | 1,555.27 | 25.85 | 239.49 | 156.92 | 1,143.01 |
| Overtime | 30.00 | 495.00 | Employee Soc Sec | 85.72 | Taxable | Other Ded | | Company Ded | Amount |
| Overtime Adjustm | 0.00 | 12.27 | Federal Withholdin | 133.72 | 1,382.50 | PPO 300 MEDICA | | Company PPO 300 | 451.38 |
| Piecework | 0.00 | | | | Pre-Tax Dental | | | 25.85 | |
| Regular | 80.00 | 880.00 | | | 1,382.50 | | | | |
| | 80.00 | 90.00 | | | | | | | |

**Lawson**

PSID: ALDF / AWG Dept = 3595

| SSN | Name | Check Date | Check Number | Loc: 7457 McReynolds Neve & Larson Funeral Home |
|---|---|---|---|---|
| | TILLER, STEVEN D | 01/16/2004 | 50156832 | |

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 88.00 | Employee Medicare | 21.12 | 1,639.91 | 25.85 | 256.38 | 156.92 | 1,200.76 |
| Overtime | 36.50 | 602.25 | Employee Soc Sec | 90.34 | Taxable | Other Ded | | Company Ded | Amount |
| Overtime Adjustm | 0.00 | 9.66 | Federal Withholdin | 144.92 | 1,457.14 | PPO 300 MEDICA | | Company PPO 300 | 451.38 |
| Piecework | 0.00 | 60.00 | | | Pre-Tax Dental | | | 25.85 | |
| Regular | 80.00 | 880.00 | | | 1,457.14 | | | | |

9/127KG08

ALD(-(HELM)01239

PR360

9/12/2008

# SCI FUNERAL & CEMETERY PURCHASING COOP, INC
## Check Detail Listing

Page 2 of 25

---

**Lawson**

PSID: ALDF / AWG Dept = 3595
SSN

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 01/30/2004 | 501608646 |

Loc: 7457 McReynolds Nave & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 2,139.91 | 25.85 | 369.84 | -156.92 | 1,587.50 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 54.00 | 891.00 | Employee Medicar | 28.38 | 1,957.14 | PPO 300 MEDICA | 25.85 | Company PPO 300 | 156.92 |
| Overtime Adjustm | 0.00 | 61.86 | Employee Soc Sec | 121.34 | 1,957.14 | Pre-Tax Dental | 25.85 | | 451.38 |
| Piecework | 0.00 | 307.05 | Federal Withholdin | 219.92 | Pre-Tax Dental | | | | |
| Regular | 80.00 | 880.00 | | | | | | | |

---

**Lawson**

PSID: ALDF / AWG Dept = 3595
SSN

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 02/13/2004 | 501587796 |

Loc: 7457 McReynolds Nave & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 1,782.36 | 25.85 | 288.65 | 156.92 | 1,310.94 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 52.50 | 866.25 | Employee Medicar | 23.20 | 1,599.59 | PPO 300 MEDICA | 25.85 | Company PPO 300 | 156.92 |
| Overtime Adjustm | 0.00 | 6.11 | Employee Soc Sec | 99.17 | 1,599.59 | Pre-Tax Dental | 25.85 | | 451.38 |
| Piecework | 0.00 | 30.00 | Federal Withholdin | 166.28 | Pre-Tax Dental | | | | |
| Regular | 80.00 | 880.00 | | | | | | | |

---

**Lawson**

PSID: ALDF / AWG Dept = 3595
SSN

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 02/27/2004 | 501683771 |

Loc: 7457 McReynolds Nave & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 1,792.62 | 25.85 | 290.98 | 156.92 | 1,318.87 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 46.50 | 767.25 | Employee Medicar | 23.34 | 1,609.85 | PPO 300 MEDICA | 25.85 | Company PPO 300 | 156.92 |
| Overtime Adjustm | 0.00 | 19.52 | Employee Soc Sec | 99.82 | 1,609.85 | Pre-Tax Dental | 25.85 | | 451.38 |
| Piecework | 0.00 | 125.35 | Federal Withholdin | 167.82 | Pre-Tax Dental | | | | |
| Regular | 80.00 | 880.00 | | | | | | | |

---

**Lawson**

PSID: ALDF / AWG Dept = 3595
SSN

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 03/12/2004 | 501727747 |

Loc: 7457 McReynolds Nave & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 1,705.00 | 25.85 | 271.12 | 156.92 | 1,251.11 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 50.00 | 825.00 | Employee Medicar | 22.07 | 1,522.23 | PPO 300 MEDICA | 25.85 | Company PPO 300 | 156.92 |
| Regular | 80.00 | 880.00 | Employee Soc Sec | 94.37 | 1,522.23 | Pre-Tax Dental | 25.85 | WC03 Accrual | 451.38 |
| | | | Federal Withholdin | 154.68 | Pre-Tax Dental | | | | 25.60 |

ALD(HELM)01240

REDACTED

PR260

## SCI FUNERAL & CEMETERY PURCHASING COOP, INC
### Check Detail Listing

---

Lawson

PSID: ALDF / AWG Dept = 3595

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 03/25/2004 | 30133464 |

SSN

Loc: 7457 McReynolds Nave & Larson Funeral Home

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Y/E Bonus taxed at | 0.00 | 1,220.22 | Employee Medicare | 17.70 | 1,220.22 | 1,220.22 | | | 398.42 | | $21.80 |
| | | | Employee Soc Sec | 75.66 | | | WCB Accrual | | | | Amount |
| | | | Federal Withholdin | 205.06 | | 1,220.22 | | | | | 43.68 |

---

Lawson

PSID: ALDF / AWG Dept = 3595

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 03/26/2004 | 50176791 |

SSN

Loc: 7457 McReynolds Nave & Larson Funeral Home

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Overtime | 56.00 | 823.60 | Employee Medicare | 22.07 | 1,703.60 | 1,522.23 | PPO 300 MEDICA | 25.85 | 271.13 | Company PPO 300 | 1,351.10 |
| Regular | 80.00 | 880.00 | Employee Soc Sec | 94.38 | | 1,522.23 | Pre-Tax Dental | 25.85 | | 156.92 | Amount |
| | | | Federal Withholdin | 154.68 | | 1,522.23 | WCB Accrual | | | | 451.38 |
| | | | | | | | | | | | 25.60 |

---

Lawson

PSID: ALDF / AWG Dept = 3595

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 04/09/2004 | 50180752 |

SSN

Loc: 7457 McReynolds Nave & Larson Funeral Home

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Overtime | 30.00 | 495.60 | Employee Medicare | 17.78 | 1,405.09 | 1,226.32 | PPO 300 MEDICA | 25.85 | 204.10 | Company PPO 300 | 1,022.22 |
| Overtime Adjustm | 0.00 | -4.69 | Employee Soc Sec | 76.03 | | 1,226.32 | Pre-Tax Dental | 25.85 | | 156.92 | Amount |
| Regular | 80.00 | 880.00 | Federal Withholdin | 110.29 | | 1,226.32 | WCB Accrual | | | | 451.38 |
| Piecework | -35.00 | | | | | | | | | | 22.27 |

---

Lawson

PSID: ALDF / AWG Dept = 3595

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 04/23/2004 | 50184765 |

SSN

Loc: 7457 McReynolds Nave & Larson Funeral Home

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Overtime | 50.00 | 825.00 | Employee Medicare | 24.01 | 1,838.99 | 1,666.22 | PPO 300 MEDICA | 25.85 | 301.47 | Company PPO 300 | 1,354.75 |
| Overtime Adjustm | 0.00 | 19.14 | Employee Soc Sec | 102.68 | | 1,666.22 | Pre-Tax Dental | 25.85 | | 156.92 | Amount |
| Piecework | 0.00 | 114.85 | Federal Withholdin | 174.78 | | 1,656.22 | WCB Accrual | | | WCB Accrual | 451.38 |
| Regular | 88.00 | 880.00 | | | | | | | | | 28.00 |

5/11/22008

ALD(HELM)01241

REDACTED

232260

97/12/2003

## SCI FUNERAL & CEMETERY PURCHASING COOP, INC

### Check Detail Listing

Page 4 of 215

---

**Lawson**

| PSID: ALDF / AWG Dept = 3595 | | | | | | |
|---|---|---|---|---|---|---|
| SSN: | | | | | | |
| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | |
| TILLER, STEVEN D | 05/07/2004 | 50189761 | Gross Wages 1,632.50 | Pretax Deds 25.85 | Tax Deds 254.73 | Other Deds 156.92 | Net Pay 1,195.00 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|
| Overtime | 35.00 | 577.50 | Employee Medicar | 21.03 | 1,449.73 | PPO 300 MEDICA | Company PPO 300 | 156.92 |
| Overtime Adjustm | 0.00 | 25.00 | Employee Soc Sec | 89.89 | 1,449.73 | Pre-Tax Dental | | 451.38 |
| Piecework | 0.00 | 150.00 | Federal Withholdin | 143.81 | 1,449.73 | | WCB Accrual | 25.78 |
| Regular | 80.00 | 880.00 | | | | | | |

---

**Lawson**

| PSID: ALDF / AWG Dept = 3595 | | | | | | |
|---|---|---|---|---|---|---|
| SSN: | | | | | | |
| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | |
| TILLER, STEVEN D | 05/21/2004 | 50192845 | Gross Wages 2,118.67 | Pretax Deds 25.85 | Tax Deds 364.82 | Other Deds 156.92 | Net Pay 1,571.08 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|
| Overtime | 60.00 | 1,017.00 | Employee Medicar | 28.07 | 1,935.90 | PPO 300 MEDICA | Company PPO 300 | 156.92 |
| Overtime Adjustm | 0.00 | 167.67 | Employee Soc Sec | 120.02 | 1,935.90 | Pre-Tax Dental | | 451.38 |
| Piecework | 0.00 | 30.00 | Federal Withholdin | 216.73 | 1,935.90 | | WCB Accrual | 31.86 |
| Regular | 80.00 | 904.00 | | | | | | |

---

**Lawson**

| PSID: ALDF / AWG Dept = 3595 | | | | | | |
|---|---|---|---|---|---|---|
| SSN: | | | | | | |
| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | |
| TILLER, STEVEN D | 06/04/2004 | 50196827 | Gross Wages 1,582.00 | Pretax Deds 25.85 | Tax Deds 241.27 | Other Deds 156.92 | Net Pay 1,155.96 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|
| Overtime | 40.00 | 678.00 | Employee Medicar | 20.29 | 1,399.23 | PPO 300 MEDICA | Company PPO 300 | 156.92 |
| Regular | 80.00 | 904.00 | Employee Soc Sec | 86.75 | 1,399.23 | Pre-Tax Dental | | 451.38 |
| | | | Federal Withholdin | 134.23 | 1,399.23 | | WCB Accrual | 24.27 |

---

**Lawson**

| PSID: ALDF / AWG Dept = 3595 | | | | | | |
|---|---|---|---|---|---|---|
| SSN: | | | | | | |
| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | |
| TILLER, STEVEN D | 06/18/2004 | 50200859 | Gross Wages 1,862.13 | Pretax Deds 25.85 | Tax Deds 306.95 | Other Deds 156.92 | Net Pay 1,373.41 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 90.40 | Employee Medicar | 24.36 | 1,680.36 | PPO 300 MEDICA | Company PPO 300 | 156.92 |
| Overtime | 47.00 | 796.65 | Employee Soc Sec | 104.19 | 1,680.36 | Pre-Tax Dental | | 451.38 |
| Overtime Adjustm | 0.00 | 12.08 | Federal Withholdin | 178.40 | 1,680.36 | | WCB Accrual | 28.60 |
| Piecework | 0.00 | 60.00 | | | | | | |
| Regular | 80.00 | 904.00 | | | | | | |

ALD(HELM)01242

REDACTED

PR260

**SCI FUNERAL & CEMETERY PURCHASING COOP, INC**

**Check Detail Listing**

Page 5 of 25

---

Lawson

PSID: ALDF / AWG Dept = 3595

SSN

| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | |
|---|---|---|---|---|---|---|---|
| TILLER, STEVEN D | 07/02/2004 | 50204837 | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | | | 1,877.11 | 23.85 | 255.76 | 195.92 | 1,198.58 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Other Deds | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 37.00 | 627.15 | Employee Medicare | 21.09 | 1,454.34 | PPO 300 MEDICA | 156.92 | Company PPO 300 | 195.92 |
| Overtime Adjustm | 0.00 | 13.96 | Employee Soc Sec | 90.17 | 1,454.34 | Pre-Tax Dental | 23.85 | WCB Accrual | 25.56 |
| Piecework | | 90.00 | Federal Withholdin | 144.50 | | | | | |
| Regular | 80.00 | 906.00 | | | | | | | |

---

Lawson

PSID: ALDF / AWG Dept = 3595

SSN

| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | |
|---|---|---|---|---|---|---|---|
| TILLER, STEVEN D | 07/16/2004 | 50208855 | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | | | 1,502.90 | 23.85 | 225.35 | 156.92 | 1,094.78 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Other Deds | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 90.40 | Employee Medicare | 19.14 | 1,320.13 | PPO 300 MEDICA | 156.92 | Company PPO 300 | 156.92 |
| Overtime | 15.00 | 254.25 | Employee Soc Sec | 81.84 | 1,320.13 | Pre-Tax Dental | 23.85 | WCB Accrual | 25.39 |
| Regular | 62.50 | 706.25 | Federal Withholdin | 124.37 | | | | | |
| Vacation | -60.00 | 452.00 | | | | | | | |

---

Lawson

PSID: ALDF / AWG Dept = 3595

SSN

| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | |
|---|---|---|---|---|---|---|---|
| TILLER, STEVEN D | 07/30/2004 | 50212789 | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | | | 1,497.25 | 23.85 | 224.08 | 156.92 | 1,090.40 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Other Deds | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 33.00 | 593.25 | Employee Medicare | 19.06 | 1,314.48 | PPO 300 MEDICA | 156.92 | Company PPO 300 | 156.92 |
| Regular | 80.00 | 904.00 | Employee Soc Sec | 81.50 | 1,314.48 | Pre-Tax Dental | 23.85 | WCB Accrual | 23.36 |
| | | | Federal Withholdin | 123.52 | | | | | |

---

Lawson

PSID: ALDF / AWG Dept = 3595

SSN

| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | |
|---|---|---|---|---|---|---|---|
| TILLER, STEVEN D | 08/13/2004 | 50216789 | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | | | 1,501.90 | 23.85 | 225.14 | 156.92 | 1,095.99 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Other Deds | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 30.00 | 538.51 | Employee Medicare | 19.13 | 1,319.13 | PPO 300 MEDICA | 156.92 | Company PPO 300 | 156.92 |
| Overtime Adjustm | 0.00 | 10.95 | Employee Soc Sec | 81.79 | 1,319.13 | Pre-Tax Dental | 23.85 | WCB Accrual | 23.85 |
| Piecework | | 78.44 | Federal Withholdin | 124.22 | | | | | |
| Regular | 80.00 | 904.00 | | | | | | | |

9/12/2008

PR260

## SCI FUNERAL & CEMETERY PURCHASING COOP, INC.
### Check Detail Listing

### Lawson
PSID: ALDF / AWG Dept = 3595
SSN

| Name | Check Date | Check Number | | | Loc: 7457 McReynolds Nave & Larson Funeral Home |
|------|-----------|--------------|---|---|---|
| TILLER, STEVEN D | 09/27/2004 | 50034692 | | | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|----------|-------|--------|---------|--------|---------|-----------|-------------|----------|------------|---------|
| | | | | | Gross Wages | | | | | |
| | | | | | 1,429.46 | | 23.85 | 208.71 | 156.92 | 1,037.98 |
| Overtime | 31.00 | 525.46 | Employee Medicare | 18.07 | 1,246.69 | PPO 300 MEDICA | | | Company PPO 300 | |
| Regular | 80.00 | 904.00 | Employee Soc Sec | 77.29 | 1,246.69 | Pre-Tax Dental | 23.85 | | 156.92 | |
| | | | Federal Withholdin | 113.35 | 1,246.69 | | | | WCB Accrual | 22.45 |

### Lawson
PSID: ALDF / AWG Dept = 3595
SSN
2

| Name | Check Date | Check Number | | | Loc: 7457 McReynolds Nave & Larson Funeral Home |
|------|-----------|--------------|---|---|---|
| TILLER, STEVEN D | 09/10/2004 | 50033681 | | | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|----------|-------|--------|---------|--------|---------|-----------|-------------|----------|------------|---------|
| | | | | | Gross Wages | | | | | |
| | | | | | 1,685.94 | | 23.85 | 266.82 | 156.92 | 1,256.35 |
| Overtime | 40.00 | 678.00 | Employee Medicare | 21.80 | 1,503.17 | PPO 300 MEDICA | | | Company PPO 300 | |
| Overtime Adjustm | 0.00 | 13.94 | Employee Soc Sec | 93.20 | 1,503.17 | Pre-Tax Dental | 23.85 | | 156.92 | |
| Piecework | 0.00 | 90.00 | Federal Withholdin | 151.82 | 1,503.17 | | | | WCB Accrual | 26.13 |
| Regular | 80.00 | 904.00 | | | | | | | | |

### Lawson
PSID: ALDF / AWG Dept = 3595
SSN

| Name | Check Date | Check Number | | | Loc: 7457 McReynolds Nave & Larson Funeral Home |
|------|-----------|--------------|---|---|---|
| TILLER, STEVEN D | 09/24/2004 | 50042166 | | | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|----------|-------|--------|---------|--------|---------|-----------|-------------|----------|------------|---------|
| | | | | | Gross Wages | | | | | |
| | | | | | 1,622.12 | | 23.85 | 252.26 | 156.92 | 1,186.99 |
| Holiday | 8.00 | 90.40 | Employee Medicare | 20.87 | 1,439.35 | PPO 300 MEDICA | | | Company PPO 300 | |
| Overtime | 33.00 | 593.25 | Employee Soc Sec | 89.24 | 1,439.35 | Pre-Tax Dental | 23.85 | | 156.92 | |
| Overtime Adjustm | 0.00 | 4.47 | Federal Withholdin | 142.25 | 1,439.35 | | | | WCB Accrual | 25.50 |
| Piecework | 0.00 | 90.00 | | | | | | | | |
| Regular | 80.00 | 904.00 | | | | | | | | |

### Lawson
PSID: ALDF / AWG Dept = 3595
SSN

| Name | Check Date | Check Number | | | Loc: 7457 McReynolds Nave & Larson Funeral Home |
|------|-----------|--------------|---|---|---|
| TILLER, STEVEN D | 10/08/2004 | 50055724 | | | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|----------|-------|--------|---------|--------|---------|-----------|-------------|----------|------------|---------|
| | | | | | Gross Wages | | | | | |
| | | | | | 1,607.92 | | 23.85 | 249.05 | 156.92 | 1,175.70 |
| Overtime | 33.00 | 559.25 | Employee Medicare | 20.66 | 1,424.73 | PPO 300 MEDICA | | | Company PPO 300 | |
| Overtime Adjustm | 0.00 | 24.17 | Employee Soc Sec | 88.33 | 1,424.73 | Pre-Tax Dental | 23.85 | | 156.92 | |
| Piecework | 0.00 | 120.00 | Federal Withholdin | 140.06 | 1,424.73 | | | | WCB Accrual | 25.44 |
| Regular | 80.00 | 904.00 | | | | | | | | |

9/12/2008

ALD(HELM)01244

PR260

SCI FUNERAL & CEMETERY PURCHASING COOP, INC.

