## COMMUNITY SERVICE TESTIMONY[1]

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Alleva, Steve | Location Manager | He strongly encouraged employees to become involved in community activities.  The funeral home paid all fees and dues for community work performed on behalf of the location.  The funeral home also compensated employees for the time they spent performing community work, during normal business hours and outside normal business hours.[i]  Alleva Decl. ¶¶ 9-11.<br><br>Employees were also given the option to leave work early if they performed community work.  If an employee attended community activities after hours, they were permitted to leave early on a Friday, but were paid as if they worked a full day.  For example, if an employee attended a Kiwanis event after hours and told Alleva that they attended the event for 3 hours, he or she was permitted to leave work 3 hours early on the following Friday (*i.e.,* at 2 p.m.).  Alleva relied on his employees to accurately report the time spent at community activities.  In theory, employees could have been overcompensated if they over-estimate the time it actually took to perform community work.  *Id.* ¶¶ 12; 13. |
| Bath, Herbert | Location Manager | An employee's choice to participate or not participate in community activities had no positive or negative impact on employment.[ii]  Bath Dep. Tr. at 303:25-304:15.<br><br>Employees were paid for community work done during regular business hours.  *Id.* at 171:8-21.<br><br>Hourly employees who assisted with community events were compensated on some occasions.  *Id.* at 193:1-195:14. |

---

[1] Plaintiffs represented in their Ren. Mot. for Class Cert. Pursuant to Federal Rule of Civil Procedure 23 ("Pltfs' Ren. Mot.") on page 6 that their compilation of testimony from merely 20 witnesses (only 5 of whom are named plaintiffs), represented testimony from "[e]mployees in the ***relevant job titles***," which they define as:  Apprentice Funeral Director/Embalmers, Arrangers, Assistant Funeral Directors, Community Relations Directors, Funeral Directors/Embalmers, Funeral Directors, and Location Managers.  (Pltfs' Ren. Mot. at pp. 1, 6.)  In fact, of the 20 individuals cited, five (5) held none of the seven (7) positions identified by Plaintiffs and, therefore, their testimony cannot possibly be from "[e]mployees in the relevant job titles."  Moreover, Plaintiffs have offered testimony from (a) no Community Relations Directors;  (b) one (1) Apprentice Funeral Director/Embalmer; (c) one (1) Assistant Funeral Director; and (d) only three (3) Funeral Arrangers, Stephen Escobar, Michael Butler, and Matthew Twiss (all from the West Geography).

