"ON-CALL" PIECE-RATE

## TABLE OF CONTENTS

**Page**

**ALDERWOODS COMPANY POLICY** ...................................................................................................... 1-2
    Summary of applicable company policy.

**NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING ON-CALL WORK** ........................................ 3-11
    Sworn deposition testimony of non-exempt Alderwoods' employees directly contradicting Plaintiffs'
    representations to the Court regarding allegedly common experiences involving on-call work.

**MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING ON-CALL WORK** .................................... 12-15
    Sworn deposition testimony of Alderwoods' managers directly contradicting Plaintiffs' representations
    to the Court regarding allegedly common experiences involving on-call work.

**DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS
TO THE COURT REGARDING ON-CALL WORK** ........................................................................ 16-23
    Statements made under penalty of perjury by Alderwoods' employees directly contradicting Plaintiffs'
    representations to the Court regarding allegedly common experiences involving on-call work.

**MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS'
REPRESENTATIONS TO THE COURT REGARDING ON-CALL WORK** .................................... 24-32
    Statements made under penalty of perjury by Alderwoods' managers directly contradicting Plaintiffs'
    representations to the Court regarding allegedly common experiences involving on-call work.

"ON-CALL" PIECE-RATE

| ALDERWOODS COMPANY POLICY | |
|---|---|
| **Policy** | **Cite to Written Company Policy**[*] |
| "All non-exempt employees are required to record all hours worked each day." | Hours of Work and Overtime, III.E Recording of Hours – ALD000005; *see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648 |
| "Employees must review their time card/sheet, correct any errors, and sign it before submitting it to their manager for approval."<br><br>"Employees must check and sign their time card or timesheet at the end of each week to assure that their time cards are correct.  Any discrepancies must be reported to the Location Manager/General Manager as soon as practical." | *Id.*<br><br>Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 10. – ALD000010 |
| "Managers are also responsible for . . . ensuring that no 'off the clock' work is allowed; that is, that all work performed by employees is properly documented on time cards/time sheets." | Hours of Work and Overtime, IV.B.6 Manager Responsibilities – ALD000007 |
| "Location Managers/General Managers must verify and sign their respective employees' time cards/timesheet." | Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 12. – ALD000011; *see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648 |
| "All non-exempt employees will be compensated for all hours worked." | Hours of Work and Overtime, Policy – ALD000004 |
| "Non-exempt employees are to be compensated for all overtime hours worked." | Procedures for Timekeeping (Recording Hours Worked), Purpose – ALD000009 |
| "Non-exempt employees will receive overtime pay of one and one-half (1.5) times their regular rate of pay for all hours worked over forty (40) in any work week . . . ." | Hours of Work and Overtime, III.F Overtime – ALD000006 |

---

[*]All Policies cited in this section are attached as Exhibits 1, 3 and 4 to the Rhonda Suurd Declaration, who is Alderwoods' former Human Resources Manager.  Rhonda Suurd's Declaration was attached to the Brent Knight Declaration to Alderwoods' Opp'n to Pltfs' Motion for Class Cert. ("First Opp'n") [Dkt. No. 218] as Exhibit S.

"ON-CALL" PIECE-RATE

| ALDERWOODS COMPANY POLICY | |
|---|---|
| **Policy** | **Cite to Written Company Policy**• |
| "When the employee is called to work during the on-call time, the employee will be paid at the employee's appropriate rate of pay . . . [and] [w]hen a non-exempt employee is required to take phone calls . . . the employee shall log the start and end times of each phone call [and] . . . will be paid for the time spent in phone conversations. The recorded time will be included in determining if an employee qualifies for overtime pay in a work week." | Hours of Work and Overtime, III.G On-Call – ALD000006 (*see also id.* at III.H Call Back; Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets 9 – ALD000010; *id.* Procedure—Call Logs 2-4 – ALD000011) |
| "If an employee is eligible for and receives piecework pay, the employee is still required to record the actual time worked. The actual hours worked must be figured to determine the correct hourly rate of pay and overtime rate for the pay period." | Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013649 |

"ON-CALL" PIECE-RATE

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Burgess, Jason (Funeral Director, Embalmer)[i] | Acknowledges time records reflect instances in which he recorded telephone time while working on-call and was paid for it. Burgess Dep. Tr. at 135:3-137:14; 139:22-140:20; 149:7-16. [ii] |
| Butler, Michael (Arranger) | On-call work included handling issues with faulty alarm system at the location, which required returning to the location to meet the police and reset alarm.  Butler Dep. Tr. at 100:3-13.<br><br>Manager said not to submit time for performing work on-call, but then sometimes would add overtime to Butler's pay for on-call work responsibilities. *Id.* at 109:19-24; 189:7-9. |
| Carswell, Shane (Funeral Director) | Carswell reported all of the time that he worked for Alderwoods while he was on-call on a different time card than his daily time card.  Carswell Dep. Tr. at 156:22-158:3.<br><br>Carswell indicates that there was work he believed he performed while he was on-call for which he was not compensated, including night call, prep work, and even at the flat rates.  Some nights he would get called and would have to arrive an hour early and still just get paid a flat rate. *Id.* at 159:7-22.<br><br>Carswell was not sure that there was any time he performed work when he was on-call that he did not report in some fashion on his time sheet. *Id.* at 164:2-19.<br><br>Carswell is not aware of any company-wide policy that employees would not be compensated for actually performing work while on-call. *Id.* at 175:2-11.<br><br>On-call work was handled differently when he was a funeral director/embalmer working in the central prep facility than it was when he was a location manager in the funeral home.  In central prep facility, he performed removals and embalming on-call and generally reported all on-call work performed. *Id.* at 152:4-154:23; 156:14-164:8. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Carswell, Shane (Funeral Director) (cont.) | Sometimes he was paid a flat rate and sometimes he was paid for the actual time worked from the time he arrived at the location until he competed the removal/embalming.  *Id.* at 156-159; 163-64. |
| Detschner, Steven (Funeral Director, Embalmer) | Complaint is limited to phone calls handled away from the funeral home because there was no mechanism for reporting his time.  Only started handling on-call phone calls after he became a funeral director.  Detschner Dep. Tr. at 125:21-126:10; 139:25-140:3.

He admitted reporting time spent on the phone if done at the location.  He admitted being paid for on-call work other than phone calls.  *Id.* at 139:5-24.

Told manager that he thought Massachusetts' law required them to be paid four hours every time they were on-call for just being on-call.  *Id.* at 140:13-19.

