**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"** [i]

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Dennis Baker[ii] (General Manager/AZ) | Employees were encouraged to perform community work in order to generate business for Alderwoods (128:13-19; 132:20-135:6; Baker Aff. ¶¶ 12-17)<br><br>Employees did not record their time spent performing community work and were not paid for that time (140:4-144:17; Baker Aff. ¶ 13) | Admitted plaintiffs' lawyers wanted him to sign an affirmation saying that Alderwoods ordered community work but the most he would say was that it was "encouraged." Baker Dep. Tr. at 126:15-128:2.[iii]<br><br>Employees were not required to volunteer for community events or join community organizations. *Id*. at 128:7-22.<br><br>Never discussed community work or activities in evaluations with employees, and employees who were not involved in the community were not disciplined in any way. He did not do anything to monitor community activities of the employees he supervised. *Id*. at 137:1-4; 138:5-15.<br><br>Cannot recall any specific employee whom he supervised who joined a community group or engaged in community activities because they were encouraged to do so by Alderwoods. *Id*. at 139:5-140:3. |

---

[i] Plaintiffs attached as Exhibit 5 to their Renewed Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23 ("Pltfs' Ren. Mot.") a chart entitled "Summary of Testimony Showing Community Work Policy" ("Summary"). Plaintiffs claimed that this testimony "overwhelmingly confirmed" that employees were required to perform community work. (Pltfs' Ren. Mot. at p. 3.) This Chart sets forth testimony, from the very same employees cited by Plaintiffs, which directly contradicts the propositions for which they have been cited.

[ii] Plaintiffs represented in their Renewed Motion on page 6 that their compilation of testimony from merely 20 witnesses (only 5 of whom are named plaintiffs), represented testimony from "[e]mployees in the *relevant job titles*," which they define as: Apprentice Funeral Director/Embalmers, Arrangers, Assistant Funeral Directors, Community Relations Directors, Funeral Directors/Embalmers, Funeral Directors, and Location Managers. (Pltfs' Ren. Mot., at pp. 1, 6.) In fact, of the 20 individuals cited, five (5) held none of the seven (7) positions identified by Plaintiffs and, therefore, their testimony cannot possibly be from "[e]mployees in the relevant job titles." Moreover, Plaintiffs have offered testimony from (a) no Community Relations Directors;  (b) one (1) Apprentice

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Herbert Bath (Area Manager/KS) | Employees were required to perform community work (159:5-9; Bath Aff. ¶¶ 12-18)<br><br>Employees were not paid for the time spent performing community activities outside regular work hours - only their dues were paid (193:24-194:11; Bath Aff. ¶ 13) | An employee's choice to participate or not participate in community activities had no positive or negative impact on employment. Bath Dep. Tr. at 303:25-304:15.<br><br>Hourly employees who assisted with community events were compensated on some occasions. *Id.* at 193:1-195:14.<br><br>Identified a single incident where an employee was not paid to go to a golf outing. *Id.* at 170:6-171:7.<br><br>Did not evaluate hourly employees on their community involvement. *Id.* at 181:11-182:13. |
| Jason Burgess (Funeral Director/Embalmer/NC) | Community work was encouraged (169:2-23)<br><br>Community work was addressed during performance reviews (165:25-166:24) | Was not told that it was a requirement of his job to join a community organization, but simply that "it would look good" if he did so. Burgess Dep. Tr. at 169:18-23.<br><br>Was not required to fill out forms or otherwise report to Alderwoods management regarding community involvement. *Id.* at 165:21-24; 166:25-167:2.<br><br>Not aware of any employee being disciplined for lack of community involvement. *Id.* at 167:3-6. |

---

Funeral Director/Embalmer; (c) one (1) Assistant Funeral Director; and (d) only three (3) Funeral Arrangers, Stephen Escobar, Michael Butler, and Matthew Twiss (all from the West Geography).

[iii] *See* 9/10/10 Knight Declaration Ex. G for a compilation of all deposition testimony cited herein.

