**PLAINTIFFS' INACCURATE REPRESENTATIONS IN THEIR
MEMORANDUM REGARDING COMMUNITY SERVICE**[i]

| Pl.'s Ren. Mot. Page(s) | Inaccurate Representation | Record Evidence That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| 2-6 | Alderwoods had a policy that hourly employees were required to perform community service after hours without pay.[ii] | Alderwoods required employees to be paid for all community service performed on behalf of the company. *See, e.g.,* Ron Collins Dep. Tr. at 46:19-47:4, 91:18-92:6, 225:21-226:2; Herbert Mayes Dep. Tr. at 73:12-17, 74:5-13; Shawn Phillips Dep. Tr. at 50:22-52:5, 61:12-24; Monica Berryhill Dep. Tr. at 110:21-113:13, 148:18-149:2.[1]<br><br>"All non-exempt employees are required to record all hours worked each day." Hours of Work and Overtime, III.E Recording of Hours – ALD000005; *see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648.[2]<br><br>"Employees must review their time card/sheet, correct any errors, and sign it before submitting it to their manager for approval." |

---

[i] Plaintiffs made a number of inaccurate representations to the Court regarding community service in their Memorandum of Law in Support of Plaintiffs' Renewed Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23 ("Pltf's Ren. Mot."). This Chart presents record evidence in the form of sworn testimony, Alderwoods policies and procedures, and production documents that directly contradicts Plaintiffs' representations.

[ii] Plaintiffs made this exact same inaccurate representation in their original request for class certification. For additional discussion of the inaccuracy of Plaintiffs' representation, see Defendants' Opposition to Plaintiffs' Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23 ("First Opp."), at pp. 10-19, 41-42; 11/13/09 Knight Decl. Ex. A.

| Pl.'s Ren. Mot. Page(s) | Inaccurate Representation | Record Evidence That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| 2-6 (cont.) | (cont. from previous page) | "Employees must check and sign their time card or timesheet at the end of each week to assure that their time cards are correct. Any discrepancies must be reported to the Location Manager/General Manager as soon as practical."  *Id.;* Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 10. – ALD000010.<br><br>"Managers are also responsible for . . . ensuring that no 'off the clock' work is allowed; that is, that all work performed by employees is properly documented on time cards/time sheets."  Hours of Work and Overtime, IV.B.6 Manager Responsibilities – ALD000007.<br><br>"Location Managers/General Managers must verify and sign their respective employees' time cards/timesheet."  Procedures for Timekeeping (Recording Hours Worked), Procedure—Time Cards/Timesheets, 12. – ALD000011; *see also* Funeral Home Procedures, G.12.6 Recording Time Worked – ALD000001; Cemetery Procedures, E.10.6 Recording Time Worked – ALD013648.<br><br>"All non-exempt employees will be compensated for all hours worked."  Hours of Work and Overtime, Policy – ALD000004.<br><br>"Non-exempt employees are to be compensated for all overtime hours worked."  Procedures for Timekeeping (Recording Hours Worked), Purpose – ALD000009.<br><br>"Non-exempt employees will receive overtime pay of one and one-half (1.5) times their regular rate of pay for all hours worked over forty (40) in any work week . . . ."  Procedures for Timekeeping (Recording Hours Worked), Purpose – ALD000009. |

| Pl.'s Ren. Mot. Page(s) | Inaccurate Representation | Record Evidence That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| 2-6 (cont.) | (cont. from previous page) | "Employees are required to record all hours worked …" Frequently Asked Questions – Hours of Work & Overtime Policy, ALD 025440. |
| 2 | Ron Collins, Alderwoods' former Vice President of Operations in the North East, testified that it "was company policy to encourage employees to be involved in community organizations and that this policy applied not merely to these employees, but to all employees." | While Alderwoods encouraged its employees to be involved in community service, not all employees participated in community events. Ron Collins Dep. Tr. at 300:4-6. |
| 3 | Ron Collins testified that the Community Leadership Program was mandatory at all locations and Location Managers "were responsible for making sure the employees they supervised were fulfilling their responsibility to generate business for the company by being actively involved with community organizations." | Some location managers were less committed to encouraging employee community work than others. *Id.*, at 116:7-22.<br><br>In practice, some funeral homes opted out of the community leadership program with few to no employees performing community service. *Id.*, at 203:4-19. |

