Exhibit H Part 3 of 7

**TAB 21**

1

2

3          UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5                                                CASE NO.    3:08-CV-01184 SI

6    WILLIAM HELM, et al.
     On behalf of themselves and all employees
7    similarly situated,                          DECLARATION OF JILL GIBSON

8              Plaintiffs,

9         vs.

10   ALDERWOODS GROUP, INC., et al.

11             Defendants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JILL GIBSON

I, Jill Gibson, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

1.     My name is Jill Gibson. I am a resident of Imperial Beach, California. I am over 21 years of age, suffer no legal disability, and am otherwise competent to make this Declaration.

2.     All the statements in this Declaration are true and accurate. I have personal knowledge of the facts set forth in this Declaration, and could testify to them competently if called to do so.

3.     I am currently a funeral arranger for Humphrey Mortuary in Chula Vista, California. Humphrey Mortuary was an Alderwoods location when I was first hired there. I was hired in February 2004 as a driver. Later that year, my position changed to handling death certificates. In 2005, I became a funeral arranger.

4.     I have always been an hourly, full-time employee at Humphrey Mortuary. When I was a driver, I worked during the day and helped transport the deceased, handle removals, and participate in funeral services. I worked about 50 to 55 hours a week.

5.     When I handled death certificates, I drafted death certificates and arranged for signatures by medical doctors. I worked about 40 hours a week in this position.

6.     As a funeral arranger, I met with families and made arrangements for funeral services. I worked about 40 hours a week in this position. For a time, I managed a small location in Imperial Beach for Humphrey Mortuary, though I spent most of my time at the main funeral home in Chula Vista. I remained an hourly employee throughout this time.

Overtime

7.     When I was a driver, I worked overtime for both removals and for late services that required a driver. When I worked overtime, I recorded my time and was fully paid for it. On occasion, I received double-time, rather than time-and-a-half, depending on how long I had worked.

8.     I generally did not get pre-approval from my manager before working overtime because, when I was on-call, my manager was already aware that I would be working. I always recorded the time that I worked and was always paid for the overtime that I had worked. I never had any issues in getting paid.

9.     I did not receive any bonuses or commissions from Alderwoods.

After-Hours Removals

10.    When I was a driver, I performed after-hours removals. I logged my time on "first call sheets." I was paid hourly for removals, beginning from the time I received the call until the time I returned from the call.

11.    When I began working for Humphrey Mortuary, removals were performed by Humphrey employees. I was usually on-call three nights a week. There were usually three employees on call. Funeral directors were not on-call to perform removals. Any phone calls I received while on-call were usually handled en route to the removal location.

12.    Funeral Directors and Arrangers handle after-hours business calls. When I take a call, I am paid an automatic fifteen minutes per call. I do not recall any phone calls lasting longer than fifteen minutes. I probably received two phone calls a week.

"Community Work Policy"

13.     Employees were encouraged to participate in community organizations. I was very active and belonged to, among others, the Imperial Beach Chamber of Commerce, Kiwanis, and the Chula Vista Chamber of Commerce. I represented the funeral home at these organizations and was paid for the time I spent at activities and meetings. I thought this was a great feature of my job -- I was paid to help the community.

14.     Although I was very active in the community, I was not required to participate in these organizations, or any organization. There was no incentive program to encourage participation. Activities were posted on a bulletin board.

15.     Community service was not a topic during my annual evaluations by my supervisor.

Pre-Need Sales

16.     I did not sell pre-need policies. Pre-need counselors sold pre-need policies.

Training

17.     As a driver and later in death certificates, I learned on-the-job and was paid for the time I spent learning the trade.

18.     There is an annual, state-required test that funeral arrangers must take. I usually went to Los Angeles to take this test. I was paid for the time I spent in Los Angeles taking this test. Alderwoods would occasionally pay to have me stay overnight in Los Angeles if the schedule dictated it.

1    <u>Meal Breaks</u>

2

3        19.    There were occasions when I worked through a meal break.  This was rare, but

4    occasionally I would take a call during a meal break.  If my break was cut short, I was paid for the

5    time that I worked.

6

7        20.    Before speaking with any attorney for Alderwoods, I was told that the employees

8    who filed the lawsuit seek to have the class certified, and that the matter of class certification has

9    not been ruled upon by the Court.  I was also told that if the class is certified and assuming I am a

10   member of the class, then the attorneys for Alderwoods will be directly opposing my interest as a

11
     class member.
12

13       21.    I understand that this Declaration is being provided voluntarily in a lawsuit brought
14
     against Alderwoods Group, Inc. in which the plaintiffs allege that they have not been properly paid
15
16   for all time worked.   Before speaking with any attorney for Alderwoods, I was told that the

17   attorney represents Alderwoods and does not represent me.

