**TAB 59**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HELM, et al.<br>On behalf of themselves and all employees similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ALDERWOODS GROUP, INC., et al.<br><br>Defendants. | CASE NO.   3:08-CV-01184 SI<br><br>**DECLARATION OF BRENDA TURNAGE** |

## **DECLARATION OF BRENDA TURNAGE**

I, Brenda Turnage, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

1. My name is Brenda Turnage. I am a resident of Colorado City, Texas. I am over 21 years of age, suffer no legal disability, and am otherwise competent to make this Declaration.

2. All the statements in this Declaration are true and accurate. I have personal knowledge of the facts set forth in this Declaration, and could testify to them competently if called to do so.

3. I worked at the Kiker-Seale Funeral Home in Colorado City, Texas for about a year in 2004 and 2005. The funeral home was owned by Alderwoods at the time.

4. I was an hourly employee at Kiker-Seale. I answered phones, typed, handled bills and deposits, and greeted families. My employment with Kiker-Seale was temporary while I recovered from an injury that prevented me from teaching.

Overtime

5. I never worked any overtime at Kiker-Seale. There was a time clock at the funeral home that was used to punch in and out of work.

6. I was always paid for the time I worked. I was never told to not record time, or record it inaccurately.

Removals

7. I was not involved in after-hours calls or with removals.

"Community Work Policy"

8.     I was never encouraged or required to participate in community activities by my supervisor at the funeral home. Before working at Kiker-Seale, I belonged to several community organizations, including the board of directors for the Community Mission, Future Farmers of America, and the board of my church. I was not requested by the funeral home to participate in these organizations, and I would have done so regardless of my employment by Kiker-Seale.

9.     My participation in community organizations was never part of any evaluation I received from my supervisor.

Pre-Need Sales

9.     I did not sell pre-need policies.

Training

10.     I did not receive any training to work in the office at Kiker-Seale. I had to refresh my typing skills and learn how to fill out forms. I did so on the job, and was paid for my time.

Meal Breaks

11.     I do not recall ever working during my lunch break. I was not told to record a meal break that I did not take.

12.     Before speaking with any attorney for Alderwoods, I was told that the employees who filed the lawsuit seek to have the class certified, and that the matter of class certification has not been ruled upon by the Court. I was also told that if the class is certified and assuming I am a member of the class, then the attorneys for Alderwoods will be directly opposing my interest as a

class member.

13.    I understand that this Declaration is being provided voluntarily in a lawsuit brought against Alderwoods Group, Inc. in which the plaintiffs allege that they have not been properly paid for all time worked. Before speaking with any attorney for Alderwoods, I was told that the attorney represents Alderwoods and does not represent me.

14.    Prior to speaking with the attorney for Alderwoods, I was also told that I did not have to answer any questions. I was told that the interview was purely voluntary and that if I did not wish to speak, there would be no adverse impact on me.

15.    The attorney for Alderwoods provided me with an opportunity to review the Declaration and to make any corrections. The attorney told me that I could refuse to sign the Declaration without any adverse impact on me.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 11, 2009

_____
BRENDA TURNAGE

**TAB 60**

1

2

3            UNITED STATES DISTRICT COURT

4            NORTHERN DISTRICT OF CALIFORNIA

5                                          )   **CASE NO.    3:08-CV-01184 SI**

6   WILLIAM HELM, et al.                   )
    On behalf of themselves and all employees   )
7   similarly situated,                     )   **DECLARATION OF ROBIN WARN**
                                            )
8              Plaintiffs,                  )
                                            )
9          vs.                              )
                                            )
10  ALDERWOODS GROUP, INC., et al.          )
                                            )
11             Defendants.                  )
                                            )
12                                          )
                                            )
13                                          )
                                            )
14                                          )
                                            )
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF ROBIN WARN

I, Robin Warn, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

1.      My name is Robin Warn. I am a resident of Ceres, California. I am over 21 years of age, suffer no legal disability, and am otherwise competent to make this Declaration.

2.      All the statements in this Declaration are true and accurate. I have personal knowledge of the facts set forth in this Declaration, and could testify to them competently if called to do so.

3.      I am currently the general manager Lakewood Memorial Park in Hughson, California. Under Alderwoods' ownership, I was the licensed cemetery manager for Lakewood Memorial Park Cemetery (the "Lakewood Cemetery").

4.      The staff of Lakewood Cemetery consisted of 12-14 employees in the maintenance department, several employees in the cemetery office, and sales staff. The maintenance and clerical staff were hourly employees. The sales staff consisted of family service counselors, who were paid on either an hourly or commission basis, depending on which was greater.

Overtime

5.      The maintenance department at Lakewood Cemetery worked overtime on weekends or evenings when services ran late. Whenever there was a burial, maintenance staff had to be available for opening and closing the grave. Because the maintenance staff worked on a schedule, pre-approval for overtime was rarely needed. If a funeral was running late and it appeared that the staff would have to stay late, they would tell me if I was available. The employees were always paid for any overtime that they worked, even if they were not able to talk to me about it first.

6.      The clerical office staff did not work overtime.

7.      No hourly employees at Lakewood Cemetery received bonuses or commissions, with the exception of sales staff as discussed below. No employees were ever "on-call."

After-Hours Removals

8.      The staff at Lakewood Cemetery did not conduct after-hours removals.

"Community Work Policy"

9.      The staff at Lakewood Cemetery were not required to be involved in community activities or organizations.   There was no incentive program to encourage participation in community activities.

Pre-Need Sales

10.     The family service counselors sold cemetery and funeral pre-need policies. They were paid on a commission basis, or for the time spent on an hourly basis, depending on which was greater. The family service counselors were paid for after hours family visits.

Training

11.     Employees received training from Alderwoods on safety issues. This training was held during the day and was on-the-clock.

Meal Breaks

12.     Employees received a lunch hour. There were times, depending on many burials were being conducted at the cemetery, when an employee worked through their lunch hour. If

they did so, they were paid for their time.  Usually, however, the employee would simply take a later lunch.  I never told the employees to record a lunch break if they had not taken the break.

13.     I understand that this Declaration is being provided voluntarily in a lawsuit brought against Alderwoods Group, Inc. in which the plaintiffs allege that they have not been properly paid for all time worked.  Before speaking with any attorney for Alderwoods, I was told that the attorney represents Alderwoods.

14.     Prior to speaking with the attorney for Alderwoods, I was also told that I did not have to answer any questions.  I was told that the interview was purely voluntary and that if I did not wish to speak, there would be no adverse impact on me.

15.     The attorney for Alderwoods provided me with an opportunity to review the Declaration and to make any corrections.  The attorney told me that I could refuse to sign the Declaration without any adverse impact on me.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: November 5 , 2009

ROBIN WARN