Exhibit H Part 7 of 7

# TAB 61

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HELM, et al.<br>On behalf of themselves and all employees similarly situated,<br><br>　　　　　Plaintiffs,<br>　vs.<br><br>ALDERWOODS GROUP, INC., et al.<br><br>　　　　　Defendants. | **CASE NO.   3:08-CV-01184 SI**<br><br>**DECLARATION OF SHARON WELCH** |

# DECLARATION OF SHARON WELCH

I, Sharon Welch, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

1. My name is Sharon Welch. I am a resident of Pulaski, Tennessee. I am over 21 years of age, suffer no legal disability, and am otherwise competent to make this Declaration.

2. All the statements in this Declaration are true and accurate. I have personal knowledge of the facts set forth in this Declaration, and could testify to them competently if called to do so.

3. I am currently a funeral director at the Carr & Erwin Funeral Home in Pulaski, Tennessee. I started at Carr & Erwin in October 2004, when the funeral home was owned by Alderwoods. I began as an apprentice funeral director and embalmer. I became a funeral director in 2007.

4. As an apprentice funeral director/embalmer, I worked full-time. I was an hourly employee. I worked about 40 to 50 hours a week. This included overtime.

Overtime

5. My overtime included taking calls and after-hours removals. There were also nights where I would stay late. Depending on the situation, I might have to get approval from my manager. If I was staying late to complete work I was already doing, I would ask for approval. I was always paid for any overtime that I worked. I was paid time and a half.

6. I did not receive any bonuses or commissions under Alderwoods.

After-Hours Work

7. We had a rotating on-call schedule at the funeral home for after-hours work. If I received a removal call after-hours, I was paid from the time that I received the call until the time the removal was completed. I was paid hourly for my time and, if I had accrued sufficient hours, I was paid overtime.

"Community Work Policy"

8. We were encouraged to be involved in community activities, but community service was not a requirement. As an apprentice, I was working full-time and also in college, so I did not have time to participate in community organizations. My participation in community activities was never a part of any evaluation I was given by my supervisor at the funeral home.

9. I do not recall any incentive programs designed to encourage employees to participate in community activities. I do not recall a program called "I Believe in Service."

Pre-Need Sales

10. As an apprentice, I was not allowed to sell pre-need policies. I only handled funeral arrangements with the funeral directors. There was a pre-need counselor who handled these sales. Also, our office manager was licensed to sell pre-need insurance. I was not required to sell pre-need policies as either an apprentice or a funeral director.

Training

11. The funeral home occasionally had training on office practices, procedures and systems. Any such training was held during the work day while I was on the clock and being paid.

Meal Breaks

12. I received lunch breaks as a full-time employee. There were occasions when we were busy and I was unable to take a lunch break. When this happened, I was paid for the time that I worked. I was never told to punch out for a lunch break that I had not taken.

13. Before speaking with any attorney for Alderwoods, I was told that the employees who filed the lawsuit seek to have the class certified, and that the matter of class certification has not been ruled upon by the Court. I was also told that if the class is certified and assuming I am a member of the class, then the attorneys for Alderwoods will be directly opposing my interest as a class member.

14. I understand that this Declaration is being provided voluntarily in a lawsuit brought against Alderwoods Group, Inc. in which the plaintiffs allege that they have not been properly paid for all time worked. Before speaking with any attorney for Alderwoods, I was told that the attorney represents Alderwoods and does not represent me.

15. Prior to speaking with the attorney for Alderwoods, I was also told that I did not have to answer any questions. I was told that the interview was purely voluntary and that if I did not wish to speak, there would be no adverse impact on me.

16. The attorney for Alderwoods provided me with an opportunity to review the Declaration and to make any corrections. The attorney told me that I could refuse to sign the Declaration without any adverse impact on me.

1 | I declare under penalty of perjury that the foregoing is true and correct.
2 |
3 |
4 | Dated: November 5, 2009                    _____Sharon Welch_____
5 |                                              SHARON WELCH

**TAB 62**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HELM, et al. On behalf of themselves and all employees similarly situated,<br><br>    Plaintiffs,<br>vs.<br><br>ALDERWOODS GROUP, INC., et al.<br><br>    Defendants. | CASE NO.   3:08-CV-01184 SI<br><br>**DECLARATION OF SHIRLEY WENTWORTH** |

1

DECLARATION OF SHIRLEY WENTWORTH

I, Shirley Wentworth, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

1. My name is Shirley Wentworth. I am a resident of Pompano Beach, Florida. I am over 21 years of age, suffer no legal disability, and am otherwise competent to make this Declaration.