Check Detail Listing

Page 7 of 25

9/12/2008

Lawson

PSID: ALDF /AWG Dept # 3595

SSN

| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | | |
|------|-----------|--------------|------|------|------|------|------|------|
| TILLER, STEVEN D | 11/22/2004 | 50069363 | Gross Wages | Pretax Dedn | Tax Dedn | Other Dedn | | Net Pay |
| | | | 1,483.11 | 23.85 | 221.33 | 156.92 | | 1,081.01 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|--------|-------------|--------|
| Overtime | 30.00 | 508.50 | Employee Medicare | 18.88 | 1,302.34 | PPO 300 MEDICA | 156.92 | Company PPO 300 | 451.38 |
| Overtime Adjuster | 0.00 | 8.71 | Employee Soc Sec | 80.75 | 1,302.34 | Pre-Tax Dental | 23.85 | WCB Accrual | 23.55 |
| Piecework | 0.00 | | Federal Withholdin | 121.70 | 1,302.34 | | | | |
| Regular | 80.00 | 904.00 | | | | | | | |

Lawson

PSID: ALDF /AWG Dept # 3595

SSN

| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | | |
|------|-----------|--------------|------|------|------|------|------|------|
| TILLER, STEVEN D | 11/05/2004 | 50033182 | Gross Wages | Pretax Dedn | Tax Dedn | Other Dedn | | Net Pay |
| | | | 1,526.13 | 23.85 | 230.62 | 156.92 | | 1,112.74 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|--------|-------------|--------|
| Overtime | 30.00 | 508.50 | Employee Medicare | 19.48 | 1,343.36 | PPO 300 MEDICA | 156.92 | Company PPO 300 | 451.38 |
| Overtime Adjuster | 0.00 | 13.63 | Employee Soc Sec | 83.29 | 1,343.36 | Pre-Tax Dental | 23.85 | WCB Accrual | 24.28 |
| Piecework | 0.00 | 100.00 | Federal Withholdin | 127.85 | 1,343.36 | | | | |
| Regular | 80.00 | 904.00 | | | | | | | |

Lawson

PSID: ALDF /AWG Dept # 3595

SSN

| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | | |
|------|-----------|--------------|------|------|------|------|------|------|
| TILLER, STEVEN D | 11/18/2004 | 50037862 | Gross Wages | Pretax Dedn | Tax Dedn | Other Dedn | | Net Pay |
| | | | 1,446.59 | 23.85 | 234.00 | | | 1,337.59 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|--------|-------------|--------|
| Overtime | 30.00 | 508.50 | Employee Medicare | 20.98 | 1,446.59 | WCB Accrual | | | 22.86 |
| Overtime Adjuster | 0.00 | 4.09 | Employee Soc Sec | 89.69 | 1,446.59 | | | | |
| Piecework | 0.00 | 30.00 | Federal Withholdin | 143.33 | 1,446.59 | | | | |
| Regular | 80.00 | 904.00 | | | | | | | |

Lawson

PSID: ALDF /AWG Dept # 3595

SSN

| Name | Check Date | Check Number | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | | |
|------|-----------|--------------|------|------|------|------|------|------|
| TILLER, STEVEN D | 12/03/2004 | 50044485 | Gross Wages | Pretax Dedn | Tax Dedn | Other Dedn | | Net Pay |
| | | | 1,603.17 | 23.85 | 248.51 | 156.92 | | 1,173.89 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|--------|-------------|--------|
| Holiday | 8.00 | 90.40 | Employee Medicare | 20.62 | 1,422.40 | PPO 300 MEDICA | 156.92 | Company PPO 300 | 451.38 |
| Overtime | 30.00 | 508.59 | Employee Soc Sec | 88.18 | 1,422.40 | Pre-Tax Dental | 23.85 | WCB Accrual | 25.70 |
| Overtime Adjuster | 0.00 | 12.27 | Federal Withholdin | 139.71 | 1,422.40 | | | | |
| Piecework | 0.00 | 90.00 | | | | | | | |
| Regular | 80.00 | 904.00 | | | | | | | |

ALD(HELM)01245

REDACTED

SCI FUNERAL & CEMETERY PURCHASING COOP, INC.

Check Detail Listing

Page 8 of 25

---

**Lawson**
**PR260**

SSN
Name: TILLER, STEVEN D
PSID: ALDF / AWG Dept = 3595
Check Date: 12/17/2004
Check Number: 50452345

Loc: 7457 McReynolds Neve & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 1,480.68 | 23.85 | 230.32 | 156.92 | 1,077.59 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount |
|---|---|---|---|---|---|---|---|
| Overtime | 30.00 | 598.50 | Employee Medicar | 18.82 | 1,297.91 | PPO 300 MEDICA | 156.92 |
| Overtime Adjustm | 0.00 | 8.18 | Employee Soc Sec | 80.47 | 1,297.91 | Company PPO 300 | 451.38 |
| Regular | 80.00 | 904.00 | Federal Withholdin | 121.03 | Pre-Tax Dental 23.85 | WCB Accrual | 23.47 |

---

**Lawson**

SSN
Name: TILLER, STEVEN D
PSID: ALDF / AWG Dept = 3595
Check Date: 12/30/2004
Check Number: 50057184

Loc: 7457 McReynolds Neve & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 1,932.99 | 23.85 | 232.16 | 156.92 | 1,117.97 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount |
|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 90.40 | Employee Medicar | 19.58 | 1,350.13 | PPO 300 MEDICA | 156.92 |
| Overtime | 15.00 | 254.25 | Employee Soc Sec | 83.71 | 1,350.13 | Company PPO 300 | 451.38 |
| Piecework | 0.00 | 30.00 | Federal Withholdin | 128.87 | Pre-Tax Dental 23.85 | WCB Accrual | 23.92 |
| Regular | 59.50 | 672.35 | | | | | |
| Vacation | 48.00 | 485.50 | | | | | |

---

**Lawson**

SSN
Name: TILLER, STEVEN D
PSID: ALDF / AWG Dept = 3595
Check Date: 01/14/2005
Check Number: 50064153

Loc: 7457 McReynolds Neve & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 1,658.17 | 28.15 | 245.85 | 163.85 | 1,167.32 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount |
|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 90.40 | Employee Medicar | 20.49 | 1,413.17 | PPO 300 MEDICA | 163.85 |
| Overtime | 30.00 | 508.50 | Employee Soc Sec | 87.62 | 1,413.17 | Company PPO 300 | 459.69 |
| Overtime Adjustm | 0.00 | 12.17 | Federal Withholdin | 137.74 | Pre-Tax Dental 28.15 | | |
| Regular | 80.00 | 904.00 | | | | | |

---

**Lawson**

SSN
Name: TILLER, STEVEN D
PSID: ALDF / AWG Dept = 3595
Check Date: 01/28/2005
Check Number: 50059967

Loc: 7457 McReynolds Neve & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 1,582.00 | 28.15 | 240.61 | 163.85 | 1,146.39 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount |
|---|---|---|---|---|---|---|---|
| Overtime | 40.00 | 678.00 | Employee Medicar | 20.16 | 1,390.00 | PPO 300 MEDICA | 163.85 |
| Regular | 80.00 | 904.00 | Employee Soc Sec | 86.18 | 1,390.00 | Company PPO 300 | 459.69 |
| | | | Federal Withholdin | 134.27 | Pre-Tax Dental 28.15 | | |

---

9/12/2008

REDACTED

PR260

SCI FUNERAL & CEMETERY PURCHASING COOP, INC
Check Detail Listing

Page 9 of 25

---

**Lawson**

PSID: ALDF /AWG Dept = 5595
SSN

| Name | Check Date | Check Number | | | | | |
|---|---|---|---|---|---|---|---|
| TILLER, STEVEN D | 03/11/2005 | 50025138 | | | | | |

Loc: 7457 McReynolds Neve & Larson Funeral Home

| | | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| | | 1,835.10 | 28.15 | 340.12 | 163.85 | 1,302.98 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds | Company Ded |
|---|---|---|---|---|---|---|---|---|
| Overtime | 41.50 | 703.43 | Employee Medicar | 24.15 | 1,666.10 | PPO 300 MEDICA | | Company PPO 300 |
| Overtime Adjustm | 0.00 | 40.07 | Employee Soc Sec | 103.29 | 1,666.10 | Pre-Tax Dental | 28.15 | 459.69 |
| Piecework | 0.00 | 210.00 | Federal Withholdin | 175.68 | | | | |
| Regular | 80.00 | 894.00 | | | | | | |

---

**Lawson**

PSID: ALDF /AWG Dept = 5595
SSN

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 07/25/2005 | 50080430 |

Loc: 7457 McReynolds Neve & Larson Funeral Home

| | | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| | | 1,412.50 | 28.15 | 202.22 | 163.85 | 1,018.28 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds | Company Ded |
|---|---|---|---|---|---|---|---|---|
| Overtime | 30.00 | 598.50 | Employee Medicar | 17.70 | 1,220.50 | PPO 300 MEDICA | | Company PPO 300 |
| Regular | 80.00 | 906.00 | Employee Soc Sec | 75.68 | 1,220.50 | Pre-Tax Dental | 28.15 | 459.69 |
| | | | Federal Withholdin | 108.84 | | | | |

---

**Lawson**

PSID: ALDF /AWG Dept = 5595
SSN

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 03/11/2005 | 50085660 |

Loc: 7457 McReynolds Neve & Larson Funeral Home

| | | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| | | 1,693.60 | 28.15 | 265.87 | 163.85 | 1,235.73 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds | Company Ded |
|---|---|---|---|---|---|---|---|---|
| Overtime | 31.50 | 533.93 | Employee Medicar | 21.77 | 1,501.60 | PPO 300 MEDICA | | Company PPO 300 |
| Overtime Adjusm | 0.00 | 31.57 | Employee Soc Sec | 93.99 | 1,501.60 | Pre-Tax Dental | 28.15 | 163.85 |
| Piecework | 0.00 | 224.10 | Federal Withholdin | 151.01 | | | | |
| Regular | 80.00 | 904.00 | | | | | | |

---

**Lawson**

PSID: ALDF /AWG Dept = 5595
SSN

| Name | Check Date | Check Number |
|---|---|---|
| TILLER, STEVEN D | 03/15/2005 | 50086574 |

Loc: 7457 McReynolds Neve & Larson Funeral Home

| | | Gross Wages | Taxable | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| | | 365.05 | 365.05 | 119.20 | | 245.85 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded |
|---|---|---|---|---|---|---|---|
| Y/E Bonus taxed at | 0.00 | 365.05 | Employee Medicar | 5.30 | 365.05 | | |
| | | | Employee Soc Sec | 22.64 | 365.05 | | |
| | | | Federal Withholdin | 91.26 | | | |

9112/2008

ALD(HELM)01247

PR260

SCI FUNERAL & CEMETERY PURCHASING COOP, INC

Check Detail Listing

**Lawson**

SSN        PSID: ALDF / AWG Dept = 3595      Name: TILLER, STEVEN D

| Check Date | Check Number | Loc: 7457 McReynolds Neve & Larsen Funeral Home |
|---|---|---|
| 05/24/2005 | 50080822 | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|
| Regular | 80.00 | 904.00 | Employee Medicare | 18.19 | Gross Wages | Pre-Tax Dental | | | Amount |
| Overtime | 30.00 | 508.50 | Employee Soc Sec | 77.78 | 1,446.59 | Pretax Deds | 209.93 | Company PPO 300 | 1,044.66 |
| Overtime Adjustmt | 0.00 | 4.09 | Federal Withholdin | 113.96 | Taxable | 28.15 | | 163.85 | 459.69 |
| Piecework | 0.00 | 30.00 | | | 1,254.59 | 28.15 | | | |

**Lawson**

SSN        PSID: ALDF / AWG Dept = 3595      Name: TILLER, STEVEN D

| Check Date | Check Number | Loc: 7457 McReynolds Neve & Larsen Funeral Home |
|---|---|---|
| 04/08/2005 | 50096294 | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|
| Regular | 80.00 | 904.00 | Employee Medicare | 18.19 | Gross Wages | Pre-Tax Dental | | | Amount |
| Overtime | 30.00 | 508.50 | Employee Soc Sec | 77.79 | 1,446.59 | Pretax Deds | 209.94 | Company PPO 300 | 1,044.65 |
| Overtime Adjustmt | 0.00 | 4.09 | Federal Withholdin | 113.96 | Taxable | 28.15 | | 163.85 | 459.69 |
| Piecework | 0.00 | 30.00 | | | 1,254.59 | 28.15 | | | |

**Lawson**

SSN        PSID: ALDF / AWG Dept = 3595      Name: TILLER, STEVEN D

| Check Date | Check Number | Loc: 7457 McReynolds Neve & Larsen Funeral Home |
|---|---|---|
| 04/22/2005 | 50101053 | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|
| Regular | 80.00 | 904.00 | Employee Medicare | 18.69 | Gross Wages | Pre-Tax Dental | | | Amount |
| Overtime | 30.00 | 508.50 | Employee Soc Sec | 79.93 | 1,481.18 | Pretax Deds | 217.77 | Company PPO 300 | 1,071.41 |
| Overtime Adjustmt | 0.00 | 58.54 | Federal Withholdin | 119.15 | Taxable | 28.15 | | 163.85 | 459.69 |
| Piecework | 0.00 | 10.14 | | | 1,289.18 | 28.15 | | | |

**Lawson**

SSN        PSID: ALDF / AWG Dept = 3595      Name: TILLER, STEVEN D

| Check Date | Check Number | Loc: 7457 McReynolds Neve & Larsen Funeral Home |
|---|---|---|
| 05/06/2005 | 50106354 | |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|
| Regular | 80.00 | 904.00 | Employee Medicare | 18.69 | Gross Wages | Pre-Tax Dental | | | Amount |
| Overtime | 30.00 | 508.50 | Employee Soc Sec | 79.89 | 1,480.68 | Pretax Deds | 217.65 | Company PPO 300 | 1,071.03 |
| Overtime Adjustmt | 0.00 | 8.18 | Federal Withholdin | 119.07 | Taxable | 28.15 | | 163.85 | 459.69 |
| Piecework | 0.00 | 60.00 | | | 1,288.68 | 28.15 | | | |

9/12/2008

REDACTED

PR260

**SCI FUNERAL & CEMETERY PURCHASING COOP., INC**

**Check Detail Listing**

Page 11 of 725

---

**Lawson**

PSID: ALLDF/AWG Dept = 3595
SSN
Name: TILLER, STEVEN D
Check Date: 05/20/2005
Check Number: 3027/488

Loc: 7457 McReynolds Neve & Larson Funeral Home

| Gross Wages | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|
| 1,698.45 | PPO 300 MEDICA | 28.15 | 265.18 | 163.85  Company PPO 300 | 1,233.27 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 39.50 | 690.27 | Employee Medicare | 21.73 | 1,698.45 | Pre-Tax Dental | 163.85 | Company PPO 300 | 459.69 |
| Overtime Adjustment | 0.00 | 8.18 | Employee Soc Sec | 92.91 | 1,698.45 | 28.15 | | | |
| Piecework | 0.00 | 650.00 | Federal Withholding | 150.54 | 1,698.45 | | | | |
| Regular | 80.00 | 932.00 | | | | | | | |