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Bath, Herbert (cont'd) | Location Manager | Identified a single instance where an employee reported time spent at a golf outing and was not paid. *Id.* at 170:6-171:7.<br><br>Did not evaluate hourly employees on their community involvement. *Id.* at 181:11-182:13. |
| Berryhill, Monica | Location Manager | Employees were encouraged to participate in community activities. There was no requirement that employees become involved in the community and no repercussions if employees did not join community activities. Berryhill Decl. ¶ 15.<br><br>Most often, location managers were involved in community activities. Berryhill Dep. Tr. at 109:12-25.<br><br>Any time an employee spent volunteering in the community as a representative of the company was to be logged by the employee and paid by Alderwoods. She always ensured that employees were paid for all of the time they spent on community activities as representatives of the company. *Id.* at 110:1-7; Berryhill Decl. ¶¶ 16-17.<br><br>Employees participated in community activities, recorded their time, and were paid for all time spent on community activities, both during business hours and after business hours. She cannot recall any employee participating in an after hours community activity on behalf of the company without compensation by Alderwoods. Berryhill Decl. ¶ 18; Berryhill Dep. Tr. at 110:21-111:25; 114:10-14.<br><br>Around 2005, she served as a Geographic Trainer for Alderwoods, and clearly communicated and emphasized to General Managers west of Ohio that any time hourly employees spent engaging in community activities for the company was to be paid. Berryhill Decl. ¶¶ 4, 19. |
| Bollinger, Karen | Family Service Counselor | She was encouraged to participate in community activities, but was not required to do so. She had too many appointments and was too busy to become involved in many community organizations. Bollinger Decl. ¶ 8.<br><br>When she attended a breakfast or lunch at a community function, she recorded and was paid for her time spent at the function. *Id.* |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Butler, Michael[iii] | Funeral Arranger | Funeral directors were required to be involved in the community.  Butler Dep. Tr. at 78:2-10. |
| Burkle, Clark | Location Manager | Not aware of any employee who was required or encouraged to join a community organization. Burkle Dep. Tr. at 64:23-65:8.<br><br>Never heard any member of Alderwoods management tell any employee that employees were expected to participate in community events to generate business.  *Id.* at 72:17-73:1.<br><br>Was not a member of a community organization and did not participate in any community activities as an hourly employee.  *Id.* at 63:11-64:1.<br><br>Was not aware of any employee being evaluated regarding his community involvement.  *Id.* at 66:20-67:4.<br><br>Was never told to fill out forms or otherwise report to Alderwoods management regarding community involvement; not aware of any other employees required to do so.  *Id.* at 66:10-19.<br><br>Not aware of any employee being disciplined or threatened with discipline for lack of community service.  *Id.* at 67:5-9.<br><br>Not aware of "I Believe in Service" or other incentive program related to community involvement.  *Id.* at 73:2-9. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Cain, Waldo | Funeral Attendant | He was not required to participate in community organizations or perform community work as an employee of Alderwoods.  Cain Decl. ¶ 13.<br><br>He was a member of both the Lions and Masons, but did not represent Alderwoods when he attended functions held by these organizations.  He joined these groups voluntarily and would have done so regardless of his work for Alderwoods.  *Id.*<br><br>He never reported on his activities in the community to any Alderwoods managers, or completed a community service report form, nor was he ever required to do so.  *Id.* |
| Cardell, Donald | Funeral Director; Location Manager | Cardell was encouraged to participate in community activities, but was not required to.  Cardell Decl. ¶ 22.<br><br>As both a Funeral Director and Location Manager, Cardell was heavily involved in community organizations (and still is).  He has always tried to do most of his community work during business hours, but he sometimes attended meetings at night and on weekends.  *Id.* ¶ 23.<br><br>As a Funeral Director under Alderwoods, Cardell recorded all his hours spent on community work and was compensated for it.  *Id.* ¶ 25.<br><br>He would not, however, record hours spent attending certain dinners.  For example, the owners of Whitehurst, Sullivan, Burns & Blair would often invite him to a community organization's dinner and would pay for his dinner at the event.  Because the dinner was free and he was invited and attending voluntarily, he did not consider that "work" and would not record his hours spent at such events.  *Id.* ¶ 26.<br><br>Only one or two employees at the location (in addition to Cardell) are currently involved in community work.  These employees are an Arranger and a Funeral Director/Embalmer.  The Arranger does very little community work, while the Funeral Director/Embalmer is very involved in community work.  Both of these employees record their hours spent at such events and are compensated for their time.  *Id.* ¶ 27.<br><br>Some voluntary activities are not compensated.  For example, recently much of the staff at the |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Cardell, Donald (cont.) | Funeral Director / Location Manager | location attended the Greek Food Festival.  The location purchased tickets to the event for all the staff and their families.  Staff and their families could choose to either attend or not attend the event.  Staff who attended but did not volunteer at the event were not compensated for their hours attending the event.  Staff who volunteered at the event were compensated for their time.  *Id.* ¶ 28. |
| Carswell, Shane | Funeral Director | Did not include all of his overtime activity including community service time because "[i]t's not something that you are supposed to be quote, unquote, compensated for.  You are supposed to do it for the good of the company."  Carswell Dep. Tr. at 115:17-21. |
| | | Indicated that the community service done by two of his employees was always on the clock.  "Typically, they never did anything off the clock.  So they always did it when they were working."  *Id.* at 128:25-129:1. |
| | | Believed that there was a company-wide policy that people were suppose to do their community service during the hours that they were working.  *Id.* at 223:8-15. |
| | | Indicated that some of the community service activities, including taking out one member or one person from a church, is not community service.  When asked why he did not report that time, he indicated "That's a good question.  Honestly, I can't tell you why I didn't report it."  *Id.* at 118:14-119:4. |
| Clark, William | Location Manager | He encouraged funeral directors to join a community organization, but never made community service mandatory.  He did not encourage other employees to become active in the community.  Clark Decl. ¶ 7. |
| | | The funeral home paid for fees and dues for employees who participated in community organizations.  If the activity carried over into the evening, the employee would continue to be paid for his or her time.  Most community groups met during business hours.  *Id.* ¶ 8. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Clisby, Chad | Location Manager | He encouraged his employees at Hunters Creek to become involved in the community.  However, none of the employees did so.  The employees were not required to participate in community organizations.  Clisby Decl. ¶ 10.<br><br>There were no incentive programs to encourage employees to join or become involved in community organizations.  *Id.* |
| Collins, Ron | Vice President of Operations, North East | Alderwoods never had a company-wide policy requiring non-exempt employees to participate in community events.  Employees were encouraged to participate, but not required and all time spent participating in community events was to be compensated.[iv]  11/11/09 Collins Decl. ¶ 9; Collins Dep. Tr. at 30:9-14.<br><br>Community programs were administered at the location level and the extent to which locations participated or identified community opportunities often varied depending on the location and the manager.  The importance of community involvement varied depending on the size and demographics of a community; communities with less competition would require less in the way of community involvement to attract business.  11/11/09 Collins Decl. ¶ 10.<br><br>Almost all community outreach could be performed during normal business hours, but to the extent any employees worked beyond their normal business hours they were to be compensated for their time.  *Id.* ¶ 11; Collins Dep. Tr. at 46:6-47:4.<br><br>As a practical matter, some funeral homes did not participate in community activities or had very limited participation in community events.  Collins Dep. Tr. at 203:4-19.<br><br>Not all funeral directors, embalmers arrangers, assistant funeral directors, or location administrators participated in community activities.  *Id.* at 300:4-302:7. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Daigle, Millard | Assistant Manager | No incentive program for participating in community work in effect at his location, and he is unaware of any such program (and never heard of one called "I Believe in Service") used at any other Alderwoods location.  Daigle Dep. Tr. at 198:17-199:3.<br><br>Not aware of any company-wide policy requiring community work or addressing whether community work should be reported or paid.  *Id.* at 199:4-10.<br><br>Understood that the only categories of employees at Alderwoods who were expected to perform community work were Funeral Directors and Embalmers.  *Id.* at 192:20-193:11.<br><br>Does not know whether there were any consequences for any Funeral Director or Embalmer or any other Alderwoods employee for not participating in community activities.  *Id.* at 195:4-9.<br><br>Not evaluated on participation in community work.  *Id.* at 142:2-4.<br><br>Joined Elks Club at age 18 and remained member after leaving Alderwoods; no one from Alderwoods told him to join or would have known about his participation, and there were social aspects of his membership.  *Id.* at 166:13-17; 182:5-183:13; 185:9-17.<br><br>Was paid for at least part of All Saints Day event he attended if it fell on a work day, and at least part of the Carnival/Mardi Gras event he attended if it was a holiday.  *Id.* at 170:6-14; 174:18-175:3. |
| D'Andrea, Daniel | Funeral Director/Embalmer Supervisor | Never saw or heard of an Alderwoods policy requiring to participate in a community organization.  Was not aware of an Alderwoods policy that required employees to perform community work outside the regular work day without pay.  D'Andrea Decl. ¶ 13.<br><br>Alderwoods employees were encouraged to be active in the community, but it was not mandatory.  If an hourly employee volunteered to participate in community activities, they were paid their hourly rate, or overtime if over 40 hours in a week, for all hours while working at an event.  *Id.* at ¶ 14.<br><br>Did not discuss community service as part of hourly employees' evaluations.  *Id.* at ¶ 15. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Dias, Joe | Location Manager | Dias had one or two full-time hourly employees and two or three part-time hourly employees who reported directly to him.  These individuals included his secretary, a family services employee, and a part-time funeral support staff.  None of the individuals performed community work.  9/9/10 Dias Decl. ¶¶ 17-18. |
| Diggs, Jeffrey | Funeral Director/Embalmer | Was not required to perform any community service.  Diggs Dep. Tr. at 73:2-6.<br><br>Not aware of any company-wide policy requiring any employees to perform community service work.  *Id.* at 109:19-110:1.<br><br>Not aware of any company-wide policy discussing whether community service work time should be reported.  *Id.* at 110:3-7.<br><br>Aware of no complaints from any employees at his location that they were required to perform community service or were not being paid for community service.  *Id.* at 110:8-17. |
| Eagan, Charles | Location Manager | He encouraged his employees to participate in community activities, but did not require that they do so.  He would have meetings to discuss community service with employees, particularly funeral directors.  A number of his employees, including funeral directors, did not participate in community activities.  Eagan Decl. ¶ 9.<br><br>He did not use any incentive programs, like "I Believe in Service," to encourage employees to be active in the community.  He does not recall a program called "I Believe in Service."  *Id.* ¶ 10. |
| Elliot, James | Funeral Director | He was encouraged but not required to participate in community activities.  The only organization in which he participated was Kiwanis, which met during the week for lunch.  Elliott Decl. ¶ 9.<br><br>There were no incentive programs at Johnson's Funeral Home to encourage employee participation in community activities.  *Id.* ¶ 10.<br><br>Community service was never part of any evaluation by his supervisor.  *Id.* |