He was paid the standard two hours for removal and one hour for embalming.  Sometimes it took less time, sometimes it took more time.  If it took longer, and the extra time could be justified, he would record the additional time with an explanation and there are examples of this in his timesheets.  He admitted that it took less than the time allotted.  He was paid for more time than he actually worked and in these instances he may have actually been paid for time spent on the phone setting up the removal.  *Id.* at 77:22-78:18; 149:4-150:25.

Not aware of any policy addressing how employees should be paid for on-call work.  *Id.* at 216:9-19. |

---

** Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

-4-

"ON-CALL" PIECE-RATE

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Diggs, Jeffrey (Funeral Director, Embalmer) | Was usually scheduled for phone duty only two nights a month. Diggs Dep. Tr. at 112:2-5; 113:5-9.<br><br>Did not report or record any of the time that he spent on phone duty and never tried to obtain compensation for the time that he was on phone duty because "For me it was more of a hassle than it was worth." *Id.* at 114:18-115:1; 115:14-16; 125:25-126:12. |
| Escobar, Stephen (Arranger) | Earned piece-rate for performing removals in addition to his hourly rate. Escobar Dep. Tr. at 116:16-117:8; 120:5-11.<br><br>Whether or not he reported removals on his time card depended on if his manager wanted him to, which in turn depended on whether the district manager wanted the manager to. *Id.* at 118:13-120:3.<br><br>Seeks to be paid for the entire period of time that he was required to be available on-call, that is from 5:00 p.m. to 8:00 a.m. *Id.* at 142:14-20. |
| Gonzales, Donna (Assistant Funeral Director) | Worked on-call for only a portion of her employment and was scheduled to be on-call almost every single night during this time. Gonzales Dep. Tr. at 108:18-109:5; 114:12-16; 115:24-25.<br><br>Performed removals, answered the phone and also vacuumed, did the dishes and performed various other miscellaneous tasks when waiting at the mortuary on-call. *Id.* at 119:7-12; 121:14-19.<br><br>Was paid a flat rate for each removal and seeks to be paid that flat rate for all removals and body transports she performed, even if they were done during her regular day when she was on-the-clock and paid her hourly rate. *Id.* at 128:2-129:22; 140:19-141:3. |

---

**\*\***Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7. Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7. Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Johnson, Louise (Funeral Director, Embalmer) | Began performing on-call work and covered for another funeral director who was supposed to be on-call.  On-call means having to be available to answer your phone after normal business hours, being available to provide pricing information over the phone and answer any families' questions or make calls on their behalf, and this may be anytime between 5 pm and 8 am the next morning.  Has not had to go into the office while on-call.  Johnson Dep. Tr. at 67:1-68:18.<br><br>Only covered on-calls when other funeral directors cannot cover them.  *Id.* at 67:7-20; 69:2-4.<br><br>She did not enjoy being woken up at three in the morning to talk to somebody on the phone because people generally have "ridiculous questions" "and it's not just that I get the call and I get paid for the call but then I'm awake, I can not go back to sleep, and I've got to get up in a few more hours and go work, and I could get calls six more times in between then."  She did not think getting paid was worth all of the upset and disruption that she sustained when she was on-call.  *Id.* at 128:3-20.<br><br>She was rarely on-call.  *Id.* at 128:21-24.<br><br>Never saw a written policy issued by Alderwoods saying that people performing on-call duties would not be fully compensated for the work they performed.  *Id.* at 228:15-19.<br><br>Timesheets logged on-call telephone calls for overtime purposes.  *Id.* at 160:15-24.<br><br>When she first started, employees received one hour of overtime standard for being on-call.  Then each phone call was worth 15 minutes of overtime.  Then it changed to fifteen minute blocks.  *Id.* at 176:20-177:8. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Jones, Robert (Funeral Director) | Was paid piece work for death calls in the amount of $35 per removal.  Jones Dep. Tr. at 150:11-18; 151:5-12.<br><br>Jones did not report any other time that he spent performing on-call work because, "I was so passionate about my job and my position that the compensation really was not an issue for me."  *Id.* at 189:14-25.<br><br>Did not tell his manager or anyone else at Evergreen that he was performing on-call work and not reporting all of his time.  *Id.* at 190:4-10.<br><br>Not aware of any company policy at Evergreen for not compensating employees for time spent performing on-call services.  *Id.* at 190:11-15.<br><br>Not aware of any written Alderwoods policy stating that employees were not to report all the time they spent performing on-call services.  *Id.* at 193:11-194:1. |
| Keath, Angela (Location Administrator) | Was never on-call and never performed on-call work.  Keath Dep. Tr. at 184:10-19; 216:5-12.<br><br>Has no individual claim for uncompensated on-call work.  *Id.* at 184:13-16.<br><br>The only hourly Alderwoods employees she was aware were on-call were funeral directors.  *Id.* at 185:10-15; 216:13-217:1.<br><br>Employees at her location who worked on-call kept track of the time they worked while they were on-call; they were compensated for a guaranteed minimum of three hours for responding to a death call (removal/embalming) even if it took less than three hours; if it took longer than three hours, they reported the time in excess of three hours and it was entered into payroll.  *Id.* at 220:7-25; 225:9-228:5.<br><br>During the time that after hour phone logs were used at her location, employees who were using them were compensated for |

---

** Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Keath, Angela (Location Administrator) (cont.) | the time reported on their logs. *Id.* at 224:6-23. |
| Kuhta, Richard (Funeral Director, Embalmer) | Being on-call meant being available to answer calls from families; was not required to perform removals or embalming on-call and only had to leave home in unusual, rare situations.  Khuta Dep. Tr. at 106:23-108:18.<br><br>Was never instructed not to report on-call work time; never discussed among employees or by managers.  *Id.* at 114:12-115:5; 113:8-11. |
| Leal, Adrian (Funeral Director, Embalmer Apprentice) | Participated in on-call time, which consisted of taking three cell phones home and answering calls for three separate locations.  Leal Dep. Tr. at 28:11-29:1.<br><br>Understood on-call could mean that any time that the phone rang and he answered it, he was to log 15 minutes per call and was required to also log how much time was spent on the call and any other identifying information including date of the call, telephone number that was calling, family name, and subject matter.  *Id.* at 59:11-60:13.<br><br>Because he lived far enough away from the funeral home, he did not have to actually go in when he was on-call to respond to calls; rather, he was required to make arrangements to dispatch someone who was closer to handle any on-site issues.  *Id.* at 64:23-65:13.<br><br>Believes that supervisor explained the on-call policy differently than what was intended in the written policies located in his policy manual.  *Id.* at 101:16-103:1.<br><br>Understood that on-call time was compensable only when the employees were actually working, that they were not required to remain on company premises, that they were not confined to their homes or any particular place so long as they were |