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Jason Burgess (cont'd) | Community work was encouraged (169:2-23)<br><br>Community work was addressed during performance reviews (165:25-166:24) | Typically did not approach anyone to talk business at the community festivals, events, meetings or church he attended. *Id.* at 187:24-189:16.<br><br>Was never offered an incentive for becoming involved in a community organization and has never heard of "I Believe in Service" program. *Id.* at 209:25-210:6. |
| Michael Butler (Arranger/CA) | Community work was a condition of continued employment but he did not record time spent performing community work (76:11-80:4) | Funeral directors were required to be involved in the community. Butler Dep. Tr. at 77:25-78:10.<br><br>Community Service was a new requirement during the final year of his employment. *Id.* at 76:11-17.<br><br>Employees could select any community-related activity of the employees' choosing – the activity need not have anything to do with the location or the funeral industry. *Id.* at 79:7-11. |
| Shane Carswell (Funeral Director/FL, GA) | Community work was required and he was never instructed to record his community work and never told he would be paid for that time (135:7-137:5; 141:4-142:20)<br><br>If community work was done outside regular work hours, employees would not be paid for that time (223:13-20) | Instructed employees he supervised to record time spent engaged in community service and such employees were compensated for this time. Carswell Dep. Tr. at 127:21-129:15.<br><br>Was never instructed not to report time spent in community service; was never told such time would not be paid. *Id.* at 220:17-24. |

3

## PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
## "SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Shane Carswell (cont'd) | Community work was required and he was never instructed to record his community work and never told he would be paid for that time (135:7-137:5; 141:4-142:20)<br><br>If community work was done outside regular work hours, employees would not be paid for that time (223:13-20) | Participated in Gay Pride Parade because he had a personal interest in doing so and Alderwoods management did not ask him to participate; does not know why he did not report the time he spent in this activity and does not know whether he would have been paid had he reported the time. *Id*. at 121:12-125:12.<br><br>Does not believe that there was a policy in place that instructed employees not to record time spent performing community service work. *Id*. at 222:19-24.<br><br>Did not include all of his overtime activity including community service time because "[i]t's not something that you are supposed to be quote, unquote, compensated for. You are supposed to do it for the good of the company." *Id*. at 115:13-21.<br><br>Indicated that the community service done by two of his employees were always identified on the clock. "Typically, they never did anything off the clock. So they always did it when they were working." *Id*. at 128:18-129:1.<br><br>Believed that there was a company-wide policy that people were suppose to do their community service during the hours that they were working. *Id*. at 223:6-15. |

4

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR**
**"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Shane Carswell (cont'd) | Community work was required and he was never instructed to record his community work and never told he would be paid for that time (135:7-137:5; 141:4-142:20) | Testified that he did not evaluate any of his employees in their participation in community service activities. *Id.* at 129:25-130:3. |
| | If community work was done outside regular work hours, employees would not be paid for that time (223:13-20) | Indicated that some of the community service activities, including taking out one member or one person from a church, is not community service. When asked why he did not report that time, he indicated "That's a good question. Honestly, I can't tell you why I didn't report it." *Id.* at 118:14-119:4. |
| Steven Detschner (Funeral Director/Embalmer/MA) | Community work was encouraged but he did not record and was not paid for his community work (196:1-197:11) | Was never instructed not to report time spent in community service. Detschner Dep. Tr. at 196:16-23; 197:19-198:3.<br><br>Does not know whether other employees reported community service time. *Id.* at 198:4-18.<br><br>Does not seek to be paid for every minute he spent at Moose Club and Elks Club because some of the time was purely social. *Id.* at 182:8-184:23. |

5

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Stephen Escobar (Arranger/CA) | Community work was encouraged (45:16-46:16)<br><br>Did not record and was not paid for time spent engaged in community work (134:8-10; 135:4-6) | Not aware of any company policy for not compensating employees for community service work. Escobar Dep. Tr. at 135:23-136:2.<br><br>Involved in his church, The Church of Jesus Christ of Latter-Day Saints, of which he has been a member his entire life, at the Fine Road Chapel in Modesto, which he has attended since 1995. Alderwoods did not instruct him to join this organization, he chose it because he was already a member, and he did not join any other organization. *Id.* at 130:20-131:11; 132:20-25; 134:4-7.<br><br>Was not evaluated on community service. *Id.* at 132:17-19. |
| Ric Hensley (Manager/TN) | Community work was required (46:24-47:12; Hensley Aff. ¶ 12)<br><br>Employees did not record and were not paid for the time they spent performing community work (58:3-8; Hensley Aff. ¶ 13) | Not all employees got involved in community service and those who did participate were primarily managers. Hensley Dep. Tr. at 50:2-22.<br><br>Employees could elect not to get involved in community service, and there were no consequences. *Id.* at 54:20-55:8.<br><br>The weekly community service log was blank most weeks. *Id.* at 53:2-54:18. |