| Pl.'s Ren. Mot. Page(s) | Inaccurate Representation | Record Evidence That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| 3 | The Community Leadership Program "was mandatory at all locations;" "[l]ocations were expected to track and report their community involvement to upper management through the use of various types of reports, including Community Event Tracking Reports, Community Influencer Reports, Leadership Network Information Sheets and Community Seminar Information Sheets."[iii] | Many manager witnesses testified that they had never heard of the community programs, reports, and promotions Plaintiff identifies. Baker Dep. Tr. at 99:8-100:17; 114:1-117:16; Peter Johnson Dep. Tr. at 51:14-25-53:14, 56:17-57:1; Robert Stiffler Dep. Tr. at 84: 17-87:7; Thomas Dep. Tr. at 85:24-87:16; Maurice Trull Dep. Tr. at 81:7-15; Sandra Walker Dep. Tr. at 80:7-16; Weinstein I Dep. Tr. at 102:4-103:24; 113:1-114:9. |
| 4 | "[A]ll locations were required to have a minimum level of community involvement[iv]. . . Period financial reviews for the majority of Alderwoods' geographic regions show that community involvement was a critical element to a location's financial success and was, in fact, required." | Many entries in the Period Financial Reviews attached by Plaintiffs reference lack of community involvement as a driver of poor location performance. *See* Cressman Decl. Ex. 18, at ALD022050, ALD022053, ALD022056, ALD022063, ALD022067, ALD022068, ALD022070, ALD022095, ALD021864.<br><br>Period Financial Review questions attached by Plaintiffs reveal a wide divergence in levels of community involvement between locations. For example: |

---

[iii] Plaintiffs made this exact same inaccurate representation in their original request for class certification. For additional discussion of the inaccuracy of Plaintiffs' inaccurate representation, *see* First Opp., at pp. 10-19, 41-42; 11/13/09 Knight Decl. Ex. A.

[iv] Plaintiffs made this exact same inaccurate representation in their original request for class certification. For additional discussion of the inaccuracy of Plaintiffs' inaccurate representation, *see* First Opp., at pp. 10-19, 41-42; 11/13/09 Knight Decl. Ex. A.

| Pl.'s Ren. Mot. Page(s) | Inaccurate Representation | Record Evidence That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| 4 (cont.) | "[A]ll locations were required to have a minimum level of community involvement... Period financial reviews for the majority of Alderwoods' geographic regions show that community involvement was a critical element to a location's financial success and was, in fact, required." | • Compare the financial review summary of NC12 Minnesota, "This volume shortfall is related to lack of community involvement and attitude. We have been struggling with getting employees involved in the community. The attitude is horrible and this is beginning to affect the families that we presently serve," with the financial review summary for NC06 Bloomington, "90% of all of the employees in the Bloomington Market have joined or are volunteering in the community at the Y.M.C.A./Y.W.C.A., area hospitals, schools etc." Cressman Decl. Ex. 19, at ALD016832.<br><br>• Compare the financial review summary for NCM2, "We have been working at getting our employee's involved in there [sic] respective communities. In most of our markets, it has been working well but we will not see immediate results," with the financial review summary for NCM4, "Community leadership has taken a new twist this year as we have identified three influencers per GM in niche markets where we traditionally do not serve families. We are hoping that through quality relationship building, a long-term impact will be realized as these influencers feed our business funeral calls (and internments) from their connections." Cressman Decl. Ex. 19, at ALD016838. |