18
         22.    Prior to speaking with the attorney for Alderwoods, I was also told that I did not
19
20   have to answer any questions.  I was told that the interview was purely voluntary and that if I did

21   not wish to speak, there would be no adverse impact on me.

22
         23.    The attorney for Alderwoods provided me with an opportunity to review the
23
24   Declaration and to make any corrections.  The attorney told me that I could refuse to sign the

25   Declaration without any adverse impact on me.

26

27

28

1   I declare under penalty of perjury that the foregoing is true and correct.

2

3

4   Dated: November 12, 2009

                                        JILL GIBSON

**TAB 22**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM HELM, et al.,
On behalf of themselves and all other
employees and former employees similarly
situated,

        Plaintiffs,

    v.

ALDERWOODS GROUP, INC.,

        Defendants.

Case No. 3:08-CV-01184 SI

DECLARATION OF JILL GIBSON

DECLARATION OF JILL GIBSON

I, Jill Gibson, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

1.    My name is Jill Gibson. I am a resident of Imperial Beach, California. I am over 21 years of age, suffer no legal disability, and am otherwise competent to make this Declaration.

2.    All the statements in this Declaration are true and accurate. I have personal knowledge of the facts set forth in this Declaration, and could testify to them competently if called to do so.

3.    I am currently a funeral arranger for Humphrey Mortuary in Chula Vista, California. Humphrey Mortuary was an Alderwoods location when I was first hired there. I was hired in February 2004 as a driver. Later that year, my position changed to handling death certificates. In 2005, I became a funeral arranger.

4.    I have always been an hourly, full-time employee at Humphrey Mortuary.

Piece Rate/Lump Sum

5.    At some point, employees at Humphrey Mortuary were paid a flat two hours for every after-hours removal at their individual rate of pay, including overtime if they had reached the requisite level of hours. If a removal lasted for longer than 2 hours, employees were paid for the full time that they worked. If a removal lasted for less than 2 hours, employees were still paid for the full 2 hours.

6.    Humphrey Mortuary kept a log for after-hours work. When employees performed after-hours removals, they were instructed to record in the log the name of the person, the location of the pick-up, the time of the call, and the time the employee returned to the location.

7.    Typically, removals took from between 1 hour to 1 and a half hours. If anything, the lump sum payments overcompensated employees.

8.    I believe the lump sum payments were made from 2004 until 2006 or 2007.

9.    I am unaware of Alderwoods' policy on piece rate and/or lump sum payments and do not know how other locations paid employees for after-hours removals.

Meal Breaks

10.    Humphrey Mortuary used a time clock while it was an Alderwoods location.

- 2 -

1  Employees made 4 punches each day: (1) when they arrived for work, (2) when they started

2  lunch, (3) when they finished lunch, and (4) when they left for the day.

3      11.    Employees at Humphrey Mortuary have always received 30 minute lunch breaks.

4  Lunch breaks are not rotated among employees, but there is always someone available to answer

5  phones.

6      12.    My lunch break is interrupted on occasion. I would estimate that it is interrupted

7  once or twice a week. When I do answer the phone during a lunch break, the interruption rarely

8  lasts more than 30 seconds.

9      13.    On the occasions that I have had to answer the phone during a lunch break, I do

10  not record my time. The time spent answering a phone call is so small that I think that it all evens

11  out.

12  Community Work

13      14.    Humphrey Mortuary encourages arrangers and funeral directors to be involved in

14  community activities.

15      15.    All employees that perform community service are paid for this time, whether the

16  activities are during normal work hours or after hours. This has always been the community work

17  policy at Humphrey Mortuary.

18      16.    I personally have been involved in the Imperial Beach Chamber of Commerce,

19  Kiwanis, and the Chula Vista Chamber of Commerce. I represented the funeral home with these

20  organizations and was paid for the time I spent at activities and meetings.

21      17.    I understand that this Declaration is being provided voluntarily in a lawsuit

22  brought against Alderwoods Group, Inc. in which the Plaintiffs allege that they have not been

23  properly paid for all time worked.

24      18.    Before speaking with any attorney for Alderwoods, I was told that the attorney

25  represents Alderwoods and does not represent me. I also was told that the employees who filed

26  the lawsuit seek to have the class certified, and that the matter of class certification has not been

27  ruled upon by the Court; and that the class is certified and assuming I am a member of the class,

28  then the attorneys for Alderwoods Group, Inc. will be directly opposing my interest as a class

-3-

1    member.