2. All the statements in this Declaration are true and accurate. I have personal knowledge of the facts set forth in this Declaration, and could testify to them competently if called to do so.

3. I worked for Kraeer Funeral Home and its successors for 14 years, both full time and part time. From 2002 through 2006, I worked for Kraeer Funeral Homes at two locations, one in Coral Springs, and another in Fort Lauderdale, Florida.

4. I began working for Kraeer Funeral Homes as an accountant in the accounting department. In 2002, I began working full time as a secretary and support staff. I was an hourly employee. My job entailed providing support to the funeral director, working at visitations, filling in for the secretary, and helping to clean up after services at the funeral home. I continued in this position for Kraeer Funeral Home through March 2005 at Coral Springs, and resumed in May 2005 in Fort Lauderdale. During this time, it was my understanding that Alderwoods Group, Inc. owned and operated the Kraeer Funeral Homes where I worked.

2

5. As support staff, I would work 8 hours a day, and 40 hours a week. On occasion, I would also work some overtime.

6. Although I worked very little overtime for Alderwoods, I was always paid time-and-a-half for any overtime I ever worked. My time was recorded on time cards, which I used to punch in and punch out. I always recorded all of the hours I worked, including my overtime.

7. I never had to get prior approval for my overtime, nor did Alderwoods fail to pay me for any overtime I worked which was not pre-approved.

8. None of my managers, or any other employee at Alderwoods, ever encouraged, required, or requested me not to record my overtime.

9. During the time I was a full-time employee, I was never required to be on-call.

10. I was never required to, nor did I ever, perform removals of bodies. To the best of my knowledge, the Kraeer Funeral Homes had a dedicated crew working out of the Sample Road facility who handled the removal of bodies.

11. I was not involved in the selling of pre-needs policies, nor was I ever required to make pre-needs presentations or sell pre-needs policies. To the best of my knowledge, there was a dedicated staff who handled pre-needs policies and presentations. It was my understanding that each Chapel had its own pre-needs sales person.

12. I was not required to participate in community organizations or perform community work as an employee of Alderwoods. Although I was a member of my church choir for nearly 35 years, I participated in this activity voluntarily, on my own time, because I enjoyed it. No one at Kraeer Funeral Homes required me to participate in the choir.

13. I recall that Alderwoods would participate in the annual Seafood Fest in our community, but Alderwoods never required me to participate in that activity, nor did I. I am not aware of any employee at Kraeer Funeral Homes who was required by Alderwoods management to participate in the Seafood Fest or any other activity.

14. I was evaluated by my manager every year. My evaluation never took into account my participation in community work.

15. Alderwoods permitted a 30 minute lunch break every day. I would always take the full 30 minutes. I never missed a meal break, and only rarely had my meal break interrupted to perform work. On the rare occasion that my meal break would be interrupted because of work, I would take the full 30 minutes for my meal break later that day. None of my managers or other Alderwoods employees ever encouraged, required, or requested me not to record my time that I worked through a meal break.

16. No one at Alderwoods ever encouraged, required, or requested me to perform work but not record the hours that I worked.

17. While at Kraeer during the time Alderwoods operated the funeral homes, my training consisted mostly of computer training. I would do any training on the

4

job, and was paid for the time I spent in training. Whenever we had meetings, we would always be on the clock and record our time spent at both meetings and training.

18. I never heard of any programs entitled "Success Spotlight" or "I Believe In Service," nor was I required to participate in any such programs.

19. I understand that this Declaration is being provided voluntarily in a lawsuit brought against Alderwoods Group, Inc. in which the plaintiffs allege that they have not been properly paid for all time worked. Before speaking with any attorney for Alderwoods, I was told that the attorney represents Alderwoods and does not represent me. I also was told that the employees who filed the lawsuit seek to have the class certified, and that the matter of class certification has not been ruled upon by the Court; and that if the class is certified and assuming I am a member of the class, then the attorneys for Alderwoods Group, Inc. will be directly opposing my interest as a class member.