---

**Lawson**

PSID: ALLDF/AWG Dept = 3595
SSN
Name: TILLER, STEVEN D
Check Date: 06/03/2005
Check Number: 5028/825

Loc: 7457 McReynolds Neve & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 1,843.33 | 28.15 | 299.79 | 163.85 | 1,351.54 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount |
|---|---|---|---|---|---|---|---|
| Overtime | 40.25 | 703.37 | Employee Medicare | 23.94 | 1,651.33 | Pre-Tax Dental | 163.85  Company PPO 300 |
| Overtime Adjustment | 0.00 | 27.96 | Employee Soc Sec | 102.38 | 1,651.33 | 28.15 | 459.69 |
| Piecework | 0.00 | 180.00 | Federal Withholding | 173.47 | 1,651.33 | | |
| Regular | 80.00 | 932.00 | | | | | |

---

**Lawson**

PSID: ALLDF/AWG Dept = 3595
SSN
Name: TILLER, STEVEN D
Check Date: 06/17/2005
Check Number: 9203/2943

Loc: 7457 McReynolds Neve & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 1,974.41 | 28.15 | 389.49 | 163.85 | 1,453.92 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount |
|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 93.20 | Employee Medicare | 25.83 | 1,782.41 | Pre-Tax Dental | 163.85  Company PPO 300 |
| Overtime | 40.00 | 699.01 | Employee Soc Sec | 110.51 | 1,782.41 | 28.15 | 459.69 |
| Overtime Adjustment | 0.00 | 40.35 | Federal Withholding | 193.13 | 1,782.41 | | |
| Regular | 80.00 | 932.00 | | | | | |

---

**Lawson**

PSID: ALLDF/AWG Dept = 3595
SSN
Name: TILLER, STEVEN D
Check Date: 07/01/2005
Check Number: 5031/6001

Loc: 7457 McReynolds Neve & Larson Funeral Home

| Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|
| 1,935.33 | 28.15 | 320.64 | 163.85 | 1,422.69 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount |
|---|---|---|---|---|---|---|---|
| Overtime | 45.75 | 799.49 | Employee Medicare | 25.28 | 1,743.33 | Pre-Tax Dental | 163.85  Company PPO 300 |
| Overtime Adjustment | 0.00 | 28.40 | Employee Soc Sec | 108.09 | 1,743.33 | 28.15 | 459.69 |
| Piecework | 0.00 | 175.44 | Federal Withholding | 187.27 | 1,743.33 | | |
| Regular | 80.00 | 932.00 | | | | | |

ALD(HELM)01249

REDACTED

9/12/2008

PR260

## SCI FUNERAL & CEMETERY PURCHASING COOP, INC.

### Check Detail Listing

Page 13 of 25

---

**Lawson**

PSID: ALDF / AWG Dept # 3595

SSN

| Name | Check Date | Check Number | | | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | |
|------|-----------|-------------|---|---|---|---|---|---|---|
| TILLER, STEVEN D | 07/15/2005 | 50327975 | | | Gross Wages 1,651.73 | Prefax Deds 28.15 | Tax Deds 256.39 | Other Deds 163.85 | Net Pay 1,203.34 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|---|-------------|--------|
| Holiday | 8.00 | 93.20 | Employee Medicar | 21.16 | 1,459.73 | PPO 300 MEDICA | | Company PPO 300 | |
| Overtime | 30.00 | 524.35 | Employee Soc Sec | 90.50 | 1,459.73 | | | | 459.69 |
| Overtime Adjustmt | 0.00 | 12.27 | Federal Withholdin | 144.73 | 1,459.73 | Pre-Tax Detail | 28.15 | | |
| Piecework | 0.00 | -90.00 | | | | | | | |
| Regular | 80.00 | 932.00 | | | | | | | |

---

**Lawson**

PSID: ALDF / AWG Dept # 3595

SSN

| Name | Check Date | Check Number | | | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | |
|------|-----------|-------------|---|---|---|---|---|---|---|
| TILLER, STEVEN D | 07/29/2005 | 50389796 | | | Gross Wages 1,524.44 | Prefax Deds 28.15 | Tax Deds 227.57 | Other Deds 163.85 | Net Pay 1,104.87 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|---|-------------|--------|
| Overtime | 30.00 | 524.26 | Employee Medicar | 19.32 | 1,332.44 | PPO 300 MEDICA | | Company PPO 300 | |
| Overtime Adjustmt | 0.00 | 8.18 | Employee Soc Sec | 82.61 | 1,332.44 | | | | 459.69 |
| Piecework | 0.00 | 60.00 | Federal Withholdin | 125.64 | 1,332.44 | Pre-Tax Detail | 28.15 | | |
| Regular | 80.00 | 932.00 | | | | | | | |

---

**Lawson**

PSID: ALDF / AWG Dept # 3595

SSN

| Name | Check Date | Check Number | | | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | |
|------|-----------|-------------|---|---|---|---|---|---|---|
| TILLER, STEVEN D | 08/04/2005 | 50135965 | | | Gross Wages 144.98 | Prefax Deds | Tax Deds 47.34 | Other Deds | Net Pay 97.64 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|-------------|--------|
| VH Bonus exced al | 0.00 | 144.98 | Employee Medicar | 2.10 | 144.98 | | | |
| | | | Employee Soc Sec | 8.99 | 144.98 | | | |
| | | | Federal Withholdin | 36.25 | 144.98 | | | |

---

**Lawson**

PSID: ALDF / AWG Dept # 3595

SSN

| Name | Check Date | Check Number | | | Loc: 7457 McReynolds Nave & Larson Funeral Home | | | | |
|------|-----------|-------------|---|---|---|---|---|---|---|
| TILLER, STEVEN D | 08/12/2005 | 50340474 | | | Gross Wages 1,770.81 | Prefax Deds 28.15 | Tax Deds 283.38 | Other Deds 163.85 | Net Pay 1,295.43 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | | Company Ded | Amount |
|----------|-------|--------|---------|--------|---------|-----------|---|-------------|--------|
| Overtime | 33.00 | 376.68 | Employee Medicar | 22.90 | 1,578.81 | PPO 300 MEDICA | | Company PPO 300 | |
| Regular | 62.50 | 728.13 | Employee Soc Sec | 97.89 | 1,578.81 | | | | 459.69 |
| Vacation | 40.00 | 466.00 | Federal Withholdin | 162.59 | 1,578.81 | Pre-Tax Detail | 28.15 | | |

---

# EXHIBIT 40

REDACTED

9/12/2008

PR260

**SCI FUNERAL & CEMETERY PURCHASING COOP, INC**

Check Detail Listing

Page 1 of 8

---

Lawson
PSID: TX28 / AWG Dept = 3402
SSN
Name: TREJO, FLORINDA D
Loc: 7473 Trevino Funeral Homes - West Martin Stre

| Check Date | Check Number | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| 01/02/2004 | 30120653 | 123.31 | | 9.44 | | 113.87 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|
| Piecework | 0.00 | 30.00 | Employee Medicare | 1.35 | 93.31 | | | |
| Regular | 15.33 | 93.31 | Employee Medicar | 0.44 | 30.00 | | | |
| | | | Employee Soc Sec | 5.79 | 93.31 | | | |
| | | | Employee Soc Sec | 1.86 | 30.00 | | | |
| | | | Federal Withholdin | 0.00 | | | | |
| | | | Federal Withholdin | 0.00 | | | | |

---

Lawson
PSID: TX28 / AWG Dept = 3402
SSN
Name: TREJO, FLORINDA D
Loc: 7473 Trevino Funeral Homes - West Martin Stre

| Check Date | Check Number | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| 01/16/2004 | 30120523 | 240.00 | | 18.36 | | 221.64 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|
| Piecework | 0.00 | 240.00 | Employee Medicare | 3.48 | 240.00 | | | |
| | | | Employee Soc Sec | 14.88 | 240.00 | | | |
| | | | Federal Withholdin | 0.00 | 240.00 | | | |

---

Lawson
PSID: TX28 / AWG Dept = 3402
SSN
Name: TREJO, FLORINDA D
Loc: 7473 Trevino Funeral Homes - West Martin Stre

| Check Date | Check Number | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| 01/30/2004 | 30105186 | 120.00 | | 9.18 | | 110.82 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|
| Piecework | 0.00 | 120.00 | Employee Medicar | 1.74 | 120.00 | | | |
| | | | Employee Soc Sec | 7.44 | 120.00 | | | |
| | | | Federal Withholdin | 0.00 | 120.00 | | | |

---

Lawson
PSID: TX28 / AWG Dept = 3402
SSN
Name: TREJO, FLORINDA D

| Check Date | Check Number | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| 02/13/2004 | 30107859 | 30.00 | | 2.29 | | 27.71 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|
| Piecework | 0.00 | 30.00 | Employee Medicar | 0.43 | 30.00 | | | |
| | | | Employee Soc Sec | 1.86 | 30.00 | | | |
| | | | Federal Withholdin | 0.00 | 30.00 | | | |

ALD(HELM)03312

REDACTED

# SCI FUNERAL & CEMETERY PURCHASING COOP, INC

## Check Detail Listing

Page 3 of 8

PR260

**Lawson**

PSID: TX28 / AWG Dept = 3402
Name: TREJO, FLORINDA D — Loc: 7473 Trevino Funeral Homes - West Martin Stre
SSN

| Check Date | Check Number | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| 02/27/2004 | 30105385 | 30.00 | | 3.30 | | 27.70 |

| Earnings | Hours | Amount |
|---|---|---|
| Piecework | 0.00 | 30.00 |

| Tax Ded | Amount | Taxable | Other Ded | Company Ded | Other Deds | Amount |
|---|---|---|---|---|---|---|
| Employee Medicare | 0.44 | 30.00 | | | | |
| Employee Soc Sec | 1.86 | 30.00 | | | | |
| Federal Withholdin | 0.00 | 30.00 | | | | |

---

**Lawson**

PSID: TX28 / AWG Dept = 3402
Name: TREJO, FLORINDA D — Loc: 7473 Trevino Funeral Homes - West Martin Stre
SSN

| Check Date | Check Number | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| 03/12/2004 | 30111754 | 90.00 | | 6.88 | | 83.12 |

| Earnings | Hours | Amount |
|---|---|---|
| Piecework | 0.00 | 90.00 |

| Tax Ded | Amount | Taxable | Other Ded | Company Ded | Other Deds | Amount |
|---|---|---|---|---|---|---|
| Employee Medicare | 1.30 | 90.00 | | | | |
| Employee Soc Sec | 5.58 | 90.00 | | | | |
| Federal Withholdin | 0.00 | 90.00 | | | | |

---

**Lawson**

PSID: TX28 / AWG Dept = 3402
Name: TREJO, FLORINDA D — Loc: 7473 Trevino Funeral Homes - West Martin Stre
SSN

| Check Date | Check Number | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| 03/26/2004 | 30114747 | 180.00 | | 13.77 | | 166.23 |

| Earnings | Hours | Amount |
|---|---|---|
| Piecework | 180.00 | |

| Tax Ded | Amount | Taxable | Other Ded | Company Ded | Other Deds | Amount |
|---|---|---|---|---|---|---|
| Employee Medicare | 0.43 | 30.00 | | WCB Accrual | | 1.88 |
| Employee Medicare | 0.44 | 30.00 | | WCB Accrual | | 1.89 |
| Employee Medicare | 1.74 | 120.00 | | WCB Accrual | | 7.55 |
| Employee Soc Sec | 1.86 | 30.00 | | | | |
| Employee Soc Sec | 1.86 | 30.00 | | | | |
| Employee Soc Sec | 7.44 | 120.00 | | | | |
| Federal Withholdin | 0.00 | 30.00 | | | | |
| Federal Withholdin | 0.00 | 30.00 | | | | |
| Federal Withholdin | 0.00 | 120.00 | | | | |

---

**Lawson**

PSID: TX28 / AWG Dept = 3402
Name: TREJO, FLORINDA D — Loc: 7473 Trevino Funeral Homes - West Martin Stre
SSN

| Check Date | Check Number | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|
| 04/08/2004 | 30116959 | 90.00 | | 6.89 | | 83.11 |

| Earnings | Hours | Amount |
|---|---|---|
| Piecework | 0.00 | 90.00 |

| Tax Ded | Amount | Taxable | Other Ded | Company Ded | Other Deds | Amount |
|---|---|---|---|---|---|---|
| Employee Medicare | 1.31 | 90.00 | | WCB Accrual | | 5.66 |
| Employee Soc Sec | 5.58 | 90.00 | | | | |
| Federal Withholdin | 0.00 | 90.00 | | | | |

9/12/2008

REDACTED

PR260

**SCI FUNERAL & CEMETERY PURCHASING COOP, INC**

Check Detail Listing

Page 3 of 8

Lawson

PSID: TX28 / AWG Dept = 3402

SSN          Name          Check Date          Check Number          Loc: 7473 Trevino Funeral Homes - West Marin Site

TREJO, FLORINDA D          04/23/2004          30139098

| | | | | | Gross Wages | | Tax Deds | Other Deds | |
|---|---|---|---|---|---|---|---|---|---|
| Earnings | | | | | 60.00 | | 4.59 | | 55.41 |
| Piecework | Hours | Amount | | Tax Ded | Amount | Taxable | Other Ded | Amount | Net Pay |
| | 0.00 | 60.00 | | Employee Median | 0.44 | 30.00 | | | |
| | | | | Employee Median | 0.43 | 30.00 | | | |
| | | | | Employee Soc Sec | 1.86 | 30.00 | WCB Accrual | 1.89 | |
| | | | | Employee Soc Sec | 1.86 | 30.00 | WCB Accrual | | |
| | | | | Federal Withholdin | 0.00 | 30.00 | | | |
| | | | | Federal Withholdin | 0.00 | 30.00 | | | |

Lawson

PSID: TX28 / AWG Dept = 3402

SSN          Name          Check Date          Check Number          Loc: 7473 Trevino Funeral Homes - West Marin Site

TREJO, FLORINDA D          05/07/2004          30121195

| | | | | | Gross Wages | | Tax Deds | Other Deds | |
|---|---|---|---|---|---|---|---|---|---|
| Earnings | | | | | 180.00 | | 13.77 | | 166.23 |
| Piecework | Hours | Amount | | Tax Ded | Amount | Taxable | Other Ded | Amount | Net Pay |
| | 0.00 | 180.00 | | Employee Median | 0.87 | 60.00 | | | 3.77 |
| | | | | Employee Median | 0.43 | 30.00 | WCB Accrual | | 1.89 |
| | | | | Employee Median | 1.31 | 90.00 | WCB Accrual | | 5.66 |
| | | | | Employee Soc Sec | 3.72 | 60.00 | WCB Accrual | | |
| | | | | Employee Soc Sec | 1.86 | 30.00 | | | |
| | | | | Employee Soc Sec | 5.58 | 90.00 | | | |
| | | | | Federal Withholdin | 0.00 | 60.00 | | | |
| | | | | Federal Withholdin | 0.00 | 30.00 | | | |
| | | | | Federal Withholdin | 0.00 | 90.00 | | | |

Lawson

PSID: TX28 / AWG Dept = 3402

SSN          Name          Check Date          Check Number          Loc: 7473 Trevino Funeral Homes - West Marin Site

TREJO, FLORINDA D          05/21/2004          30123365

| | | | | | Gross Wages | | Tax Deds | Other Deds | |
|---|---|---|---|---|---|---|---|---|---|
| Earnings | | | | | 120.00 | | 9.18 | | 110.82 |
| Piecework | Hours | Amount | | Tax Ded | Amount | Taxable | Other Ded | Amount | Net Pay |
| | 0.00 | 120.00 | | Employee Median | 0.44 | 30.00 | | | 1.89 |
| | | | | Employee Median | 1.30 | 90.00 | WCB Accrual | | 1.89 |
| | | | | Employee Soc Sec | 1.86 | 30.00 | WCB Accrual | | 5.66 |
| | | | | Employee Soc Sec | 5.58 | 90.00 | | | |
| | | | | Federal Withholdin | 0.00 | 30.00 | | | |
| | | | | Federal Withholdin | 0.00 | 90.00 | | | |

9123008

ALD(HELM)00314

REDACTED

PR260

**SCI FUNERAL & CEMETERY PURCHASING COOP, INC**

Check Detail Listing

Page 4 of 8

Lawson

PSID: TX28 / AWG Dept = 3402

SSN    Name    Check Date    Check Number    Loc: 7473 Trevino Funeral Homes - West Martin Stre
       TREJO, FLORINDA D    06/04/2004    30123438    Gross Wages    Pretax Deds    Tax Deds    Company Ded    Net Pay
                                                      350.00                      23.95                277.05

| Earnings | Hours | Amount | Tax Ded | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Amount |
|----------|-------|--------|---------|---------|-----------|-------------|----------|------------|--------|
| Piecework | 0.00 | 350.00 | Employee Medicar | 0.87 | 60.00 | | | WCB Accrual | 3.78 |
| | | | Employee Medicar | 0.87 | 60.00 | | | WCB Accrual | 3.77 |
| | | | Employee Medicar | 2.61 | 180.00 | | | WCB Accrual | 11.32 |
| | | | Employee Soc Sec | 3.72 | 60.00 | | | | |
| | | | Employee Soc Sec | 3.72 | 60.00 | | | | |
| | | | Employee Soc Sec | 11.16 | 180.00 | | | | |
| | | | Federal Withholdin | 0.00 | 60.00 | | | | |
| | | | Federal Withholdin | 0.00 | 60.00 | | | | |
| | | | Federal Withholdin | 0.00 | 180.00 | | | | |