## COMMUNITY SERVICE TESTIMONY

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Escobar, Stephen | Funeral Arranger | Not aware of any company policy for not compensating employees for community service work. Escobar Dep. Tr. at 135:23-136:2.<br><br>Involved in his church, The Church of Jesus Christ of Latter-Day Saints, of which he has been a member his entire life, at the Fine Road Chapel in Modesto, which he has attended since 1995. Alderwoods did not instruct him to join this organization, he chose it because he was already a member, and he did not join any other organizations. *Id.* at 130:20-131:11; 132:20-25; 134:4-7. |
| Fogg, Margaret | Location Administrator | Employees were encouraged, but not required to participate in community service. There were many employees, including funeral directors, who did not participate in community activities. Fogg Decl. ¶ 10.<br><br>She was paid for time she spent at community service activities during the work day. *Id.* ¶ 11.<br><br>She was never asked about community service in an evaluation by her supervisor. *Id.* ¶ 12. |
| Forrest, Wendy | Office Manager | Employees at her location were encouraged to participate in community organizations. There were no repercussions for failure to join community organizations or participate in community activities. 9/9/10 Forrest Decl. ¶ 5.<br><br>All employees that participated in community activities on behalf of her location both during normal working hours and outside normal working hours were paid for their time. *Id.* ¶ 6.<br><br>She participated in a number of community activities on behalf of her location, such as Kiwanis events, including events that occurred outside normal working hours. She has always recorded the time that she spent at these activities and been paid for her time. *Id.* ¶ 7. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Friden, Paul | Location Manager | He does not recall ever hearing about an Alderwoods "Community Work Policy," or "I Believe In Service," and does not recall what "Success Spotlight" was.  Friden Decl. ¶ 14.<br><br>As an hourly employee, he was not required to participate in community organizations or perform community work as an employee of Alderwoods.  He never reported on his activities with any organizations to any Alderwoods managers, or completed a community service report form, nor was he ever required to do so.  *Id.*<br><br>As an hourly employee, if he attended a community activity as a representative of the funeral home, he was paid his hourly wage for the time he spent at the event.  *Id.* |
| Garmback, Janet | Location Administrator | Performed community work during the day and was paid for all of the time.  Garmback Dep. Tr. at 36:2-38:4.<br><br>Employees were never required to participate in community work.  *Id.* at 92:6-11. |
| Gibson, Jill | Funeral Arranger | Employees at Humphrey Mortuary were encouraged to participate in community organizations.  She represented the funeral home at several organizations, including two Chambers of Commerce and Kiwanis, and was paid for her time attending these activities and meetings, including activities that occurred outside normal work hours.  11/12/09 Gibson Decl. ¶ 13; 9/8/10 Gibson Decl. ¶ 15.<br><br>Participation in community activities or organizations was not required by Alderwoods.  There was no incentive program at Humphrey Mortuary to encourage employees to participate in community organizations.  11/12/09 Gibson Decl. ¶ 14.<br><br>Community service was not discussed by her supervisor during her evaluations.  *Id.* ¶ 15. |
| Harper, William Ray | General Manager | Did not encourage any employees to be active in the community.  In his view, he and his brother performed sufficient community service to advertise the funeral home.  Harper Decl. ¶ 9.<br><br>There were few employees who participated in community activities.  One was in the Rotary Club, another in the Lions Club.  The funeral home paid their fees and expenses.  The employees did not log their time for this, but Harper did not tell them that they could not do so.  *Id.* ¶ 10. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Hensley, Ric | Location Manager | Not all employees got involved in community service and those who did participate were primarily managers.  Hensley Dep. Tr. at 50:2-22.<br><br>Employees could elect not to get involved in community service, and there were no consequences.  *Id.* at 54:20-55:8.<br><br>The weekly community service log was blank in most weeks.  *Id.* at 53:2-54:18. |
| Hoachlander, Shelley | Administrative Assistant; Location Administrator | Employees were encouraged to perform community work; it was not required.  Hoachlander Dep. Tr. at 109:9-16.<br><br>Participated in evening community activities and was paid for that time.  *Id.* at 114:20-24; 124:8-125:24.  Other employees that participated in evening events were also paid for their time.  *Id.* at 115:8-14. |
| Johnson, Louise | Funeral Director/Embalmer | Was not required to perform any community service and did not perform any community service.  Johnson Dep. Tr. at 45:9-11; 219:18-21. |
| Johnson, Peter | Location Manager | Employees were paid for community service work done on behalf of Alderwoods both during work time and nonworking time.  Johnson Dep. Tr. at 94:7-95:5.<br><br>Never did anything to encourage employees to participate in community events, except set up a few events for which participating employees were paid.  Johnson Dep. Tr. at 96:3-14. |
| Jones, Jay | Location Manager | Employees were encouraged to become active in the community.  When he was an hourly employee, Jones joined Kiwanis, which met for lunch during the work week.  He also participated in several church activities, but he would have participated in these activities regardless of funeral home policy.  J. Jones Decl. ¶ 8.<br><br>He does not recall any incentive programs at the Memorial Funeral Home to encourage employees to become active in community organizations.  *Id.* ¶ 9. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Jones, Robert | Funeral Director | Community service was not required of all hourly employees company-wide but was particular to employees in funeral director and pre-need sales positions. Jones Dep. Tr. at 183:11-16.<br><br>Not aware of any community service requirement that was imposed by Alderwoods at any other facilities. *Id.* at 187:24-188:3.<br><br>Seeks compensation only for work performed for the Lions Club between 1996 and 1998, at a time when Alderwoods did not exist. *Id.* at 177:3-180-21.<br><br>Not aware of any company-wide policy for employees not to record or report the time they spent performing community services. *Id.* at 191:16-21. |
| Jones, Regina | Funeral Director | Employees were encouraged but not required to be active in the community. She was a member of several organizations, which she had joined prior to working for Alderwoods. She did not recall performing any specific activities to promote the funeral home at these organizations. R. Jones Decl. ¶ 9. |
| Krueger, Richard | Location Manager | He made community activities available to the employees, but participation in community organizations was never a requirement of employment. The funeral home paid for fees, dues, and time spent at activities and organizations that met during the work day. Most community activities took place during regular business hours and were on-the-clock. Krueger Decl. ¶ 7. |
| Kuhta, Richard | Funeral Director/ Embalmer | Not aware of any Alderwoods policy requiring employees to perform community service work. Kuhta Dep. Tr. at 105:2-6.<br><br>Not aware of any Alderwoods employees at his location (other than his salaried location manager) who were performing community service work. *Id.* at 105:7-21.<br><br>Seeks compensation for being member of U.S. Navy and attending weekend reserve duty training. Joined Navy before beginning employment with Alderwoods and continued after termination of employment. Admitted he would have been involved in the U.S. Navy regardless of his employment with Alderwoods. *Id.* at 96:3-19; 97:23-98:13; 100:8-101:4. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Lanza, Michael | Apprentice Funeral Director/Embalmer | None of his Alderwoods managers from 2002 through his termination in 2004 ever discussed community service with him.  Lanza Dep. Tr. at 56:9-57:6; 77:10-80:3; 80:16-18; 84:3-5; 91:15-17; 92:13-15. |
| | | Participated in the Christopher Columbus Club, a social club for Italian men, and went out to dinner with priests and ministers and occasionally entertained them in his home; personally selected and enjoyed these activities and had engaged in them before he began his employment with Alderwoods; Alderwoods did not pay his dues.  *Id.* at 80:19-81:4; 191:13-195:17; 198:1-199:23. |
| | | Was never evaluated on participation in community work.  *Id.* at 203:9-12. |
| | | Not aware of a written policy regarding community service or compensation regarding same.  *Id.* at 204:8-17. |
| Lawrence, Gloria | Location Manager | All employees at her location at encouraged to perform community work.  All community work performed by employees on behalf of her location is compensated, including community work performed outside normal business hours. 9/8/10 Lawrence Decl. ¶ 13. |
| Lay, John | Funeral Attendant | Alderwoods encouraged, but never required, employees to participate in community activities.  Whenever Lay went to a community luncheon, it was in the context of his driving duties and he was paid for his time.  Lay Decl. ¶¶ 11-12. |
| Long, Kasi | Funeral Director | Seeks to be compensated for being member of Girl Scouts and attending scout meetings, trips and overnight camps with her daughter, which she personally enjoyed; was involved in Girl Scouts independent of Alderwoods and remained a member after her employment terminated.  Long Dep. Tr. at 159:6-161:11. |
| | | May have reported and been paid for time spent at Lions Club meetings.  *Id.* at 173:17-174:17. |
| Maldonado, Michael | Funeral Arranger | Has never joined a community organization on behalf of his location.  Does not recall ever being encouraged to do so.  Maldonado Decl. ¶ 17. |