---

** Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

**"ON-CALL" PIECE-RATE**

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Leal, Adrian (*cont.*) | within a reasonable travel distance and they were required not to consume alcohol or other intoxicants while on-call.  *Id.* at 115:9-116:4.<br><br>Was not aware of any policy that required employees to perform on-call work and not get paid for it, "I am not aware of any volunteerism that they are asking you to do and not get paid for it."  *Id.* at 175:19-25.<br><br>Was not paid for any outgoing calls while on-call.  *Id.* at 186:24-25. |
| McDonald, Beverly (Funeral Director) | While on-call she would handle removals, do embalmings, meet with families and take telephone calls.  McDonald Dep. Tr. at 158:21-159:5.<br><br>She only wrote down her time initially for embalming because her Manager told her only embalming was paid; however, at some point her Manager allegedly told her to record her time spent on after-hours calls and she wrote that time down on her time sheet.  *Id.* at 161:2-162:19; 85:16-86:14.  Before this change she did not record time spent on after-hour phone calls but she did not recall whether any Alderwoods Manager ever instructed her not to record time spent on after-hours calls.  *Id.* at 86:20-87.5.  She was told at one point to write down the actual time that she spent on a call by her Manager.  *Id.* at 90:12-17. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Ore, William (Apprentice Funeral Director, Embalmer) | While working on-call, recorded time spent on phone calls, writing obituaries, and possibly other on-call tasks on Call Out Sheets.  Ore Dep. Tr. at 112:13-121:9.<br><br>No policy regarding compensation for on-call work besides verbal directive from manager.  *Id.* at 206:8-208:20. |
| Peters, John (Funeral Director) | Answered phone calls, arranged for removals and embalmed bodies while working on-call.  Peters Dep. Tr. at 107:14-109:25.<br><br>Throughout his entire employment with Alderwoods, he always recorded on his timesheets the time that he spent actually engaged in work while on-call.  *Id.* at 110:21-25; 114:24-115:24. |
| Schabloski, John (Funeral Director, Embalmer) | Clocked in and out at base funeral home location when performing removals and/or embalming on-call and was paid for actual time spent performing this work.  Schabloski Dep. Tr. at 76:2-77:21; 80:6-15.<br><br>Did not report phone time or other on-call tasks performed at home or at other funeral home locations because his time clock was not there and he never asked anyone how to record the time.  *Id.* at 138:1-23; 142:17-143:1. |
| Twiss, Matthew (Arranger) | For a period of time, recorded start and stop time for work performed on-call in an on-call log.  Twiss Dep. Tr. at 85:4-17; 203:15-204:16.<br><br>Recorded at least one hour of time spent working on-call.  *Id.* at 152:3-18<br><br>Acknowledged that records show payment for the on-call work he recorded.  *Id.* at 178:14-179:16; 185:5-186:2. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

## "ON-CALL" PIECE-RATE

| NON-EXEMPT DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Wilkinson, Jack (Funeral Director) | Generally scheduled to work every other weekend on-call and otherwise as needed/asked.  Wilkinson Dep. Tr. at 49:7-50:9.<br><br>Took a call then walked downstairs (he lived at the location) to clock in; was paid actual hours worked from the time he clocked in until all on-call work was completed.  *Id.* at 87:6-18; 159:23-160:1.<br><br>No recollection of a written policy regarding on-call work.  *Id.* at 139:8-24.<br><br>Paid hourly rate for hours recorded for on-call work.  *Id.* at 159:23-160:1. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

## "ON-CALL" PIECE-RATE

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Baker, Dennis (Location Manager) | From 2000 or 2001 through 2004 or 2005, the location he managed sometimes used a third party for removals and embalming was done during normal business hours.  Baker Dep. Tr. at 7:14-16; 72:25-75:2; 85:5-8.<br><br>If hourly employees took a call after hours, they were paid for 15 minutes even if the call lasted only a few minutes.  If the call went longer, they would claim the additional time.  *Id.* at 75:9-21; 77:4-20. |
| Bath, Herbert (General Manager) | The only job positions that were on-call were funeral directors, embalmers and location managers.  Bath Dep. Tr. at 235:25-236:6.<br><br>To his knowledge, except for one instance in which one funeral director/embalmer was not compensated for removing and embalming a body, all other employees who performed embalming or removals while they were on-call were compensated for their work.  *Id.* at 237:11-238:18.<br><br>Does not know whether employees at the locations for which he had management responsibility reported the time they spent on after-hour calls or were compensated for that time.  *Id.* at 240:13-241:12.<br><br>No knowledge as to whether employees at locations other than those for which he had management responsibility reported the time they spent on-call or were compensated for such time.  *Id.* at 242:23-243:5. |
| Burkle, Clark (Location Manager) | Never saw a written policy addressing how employees were to be compensated for on-call work.  Burkle Dep. Tr. at 56:21-24. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Daigle, Millard[iii] (Assistant Manager) | Was on-call "all the time" to handle phone calls but performed no other types of work on-call.  Daigle Dep. Tr. at 199:11-201:22.<br><br>No discussion/directive regarding recording on-call time, and was never told by any Alderwoods' manager that he would not be compensated for on-call work.  *Id.* at 202:10-22; 205:2-6.<br><br>Does not know whether other funeral directors reported or were compensated for the time they spent on-call.  *Id.* at 209:20-210:9. |
| Hensley, Ric (Location Manager) | The only positions that reported to Hensley during the time he was General Manager that were scheduled to be on-call were funeral directors and funeral directors assistants.  Hensley Dep. Tr. at 81:3-14.<br><br>Employees who responded to a death call were paid a rate (which Hensley referred to as "piece work") of two hours of pay per death call.  *Id.* at 77:25-78:8; 84:6-13.<br><br>During Hensley's tenure as General Manager, there was a never a time to his knowledge that someone responded to a death call and was not compensated for that time.  *Id.* at 77:6-10. |
| Kamienski, Richard (General Manager) | None of the employees he managed performed any type of piece work or were paid on a flat rate basis.  Kamienski Dep. Tr. at 124:11-125:6.<br><br>Funeral directors, funeral arrangers and location managers were the only employees required to work on-call.  *Id.* at 189:3-14; 229:21-230:2. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Miles, Barry[iv] (Location Manager) | Only funeral directors took after-hours calls. Miles Dep. Tr. at 132:13-18; 229:24-230:4.<br><br>He was paid a flat rate of three hours pay for each after hour removal and 15 minutes for each call taken after hours. *Id.* at 185:7-11. Does not know whether any other Alderwoods' locations had the same procedure for on-call work. *Id.* at 214:2-8.<br><br>Agrees that despite what he was told at his specific location, Alderwoods' company policy was to pay hourly employees on-call for the time they spent on an after-hours call. *Id.* at 203:21-204:9. |
| Pramik, Robert (Market Growth Manager) | The on-call policy applied only to funeral directors. Pramik Dep. Tr. at 140:14-16. Part-time employees would help with removals, but were not on-call. They could say "no." *Id.* at 141:21-142:16. Two of the seven funeral directors he supervised were salaried (and thus not eligible for overtime). *Id.* at 30:2-7.<br><br>Pramik only learned of the "no pay for after-hours calls" policy from his supervisor, Ted Reese. *Id.* at 146:8-12. There was no company-wide meeting that the attended where this policy was discussed. *Id.* at 148:18-149:3.<br><br>Pramik had no knowledge of what the on-call policy was for markets outside Harrisburg. *Id.* at 143:15-20. |
| Prise, Deborah (Location Manager) | Recorded her time and was paid for performing removals on-call. Prise Dep. Tr. (Day 1) at 114:11-21.<br><br>Beginning in July 2005, employees were paid for on-call work time. *Id.* at 117:17-118:4. |