6

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Richard Kamienski (General Manager/CA) | Community work was required (136:7-137:3; Kamienski Aff. ¶ 12)<br><br>Employees did not record and were not paid for the time they spent performing community work (147:2-8; 221:17-25; Kamienski Aff. ¶ 13) | 90% of employees did not participate or perform any community service; such employees were not reprimanded or disciplined. Kamienski Dep. Tr. at 143:12-144:24.<br><br>One employee explicitly refused to perform any community service and suffered no consequences; refusal had no bearing on evaluation of employee. *Id.* at 149:9-23.<br><br>Does not recall employees being evaluated on community service. *Id.* at 147:9-25. |
| Michael Lanza (Apprentice Funeral Director/Embalmer/WA) | Community work was encouraged (40:18-23)<br><br>Was not compensated for time spent engaged in community work (193:6-195:25) | None of his Alderwoods managers from 2002 through his termination in 2004 ever discussed community service with him. Lanza Dep. Tr. at 77:10-80:3; 80:16-18; 84:3-5; 91:15-17; 92:13-15.<br><br>Participated in the Christopher Columbus Club, a social club for Italian men, and went out to dinner with priests and ministers and occasionally entertained them in his home; personally selected and enjoyed these activities and had engaged in them before he began his employment with Alderwoods. Alderwoods paid his expenses for dinners for the dinners with priests, but did not pay his dues for the Christopher Columbus Club. *Id.* at 80:19-81:4; 191:13-195:17; 198:1-199:23.<br><br>Was never evaluated on participation in community work. *Id.* at 203:9-12.<br><br>Not aware of a written policy regarding community service or compensation regarding same. *Id*. at 204:8-17. |

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Kasi Long (Funeral Director/NY) | Community work was required (148:9-22)<br><br>If she was paid for any time, it was only community work that was done during her regular work hours (173:17-176:14) | Seeks to be compensated for being member of Girl Scouts and attending scout meetings, trips and overnight camps with her daughter, which she personally enjoyed; was involved in Girl Scouts independent of Alderwoods and remained a member after her employment terminated. Long Dep. Tr. at 159:6-161:11.<br><br>May have reported and been paid for time spent at Lions Club meetings and holiday dinners. *Id.* at 173:17-174:17. |
| Beverly McDonald (Funeral Director/TX) | Community work was required (138:8-139:10)<br><br>Did not record and was not paid for time spent engaged in community work (173:15-138:7; 141:23-142:1; 144:14-145:25) | Was not evaluated on community service. McDonald Dep. Tr. at 143:2-5. |
| John Peters (Funeral Director/PA) | Only paid for community work performed during regular work hours (140:12-145:6) | Was never told he had to join at least one organization; never heard of anyone else being required to join at least one organization. Peters Dep. Tr. (Day 1) at 154:20-155:2.<br><br>Not required to report on community involvement. *Id.* at 158:24-159:6.<br><br>Was "a firm believer" in "joining local organizations in [his] community" and "didn't join all these organizations for business," but did so because he believed in what they do and what they stand for. *Id.* at 153:24-156:14.<br><br>Reported and was paid for time on community bus trips to a veterans cemetery. *Id.* at 140:12-15; 144:10-146:11. |

8

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| John Peters (cont'd) | Only paid for community work performed during regular work hours (140:12-145:6) | Reported and may have been paid for time spent speaking at a high school career day. *Id.* at 140:24-141:6; 146:12-147:21. |
| Robert Pramik (Market Growth Manager/PA)[iv] | Funeral Directors were required to perform community work (85:6-19; Pramik Aff. ¶¶ 8-17) | The community work policy applied only to funeral directors. Non-funeral director hourly employees were only encouraged, not required, to belong to at least one outside community organization. Pramik Dep. Tr. at 85:6-19; 115:17-20.<br><br>The amount of community service performed by each funeral director reporting to Pramik varied. *Id.* at 105:14-18.<br><br>Cannot recall warning any employees that they could be terminated if they did not follow the community work policy. *Id.* at 119:8-12. Never disciplined an employee for skipping a meeting of a community organization to which they belonged. The employees were never disciplined for not being active enough in the organization. *Id.* at 112:21-23; 113:20-25.<br><br>Not aware of what employees were told in other markets regarding the community work policy. *Id.* at 119:21-120:3. Not aware of what actions, if any, were taken against employees in other markets who did not participate in community activities. *Id.* at 120:12-17. Not aware of whether employees outside his market were paid for time spent performing community work. *Id.* at 139:1-5.[v] |

---

[iv] While Plaintiffs offer Robert Pramik's testimony to support their representations regarding community service, Pramik did not work in one of the seven positions involved in this litigation during the relevant time period. *See* Pramik Dep. Tr. at 15:13-17:15.

[v] Plaintiffs appear to offer Pramik as representative of other employees' experiences. Pramik testified, however, that he has no knowledge of community work policies outside the area in which he worked. *See* Pramik Dep. at 119:21-120:17; 139:1-5.