| Pl.'s Ren. Mot. Page(s) | Inaccurate Representation | Record Evidence That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| 4 | "Alderwoods' policy and practice on compensation for community work performed outside regular work hours was stated in writing in an email from an Alderwoods Market General Manager ("MGM").  The MGM provided the following guidance in response to a question from an employee to an Alderwoods corporate HR specialist regarding community work:<br><br>If the event is during the normal work day … then it is mandatory and the employee would be paid his or her normal rate.<br><br>If the event takes place after hours, it is strongly encouraged and may be recognized in a non monetary way …<br><br>We encourage all the employees at the location to be involved in the community in some way and like to recognize them accordingly.  We take the growing of market share very seriously and require that everyone has a part in it." | The full email chain, (ALD030508-030513), is provided below:<br><br>10/18/2004, 8:58 A.M.:<br><br>Our Manager told us that the community programs sponsored by our funeral home were mandatory.  Is this correct?  Thank you.<br><br>3544 Shuford Hatcher FH<br><br>10/18/2004, 9:24 A.M.:<br><br>If it's paid working event, then yes, your manager can require you to attend/work.  My understanding of the civic event your location is planning is that it will happen on a Friday during business hours.  Any employee who is required to show up, will be paid for hours worked.<br><br>Besides, showing support and pride for where you work can help with introductions and showcasing your facility in the community.  We all have a role to play with the marketing of our facilities.  You may know some people that others at your location do not.  You can introduce them and highlight your location's involvement in the community.<br><br>Thanks for the question.<br><br>Leanne Sersus<br>Manager, Human Resources<br>Canada & Northeast USA Operations |

| Pl.'s Ren. Mot. Page(s) | Inaccurate Representation | Record Evidence That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| 4 (cont.) | (cont. from previous page) | Later that same day, a Market General Manager responded to the email request purportedly based on a discussion with Leanne Sersus:<br><br>10/18/2004: 4:38:43 P.M.:<br><br>Rick,<br><br>I just got off a call with Leanne regarding this issue.<br><br>If the event is during the normal work day and it does not take place at a venue that is objectionable for a valid reason (i.e., a person of the Hebrew faith taking part at an event in a Christian church) then it is mandatory and the employee would be paid his or her normal rate.<br><br>If the event takes place after hours, it is strongly encouraged and may be recognized in a non monetary way (i.e., Donation or sponsorship to the organization that the employee belongs to; I Believe in Service reward points; recognition [sic] in the Geographical newsletter, etc.)<br><br>We encourage all the employees at the location to be involved in the community in some way and like to recognize them accordingly. We take the growing of market share very seriously and require that everyone has a part in it. The location manager cannot do it alone. Some employees resent that, but without market share, all of us would be seeking gainful employment somewhere else. |

| Pl.'s Ren. Mot. Page(s) | Inaccurate Representation | Record Evidence That Directly Contradicts Plaintiffs' Representations |
|---|---|---|
| 4 (cont.) | (cont. from previous page) | If you have any other questions, or would like to discuss this further, please feel free to give me a call.<br><br>Gary F. Toye<br>Market General Manager |
| 5 | "Alderwoods' corporate witnesses testified they were unaware of any policy instructing employees to record time worked for community activities that occurred outside their regular work day, aside from a generic directive to record all hours worked." | Alderwoods' policies indicated that employees must "record all time worked on behalf of the company." This directive included community service work. Collins Dep. Tr., 225:21-226:2; Monica Berryhill Dep. Tr. at 148:18-149:2.<br><br>Employees were paid for community service activities on behalf of Alderwoods that occurred outside regular work hours. Collins Dep. Tr. at 46:19-47:4; 91:18-92:6; Herbert Mayes Dep. Tr. at 73:12-17, 74:5-13; Shawn Phillips Dep. Tr. at 50:22-52:5, 61:12-24; Berryhill Dep. Tr. at 110:21-111:13. |
| 5-6 | No Alderwoods budgeting material takes into account payment for community work occurring outside employees' paid hours. | Labor costs related to community service were budgeted for in "overall labour costs and the budgeting for the location." Collins Dep. Tr. at 234:18-235:1. |

---

[1] *See* 9/10/10 Knight Declaration Exhibit G for a compilation of all deposition testimony cited herein.

[2] All Policies and documentary evidence cited in this section are attached as Exhibits 1, 3, 4 and 5 to the Rhonda Suurd Declaration, who is Alderwoods' former Human Resources Manager. Rhonda Suurd's Declaration was attached to the Brent Knight Declaration to Alderwoods' Opp. to Pltfs' Mot. for Class Cert. ("First Opp.") [Dkt. No. 218] as Exhibit 5.