2        19.    Prior to speaking with the attorney for Alderwoods, I was also told that I did not

3    have to answer any questions. I was told that the interview was purely voluntary and that if I did

4    not wish to speak, there would be no adverse impact on me.

5        20.    The attorney for Alderwoods provided me with an opportunity to review the

6    Declaration and to make any corrections. The attorney told me that I could refuse to sign the

7    Declaration without any adverse impact on me.

8        I declare under penalty of perjury that the foregoing is true and correct.



9    Dated: September 8, 2010

                                              Jill Gibson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

**TAB 23**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM HELM, et al.
On behalf of themselves and all employees
similarly situated,

        Plaintiffs,

   vs.

ALDERWOODS GROUP, INC., et al.

        Defendants.

CASE NO.   3:08-CV-01184 SI

**DECLARATION OF HELEN GONI**

1

DECLARATION OF HELEN GONI:

I, Helen Goni, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

1. My name is Helen Goni. I am a resident of Turlock, California. I am over 21 years of age, suffer no legal disability, and am otherwise competent to make this Declaration.

2. All the statements in this Declaration are true and accurate. I have personal knowledge of the facts set forth in this Declaration, and could testify to them competently if called to do so.

3. I am the Office Manager for the Whitehurst, Norton, Dias Funeral Home in Turlock, California. I was hired at the Whitehurst, Norton, Dias Funeral Home in November 2000 as a file clerk. In 2002, I became a part-time secretary, a position I held through the end of 2006. In 2007, I became a full-time Office Manager.

4. Shortly after I began working at Whitehurst, Norton, Dias Funeral Home, the funeral home was owned and operated by Alderwoods Group, Inc. In my position as secretary and office manager for Alderwoods at the Whitehurst, Norton, Dias Funeral Home, I was always an hourly employee. My job involved answering phones during normal business hours, filing, making copies, handling death certificates and other general administrative support.

5. As a part-time hourly employee, I worked about 35 hours a week. As a full-time employee, I worked 40 hours a week. I never worked any overtime.

6. While working for Alderwoods, I recorded my time on time cards, which I used to clock-in and clock-out. I always recorded all of the hours I worked, and was always paid for all of the time that I worked.

7.    None of my managers, or any other employee at Alderwoods, ever encouraged, required, or requested me not to record my time. I was never required to work prior to clocking-in when I arrived for work in the morning, or after clocking-out when I left in the evening.

8.    During the time I worked for Alderwoods at Whitehurst, Norton, Dias Funeral Home, I never worked on call, nor was I required to be on-call.

9.    I was never required to, nor did I ever, perform removals of bodies, or answer phone calls after hours. To the best of my recollection, after hour phone calls went to the manager, a salaried employee.

10.    I was not involved in the selling of pre-need policies, nor was I ever required to make pre-need presentations or sell pre-need policies.

11.    I was not required to participate in community organizations or perform community work as an employee of Alderwoods. I was never evaluated on my participation in community activities.

12.    I never heard of of any employee incentive programs, including "I Believe in Service," or "Success Spotlight," nor am I familiar with something at Alderwoods called the Community Leadership Program or Influencer Program. I was never required to report on my participation in community activities or organizations to anyone at Alderwoods, nor did I.

13.    When I worked for Alderwoods at Whitehurst, Norton, Dias Funeral Home I never received a bonus, or was paid commissions.

14.    While at Whitehurst, Norton, Dias Funeral Home, Alderwoods had a mandatory one hour lunch break every day. If I had to work during my normal lunch break, I would take it later in the day. On any occasion that my meal break would be

3

interrupted because of work, I would be paid for working through my break.  None of my managers or other Alderwoods employees ever encouraged, required, or requested me not to record my time that I worked through a meal break, or to deduct an hour from my time for lunch if that is not what I took.

15.    No one at Alderwoods ever encouraged, required, or requested me to perform work but not record the hours that I worked.

16.    I don't recall any mandatory training while working for Alderwoods. We would have staff meetings monthly which occurred during normal business hours.  I was always on the clock and paid for my time attending these meetings.

17.    I understand that this Declaration is being provided voluntarily in a lawsuit brought against Alderwoods Group, Inc. in which the plaintiffs allege that they have not been properly paid for all time worked.  Before speaking with any attorney for Alderwoods, I was told that the attorney represents Alderwoods and does not represent me.  I also was told that the employees who filed the lawsuit seek to have the class certified, and that the matter of class certification has not been ruled upon by the Court; and that if the class is certified and assuming I am a member of the class, then the attorneys for Alderwoods Group, Inc. will be directly opposing my interest as a class member.