20. Prior to speaking with the attorney for Alderwoods, I was also told that I did not have to answer any questions. I was told that the interview was purely voluntary and that if I did not wish to speak, there would be no adverse impact on me.

21. The attorney for Alderwoods provided me with an opportunity to review the Declaration and to make any corrections. The attorney told me that I could refuse to sign the Declaration without any adverse impact on me.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 31, 2009

*Shirley Wentworth*

SHIRLEY WENTWORTH

6

**TAB 63**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HELM, et al.<br>On behalf of themselves and all employees similarly situated,<br><br>    Plaintiffs,<br>vs.<br><br>ALDERWOODS GROUP, INC., et al.<br><br>    Defendants. | CASE NO.   3:08-CV-01184 SI<br><br>**DECLARATION OF ANNETTE YOUNG** |

## DECLARATION OF ANNETTE YOUNG

I, Annette Young, pursuant to 28 U.S.C. § 1746, do hereby declare and state as follows:

1. My name is Annette Young. I am a resident of Arcata, California. I am over 21 years of age, suffer no legal disability, and am otherwise competent to make this Declaration.

2. All the statements in this Declaration are true and accurate. I have personal knowledge of the facts set forth in this Declaration, and could testify to them competently if called to do so.

3. I currently work at Paul's Chapel in Arcata, California. I have worked at Paul's Chapel for more than 61 years. I started working there in 1948, playing the organ at funerals. I worked at Paul's Chapel when it was an Alderwoods location. I found Alderwoods to be fair and honest in its treatment of employees at Paul's Chapel.

4. I have always been an hourly employee at Paul's Chapel. I oversee the music for the funeral home, assist with visitations, help the funeral directors at funeral services, and cover the office and handle secretarial duties when the funeral home is short of staff. My hours varied depending on the number of funerals. When the office was short of employees, I would work a full-time week or two in a row.

Overtime

5. I do not recall having to get approval to work overtime. However, I generally was at the funeral home because I had been called in. I was always paid for any overtime I worked.

6. I do not recall seeing a written policy on overtime from Alderwoods. I was never told to not record time that I had worked.

7. I did not receive bonuses or commissions from Alderwoods.

After-Hours Removals

8. I never performed after-hours removals.

"Community Work Policy"

9. Employees at Paul's Chapel were encouraged to participate in community organizations. For me, this usually meant that I might work at a reception after a funeral or service, meeting people and handing out memorial books, and setting up flowers. I was paid for this time.

10. I was a music teacher and organist and belong to several community groups, including the American Guild of Organists and the California Music Teachers' Association of Humboldt County. I joined these organizations before I worked for Alderwoods. These activities were not related to the funeral home, and I would have participated in them regardless of any funeral home policy.

Pre-Need Sales

11. I did not sell pre-need policies. There was a pre-need salesperson who handled pre-need sales.

Training

12. Occasionally, Alderwoods would provide training on new office procedures or equipment. I was paid for the time I attended these meetings.

Meal Breaks

13.     I received a 30 minute lunch break when I worked full-time. I would punch out for lunch. I was paid for any time I was not on lunch break. I was never told to punch out for a lunch break I did not take. I was always told to record my time worked.

14.     Before speaking with any attorney for Alderwoods, I was told that the employees who filed the lawsuit seek to have the class certified, and that the matter of class certification has not been ruled upon by the Court. I was also told that if the class is certified and assuming I am a member of the class, then the attorneys for Alderwoods will be directly opposing my interest as a class member.

15.     I understand that this Declaration is being provided voluntarily in a lawsuit brought against Alderwoods Group, Inc. in which the plaintiffs allege that they have not been properly paid for all time worked. Before speaking with any attorney for Alderwoods, I was told that the attorney represents Alderwoods and does not represent me.

16.     Prior to speaking with the attorney for Alderwoods, I was also told that I did not have to answer any questions. I was told that the interview was purely voluntary and that if I did not wish to speak, there would be no adverse impact on me.

17.     The attorney for Alderwoods provided me with an opportunity to review the Declaration and to make any corrections. The attorney told me that I could refuse to sign the Declaration without any adverse impact on me.

1  I declare under penalty of perjury that the foregoing is true and correct.

4  Dated: November 11, 2009

/s/ Annette Young
ANNETTE YOUNG