Lawson

PSID: TX28 / AWG Dept = 3402

SSN    Name    Check Date    Check Number    Loc: 7473 Trevino Funeral Homes - West Martin Stre
       TREJO, FLORINDA D    06/18/2004    30127597    Gross Wages    Pretax Deds    Tax Deds    Company Ded    Net Pay
                                                      270.00                      20.65                249.35

| Earnings | Hours | Amount | Tax Ded | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Amount |
|----------|-------|--------|---------|---------|-----------|-------------|----------|------------|--------|
| Piecework | 0.00 | 270.00 | Employee Medicar | 0.43 | 30.00 | | | WCB Accrual | 1.89 |
| | | | Employee Medicar | 3.48 | 240.00 | | | WCB Accrual | 15.09 |
| | | | Employee Soc Sec | 1.86 | 30.00 | | | | |
| | | | Employee Soc Sec | 14.88 | 240.00 | | | | |
| | | | Federal Withholdin | 0.00 | 30.00 | | | | |
| | | | Federal Withholdin | 0.00 | 240.00 | | | | |

Lawson

PSID: TX28 / AWG Dept = 3402

SSN    Name    Check Date    Check Number    Loc: 7473 Trevino Funeral Homes - West Martin Stre
       TREJO, FLORINDA D    07/02/2004    30129595    Gross Wages    Pretax Deds    Tax Deds    Company Ded    Net Pay
                                                      270.00                      20.66                249.34

| Earnings | Hours | Amount | Tax Ded | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Amount |
|----------|-------|--------|---------|---------|-----------|-------------|----------|------------|--------|
| Piecework | 0.00 | 270.00 | Employee Medicar | 2.17 | 150.00 | | | WCB Accrual | 9.43 |
| | | | Employee Medicar | 1.31 | 90.00 | | | WCB Accrual | 5.66 |
| | | | Employee Medicar | 0.44 | 30.00 | | | WCB Accrual | 1.89 |
| | | | Employee Soc Sec | 9.30 | 150.00 | | | | |
| | | | Employee Soc Sec | 5.58 | 90.00 | | | | |
| | | | Employee Soc Sec | 1.86 | 30.00 | | | | |
| | | | Federal Withholdin | 0.00 | 150.00 | | | | |
| | | | Federal Withholdin | 0.00 | 90.00 | | | | |
| | | | Federal Withholdin | 0.00 | 30.00 | | | | |

9/12/2008

ALD(HELM)00315

PR260
9/12/2008

SCI FUNERAL & CEMETERY PURCHASING COOP, INC

Check Detail Listing

Page 5 of 8

REDACTED

**Lawson**
PSID: TX28 / AWG Dept = 3402
SSN
Name: TREJO, FLORINDA D

| Check Date | Check Number | | | |
| --- | --- | --- | --- | --- |
| 07/16/2004 | 30131867 | | | |

Loc: 7473 Trevino Funeral Homes - West Metrin Site

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Piecework | 0.00 | 240.00 | Employee Medicare | 0.43 | 30.00 | | |
| | | | Employee Medicare | 3.05 | 210.00 | | |
| | | | Employee Soc Sec | 1.86 | 30.00 | | |
| | | | Employee Soc Sec | 13.02 | 210.00 | | |
| | | | Federal Withholdin | 0.00 | 30.00 | | |
| | | | Federal Withholdin | 0.00 | 210.00 | | |
| | | | Federal Withholdin | 0.00 | | | |

Gross Wages 240.00
Tax Deds 18.36
Net Pay 221.64

| Company Ded | Amount |
| --- | --- |
| WCB Accrual | 1.89 |
| WCB Accrual | 13.21 |

**Lawson**
PSID: TX28 / AWG Dept = 3402
SSN
Name: TREJO, FLORINDA D

| Check Date | Check Number |
| --- | --- |
| 07/30/2004 | 30133960 |

Loc: 7473 Trevino Funeral Homes - West Metrin Site

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Pretax Deds |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Piecework | 0.00 | 60.00 | Employee Medicare | 0.87 | 60.00 | | |
| | | | Employee Soc Sec | 3.72 | 60.00 | | |
| | | | Federal Withholdin | 0.00 | 60.00 | | |

Gross Wages 60.00
Tax Deds 4.59
Net Pay 55.41

| Company Ded | Amount |
| --- | --- |
| WCB Accrual | 3.77 |

**Lawson**
PSID: TX28 / AWG Dept = 3402
SSN
Name: TREJO, FLORINDA D

| Check Date | Check Number |
| --- | --- |
| 08/13/2004 | 30136997 |

Loc: 7473 Trevino Funeral Homes - West Metrin Site

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Piecework | 0.00 | 180.00 | Employee Medicare | 0.86 | 60.00 | | WCB Accrual | 3.77 |
| | | | Employee Medicare | 0.44 | 30.00 | | WCB Accrual | 1.89 |
| | | | Employee Medicare | 1.31 | 90.00 | | WCB Accrual | 5.66 |
| | | | Employee Soc Sec | 3.72 | 60.00 | | | |
| | | | Employee Soc Sec | 1.86 | 30.00 | | | |
| | | | Employee Soc Sec | 5.58 | 90.00 | | | |
| | | | Federal Withholdin | 0.00 | 90.00 | | | |
| | | | Federal Withholdin | 0.00 | 60.00 | | | |
| | | | Federal Withholdin | 0.00 | 30.00 | | | |
| | | | | | 90.00 | | | |

Gross Wages 180.00
Tax Deds 13.77
Net Pay 166.23

ALD(HELM)00316

REDACTED

PR260

## SCI FUNERAL & CEMETERY PURCHASING COOP, INC

### Check Detail Listing

---

Lawson
PSID: TX35 / AWG Dept = 3543
SSN

| Name | Check Date | Check Number | Loc: 7479 Funeraria Del Angel Trevino Funeral Home | | | |
|---|---|---|---|---|---|---|
| TREJO, FLORINDA D | 09/27/2004 | 50805933 | Gross Wages 570.48 | Pretax Deds | Tax Deds 43.63 | Other Deds | Net Pay 526.85 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|
| Overtime | 12.15 | 127.58 | Employee Medicare | 0.51 | 35.00 | | WCB Accrual | 2.04 |
| Overtime Adjustmt | 0.00 | 4.07 | Employee Medicare | 7.76 | 535.48 | | WCB Accrual | 31.17 |
| Piecework | 0.00 | 35.00 | Employee Soc Sec | 2.17 | 35.00 | | | |
| Regular | 57.69 | 403.83 | Employee Soc Sec | 33.19 | 535.48 | | | |
| | | | Federal Withholdin | 0.00 | 35.00 | | | |
| | | | Federal Withholdin | 0.00 | 535.48 | | | |

---

Lawson
PSID: TX35 / AWG Dept = 3543
SSN

| Name | Check Date | Check Number | Loc: 7479 Funeraria Del Angel Trevino Funeral Home | | | |
|---|---|---|---|---|---|---|
| TREJO, FLORINDA D | 09/10/2004 | 50011336 | Gross Wages 675.98 | Pretax Deds | Tax Deds 51.72 | Other Deds | Net Pay 624.26 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|
| Misc/Other | 0.00 | 50.00 | Employee Medicare | 1.01 | 70.00 | | WCB Accrual | 4.31 |
| Overtime | 4.13 | 43.37 | Employee Medicare | 8.79 | 605.98 | | WCB Accrual | 37.30 |
| Piecework | 0.00 | 140.00 | Employee Soc Sec | 4.34 | 70.00 | | | |
| Regular | 63.25 | 442.61 | Employee Soc Sec | 37.58 | 605.98 | | | |
| | | | Federal Withholdin | 0.00 | 70.00 | | | |
| | | | Federal Withholdin | 0.00 | 605.98 | | | |

---

Lawson
PSID: TX35 / AWG Dept = 3543
SSN

| Name | Check Date | Check Number | Loc: 7479 Funeraria Del Angel Trevino Funeral Home | | | |
|---|---|---|---|---|---|---|
| TREJO, FLORINDA D | 09/24/2004 | 50016620 | Gross Wages 324.17 | Pretax Deds | Tax Deds 24.79 | Other Deds | Net Pay 299.38 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount |
|---|---|---|---|---|---|---|---|
| Regular | 46.31 | 324.17 | Employee Medicare | 4.61 | 318.08 | WCB Accrual | 20.01 |
| | | | Employee Medicare | 0.09 | 6.09 | WCB Accrual | 0.38 |
| | | | Employee Soc Sec | 19.71 | 318.08 | | |
| | | | Employee Soc Sec | 0.38 | 6.09 | | |
| | | | Federal Withholdin | 0.00 | 318.08 | | |
| | | | Federal Withholdin | 0.00 | 6.09 | | |

9/12/2008

ALD(HELM)00317

REDACTED

# SCI FUNERAL & CEMETERY PURCHASING COOP., INC.

## Check Detail Listing

PR260

**Lawson**

Name: TREJO, FLORINDA D
SSN:
PSID: TX35 / AWG Dept # 3543
Loc: 7479 Funeraria Del Angel Trevino Funeral Home

Check Date: 10/08/2004  Check Number: 50022047

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Regular | 80.00 | 560.00 | Employee Medicare | 9.37 | 645.77 | 645.77 | | | 49.41 | | 596.36 |
| Piecework | 0.00 | 33.00 | Employee Soc Sec | 40.04 | | | | | | | |
| Overtime-Adjustor | 0.00 | 0.37 | Federal Withholdin | 0.00 | | | | | | | |
| Overtime | 4.80 | 50.40 | | | | | | | | | |

Company Ded WCB Accrual Amount 39.36

---

**Lawson**

Name: TREJO, FLORINDA D
SSN:
PSID: TX35 / AWG Dept # 3543
Loc: 7479 Funeraria Del Angel Trevino Funeral Home

Check Date: 10/22/2004  Check Number: 50027872

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Regular | 80.00 | 560.00 | Employee Medicare | 8.43 | 581.53 | 581.53 | | | 44.49 | | 537.04 |
| Overtime | 2.05 | 21.53 | Employee Soc Sec | 36.06 | | | | | | | |
| | | | Federal Withholdin | 0.00 | | | | | | | |

Company Ded WCB Accrual Amount 36.13

---

**Lawson**

Name: TREJO, FLORINDA D
SSN:
PSID: TX35 / AWG Dept # 3543
Loc: 7479 Funeraria Del Angel Trevino Funeral Home

Check Date: 11/05/2004  Check Number: 50032286

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Regular | 65.07 | 455.40 | Employee Medicare | 6.76 | 466.31 | 466.31 | | | 35.67 | | 430.64 |
| Overtime | 1.03 | 10.82 | Employee Soc Sec | 28.91 | | 466.31 | | | | | |
| | | | Federal Withholdin | 0.00 | | 466.31 | | | | | |

Company Ded WCB Accrual Amount 29.10

---

**Lawson**

Name: TREJO, FLORINDA D
SSN:
PSID: TX35 / AWG Dept # 3543
Loc: 7479 Funeraria Del Angel Trevino Funeral Home

Check Date: 11/18/2004  Check Number: 50037762

| Earnings | Hours | Amount | Tax Ded | Amount | Gross Wages | Taxable | Other Ded | Pretax Deds | Tax Deds | Other Deds | Net Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Regular | 78.18 | 547.26 | Employee Medicare | 8.13 | 560.70 | 560.70 | | | 42.89 | | 517.81 |
| Overtime | 1.28 | 13.44 | Employee Soc Sec | 34.76 | | 560.70 | | | | | |
| | | | Federal Withholdin | 0.00 | | | | | | | |

Company Ded WCB Accrual Amount 34.99

# EXHIBIT 41

REDACTED

9/12/2008

PR260

## SCI FUNERAL & CEMETERY PURCHASING COOP. INC
### Check Detail Listing

Lawson

**PSID: ALDF/AWG Dept = 2743**

| SSN | Name | Check Date | Check Number | Loc 7294 Hines Lineberry Funeral Home | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | WYATT, DAVID F | 07/02/2004 | 50202742 | 1,659.99 | 16.15 | 386.91 | 87.52 | 1,203.41 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 0.93 | 27.62 | Employee Medicare | 23.06 | 1,590.32 | Group Term Life Ir | 9.06 | Company PPO 300 | 304.62 |
| Regular | 68.16 | 1,349.57 | Employee Soc Sec | 98.60 | 1,590.32 | PPO 300 MEDICA | 78.46 | WCB Accrual | 16.68 |
| Sick | 16.00 | 316.80 | Federal Withholdin | 111.24 | 1,590.32 | Pre-Tax Dental | 16.15 | | |
| | | | North Carolina Stat | 78.90 | 1,590.32 | | | | |
| | | | Virginia State Tax | 76.01 | 1,590.32 | | | | |

Lawson

**PSID: ALDF/AWG Dept = 2743**

| SSN | Name | Check Date | Check Number | Loc 7294 Hines Lineberry Funeral Home | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | WYATT, DAVID F | 07/16/2004 | 50206949 | 2,225.18 | 16.15 | 574.77 | 87.52 | 1,546.74 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 158.40 | Employee Medicare | 30.76 | 2,121.51 | Group Term Life Ir | 9.06 | Company PPO 300 | 304.62 |
| Overtime | 5.00 | 148.50 | Employee Soc Sec | 131.54 | 2,121.51 | PPO 300 MEDICA | 78.46 | WCB Accrual | 21.54 |
| Overtime Adjustm | 0.00 | 16.66 | Federal Withholdin | 190.92 | 2,121.51 | Pre-Tax Dental | 16.15 | | |
| Piecework | 0.00 | 100.00 | North Carolina Stat | 115.00 | 2,121.51 | | | | |
| Regular | 56.89 | 1,126.42 | Virginia State Tax | 106.55 | 2,121.51 | | | | |
| Vacation | 24.00 | 475.20 | | | | | | | |

Lawson

**PSID: ALDF/AWG Dept = 2743**

| SSN | Name | Check Date | Check Number | Loc 7294 Hines Lineberry Funeral Home | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Gross Wages | Pretax Deds | Tax Deds | Other Deds | Net Pay |
| | WYATT, DAVID F | 07/30/2004 | 50210742 | 1,784.18 | 16.15 | 418.53 | 87.52 | 1,261.98 |

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 6.74 | 200.18 | Employee Medicare | 24.37 | 1,680.51 | Group Term Life Ir | 9.06 | Company PPO 300 | 304.62 |
| Regular | 80.00 | 1,584.00 | Employee Soc Sec | 104.19 | 1,680.51 | PPO 300 MEDICA | 78.46 | WCB Accrual | 17.00 |
| | | | Federal Withholdin | 124.77 | 1,680.51 | Pre-Tax Dental | 16.15 | | |
| | | | North Carolina Stat | 84.00 | 1,680.51 | | | | |
| | | | Virginia State Tax | 81.20 | 1,680.51 | | | | |

ALD(HELM)00186

REDACTED

PR260

## SCI FUNERAL & CEMETERY PURCHASING COOP, INC
### Check Detail Listing

---

PSID: ALDF / AWG Dept = 2743
Name: WYATT, DAVID F
SSN
Lawson

Check Date 08/13/2004 | Check Number 50214782

Loc: 7294 Hanet Linebarry Funeral Home

| | Gross Wages 1,747.65 | Pretax Deds 16.15 | Tax Deds 406.15 | Other Deds 87.52 | Net Pay 1,237.83 |
|---|---|---|---|---|---|

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 5.51 | 163.65 | Employee Medicar | 23.84 | 1,643.98 | Group Term Life in | 304.62 | Company PPO 300 | |
| Regular | 48.00 | 950.40 | Employee Soc Sec | 101.92 | 1,643.98 | PPO 300 MEDICA | 78.46 | WCB Accrual | |
| Vacation | 32.00 | 633.60 | Federal Withholdin | 119.29 | 1,643.98 | Pre-Tax Dental | 16.15 | | |
| | | | Virginia State Tax | 82.00 | | | | | |
| | | | North Carolina Stat | 79.10 | | | | | |

---

PSID: ALDF / AWG Dept = 2743
Name: WYATT, DAVID F
SSN
Lawson

Check Date 08/27/2004 | Check Number 50012640

Loc: 7294 Hanet Linebarry Funeral Home

| | Gross Wages 1,859.05 | Pretax Deds 16.15 | Tax Deds 360.29 | Other Deds 87.52 | Net Pay 1,395.09 |
|---|---|---|---|---|---|

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 4.85 | 144.04 | Employee Medicar | 25.45 | 1,755.38 | Group Term Life in | 304.62 | Company PPO 300 | |
| Overtime Adjustm | 0.00 | 6.01 | Employee Soc Sec | 108.84 | 1,755.38 | PPO 300 MEDICA | 78.46 | WCB Accrual | |
| Piecework | 0.00 | 123.00 | Federal Withholdin | 136.00 | 1,755.38 | Pre-Tax Dental | 16.15 | | 17.93 |
| Regular | 80.00 | 1,584.00 | North Carolina Stat | 90.00 | | | | | |

---

PSID: ALDF / AWG Dept = 2743
Name: WYATT, DAVID F
SSN
Lawson

Check Date 09/10/2004 | Check Number 50026571

Loc: 7294 Hanet Linebarry Funeral Home

| | Gross Wages 1,760.95 | Pretax Deds 16.15 | Tax Deds 332.42 | Other Deds 87.52 | Net Pay 1,330.86 |
|---|---|---|---|---|---|

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Overtime | 6.16 | 182.95 | Employee Medicar | 24.12 | 1,663.28 | Group Term Life in | 304.62 | Company PPO 300 | |
| Regular | 80.00 | 1,584.00 | Employee Soc Sec | 103.12 | 1,663.28 | PPO 300 MEDICA | 78.46 | WCB Accrual | |
| | | | Federal Withholdin | 122.18 | 1,663.28 | Pre-Tax Dental | 16.15 | | 16.89 |
| | | | North Carolina Stat | 83.00 | | | | | |

---

PSID: ALDF / AWG Dept = 2743
Name: WYATT, DAVID F
SSN
Lawson

Check Date 09/24/2004 | Check Number 50040136

Loc: 7294 Hanet Linebarry Funeral Home

| | Gross Wages 2,256.81 | Pretax Deds 16.15 | Tax Deds 478.38 | Other Deds 87.52 | Net Pay 1,674.76 |
|---|---|---|---|---|---|

| Earnings | Hours | Amount | Tax Ded | Amount | Taxable | Other Ded | Amount | Company Ded | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Holiday | 8.00 | 158.40 | Employee Medicar | 31.22 | 2,153.14 | Group Term Life in | 304.62 | Company PPO 300 | |
| Overtime | 17.32 | 314.41 | Employee Soc Sec | 133.50 | 2,153.14 | PPO 300 MEDICA | 78.46 | WCB Accrual | |
| Regular | 80.00 | 1,584.00 | Federal Withholdin | 105.66 | 2,153.14 | Pre-Tax Dental | 16.15 | | 20.64 |
| | | | North Carolina Stat | 118.00 | | | | | |

---

9/12/2008

# EXHIBIT 42

From: RON COLLINS/ALDERWOODS
Sent: 4/25/2006 7:41:01 PM
To: JAANA HARKONEN/ALDERWOODS@ALDERWOODS
CC: CHUCK GIBSON/ALDERWOODS@ALDERWOODS;KATIE
LEAHY/ALDERWOODS@ALDERWOODS;MARK WILSON/ALDERWOODS@ALDERWOODS;
RHONDA SUURD/ALDERWOODS@ALDERWOODS
Subject: Re: Fw: Unpaid lunches

Hi Jaana -

This would meet our needs.  Please advise if we can discuss further with our
regional teams.