## COMMUNITY SERVICE TESTIMONY

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Mann, Kelly | Office Manager | Hourly employees, including Mann, were not required to participate in community activities or organizations.  Mann Decl. ¶ 11.<br><br>Was a member of the Shriners, an organization she joined voluntary and on her own time.  No one at Alderwoods required her to maintain her membership as part of her employment.  *Id.* ¶ 12.<br><br>Neither her evaluation or the evaluations she did for the employees who reported to her were based on involvement in community activities or organizations.  *Id.* ¶ 11.<br><br>She was not involved in, nor required to be involved in, the Community Leadership Program.  Does not recall any hourly employee at her location being required to be involved in such a program.  *Id.* ¶ 13. |
| Mayes, Buddy | Vice President Operations, Southeastern United States | Alderwoods did not have a policy requiring employees to work in the community or join a community organization.  Employees were encouraged to be active in the community and were compensated for their time.[v]  Mayes Decl. ¶ 11.<br><br>Depending on the size of a location, the location manager may take the lead role in community activities while funeral director may not perform any community work.  Mayes Dep. Tr. at 76:24-77:15.<br><br>Location Managers, not non-exempt employees, were required to identify key influencers in the community.  Mayes Decl. ¶ 12.<br><br>Employees who were involved in community work were paid for that time.  Mayes Dep. Tr. at 73:12-17.  Employees were paid for community activities during normal working hours and outside normal working hours.  *Id.* at 74:5-14. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| McCarthy, Eleanor | Location Manager | Never saw or heard of an Alderwoods policy requiring employees to participate in any community organization, or perform community work outside the regular work day without pay. McCarthy Decl. ¶ 13.<br><br>If an hourly employee volunteered to participate in community activities, they were paid their hourly rate, or overtime if over 40 hours in a week, for all hours while working at these events. *Id.* ¶ 14. |
| McDonald, Beverly | Funeral Director | Was not evaluated on community service. McDonald Dep. Tr. at 143:2-5.<br><br>Location Manager told her to join three community service organizations identified from a list. *Id.* at 138:8-139:23.<br><br>Stopped her involvement in the organizations when she stopped working for Alderwoods because she was no longer required to be involved. *Id.* at 140:9-17; 146:23-147:2.<br><br>Did not seek compensation for community service time during her employment because her manager told her she would not be paid for such time. *Id.* at 152:7-153:20. |
| Messier, Claudia | Funeral Director/Embalmer | Employees at Custer Christiansen Mortuary were encouraged, but not required, to participate in community activities. Did not join any community organizations or get involved in any community activities when she worked for Alderwoods. Messier Decl. ¶¶ 9-10. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Miles, Barry | Location Manager | Only employees in funeral director position were expected to get involved in community service. Miles Dep. Tr. at 242:7-242:13, 276:18-22, 277:14-19.<br><br>Was never told that if he did not join community organizations he would be fired, disciplined or suffer a cut in pay.  *Id.* at 243:12-244:24.<br><br>Is not aware of any funeral director who was disciplined, terminated or suffered a cut in pay because he or she did not join a community organization.  *Id.* at 246:9-20.<br><br>Has heard of the "I Believe in Service" and Community Leadership programs but has no knowledge of what they entail.  *Id.* at 249:4-16.<br><br>Attended Optimist Club meetings and participated in golf tournament, but did not pass out business cards or any marketing materials. *Id.* at 251:10-22, 304:3-17.<br><br>Was never told by managers that he could not record his time spent at meetings with community organizations.  *Id.* at 310:1-9. |
| Nowatka, Steven | Funeral Director | Never saw or heard of an Alderwoods policy requiring employees to participate in any community organization or perform community work outside the regular work day without pay.  Nowatka Decl. ¶ 13.<br><br>Alderwoods employees were not required to participate in community activities.  *Id.* ¶ 14. |
| Patterson, William | Funeral Director | Was not encouraged nor required to participate in community activities as a funeral director. Supervisor told him that community service was an option.  He was told that he could report the time he spent at community activities, but chose not to do so.  Patterson Decl. ¶ 9. |