---

[**]Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7. Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7. Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

## "ON-CALL" PIECE-RATE

| MANAGER DEPOSITION TESTIMONY DIRECTLY CONTRADICTING PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Management Deponent** | **Sworn Deposition Testimony Contradicting Plaintiffs' Representations to the Court Regarding Allegedly Common Experiences Involving On-Call Work** |
| Thomas, Sandy (Location Manager) | No employees received piece work pay at Alderwoods. Thomas Dep. Tr. at 41:2-7.<br><br>Alderwoods' policy required employees on-call to carry and maintain a call log.  He and the other on-call employees carried and maintained a call log when they were on-call, and recorded all of their calls.  *Id*. at 61:9-62:8.<br><br>The office manager never worked on-call after hours.  *Id*. at 64:23-65:6. |
| Weinstein, Stacey (Location Manager) | The only job positions that worked on-call time were funeral directors or funeral director managers.  Weinstein Dep. Tr. (Day 1) at 61:7-16.<br><br>Weinstein claims that she did not record in any fashion any of her on-call time.  *Id.* (Day 1) at 65:14-22.<br><br>Weinstein indicates that she never instructed anyone as a supervisor about recording or not recording on-call time.  *Id.* (Day 1) at 68:7-10. |
| White, Raymond (Location Manager) | Clocked in and out for after-hours removals. White Dep. Tr. at 146:12-147:3.  If he did not clock in, he was told to write down his time on his time card.  *Id*. at 165:23-166:8.  Was also told that he could write down the time it took for him to get to the funeral home after he received a call and he would be paid for it.  *Id*. at 228:19-229:10; 232:17-233:10.<br><br>Was never told not to keep track of time he spent answering the telephone after-hours.  *Id*. at 147:15-148:1; 152:3-7.  Was never told that there was a company-wide policy not to compensate employees for time they spent taking phone calls while on-call.  *Id*. at 151:8-14.  Never asked what the policy was.  *Id*. at 151:16-18.<br><br>He was not aware of any policy for compensating employees for on-call work at other funeral homes.  *Id*. at 152:16-21. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| Non-Exempt Declarant | Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work |
| Ballard, Constance (Location Administrator) | Only part-time employees worked after-hours removals at Memory Chapel. They were paid on a piece-rate of $50 per removal, while their hourly rate was $10 to $11 an hour. Generally, a removal took between an hour and two hours. [v] Ballard Decl. ¶ 10. |
| Cain, Waldo (Funeral Attendant) | Performed removals and was paid hourly for each removal. He recorded his time spent on a removal by punching in and punching out. Cain Decl. ¶ 11. |
| Crisp, Donald (Funeral Director) | Would be "on-call" approximately three nights a week performing removals or answering after-hours calls to the funeral home. He was paid hourly for removals and recorded his time from when he received the call at home until he returned home. Crisp Decl. ¶¶ 10-11.<br><br>Was not paid a "piece-rate" for removals. *Id.* ¶ 11.<br><br>Each on-call employee used a phone log to record their time. For any call that lasted 15 minutes or less, he was paid for 15 minutes. If a call lasted more than 15 minutes, then he was paid for each minute the call lasted. *Id.* ¶ 12. |
| Elliott, James (Funeral Director) | He was on-call for after-hours removals about four times a month. When on-call, he worked at the funeral home until 9 p.m., then responded to calls from home. There was also a non-funeral director employee who was on-call for removals. Elliott Decl. ¶ 5.<br><br>The employees were paid for at least two hours for any removal, with the amount of time allotted increasing the further from town the employees had to travel. If he qualified for overtime, he was paid overtime for the removals. He estimates that 99% of the removals were completed within 2 hours, and most took significantly less time. *Id.* ¶ 6.<br><br>Funeral directors also responded to phone calls when on-call. They were paid their hourly rate for the time of the call. Most calls, however, were taken by an answering service, and the funeral directors contacted only in emergencies and for removals. *Id.* ¶ 7. |

---

** Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7. Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7. Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

### "ON-CALL" PIECE-RATE

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Fogg, Margaret (Location Administrator) | If an employee took a telephone call after-hours, they were paid 15 minutes for each call, and additional 15-minute increments thereafter depending on how long the call lasted. *Id.* |
| Forrest, Wendy (Location Administrator) | At one time, employees conducting after-hours removals were paid a flat three hours of time per removal at the employee's hourly rate, including overtime if the employee qualified. 11/4/09 Forrest Decl. ¶ 10.<br><br>Removals were usually performed by drivers who were scheduled to be on duty. Now, a service center handles removals for Humphrey Mortuary. *Id.*<br><br>Funeral directors were paid an automatic 15 minutes for each after-hours call they received, and may have been paid by the minute if the call was longer than 15 minutes. *Id.* ¶ 11. |
| Friden, Paul (Location Manager) (former non-exempt employee) | As an hourly employee, he was "on-call" approximately one night a week, performing removals or answering after-hours phone calls. Friden Decl. ¶ 10.<br><br>As an hourly employee, he was paid a minimum of $40 for each removal. If a removal took longer than three hours, then he would be paid for each hour after that. *Id.* ¶ 11.<br><br>He recorded his time for answering phone calls, and was paid 15 minutes for each call that lasted 15 minutes or less, and paid for each minute thereafter. *Id.* ¶ 12. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7. Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7. Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