9

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Jack Reddick (Assistant Funeral Director/KS) | Aware of company-wide policy requiring community work involvement (229:17-230:6) | Does not know if employees were reprimanded for lack of participation in the community. Reddick Dep. Tr. at 179:2-23.<br><br>Was member of several clubs and participated in various community activities since 1972, long before he was employed by Alderwoods; merely continued these activities as an employee of Alderwoods and has continued his involvement since his employment with Alderwoods terminated in 2006. *Id.* at 166:11-171:4; 180:10-181:25.<br><br>Claims he generated business for Alderwoods by (and seeks to be compensated for) frequenting a certain restaurant to drink coffee and socialize with other patrons, discussing hunting, fishing and camping. *Id.* at 232:24-235:5.<br><br>Does not know if any other employee at his location completed community service forms; only one certain manager gave him forms to fill out and he never saw the forms again after this manager was terminated from Alderwoods. *Id.* at 176:22-177:21. |
| John Schabloski (Funeral Director/Embalmer/MI) | Community work was required (121:12-122:5)<br><br>Did not record and was not paid for time spent performing community work (130:8-131:2; 132:1-20) | Employees were not required to provide a report regarding their community involvement. Schabloski Dep. Tr. at 130:8-131:2.<br><br>Was not expected to be involved in community service for entire period of employment with Alderwoods. *Id.* at 120:8-121:11. |

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Sandy Thomas (Location Manager/NV) | Only paid for community work that occurred during regular work hours (88:4-17)<br><br>Was not paid for any other community work (135:11-136:2) | No knowledge of Community Leadership Program, Influencer Program; never created or directed anyone else to create a Leadership Network Information Sheet or Contact Report; never identified or directed anyone else to identify influencers; never participated in or directed anyone else to participate in community seminar programs. Thomas Dep. Tr. at 85:24-87:16.<br><br>He and other hourly employees were paid for the community events hosted by the funeral home. *Id.* at 87:17-88:17; 118:9-119:6.<br><br>Was not personally evaluated and did not evaluate other employees on their community service "because usually we didn't do any work." *Id.* at 119:20-120:3. |
| Matthew Twiss (Arranger/NV) | Encouraged to perform community work (146-147)<br><br>Most of his community work was unpaid (146:11-148:8) | Was compensated for attending a community trade fair. Twiss Dep. Tr. at 148:12-150:21.<br><br>Seeks compensation for time spent before and after attending Mass and, sometimes, meetings at St. Viator's Catholic Church in order to "be seen." *Id.* at 132:22-135:7.<br>Was encouraged to join Rotary and Kiwanis, but he did not. *Id.* at 133:10-13.<br><br>Alderwoods "policy" regarding community involvement did not address compensation. *Id.* at 146:11-147:9. |

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Stacey Weinstein (Funeral Director/Manager/FL) | Community work was required. (98:23-25)<br><br>Community work time was not recorded (96:8-25) | Knows of no other job positions besides funeral directors and pre-need people who were encouraged to do community service. Weinstein Dep. Tr. (Day 1) at 97:11-24.<br><br>No knowledge as to whether pre-need employees were compensated for time spent in community service. *Id.* at 95:4-96:1.<br><br>No written Alderwoods policy regarding community service or whether employees will be paid for community service. *Id.* at 99:10-16.<br><br>No recollection of being evaluated or evaluating other employees on community service. *Id.* at 99:17-100:7.<br><br>No knowledge of Community Leadership Program, Influencer Program; never created or directed anyone else to create a Leadership Network Information Sheet or Contact Report; never identified or directed anyone else to identify influencers; never participated in community seminar programs. *Id.* at 102:4-103:24. |

**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
"SUMMARY OF TESTIMONY SHOWING COMMUNITY WORK POLICY"**

| Employee | Plaintiffs' Representation | Testimony That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| Raymond White (Location Manager/IN) | Employees were told they had to join community organizations (120:7-22) | Alderwoods did not do anything to make sure that employees were joining community organizations. They just encouraged it. White Dep. Tr. at 120:12-15.<br><br>Did not actually join any organizations for the purposes of networking while at Chapel Lawn, nor did his funeral director. *Id.* at 124:20-125:7.<br><br>Was not required to keep a list of community organizations he contacted. *Id.* at 125:19-126:4. Was not aware that his supervisor submitted any forms regarding community service. *Id.* at 126:5-13.<br><br>Was not aware of any company-wide policy that required employees to be part of a community organization. *Id.* at 142:7-11. Could not recall anyone telling him not to report time spent networking at fire and police stations. *Id.* at 134:8-22. Was never told that the company policy was not to record time spent in the community pitching services. *Id.* at 135:18-136:2. |

13