18.    Prior to speaking with the attorney for Alderwoods, I was also told that I did not have to answer any questions.  I was told that the interview was purely voluntary and that if I did not wish to speak, there would be no adverse impact on me.

19.    The attorney for Alderwoods provided me with an opportunity to review the Declaration and to make any corrections.  The attorney told me that I could refuse to sign the Declaration without any adverse impact on me.

I declare under penalty of perjury that the foregoing is true and correct.

4

Dated: November 12, 2009

HELEN GONI

5

**TAB 24**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HELM, et al.<br>On behalf of themselves and all employees<br>similarly situated,<br><br>    Plaintiffs,<br>  vs.<br><br>ALDERWOODS GROUP, INC., et al.<br><br>    Defendants. | **CASE NO.**  **3:08-CV-01184 SI**<br><br>**DECLARATION OF DONALD GREENO** |

## DECLARATION OF DONALD GREENO

I, Donald Greeno, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

  1.  My name is Donald Greeno.  I am a resident of Great Falls, Montana.  I am over 21 years of age, suffer no legal disability, and am otherwise competent to make this Declaration.

  2.  All the statements in this Declaration are true and accurate to the best of my knowledge and belief.  I have personal knowledge of the facts set forth in this Declaration, and understand I could testify to them competently if called to do so.

  3.  I am currently retired and working part-time at the Schnider Funeral Home

in Great Falls, Montana.  Beginning in late 2002 or early 2003, for a period of 16 months

until approximately mid-2004, I was a general manager for Alderwoods Group Inc. in

Monterey, California.  In that position I oversaw, for a period of approximately 10

months, the operations at several funeral homes in the Monterey area, including

Whitehurst Muller, Whitehurst Terry, Seaside Chapel, Mission Memorial Park and

Mission Mortuary.

Overtime

      4.      During the time I was employed by Alderwoods, employees were required

to obtain pre-approval before working overtime.  However, even if an employee did not

get approval from their manager before working overtime, they were allowed to record

the time that they worked, and they were paid for those hours.  The employee would be

subject to a reprimand for not getting approval, but they would be paid.

      5.      I never instructed or informed employees, either at a staff meeting or

elsewhere, that any overtime submitted without approval would not be paid.

      6.      I do not recall any Unrecorded Work Time Policy under Alderwoods.  I

never encouraged or required employees to not record all the overtime hours that they had

been worked.  I never informed employees at any staff meeting that they should not

record all of their overtime hours and should instead keep hours low.

      7.      To my knowledge, all the employees under me received time and a half for

overtime and were fully paid for the time they recorded.

      8.      I do not recall any employees receiving commissions, with the possible

exception of pre-needs sales/family service counselors.

After-Hours Work

9.      Generally, after-hours removals were performed by part-time employees who did not earn overtime.  They were paid a piece rate per removal.  This rate was either equal to or more than the employee's hourly pay rates.

10.      Funeral directors could be on-call in the evenings to receive business calls. They could claim the time they were on the phone and were paid for it on an hourly basis. If that time caused them to qualify for overtime, they were paid overtime.

"Community Work Policy"

11.      I do not recall a Community Work Policy from Alderwoods.  We did encourage the employees to be active in the community.  The employees were not required to participate in community activities or organizations.  Many employees were not involved in the community, which is why we encouraged it at staff meetings.

12.      We never used any incentive programs to encourage employee participation in community activities.

Training

13.      I do not recall any training that was required of the employees.  There was an employee policies and procedures manual that they were required to read when they started their employment.

Meal Breaks

14.    Employees were to take a lunch break every day.  Some employees fell into the habit of working through their lunch break.  As a manager, I instructed employees to take their lunch breaks.  If an employee worked through a lunch break, however, they were paid for their time.  I never instructed the employees to punch out for a lunch break that they were not going to take.

15.    I understand that this Declaration is being provided voluntarily in a lawsuit brought against Alderwoods Group, Inc. in which the plaintiffs allege that they have not been properly paid for all time worked.  Before speaking with any attorney for Alderwoods, I was told that the attorney represents Alderwoods and does not represent me.

16.    Prior to speaking with the attorney for Alderwoods, I was also told that I did not have to answer any questions.  I was told that the interview was purely voluntary and that if I did not wish to speak, there would be no adverse impact on me.