Thanks,

Ron

Ron Collins
Vice President, Operations
Canada & Northeast USA

416.498.2764  Direct Line
416.302.0644  Cellular
604.456.6124  Fax
ron.collins@alderwoods.com

Bonnie Kulba
Assistant to VPO/Human Resource Coordinator
416.498.2751  Direct Line
416.464.6617  Cellular
604.456.6159  Fax
bonnie.kulba@alderwoods.com




        Jaana Harkonen
        04/24/2006 04:45 PM
            To: Chuck Gibson/Alderwoods@Alderwoods, Ron Collins/Alderwoods@Alderwoods,
    Katie Leahy/Alderwoods@Alderwoods
            cc: Mark Wilson/Alderwoods@Alderwoods, Rhonda Suurd/Alderwoods@Alderwoods
            Subject: Re: Fw: Unpaid lunches


I have reviewed the relevant policy language (see below) and believe that
we are ok with the way the policy is currently written to provide the
required flexibility to operations, in both Canada and the US. I would
however recommend that for the reprint we have coming up (May/June), we
remove the words "on an emergency basis" and have the sentence simply read
"Meal periods may be waived or delayed at the direction of management in
order to meet business needs".  We would need to communicate this with the
other two geographies and Sales.  I would also recommend that I make
contact with the Audit groups (internal and compliance) and advise them of
these changes.

Would that meet your needs?  Mark - are you ok with this revision?

ALD022075

Meal Periods

Hourly employees who work more than five consecutive hours in a day
are allowed an unpaid meal period of no less than 30 minutes and no
more than one hour. For employees working split shifts, the unpaid
meal period will occur between the shifts and may be more than a one
hour period. The scheduling of meal periods is approved by management
to satisfy operational/business needs.  On an emergency basis, meal
periods may be waived or delayed at the direction of management in
order to meet business needs.

Employees must clock out at the beginning of their meal period, and
clock in at its conclusion.  Employees may not waive their meal
period in order to start work later or leave work earlier under any
circumstances.  During the meal period, an employee is not to perform
work for the Company.

Many states have established their own rules about meal periods.
Please consult your Human Resources representative to determine if
there is a modification that applies to you.

Jaana Harkonen
Director, Human Resources
Alderwoods Group
(416) 498-2763 (office)
(416) 294-4201 (cell)
(416) 498-2477 (fax)


                Chuck
Gibson

                        To:      Jaana
Harkonen/Alderwoods
                04/24/2006 01:28
cc:

                PM              Subject:  Fw: Unpaid
lunches


Jaana,
Prepared this for Ron - he's gonna want to discuss with you/us.
Chuck
----- Forwarded by Chuck Gibson/Alderwoods on 04/24/2006 01:27 PM -----


                Chuck
Gibson

                        To:      Ron
Collins/Alderwoods
                04/24/2006 12:58      cc:      Katie
Leahy/Alderwoods


ALD022076

PM                    Subject: Unpaid
lunches

Ron,
I have solicited input about unpaid lunches from the US RGMs (except John
Blute). Here is a summary of their concerns.

The most difficult to manage feature of our new Hours of Work policy is
proving to be the requirement for an unpaid lunch, during which no work is
to be performed.

On many occasions, in our small locations, particularly cemeteries, the
office is manned by only one person. In order to follow the Hours of Work
Policy, LAs must lock the door and not answer the phone for 30 minutes
during the middle of the day. Many are very reluctant to do this, as it
contradicts our Company's pledge to always put service to families first.
Others are clocking out, but continuing to work while eating lunch. This
violates the policy language that states that employees must not perform
work for the company during the meal period. As a result, we have employees
who feel they must make a choice between (a) failing to honor our
committment to families or (b) failing to abide by a Company policy.

In larger locations, midday (the traditional meal break time) is often a
very busy time as employees are either preparing for or conducting
services. So, many have traditionally often grabbed something to eat "on
the fly" in order to continue their assigned duties with as little
interruption as possible. This seems to be an accepted part of the job in
our business and is often absolutely necessary if we are to effectively
serve families. This often resulted in the employee choosing to then leave
work early at the end of that shift – but this is prohibited under the new
policy.

In general, the new policy has taken flexibility away from management. For
instance, as stated, the employee who didn't have time to actually take a
lunch could, in the past, leave before the end of the shift, having already
completed eight hours work. This suited the employee and the manager as
well. After all, if all the duties of the day were accomplished, why must
the employee (having already worked eight hours) sit around and wait for
shift end? Now, that employee make actually log overtime for that day.

Granted, the policy allows management to waive or delay meal periods on
"an emergency basis". But, the circumstances our managers describe aren't
"emergencies" - they are daily requirements of our business.

Our managers fully understand the need to document hours worked in
accordance with wage and hour laws. However, some feel that rather than
merely documenting what we accomplish operationally, the policy requires us
to adapt our operations to meet the documentation procedures.

In general, I believe that our managers would like to have the flexibility
they feel they need on this issue - while still fulfilling the legal
requirements of wage and hour recording. This could be accomplished by
amending the policy to recommend unpaid meal periods, while allowing more
managerial discretion in directing them.

ALD022077

In Canada, the same concerns potentially exist, but are significantly compounded by the fact that we have a long established practice of paying for lunches there. To require unpaid lunches will be viewed as a major take away by many employees.

If I can answer any questions on this, please call.

ALD022078

# EXHIBIT 43

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et al., on behalf of themselves and all other employees and former employees similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>ALDERWOODS GROUP, INC.,<br><br>　　　　　　　Defendant. | Case No. CV 08-1184-SI<br><br>Affirmation |

I, DENNIS BAKER, under penalty of perjury do hereby depose and voluntarily state:

1.　　I have personal knowledge and I am competent to testify as to the matters set forth herein.

2.　　I reside at 801 East Ocelot Street, Meridian, Idaho 83646.

3.　　I was an employee of Alderwoods Group, Inc. from 2000/2001 to 2005.

4.　　I was employed as a General Manager of the funeral home and cemetery at Phoenix Memorial in Phoenix, Arizona.

- 1 -

Alderwoods' Approach to Policies

5.      As a General Manager I was not permitted without consultation with Human Resources and my supervisors to make decisions as to how and what employees were paid.

6.      I understood these were corporate-wide policies because I received new policy memoranda by facsimile from the Regional Vice President, Ken Diamond. Employees were required to initial these policy memoranda and they were faxed to Ken Diamond, who then forwarded them to corporate headquarters.

7.      I understood these were corporate-wide policies because I had absolutely no authority to create such policies and was instead instructed by the Regional Vice President, Ken Diamond, that all Alderwoods locations were to be uniform in policies.

8.      I understood these were corporate-wide policies because the Regional Vice President, Ken Diamond, conducted annual audits to confirm that Alderwoods national policies were being followed.

9.      I understood these were corporate-wide policies because Human Resources/Corporate sent each location five binders containing their policy information.

10.     I understood these were corporate-wide policies because all employee pay checks came from the same corporate location.

11.     As a General Manager, I was aware of defendants' company-wide policies and was responsible for the enforcement of such policies. Part of my responsibilities included training and communicating regularly with employees regarding these company policies. In order to communicate with employees, I held frequent staff meetings and was expected to make sure employees complied with the Alderwoods company policies.

- 2 -

<u>Community Work Policy</u>

12.    One of these policies was Alderwoods' Community Work Policy.    This company-wide policy encouraged employees to volunteer their time to outside community organizations and events.

13.    Since Alderwoods encouraged this community work to be done on a "volunteer" basis, the employees were not paid for any time spent at these outside community organizations and events.

14.    This policy was addressed through a number of ways.    For example, I was informed of the Community Work Policy by the Regional Vice President, Ken Diamond when I initially began my position as a General Manager.    I was told that the community work was encouraged to be completed on a volunteer basis, so employees would not be paid for this work.    I was also told that Alderwoods would pay dues and costs for any employee involvement in community events or organizations.

15.    Company executives, including the Regional Vice President, Ken Diamond, emphasized the importance of the Community Work Policy for Alderwoods by repeatedly discussing the importance of community work.    The primary purpose of the Community Work Policy was for employees to use their membership in "volunteer" community organizations so the community got to know the funeral home better and increase Alderwoods' market shares.

16.    The Regional Vice President, Ken Diamond, indicated this policy came from headquarters and was a company-wide policy.

17.    As a General Manager, I was encouraged by the Regional Vice President, Ken Diamond, to hold weekly staff meetings and discuss the importance of community

- 3 -

involvement, as well as many other topics.  Employees were offered suggestions of various community organizations they could join in order to further generate business for the company.

## On Call Pay Policy

18.    Another policy was the On Call Pay Policy.

19.    Under this policy, Funeral Directors were required to be on call.

20.    While on-call, employees were required to handle and respond to all phone-calls that were received by the funeral home.  As part of the Funeral Director position, employees handled these calls but were not paid by Alderwoods for any time spent on these calls since they were outside of the regular workday and off-site from the funeral home.

21.    As a General Manager, I knew Funeral Directors completed mandatory on-call work without being paid for time spent handling phone calls for the business because I created their on-call schedule.  I was also aware of the work involved, since I was verbally updated on the on-call activities by those employees the following day.

22.    Alderwoods had no system in place for employees to record the time spent handling phone calls so that they could be paid for this work.

## Training Policy

23.    Alderwoods also had a company-wide Training Policy.

24.    This policy required Funeral Directors to obtain and maintain corporate expectations on state licensing standards.  If an employee completed their training requirements away from the funeral home and outside the regular work day, then it was not paid for by Alderwoods.

- 4 -

25.   I was aware of the Training Policy because I received communications *on the* subject from Company Executives, including the Regional Vice President, Ken Diamond.

26.   As a General Manager, I was required by the Regional Vice President, Ken Diamond, to ensure that employees attended the training events.  Therefore, I sent e-mail reminders to employees and posted signs indicating upcoming classes employees were required to attend.

27.   I have read and had an opportunity to correct this Affidavit consisting of 5 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on September 23, 2009.

*Dennis R. Baker*

**DENNIS BAKER**

# EXHIBIT 44

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et al., on behalf of themselves and all other employees and former employees similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>ALDERWOODS GROUP, INC.,<br><br>                Defendant. | Case No. CV 08-1184-SI<br><br>Affirmation |

I, **HERBERT BATH**, under penalty of perjury do hereby depose and voluntarily state:

1.      I have personal knowledge and I am competent to testify as to the matters set forth herein.

2.      I reside at 200 Oak Avenue, Altamont, Kansas 67330.

3.      I was an employee of Alderwoods Group, Inc. from 2000 to June 2005.

4.      I was an Alderwoods Area Manager of seven locations including Bath Funeral Homes in Altamont, KS and Chetopa, KS.

- 1 -

**Alderwoods' Approach to Policies**

5.     As an Area Manager I was not permitted to make decisions as to how and what employees were paid.

6.     I understood these were corporate-wide policies because I received new policy memoranda by facsimile from my Regional Managers, Brent Matherly and Dennis Philips. Employees were required to initial these policy memoranda and they were faxed to these Regional Managers, who then forwarded them to corporate headquarters.

7.     I understood these were corporate-wide policies because I had absolutely no authority to create such policies and was instead instructed by the Regional Managers, Brent Matherly and Dennis Phillips, that all Alderwoods locations were to be uniform in policies.

8.     I understood these were corporate-wide policies because the Regional Managers, Brent Matherly and Dennis Phillips, conducted annual audits to confirm that Alderwoods national policies were being followed.

9.     I understood these were corporate-wide policies because Human Resources/Corporate sent each location five binders containing their policy information.

10.     I understood these were corporate-wide policies because all employee paychecks came from the same corporate location.

11.     As an Area Manager, I was aware of the defendants' company-wide policies and was responsible for the enforcement of such policies.  Part of my responsibilities included communicating the policies to Location Managers as well as other employees.  I was also expected to ensure that policies were maintained at each of the locations I supervised.

Community Work Policy

12.   One of these policies was Alderwoods' Community Work Policy.  This policy required employees to volunteer their time to outside community organizations.

13.   Alderwoods was clear in expecting this community work to be completed on a "volunteer" basis, and employees were not paid for any time spent performing community work.  However, Alderwoods paid all dues for community organizations and events.

14.   I was aware of the policy from a variety of sources since the Community Work Policy was frequently discussed by company executives.  For example, I was told about the policy from the Regional Manager, Brent Matherly, while on a manager conference call towards the beginning of my time as an Area Manager.

15.   Company executives, including the Regional Managers, repeatedly emphasized the importance of community work for Alderwoods. I was told on multiple occasions in meetings with both Brent Matherly and Dennis Phillips that under the Alderwoods corporate policy community work was an expectation but was never compensated. The primary purpose of the policy was to establish a relationship with the community in order to generate business for the company.

16.   Besides the frequent conference calls, company executives, including the Regional Managers, Brent Matherly and Dennis Phillips, continued to emphasize the importance of community work for Alderwoods.  As an Area Manager, they required me to communicate the policy to employees at each of my locations and ensure they understood and complied with it.

17.   Further, Alderwoods' Regional Managers, Brent Matherly and Dennis Philips, required that all of my Location Managers held employee regular meetings to discuss the "best practices" of where employees could become involved in the community.

18.   Alderwoods emphasized the importance of the Community Work Policy so much that they provided community relation binders on the subject to all funeral home and cemetery locations.  The binders contained information on how employees could effectively volunteer in the community so as to generate business for Alderwoods.

## On Call Pay Policy

19.   Defendants also had a company-wide On Call Pay Policy.

20.   Funeral Directors were typically on call every evening because of the small size of the funeral homes.  As part of the Funeral Director position, employees handled these calls but were not paid by Alderwoods for any time spent on these calls since they were outside of the regular workday and off-site from the funeral home.

21.   Employees were also responsible for performing embalmings and removals while on call and were not always compensated for their work.  Employees were expected to understand it was part of their job and they would not be compensated.

22.   As an Area Manager, I knew Funeral Directors completed mandatory on-call work without being paid for time spent handling phone calls for the business because I understood that on call work was a required part of the position.  I was also aware of the work involved, since I was verbally updated on the on-call activities by those employees the following day.

23.   Further, I was made aware of the On Call Pay Policy from the Regional Managers, Brent Matherly and Dennis Phillips, who indicated the policy was company-wide

- 4 -

and came "directly from up above" and could not be changed.    I expressed my frustration at the Policy of not compensating employees for their on-call work but was repeatedly told in Manager Meetings that it was a company-wide policy.

**Training Policy**

24.    Alderwoods also had a Training Policy which expected funeral directors to complete work outside of the regular work day for no pay.

25.    Funeral Directors were required to obtain and maintain their license in compliance with state law.

26.    If an employee worked on their training hours away from the funeral home and outside the regular work day, then it was not paid for by Alderwoods.

27.    I have read and had an opportunity to correct this Affidavit consisting of 5 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2009.