## COMMUNITY SERVICE TESTIMONY

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Peters, John | Funeral Director | Was never told he had to join at least one organization; never heard of anyone else being required to join at least one organization.  Peters Dep. Tr. at 154:20-155:1.<br><br>Not required to report on community involvement.  *Id.* at 158:24-159:6.<br><br>Never heard of " I Believe in Service" or any other incentive program.  *Id.* at 160:5-14.<br><br>Was "a firm believer" in "joining local organizations in [his] community" and "didn't join all these organizations for business," but did so because he believed in what they do and what they stand for. *Id.* at 153:24-156:14.<br><br>Reported and was paid for time on community bus trips to a veterans cemetery.  *Id.* at 140:12-15; 144:10-146:11.<br><br>Reported and may have been paid for time spent speaking at a high school career day.  *Id.* at 140:24-141:6; 146:12-147:21. |
| Phillips, Shawn | Vice President Operations, Western Region | Alderwoods never had a company-wide policy requiring non-exempt employees to perform work in the community without compensation.  Alderwoods did encourage community involvement, but it was never a requirement.  Employees were to be paid for all time engaging in community activities for Alderwoods' benefit.[vi]  Phillips Decl. ¶ 10.<br><br>Location Managers, not non-exempt employees, were supposed to identify and keep track of community service opportunities and key community contacts.  How these programs were run and the extent of voluntary participation from non-exempt employees would vary from location to location. To the extent hourly employees participated in any of these programs – and in many locations they did not participate – they were required to be compensated for it regardless of whether the activity occurred during normal working hours or outside normal working hours.  *Id.* ¶ 11; Phillips Dep. Tr. at 50:9-51:20.<br><br>Funeral directors, arrangers, and other similarly-classified employees were encouraged but not expected to be involved in community activities.  Phillips Dep. Tr. at 98:11-20.  Not all funeral directors, arrangers, embalmers, and apprentice funeral directors/embalmers participated in |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Phillips, Shawn (cont'd) | Vice President Operations, Western Region | community activities. *Id.* at 127:7-128:6. |
| Powell, William | Funeral Director | Employees encouraged, but not required, to participate in community activities.  The only community activity that Powell participated in was with his church, and he would have participated regardless of the funeral home policy.  Powell Decl. ¶ 10. |
| Prise, Deborah | Location Manager | Performed some community work for personal reasons.  Prise Dep. Tr. (Day 1) at 99:2-9.<br><br>Was "partially" granted pre-approval and partially paid for attending a cocktail party outside business hours. *Id.* at 88:22-89:14. |
| Rady, Heather | Funeral Director/ Embalmer | Was paid for attending Rotary Club and participation in adopt-a-highway program. Rady Dep. Tr. at 68:5-25; 179:15-22.<br><br>Was paid for working at petting zoo and for other community service performed outside normal work hours. *Id.* at 61:14-62:9; 67:23-68:25. |
| Reddick, Jack | Assistant Funeral Director | Employees were not reprimanded for lack of participation in the community.  Reddick Dep. Tr. at 179:18-23.<br><br>No I Believe in Service or other incentive program was in effect.  *Id.* at 201:9-202:6.<br><br>Was member of several clubs and participated in various community activities since 1972, long before he was employed by Alderwoods; merely continued these activities as an employee of Alderwoods and has continued his involvement since his employment with Alderwoods terminated in 2006.  *Id.* at 166:11-171:4; 180:10-181:25.<br><br>Claims he generated business for Alderwoods by (and seeks to be compensated for) frequenting a certain restaurant to drink coffee and socialize with other patrons, discussing hunting, fishing and camping.  *Id.* at 232:24-235:5.<br><br>Does not know if any other employee at his location completed community service forms; only one |