## "ON-CALL" PIECE-RATE

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Gibson, Jill (Funeral Arranger) | At some point, employees at Humphrey Mortuary were paid a flat two hours for every after-hours removal at their individual rate of pay, including overtime if they had reached the requisite level of hours.  If a removal lasted for longer than 2 hours, employees were paid for the full time that they worked.  If a removal lasted for less than 2 hours, employees were still paid for the full 2 hours.  9/8/10 Gibson Decl. ¶ 5.<br><br>Typically, removals lasted from between 1 and 1 and a half hours.  If anything, the lump sum payments overcompensated employees.  *Id.* ¶ 7. |
| Jones, Regina (Funeral Director) | Funeral directors at Baldwin-Lee Funeral Home rotated on-call for after-hours removals.  If on-call, the funeral directors were required to be present and on the clock at the funeral home until 9 p.m.  Afterwards, the funeral directors could leave the funeral home but remained on-call.  If she received an after-hours call for a residence removal, she was paid at her hourly rate for the time of the removal.  She took a removal vehicle home with her so that she could drive directly to the residence and not have to stop at the funeral home first.  R. Jones Decl. ¶ 6.<br><br>A separate group of employees handled non-residence removal calls.  These were full-time employees who worked a night shift.  *Id.* ¶ 7.<br><br>Occasionally, she received after-hours business calls when she was on-call.  She was paid at her hourly rate for the time of the call.  She sometimes did not record short calls, but this was her choice and she was never told that she should not record this time.  *Id.* ¶ 8. |

---

** Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

**"ON-CALL" PIECE-RATE**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Korell, Karee (Funeral Director) | Worked "on-call" two to three nights a week performing removals or answering after-hours phone calls.  Korell Decl. ¶ 10.<br><br>Was paid a minimum of three hours for each removal she performed.  If a removal took longer than three hours, then she was paid for each hour after that.  *Id.* ¶ 11.<br><br>Recorded her time "on-call" answering phones.  For any call that lasted 15 minutes or less, she was paid for 15 minutes. If a call lasted more than 15 minutes, then she was paid for each minute the call lasted.  *Id.* ¶ 12. |
| Lange-Louris, Lisa (Funeral Director) | For a few months, when location was very short staffed, location paid employees a piece-rate of $85 per removal for performing after-hours removals.  Lange-Louris Decl. ¶ 5.<br><br>She performed an after hours removal approximately once per week or once every two weeks, and received piece-rate pay.  *Id.* ¶¶ 7-8.<br><br>Removals took between an hour and a half and three hours, depending on the location of the removal.  The time spent on a removal varied depending on where the Funeral Director lived.  *Id.* ¶¶ 9-10.<br><br>She received more under the piece-rate system than she would have at her regular hourly rate, but for longer removals, she did not receive more than she would have at her overtime rate.  She felt that the system was fair and that the time balanced out, since some shorter removals resulted in more compensation than her hourly rate would have, while other longer removals did not.  *Id.* ¶ 11. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

## "ON-CALL" PIECE-RATE

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| LaPlaunt, Daniel (Funeral Director) | Was "on-call" about seven nights a month, performing removals or answering after-hours phone calls. LaPlaunt Decl. ¶ 10.<br><br>After-hours removals performed by a funeral director and part-time employee. They were paid by the hour for each removal plus an additional $40 per removal. *Id.* ¶ 11.<br><br>Recorded his time for each removal from the time he took the call until the time the removal was completed. *Id.* Recorded the time he spent answering phone calls after hours. For any call that lasted 15 minutes or less, he recorded 15 minutes. If a call lasted more than 15 minutes, then he recorded each additional minute the call lasted. *Id.* ¶ 12. |
| Laska, Robert (Funeral Director) | Only funeral directors at his location were on-call after hours. As a funeral director, his "on-call" duties consisted of performing removals or answering after-hours phone calls. Laska Decl. ¶ 10.<br><br>Removals performed after hours were generally performed by a funeral director. Depending upon where the removal was, a part time employee would assist. Whenever he did a removal, he recorded his time from when he first received the call until the removal was completed. Removals were done "on the clock" and funeral directors were paid their hourly wage, including any overtime. *Id.* ¶ 11.<br><br>Funeral directors were not paid a "piece-rate" for removals. At times, his location would use a third-party removal service to perform removals. *Id.* ¶ 11.<br><br>He recorded his time for phone calls in 15 minute intervals. For any call that lasted less than a full 15 minute interval, he was permitted to record the full 15 minutes. *Id.* ¶ 12. |
| Luciano, Christopher (Funeral Director, Embalmer) | At the Romano Funeral Home, he was on-call for removals every other day. At Doane, Beal & Ames, he was on-call 8 nights a month. At both locations, he was paid from the time he was called until he returned home. Was also paid for his time spent handling telephone calls after-hours. Luciano Decl. ¶¶ 8-10. |

---

** Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7. Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7. Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

**"ON-CALL" PIECE-RATE**

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Maldonado, Michael (Funeral Arranger) | Lakewood Funeral Home pays part-time funeral attendant employees lump sums for after-hours removals.  Generally speaking, full-time employees do not receive these lump sum payments.  Maldonado Decl. ¶ 5.<br><br>Employees keep track of their hours spent on after-hours removals, are compensated for those hours, and receive a $35 bonus per removal on top of their hourly wages.  *Id.* ¶ 6.  As a result, for example, if an employee takes 2.5 hours to conduct a removal, they are paid for those 2.5 hours, plus they receive an additional $35.  *Id.* ¶ 7. |
| Mann, Kelley (Office Manager) | On holidays, the superintendent would be on-call, and paid double time if he was called in.  Mann Decl. ¶ 9.<br><br>On rare occasions, she answered after-hours calls, for which she recorded her time and was paid.  *Id.* ¶¶ 9-10. |
| Patterson, William (Funeral Director) | Performed after-hours removals for about 2 weeks when he started at Humphrey Mortuary, but was given an option and chose not to be on-call for after-hours removals.  Removals were usually performed by drivers who were scheduled for after-hours work and worked a night shift.  Funeral directors were not required to perform after-hours removals.  Patterson Decl. ¶ 6.<br><br>When he worked after-hours removals, he was paid 3 hours at his hourly rate for each removal.  He also could be paid his overtime rate if he qualified.  All the removals he performed were completed within 3 hours.  *Id.* ¶ 7.<br><br>Did take after-hours phone calls and was automatically paid 15 minutes for any call.  Would be paid in 15 minute increments if the phone call lasted more than 15 minutes.  *Id.* ¶ 8. |
| Powell, William (Funeral Director) | Funeral directors rotated on-call time.  There were paid hourly for after-hours removals, including overtime if they qualified.  Powell Decl. ¶ 9. |