17.    The attorney for Alderwoods provided me with an opportunity to review the Declaration and to make any corrections.  The attorney told me that I could refuse to sign the Declaration without any adverse impact on me.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: November 9, 2009                                        _____

                                                                                        DONALD GREENO

**TAB 25**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM HELM, et al.
On behalf of themselves and all employees
similarly situated,

        Plaintiffs,

    vs.

ALDERWOODS GROUP, INC., et al.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO.   3:08-CV-01184 SI**

**DECLARATION OF WILLIAM RAY
HARPER**

## DECLARATION OF WILLIAM RAY HARPER

I, William Ray Harper, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

1.      My name is William Ray Harper, though I am commonly known by my middle name, Ray.  I am a resident of San Angelo, Texas.  I am over 21 years of age, suffer no legal disability, and am otherwise competent to make this Declaration.

2.      All the statements in this Declaration are true and accurate.  I have personal knowledge of the facts set forth in this Declaration, and could testify to them competently if called to do so.

3.      I am currently the general manager of Johnson's Funeral Home and Lawnhaven Memorial Gardens in San Angelo, Texas.  I was the general manager of these locations when they were owned by Alderwoods.  I have worked at Johnson's Funeral Home for over 36 years.

Overtime

4.      As general manager, I oversaw and approved the payroll for these locations.  I did not require that overtime be pre-approved.  Most overtime work was based on a schedule. Alderwoods always paid overtime that was recorded by the employees, even if not pre-approved.  I never altered time that an employee had submitted to reduce overtime hours.  Every employee was paid for the hours they worked.  Most of my employees worked about 50 hours a week, so Johnson's Funeral Home generally had a significant amount of overtime recorded.

5.      Employees at my location were not required to punch in at a certain hour.  So, if an employee arrived at the funeral home at 7 a.m. or 7:30 a.m., he or she clocked in and was paid for the time that they worked.

6.      The Lawnhaven cemetery had a sizeable maintenance staff, from 9 to 12 employees, to maintain the cemetery grounds and to open and close graves. Most of this staff was full-time and worked overtime on occasion. They were fully paid for any overtime they worked.

After-Hours Work

7.      There was a funeral director who worked exclusively from 5 to 9 and was on-call most evenings. When the night man was not on-call, other funeral directors might be scheduled to be on-call. If a funeral director took a phone call after-hours, he wrote down his time and was paid for the time of the call. Cemetery staff were never on-call.

Pre-Need Sales

8.      Employees who sold pre-need policies were paid on commission. The commission was paid by the pre-need insurance company. We had pre-need counselors at the funeral home, but there were some funeral directors who sold pre-need policies. Most funeral directors sold pre-need policies after hours. If a funeral director made a pre-need presentation to a family after-hours, they were paid for their time. Pre-need counselors were paid hourly for a few weeks when they first started, but thereafter were paid exclusively on commission.

Community Activities

9.      I did not encourage my employees to be active in the community. In my view, I and my brother, who has been with the funeral home for 34 years, performed sufficient community service to advertise the funeral home. Community service was not a requirement for hourly employees at my locations.

10.     There were a few employees who participated in community activities. One was in

the Rotary Club, another in the Lions Club. The funeral home paid their fees and expenses. Most did not log their time for this, but I did not tell them that they could not do so.

Meal Breaks

11.     Employees were given an hour for lunch, but some did not take a full hour. They clocked back in when they returned to work. I never required employees to record a full lunch break if they had not taken one. They were paid for any time that they worked.

Training

12.     Funeral directors were required to take continuing education courses to maintain their licenses. They were paid for the time they spent taking these courses. Most were held during the day, or were on-line courses completed during the work day.

13.     There was one occasion when I sent the entire cemetery maintenance staff to Missouri for a three-day OSHA safety training course. They were paid for this time and for the expenses of the trip.

14.     I understand that this Declaration is being provided voluntarily in a lawsuit brought against Alderwoods Group, Inc. in which the plaintiffs allege that they have not been properly paid for all time worked. Before speaking with any attorney for Alderwoods, I was told that the attorney represents Alderwoods and does not represent me.

15.     Prior to speaking with the attorney for Alderwoods, I was also told that I did not have to answer any questions. I was told that the interview was purely voluntary and that if I did not wish to speak, there would be no adverse impact on me.

16.     The attorney for Alderwoods provided me with an opportunity to review the

Declaration and to make any corrections.  The attorney told me that I could refuse to sign the Declaration without any adverse impact on me.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 9 , 2009

Wm, Ray Harper

WILLIAM RAY HARPER