HERBERT BATH

- 5 -

# EXHIBIT 45

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et al., on behalf of themselves and all other employees and former employees similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>ALDERWOODS GROUP, INC.,<br><br>             Defendant. | ) Case No. CV 08-1184-SI<br>)<br>)<br>)<br>) Affirmation<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I, **RICK HENSLEY**, under penalty of perjury do hereby depose and voluntarily state:

1.      I have personal knowledge and I am competent to testify as to the matters set forth herein.

2.      I reside at 4305 Felty Drive, Knoxville, Tennessee 37918.

3.      I was an employee of Alderwoods Group, Inc. from 2004/2005 to April 2007.

4.      I was employed as a General Manager over five locations in Tennessee including McCarty Mortuary, Evergreen Funeral Chapel, Weaver Funeral Home, Woodhaven Funeral Home and Rawlings Funeral Home.

- 1 -

## Alderwoods' Approach to Policies

5.    As a General Manager I was not permitted to make decisions as to how and what employees were paid.

6.    I understood these were corporate-wide policies because I received new policy memoranda by facsimile from my Regional Manager, Mitchell Gerth.  Employees were required to initial these policy memoranda and they were faxed to Mitchell Gerth, who then forwarded them to corporate headquarters.

7.    I understood that all the policies that Mitchell Gerth explained to me were being filtered down from headquarters.

8.    I understood these were corporate-wide policies because I had absolutely no authority to create such policies and was instead instructed by the Regional Manager, Mitchell Gerth, that all Alderwoods locations were to be uniform in policies.

9.    I understood these were corporate-wide policies because Human Resources/Corporate sent each location five binders containing their policy information.

10.    I understood these were corporate-wide policies because all employee pay checks came from the same corporate location.

11.    As a General Manager I knew the defendants company-wide policies and was responsible for the enforcement of such policies.  Part of my responsibilities included training and communicating regularly with employees regarding these company policies.  In order to communicate with employees, I held frequent staff meetings and was expected to make sure employees complied with the Alderwoods company policies.

- 2 -

<u>Community Work Policy</u>

12.   One of these policies was Alderwoods' Community Work Policy.  This company-wide policy required employees to volunteer their time to outside community organizations and events.

13.   Since Alderwoods expected this community work to be done on a "volunteer" basis, the employees were not paid for any time spent at these outside community organizations and events.

14.   I knew about this policy from a number of sources.  For example, as a General Manager I was told on a conference call by the Regional Manager Mitchell Gerth, that this Community Work Policy was a new nationwide company policy.  Although I cannot recall the specific date of the conversation, I remember the conversation was toward the beginning of my employment as a General Manager.   As stated above, he explained that employees were supposed to perform this work for the company on a purely volunteer basis, not a paid basis.  This work was to be completed outside of their regular scheduled work day.

15.   Company executives, including the Regional Manager, Mitchell Gerth, emphasized the importance of community work for Alderwoods.  The primary purpose of the policy was to help the company by bringing additional business into the funeral home.

16.   Following that call, Alderwoods continued to emphasize the Community Work Policy for its locations, including mine.  Each week I participated in conference calls with company executives, including the Regional Manager, Mitchell Gerth, and I was told to regularly check in with employees-and make sure that they were completing the volunteer work and recording it in the defendant's binder.  Employees were required to record all contact and time spent within the community.

- 3 -

17.   I was on these conference calls every single week and the Community Work Policy was a regular discussion topic.  Upper Management, including the Regional Manager, Mitchell Gerth, made it clear that headquarters always wanted to know how and where the employees were performing community work.

18.   When I learned about the program, I was instructed by my Regional Manager, Mitchell Gerth, to hold a meeting to discuss the new Alderwoods community work policy with all Location Managers.  During this meeting all managers brainstormed how they would get their employees to comply with the new policy.

19.   As a General Manager, I was required to ensure that all Location Managers held weekly staff meetings with employees to discuss the importance of community work.  At these meetings suggestions were provided to employees about where they could become involved in the community and "volunteer" time to help Alderwoods develop business.

20.   Alderwoods required me as a General Manager to ensure that all employees complied with the Community Work Policy at their locations.

21.   Alderwoods emphasized the importance of community work so much that they provided binders on the subject.  The community binders contained spreadsheets discussing community influencers and how employees could effectively volunteer in the community so as to generate business for defendants.

22.   The Location Managers would then forward the work sheets to me, which I forwarded to my supervisor, the Regional Manager, Mitchell Gerth.   My understanding was that the work sheets were forwarded to corporate headquarters.

- 4 -

## On Call Pay Policy

23.   Another Alderwoods policy included their company-wide On Call Pay Policy. Employees were required to be on-call on average two days a week and every other weekend.

24.   While on-call, employees were required to handle and respond to all phone-calls that were received by the funeral home.  As part of the Funeral Director position, employees handled these calls but were not paid by Alderwoods for any time spent on these calls since they were outside of the regular workday and off-site from the funeral home.

25.   As Alderwoods employees, Funeral Directors completed mandatory on-call work without being paid for time spent handling phone calls.  I was aware of the work they performed, since I was verbally updated on the on-call activities by those employees the following day.

## Training Policy

26.   Alderwoods also had a company Training Policy which expected Funeral Directors to maintain their licenses.

27.   Funeral directors were required to obtain and maintain their licenses in compliance with Tennessee state law.  Alderwoods paid the costs involved in completing the licensing requirements but Funeral Directors were not paid for the time spent completing the work. As part of the requirement, they had to complete ten continuing education hours of training every two years.

28.   If an employee worked on their training hours away from the funeral home and outside the regular work day, then it was not paid for by Alderwoods.

- 5 -

29.   I have read and had an opportunity to correct this Affidavit consisting of 6 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on September ___, 2009

RICK HENSLEY

- 6 -

# EXHIBIT 46

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et al., on behalf of themselves and all other employees and former employees similarly situated, | ) Case No. CV 08-1184-SI ) ) ) ) Affirmation |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ALDERWOODS GROUP, INC., | ) ) |
| Defendant. | ) ) ) ) ) ) ) |

I, **RICHARD KAMIENSKI**, under penalty of perjury do hereby depose and voluntarily state:

1.     I have personal knowledge and I am competent to testify as to the matters set forth herein.

2.     I reside at 305 Harrow Court, Modesto, CA 95350.

3.     I was an employee of Alderwoods Group, Inc. from April 2004 until June 2005.

4.     I was employed as a General Manager over six funeral homes and one cemetery in California.

- 1 -

Alderwoods' Approach to Policies

5.    As a General Manager I was not permitted to make decisions as to how and what employees were paid.

6.    I understood these were corporate-wide policies because I received new policy memoranda by e-mails from the Area Manager, Derrick Pate, and the Regional Manager, Bill Mitchell.

7.    I understood these were corporate-wide policies because I had absolutely no authority to create such policies and was instead instructed by the Area Manager, Derrick Pate, and the Regional Manager, Bill Mitchell, that all Alderwoods locations were to be uniform in policies.

8.    I understood these were corporate-wide policies because the Regional Manager, Bill Mitchell, conducted annual audits to confirm that Alderwoods national policies were being followed.

9.    I understood these were corporate-wide policies because Human Resources/Corporate sent each location five binders containing their policy information.

10.    I understood these were corporate-wide policies because all employee pay checks came from the same corporate location.

11.    As a General Manager I knew of the defendants' company-wide policies and was responsible for the enforcement of such policies. Part of my responsibilities included training and communicating regularly with employees regarding these company policies. In order to communicate with employees, I held frequent staff meetings and was expected to make sure employees complied with the Alderwoods company policies.

- 2 -

<u>Community Work Policy</u>

12. One of these policies was Alderwoods' Community Work Policy. This company-wide policy required employees to volunteer their time to outside community organizations and events.

13. Since Alderwoods expected this community work to be done on a "volunteer" basis, the employees were not paid for any time spent at these outside community organizations and events.

14. I knew about this policy from a variety of sources. For example, a corporate executive, the Area Manager, Derrick Pate, informed me of the Alderwoods Community Work Policy via e-mail. As stated above, he explained that employees were supposed to perform this work for the company on a purely volunteer basis, not a paid basis. This work was to be completed outside of their regular scheduled work day.

15. Company executives, including the Regional Manager, Bill Mitchell, and Area Manager, Derrick Pate, emphasized the importance of community work. The primary purpose of the Community Work Policy was explained to me as Alderwoods wanting to be perceived as the community funeral home in order to increase business.

16. Following that initial e-mail, Alderwoods continued to emphasize the Community Work Policy for its locations, including mine. For example, as a General Manager I was required to regularly check in with employees to ensure they were completing community work. I was instructed by the Area Manager, Derrick Pate, to keep upper management aware of the community work completed by my employees on a monthly basis.

17. As a General Manager, I was required by the Area Manager, Derrick Pate, and Bill Mitchell, the Regional Manager, to discuss the importance of the Alderwoods

Community Work Policy with all employees.  All employees were required to perform community work in the "name of Alderwoods" to promote the funeral home.

18.     In the annual performance evaluation, employees were evaluated on how much community work they had completed that year.

On Call Pay Policy

19.     Another Alderwoods policy was their company-wide On Call Pay Policy.  Funeral Directors were required to be on call as part of their position.

20.     While on-call, employees were required to handle and respond to all phone-calls that were received by the funeral home.  As part of the Funeral Director position, employees handled these calls but were not paid by Alderwoods for any time spent on these calls since they were outside of the regular workday and off-site from the funeral home.

21.     As a General Manager, I knew Funeral Directors completed mandatory on-call work without being paid for time spent handling phone calls for the business.  I was also aware of the work involved since I was verbally updated on the on-call activities by those employees the following day.

22.     I have read and had an opportunity to correct this Affidavit consisting of 4 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

I affirm under penalty of perjury that the foregoing is true and correct.


Executed on September 14, 2009.


RICHARD KAMIENSKI

- 4 -

# EXHIBIT 47

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,
*on behalf of themselves and all other employees*
*similarly situated,*

                                                    *Plaintiffs,*                  AFFIRMATION

          v.

ALDERWOODS GROUP, INC. and SERVICE
CORPORATION INTERNATIONAL,
                                                    *Defendants.*

I, ROBERT PRAMIK, under penalty of perjury do hereby depose and voluntarily state:

1.      I have personal knowledge and I am competent to testify as to the matters set

forth herein.

2.      I reside at 1125 RBD Hill Road, Dauphin, Pennsylvania 17018.

3.      I was an employee of Alderwoods Group, Inc. from 1992 until March 2005.

4.      Beginning in 1992 until 1997 I worked as a part time employee.  In August 1997

until May 1999 I worked as a student intern.  From that time until June 2000 I worked as a

student resident.  From approximately June 2000 to August 2000 I was employed as a licensed

funeral director and from August 2000 until on or about September 2003 I was employed as a

location manager.  Finally, from September 2003 until March 2005 I worked as a market general

manager.

5.      Throughout my employment with defendants I was employed at defendants' Neill

Funeral Homes with locations in Harrisburg, Pennsylvania and Camp Hill, Pennsylvania.

6.      As a part time employee, student intern, student resident and licensed funeral

director I was an hourly employee.

1

7.      As a location manager and market general manager I was a salaried employee. As such I was aware of defendants' company-wide policies and was responsible for the enforcement of such policies at my facilities.  The policies were issued from defendants' New England offices and most were contained in defendants' "Policy and Procedures Binder."

Community Work Policy

8.      Defendants maintained a company-wide policy requiring hourly employees, such as funeral directors, to belong to at least one outside community organization.

9.      Employees were expected to use their' membership in "volunteer" community organizations to generate business for defendants.

10.     Such community work was mandated by defendants and was even included in the job descriptions for funeral directors.

11.     Defendants even evaluated employees on their participation in community work.

12.     Defendants also maintained binders and spreadsheets on community influencers detailing how to effectively volunteer in the community so as to generate business for defendants.

13.     Further, defendants required hourly employees to keep track of their community work and provide detail on who the community work was with and how that community influencer rated in terms of importance to the community.

14.     The employees were required to turn in their detailed community involvement work sheets to their manager every four weeks.  As a location manager I was in charge of collecting the community work sheets from my employees.

15.     As a market general manager I would collect the community work sheets from the location manager and retain the work sheets in a binder to be reviewed by the regional manger.

As a market general manager I would individually review each employee's community involvement work sheet.

16.    As both an hourly employee and as a manager I was aware that this community work policy was a nationwide company policy.

17.    Employees were not paid for community work performed outside the regular work day even though defendants required such work and were aware employees were performing such work.

On Call Pay Policy

18.    Defendants maintained a company-wide on call pay policy.

19.    Under this policy, employees were typically required to be on call at least every other night and every other weekend while employed by defendants and the on call shifts were from 5 p.m. to 8 a.m.

20.    Although employees were required to, and frequently handled, calls and other work related issues during this on call time, defendants did not compensate me or other employees for time spent engaging in such on call activities, after the work, off-site from the funeral home.

Training Policy

21.    Defendants maintained a company-wide policy requiring licensed funeral directors to train for and become licensed insurance agents in states where pre-need funeral sales could be funded by insurance.

22.    Employees were informed of this requirement by Ted Reese, Alderwoods Market General Manager, during a staff meeting.  While I was a market general manager I was also aware of this requirement and relayed it to staff during meetings.

3

24.    Ted Reese indicated to the staff that he was communicating the insurance agent requirement as it had been communicated to him by the Regional Manager.

25.    Defendants maintained an insurance company, Mayflower National Life Insurance Company ("Mayflower"), through which employees, who were located in states where Mayflower was licensed and where pre-need funeral sales could be funded by Insurance, were required to obtain their license.

26.    In pursuit of their license, employees were required to attend classes and take exams. Employees were also required to study on their own time, such as at home, after hours, and on the weekends, for such exams.

27.    Once employees obtained their insurance agent licenses they were required to complete continuing education classes. In Pennsylvania, licensed insurance agents were required to complete 24 continuing education credits every other year.

28.    Under company-wide policy defendants' employees were generally not paid for time spent in classes, time spent studying for and taking exams, and for time spent completing the continuing education classes.

29.    As a manager I was aware that defendants' policy of not compensating employees for time spent in pursuit of the required insurance license was nation wide company policy.

Pre-Approval for Overtime Policy

30.    Defendants also maintained a pre-approval for overtime policy. Under that policy hourly employees were not compensated for overtime unless the overtime was pre-approved.

31.    As an hourly employee and later as a manager, I was aware that this pre-approval for overtime policy was a nation-wide company policy.

4

32.     Further, defendants would consistently remind employees at staff meetings that no overtime would be paid even if it was worked, unless it had been pre-approved.

33.     Market General Manager Ted Reese informed the staff that all overtime must be pre-approved by him and that any overtime submitted without approval would not be paid.

34.     While I was a  market general manager I informed the staff that all overtime must be pre-approved by him and that any overtime submitted without approval would not be paid.

35.     I typically worked overtime each week that was not pre-approved and was not compensated for such time. Defendants were aware that I worked such overtime. I am also aware of other employees who were not compensated for overtime that was not pre-approved.

36.     I have read and had an opportunity to correct this Affirmation consisting of 5 pages and I hereby verify under penalty of perjury that the statements contained in this Affirmation are true and correct to the best of my knowledge and belief.  I affirm under penalty of perjury that the foregoing is true and correct.

Executed on February 7, 2007

/s/ Robert Pramik
ROBERT PRAMIK

# EXHIBIT 48

**NETWORK DEPOSITION SERVICES**
**Transcript of Dennis Baker**

1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3          SAN FRANCISCO/OAKLAND DIVISION

4

5    WILLIAM HELM, DEBORAH PRISE,          )
     HEATHER P. RADY, [see Complaint       )
6    and Appendices for a listing of       )
     plaintffs] et al., on behalf of       )
7    themselves and all other employees    )
     and former employees similarly        )
8    situated,                             )
                                           )
9             Plaintiffs,                   )
                                           )
10        v.                               ) No. CV 08-1184-SI
                                           )
11   ALDERWOODS GROUP, INC.,               )
                                           )
12            Defendant.                    )
                                           )
13   —————————————————————————————————————

14

15

              DEPOSITION OF DENNIS BAKER
16                October 31, 2009
                 Tucson, Arizona
17

18

19

20

21

              Reported by: Doug Kirkpatrick
22            Certified Reporter No. 50705

23

24

25

## NETWORK DEPOSITION SERVICES
### Transcript of Dennis Baker

33  (Pages 126 to 129)

126

1    Q.  We have looked at this.  And the second
2    sentence says "All overtime, however, must be
3    approved in advance by management."
4    A.  There you go.
5    Q.  Is that what you're referring to?
6    A.  Yes.
7    Q.  Is there anything in this section that says
8    if it's not approved in advance that they won't get
9    paid for it?
10   A.  I don't see anything saying that.
11   Q.  Are you aware of any policy elsewhere that
12   said they wouldn't get paid for overtime that wasn't
13   approved?
14   A.  I'm not aware.
15   Q.  Now, we previously marked as Exhibit 2 the
16   affirmation that you provided in this case that you
17   signed on September 23, 2009.  I just want to refer
18   you back to that for a minute.
19   A.  Okay.
20   Q.  Was that the — September 23, 2009, was
21   that the actual day you signed this affirmation?
22   A.  I believe so.
23   Q.  Did you understand that this affirmation
24   was made under oath?
25   A.  Yes.