## COMMUNITY SERVICE TESTIMONY

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Reddick, Jack (cont'd) | Assistant Funeral Director | certain manager gave him forms to fill out and he never saw the forms again after this manager was terminated from Alderwoods. *Id.* at 176:22-177:21. |
| Reno, Michael | Funeral Arranger | Participated in Christmas events for Alderwoods and was not paid for this time. Reno Dep. Tr. at 70:7-20.<br><br>Did not participate in any other community service activities. *Id.* at 70:3-6. |
| Rizzotto, Michael | Location Manager | Never saw, heard or was told of an Alderwoods policy requiring employees to participate in any community organization or perform community work outside the regular work day without pay. Rizzotto Decl. ¶ 14.<br><br>Was not aware of any hourly employee at his location who performed community work, or engaged in community activities on behalf of Alderwoods. *Id.* ¶ 15. |
| Rosa, Melissa | Location Manager | Employees were encouraged to participate in community activities. There was no requirement that employees become involved in the community and no repercussions if employees did not join community activities. Rosa Decl. ¶ 28.<br><br>She participated in community activities both during business hours and after business hours and was compensated for all time spent at community activities as a representative of the company. *Id.* ¶¶ 29, 31.<br><br>For after-hours community events such as dinners, the locations paid the ticket costs for the employee and sometimes for the employee's spouse. Sometimes the locations paid employees by the hour for the time they spent at after-hours community events; other times the locations allowed employees to come in a certain number of hours late or leave a certain number of hours early to correspond with the time spent at the community event, and still paid them for a full day of work. *Id.* ¶ 30. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Rosen, Joseph | Funeral Director | Was told that funeral directors were encouraged to participate in community organizations when he was hired, but heard nothing more about community service afterwards.  Rosen Decl. ¶ 12.<br><br>Was not required to participate in community activities and never had time to do so.  *Id.* ¶¶ 12-13.<br><br>There were no incentive programs to promote participation in community activities at Kraeer Funeral Home.  *Id.* ¶ 14.<br><br>Supervisor never asked him about community activities in any evaluation.  *Id.* ¶ 13. |
| Santmyer, William | Funeral Attendant | Alderwoods encouraged employees to participate in community organizations if possible.  Because he was working 60 to 70 hours, he never had time to participate in any community organizations.  Santmyer Decl. ¶ 11.<br><br>Was never told that participation in community organizations was a requirement of his position.  *Id.*<br><br>Once went to a lunch with a funeral director as part of an outreach for the funeral home.  He was paid for this time.  *Id.* at ¶ 12. |
| Schwinghamer, Steven | Location Manager | Employees were never required to participate in community organizations.  Schwinghamer only suggested that they be active in the community.  Schwinghamer Decl. ¶ 11. |
| Sears, William | Location Manager | All employees at his location have been encouraged to join community organizations and/or be involved in community activities.  Participation in community activities is not required.  There were no negative repercussions if an employee chose not to participate in community activities.  Sears Decl. ¶ 10.<br><br>All time spent performing community work on behalf of Hanes Lineberry, both during normal working hours and outside normal working hours, has always been compensated since he began working at this location.  For example, many of the employees at the location, including Funeral Directors, volunteered at church breakfasts that occur outside normal working hours (for example, at 6:30 a.m.).  Those who attended these functions were and are always paid for their time.  *Id.* ¶ 11. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Sims, Mertie | Assistant Office Manager | Was not required to participate in community organizations or activities.  Sims Decl. ¶ 13.<br><br>Alderwoods sponsored community events on occasion.  Hourly employees could volunteer to work at these events, and they were paid for all the time they worked at the event.  *Id.*<br><br>Was never evaluated on the basis of her involvement in community activities or community organizations.  *Id.* ¶ 14. |
| Stiffler, Robert | General Manager | Does not recall any of his employees participating in community work outside regular work hours.  Stiffler Dep. Tr. at 82:16-18.<br><br>Does not recall doing anything to encourage employees to participate in community work.  *Id.* at 84:2-5.<br><br>Has never seen the Alderwoods Community Leadership Program.  *Id.* at 84:17-21.<br><br>If employees did any work outside normal company hours that represented the company, they would be compensated for it.  *Id.* at 88:17-19. |
| Strang, Robert Clayton | Internal Funeral Director, Embalmer | Was never told about or saw an Alderwoods "Community Work Policy," or heard of "I Believe In Service" or "Success Spotlight."  Strang Decl. ¶ 14.<br><br>Was not encouraged or required to participate in community organizations or perform community work as an employee of Alderwoods.  *Id.*<br><br>Never reported on his activities with any organizations to any Alderwoods managers, or completed a community service report form, nor was he ever required to do so.  *Id.*<br><br>No one ever evaluated him on his participation in community activities, or the amount of overtime he recorded.  *Id.* ¶ 15. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| St. Laurent, Andrew | Funeral Arranger/Courier | All employees at his location were and are encouraged to perform community work. He has never performed community work. 9/9/10 St. Laurent Decl. ¶ 11.<br><br>Believes that all community work performed by employees on behalf of the funeral home was and is paid, whether it was performed during normal work hours or outside normal work hours. *Id.* ¶ 12. |
| Stearns, James | Funeral Director | Did not perform any community service work for which he was not paid. Stearns Dep. Tr. at 65:4-8. |