---

** Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

## "ON-CALL" PIECE-RATE

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Pruitt, Jeanne (Office Administrator) | Was never required to be on-call. Pruitt Decl. ¶ 9.<br><br>In 2002 or 2003, hourly employees who performed after-hours removals were credited a minimum of 2 hours for each removal they performed. If a removal took less than 2 hours, then they would be credited with and paid for 2 hours. For any removal that took more than two hours, the hourly employees were credited with the actual time it took to do the removal. *Id.* ¶ 10.<br><br>In 2003 or 2004, the removal pay procedure changed. Hourly employees were credited with the actual hours it took to do the removal, plus $40 for each removal. *Id.*<br><br>Hourly employees were to record their time from when they took the removal call until the removal was complete. *Id.* |
| Rogers, Kenneth (Funeral Attendant) | Recalls assisting with one after-hours removal, for which he was paid hourly. Rogers Decl. ¶ 7. |
| Roman, Alfred (Funeral Attendant / Location Manager) | When he was an hourly Funeral Attendant he worked weekends and evenings on a part-time basis. He was paid a piece-rate for after-hours and weekend rosaries and removals. A removal typically took one hour and 15 minutes. Rosaries typically took four hours. He cannot recall the piece-rate amount for removals and rosaries, but it was approximately $40. He was paid the same amount for both activities. Roman Decl. ¶¶ 5-7.<br><br>He recorded his time spent on removals and rosaries on his time sheet. He recorded his time even though he was paid the piece-rate for after-hours removals and rosaries in place of his hourly wage. *Id.* ¶ 8<br><br>He believes that if a removal or rosary took a particularly long time, he could speak to his manager and receive a greater piece-rate payment. *Id.* ¶ 9. |
| Santmyer, William (Funeral Attendant) | When he conducted an after-hours removal, he was paid hourly for his time. Santmyer Decl. ¶ 9. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7. Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7. Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

## "ON-CALL" PIECE-RATE

| NON-EXEMPT DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Non-Exempt Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Sims, Mertie (Office Manager) | After-hours removals were preformed by two hourly employees who were paid by the hour while on-call.  Sims Decl. ¶ 9.<br><br>After-hours phone calls were handled by funeral directors who logged the time for each call and were paid for the time spent answering phone calls.  No other hourly employees did any on-call work.  *Id.* ¶ 10. |
| St. Laurent, Andy (Grounds Supervisor) | Worked on-call three to four nights a week performing after-hours removals and taking phone calls.  11/12/09 St. Laurent Decl. ¶ 11.<br><br>Was paid $55 for each removal, which took about 1½ to 2 hours.  *Id.* ¶ 12.  If a removal lasted longer than 3 hours, employees were paid their hourly rate on top of the $55.  If the time above 3 hours took employees past 40 hours for a work week, they were paid for that time at an overtime rate of pay.  9/9/10 St. Laurent Decl. ¶ 8.<br><br>Payment made with lump sums generally was greater than employees would have received at an hourly rate.  *Id.* ¶ 7. |
| Strang, Robert (Funeral Director, Embalmer Intern) | Performed after-hours removals.  For each he would record his time from when he left his house until he returned home.  Strang Decl. ¶ 10.<br><br>Was paid a minimum of three-and-a-quarter hours for each removal performed.  If a removal took longer than three-and-a-quarter hours, then he was paid for each hour after that.  *Id.*<br><br>On occasion, a funeral director who was on call would ask him to be his back up.  He would always record his time for this work, and be paid time-and-a-half for the time he worked.  *Id.* ¶ 11. |
| Welch, Sharon (Funeral Director Apprentice) | Funeral directors and apprentices were on a rotating on-call schedule for after-hours work.  If she received a removal call, she was paid on an hourly basis from the time she received the call until the removal was completed.  This included overtime if she had accumulated sufficient hours to qualify.  Welch Decl. ¶ 7. |

---

**\*\***Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| Manager Declarant | Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work |
| Alleva, Steve<br>(Location Manager) | Beginning in roughly 2007, the Alleva Funeral Home paid Funeral Directors an hour and a half plus $40 for performing after-hours removals. The hour and a half payment for after-hours removals was made at an overtime rate if an employee had already reached 40 hours for a week. Alleva Decl. ¶ 5.<br><br>Removals typically take 2 hours or less, depending on the location of the removal in relation to the funeral home. It is rare that removals take longer than 2 hours. As a result, the hour and a half plus $40 policy may overcompensate employees depending on their hourly rate and the time spent performing the removal. *Id.* ¶¶ 6-7.<br><br>He is not aware of Alderwoods' policy on piece-rate and/or lump sum payments and does not know how other locations paid employees for after-hours removals. *Id.* ¶ 8. |
| Anton, George<br>(Location Manager) | He and the employees who reported to him would sometimes perform removals. On occasion, these removals were after-hours. The hourly employees who assisted with removals were paid for their work by the hour, including overtime if they exceeded 40 hours of work in a given week. Anton Decl. ¶ 6.<br><br>Hourly employees were not paid a "piece" rate for removals. When needed, he would employ a third-party removal service to perform removals. Only the removal service was paid a "piece" rate for removals. *Id.* ¶ 7. |
| Berryhill, Monica<br>(Location Manager) | Employees performing after-hours removals always recorded their time and were paid by the hour. Sometimes, employees were also paid a piece-rate in addition to their regular hourly wage. The piece-rate pay policy changed over time, with employees sometimes receiving just their hourly wages, and other times receiving the piece-rate in addition to their hourly wages. Berryhill Decl. ¶¶ 8-10. |