127

1    Q.  Subject to perjury?
2    A.  Yes.
3    Q.  Did you review any versions of this
4    affirmation prior to signing this one?  In other
5    words, were there drafts that you revised prior to
6    signing this particular version?
7    A.  Yes.
8    Q.  How many versions were there?
9    A.  There was the original draft and I think
10   one revision, we came to the final.
11   Q.  There was one other draft?
12   A.  Yes.
13   Q.  Do you recall what differences there were
14   between that draft and this version?
15   A.  The only thing I recall -- and she asked if
16   there was things I wanted to change, and it was -- it
17   was wording again.  And I doubt it made any
18   difference, but --
19   Q.  Uh-huh.  What page are you on?
20   A.  Well, I'm looking for it.  It seems like
21   the original version said I was ordered to -- and I
22   changed the word to "encouraged."
23        Here, page 3, number 12.  "One of these
24   policies was Alderwoods' Community Work Policy.  This
25   company-wide policy encouraged employees to volunteer

128

1    their time."
2    Q.  You didn't want to say ordered employees?
3    A.  I think that was what the original was.
4    Q.  And why do you prefer "encouraged" to
5    "ordered"?
6    A.  Well, I just like that word better.
7    Q.  Do you not believe that Alderwoods ordered
8    employees to volunteer time?
9        MS. GIFFORD:  Objection.
10   A.  Yeah, I do believe that Alderwoods
11   employees were not ordered to.  I believe Alderwoods
12   employees were encouraged to.
13   Q.  (BY MR. KNIGHT)  Okay.  Was there any
14   policy to your knowledge that Alderwoods employees
15   join a community organization?
16       MS. GIFFORD:  Objection.
17   A.  There was -- it's my understanding that
18   Alderwoods employees were encouraged to join
19   community organizations.
20   Q.  (BY MR. KNIGHT)  But it wasn't a
21   requirement?
22   A.  It's not a requirement.
23   Q.  Okay.  Was there any other difference
24   between the draft and the final version that you
25   signed besides what you just pointed out?

129

1    A.  No.
2    Q.  Okay.  On page 2 you state that you were
3    not permitted without consultation with Human
4    Resources and my supervisors to make statements as to
5    how and what employees were paid; is that correct?
6        MS. GIFFORD:  Objection. I think it
7    make decisions, not make statements.
8    Q.  (BY MR. KNIGHT)  I'll repeat that.  You
9    say, "As a General Manager I was not permitted
10   without consultation with Human Resources and my
11   supervisors to make decisions as to how and what
12   employees were paid."
13   A.  Yes.
14   Q.  Is that correct?
15   A.  Yes.
16   Q.  Are you saying there that you had no
17   authority at all to determine what employees were
18   paid?
19       MS. GIFFORD:  Objection.
20   A.  What I'm saying was I did not make the
21   final decision without consulting with my
22   supervisors.
23   Q.  (BY MR. KNIGHT)  Okay.  Paragraph 6 you say
24   that "I understood these were corporate-wide policies
25   because I received new policy memoranda by facsimile

130

1  from the Regional Vice President, Ken Dimond."
2       Is that how you spell Mr. Dimond's name, by
3  the way?
4       A.  No.
5       Q.  What is the correct spelling?
6       A.  No "A".
7       Q.  When you say these were corporate-wide
8  policies, what policies are you referring to?
9       A.  Well, they -- any policies that -- any and
10 all policies. It's my understanding that the
11 policies that I was instructed to follow or that I
12 had were not specific to me at Phoenix Memorial; it's
13 my understanding that I had the same policies as
14 every other Alderwoods location.
15      Q.  What was the basis for that understanding?
16 Where did you come to that conclusion?
17      A.  Well, again, it's a pretty small club.  I
18 had conversations with other Alderwoods employees.  I
19 had meetings with other general managers.  You know,
20 it's just -- I mean, it's common knowledge.
21      Q.  Do you know at the time you left Alderwoods
22 how many locations it had nationwide?
23      A.  I don't.
24      Q.  Do you know how many states Alderwoods
25 operated in?

131

1       A.  No.  You know, a lot.  But no.  Specific
2  numbers, I don't.
3       Q.  Did you in your positions with Alderwoods
4  have any corporate-wide responsibilities, meaning
5  were you responsible for company policies on a
6  corporate level?
7       A.  No.
8       Q.  Do you have any knowledge as to how many
9  employees Alderwoods had at the time you left the
10 company?
11      A.  Not exactly, no.  A lot.  You know, but no,
12 I don't know.
13      Q.  Okay.  What new policy memoranda was faxed
14 to Ken Dimond?  If you know.
15          MS. GIFFORD:  Objection.
16      A.  I don't have the specific.
17      Q.  (BY MR. KNIGHT)  What policy information
18 was faxed by Ken Dimond to you?
19      A.  Well, the question presented to me was how
20 did I receive word of company policy, and one of the
21 ways I received company policy was via fax
22 memorandums coming down.
23      Q.  Were there other ways?
24      A.  Sure.  I mean, verbally, telephonically,
25 over the phone policy was discussed, but there was

132

1  always a written version somewhere, I mean, you know.
2       Q.  Would the policies always come from Ken
3  Dimond?
4       A.  Either Ken Dimond, or when that other level
5  was evolved or came into play, either Ken Dimond or
6  his right-hand man to me, yes.
7       Q.  Were you told by Ken Dimond or the
8  intermediary that the policies they were giving you
9  were company-wide policies?
10      A.  It was my understanding that Alderwoods was
11 Alderwoods.  And I know, I was led to believe that
12 they were trying to achieve the branding image and
13 uniformity across the board.  And I don't ever recall
14 any of them saying specifically this is the same for
15 you as it is for those in North Carolina, but that
16 was my understanding.
17      Q.  Let me refer you to paragraph 13.
18          Actually paragraph 12 would be better to
19 start.
20          You talked about earlier the company-wide
21 policy encouraging employees to volunteer in the
22 community, correct?
23      A.  Yes.
24      Q.  What types of activities were they
25 encouraged to do?

133

1       A.  Church involvement, civic organizations,
2  fraternal organizations, volunteer work at schools,
3  you know, involvement with family activities, things
4  like that.
5       Q.  And how was this encouragement conveyed to
6  them?
7       A.  Verbally.
8       Q.  By whom?
9       A.  Ken Dimond.
10      Q.  Would Ken Dimond meet with the employees?
11      A.  No, he'd meet with me and --
12      Q.  So how would the employees hear from Ken
13 Dimond that they were encouraged to participate in
14 the community?
15      A.  I would tell them.  I mean, I would relay
16 the encouragement.  You know, point out that, you
17 know, it's a good thing to do.
18      Q.  So what would you ask the employees that
19 were reporting to you to do in the way of community
20 involvement?
21      A.  What I would do is say it would be good if
22 you, you know, were active in your church or if you
23 joined the American Legion or the Elks Lodge and
24 participated in, you know, activities in the
25 community.  Go to the Chamber of Commerce meetings or

**NETWORK DEPOSITION SERVICES**
**Transcript of Dennis Baker**

35  (Pages 134 to 137)

134

1   things like that.
2       Q.  What would be the purpose of asking someone
3   to be active in their church?
4       A.  In the hopes of increasing market share,
5   name brand identification, get to know people.
6       Q.  So if you asked an employee to be active in
7   their church, for example, would you ask them to do
8   so in a way that promoted Alderwoods?
9       A.  Subliminally.
10      Q.  How did you hope that that would help
11  Alderwoods' business?
12      A.  Well, the hope is and the industry-wide
13  practice has always been, the people that work in
14  funeral homes, primarily funeral directors, and in
15  the old days funeral home owners, you know, become
16  involved in the community, be active, get to be
17  known.  And then -- hopefully favorably, you know.
18      And then, when a death occurs, you know,
19  Oh, my gosh, you know, Grandma died, what are we
20  going to do?  Oh, let's call that nice man that I met
21  at church.  He's a funeral director at XYZ funeral
22  home.  That's how it works and that's the reason for
23  the encouragement.
24      Q.  Was it your expectation that these
25  employees would be trying to sell for Alderwoods

135

1   while they were involved in the community events?
2       MS. GIFFORD:  Objection.
3       A.  Subliminally, you know, sideways.
4       Q.  (BY MR. KNIGHT)  By making contacts in the
5   community?
6       A.  Exactly.
7       Q.  Were they expected to discuss Alderwoods'
8   preneed policies, for example?
9       A.  Not necessarily, no.
10      Q.  Now, for employees who -- when you were in
11  Arizona, did you hire any new employees?
12      A.  Yes.
13      Q.  Did you consider in hiring those employees
14  whether they were active in the community prior to
15  joining Alderwoods?
16      A.  No, I can't say that I did.
17      Q.  It wasn't a factor in hiring them one way
18  or another?
19      A.  No, probably not.
20      Q.  Did you hire any employees who were active
21  church-going members at the time you hired them?
22      A.  I think so.
23      Q.  Did you encourage those employees to join
24  other community organizations or do things other than
25  be part of the church that they were already a part

136

1   of?
2       A.  The encouragement that I passed along was
3   to encourage employees to -- you know, again, if they
4   chose to -- it wasn't a mandate, it wasn't an
5   order -- but it would be a good thing if they were to
6   become involved in community activities.  You know,
7   that's, you know -- when friends influence people,
8   that's the way market share grows is one theory.
9       Q.  Sure, yeah.  Well, did Ken Dimond ever tell
10  you to talk to your employees about doing more
11  community work?
12      A.  I think so.
13      Q.  Do you recall what he said in those
14  conversations?
15      A.  I think he said it would be a good idea if
16  the employees become involved in community
17  activities.
18      Q.  He didn't say they had to?
19      A.  No.
20      Q.  Are you aware of a company-wide policy
21  requiring employees to be involved in the community?
22      MS. GIFFORD:  Objection.
23      A.  It's my understanding there is a
24  company-wide policy to encourage people to become
25  involved in community activities.

137

1       Q.  (BY MR. KNIGHT)  Did you ever discuss
2   community activities or community service work in
3   evaluations with employees?
4       A.  I don't recall doing that.
5       Q.  Do you recall whether it's part of the
6   evaluation form for employees?
7       A.  For application?
8       Q.  Evaluation.
9       A.  Oh, evaluation.  I suspect it is included
10  in the evaluations, yes.
11      Q.  You suspect it is.  Do you recall seeing it
12  in there specifically?
13      A.  I think in evaluations -- I don't know that
14  they're preformed, you know, but I think it's a good
15  thing if employees are involved in community
16  activities.  I think they get kudos or a pat on the
17  back or a gold star.  You know, good for you, you're
18  active in the community, that's good.
19      Q.  In your time with Alderwoods was there one
20  like a uniform evaluation form that all the locations
21  used?
22      A.  I don't -- I don't know.  I suspect there
23  was, but I don't recall.
24      Q.  Did you notice any difference in
25  evaluations forms when you moved to Oregon from what

**NETWORK DEPOSITION SERVICES**
**Transcript of Dennis Baker**

36 (Pages 138 to 141)

138

1 you had seen in Arizona?
2     A. I did not notice.
3     Q. Okay. Did you have any --
4     A. I'm of the opinion they're all the same.
5     Q. Did you have any employees when you were in
6 Arizona who didn't do anything in the community at
7 all to your knowledge?
8     A. I'm sure I did.
9     Q. Were they disciplined in any way?
10    A. No.
11    Q. Did you do anything to monitor their
12 community activity when you were in Arizona, your
13 employees?
14        MS. GIFFORD: Objection.
15    A. No.
16    Q. (BY MR. KNIGHT) Did Ken Dimond ask you to
17 report to him as to what your employees were doing in
18 the community?
19    A. I think the question was asked about
20 whether or not there is involvement in community
21 activities, yes.
22    Q. Did you report to him what specific
23 employees were or were not doing?
24    A. Probably, uh-huh.
25    Q. How did you know what they were doing?

139

1     A. You know, just by being aware. I knew, you
2 know, who belonged to the motorcycle club, who was a
3 member -- you know, I just -- you know, I knew from
4 involvement.
5     Q. You mentioned motorcycle club, for
6 example. If someone was part of the motorcycle club,
7 did you know whether they had joined the motorcycle
8 club because Alderwoods had encouraged them to do
9 so?
10        MS. GIFFORD: Objection.
11    A. No, I would have no way of knowing that.
12    Q. (BY MR. KNIGHT) Do you know of any
13 employees who joined a club or joined a church or any
14 other community service or any other community
15 organization specifically because Alderwoods
16 requested them to?
17        MS. GIFFORD: Objection.
18    A. Well, two-part answer. No. And first
19 part; I don't ever know of Alderwoods, you know,
20 requesting -- we're getting into semantics here, but
21 it wasn't mandated.
22    Q. (BY MR. KNIGHT) I should have said
23 encouraged. Did anyone join to your knowledge
24 specifically because Alderwoods encouraged them to
25 join?

140

1     A. I would say so, yes.
2     Q. Who did you think did that?
3     A. You know, I don't have specifics.
4     Q. Okay. In paragraph 14 of your affirmation
5 you say that you were told that the community work
6 was encouraged to be completed on a volunteer basis,
7 so employees would not be paid for this work.
8     A. Uh-huh.
9     Q. Did Ken Dimond ever tell you that employees
10 would not be paid for work in the community?
11        MS. GIFFORD: For the record, this is
12 paragraph 13, not 14; right?
13        MR. KNIGHT: I'm reading from 14.
14        MS. GIFFORD: I see, okay. Uh-huh.
15    A. Okay. Well, it depends on where you put
16 the emphasis when you read that sentence. Okay?
17    Q. (BY MR. KNIGHT) Okay.
18    A. And the way I read this sentence and the
19 way I stated this was, I was told that the community
20 work was encouraged to be completed on a volunteer
21 basis, so employees would not be paid for this work.
22        You know, it's not I was told that
23 community work was encouraged to be completed on a
24 volunteer basis, so employees would not be paid for
25 this work, you know.

141

1     Q. Well, that's what I'm getting at.
2     A. Okay.
3     Q. What I'm asking you is did Ken Dimond ever
4 tell you we're not going to pay them for this work?
5     A. Well, yeah, I think so.
6     Q. He said -- he told you that specifically?
7     A. Well, the understanding was that employees
8 were encouraged to belong to volunteer work, and
9 there was never any indication that they were going
10 to be paid for that. I mean, you know.
11    Q. Okay.
12    A. It was like, you know, you could be
13 encouraged to plant a garden and grow fresh
14 vegetables, it'd be good for you, but, you know,
15 you're not going to get paid for that.
16    Q. Yeah, I understand that there's an
17 inference to be drawn from that.
18    A. Okay.
19    Q. What I'm asking is did he ever come out and
20 say that we're not paying employees to work in the
21 community -- we're encouraging them to do it, but did
22 he ever actually say and we're not going to pay them
23 for it?
24    A. I don't recall.
25    Q. Okay. You were told, however, that

**NETWORK DEPOSITION SERVICES**
**Transcript of Dennis Baker**

37  (Pages 142 to 145)

---

142

1    Alderwoods would pay dues and costs for employees?
2        A.  Yes.
3        Q.  And who told you that?
4        A.  All of my instructions come from Ken
5    Dimond.  And, you know, I don't know that he ever
6    specifically said, you know, that, you know,
7    Alderwoods will pay, but I know that I paid
8    membership dues for organizations.  I paid -- I
9    authorized the company to pay, okay?  And nobody
10   smacked my hand, so it was authorized.
11       Q.  But you don't know whether it was a
12   company-wide policy to do that?
13       A.  I don't know if it's in writing anywhere.
14       Q.  Okay.  I forgot his name, but you had a
15   different regional manager in Oregon; correct?
16       A.  Yes.
17       Q.  Did you ever have any discussions with him
18   about a community work policy?
19       A.  Not that I recall.
20       Q.  In paragraph 17 you state that you were
21   encouraged by Ken Dimond to hold weekly staff
22   meetings and discuss the importance of community
23   involvement?
24       A.  As well as many other topics, yes.
25       Q.  Okay.  Did you discuss community

---

143

1    involvement at every weekly staff meeting?
2        A.  No.
3        Q.  How frequently would you discuss it?
4        A.  Occasionally.
5        Q.  Would occasionally be once a month at staff
6    meetings or --
7        A.  I doubt that that subject came up once a
8    month.
9        Q.  It came up less than that?
10       A.  Yes.
11       Q.  And you go on to say that employees were
12   offered suggestions of various community
13   organizations they could join.  Is that true?
14       A.  Yes.
15       Q.  Were those your suggestions?
16       A.  Yes.
17       Q.  What suggestions did you give?
18       A.  Church, Kiwanis, American Legion, PTA.
19       Q.  Did you ever discuss at any of these
20   meetings whether they would be compensated for either
21   their dues or the time they spent?
22       A.  Yes.
23       Q.  And what did you say to them?
24       A.  I said that dues would be paid.
25       Q.  What did you say about time?

---

144

1        A.  You would not be compensated for time
2    spent.
3        Q.  You told them that?
4        A.  Uh-huh.
5            MS. GIFFORD:  That's a yes?
6        A.  Yes.
7        Q.  (BY MR. KNIGHT)  Did anyone ever ask you
8    that or did you just tell them of our your own
9    accord?
10       A.  Well --
11           MS. GIFFORD:  Objection.
12       A.  -- I told them of my own accord just so
13   they would know, yes, if you join the American
14   Legion, the company will pay your dues but you're not
15   going to get paid for going to American Legion
16   meetings because I know that was the intent of the
17   company.
18       Q.  (BY MR. KNIGHT)  Did you tell them that
19   they could opt not to join any organizations if they
20   chose to?
21       A.  Yes.
22       Q.  Were you ever instructed by Ken Dimond to
23   hold a meeting with your employees specifically for
24   the purpose of discussing community involvement?
25       A.  I don't think so.  I'm sure not.