| Sydlowski, Deborah | General Manager | Employees were encouraged to participate in community activities. There was no requirement that employees become involved in the community and no repercussions if employees did not join community activities. Sydlowski Decl. ¶ 6.<br><br>Alderwoods always paid any expenses associated with participating in community events (i.e. ticket costs, dues, etc.), and she instructed employees to report all time spent on company-related community activities, both during business hours and after business hours. *Id.* ¶¶ 9-10.<br><br>Apprentice Funeral Directors, an Arranger, Funeral Director Assistants, Funeral Director/Embalmers, and Location Managers participated in community activities both during business hours and after hours, on nights and weekends. These employees were always paid for all of the time they spent at community activities, including after hours activities, so long as they recorded the time on their written time sheets. *Id.* ¶¶ 8, 11-13.<br><br>She always ensured that all employees were paid for their community work, and is aware of no instance where an employee was not compensated for work in the community on behalf of Alderwoods. *Id.* ¶ 15. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Takesian, Stephen | Family Service Professional | Employees were encouraged or expected but not "required" to participate in community service. Takesian Dep. Tr. at 106:10-15, 161:17-162:1. |
| | | No community service expectation for employees in Funeral Director position. *Id.* at 162:2-6. |
| | | Was a Mason prior to his employment, however, included that as community service time for which he is alleging he should be compensated. *Id.* at 38:19-39:1. |
| | | Admits that the community service work that he did not only benefited the company but benefited him, too. *Id.* at 97:17 – 97:24. |
| | | Claims that the community service that he participated in for which he was not compensated was the Senior Center, the Masonic Lodge, the Armenian church parish council and Cub Scouts. *Id.* at 145:6-146:13. |
| | | Indicated that he was not a member of the Mayor's Aging Commission when he was employed at Alderwoods, but he had all this experience and people that he had met over the years to gain access to these people. *Id.* at 146:7-13. |
| | | Admitted that he was not a Mason because he was trying to fulfill a community service requirement imposed by his employer. Rather, he was a Mason before his employment at Alderwoods and did this for personal reasons. *Id.* at 154:14-155:3. |
| | | There were times when community service was performed and Takesian was paid for the community service work. *Id.* at 151:18-23. |
| | | Admits that when people did not participate in community service activities, there was no disciplinary action or other reprimand from the employer. *Id.* at 163:16-21. |
| | | Recorded all of the time on his time card for the work he actually did on the property. However, the time that he spent off the property, he did not record. When Takesian came in on a day off or otherwise worked on a weekend, he wouldn't sometimes mention it to his supervisor and he is not sure if he was paid for that time or not. *Id.* at 112:5-23. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Thomas, Sandy | Location Manager | No knowledge of Community Leadership Program, Influencer Program; never created or directed anyone else to create a Leadership Network Information Sheet or Contact Report; never identified or directed anyone else to identify influencers; never participated in or directed anyone else to participate in community seminar programs.  Thomas Dep. Tr. at 85:24-87:16.<br><br>He and other hourly employees were paid for the community events hosted by the funeral home.  *Id.* at 87:17-88:17; 118:9-119:6.<br><br>Was not personally evaluated and did not evaluate other employees on their community service "because usually we didn't do any work."  *Id.* at 119:20-120:3. |
| Turnage, Brenda | Location Administrator | Was never encouraged or required by her supervisor to be active in the community.  Belonged to several community organizations before working for the Kiker-Seale Funeral Home and would have done so regardless of the funeral home's policy.  Turnage Decl. ¶ 8. |
| Twiss, Matthew | Funeral Arranger | Was compensated for attending a community trade fair.  Twiss Dep. Tr. at 148:12-150:21.<br><br>Seeks compensation for time spent before and after attending Mass and, sometimes, meetings at St. Viator's Catholic Church in order to "be seen."  *Id.* at 132:22-135:7.<br><br>Was encouraged to join Rotary and Kiwanis, but he did not.  *Id.* at 133:10-13.<br><br>Alderwoods "policy" regarding community involvement did not address compensation.  *Id.* at 146:11-147:9. |
| Walker, Sandra | Location Manager | Employees did not perform community outreach.  Walker Dep. Tr. at 37:5-20.<br><br>If employees performed community service during or outside regular working hours, they were paid.  *Id.* at 39:13-40:1 |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Weinstein, Stacey | Location Manager | Knows of no other job positions besides funeral directors and pre-need people who were encouraged to do community service.  Weinstein Dep. Tr. (Day 1) at 97:11-24. |
| | | No knowledge as to whether pre-need employees were compensated for time spent in community service.  *Id.* at 95:4-96:1. |
| | | No written Alderwoods policy regarding community service or whether employees will be paid for community service.  *Id.* at 99:10-16. |
| | | No recollection of being evaluated or evaluating other employees on community service.  *Id.* at 99:17-100:7. |
| | | No knowledge of Community Leadership Program, Influencer Program; never created or directed anyone else to create a Leadership Network Information Sheet or Contact Report; never identified or directed anyone else to identify influencers; never participated in community seminar programs.  *Id.* at 102:4-103:24. |
| | | Funeral home locations did not have a web site; never created or directed anyone to create a notebook of best practice ideas; never developed or directed anyone to develop a market share report; never completed or directed anyone to complete a community service promotion form; never heard of "Success Spotlights" or "I Believe in Service."  *Id.* at 113:1-114:9. |
| Welch, Sharon | Apprentice Funeral Director | Employees were encouraged to be involved in community activities, but it was not required.  As an apprentice funeral director/embalmer, she was working full-time and in college and, therefore, did not have time to participate in any community organizations.  Welch Decl. ¶ 8. |
| | | Was never evaluated on the basis of community service by her supervisor.  *Id.* |
| | | Welch does not recall that Carr & Erwin Funeral Home had incentive programs to encourage community service in employees.  *Id.* ¶ 9. |