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7. Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7. Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Cardell, Donald[vi] (Funeral Director / Location Manager) | A piece-rate of $25 was paid to Funeral Directors and designated part-time staff for being on-call. The $25 piece-rate was paid regardless of whether on-call employees ever actually took a call. Thus, on-call employees would often receive $25 for doing no work at all. Cardell Decl. ¶¶ 5-6.<br><br>The location also paid a piece-rate ranging from $25 to $50 to on-call employees who performed after-hours removals or took after-hours calls. This piece-rate payment would be paid instead of the $25 on-call piece-rate payment. An on-call employee performing a single-man removal (a removal requiring only one on-call employee) would receive a higher piece-rate payment than two on-call employees performing a single removal. *Id.* ¶ 7.<br><br>On-call employees answering after-hours calls or performing after-hours removals were required to record their hours on a time sheet. Removals typically took no longer than 1.5 hours. An after-hours call could take anywhere from 15 minutes to 1 hour. *Id.* ¶¶ 9-11.<br><br>As a Location Manager, Cardell has often paid on-call employees a higher piece-rate for a removal that took longer than a typical removal. *Id.* ¶ 12. |
| Clark, William (Location Manager) | After-hours removals were handled by another funeral home in Jackson, Mississippi. Funeral directors remained on-call for residence removals, which required two employees. The on-call funeral director stayed at the funeral home, on the clock, until 9 p.m. After this, if the funeral director was called out for a removal, the funeral director was paid at his or her hourly rate for the time it took to complete the removal. Clark Decl. ¶ 6. |
| Collins, Ronald (Vice President Northeastern United States) | Alderwoods' policy always required employees to report any work performed while on-call. This policy was specifically formalized in 2005 with respect to telephone calls taken while on-call, but it was always the expectation that if non-exempt employees conducted business while on-call, whether it be taking calls, conducting removals, etc., they would be paid for it. Collins Decl. ¶ 15.[vii]<br><br>Alderwoods' 2006 on-call procedures roll out did not change the policy, but standardized company practices for recording on-call time. *Id.* ¶ 18. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7. Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7. Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Crowe, Patrick (General Manager) | On-call procedures were governed by a collective bargaining agreement from November 2001 through October 2004. Crowe Decl. ¶ 7. <br><br> After the collective bargaining agreement expired, funeral directors were the only hourly employees who were on-call answering phones. They were paid for 15 minutes for each call even it lasted only a few minutes. If a call lasted longer than 15 minutes, they were paid for each additional minute. *Id.* ¶ 14. <br><br> Removals were performed by both funeral directors and a third party removal service. Funeral directors were paid by the hour for each removal. No hourly employee was paid a "piece-rate" for removals. *Id.* ¶¶ 7, 8. |
| Curnow, Brian (General Manager) | At Mills & Mills, part-time staff performed most after-hours removals, and funeral directors were on-call one night a week should the part-time staff require assistance. Curnow Decl. ¶ 6. <br><br> Employees at Mills & Mills were paid the greater of a piece-rate or their hourly rate for three hours, even though most removals took only two hours. The piece-rate was usually more than the employee would make hourly, even on overtime. *Id.* ¶ 7. |
| D'Andrea, Daniel (Location Manager) | The hourly employees he supervised sometimes performed after-hours removals. The hourly employees who assisted with removals were paid for their work by the hour. D'Andrea Decl. ¶ 6. <br><br> Hourly employees were not paid a "piece" rate for removals. From time to time, when needed, he would employ a third-party removal service to perform after hour removals. Only the removal service was paid a "piece" rate for removals. *Id.* ¶ 7. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7. Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7. Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Dias, Joe (Location Manager) | At Whitehurst, Norton, Dias Funeral Home, removals were performed by Dias and one or two part-time hourly employees. Dias never had full-time hourly employees assist him with removals. 9/9/10 Dias Decl. ¶ 6.<br><br>As a Location Manager, Dias paid a $20 piece-rate for after-hours removals. This piece-rate was in addition to the employees' hourly wage. Part-time employees assisting Dias on after-hours removals were required to record their time for a removal by punching their time card on the time clock. After-hours removals typically took 2-3 hours. The hourly employees would be paid for overtime if they exceeded 40 hours of work in a given week, which was very rare. *Id.* ¶ 7-10.<br><br>This was a policy that he implemented at his location. It was not a formal Alderwoods policy. *Id.* ¶ 11. |
| Eagan, Charles (Location Manager) | Funeral directors could be on-call to take business calls after-hours. Eagan usually tried to take these calls himself. If a funeral director took an after-hours telephone call, the director was paid at his or her hourly rate for the length of the call. This would include overtime if the director had accrued sufficient time. *Id.* ¶ 6[a]. |
| Greeno, Donald (General Manager) | After-hours removals were performed by part-time employees who did not earn overtime. Greeno Decl. ¶ 9. They were paid a piece-rate per removal that was equal to or more than the employees' hourly rate. *Id.*<br><br>Funeral directors could be on-call to receive business calls. They were paid at their hourly rate, or overtime rate if applicable, for the time they were on the phone. *Id.* ¶ 10. |
| Harper, William Ray (General Manager) | There was a funeral director who worked exclusively the 5-9 shift and was on-call most evenings. When the night funeral director was not on-call, other funeral directors rotated on-call duties. If the funeral director took a call after hours, he or she wrote their time down and was paid for the time of the call based on their hourly rate. Harper Decl. ¶ 7. |
| Jones, Jay (Location Manager) | When working an after-hours removal, he was paid for a minimum of two hours at his hourly rate for each removal. The funeral home paid his overtime rate if he had accrued sufficient hours. Generally, a removal took at most an hour and a half. If the removal took longer than two hours, he recorded his actual time and was paid his hourly rate. All staff who performed after-hours removals were paid in this manner. J. Jones Decl. ¶ 7. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7. Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7. Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

## "ON-CALL" PIECE-RATE

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Krueger, Richard (Location Manager) | Employees who performed after-hours removals were paid their hourly rate, including overtime if they accrued sufficient hours in the week, plus an additional flat rate.  The amount of the additional flat rate depended on whether the removal required prep work.  Krueger Decl. ¶ 5. <br><br> If an employee was on-call and received a removal call, they were paid from the time the call was received until it was completed.  *Id.* ¶ 6. <br><br> If a funeral director received an after-hours business call, the funeral director was automatically paid 15 minutes for the call, and paid 15-minute increments thereafter depending on the length of the call.  *Id.* |
| Lawrence, Gloria (Location Manager) | Her location utilized piece-rate payments for after-hours removals for a few weeks in 2002 or 2003.  This practice was then discontinued and not used for any purpose since this time.  9/8/2010 Lawrence Decl. ¶¶ 5-6. <br><br> At the time piece-rate was paid, only part-time employees received it.  *Id.* ¶ 7. <br><br> The current practice at her funeral home is to use a removal service for after-hours removals.  *Id.* ¶ 8. |
| Mayes, Buddy (Vice President Southeastern United States) | Alderwoods' policy always required employees to report any work performed while on-call, including phone calls, and be compensated for it.  Mayes Decl. ¶ 18.[viii] <br><br> Many locations had third-party answering services and third-party removal services to handle after-hours phone calls and removals.  Even when Alderwoods' employees were required to handle calls and removals, they often were handled by part-time employees.  To the extent full-time employees handled calls and removals, it was almost always Funeral Directors, not other employees.  *Id.* ¶ 19. <br><br> In 2006, Alderwoods rolled out a standardized method of logging on-call time.  On-call time was always to be recorded, but this created a uniform method.  *Id.* ¶ 21. |