---

145

1            MS. GIFFORD:  Is this a good time for
2    a break?
3            MR. KNIGHT:  Okay.
4            (A recess was taken.)
5        Q.  (BY MR. KNIGHT)  Sticking with Exhibit 2
6    here, you talk about the on-call policy on page 4.
7    In paragraph 19 you say funeral directors were
8    required to be on call.
9            In your employment at Alderwoods, any other
10   job titles besides funeral directors required to be
11   on call?
12       A.  Embalmers.  And, you know, I just probably
13   said funeral directors instead of funeral
14   directors/embalmers because mostly it's all the same.
15       Q.  Uh-huh.  Now, in paragraph 20 you state
16   that employees handled these calls but were not paid
17   by Alderwoods for any time spent on these calls since
18   they were outside of the regular workday and off-site
19   from the funeral home; is that right?
20       A.  Yes.
21       Q.  But I think you testified earlier that that
22   was not the case the entire time that you were with
23   Alderwoods, correct?
24       A.  Correct.  This was prior to the evolution
25   of the end result.

EXHIBIT 49

1

```
 1            IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
 2              SAN FRANCISCO/OAKLAND DIVISION

 3

 4   WILLIAM HELM, DEBORAH PRISE, HEATHER P. RADY, et
     al., on behalf of themselves and all other employees
 5   and former employees similarly situated,

 6        Plaintiffs,

 7

 8   vs                                  No. CV-08-1184-SI

 9

10   ALDERWOODS GROUP, INC.,

11        Defendants.

12

13            DEPOSITION OF HERBERT C. BATH
           Taken on Behalf of the  Defendants
14     On October 23, 2009, beginning at 8:58 A.M.
                In Coffeyville, Kansas

15

                     APPEARANCES
16

     Appearing on behalf of the PLAINTIFFS:
17

     Annette Gifford
18   DOLIN, THOMAS & SOLOMON
     693 East Avenue
19   Rochester, New York 14607
     (585) 272-0540
20   agifford@theemploymentattorneys.com

21

22

23

24   REPORTED BY:  LESLIE A. SHELLEY, CSR

25
```

NETWORK DEPOSITION SERVICES
**Transcript of Herbert Bath**

28  (Pages 106 to 109)

106

1 The policy states here that many states slash
2 provinces require a designated meal break after a
3 certain number of hours worked and indicates that
4 you may consult the HR specialist for your area for
5 assistance in determining the required meal periods.
6 Do you see that?
7     A   Um-hmm.
8     Q   And that's what the policy, in fact,
9 states?
10     A   Yes.
11     Q   How did meal breaks work at your location,
12 at the locations that you managed?
13     A   Most of the time, they -- they worked
14 just -- they alternated meal breaks.  Sometimes
15 there was nobody else there, so there was no meal
16 break.  I mean, they ate, but they were answering
17 the telephone or answering the door or -- or
18 something like that.
19     Q   Okay.  Okay.  Did the hourly employees at
20 the locations that you managed have to -- to clock
21 out for lunch breaks?
22     A   Yes.
23     Q   Were the employees at the locations that
24 you managed supposed to take lunch at a certain time
25 of day?

107

1     A   Not particularly.
2     Q   Okay.  Were they supposed to spend a
3 certain amount of time on their lunch breaks?
4     A   Not particularly.
5     Q   Okay.
6     A   I mean, they had -- they had an hour, but
7 that wasn't always -- you know, they come back in
8 thirty minutes and take off early or -- or whatever,
9 but...
10     Q   Okay.  Were the meal breaks at the
11 locations that you managed for hourly employees paid
12 or unpaid?
13     A   The lunch breaks were unpaid.
14     Q   And did the hourly employees at the
15 locations that you managed clock back in when they
16 returned from meal breaks?
17         MS. GIFFORD:  Objection.
18     A   Most of the time, yes.
19     Q   (MS. MORGAN)  Okay.  So most of the time,
20 the employees that reported to you at the locations
21 that you managed clocked out for meal breaks when
22 their meal breaks started and clocked back in after
23 their meal breaks ended; is that correct?
24     A   That's correct.
25     Q   If an employee at the locations that you

108

1 managed worked through a meal break, did they
2 indicate that on their time sheets?
3     A   No.
4     Q   I'm sorry, time cards?
5     A   No.
6     Q   And is that -- did they ever indicate that
7 on their time cards if they worked through a meal
8 break?
9         MS. GIFFORD:  Objection.
10     A   I assume they did, but I don't know that
11 they did.
12     Q   (MS. MORGAN)  Okay.
13     A   We -- we were instructed to clock out and
14 clock back in whether we went anyplace to eat or
15 not.  If we still answered the phone, we still had
16 to clock out and clock in.
17     Q   Okay.  You're saying we, but you didn't
18 use a time clock; correct?
19     A   Right.
20     Q   Okay.
21     A   Right.  But at my location, we were
22 instructed that whether you left the premises or
23 not, you had to clock out and clock in.
24     Q   Okay.
25     A   Even if you were the only one there and

109

1 had to answer the phone and answer the door.
2     Q   Okay.  So you're -- it's your testimony
3 that employees at the locations that you managed
4 were instructed to clock in and clock out -- I'm
5 sorry, clock out and clock in for meal breaks,
6 regardless of whether they took their meal breaks or
7 not?
8     A   That's correct.
9     Q   And who instructed them to do so?
10     A   Dennis Phillips.
11     Q   When employees at your locations worked
12 through a meal break, did you authorize that their
13 time for that meal break -- I'm sorry, that that
14 time that they spent working be paid?
15         MS. GIFFORD:  Objection.
16     A   If it wasn't on their time card, no.  If
17 it was on their time card, yes.
18     Q   (MS. MORGAN)  Did you ever authorize
19 employees to be paid for the time when they worked
20 through a meal break?
21         MS. GIFFORD:  Objection.
22     A   Sure, if it was on their time card.
23     Q   (MS. MORGAN)  And if it wasn't on their
24 time card?
25     A   No.

**NETWORK DEPOSITION SERVICES**
**Transcript of Herbert Bath**

41 (Pages 158 to 161)

---

158

1     MS. GIFFORD: Objection.
2     A    Yes.
3     THE WITNESS: I'm going to need to take a
4  break.
5          (Off the record at 2:10 p.m.)
6          (On the record at 2:19 p.m.)
7     Q   (MS. MORGAN) Mr. Bath, if you could take
8  a look at Paragraph 12 of your affirmation.  And
9  this paragraph refers to what you call the
10 Alderwoods' Community Work Policy.  Do you see that?
11    A    Yes, ma'am.
12    Q    Okay.  What do you mean by Alderwoods'
13 Community Work Policy?
14    A    That the employees participate in
15 community activities.
16    Q    Which employees?
17    A    All the employees.
18    Q    Hourly and salary?
19    A    Yes, ma'am.
20    Q    And what is -- what are the specifics of
21 this policy, that -- that hourly and salary
22 employees are supposed to participate in employee
23 activity -- in community activities?
24    A    Well, in -- in churches, in rotary,
25 Lions Club, all different functions of the community

---

159

1  service organizations.
2     Q    Any other details of this policy?
3     MS. GIFFORD: Objection.
4     A    No, not that I know of.
5     Q    (MS. MORGAN) Okay.  When you state that
6  this policy required employees to volunteer their
7  time to outside community organizations, which
8  employees are you referring to?
9     A    All employees, hourly and salary.
10    Q    And this was the case for the employees
11 that worked in the locations that you managed?
12    A    Yes.
13    Q    Do you know whether this policy, as you've
14 described it, was in effect for employees at
15 locations other than the ones you managed?
16    A    I assume it was because it was discussed
17 on conference calls and in different meetings by the
18 managers and the area managers and...
19    Q    So you assume it was because it was
20 discussed in conference calls and at meetings?
21    A    Right.
22    Q    Any other thing upon which you base that
23 assumption?
24    A    Well, other than when we was in Orlando
25 one time, the -- Mr. Houston said that we were to be

---

160

1  active in all of the community organizations that we
2  could.
3     Q    But at that meeting, it was -- it was area
4  managers; correct?
5     A    Yes, all of the area managers were at that
6  meeting, yes.
7     Q    And so in his communication, he was
8  referring -- when he said that you were all supposed
9  to be involved in community activities, he was
10 referring to the area managers; correct?
11    A    I think --
12    MS. GIFFORD: Objection.
13    THE WITNESS: I'm sorry.
14    A    He was -- I think he was emphasizing that
15 all employees be active in the community.
16    Q    (MS. MORGAN) That all employees be active
17 in the community or that all employees were required
18 to be active?
19    MS. GIFFORD: Objection.
20    A    To be -- be active.
21    Q    (MS. MORGAN) So was it a requirement?
22    A    Well, I understood that it was.  And --
23 and most everybody else re -- understood the same
24 thing, that I had talked to.
25    Q    And who were these other people that you

---

161

1  talked to?
2     A    Well, the -- the area managers from --
3  from our area and Dennis and -- and Brent and
4  Gordon.
5     Q    So it's your testimony, Mr. Bath, that
6  employees, hourly and salary, were required to
7  participate in community activities?
8     A    That's my understanding, yes, ma'am.
9     Q    And you base this on the conference calls
10 you participated in, meetings that you attended, and
11 what Mr. Houston said that you've described?
12    A    Right.
13    Q    Anything else --
14    A    And -- and that was --
15    Q    -- that you base it on?
16    A    That was actually at one of our meetings.
17    Q    Okay.
18    A    In -- in Orlando that Mr. Houston said
19 that.
20    Q    Okay.  Anything else that you base that
21 on?
22    MS. GIFFORD: Objection.
23    A    Not to my knowledge.
24    Q    (MS. MORGAN) What do you mean by the word
25 volunteer in Paragraph 12?

---

## NETWORK DEPOSITION SERVICES
### Transcript of Herbert Bath

49 (Pages 190 to 193)

190

1  about it?
2      A   No, I do not.
3      Q   Did you ever set up a leadership network
4  contact report?
5          MS. GIFFORD:  Objection.
6      A   No, not to my knowledge.
7      Q   (MS. MORGAN)  Do you know of anybody else
8  who did?
9      A   No.
10     Q   Did you ever identify an influencer during
11 your employment with Alderwoods?
12     A   Yes.
13     Q   And who was that?
14     A   Bill Althouse.
15     Q   What was his position?
16     A   He was the manager at Miami
17 Cooper-Althouse.
18     Q   Location manager?
19     A   Yes.
20     Q   And he was not an hourly employee;
21 correct?
22     A   No.
23     Q   Any other influencers that you identified?
24     A   Jim Thibus in -- in Independence at Potts
25 Funeral Home, was the area manager there.

191

1      Q   Jim Thibus?
2      A   Thibus.
3      Q   Thibus.  And he was the location manager?
4      A   Yes.
5      Q   And he was not an hourly employee;
6  correct?
7      A   That's correct.
8      Q   Any other influencers that you identified
9  during your employment with Alderwoods?
10     A   Not that I remember.
11     Q   Okay.  With respect to Bill Althouse, how
12 frequently were there meetings with him?
13         MS. GIFFORD:  Objection.
14     Q   (MS. MORGAN)  With him, I'm sorry.
15     A   With -- as the influencer, as --
16     Q   Yes.
17     A   I think we only did once or twice.  Now,
18 we would mention it in the calls or if I was down
19 there or something, but I don't think we ever --
20 other than just once or twice, I did anything.
21     Q   Okay.  Anybody assist in these meetings?
22     A   Not to my mem -- memory.
23     Q   Did you ever send them thank you letters?
24         MS. GIFFORD:  Objection.
25     A   To the influencers, to Bill or --

192

1      Q   (MS. MORGAN)  Um-hmm.
2      A   Yes, yes, I did.  To Bill and Jim both.
3      Q   Did you ever track referrals from either
4  Bill Althouse or Jim Thibus?
5      A   No.
6      Q   Okay.  And with respect to Jim Thibus, how
7  frequently were there meetings with him?
8      A   About the same.
9          MS. GIFFORD:  Objection.
10     A   I'm sorry.  About the same as...
11     Q   (MS. MORGAN)  As the -- about the same as
12 with --
13     A   With Bill.
14     Q   -- Mr. Althouse?
15     A   Yes.
16     Q   Okay.  Did you ever participate in a
17 community seminar program at Alderwoods?
18     A   Not to my memory.
19     Q   Anybody else at Alderwoods, that you know
20 of, participate in a community seminar program?
21     A   Not that I know of.
22     Q   Okay.  Did you ever host community events
23 while you were employed at Alderwoods?
24         MS. GIFFORD:  Objection.  Go ahead.
25     A   Yes.

193

1      Q   (MS. MORGAN)  What community events did
2  you host?
3      A   Hosted the Christmas tree memorial
4  program.  Also, we had a seminar on senior citizens
5  for durable power of attorney, social security
6  information, that kind of thing.
7      Q   Anything else?
8      A   Not that I remember.
9      Q   And when did you host the Christmas tree
10 memorial program?
11     A   We did it two years.  I think it was in
12 2001 and 2002, I believe.
13     Q   Who assisted you in hosting that, if
14 anyone?
15     A   Dorothy did and Dora and Jack.
16     Q   Anybody else?
17     A   Not to my mem -- memory.
18     Q   Did the -- did the Christmas tree memorial
19 program take place during regular work hours?
20     A   No.
21     Q   When did it --
22     A   One -- one did.  One did.  The other one
23 didn't.  The other one was in the evening.
24     Q   Okay.  So the -- the one that did take
25 place during normal business hours, did Dorothy,

**NETWORK DEPOSITION SERVICES**
**Transcript of Herbert Bath**

50  (Pages 194 to 197)

---

194

1     Dora, and Jack re -- report the time they spent?
2         A   Yes.
3         Q   And were they compensated for it?
4         A   Yes. To my knowledge, they were, yes.
5         Q   With respect to the Christmas tree
6     memorial program that took place outside of regular
7     business hours, did Dorothy, Dora, or Jack record
8     the time that they spent assisting?
9         A   I don't think so.
10        Q   Were they compensated for it?
11        A   Not to my knowledge.
12        Q   And how much time did they spend?
13        A   Oh, it was probably an hour and a half to
14    two hours.
15        Q   Total?
16        A   Each, yes.
17        Q   They each spent about --
18        A   About an hour and a half --
19        Q   -- an hour and a half?
20        A   -- to two hours, yes.
21        Q   The seminar on senior citizens --
22        A   Um-hmm.
23        Q   -- anybody assist with that?
24        A   Dorothy and Dora did. I don't think Jack
25    did on that one.

---

195

1         Q   And did that seminar take place during
2     regular business hours?
3         A   One did, two did not.
4         Q   So it took place three times?
5         A   Yes. We had it afternoon and evening one
6     day and then in Chetopa, evening, the next day.
7         Q   With respect to the seminar and senior
8     citizens that took place during the regular work
9     day, did Mrs. Bath and Mrs. Boore --
10        A   Um-hmm.
11        Q   -- report the time they spent?
12        A   Yes.
13        Q   And were they compensated for it?
14        A   Yes.
15        Q   With respect to the seminar that -- on
16    senior citizens that took place outside of regular
17    work hours, did they report their time?
18        A   I don't think so.
19        Q   Were they compensated for it?
20        A   Not to my knowledge.
21        Q   How much time was spent?
22        A   Probably the one in Altamont, an hour and
23    a half to two hours. The one in Chetopa, probably
24    three to three and a half hours.
25        Q   And that was how much time they each

---

196

1     spent?
2         A   Yes. The reason it was different is they
3     had driving time to and from.
4         Q   So you're including their driving time
5     in --
6         A   In the -- in that --
7         Q   -- how much time they spent?
8         A   -- yes. In that -- that one, yes.
9         Q   Where did this seminar take place?
10        A   I don't remember in Altamont -- I mean, in
11    Chetopa. It was at the first Baptist church in
12    Altamont. I think it was at the high school
13    multipurpose room in Chetopa. I think it was.
14        Q   Other than the Christmas tree memorial
15    program and the seminar on senior citizens, did you
16    host any other community events?
17            MS. GIFFORD: Objection. Go ahead.
18        A   I don't think so. Not that I remember
19    anyway.
20        Q   (MS. MORGAN) Are you aware of anybody
21    else hosting community events while you were
22    employed at Alderwoods?
23        A   Yes.
24        Q   Okay. Who else?
25        A   Cooper-Althouse, Bill Althouse, down there

---

197

1     had Christmas memorial program -- Christmas tree
2     memorial program two years anyway.
3         Q   Anybody else?
4         A   Not that I can remember.
5         Q   Do you know who assisted Mr. Althouse with
6     the Christmas tree memorial program, if anyone?
7         A   Not for positive. I know Jolene did,
8     Jolene Gier, but I'm -- I'm not sure who else might
9     have.
10        Q   Jolene Gier was not an hourly employee?
11        A   Yes, she was --
12        Q   She was?
13        A   -- an hourly employee, yes.
14        Q   Do you know whether -- but you don't know
15    whether anybody other than Jolene Gier helped?
16        A   Right, right.
17        Q   Do you know whether the Christmas tree
18    memorial program that Mr. Althouse hosted took place
19    during or outside regular business hours?
20        A   I think that it took -- it was outside. I
21    think it was on a Sunday afternoon.
22        Q   Do you think it was on a Sunday afternoon
23    on both occasions?
24        A   Yes, I think it was.
25        Q   Do you know whether Ms. Gier reported the

---