**COMMUNITY SERVICE TESTIMONY**

| Deponent/Affiant | Job Position | Testimony |
|---|---|---|
| Wentworth, Shirley | Funeral Support Staff | Was not required to participate in community organizations or perform community work as an employee of Alderwoods.  Was a member of her church choir for nearly 35 years, which she did voluntarily, on her own time.  No one at Kraeer Funeral Homes required her to participate in the choir. Wentworth Decl. ¶ 12. <br><br> Was never evaluated on the basis of her participation in community work.  *Id.* ¶ 14. <br><br> Never heard of any programs entitled "Success Spotlight" or "I Believe In Service," nor was she required to participate in any such programs.  *Id.* ¶ 18. |
| Wilkinson, Jack | Funeral Director | Never asked, encouraged or required to get involved in the community and does not know anyone else who was.  Wilkinson Dep. Tr. at 152:20-153:7. <br><br> Is a Founder of the Bible Community Church, and acknowledged that his membership is unrelated to Alderwoods.  *Id.* at 152:3-11; 157:9-15. <br><br> Employees were not required to report on their community involvement.  *Id.* at 155:25-156:15. <br><br> Employees were not evaluated on their community participation.  *Id.* at 155:13-24. <br><br> No I Believe in Service or other incentive program in effect.  *Id.* at 155:2-12; 157:1-3. <br><br> Never saw a written policy regarding community work.  *Id.* at 157:18-23. |

---

[i] All declarations cited in this chart are attached to the 9/10/10 Knight Declaration as Exhibit H.

[ii] All deposition testimony cited in this chart is attached to the 9/10/10 Knight Declaration as Exhibit G.

[iii] Mr. Butler was employed by Alderwoods as an Arranger (and not a Funeral Director), but gave testimony regarding community service in the context of Funeral Directors.

[iv] Ronald Collins' 11/12/2009 Declaration is attached to the 9/10/10 Knight Declaration as Exhibit I.

[v] Buddy Mayes' Declaration is attached to the 9/10/10 Knight Declaration as Exhibit K.

**COMMUNITY SERVICE TESTIMONY**

---

[vi] Shawn Phillips' Declaration is attached to the 9/10/10 Knight Declaration as Exhibit L.