---

**Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked." Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

## "ON-CALL" PIECE-RATE

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
| --- | --- |
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Obenauf, Jason (Location Manager) | The location paid a piece-rate of $100 to on-call employees who performed after-hours removals, but for removals that took longer than usual, such as long distance removals, employees were paid at their hourly wage instead of the piece-rate.  Obenauf Decl. ¶¶ 5, 11.<br><br>No Alderwoods policy required or permitted locations to pay for removals at a piece-rate.  *Id.* ¶ 6.<br><br>Only part-time employees making $9 to $10 per hour volunteered to perform after hours removals, which typically took no longer than an hour.  These employees liked the piece-rate system and were always paid a great deal more under the piece-rate system than they would have been paid at their regular hourly rate or their overtime rate.  *Id.* ¶¶ 7-10.<br><br>If an employee would have complained that a removal took longer than usual, he would have compensated the employee at his or her hourly rate instead of at the piece-rate.  *Id.* ¶ 12. |
| Phillips, Shawn (Vice President Western United States) | For as long as Phillips was VPO, Alderwoods' policy always required employees to record all work performed while on-call, including phone calls, and be compensated for it.  Phillips Decl. ¶ 16.[ix]<br><br>Most locations had third-party answering services and third-party removal services to handle both after-hours phone calls and removals.  Even when Alderwoods' employees were required to handle calls and removals, they often were handled by part-time employees.  To the extent full-time employees handled calls and removals, it was employees responsible for funeral services, not other employees.  *Id.* ¶ 18.<br><br>In 2006, Alderwoods rolled out call logs to track on-call work instead of employees writing it on their time cards as had been past practice.  This was not a new policy, but a confirmation of existing policy, and the creation of a uniform way to track on-call time.  *Id.* ¶ 19. |

---

** Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005." *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals." *Id.* at p. 8.

## "ON-CALL" PIECE-RATE

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS** TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Rosa, Melissa (Location Manager) | The location paid a piece-rate of $75 to full-time Funeral Directors and Assistant Funeral Directors who performed after-hours removals, except for certain removals, such as long distance removals, these employees were paid at their hourly rate instead of at the piece-rate.  Part-time Funeral Directors and Assistant Funeral Directors also performed after-hours removals but were compensated differently, receiving two to four hours of guaranteed pay per removal instead of piece-rate pay.  Rosa Decl. ¶¶ 8-9.<br><br>No Alderwoods policy required or permitted locations to pay for removals at a piece-rate.  *Id.* ¶ 10.<br><br>Removals typically took no longer than two hours, and the time spent on a removal varied depending on many factors such as where the employee lived and whether the family was ready for an immediate removal.  *Id.* ¶ 15.<br><br>No employees performing after-hours removals made more than $25 per hour, and under the piece-rate system, employees received greater than or equal to the amount they would have been paid at their regularly hourly rate or their overtime rate.  *Id.* ¶¶ 16-17.<br><br>Full-time employees also took after hours calls and received a minimum of fifteen minutes of pay per call.  *Id.* ¶ 18.<br><br>Full-time employees received overtime pay anytime they worked more than eight hours in a day, even if they did not work more than forty hours in the week.  *Id.* ¶ 19. |
| Schwab, Roxann (General Manager) | Employees who took calls after-hours were paid 15 minutes per phone call.  If the call lasted longer, they were paid in additional 15-minute increments.  Schwab Decl. ¶ 10.<br><br>In her region, employees who performed after-hours removals were paid an hourly rate for 3 hours minimum per call.  The removals were handled by part-time employees.  *Id.* ¶ 11. |

---

** Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

"ON-CALL" PIECE-RATE

| MANAGER DECLARATIONS WHICH DIRECTLY CONTRADICT PLAINTIFFS' REPRESENTATIONS**<br>TO THE COURT REGARDING ON-CALL WORK | |
|---|---|
| **Manager Declarant** | **Testimony Under Penalty of Perjury Regarding Allegedly Common Experiences Involving On-Call Work** |
| Schwinghamer, Steven<br>(Location Manager) | Only funeral directors were on-call to take business calls after-hours.  The calls were first screened by an answering service.  If a funeral director took a call, he or she was paid fifteen minutes per call.  Most calls were less than fifteen minutes.  Schwinhamer Decl. ¶ 10. |
| Sears, William<br>(Location Manager) | When he first began working for Hanes Lineberry Funeral Home, Funeral Directors who performed after-hours removals were paid at least 3 hours for a removal.  Employees were instructed to record their time spent performing after-hours removals.  If the removal took longer than 3 hours, employees were paid for however long it took.  If the removal took less than 3 hours, employees were still paid 3 hours.  Sears Decl. ¶ 4.<br><br>If an employee had already reached 40 hours for the week, he/she was paid his/her time and a half rate for the 3 hours.  *Id.* ¶ 4.<br><br>Most removals took no longer than 2 hours depending on the location of the removal.  He can never recall being on a removal longer than 3 hours.  As a result, in many cases, the 3 hour policy overcompensated employees.  *Id.*¶ 5.<br><br>When SCI took over Hanes Lineberry, after-hours removals were paid strictly by the hour.  This is the current policy at Hanes Lineberry.  *Id.* ¶ 8.<br><br>He does not know how other locations paid employees for after-hours removals.  *Id.* ¶ 9. |

[i] By identifying employees has having "non-exempt" job positions, Alderwoods does not waive and expressly reserves the right to argue that these positions qualify as exempt job positions.

[ii] *See* 9/10/10 Knight Decl. Ex. G for a compilation of all deposition transcript excerpts cited herein.

[iii] For purposes of this analysis, Millard Daigle is listed among the management deponents although he also held non-exempt, hourly positions at Alderwoods.  The same holds true for Deborah Prise.

[**] Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.

---

[iv] For purposes of this analysis, Barry Miles is listed among the management deponents although he was paid on an hourly basis as a manager.  The same holds true for Sandy Thomas, Stacey Weinstein and Raymond White.

[v] *See* 9/10/10 Knight Decl. Ex. H for a compilation of declarations cited herein.

[vi] For purposes of this analysis, Donald Cardell is listed among the management declarants although he was paid on an hourly basis as a Funeral Director.

[vii] Attached to 9/10/10 Knight Decl. as Exhibit I.

[viii] Attached to 9/10/10 Knight Decl. as Exhibit K.

[ix] Attached to 9/10/10 Knight Decl. as Exhibit L.

---

[**] Plaintiffs represented to the Court that Alderwoods had a "systemic piecework payment practice" "whereby employees received a lump sum or standard amount of pay regardless of the number of hours worked."  Mem. of Law in Support of Pltfs' Ren. Mot. for Class Certif. Pursuant to Fed. R. Civ. P. 23, at pp. 6-7.  Plaintiffs also represented that "piecework payments for on-call work existed at various locations company-wide and that this illegal piecework practice continued until at least 2005."  *Id.* at p. 7.  Further, Plaintiffs represented that deposition testimony of "the named plaintiffs who performed piecework confirms that they did not record the hours worked associated with the piecework payments they received for performing removals."  *Id.* at p. 8.